PILLSBURY WINTHROP SHAW PITTMAN LLP
BRUCE A. ERICSON (SBN 76342)
bruce.ericson@pillsburylaw.com
LEE BRAND (SBN 287110)
lee.brand@pillsburylaw.com
Four Embarcadero Center, 22nd Floor
San Francisco, CA 94111-5998
Telephone:        415.983.1000
Facsimile:        415.983.1200

WEI GROUP LLP
ERIC S. WEI (*pro hac vice* application forthcoming)
ewei@weillp.com
One World Trade Center, Suite 8500
New York, New York 10007-0103
Telephone:        212-248-0808
Facsimile:        212-248-0475

Attorneys for Defendant
K. Peony Yu, M.D.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO HEADQUARTERS

| | |
|---|---|
| IN RE FIBROGEN, INC., SECURITIES LITIGATION | No. 3:21-cv-02623-EMC<br><br>**CLASS ACTION**<br><br>**[PROPOSED] ORDER GRANTING MOTION OF DEFENDANT K. PEONY YU, M.D. TO DISMISS CONSOLIDATED COMPLAINT**<br><br>Date:        April 28, 2022<br>Time:        1:30 p.m.<br>Courtroom: 5<br>Judge:        Hon. Edward M. Chen |

4875-0034-3049.v1

Defendant K. Peony Yu, M.D. moved under Federal Rules of Civil Procedure 9(b) and 12(b)(6), and the Private Securities Litigation Reform Act of 1995, codified in relevant part at 15 U.S.C. § 78u-4 et seq. ("PSLRA"), to dismiss without leave to amend Plaintiffs' Consolidated Class Action Complaint ("CAC") filed on October 29, 2021, corrected on November 19, 2021 (ECF Nos. 91 and 97). Dr. Yu also joined in the motion to dismiss filed by FibroGen, Inc. and the other individual defendants (ECF No. 107), and in the proposed order submitted by those defendants.

This matter came for hearing on April 28, 2022 at 1:30 pm. Having considered the submissions and arguments of counsel, along with the pleadings and papers on file in this matter, and all matters properly before the Court, the Court:

1. GRANTS Defendants' Request for Judicial Notice and Consideration of Documents Incorporated by Reference. The Court considers facts alleged in the CAC, facts contained in documents relied on in the CAC, and other facts subject to judicial notice. *See Tellabs, Inc. v. Makor Issues & Rights Ltd.*, 551 U.S. 308, 322-23 (2007).

2. GRANTS Dr. Yu's motion to dismiss, without leave to amend, for the reasons set forth below.

Plaintiffs bring claims under Section 10(b) of the Securities Exchange Act of 1934 and Securities and Exchange Commission Rule 10b-5 against all Defendants. Plaintiffs allege that the Defendants committed securities fraud by making 96 separate false and misleading statements during the Class Period, which spans from December 20, 2018 to July 15, 2021. The 96 alleged misstatements are set forth in an Appendix to the CAC (ECF No. 91-2); in this Order they shall be cited #1, #2, etc. Dr. Yu is alleged to have made 21 of those statements, the earliest on December 20, 2018 (#1) and the latest on May 7, 2020 (#49). The alleged statements concern a proposed new drug called roxadustat, for which FibroGen and its partner AstraZeneca were seeking FDA approval.

Dr. Yu joins in the discussion of pleadings standards set forth in FibroGen's proposed order and to avoid repetition will not repeat it here.

## A.    Falsity

Dr. Yu joins the discussion of standards for pleading falsity set forth in FibroGen's proposed order and to avoid repetition will not repeat it here. Dr. Yu's alleged misstatements fall into these

categories:  the efficacy of roxadustat; the likelihood that roxadustat would avoid a "black box" label if approved; the "non-inferiority margin" that the FDA might apply; and the safety of roxadustat.

**1.      The efficacy of roxadustat (##1, 6, 44, 46-49)**

Statements #1 and #6, from late 2018 and early 2019, allege that Dr. Yu expressed the belief that study results demonstrated roxadustat's efficacy in treating anemia.  Such "publicly stated interpretation of the results of various clinical studies . . . are essentially no different than opinions" and cannot state a claim for fraud unless Plaintiffs "allege with particularity provable facts to demonstrate that the statement of opinion is both objectively and subjectively false."  *In re Sanofi-Aventis Sec. Litig.*, 774 F. Supp. 2d 549, 567 (S.D.N.Y. 2011); *see Rubke v. Capitol Bancorp*, 551 F.3d 1156, 1162 (9th Cir. 2009).  The CAC does not allege facts suggesting subjective falsity – that is, that Dr. Yu did not believe what she was saying.

