S
W    S A X E N A   W H I T E

February 15, 2023

**VIA ECF**

The Honorable Edward M. Chen
United States District Court Judge
San Francisco Courthouse, Courtroom 5, 17th Fl.
450 Golden Gate Avenue
San Francisco, CA 94102

      Re:    *In re FibroGen, Inc. Securities Litigation*, 3:21-cv-02623-EMC (N.D. Cal.)

Dear Judge Chen:

The parties respectfully submit this joint letter pursuant to ¶4 of the Court's Civil Standing Order on Discovery to address a discovery dispute regarding Defendants' February 3, 2023 clawback of PowerPoint slides Bates numbered FGEN-CA-0353824 (the "Presentation"), attached as Exhibit 10 to Plaintiffs' motion for class certification (ECF No. 147-11). Plaintiffs dispute Defendants' claim of attorney-client privilege over the Presentation. Counsel met and conferred on this issue on February 8, 2023, and concluded that no agreement could be reached.

**Plaintiffs' Position**: Defendants "ha[ve]the burden of establishing" the privilege, which "is strictly construed." *Visa U.S.A., Inc. v. First Data Corp.*, 2004 WL 1878209, at *3 (N.D. Cal. Aug. 23, 2004) (Chen, J.). For communications serving both a legal and business purpose, the privilege applies "only where the 'primary purpose' . . . is 'to give or receive legal advice." *City of Roseville Employees' Ret. Sys. v. Apple Inc.*, 2022 WL 3083000, at *3 (N.D. Cal. Aug. 3, 2022) (citing *In re Grand Jury*, 23 F.4th 1088, 1092 (9th Cir. Sep. 13, 2021)). Defendants have failed to meet their burden here.

*First*, the Presentation was not prepared by an attorney, but by Defendant Eisner, FibroGen's Chief Medical Officer. The Presentation <u>on its face</u> does not reflect or seek any legal advice; does not refer to any legal issues or matters whatsoever; and is not marked in any way as an attorney-client privileged or work-product document.

*Second*, the "primary purpose" of the document was a <u>business</u> one: to inform the Board of Defendants' *post hoc* manipulations of the Roxadustat data. Indeed, a sworn declaration from FibroGen's General Counsel makes this clear, as it describes the document as "a PowerPoint presentation presented to the FibroGen Board regarding the statistical methodologies underlying the Roxadustat safety analyses, FibroGen's processes for unblinding the Roxadustat data, pooled statistical analysis plans, and discussions with the FDA regarding the Roxadustat safety analyses," which contained "information relating to <u>business decisions, strategies, and internal deliberation</u>." ECF No. 150-1. Accordingly, as this Court has explicitly held, the fact that the Presentation may have been subsequently sent to counsel does not make it privileged. *See Visa*, 2004 WL 1878209, at *7 ("[T]he fact that the documents were reviewed and subject to revisions by counsel does not necessarily make them privileged."); *Apple*, 2022 WL 3083000, at *24 (draft board presentation emailed to attorney not privileged because it was "focused almost entirely on the international business environment and U.S. trade policy").

The Honorable Edward M. Chen
February 15, 2023
Page 2

*Third*, while Defendants claim the Presentation was prepared at the direction of FibroGen's General Counsel, there is no contemporaneous written evidence whatsoever—not a single email, text or note—supporting Defendants' assertion.  Conclusory assertions that a document was "created at the request of [] general counsel for the purpose of facilitating the rendering of legal advice" are patently insufficient to establish privilege. *MediaTek Inc. v. Freescale Semiconductor, Inc.*, 2013 WL 5594474, at \*3 (N.D. Cal. Oct. 10, 2013).  Nor could they, as "general counsel are often extensively involved in business matters." *Id*. at \*4.  Given that FibroGen was represented by highly sophisticated counsel, it is inconceivable that if a document of this significance was truly prepared at counsel's direction, it would not have explicitly said so.  Further, FibroGen's own General Counsel's declaration nowhere states that the Presentation was prepared at his request or pertained to legal matters of any kind.[1]  This is confirmed by Defendants' production of numerous prior versions of the Presentation showing that Eisner began drafting it weeks before Defendants contend FibroGen's General Counsel instructed Eisner to prepare the document. *E.g.*, FGEN-CA-0178387, FGEN-CA-0413258, FGEN-CA-0259774; *see also Visa*, 2004 WL 1878209, at \*7 (documents had a business purpose where "this analysis would have been undertaken" even if "no lawyers were to be involved"). While Defendants claim that they withheld "over a dozen" other versions of this Presentation, they concede that they produced numerous other documents that "reflect some of the same information" drafted "by different people" for "different purposes"— reinforcing that the Presentation was created primarily for a business purpose.

