COOLEY LLP
PATRICK E. GIBBS (183174)
(pgibbs@cooley.com)
TIJANA M. BRIEN (286590)
(tbrien@cooley.com)
BRETT H. DE JARNETTE (292919)
(bdejarnette@cooley.com)
ZANETA J. KIM (317844)
(zkim@cooley.com)
AMIE L. SIMMONS (336356)
(asimmons@cooley.com)
3175 Hanover Street
Palo Alto, California 94304-1130
Telephone:    +1 650 843 5000
Facsimile:    +1 650 849 7400

Attorneys for Defendants
FibroGen, Inc., Enrique Conterno, James Schoeneck,
Mark Eisner, and Pat Cotroneo

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE FIBROGEN, INC., SECURITIES LITIGATION | Case No. 3:21-cv-02623-EMC<br><br>**CLASS ACTION**<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR LEAVE OF COURT TO FILE MOTION FOR RECONSIDERATION**<br><br>JUDGE:    Hon. Edward M. Chen |

**TABLE OF CONTENTS**

**Page**

I.  INTRODUCTION .................................................................................................... 1

II.  FACTUAL BACKGROUND ................................................................................... 2

    A.  The Stipulated Protective Order ................................................................... 2

    B.  The Document Review Process for the SEC Production ............................... 3

    C.  Defendants' Clawback of the Presentation and the Current Dispute ............. 3

III.  LEGAL STANDARD .............................................................................................. 5

IV.  ARGUMENT ........................................................................................................... 6

    A.  Rule 502(b) Does Not Apply Because the Parties' Stipulated Protective Order Governs Here ..................................................................................... 6

    B.  A Motion for Reconsideration Is Proper as Defendants Did Not Have an Opportunity to Adequately Present Their Evidence to the Court ................... 8

    C.  The Requirements of Rule 502(b) Are Met ................................................. 9

        1.  Defendants' disclosure was inadvertent. ......................................... 9

        2.  Defendants took reasonable steps to prevent disclosure. .............. 10

        3.  Defendant promptly took reasonable steps to rectify the error. .... 10

            a.  The Order miscounts the number of days for the clawback .......... 11

            b.  The case law does not support the Order's determination that the clawback was not timely. ................................................. 12

            c.  The SEC's acceptance of the clawback should be dispositive on the issue of waiver .................................................................. 14

    D.  Defendants Exercised Reasonable Diligence in Moving for Leave to Seek Reconsideration .......................................................................................... 14

V.  CONCLUSION ....................................................................................................... 14

FIRM NAME
ATTORNEYS AT LAW
OFFICE ADDRESS

DEFS.' MOT. FOR LEAVE TO FILE
MOT. FOR RECONS.
3:21-CV-02623-EMC

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amarel v. Connell,*
102 F.3d 1494 (9th Cir. 1996)................................................................................... 5

*Atronic Int'l, GMBH v. SAI Semispecialists of Am., Inc.,*
232 F.R.D. 160 (2005) ............................................................................................ 13

*United States ex rel. Bagley v. TRW, Inc.,*
204 F.R.D. 170 (C.D. Cal. 2001) ........................................................................... 12

*Brown v. Wal-Mart Store, Inc.,*
2018 WL 1993434 (N.D. Cal. Apr. 27, 2018) ......................................................... 5

*Datel Holdings Ltd. v. Microsoft Corp.,*
2011 WL 866993 (N.D. Cal. Mar. 11, 2011) .............................................. 9, 10, 12

*Fredenburg v. Cnty. of Santa Clara,*
2009 WL 1814316 (N.D. Cal. June 25, 2009) ......................................................... 8

*In re Google RTB Consumer Priv. Litig.,*
2022 WL 3229342 (N.D. Cal. Aug. 10, 2022)......................................................... 7

*L-3 Commc'ns Corp. v. Jaxon Eng'g & Maint., Inc.,*
2014 WL 183303 (D. Colo. Jan. 12, 2014).............................................................. 6

*Mycone Dental Supply Co. Inc. v. Creative Nail Design Inc.,*
2013 WL 4758053 (N.D. Cal. Sep. 4, 2013) ......................................................... 11

*Njenga v. San Mateo Cnty. Superintendent of Schools,*
2010 WL 1261493 (N.D. Cal. Mar. 30, 2010)....................................................... 12

*In re NVIDIA GPU Lit.,*
2009 WL 975530 (N.D. Cal. Apr. 10, 2009) ......................................................... 14

*Reed v. A.S.A.P. Collection Servs., LLC,*
2018 WL 3707376 (N.D. Cal. Aug. 3, 2018)........................................................... 8

*Roberts v. AT&T Mobility LLC,*
2018 WL 1317346 (N.D. Cal. Mar. 14, 2018) (Chen, J.) ...................................... 14

*Skansgaard v. Bank of Am., N.A.,*
2013 WL 828210 (W.D. Wash. Mar. 6, 2013) ...................................................... 13

*United States v. United Health Grp.,*
2020 WL 10731257 (C.D. Cal. Nov. 9, 2020)......................................................... 9

