COOLEY LLP
PATRICK E. GIBBS (183174)
(pgibbs@cooley.com)
TIJANA M. BRIEN (286590)
(tbrien@cooley.com)
BRETT H. DE JARNETTE (292919)
(bdejarnette@cooley.com)
ZANETA J. KIM (317844)
(zkim@cooley.com)
AMIE L. SIMMONS (336356)
(asimmons@cooley.com)
3175 Hanover Street
Palo Alto, California 94304-1130
Telephone:     +1 650 843 5000
Facsimile:     +1 650 849 7400

CAITLIN MUNLEY (*Pro Hac Vice*)
(cmunley@cooley.com)
ALEXANDRA EBER (*Pro Hac Vice*)
(aeber@cooley.com)
1299 Pennsylvania Ave., N.W., Suite 700
Washington, DC 20004-2400
Telephone:     +1 202 842 7800
Facsimile:     +1 202 842 7899

Attorneys for Defendants
FibroGen, Inc., Enrique Conterno, James Schoeneck,
Mark Eisner, and Pat Cotroneo

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE FIBROGEN, INC., SECURITIES LITIGATION | Case No. 3:21-cv-02623-EMC<br><br>**CLASS ACTION**<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR RECONSIDERATION**<br><br>JUDGE:   Hon. Edward Chen |

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

DEFS.' MOTION FOR
RECONSIDERATION
3:21-CV-02623-EMC

**TABLE OF CONTENTS**

Page

NOTICE OF MOTION AND MOTION ................................................................................................ 1

MEMORANDUM OF POINTS AND AUTHORITIES ..................................................................... 1

I.      INTRODUCTION .................................................................................................................. 1

II.     FACTUAL BACKGROUND ............................................................................................... 1

    A.      The Document Review Process for the SEC Production ...................................... 1

    B.      The Stipulated Protective Order .............................................................................. 2

    C.      Defendants' Clawback of the Presentation ............................................................. 3

    D.      The Presentation Was Prepared at Counsel's Request, to Facilitate Legal
        Advice from In-House and Outside Counsel ......................................................... 4

    E.      Procedural Background ............................................................................................. 6

III.    LEGAL STANDARD ........................................................................................................... 6

IV.     ARGUMENT .......................................................................................................................... 6

    A.      The SEC's Acceptance of the Clawback Should Be Dispositive .......................... 7

    B.      Rule 502(b) Does Not Apply Because the Parties' Stipulated Protective
        Order Governs Here .................................................................................................. 7

    C.      The Requirements of Rule 502(b) Are Met ............................................................ 9

        1.      Defendants' disclosure was inadvertent. ................................................... 9

        2.      Defendants took reasonable steps to prevent disclosure. ........................ 10

        3.      Defendant promptly took reasonable steps to rectify the error. ............... 11

            a.      The number of days Defendants took to claw back the
                Presentation should be calculated starting from the date
                Defendants confirmed the Presentation was in fact
                privileged. .................................................................................... 12

            b.      The case law does not support the Order's determination
                that the clawback was not timely. ............................................... 13

V.      CONCLUSION .................................................................................................................... 15

Cooley LLP
Attorneys at Law
Palo Alto

i

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Allen v. West Point-Pepperell Inc.*,
848 F. Supp. 423 (S.D.N.Y. 1994) ......................................................................................... 6

*Amarel v. Connell*,
102 F.3d 1494 (9th Cir. 1996) ................................................................................................ 6

*Atronic Int'l, GMBH v. SAI Semispecialists of Am., Inc.*,
232 F.R.D. 160 (2005) ..................................................................................................... 14, 15

*United States ex rel. Bagley v. TRW, Inc.*,
204 F.R.D. 170 (C.D. Cal. 2001) ......................................................................................... 13

*Braford v. Voong*,
2020 WL 7265627 (N.D. Cal. Dec. 10, 2020) ....................................................................... 6

*Datel Holdings Ltd. v. Microsoft Corp.*,
2011 WL 866993 (N.D. Cal. Mar. 11, 2011) ..................................................... 9, 10, 11, 13

*Ecological Rights Found. v. Federal Emergency Mgmt. Agency*,
2017 WL 24859 (N.D. Cal. Jan. 3, 2017) ............................................................................ 12

*In re Google RTB Consumer Priv. Litig.*,
2022 WL 3229342 (N.D. Cal. Aug. 10, 2022) ....................................................................... 8

*Klein v. Meta Platforms, Inc.*,
2022 WL 767096 (N.D. Cal. Mar. 11, 2022) ....................................................................... 10

*L-3 Commc'ns Corp. v. Jaxon Eng'g & Maint., Inc.*,
2014 WL 183303 (D. Colo. Jan. 12, 2014) ............................................................................ 6

*Luna Gaming-San Diego, LLC v. Dorsey & Whitney, LLP*,
2010 WL 275083 (S.D. Cal. Jan. 13, 2010) ........................................................................ 12

*McNeil-PPC, Inc. v. Procter & Gamble Co.*,
138 F.R.D. 136 (D. Colo. 1991) ............................................................................................. 6

*Mformation Techs., Inc. v. Research in Motion Ltd.*,
2010 WL 3154441 (N.D. Cal. Aug. 9, 2010) ....................................................................... 14