Statement #44 and ##46-49 allege that Dr. Yu expressed confidence about roxadustat's efficacy at earnings conference calls on March 2, 2020 (#44) and May 7, 2020 (##46-49).  The alleged statements are principally about safety (discussed below) but do express the belief that study results demonstrated roxadustat's efficacy in treating anemia.  These too are opinions about study results, and the CAC alleges nothing suggesting that Dr. Yu did not believe what she was saying.  No well-pleaded facts suggest Dr. Yu's beliefs were objectively false, even in hindsight.  The FDA, in its brief to an Advisory Committee convened in July 2021 to consider roxadustat, said roxadustat's "efficacy is not in question" as "[a]ll studies … demonstrated efficacy."  Ex. VV at 7 ("Ex." refers to exhibits to the Kasner Declaration).  For these reasons, the CAC does not adequately allege that Dr. Yu's statements about the efficacy of roxadustat were false.

**2.      The likelihood that roxadustat would avoid a "black box" label if approved (##21, 44)**

The two statements Dr. Yu is alleged to have made about the likelihood that roxadustat would avoid a "black box" label (both in early 2020) were expressions of hope and confidence that a black box label could be avoided, with cautions that the labeling decision was beyond FibroGen's control and in the hands of the FDA.  ##21, 44.  Others at FibroGen, including the CEO, made the same point at the same meetings: "this is a decision for the regulators."  Ex. X at 17.  Roxadustat has not been approved in the United States, so it remains hypothetical what label it would get if

-2-

approved. Even so, Dr. Yu's statements were forward-looking statements accompanied by cautionary remarks, hence not actionable. They also were expressions of opinion, and the CAC does not allege that Dr. Yu did not believe what she said. For these reasons, the CAC does not adequately allege that Dr. Yu's statements about the likelihood of avoiding a "black box" label were false.

**3.      The "non-inferiority margin" that the FDA might apply (##20, 46-49)**

A hazard ratio is a ratio of the likelihood that a patient on a new drug will experience a specified adverse outcome (here, "MACE" or "Major Adverse Cardiovascular Event") to the likelihood that patients on the comparator treatment (another drug or placebo) will experience the same outcome. Analyses lead to estimations of the hazard ratio (a point value) and the 95% confidence interval around that point value. The FDA often sets as a "non-inferiority margin" the upper bound of the 95% confidence interval around the hazard ratio, with the understanding that a new drug is unlikely to be approved if the upper bound of its 95% confidence interval exceeds the non-inferiority margin. The CAC alleges that the FDA ultimately chose or was likely to choose a non-inferiority margin of 1.25 but Defendants predicted that the FDA instead would choose 1.3. *E.g.*, CAC ¶¶ 48, 55, 62, 83, 110, 152.

The only statements that Dr. Yu is alleged to have made on this subject are a statement in May 2019 that the conventional non-inferiority margin, widely published and previously used by the FDA in assessing cardiovascular safety, was 1.3 (#20) and a statement in May 2020 that does not actually mention the non-inferiority margin but simply reflects her opinion that roxadustat is safe and "potentially a better treatment option for dialysis dependent patients." #49; *see also* ##46-48. The CAC does not allege facts showing these opinions to be false, let alone not believed by her. Defendants repeatedly cautioned that the choice of a non-inferiority margin was the topic of discussion with the FDA but no agreement had been reached. Ex. J at 16-17, 20-21; Ex. X at 17. At the hearing of the Advisory Committee in July 2021, Dr. Ellis Unger, Director of the FDA's Office of Cardiology, Hematology, Endocrinology, and Nephrology – responsible for reviewing the roxadustat NDA – said that the choice of a non-inferiority margin was "arbitrary" and "1.3 is reasonable." Ex. XX at 195. For these reasons, the CAC does not adequately allege that Dr. Yu's statements about the "non-inferiority margin" that the FDA might apply were false.

-3-

**4.    The safety of roxadustat (##7, 10, 13, 16-18, 20, 23, 26-27, 34-35, 44, 46-49)**

Dr. Yu's alleged statements about safety are expressions of her opinion about the results of individual studies pre-pooling (#7) and the pooled cardiovascular safety analyses (##10, 13, 16-18, 20, 23, 44, 46-49).  These statements interpreting safety data are opinions.  *In re Sanofi-Aventis Sec. Litig.*, 774 F. Supp. 2d at 567.  The CAC does not allege that Dr. Yu did not believe what she was saying.  Some of the statements also were expressions of corporate optimism and not actionable for that reason, too.  *In re Copper Mountain Sec. Litig.*, 311 F. Supp. 2d 857, 868, 869 (N.D. Cal. 2004); *Kovtun v. VIVUS, Inc.*, 2012 WL 4477647, at *11 (N.D. Cal. Sept. 27, 2012); *In re Splash Tech. Holdings, Inc. Sec. Litig.*, 160 F. Supp. 2d 1059, 1077 (N.D. Cal. 2001).