*Finally*, even if Defendants could carry their burden in establishing privilege, which they have not, they waived it by producing the Presentation to the SEC months ago. *LD v. United Behavioral Health*, 2022 WL 4878726, at \*11 (N.D. Cal. Oct. 3, 2022).  Tellingly, Defendants did not claw the document back from the SEC until after Plaintiffs included it in their class certification motion (ECF No. 147 at 2), and moreover, a full three weeks after Plaintiffs first cited the document to Defendants in a letter dated January 16, 2023.

**Defendants' Position**:[2]  "The attorney-client privilege protects confidential communications between attorneys and clients . . . made ***for the purpose of giving legal advice.***" *United States v. Sanmina Corp.*, 968 F.3d 1107, 1116 (9th Cir. 2020).  Such protection extends "to ***any information generated by a request for legal advice, including documents created by clients*** with the intention of communicating with their attorneys." *In re Premera Blue Cross Customer Data Sec. Breach Litig. ("Premera")*, 329 F.R.D. 656, 661 (D. Or. 2019).  The privilege stands "even where a business decision is implicated" if an attorney is giving a client legal advice on a business decision. *Staley v. Gilead Scis., Inc.*, 2021 WL 4318403, at \*2 (N.D. Cal. July 16, 2021).

The Presentation, prepared by Mr. Eisner at the request of FibroGen's General Counsel, Michael Lowenstein, was to facilitate counsel's legal advice to the Company.  The final version was presented to FibroGen's Board on March 29, 2021 so that in-house and outside counsel could advise the Company on the pooled CV safety analyses supporting the New Drug Application for Roxadustat, among others.  After creating the Presentation at counsel's request, Mr. Eisner sent it

---

[1] While Defendants claim that Plaintiffs' description of the declaration is "deeply misleading" because it was filed in support of a motion to seal, Defendants referenced their claim of privilege in that same motion.  ECF No. 150 at 6.

[2] Unless noted otherwise, all emphasis is added.

The Honorable Edward M. Chen
February 15, 2023
Page 3

to Mr. Lowenstein for review and comment, and Mr. Lowenstein in turn sent it to outside counsel for the same. *E.g.,* FGEN-CA-PL-02957–58; FGEN-CA-PL-03378–79. As the minutes show, this portion of the meeting (attended by FibroGen's in-house and outside counsel) was subject to "attorney-client privilege" so that counsel could "provid[e] legal advice to the Board." *See* FGEN-CA-0604524. That this draft was prepared by a non-lawyer is of no moment as it was prepared at counsel's request. *See Premera*, 329 F.R.D. at 662 (draft prepared by client at counsel's request and sent to counsel for review/legal advice subject to attorney-client privilege). Nor does it matter that this particular draft was not labeled "attorney-client privilege." *See Lifewise Master Funding v. Telebank*, 206 F.R.D. 298, 301 (D. Utah 2002) (privileged document need not be labeled as such to get protection). The privilege is based on the purpose and circumstances of its creation.

Plaintiffs' repeated and deeply misleading references to Mr. Lowenstein's February 2, 2023 declaration do not change this analysis.[3] The declaration addresses only the standard for sealing (which was the declaration's sole purpose) and does not purport to describe the circumstances of the document's creation. In any event, Plaintiffs' distinction that a document reflecting "business decisions, strategies, and internal deliberations" could not have anything to do with "legal matters of any kind" is false. Business decisions often turn on legal advice; there is no reason why a document subject to sealing (as it contains confidential and proprietary business information) cannot also be protected by the attorney-client privilege (as it was created for the purpose of enabling counsel to provide legal advice). If necessary, Defendants can submit a declaration addressing the privileged nature of the Presentation.