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

ii

DEFS.' MOT. FOR LEAVE TO FILE
MOT. FOR RECONS.
3:21-CV-02623-EMC

## TABLE OF AUTHORITIES
### (Cont.)

**Page(s)**

*Upjohn Co. v. U.S.*,
    449 U.S. 383 (1981) ................................................................................................ 1, 6

*Valentin v. Bank of New York Mellon Corp.*,
    2011 WL 1466122 (S.D.N.Y. Apr. 14, 2011) ............................................................. 11

*Woods v. August*,
    2018 WL 5841311 (N.D. Cal. Nov. 8, 2018) .............................................................. 14

**Statutes**

Fed. R. Civ. P. 54 ...................................................................................................... 5

Fed. R. Evid. 502 ............................................................................................... *passim*

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

## NOTICE OF MOTION AND MOTION

TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD: PLEASE TAKE NOTICE THAT, on a date to be determined by this Court, Defendants FibroGen, Inc. ("FibroGen" or the "Company"), Enrique Conterno, James Schoeneck, Mark Eisner, and Pat Cotroneo (collectively, "Defendants") will and hereby do move this Court, pursuant to Civil Local Rule 7-9, for leave to file a motion for reconsideration of this Court's Order Granting Plaintiffs' Motion to Compel Production (Dkt. No. 161) (the "Order").[1]  This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the accompanying declarations of Tijana Brien and Alexandra Eber, the pleadings and papers on file in this action, and such other matters as may be presented to the Court at the hearing or otherwise.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.     INTRODUCTION

Defendants respectfully seek reconsideration of this Court's Order Granting Plaintiff's Motion to Compel.  The Order, which interfered with the "oldest of the privileges," *Upjohn Co. v. U.S.*, 449 U.S. 383, 389 (1981) – that of a client to communicate confidentially with his counsel – did so without providing Defendants with an opportunity to explain to the Court the lengths to which it has gone to ensure that privilege is upheld.  The Order was issued on the basis of three pages of letter briefing in which neither party believed that the issue before the Court was the inadvertence standard under Federal Rule of Evidence 502(b).  Indeed, the focus of letter brief was whether the document was privileged, not the adequacy of the steps Defendants took to preserve that privilege, as both parties understood the dispute to be governed by the Stipulated Protective Order and not Federal Rule of Evidence 502(b).  To disregard the attorney-client privilege without first giving Defendants the opportunity to put before the Court the material facts and dispositive legal arguments necessary to make a proper determination under Federal Rule of Evidence 502(b) is a "manifest failure" by the Court, and Defendants respectfully request the opportunity to provide

---

[1] In the interest of streamlining the Court's review, should the Court grant leave to file such a motion, Defendants concurrently submit the accompanying memorandum of points and authorities as the basis for their motion for reconsideration.  However, should Plaintiffs file an opposition to the motion for reconsideration, Defendants request the opportunity to file a reply.

Cooley LLP
Attorneys at Law
Palo Alto

1

Defs.' Mot. for Leave to File
Mot. for Recons.
3:21-cv-02623-EMC

a full record to this Court.

For these reasons, Defendants respectfully request that the Court grant leave and reconsider its Order.

## II.   FACTUAL BACKGROUND

### A.   The Stipulated Protective Order

Over the course of two months, from August to October 2022, the parties vigorously negotiated the terms of the Stipulated Protective Order ("PO"). Decl. of Tijana M. Brien ISO Mot. for Leave of Court to File Mot. for Recons. ("Brien Decl.") ¶ 2. Among the terms included section 11.1 which addressed inadvertent production of privileged or otherwise protected material. *Id.*; Dkt. No. 144 at 14–15. The relevant section read: "This Order shall be interpreted to provide the maximum protection allowed by Federal Rule of Evidence 502(d). The provisions of Rule 502(b) do not apply. Inadvertence shall be determined based on the good faith representation of the Producing Party, but the Challenging Party reserves the right to challenge whether such representation was made in good faith." Dkt. No. 144 at 15. As the party bearing most of the production burden, it was important to Defendants to include the above terms so that they could conduct a reasonable document review and production without the need for a fact-intensive inquiry as to whether they have satisfied Rule 502(b)'s "reasonable steps" requirements. Brien Decl. ¶ 3. These provisions were especially critical in light of Plaintiffs' request that Defendants re-produce to Plaintiffs in short order close to 100,000 documents Defendants had produced to the U.S. Securities and Exchange Commission ("SEC") in connection with an SEC investigation into FibroGen's April 6, 2021 announcement that the primary cardiovascular safety analyses included post-hoc changes to the stratification factors. *Id.* ¶ 4. Defendants ultimately agreed to make the re-production based, in part, on the understanding that the requirements of Rule 502(b) would not apply and that Defendants would not need to undertake an extensive re-review of privilege for purposes of this class action. *Id.* ¶ 5. Defendants completed the re-production in three installments on November 19, 2022, December 8, 2022, and December 19, 2022, after this Court entered the PO on October 21, 2022. *Id.* ¶ 6.