*Mycone Dental Supply Co. Inc. v. Creative Nail Design Inc.*,
2013 WL 4758053 (N.D. Cal. Sep. 4, 2013) .................................................................. 12, 13

*Njenga v. San Mateo Cnty. Superintendent of Schools*,
2010 WL 1261493 (N.D. Cal. Mar. 30, 2010) ..................................................................... 13

Cooley LLP
Attorneys at Law
Palo Alto

ii

Defs.' Motion for
Reconsideration
3:21-cv-02623-EMC

## TABLE OF AUTHORITIES
### (Continued)

**Page(s)**

*School Dist. No. 11 v. ACandS, Inc.*,
5 F.3d 1255 (9th Cir. 1993) ................................................................................................ 6

*Sikorsky Aircraft Corp. v. U.S.*,
106 Fed. Cl. 571 (2012) ..................................................................................................... 12

*Skansgaard v. Bank of Am., N.A.*,
2013 WL 828210 (W.D. Wash. Mar. 6, 2013) ............................................................ 12, 14

S*tamps.com, Inc. v. Endicia, Inc.*,
2008 WL 11338241 (C.D. Cal. Oct. 6, 2008) .................................................................... 14

*United States v. United Health Grp.*,
2020 WL 10731257 (C.D. Cal. Nov. 9, 2020) ................................................................... 10

*Upjohn Co. v. U.S.*,
449 U.S. 383 (1981) ........................................................................................................ 1, 6

*Valentin v. Bank of New York Mellon Corp.*,
2011 WL 1466122 (S.D.N.Y. Apr. 14, 2011) .................................................................... 13

**Other Authorities**

Fed. R. Civ. P. 54(b) ............................................................................................................... 6

Fed. R. Evid.
502(b) ............................................................................................................... *passim*
502(d) ...................................................................................................... 3, 7, 8, 9
502(e) .................................................................................................................... 8

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

iii

**NOTICE OF MOTION AND MOTION**

TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD: PLEASE TAKE NOTICE THAT, on a date determined by this Court, FibroGen, Inc. ("FibroGen" or the "Company"), Enrique Conterno, James Schoeneck, Mark Eisner, and Pat Cotroneo (collectively, "Defendants") will and hereby do move this Court for reconsideration of this Court's Order Granting Plaintiffs' Motion to Compel Production (Dkt. No. 161) (the "Order"). This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities and declarations of Tijana Brien, Alexandra Eber, and Mark Eisner, the pleadings and papers on file in this action, and such other matters as may be presented to the Court.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     INTRODUCTION**

Defendants respectfully seek reconsideration of this Court's Order Granting Plaintiffs' Motion to Compel, which interfered with the "oldest of the privileges," *Upjohn Co. v. U.S.*, 449 U.S. 383, 389 (1981) – that of a client to communicate confidentially with its counsel. Having been granted leave to seek reconsideration of the Order, Defendants now describe fully why Rule 502(b) does not apply and, if it were to apply, how Defendants have met its requirements. In doing so, Defendants will not repeat here the reasons why reconsideration is proper but rather incorporate by reference the arguments made in their Motion for Leave to File a Motion for Reconsideration, Dkt. No. 168.

**II.     FACTUAL BACKGROUND**

**A.     The Document Review Process for the SEC Production**

In October 2021, the U.S. Securities and Exchange Commission ("SEC") issued a broad subpoena to FibroGen requesting ten categories of documents related to Roxadustat and the Company's public statements about the drug. Decl. of Alexandra Eber in Support of Mot. for Recons. ("Eber Decl.") ¶ 2. Over the course of the next few months, FibroGen negotiated with the SEC regarding the scope of the requests and the search terms that would be used for electronic documents. *Id*. ¶ 3. FibroGen then spent nearly a year reviewing more than 166,000 documents

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

1

DEFS.' MOTION FOR
RECONSIDERATION
3:21-CV-02623-EMC

for responsiveness and privilege and ultimately produced more than 100,000 documents – consisting of more than 700,000 pages – to the SEC. *Id*. ¶ 4.

As part of the review process for the SEC production, Defendants adopted robust measures to protect against inadvertent production of privileged materials. *Id*. ¶ 5. To conduct a first level review, Defendants hired a group of contract lawyers to initially screen documents for responsiveness and privilege. *Id*. ¶ 6. Reviewing attorneys received specific instructions from Defendants' counsel on how to identify documents that contained attorney-client communications or work product. *Id*. ¶ 7. The reviewers raised any questions they had in a Q&A log to which Defendants' counsel provided their responses. *Id*. ¶ 8. Defendants' counsel also had periodic check-in calls with the contract reviewers to provide further guidance as needed, including on questions regarding privilege. *Id*. ¶ 9.

A quality control team of Cooley LLP associates and staff attorneys then conducted a second level review of documents identified as privileged or flagged as needing further review. *Id*. ¶ 10. The quality control team also second level reviewed all documents hitting on privilege screening terms (including attorney names and words that commonly appear in privileged documents) and a random 10% sample of documents to be produced to identify any responsiveness and/or privilege issues. *Id*. ¶ 11. Only after such quality checks were complete were documents produced. *Id*. ¶ 12. Of approximately 100,000 documents produced to the SEC, over 46,000 documents were second level reviewed. *Id*. ¶ 13.