Plaintiffs' principal allegation is that Defendants' expressions of optimism about the safety of roxadustat were unwarranted because they were secretly based on methods of analysis that, in Plaintiffs' view, were illegitimate because chosen in part after the data were unblinded.  CAC ¶ 71.  But the CAC's own allegations, and the documents referred to in the CAC, rebut that theory.  Dr. Yu stated publicly that FibroGen was having an ongoing dialogue with the FDA about analytical methodology and that, at the "pre-NDA meeting" of July 30, 2019, the FDA accepted some of FibroGen's proposed analyses.  ##26-27, 34-35.  FibroGen itself, in its 10-Qs, 10-Ks and earnings releases, made similar statements.  Ex. J at 6, 12, 16-17; Ex. N at 4-5, 12; Ex. O at 26; Ex. S at 28; Ex. W at 9. The market thus knew that discussions of which statistical analyses FibroGen should use, and which the FDA wanted to see in the New Drug Application filed in December 2019, continued after the data were unblinded.  Plaintiffs' allegations about safety thus boil down to a disagreement with the analyses applied because the analyses were not finalized until after the data were unblinded.  But "Plaintiffs cannot premise a fraud claim upon a mere disagreement with how defendants chose to interpret the results of the clinical trial."  *In re MELA Sciences, Inc. Sec. Litig.*, 2012 WL 4466604, at *13 (S.D.N.Y. Sept. 19, 2012).

Dr. Yu left her post as Chief Medical Officer at FibroGen in December 2020 and ceased to be a FibroGen employee in March 2021.  In April 2021, FibroGen's new management issued a press release containing safety data previously released in November 2019 but adding other data that had hitherto been presented to the FDA as a sensitivity study.  The CAC does not allege that Dr. Yu had

-4-

anything to do with this press release.  It is not something for which she is responsible under the securities laws.  *Janus Cap. Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 142 (2011).  There was no requirement that, on her watch as Chief Medical Officer, she had to disclose what was then a sensitivity study.  *Corban v. Sarepta Therapeutics, Inc.*, 868 F.3d 31, 40 (1st Cir. 2017).

For these reasons, the CAC does not adequately allege that Dr. Yu's statements about the safety of roxadustat were false.

**B.     Scienter**

Dr. Yu joins the discussion of standards for pleading scienter set forth in FibroGen's proposed order and to avoid repetition will not repeat it here.  Considered individually or holistically, none of the allegations that Dr. Yu acted with scienter satisfies the standard set forth in *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007):

*Statements made in November 2019:*  The only statement attributed to Dr. Yu is a statement in an 8-K that study results indicated the opportunity to potentially improve anemia care in dialysis patients initiating treatment by offering a novel and effective oral therapy.  This anodyne expression of optimism has not been shown to be false, much less raise an inference of an intent to defraud.

*April 6, 2021 press release:*  As discussed above, this is not a statement by Dr. Yu or an admission by her.  New management's decision to present additional data and swap sensitivity for primary says nothing about Dr. Yu's state of mind.

*CW3's allegation:*  Speculation of the sort alleged in CAC ¶¶ 124, 250 by a non-scientist who merely sat in the audience at an unidentified meeting and heard unspecified statements raises no inference of scienter.  *City of Sunrise Firefighters' Pension Fund v. Oracle Corp.*, No. 18-CV-04844-BLF, 2019 WL 6877195, at 19 (N.D. Cal. Dec. 17, 2019).

*Dr. Yu's compensation:*  Allegations that Dr. Yu received a high salary and performance bonuses do not support a cogent inference of fraudulent intent.  *Lipton v. Pathogenesis*, 284 F.3d 1027, 1038 (9th Cir. 2002); *Rigel*, 697 F.3d at 884.

*Stock sales:*  Dr. Yu sold much less stock during the Class Period than before it, and all her sales were pursuant to 10b5-1 plans.  These facts raise no inference of scienter.  *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1067 (9th Cir. 2008); *City of Royal Oak Ret. Sys. v.*

-5-

*Juniper Networks, Inc.*, 880 F. Supp. 2d 1045, 1069 (N.D. Cal. 2012).

*Dr. Yu's departure from FibroGen:*  Her departure at a logical time, with praise from the CEO, rebuts any inference of scienter.  *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 989 (9th Cir. 2009), as amended (Feb. 10, 2009).  So too do the allegations that she continued for a time thereafter, first as an advisor and later as a consultant.  *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1062-63 (9th Cir. 2014).

**C.    Controlling Person Claim**

In light of Plaintiffs' failure to state a claim under Section 10(b) in Count I, Plaintiffs' claim under Section 20(a) fails too.  *Rigel*, 697 F.3d at 886.

For the foregoing reasons and because no conceivable amendment could cure these defects, the Court GRANTS Dr. Yu's motion to dismiss the CAC without leave to amend.

IT IS SO ORDERED.

Dated: _____        _____
                                      HONORABLE EDWARD M. CHEN
                                      UNITED STATES DISTRICT COURT

4875-0034-3049.v1

**CERTIFICATE OF SERVICE**

I hereby certify under penalty of perjury that on January 14, 2022, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel or parties of record.

/s/Bruce A. Ericson

Bruce A. Ericson

[PROPOSED] ORDER GRANTING DR. YU'S MOTION TO DISMISS
No. 3:21-CV-02623-EMC

4875-0034-3049.v1