Defendants did not waive the privilege by inadvertently producing the draft to the SEC. The parties' Stipulated Protective Order ("PO") states that privilege is waived if the Producing Party fails to promptly, upon becoming aware of the inadvertent production, claw it back. ECF No. 144, ¶ 11.1. Defendants became aware of their inadvertent production when the draft was attached to Plaintiffs' class certification motion. Defendants then promptly clawed it back from Plaintiffs *and the SEC* on February 3 and 6, 2023, respectively. Moreover, Plaintiffs mere citation to the draft in an unrelated discovery letter does not put Defendants on notice of their inadvertent production. *See id*. As such, no waiver occurred here.[4]

Defendants did not produce "numerous prior versions of the document." In fact, a dozen other versions were withheld. Documents produced that include *some* information in the Presentation are separate documents prepared by different people, under different circumstances, for different purposes; they are not prior versions of the Presentation, and their production has nothing to do with the application of privilege here. *E.g.*, FGEN-CA-0178387 (different PPT than Presentation created at counsel's request/sent to counsel for review), FGEN-CA-0413258 (same), FGEN-CA-0259774 (same). That they reflect some of the same information is also irrelevant.

---

[3] That Defendants merely "referenced" Exhibit 10 as a privileged document in their sealing motion has no bearing on the purpose of Mr. Lowenstein declaration.

[4] Per the PO, inadvertence is "determined based on the good faith representation of the Producing Party" and "[t]he provisions of Rule 502(b) do not apply." ECF No. 144, ¶ 11.1. Plaintiffs thus cannot challenge "inadvertence" absent a showing that Defendants' representation was not made in good faith. *See id*.

The Honorable Edward M. Chen
February 15, 2023
Page 4

* * *

Respectfully submitted,

/s/ David R. Kaplan

**SAXENA WHITE P.A.**
David R. Kaplan (SBN 230144)
dkaplan@saxenawhite.com
505 Lomas Santa Fe Drive, Suite 180
Solana Beach, CA 92075
Tel.: (858) 997-0860
Fax: (858) 369-0096

Maya Saxena (admitted *pro hac vice*)
msaxena@saxenawhite.com
Lester R. Hooker (SBN 241590)
lhooker@saxenawhite.com
Dianne M. Pitre (SBN 286199)
dpitre@saxenawhite.com
7777 Glades Road, Suite 300
Boca Raton, FL 33434
Tel.: (561) 394-3399
Fax: (561) 394-3382

Steven B. Singer
ssinger@saxenawhite.com
Kyla Grant (admitted *pro hac vice*)
kgrant@saxenawhite.com
Joshua H. Saltzman (admitted *pro hac vice*)
jsaltzman@saxenawhite.com
10 Bank Street, 8th Floor
White Plains, NY 10606
Tel.: (914) 437-8551
Fax: (888) 631-3611

*Lead Counsel for Lead Plaintiffs Employees'
Retirement System of the City of Baltimore,
City of Philadelphia Board of Pensions and
Retirement, and Plymouth County Retirement
Association*

/s/ Patrick E. Gibbs

**COOLEY LLP**
Patrick E. Gibbs (183174)
pgibbs@cooley.com
Tijana M. Brien (286590)
tbrien@cooley.com
Zaneta J. Kim (317844)
zkim@cooley.com
3175 Hanover Street
Palo Alto, CA 94304-1130
Tel.: (650) 843-1130
Fax: (650) 849-7400

*Attorneys for Defendants FibroGen, Inc.,
Enrique Conterno, James Schoeneck, Mark
Eisner, and Pat Cotroneo*

The Honorable Edward M. Chen
February 15, 2023
Page 5

## Certificate Pursuant to Local Rule 5-1(h)(3)

I, David R. Kaplan, am the ECF User whose identification and password are being used to file this Joint Discovery Letter. In compliance with Local Rule 5-1(h)(3), I hereby attest that each of the other signatories to this letter concur in its filing.

Dated: February 15, 2023

/s/ David R. Kaplan
David R. Kaplan

FLORIDA  ▌  NEW YORK  ▌  CALIFORNIA  ▌  DELAWARE
www.saxenawhite.com