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

2

DEFS.' MOT. FOR LEAVE TO FILE
MOT. FOR RECONS.
3:21-CV-02623-EMC

**B.      The Document Review Process for the SEC Production**

As part of the review process for the SEC production, Defendants adopted robust measures to protect against inadvertent production.  Decl. of Alexandra Eber ISO Mot. for Leave of Court to File Mot. for Recons. ("Eber Decl.") ¶ 2.  To conduct a first level review, Defendants hired a group of contract lawyers to initially screen documents for responsiveness and privilege.  *Id*. ¶ 3. Reviewing attorneys, among others, received specific instructions from Defendants' counsel on how to identify documents that contained attorney-client communications or work product.  *Id*. ¶ 4.  The reviewers raised any questions they had in a Q&A log to which Defendants' counsel provided their responses.  *Id*. ¶ 5.  In addition, Defendants' counsel had periodic check-in calls with the contract reviewers to provide further guidance as needed, including on questions regarding privilege.  *Id*. ¶ 6.  A quality control team of Cooley LLP associates and staff attorneys then conducted a second level review of documents identified as privileged or flagged as needing further review.  *Id*. ¶ 7.  The quality control team also second level reviewed all documents hitting on privilege screening terms (including attorney names and words that commonly appear in privileged documents) and a random 10% sample of documents to be produced to identify any responsiveness and/or privilege issues.  *Id*. ¶ 8.  After such quality checks were complete, the privileged documents were entered into a privilege log.  *Id*. ¶ 9.  Of approximately 100,000 documents produced to the SEC, over 46,000 documents were second level reviewed.  *Id*. ¶ 10.

**C.      Defendants' Clawback of the Presentation and the Current Dispute**

On Friday, January 27, 2023 at 7:41 p.m. PT, Plaintiffs filed a Motion for Class Certification, Dkt. No. 147, and attached PowerPoint slides Bates numbered FGEN-CA-0353824 (the "Presentation") as Exhibit 10, Dkt. No. 147-11.[2]  Exhibit 10 had been filed under seal and was not accessible via ECF, but was emailed to counsel for Defendants at 8:15 p.m. PT.  Brien Decl. ¶ 7.  On Monday, January 30, 2023, Defendants' counsel realized that Exhibit 10 may have been inadvertently produced and that an investigation into the reason for its creation was needed in order to determine if it was created for the purpose of seeking legal advice.  *Id*. ¶ 8.  Defendants' counsel

_____
[2] Due to inadequate redaction of confidential information in their original filing, Plaintiffs re-filed their Motion for Class Certification on Tuesday, January 31, 2023.  Dkt. No. 149.

Cooley LLP
Attorneys at Law
Palo Alto

began this investigation the same day. *Id.* Over the course of the week, Defendants' counsel had several phone calls with FibroGen's in-house counsel regarding the Presentation, exchanged multiple emails with FibroGen's in-house counsel, sought information from FibroGen's Chief Medical Officer, Mark Eisner, about the purpose for which he created the Presentation, and reviewed other versions of the Presentation that had been withheld for privilege to determine the context of and reason for its creation. *Id.* ¶ 9.

On Friday, February 3, 2023, Defendants' counsel received final information from Mr. Eisner which confirmed that the Presentation was, in fact, privileged and needed to be clawed back. *Id.* ¶ 10. Defendants' counsel's investigation revealed that the Presentation was prepared by Mr. Eisner at the request of FibroGen's General Counsel, Michael Lowenstein, to facilitate counsel's legal advice to the Company. *Id.* The final version was presented to FibroGen's Board on March 29, 2021 so that in-house and outside counsel could advise the Company on the pooled CV safety analyses supporting the New Drug Application for Roxadustat, among others. *Id.* ¶ 12. After creating the Presentation at counsel's request, Mr. Eisner sent it to Mr. Lowenstein for review and comment, and Mr. Lowenstein in turn sent it to outside counsel for the same. *Id.* ¶ 11; *see also e.g.,* FGEN-CA-PL-02957–58; FGEN-CA-PL-03378–79. As the minutes show, this portion of the meeting (attended by FibroGen's in-house and outside counsel) was subject to "attorney-client privilege" so that counsel could "provid[e] legal advice to the Board." *See* FGEN-CA-0604524. Defendants' counsel's investigation also revealed that Defendants had in fact withheld from the SEC production at least a dozen other versions of the Presentation as privileged. Brien Decl. ¶ 13. Only this one version of the Presentation mistakenly slipped into the production as part of Defendants' voluminous production of almost 100,000 documents to the SEC. Unlike other versions of the Presentation, which were attached to a privileged email communication and/or stamped "attorney-client privileged," this version of the Presentation was a standalone document and thus more difficult for the reviewers to screen for privilege. *Id.* ¶ 14.