After this process was complete, all documents that had been withheld from production on the basis of privilege were reviewed again. *Id*. ¶ 14. Documents confirmed as fully or partially privileged were entered into a privilege log, partially privileged documents were redacted, and documents ultimately determined not to be privileged (or privileged in part and redacted) were produced. *Id*. Defendants logged more than 7,800 documents withheld or redacted for privilege. *Id*. ¶ 15.

### B.    The Stipulated Protective Order

Over the course of two months, from August to October 2022, the parties to this action vigorously negotiated a Stipulated Protective Order ("PO"). Decl. of Tijana M. Brien in Support

Cooley LLP
Attorneys at Law
Palo Alto

2

Defs.' Motion for
Reconsideration
3:21-cv-02623-EMC

of Mot. for Recons. ("Brien Decl.") ¶ 2.  The terms included section 11.1, which addressed inadvertent production of privileged or otherwise protected material. *Id*.; Dkt. No. 144 (Stipulated Protective Order) at 14–16.  The relevant section read: "This Order shall be interpreted to provide the maximum protection allowed by Federal Rule of Evidence 502(d).  The provisions of Rule 502(b) do not apply.  Inadvertence shall be determined based on the good faith representation of the Producing Party, but the Challenging Party reserves the right to challenge whether such representation was made in good faith."  Dkt. No. 144 at 15.  As the party bearing most of the production burden, it was important to Defendants to include the above terms so that they could conduct a reasonable document review and production without the need for a fact-intensive inquiry as to whether they satisfied Rule 502(b)'s "reasonable steps" requirements.  Brien Decl. ¶ 3.  These provisions were especially critical in light of Plaintiffs' request that Defendants re-produce to Plaintiffs, in short order, close to 100,000 documents Defendants had produced to the SEC in connection with its investigation into FibroGen's April 6, 2021, press release.  *Id*. ¶ 4.  Defendants ultimately agreed to make the re-production based, in part, on the understanding that the requirements of Rule 502(b) would not apply, and that Defendants would not need to undertake an extensive re-review of privilege for purposes of this class action.  *Id*. ¶ 5.  Defendants completed the re-production in three installments on November 19, 2022, December 8, 2022, and December 19, 2022, after this Court entered the PO on October 21, 2022.  *Id*. ¶ 6.

### C.  Defendants' Clawback of the Presentation

On Friday, January 27, 2023, at 7:41 p.m. PT, Plaintiffs filed a Motion for Class Certification, Dkt. No. 147, and attached PowerPoint slides Bates numbered FGEN-CA-0353824 (the "Presentation") as Exhibit 10, Dkt. No. 147-11.[1]  Brien Decl. ¶ 7.  Exhibit 10 had been filed under seal and was not accessible by ECF, but was emailed to counsel for Defendants at 8:15 p.m. PT.  *Id*.  On Monday, January 30, 2023, Defendants' counsel realized that Exhibit 10 may have been inadvertently produced and that an investigation into the reason for its creation was needed in order to determine if it was created for the purpose of seeking legal advice.  *Id*. ¶ 8.  Defendants'

---

[1] Due to inadequate redaction of confidential information in their original filing, Plaintiffs re-filed their Motion for Class Certification on Tuesday, January 31, 2023.  Dkt. No. 149.

Cooley LLP
Attorneys at Law
Palo Alto

3

Defs.' Motion for
Reconsideration
3:21-cv-02623-EMC

counsel began this investigation the same day.  *Id.*  Over the next five days, Defendants' counsel had multiple phone calls and exchanged multiple emails with FibroGen's in-house counsel, sought information from FibroGen's Chief Medical Officer, Mark Eisner, about the purpose for which he created the Presentation, and reviewed other versions of the Presentation that had been withheld for privilege to determine the context of and reason for its creation.  *Id.* ¶ 9.  On Friday, February 3, 2023, Defendants' counsel received confirmation that the Presentation was a draft that Mr. Eisner prepared at the request of FibroGen's General Counsel, Michael Lowenstein, to facilitate in-house and outside counsel's legal advice to the Company.  *Id*. ¶ 10; Decl. of Mark Eisner in Support of Mot. for Recons. ("Eisner Decl.") ¶¶ 3–4.  Together with the other information gathered over the course of the week, the information about the origin of the Presentation confirmed for Defendants' counsel that the Presentation was privileged and needed to be clawed back.  Brien Decl. ¶¶ 9–11. That same day, just hours after confirming the facts supporting the application of the attorney-client privilege, Defendants clawed back the Presentation from Plaintiffs.  *Id*. ¶ 14.  The clawback from Plaintiffs occurred at 5:19 p.m. PT, or 8:19 p.m. ET, well after business hours in Washington, D.C. where the SEC attorneys were located.  *Id*.  The document was accordingly clawed back from the SEC the next business day, which was Monday, February 6, 2023.  Eber Decl. ¶ 16.  In sum, after determining that the Presentation was indeed privileged, Defendants clawed it back from Plaintiffs within hours and from the SEC within one business day.  On Thursday, February 9, 2023, the SEC staff confirmed that they would delete the document.  *Id.* ¶ 17.  At no time has the SEC indicated that it challenges Defendants' assertion of privilege over the Presentation.  *Id.* ¶ 18.