That same day, on Friday, February 3, 2023, Defendants clawed back the Presentation from Plaintiffs, only hours after making this determination. *Id.* ¶ 15. The clawback from Plaintiffs occurred at 5:19 p.m. PT, or 8:19 p.m. ET, well after business hours in Washington, D.C. where

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

4

DEFS.' MOT. FOR LEAVE TO FILE
MOT. FOR RECONS.
3:21-CV-02623-EMC

the SEC attorneys were located. *Id*. The document was accordingly clawed back from the SEC the next business day, which was Monday, February 6, 2023. Eber Decl. ¶ 11. In sum, after determining that the Presentation was indeed privileged, it was clawed back from Plaintiffs within hours and from the SEC within one business day. On Thursday, February 9, 2023, the SEC confirmed that they would delete the document. *Id.* ¶ 12. At no time has the SEC indicated that it challenges Defendants' assertion of privilege over the Presentation. *Id.* ¶ 13.

However, Plaintiffs challenged Defendants' clawback of the Presentation and, on February 15, 2023, the parties submitted a joint letter pursuant to section 4 of the Court's Civil Standing Order on Discovery. Dkt. No. 153. Pursuant to that section, the parties were each limited to presenting a one-and-a-half-page summary of respective positions and were not allowed to attach any declaration (unless to support a specific claim of undue burden) or any other attachment for that matter (absent authorization by the Court) that is not a specific excerpt of disputed discovery material. U.S. District Judge Edward M. Chen, Civil Standing Order on Discovery, Feb. 4, 2019, at § 4, https://cand.uscourts.gov/wp-content/uploads/judges/chen-emc/EMC-Standing-Order-Civil-Discovery.pdf (last accessed Apr. 10, 2023) ("Civil Standing Order on Discovery"). On March 29, 2023, the Court granted Plaintiffs' Motion to Compel Production of the Presentation. Dkt. No. 161. Defendants now bring this Motion.

### III.   LEGAL STANDARD

The Court possesses inherent authority to reconsider its interlocutory orders at any point before it enters a final judgment. Fed. R. Civ. P. 54(b); *Amarel v. Connell*, 102 F.3d 1494, 1515 (9th Cir. 1996). A motion for reconsideration may be filed only with leave of court. *See* Civ. L.R. 7-9(a). Leave to move for reconsideration is proper upon, among other grounds, a showing of a "manifest failure by the Court to consider material facts or dispositive legal arguments which were presented to the Court before such interlocutory order." Civ. L.R. 7-9(b)(3); *see also Brown v. Wal-Mart Store, Inc.*, 2018 WL 1993434, at *2 (N.D. Cal. Apr. 27, 2018). The movant may petition the court for leave to file a motion for reconsideration anytime "[b]efore the entry of judgment," so long as the movant "show[s] reasonable diligence in bringing the motion." *Id.* 7-9(a), (b). These factors are satisfied here.

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

5

DEFS.' MOT. FOR LEAVE TO FILE
MOT. FOR RECONS.
3:21-CV-02623-EMC

## IV.    ARGUMENT

The Court's Order should be reconsidered because Defendants did not have an opportunity to present their evidence to the Court and respectfully urge that the Order failed to consider the law that governs the inadvertent disclosure and facts material to the consideration of whether there was undue delay in clawing back the Presentation from the SEC.  The attorney-client privilege, the "oldest of the privileges for confidential communications," is vital to "encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice."  *Upjohn Co.*, 449 U.S. at 389.  A decision to interfere with that privilege should not be taken lightly and Defendants should have a full opportunity to provide the Court with the facts it needs to perform an informed analysis.  *L-3 Commc'ns Corp. v. Jaxon Eng'g & Maint., Inc.*, 2014 WL 183303, at *5 (D. Colo. Jan. 12, 2014) ("Privileges further the administration of justice and should not be set aside lightly.") (citing *McNeil-PPC, Inc. v. Procter & Gamble Co.*, 138 F.R.D. 136, 138 (D. Colo. 1991); *Allen v. West Point-Pepperell Inc.*, 848 F. Supp. 423, 426 (S.D.N.Y. 1994) ("the attorney-client privilege serves a critical function in the operation of the law and the administration of justice ***and may not be disregarded lightly***) (emphasis added) (citing *Upjohn*, 449 U.S. at 389)).

### A.    Rule 502(b) Does Not Apply Because the Parties' Stipulated Protective Order Governs Here

As a preliminary matter, Defendants respectfully submit that the Court should not have engaged in a waiver analysis under Rule 502(b) because the parties negotiated and agreed in their PO that "[t]he provisions of Rule 502(b) do not apply."  *See* Dkt. No. 144 at 15.  Instead, the PO unequivocally states that "[i]nadvertence shall be determined based on the good faith representation of the Producing Party . . . ."  *Id*.  The Court, however, in granting Plaintiffs' Motion to Compel, narrowly (and incorrectly) construed the PO to find that the PO only applied to "those circumstances in which Rule 502(d) would apply."  *See* Order at 3.  Thus, the Court concluded that Rule 502(b) governs the waiver analysis here, as opposed to the PO.  *Id*.  ***But that was not the parties' intention***—Defendants only agreed to re-produce to Plaintiffs their SEC production of almost 100,000 documents ***based on the parties' understanding that the requirements of Rule***