### D.   The Presentation Was Prepared at Counsel's Request, to Facilitate Legal Advice from In-House and Outside Counsel

As explained above, Defendants' counsel's investigation revealed that the Presentation was a draft prepared by Mr. Eisner at the request of FibroGen's General Counsel, Michael Lowenstein, to facilitate legal advice from in-house and outside counsel to the Company.  Brien Decl. ¶ 10; Eisner Decl. ¶¶ 3–4.

While preparing for the Cardiovascular and Renal Drug Advisory Committee ("CRDAC") meeting set by the FDA for July 15, 2021, Mr. Eisner requested legal advice on behalf of the

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

4

DEFS.' MOTION FOR
RECONSIDERATION
3:21-CV-02623-EMC

Company from Mr. Lowenstein. Eisner Decl. ¶ 2. In response to Mr. Eisner's request for legal advice, Mr. Lowenstein requested further information to facilitate his and outside counsel's ability to provide that advice to the Company. *Id.* ¶ 3. In response to Mr. Lowenstein's request, Mr. Eisner began drafting a set of PowerPoint slides. *Id.* ¶ 4. The Presentation is the first draft of the PowerPoint slides that Mr. Eisner drafted in response to Mr. Lowenstein's request. *Id.*

After creating the Presentation at counsel's request, Mr. Eisner sent it to Mr. Lowenstein to facilitate legal advice from Mr. Lowenstein and outside counsel. *Id.* ¶ 5; *see also e.g.,* FGEN-CA-PL-02957–58; FGEN-CA-PL-03378–79. Multiple versions of the document were exchanged between Mr. Eisner, Mr. Lowenstein and outside counsel to provide legal advice to the Company. Eisner Decl. ¶ 5.

In creating the first draft of the slides, Mr. Eisner was focused on the content of the Presentation, not the labeling, and inadvertently did not mark it as "Attorney-Client Privilege" on the first draft. *Id.* ¶ 4. Mr. Lowenstein, however, added that designation to the next version of the document, and that designation was retained on all subsequent versions of the document, in keeping with the purpose of the document. *Id.* Defendants withheld from the SEC production, on privilege grounds, at least a dozen other versions of these PowerPoint slides, each of which was labeled "attorney-client privilege" and/or attached to an email to or from a lawyer. Brien Decl. ¶¶ 12–13. To Defendants' knowledge, Mr. Eisner's first draft of the Presentation — a standalone document stored on Mr. Eisner's hard drive — was the only version that was not either marked "attorney-client privilege" or attached to an email to or from a lawyer, and it was the only one that was mistakenly produced to the SEC rather than withheld as privileged. *Id.* ¶ 13.

The final version of the slides was presented to FibroGen's Board of Directors (the "Board") at a meeting on March 29, 2021. Eisner Decl. ¶ 6. During that session, in-house counsel and outside counsel provided legal advice to the Board related to Roxadustat's cardiovascular safety data, the NDA submission, and the Company's public disclosures about those topics. *Id.* As the minutes show, this portion of the meeting (attended by FibroGen's in-house and outside counsel) was subject to "attorney-client privilege" so that counsel could "provid[e] legal advice to the Board." *See* FGEN-CA-0604524.

Cooley LLP
Attorneys at Law
Palo Alto

5

Defs.' Motion for
Reconsideration
3:21-cv-02623-EMC

**E.    Procedural Background**

Plaintiffs challenged Defendants' clawback of the Presentation and, on February 15, 2023, the parties submitted a joint letter pursuant to section 4 of the Court's Civil Standing Order on Discovery.  Dkt. No. 153.  On March 29, 2023, the Court granted Plaintiffs' Motion to Compel Production of the Presentation.  Dkt. No. 161.  On April 10, 2023, Defendants filed a Motion for Leave to File a Motion for Reconsideration, Dkt. No. 168, which the Court granted on April 13, 2023, Dkt. No. 170.  Defendants now bring this Motion.

**III.    LEGAL STANDARD**

The Court possesses inherent authority to reconsider its interlocutory orders at any point before final judgment.  Fed. R. Civ. P. 54(b); *Amarel v. Connell*, 102 F.3d 1494, 1515 (9th Cir. 1996).  "'Reconsideration is appropriate if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law.'"  *Braford v. Voong*, 2020 WL 7265627, at *4 (N.D. Cal. Dec. 10, 2020) (citing *School Dist. No. 11 v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993)).

**IV.    ARGUMENT**

The attorney-client privilege, the "oldest of the privileges for confidential communications," is vital to "encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice."  *Upjohn Co.*, 449 U.S. at 389.  A decision to interfere with that privilege should not be taken lightly.  *L-3 Commc'ns Corp. v. Jaxon Eng'g & Maint., Inc.*, 2014 WL 183303, at *5 (D. Colo. Jan. 12, 2014) (citing *McNeil-PPC, Inc. v. Procter & Gamble Co.*, 138 F.R.D. 136, 138 (D. Colo. 1991); *Allen v. West Point-Pepperell Inc.*, 848 F. Supp. 423, 426 (S.D.N.Y. 1994) ("the attorney-client privilege serves a critical function in the operation of the law and the administration of justice ***and may not be disregarded lightly***") (emphasis added) (citing *Upjohn*, 449 U.S. at 389)).