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

6

**DEFS.' MOT. FOR LEAVE TO FILE
MOT. FOR RECONS.
3:21-CV-02623-EMC**

***502(b) would not apply.***[3]  Brien Decl. ¶ 5.  This intent is evident from the PO's attempt to spell out specific circumstances in which privilege will be deemed waived, which do not include disclosure of the Privileged Information to a government agency (or in this case, to the SEC).  *See* Dkt. No. 144 at 15.  Defendants vigorously negotiated for the parties to forego the waiver analyses under Rule 502(b) to ensure they could make the SEC re-production without the need for a fact-intensive inquiry about whether a party has satisfied Rule 502(b)'s "reasonable steps" requirements and without the need for an extensive re-review for privilege for purposes of this class action.  Brien Decl. ¶ 3.  Defendants would suffer prejudice if, having already completed their SEC re-production to Plaintiffs based on the parties' agreement, they are now required to defend against challenges to any clawed back documents by demonstrating compliance with Rule 502(b).  *See e.g., In re Google RTB Consumer Priv. Litig.*, 2022 WL 3229342, at *2 (N.D. Cal. Aug. 10, 2022) (finding persuasive that Google would suffer prejudice if, having conducted a substantial portion of its document review based on its understanding that the Rule 502(b) would not apply, per the parties' *draft* stipulation, it is now required to defend against privilege challenges and demonstrate compliance with Rule 502(b)).

Notwithstanding, even if this Court were to narrowly construe the PO, Defendants' disclosure to the SEC is "connected with the litigation pending before the court" and thus falls within the ambit of Rule 502(d).[4]  As Plaintiffs have repeatedly made clear during the parties' discovery meet and confers, almost all (with very few exceptions) of the documents produced to the SEC are relevant to this action and thus "connected with the litigation pending before the court."  *See* Brien Decl. ¶ 4.  The SEC investigation relates to FibroGen's April 6, 2021 announcement that

---

[3] Indeed, the Model Stipulated Protective Order for U.S. District Court of Northern District of California contemplates respecting the parties' agreement, as incorporated in the PO, as to what constitutes "inadvertent" disclosure.  U.S. District Court Northern District of California, Model Stipulated Protective Order (for standard litigation), at §11, https://www.cand.uscourts.gov/wp-content/uploads/forms/model-protective-orders/CAND_StandardProtOrd.Feb2022.pdf        (last accessed Apr. 10, 2023) ("Pursuant to Federal Rule of Evidence 502(d) and (e), insofar as the parties reach an agreement on the effect of disclosure of a communication or information covered by the attorney-client privilege or work product protection, the parties may incorporate their agreement in the stipulated protective order submitted to the court.")

[4] Indeed, the PO states that "[t]his Order shall be interpreted to provide the *maximum protection* allowed by Federal Rule of Evidence 502(d)."  *See* Dkt No. 144 at 15 (emphasis added).  Thus, this Court should resolve in favor of a non-waiver.

Cooley LLP
Attorneys at Law
Palo Alto

7

Defs.' Mot. for Leave to File
Mot. for Recons.
3:21-cv-02623-EMC

the primary cardiovascular safety analyses included post-hoc changes to the stratification factors—the alleged "corrective disclosure" at the heart of Plaintiffs' claims. *Id*. The SEC investigation is "connected with [this] litigation" for purposes of Rule 502(d) and, thus, this Court should find that the PO governs the waiver analysis here as opposed to Rule 502(b).

**B.      A Motion for Reconsideration Is Proper as Defendants Did Not Have an Opportunity to Adequately Present Their Evidence to the Court**

Even if this Court were to hold that Rule 502(b) governs here, the Court should reconsider its ruling that Defendants waived the attorney-client privilege over the Presentation because the Court did not afford Defendants the opportunity to present any evidence that they satisfied the requirements of Rule 502(b). In finding a waiver, the Court observed that Defendants "have not supported [their] conclusory assertion [of privilege] with evidence." Order at 4. ***However, Defendants were never given an opportunity to present evidence on this issue.*** First, both parties operated under the assumption that the terms of the PO, not Rule 502(b) applied. Second, Judge Chen's Civil Standing Order on Discovery requires "requests for discovery relief . . . be made by the parties in a joint letter brief *no longer than three pages*" and does not allow parties to attach any declaration unless to support a specific claim of undue burden or any other attachment for that matter absent authorization by the Court. Civil Standing Order on Discovery, at § 4 (emphasis added). Accordingly, Defendants were forced to summarize their position on the entirety of the dispute before the Court in a one-and-a-half-page portion of the discovery letter without the ability to submit any supporting declaration (as the other half was reserved for Plaintiffs' position). As a result, this Court could not have considered material facts on this issue. For this reason, a motion for reconsideration is proper. *See Fredenburg v. Cnty. of Santa Clara*, 2009 WL 1814316, at *1 (N.D. Cal. June 25, 2009) (finding appropriate to grant leave to file a motion for reconsideration because "the parties did not have an opportunity to brief the sufficiency of [p]laintiffs' allegations concerning [defendant's] liability"); *Reed v. A.S.A.P. Collection Servs., LLC*, 2018 WL 3707376, at *1 (N.D. Cal. Aug. 3, 2018) (granting in part a motion for reconsideration because the court did not first give a plaintiff notice and an opportunity to address its concern that the plaintiff lacked sufficient evidence to proceed to trial).