The Court's Order should be reconsidered and reversed because the Order constitutes clear error insofar as it finds that the clawback is governed by Rule 502(b) and, even if it were, that there was undue delay in clawing back the Presentation from the SEC.  The Order also constitutes a manifest injustice to Defendants because it interferes with FibroGen's ability to communicate

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

6

DEFS.' MOTION FOR
RECONSIDERATION
3:21-CV-02623-EMC

confidentially with its counsel when waiver is not supported by the facts or law.

### A. The SEC's Acceptance of the Clawback Should Be Dispositive

As a preliminary matter, to the extent this Court looks to Defendants' production of the Presentation *to the SEC*, as opposed to Defendants' production *to Plaintiffs*, to assess whether there was a waiver of privilege, the SEC's acceptance of the clawback should be dispositive on the issue waiver. The Order held that the privilege over the Presentation was waived in the class action because the privilege over the Presentation was waived to the SEC. Order at 5–6. However, upon Defendants' clawing the document back from the SEC, ***the SEC promptly agreed to delete the document, without raising any challenge to the clawback***. Eber Decl. ¶¶ 17–18. There is simply no support for finding that a waiver occurred in a separate proceeding in which the recipient of the clawback raised no challenge and readily agreed to delete the document. Put another way, where the SEC has acknowledged FibroGen's privilege assertion and agreed to destroy the document, there is no basis to find a privilege waiver based on FibroGen's inadvertent production of the document to the SEC.

### B. Rule 502(b) Does Not Apply Because the Parties' Stipulated Protective Order Governs Here

Defendants respectfully submit that the Court should not have engaged in a waiver analysis under Rule 502(b) because the parties negotiated and agreed in their PO that "[t]he provisions of Rule 502(b) do not apply." *See* Dkt. No. 144 at 15. Instead, the PO unequivocally states that "[i]nadvertence shall be determined based on the good faith representation of the Producing Party . . . ." *Id*. The Court, however, in granting Plaintiffs' Motion to Compel, narrowly (and incorrectly) construed the PO to find that the PO only applied to "those circumstances in which Rule 502(d) would apply." *See* Order at 3. Thus, the Court concluded that Rule 502(b) governs the waiver analysis here, as opposed to the PO. *Id*. ***But that was not the parties' intention***—Defendants only agreed to re-produce to Plaintiffs their SEC production of almost 100,000 documents ***based on the parties' understanding that the requirements of Rule 502(b) would not apply.***[2] Brien Decl. ¶ 5.

---

[2] The Model Stipulated Protective Order for U.S. District Court of Northern District of California contemplates respecting the parties' agreement, as incorporated in the PO, as to what constitutes "inadvertent" disclosure. U.S. District Court Northern District of California, Model Stipulated

Cooley LLP
Attorneys at Law
Palo Alto

7

Defs.' Motion for
Reconsideration
3:21-cv-02623-EMC

This intent is evident from the PO's attempt to spell out specific circumstances in which privilege will be deemed waived, which do not include disclosure of the Privileged Information to a government agency (or in this case, to the SEC). *See* Dkt. No. 144 at 15. Defendants vigorously negotiated for the parties to forego the waiver analyses under Rule 502(b) to ensure they could re-produce to Plaintiffs the SEC production without the need for a fact-intensive inquiry about whether a party has satisfied Rule 502(b)'s "reasonable steps" requirements and without the need for an extensive re-review for privilege for purposes of this class action. Brien Decl. ¶ 3. Defendants would suffer prejudice if, having already completed their SEC re-production to Plaintiffs based on the parties' agreement, they are now required to defend against challenges to any clawed back documents by demonstrating compliance with Rule 502(b). *See e.g., In re Google RTB Consumer Priv. Litig.*, 2022 WL 3229342, at *2 (N.D. Cal. Aug. 10, 2022) (finding persuasive that Google would suffer prejudice if, having conducted a substantial portion of its document review based on its understanding that the Rule 502(b) would not apply, per the parties' *draft* stipulation, it is now required to defend against privilege challenges and demonstrate compliance with Rule 502(b)).

Notwithstanding, even if this Court were to narrowly construe the PO, Defendants' disclosure to the SEC is "connected with the litigation pending before the court" and thus falls within the ambit of Rule 502(d).[3] As Plaintiffs themselves have repeatedly made clear during the parties' discovery meet and confers, almost all (with very few exceptions) of the documents produced to the SEC are relevant to this action and thus "connected with the litigation pending before the court." *See* Brien Decl. ¶ 4. The SEC investigation relates to FibroGen's April 6, 2021 announcement that the primary cardiovascular safety analyses included changes to the stratification factors—the alleged "corrective disclosure" at the heart of Plaintiffs' claims. *Id*. The SEC

Protective Order (for standard litigation), § 11, https://www.cand.uscourts.gov/wp-content/uploads/forms/model-protective-orders/CAND_StandardProtOrd.Feb2022.pdf (last accessed Apr. 10, 2023) ("Pursuant to Federal Rule of Evidence 502(d) and (e), insofar as the parties reach an agreement on the effect of disclosure of a communication or information covered by the attorney-client privilege or work product protection, the parties may incorporate their agreement in the stipulated protective order submitted to the court.")

[3] Indeed, the PO states that "[t]his Order shall be interpreted to provide the *maximum protection* allowed by Federal Rule of Evidence 502(d)." *See* Dkt No. 144 at 15 (emphasis added). Thus, this Court should resolve in favor of a non-waiver.