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

8

DEFS.' MOT. FOR LEAVE TO FILE
MOT. FOR RECONS.
3:21-CV-02623-EMC

### C.     The Requirements of Rule 502(b) Are Met

If given the opportunity, Defendants can show that (1) their disclosure was inadvertent; (2) they took reasonable steps to prevent disclosure; and (3) they promptly took reasonable steps to rectify the error.

#### 1.     Defendants' disclosure was inadvertent.

"The first inquiry under Rule 502(b)—whether disclosure was inadvertent—is a simple one: did the disclosure occur by mistake or unintentionally?" *Datel Holdings Ltd. v. Microsoft Corp.*, 2011 WL 866993, at *3 (N.D. Cal. Mar. 11, 2011).   Indeed, it is undisputed that Defendants produced the Presentation to the SEC and, in turn, to Plaintiffs through their re-production, ***by mistake.***   The Presentation, prepared by Mr. Eisner at the request of FibroGen's General Counsel, Michael Lowenstein, was to facilitate counsel's legal advice to the Company.   Brien Decl. ¶ 10. The final version was presented to FibroGen's Board on March 29, 2021 so that in-house and outside counsel could advise the Company on the pooled CV safety analyses supporting the New Drug Application for Roxadustat, among others.   After creating the Presentation at counsel's request, Mr. Eisner sent it Mr. Lowenstein for review and comment, and Mr. Lowenstein in turn sent it to outside counsel for the same. *Id*. ¶¶ 11-12; *see also e.g.,* FGEN-CA-PL-02957–58; FGEN-CA-PL-03378–79.   As the minutes show, this portion of the meeting (attended by FibroGen's in-house and outside counsel) was subject to "attorney-client privilege" so that counsel could "provid[e] legal advice to the Board." *See* FGEN-CA-0604524.   Accordingly, Defendants withheld at least a dozen other versions of the Presentation as privileged.   Brien Decl. ¶ 13.   Only this one version of the Presentation was mistakenly produced as part of Defendants' voluminous production of almost 100,000 documents to the SEC.[5]   And as courts have recognized, "[i]nadvertence could include a***ny type of accidental or mistaken production***, particularly when that production occurs during the production of voluminous documents." *United States v. United Health Grp.*, 2020 WL 10731257, at *3 (C.D. Cal. Nov. 9, 2020) (emphasis added).   As such, the Court should find that the first requirement under Rule 502(b) is satisfied.

---

[5] Unlike other versions of the Presentation, which were attached to a privileged email communication and/or stamped "attorney-client privileged," this version was a standalone document and thus more difficult for the reviewers to screen for privilege.   Brien Decl. ¶ 14.

Cooley LLP
Attorneys at Law
Palo Alto

9

DEFS.' MOT. FOR LEAVE TO FILE
MOT. FOR RECONS.
3:21-CV-02623-EMC

### 2. Defendants took reasonable steps to prevent disclosure.

As part of the review process for the SEC production, Defendants adopted robust measures to protect against inadvertent production. Eber Decl. ¶ 2. To conduct a first level review, Defendants hired a team of contract lawyers to initially screen documents for responsiveness and privilege. *Id.* ¶ 3. Reviewing attorneys, among others, received specific instructions from Defendants' counsel on how to identify documents that contained attorney-client communications or work product. *Id.* ¶ 4. The reviewers raised any questions they had in a Q&A log to which Defendants' counsel provided their responses. *Id.* ¶ 5. In addition, Defendants' counsel had periodic check-in calls with the contract reviewers to provide further guidance as needed, including on questions regarding privilege. *Id.* ¶ 6. A quality control team of Cooley LLP associates and staff attorneys then conducted a second level review of documents identified as privileged or flagged as needing further review. *Id.* ¶ 7. The quality control team also second level reviewed all documents hitting on privilege screening terms (including attorney names and words that commonly appear in privileged documents) and a random 10% sample of documents to be produced to identify any further responsiveness and/or privilege issues. *Id.* ¶ 8. After such quality checks were complete, the privileged documents were entered into a privilege log. *Id.* ¶ 9. Of approximately 100,000 documents produced to the SEC, over 46,000 documents were second level reviewed. *Id.* ¶ 10. As illustrated above, Defendants took reasonable steps to prevent disclosure— certainly, Defendants did not have any obligation to engage in any post-production review of the SEC production to determine any inadvertent production. *See Datel*, 2011 WL 866993, at *4 ("[T]he rule does not require the producing party to engage in a post-production review to determine whether any protected communication or information has been produced by mistake.").