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

8

DEFS.' MOTION FOR
RECONSIDERATION
3:21-CV-02623-EMC

investigation is "connected with [this] litigation" for purposes of Rule 502(d) and, thus, this Court should find that the PO governs the waiver analysis here as opposed to Rule 502(b).

### C.      The Requirements of Rule 502(b) Are Met

Even if Rule 502(b) were to govern, the requirements of that Rule are met because (1) the disclosure was inadvertent; (2) Defendants took reasonable steps to prevent disclosure; and (3) Defendants promptly took reasonable steps to rectify the error.

### 1.      Defendants' disclosure was inadvertent.

"The first inquiry under Rule 502(b)—whether disclosure was inadvertent—is a simple one: did the disclosure occur by mistake or unintentionally?" *Datel Holdings Ltd. v. Microsoft Corp.*, 2011 WL 866993, at *3 (N.D. Cal. Mar. 11, 2011). Here, it is clear that Defendants produced the Presentation to the SEC and, in turn, to Plaintiffs through their re-production, **by mistake.** As explained above, *supra* § II(D), the Presentation was a privileged document created by Mr. Eisner at the request of counsel to facilitate legal advice to the Company. Eisner Decl. ¶¶ 3–4. In creating the first draft of the slides, Mr. Eisner was focused on the content of the Presentation, not the labeling, and inadvertently did not mark it as "Attorney-Client Privilege" on the first draft. *Id.* ¶ 4. As this Presentation was not marked "Attorney-Client Privileged" and was a standalone document collected from Mr. Eisner's files—unlike, for example, other versions of the Presentation that were attached to a privileged communication—it was more difficult for the reviewer to screen for privilege. Brien Decl. ¶ 12. And certainly, the circumstances of its creation would not have been apparent to the reviewer. Mr. Lowenstein, however, added that designation to the next version of the document, and that designation was retained on all subsequent versions of the document, in keeping with its purpose. Eisner Decl. ¶ 4. Defendants withheld at least a dozen other versions of the Presentation as privileged. Brien Decl. ¶ 11. Only this one version of the Presentation was mistakenly produced as part of Defendants' voluminous production of almost 100,000 documents to the SEC. Simply put, Defendants did not intentionally produce the first draft of the Presentation to either the SEC or to Plaintiffs, and if Defendants' counsel had been aware of this version, it would have been withheld as privileged. *Id.* ¶ 13.

Cooley LLP
Attorneys at Law
Palo Alto

9

Defs.' Motion for
Reconsideration
3:21-cv-02623-EMC

As courts have recognized, "inadvertence could include *any type of accidental or mistaken production*, particularly when that production occurs during the production of voluminous documents." *United States v. United Health Grp.*, 2020 WL 10731257, at \*3 (C.D. Cal. Nov. 9, 2020) (emphasis added). As such, the Court should find that the first requirement under Rule 502(b) is satisfied.

### 2. Defendants took reasonable steps to prevent disclosure.

A party takes "reasonable steps to prevent disclosure" where it uses multiple layers of review to screen documents for privilege concerns. *See Datel*, 2011 WL 866993, at \*4 (inadvertent disclosure excused where defendant used multiple teams of lawyers to review the documents for privilege). The Court may infer a party took reasonable steps from the relative size of the production as compared to the volume of inadvertently disclosed documents. *See id.* (177 privileged documents were produced in a batch of 119,000); *Klein v. Meta Platforms, Inc.*, 2022 WL 767096, at \*9 (N.D. Cal. Mar. 11, 2022) (inferring the disclosing party used reasonable steps to prevent disclosure of privileged material despite party's otherwise "poor showing on this point" because it disclosed nine privileged communications in a production of more than 12 million pages). Here, there is no question Defendants took reasonable steps to prevent disclosure.

As part of the review process for the SEC production, Defendants adopted robust measures to protect against inadvertent production. Eber Decl. ¶ 5. Defendants employed multiple layers of review, first by contract lawyers guided by specific responsiveness and privilege screening instructions, coupled with active oversight and engagement to answer questions and catch issues prior to production. *Id*. ¶¶ 6–9. Defendants' counsel then conducted its own quality control review of the documents, reviewing thousands of documents hitting on privilege search terms and reviewing other random samples of documents to be produced. *Id.* ¶¶ 10–11. In total, of approximately 100,000 documents produced to the SEC, over 46,000 documents were second level reviewed, nearly half of the total documents produced. *Id.* ¶ 13. These were industry-standard, reasonable steps to prevent the inadvertent disclosure of privileged documents. Indeed, the steps outlined above and in § II.B are at least as comprehensive as the "fairly robust measures" found reasonable in *Datel*. *Datel,* 2011 WL 866993, at \*4 (describing layered review process including