### 3. Defendant promptly took reasonable steps to rectify the error.

The Court's Order finds that Defendants' clawback took place "ten days even after Defendants were put on explicit notice of the production" and holds that "[t]his delay is too long to meet the condition of promptness." Order at 5. Respectfully, Defendants believe that ruling is not supported by the majority of the case law and does not consider facts which, for the reasons described above, Defendants have had no opportunity to present to the Court.

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

### a.      The Order miscounts the number of days for the clawback.

Defendants strongly disagree as a factual matter with the Court's conclusion that it took ten days to claw back the document from the SEC.  Plaintiffs' Motion for Class Certification was filed late on a Friday night.[6]  Brien Decl. ¶ 7.  On Monday, the next business day, Defendants promptly began a thorough investigation into the reason for the creation of the document, which was necessary to understand in order to determine whether the document was privileged.   *Id.* ¶ 8. Before conducting that investigation, Defendants could not have made a colorable claim of privilege and could not have clawed back the document.   In good faith and in keeping with Defendants' counsel's professional obligations, that investigation was thorough, including phone calls with in-house counsel, requesting information from the creator of the Presentation and reviewing other versions of the Presentation that had been withheld for privilege in order to determine the reason for the creation of the Presentation.  *Id.* ¶ 9.

In concluding that the time it took Defendants to claw back the document was too long, the Order relies in part on *Mycone Dental Supply Co. Inc. v. Creative Nail Design Inc.*, 2013 WL 4758053, at *3 (N.D. Cal. Sep. 4, 2013).  The Court in *Mycone*, however, explicitly distinguished the facts of that case from a case in which the producing party "took approximately 25 days to investigate a privilege issue that was not immediately obvious and required fact-gathering from percipient witnesses." *Id.* (citing *Valentin v. Bank of New York Mellon Corp.*, 2011 WL 1466122, at *3 (S.D.N.Y. Apr. 14, 2011).  In *Valentin*, the court found there was no undue delay where the producing party undertook a nineteen-day investigation into the origin and context of a document and, once it fully understood the privileged nature of the document, sought its return an additional six days later, twenty-five days after being put on notice of the document.  *Valentin*, 2011 WL 1466122, at *3.

Accordingly, the number of days it took Defendants to claw back the document should run from when the investigation into whether the Presentation was privileged was ***completed***.

---

[6] Plaintiffs note in the joint letter brief that they first cited the Presentation in their discovery letter to Defendants back in January 2023. Dkt. No. 153 at 2.  However, Plaintiffs' mere citation to the draft in an unrelated discovery letter does not put Defendants on notice of their inadvertent production.

Cooley LLP
Attorneys at Law
Palo Alto

11

Defs.' Mot. for Leave to File
Mot. for Recons.
3:21-cv-02623-EMC

Requiring a producing party to claw back a document before determining if it is privileged, in case they later determine that it is, would be entirely unworkable.  By that measure, it took Defendants mere hours to claw back the Presentation from Plaintiffs and one business day to claw it back from the SEC (which additional delay is attributable to the fact that it was well after 8 p.m. on a Friday night on the East Coast at the time of the clawback from Plaintiffs).  The case law is clear that such a prompt clawback does not constitute undue delay.  *See Datel*, 2011 WL 866993, at *5 (defendant took reasonable steps to rectify inadvertent production where it acted "within a few days" of learning of mistake); *see also Njenga v. San Mateo Cnty. Superintendent of Schools*, 2010 WL 1261493, at *17 n.2 (N.D. Cal. Mar. 30, 2010) (holding defendants took prompt action under 502(b) where they sent a clawback letter "one week after [they] discovered the inadvertent disclosure").

> **b.      The case law does not support the Order's determination that the clawback was not timely.**

Even if the Court were to count the number if days it took to claw back the document from the day that Plaintiffs' Motion for Class Certification was filed, Defendants' conduct does not constitute undue delay.

The analysis of undue delay is a highly fact-specific inquiry and must be viewed in the context in which the delay occurred.  *United States ex rel. Bagley v. TRW, Inc.*, 204 F.R.D. 170, 177 (C.D. Cal. 2001) (courts in the Ninth Circuit look to the "totality of the circumstances" to determine whether inadvertent disclosure results in waiver of privilege); Fed. R. Evid. 502(b), advisory committee's explanatory note (Rule 502(b) is "flexible enough" to accommodate the Court's consideration of a number of factors, including "the reasonableness of precautions taken, the time taken to rectify the error, the scope of discovery, the extent of disclosure, [] the overriding issue of fairness. . .the number of documents to be reviewed[,] and the time constraints for production").  For example, in *Mformation Technologies, Inc. v. Research in Motion Ltd.*, the court found that nine days was not undue delay, where the nine days included one intervening weekend (nine days following Wednesday, April 7, 2010), 2010 WL 3154441, at *2 (N.D. Cal. Aug. 9, 2010).  Here, the Court counted ten days including ***two*** intervening weekends between Plaintiffs'

Cooley LLP
Attorneys at Law
Palo Alto

12

Defs.' Mot. for Leave to File
Mot. for Recons.
3:21-cv-02623-EMC

filing of the Motion for Class Certification and Defendants' clawback from the SEC in the instant case. *See* Order at 5; Brien Decl. ¶ 7; Eber Decl. ¶ 11.