Cooley LLP
Attorneys at Law
Palo Alto

10

Defs.' Motion for
Reconsideration
3:21-cv-02623-EMC

trained contract reviewers, further privilege tag review, and defendant's counsel's own quality control checks).   Plaintiffs do not seriously contend that Defendants' review process was unreasonable, nor have they identified any steps Defendants *should* have, but did not, take to prevent inadvertent disclosure.   Plaintiffs have suggested that, in light of some other inadvertent productions to the SEC (and ensuing clawbacks), Defendants should have re-reviewed the entire 100,000+ document and 700,000+ page production to look for potentially privileged documents. But "the rule does not require the producing party to engage in a post-production review to determine whether any protected communication or information has been produced by mistake," *Datel*, 2011 WL 866993, at *4, and the prior clawbacks from the SEC do not change that analysis. Nearly all of the clawbacks from the SEC resulted from a technical mistake with the final construction of a single production – production 6.  Eber Decl. ¶ 19.  The discovery of that mistake did prompt a significant post-production review and clawback of documents from production 6 and, to a lesser extent, productions 4 and 5.  *Id*.  The errors prompting that re-review, however, were corrected *before* the production of the Presentation, which was produced to the SEC in production 7.  *Id*.  The small number of additional clawbacks that Defendants have made from the SEC since then were not reflective of systemic errors that would prompt additional re-review.

Simply put, the evidence shows that Defendants took more than reasonable steps to avoid inadvertent production of privileged materials, but the Presentation was inadvertently produced to the SEC despite those steps.

> **3.    Defendant promptly took reasonable steps to rectify the error.**

The Court's prior Order found that Defendants' clawback took place "ten days even after Defendants were put on explicit notice of the production" and holds that "[t]his delay is too long to meet the condition of promptness."  Order at 5.  Not so.  *First*, the Court should count the number of days Defendants took to claw back the Presentation starting from the day Defendants confirmed that the Presentation was in fact privileged.  *Second*, even if the Court were to count the number of days from the day that Plaintiffs' Motion for Class Certification was filed, Defendants' conduct does not constitute undue delay.

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

11

DEFS.' MOTION FOR
RECONSIDERATION
3:21-CV-02623-EMC

**a. The number of days Defendants took to claw back the Presentation should be calculated starting from the date Defendants confirmed the Presentation was in fact privileged.**

The Court's ten-day calculation runs from the date Plaintiffs first filed their Motion for Class Certification attaching the Presentation (Friday, January 27, 2023) to the date Defendants sent the clawback notice to the SEC (Monday, February 6, 2023). Order at 5. In so doing, the Court relied in part on *Mycone Dental Supply Co. Inc. v. Creative Nail Design Inc.*, 2013 WL 4758053, at *3 (N.D. Cal. Sep. 4, 2013), where the court denied a third party's clawback request sent a full 49 days after it became aware that at least one potentially privileged document had been disclosed. In rejecting the third party's excuses for the delay, the Court noted that the author (and therefore the potential privilege) "***was obvious on the face of***" the disclosed document. *Id.* (emphasis added.)

Here, in contrast, the facts giving rise to the privilege were not "obvious on the face" of the Presentation, and Defendants could not have made a colorable privilege claim without first investigating the circumstances of Mr. Eisner's creation of the document. That process took five days. *See Supra* § II(D). It is fundamentally unfair to penalize Defendants for taking the time to properly investigate a potential privilege claim before making a clawback request, especially where (as here) Defendants made the clawback request immediately after confirming the factual circumstances supporting the privilege. Simply put, where (as here) the privilege is not apparent from the face of the document, the Court should consider the amount of time it took for Defendants to make the clawback request once Defendants possessed the factual basis needed to support the privilege. In this case, that was a matter of hours, not days.[4]

---

[4] The other "excessive delay" cases cited by the Court are likewise distinguishable. *Ecological Rights Foundation v. Federal Emergency Management Agency* did not reach the question of whether the disclosing party's delay was reasonable. 2017 WL 24859, at *7 (N.D. Cal. Jan. 3, 2017). Moreover, the case that Court cited suggesting privilege must be asserted with "virtual immediacy", *id.*, was merely remarking on what "[c]ases from other jurisdictions" had done and explained in the preceding paragraph that "the time between production and a claim of privilege ***should not be dispositive***." *Sikorsky Aircraft Corp. v. U.S.*, 106 Fed. Cl. 571, 585 (2012) (emphasis added). *Skansgaard v. Bank of America, N.A.* dealt with a privileged document introduced as an exhibit in a deposition, which counsel "affirmatively stated [] was no[t] attorney-client privilege[d]" but then tried to claw back *two months later*. 2013 WL 828210, at *3 (W.D. Wa. Mar. 6, 2013). This is both a significantly longer delay than in the present case and involved disclosure during a deposition, a situation which requires greater "immediacy." *See Luna Gaming-San Diego, LLC v. Dorsey & Whitney, LLP*, 2010 WL 275083, at *4-5 (S.D. Cal. Jan. 13, 2010)

This approach is consistent with one of the authorities that the *Mycone* court distinguished from the facts before it. *See Mycone*, 2013 WL 4758053, at *3 (citing *Valentin v. Bank of New York Mellon Corp.*, 2011 WL 1466122, at *3 (S.D.N.Y. Apr. 14, 2011)). In *Valentin*, the court found there was no undue delay where the producing party undertook a nineteen-day investigation into the origin and context of a document and, once it fully understood the privileged nature of the document, sought its return an additional six days later, twenty-five days after being put on notice of the document itself. *Valentin*, 2011 WL 1466122, at *3.