Likewise, in S*tamps.com, Inc. v. Endicia, Inc.*, defense counsel brought a production of potentially privileged documents to the attention of plaintiff's counsel. 2008 WL 11338241, at *2 (C.D. Cal. Oct. 6, 2008). Plaintiff's counsel took a number of days to investigate the issue. At first, the documents were reviewed by a new associate and paralegal while senior counsel was traveling for depositions and another trial, and they were not properly identified as privileged, which mistake created delay. *Id.* The court, however, found no undue delay where plaintiff provided notice of inadvertent production within five business days (as required by the stipulated protective order) of senior counsel and plaintiff's general counsel **actually becoming aware** of the inadvertent production by looking at the documents themselves and discovering there had been an inadvertent production of privileged material. *Id.* at *2 n.2. So too here, Defendants timely clawed back the document within five business days from Plaintiffs, and six business days from the SEC, and considerably less time from when Defendants actually became aware that the document was indeed privileged.

The cases cited in the Order do not warrant a different outcome. The Order cites *Skansgaard v. Bank of Am., N.A.*, 2013 WL 828210, at *3 (W.D. Wash. Mar. 6, 2013), for its citation to "cases finding that a delay as short as *six days* weighed in favor of finding waiver." Order at 5 (emphasis in original). The underlying case is *Atronic Int'l, GMBH v. SAI Semispecialists of Am., Inc.*, 232 F.R.D. 160, 165 (2005). In *Atronic*, the six-day delay in question was not a delay in clawing back the document but rather an *unexplained* six-day delay in reviewing the binder of documents containing the privileged documents from opposing counsel. *Id.* In fact, the court in *Atronic* found that it weighed slightly in the producing party's *favor* that "plaintiff's counsel did attempt to promptly correct the error upon discovery," despite the delay in discovering it. *Id.*

Here, Defendants' need to take time to investigate whether the Presentation was privileged is eminently reasonable to ensure that their assertion of privilege was valid and supported. Indeed, as soon as Defendants determined that the Presentation was privileged, they clawed it back from Plaintiffs within hours and the SEC within one business day. Brien Decl. ¶ 15; Eber Decl. ¶ 11.

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

13

DEFS.' MOT. FOR LEAVE TO FILE
MOT. FOR RECONS.
3:21-CV-02623-EMC

Viewed in this context and considering the need for Defendants to investigate whether the Presentation was privileged before it could be clawed back, there was no undue delay.

### c.    The SEC's acceptance of the clawback should be dispositive on the issue of waiver.

The Order undertook a privilege assessment based on production of the Presentation to the SEC, rather than the production to Plaintiffs.  In so doing, the Order held that the privilege over the Presentation was waived in the class action because the privilege over the Presentation was waived to the SEC.  Order at 5–6.  However, upon Defendants' clawing the document back from the SEC, the SEC promptly agreed to delete the document, without raising any challenge to the clawback.  Eber Decl. ¶ 12.  Given that the Order relied on the SEC's production, the SEC's acceptance of the clawback should be dispositive on whether the privilege was waived.  There is simply no support for finding that a waiver occurred in a separate proceeding in which the recipient of the claw back raised no challenge and readily agreed to delete the document.

### D.    Defendants Exercised Reasonable Diligence in Moving for Leave to Seek Reconsideration

Defendants have acted with the "reasonable diligence" required by Local Rule 7-9(b) by bringing this motion within twelve days of the Order.  *See Woods v. August*, 2018 WL 5841311, at *1 (N.D. Cal. Nov. 8, 2018) (Orrick, J.) (granting request for leave to move for reconsideration on the basis of "manifest failure" filed less than four weeks after the court's order); *see also Roberts v. AT&T Mobility LLC*, 2018 WL 1317346, at *2 (N.D. Cal. Mar. 14, 2018) (Chen, J.) (finding plaintiffs "acted with reasonable diligence" by filing motion for leave "within approximately a month"); *In re NVIDIA GPU Lit.*, 2009 WL 975530, at *1 (N.D. Cal. Apr. 10, 2009) (granting motion for leave to file motion for reconsideration of order refusing to unrelate case filed fifteen days after order).

### V.    CONCLUSION

For the reasons stated above, the Court should grant Defendants' motion for leave of Court to file a motion for reconsideration and reconsider its Order to find that Defendants did not waive attorney-client privilege over the Presentation.

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

14

DEFS.' MOT. FOR LEAVE TO FILE
MOT. FOR RECONS.
3:21-CV-02623-EMC

Dated:  April 10, 2023                          COOLEY LLP


                                                By:   */s/ Patrick E. Gibbs*
                                                      Patrick E. Gibbs

                                                *Attorneys for Defendants*
                                                *FibroGen, Inc., Enrique Conterno,*
                                                *James Schoeneck, Mark Eisner,*
                                                *and Pat Cotroneo*

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

15

DEFS.' MOT. FOR LEAVE TO FILE
MOT. FOR RECONS.
3:21-CV-02623-EMC