Here, Defendants took even less time to investigate the underlying facts supporting the privilege and made the clawback request to Plaintiffs within hours (and to the SEC the next business day) after confirming the relevant facts. Taking into account the time it took Defendants to conduct a reasonable investigation into the facts supporting the privilege, it is clear that there was no undue delay in making the clawback request. *See Datel*, 2011 WL 866993, at *5 (defendant took reasonable steps to rectify inadvertent production where it acted "within a few days" of learning of mistake); *see also Njenga v. San Mateo Cnty. Superintendent of Schools*, 2010 WL 1261493, at *17 n.2 (N.D. Cal. Mar. 30, 2010) (holding defendants took prompt action under 502(b) where they sent a clawback letter "one week after [they] discovered the inadvertent disclosure").

> **b.    The case law does not support the Order's determination that the clawback was not timely.**

Even if the Court were to count the number of days Defendants took to claw back the document from the day that Plaintiffs' Motion for Class Certification was filed, Defendants' conduct does not constitute undue delay.

The analysis of undue delay is a highly fact-specific inquiry and must be viewed in the context in which the delay occurred. *United States ex rel. Bagley v. TRW, Inc.*, 204 F.R.D. 170, 177 (C.D. Cal. 2001) (courts in the Ninth Circuit look to the "totality of the circumstances" to determine whether inadvertent disclosure results in waiver of privilege); Fed. R. Evid. 502(b), advisory committee's explanatory note (Rule 502(b) is "flexible enough" to accommodate the

("under both state and federal law, if a privileged document is used *at a deposition*, and the privilege holder fails to object immediately, the privilege is waived") (emphasis added).

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

13

DEFS.' MOTION FOR
RECONSIDERATION
3:21-CV-02623-EMC

Court's consideration of a number of factors, including "the reasonableness of precautions taken, the time taken to rectify the error, the scope of discovery, the extent of disclosure, [] the overriding issue of fairness. . .the number of documents to be reviewed[,] and the time constraints for production"). For example, in *Mformation Technologies, Inc. v. Research in Motion Ltd.*, the court found that nine days was not undue delay, where the nine days included one intervening weekend (nine days following Wednesday, April 7, 2010). 2010 WL 3154441, at *2 (N.D. Cal. Aug. 9, 2010). Here, the Court counted ten days including *two* intervening weekends between Plaintiffs' filing of the Motion for Class Certification and Defendants' clawback from the SEC in the instant case. *See* Order at 5; Brien Decl. ¶ 7; Eber Decl. ¶ 16.

Likewise, in S*tamps.com, Inc. v. Endicia, Inc.*, defense counsel brought a production of potentially privileged documents to the attention of plaintiff's counsel. 2008 WL 11338241, at *2 (C.D. Cal. Oct. 6, 2008). Plaintiff's counsel took a number of days to investigate the issue. At first, the documents were reviewed by a new associate and paralegal while senior counsel was traveling for depositions and another trial, and they were not properly identified as privileged, creating delay. *Id.* The court, however, found no undue delay where plaintiff provided notice of inadvertent production within five business days (as required by the stipulated protective order) of senior counsel and plaintiff's general counsel ***actually becoming aware*** of the inadvertent production by looking at the documents themselves and discovering there had been an inadvertent production of privileged material. *Id.* at *2 n.2. So too here, Defendants timely clawed back the document within five business days from Plaintiffs, and six business days from the SEC, and considerably less time from when Defendants actually became aware that the document was indeed privileged.

The cases cited in the Order do not warrant a different outcome. The Order cites *Skansgaard v. Bank of Am., N.A.*, 2013 WL 828210, at *3 (W.D. Wash. Mar. 6, 2013), for its citation to "cases finding that a delay as short as *six days* weighed in favor of finding waiver." Order at 5. The underlying case is *Atronic Int'l, GMBH v. SAI Semispecialists of Am., Inc.*, 232 F.R.D. 160, 165 (2005). In *Atronic*, the six-day delay in question was not a delay in clawing back the document but rather an *unexplained* six-day delay in reviewing the binder of documents containing the privileged

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

14

DEFS.' MOTION FOR
RECONSIDERATION
3:21-CV-02623-EMC

documents from opposing counsel. *Id.* In fact, the court in *Atronic* found that it weighed slightly in the producing party's *favor* that "plaintiff's counsel did attempt to promptly correct the error upon discovery," despite the delay in discovering it. *Id.*

Here, Defendants' need to take time to investigate whether the Presentation was privileged is eminently reasonable to ensure that their assertion of privilege was valid and supported. Indeed, as soon as Defendants determined that the Presentation was privileged, they clawed it back from Plaintiffs within hours and the SEC within one business day. Brien Decl. ¶ 14; Eber Decl. ¶ 16. Viewed in this context and considering the need for Defendants to investigate whether the Presentation was privileged before it could be clawed back, there was no undue delay.

## V.    CONCLUSION

For these reasons, the Court should grant Defendants' motion for reconsideration and find that Defendants did not waive attorney-client privilege over the Presentation.

Dated: April 21, 2023                          COOLEY LLP


                                               By:   */s/ Patrick E. Gibbs*
                                                     Patrick E. Gibbs

                                               *Attorneys for Defendants*
                                               *FibroGen, Inc., Enrique Conterno,*
                                               *James Schoeneck, Mark Eisner,*
                                               *and Pat Cotroneo*

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

15

DEFS.' MOTION FOR
RECONSIDERATION
3:21-CV-02623-EMC