**SAXENA WHITE P.A.**
David R. Kaplan (SBN 230144)
dkaplan@saxenawhite.com
505 Lomas Santa Fe Drive, Suite 180
Solana Beach, CA 92075
Tel.: (858) 997-0860
Fax: (858) 369-0096

*Counsel for Lead Plaintiffs Employees' Retirement
System of the City of Baltimore, City of
Philadelphia Board of Pensions and Retirement,
and Plymouth County Retirement Association, and
Lead Counsel for the Class*

*[Additional Counsel listed on Signature Page]*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE FIBROGEN, INC., SECURITIES LITIGATION | Case No. 3:21-cv-02623-EMC <br><br> **<u>CLASS ACTION</u>** <br><br> LEAD PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR RECONSIDERATION <br><br> Judge: Hon. Edward M. Chen |

PUBLIC REDACTED VERSION

**TABLE OF CONTENTS**

I.    INTRODUCTION ...................................................................................................... 1

II.   FACTUAL BACKGROUND ...................................................................................... 5

      A.    FibroGen's Own Internal Documents Show That ███████████████
            ████████████████████████████████████████████ .............. 5

      B.    The Stipulated Protective Order .................................................................... 6

      C.    Not Once, Not Twice, But *Three* Times, Plaintiffs Placed Defendants On
            Explicit Notice As To The Production Of The Presentation ........................... 7

      D.    Realizing That The Court Would Review The Presentation In Connection
            With Class Certification, Defendants Suddenly And Belatedly Attempt
            Clawback Of The Presentation ....................................................................... 8

      E.    The Court Grants Plaintiffs' Motion to Compel, And Defendants Move For
            Reconsideration .............................................................................................. 9

III.  ARGUMENT ........................................................................................................... 11

      A.    Defendants' Motion Does Not Meet The Legal Standard for Reconsideration .......... 11

      B.    As The Court Already Clearly Held, Rule 502(b) Applies Because The PO
            Does Not (And Cannot) Govern The Effect Of Disclosure In Another Matter .......... 12

      C.    Defendants Waived Any Existing Privilege Under Rule 502(b) ................................ 13

            1.    Defendants Failed to Promptly Claw Back The Presentation ........................... 14

            2.    Defendants Fail To Show That The Disclosure Was Truly Inadvertent
                  Or That They Took Reasonable Steps to Prevent Disclosure ........................... 18

      D.    Defendants Have Not—And Cannot—Meet Their Burden To Show That The
            Document Was Privileged To Begin With ......................................................... 19

            1.    The Presentation Is Not Privileged On Its Face .............................................. 19

            2.    Defendants' New "Evidence" Is Wholly Insufficient ...................................... 21

      E.    Defendants Should Be Ordered To Produce The Presentation Prior To
            Resolution Of Their Reconsideration Motion ................................................... 24

IV.   CONCLUSION ....................................................................................................... 25

LP'S OPP. TO DEFS.' MOT. FOR
LEAVE TO FILE MOT. FOR RECON.

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*389 Orange St. Partners v. Arnold,*
179 F.3d 656 (9th Cir. 1999) ................................................................................................ 11

*AdTrader, Inc. v. Google LLC,*
405 F. Supp. 3d 862 (N.D. Cal. 2019) ....................................................................... 13, 14, 15

*Altbaier v. Down-Lite Int'l, Inc.,*
2019 WL 4194171 (N.D. Cal. Sept. 4, 2019) ........................................................................ 11

*Automated Packaging Sys, Inc. v. Free Flow Packaging Int'l, Inc.,*
2018 WL 4501152 (N.D. Cal. Sept. 19, 2018) .................................................................. 2, 13

*City of Roseville Emps. Ret. Sys. v. Apple, Inc.,*
2022 WL 3083000 (N.D. Cal. Aug. 3, 2022) ........................................................... 20, 21, 23

*Chaudhry v. Angell,*
2020 WL 7182083 (E.D. Cal. Dec. 7, 2020) ........................................................................ 23

*Coronavirus Rep. v. Apple Inc.,*
2022 WL 307941 (N.D. Cal. Feb. 2, 2022) .......................................................................... 12

*Dairy v. Bonham,*
2013 WL 5663090 (N.D. Cal. Oct. 17, 2013) .................................................................... 2, 11

*Datel Holdings Ltd. v. Microsoft Corp.,*
2011 WL 866993 (N.D. Cal. Mar. 11, 2011) ........................................................................ 16

*DiLeo v. Meijer Stores Ltd. P'ship,*
2021 WL 1258779 (N.D. Ill. Apr. 5, 2021) .......................................................................... 15

*Ecological Rts. Found. v. Fed. Emergency Mgmt. Agency,*
2017 WL 24859 (N.D. Cal. Jan. 3, 2017) ..................................................................... 3, 4, 14

*Fed. Trade Comm'n v. Qualcomm Inc.,*
2018 WL 11420853 (N.D. Cal. Mar. 16, 2018) .................................................................... 23

*IGT v. All. Gaming Corp.,*
2006 WL 8071393 (D. Nev. Sept. 28, 2006) ........................................................................ 15

*In re Apple Inc. Sec. Litig.,*
2022 WL 4351392 (N.D. Cal. Sept. 12, 2022) ...................................................................... 21

*In re Charles Schwab Corp. Sec. Litig.,*
2010 WL 11571107 (N.D. Cal. Mar. 11, 2010) .................................................................... 20

**LP'S OPP. TO DEFS.' MOT. FOR
LEAVE TO FILE MOT. FOR RECON.**

*In re Grand Jury*,
23 F.4th 1088 (9th Cir. 2021) ....................................................................................................21

*Kona Enters. v. Estate of Bishop*,
229 F.3d 877 (9th Cir. 2000) .....................................................................................................11

*Lair v. Bullock*,
697 F.3d 1200 (9th Cir. 2012) ...................................................................................................24

*LD v. United Behav. Health*,
2022 WL 17408010 (N.D. Cal. Dec. 2, 2022).....................................................................20, 23

*Loop AI Labs Inc v. Gatti*,
2016 WL 3001158 (N.D. Cal. May 25, 2016)............................................................................24

*MediaTek Inc. v. Freescale Semiconductor, Inc.*,
2013 WL 5594474 (N.D. Cal. Oct. 10, 2013) ...........................................................................22

*Mformation Techs., Inc. v. Rsch. in Motion Ltd.*,
2010 WL 3154441 (N.D. Cal. Aug. 9, 2010) ............................................................................16

*Mycone Dental Supply Co Inc v. Creative Nail Design Inc*,
2013 WL 4758053 (N.D. Cal. Sept. 4, 2013).....................................................................15, 18

*Northwest Acceptance Corp. v. Lynnwood Equip., Inc.*,
841 F.2d 918 (9th Cir. 1988) .....................................................................................................11

*Regents of Univ. of California v. Affymetrix, Inc.*,
2018 WL 3752752 (S.D. Cal. Aug. 6, 2018)..............................................................................24

*S.E.C. v. Cassano,*
189 F.R.D. 83 (S.D.N.Y. 1999)..................................................................................................15

*Securities & Exch. Comm'n v. Blackburn*,
2015 WL 10911438 (E.D. La. Oct. 26, 2015) ...........................................................................14

*Skansgaard v. Bank of Am., N.A.*,
2013 WL 828210 (W.D. Wash. Mar. 6, 2013)...........................................................................15

*Stamps.com, Inc. v. Endicia, Inc.*,
2008 WL 11338241 (C.D. Cal. Oct. 6, 2008) ...........................................................................16

*Terrell v. Cent. Washington Asphalt, Inc.*,
2015 WL 461823 (D. Nev. Feb. 4, 2015)...................................................................................14

*U.S. ex rel. Bagley v. TRW, Inc.*,
204 F.R.D. 170 (C.D. Cal. 2001).....................................................................................14, 15, 18

*United States ex rel. Baker v. Cmty. Health Sys., Inc.*,
2012 WL 12918280 (D.N.M. Feb. 17, 2012)............................................................................16

*Visa U.S.A., Inc. v. First Data Corp.*,
  2004 WL 1878209 (N.D. Cal. Aug. 23, 2004) ............................................................... 19, 21, 23

*Wisk Aero LLC v. Archer Aviation Inc.*,
  2023 WL 2699971 (N.D. Cal. Mar. 29, 2023) ............................................................... 4, 19, 21

**RULES**

Federal Rule of Evidence 502 .................................................................................................*passim*

**LP'S OPP. TO DEFS.' MOT. FOR
LEAVE TO FILE MOT. FOR RECON.**

Lead Plaintiffs Employees' Retirement System of the City of Baltimore, City of Philadelphia Board of Pensions and Retirement, and Plymouth County Retirement Association (collectively "Lead Plaintiffs" or "Plaintiffs"), respectfully submit this response in opposition to Defendants' motion for reconsideration (Dkt. No. 172) ("Motion" or "Mtn.") of the Court's order granting Plaintiffs' motion to compel (Dkt. No. 161) ("Order"). The Order compelled production of a document Bates-stamped FGEN-CA-0353824 ("Presentation").

## I.    INTRODUCTION

At the crux of this securities fraud action are Plaintiffs' allegations that Defendants materially misled investors concerning the Phase 3 safety data for Roxadustat, FibroGen's single most important drug. Specifically, for over two years, Defendants touted to investors no less than nine analyses of that safety data, each of which Defendants had manipulated to make the drug appear significantly safer than it really was. On December 8, 2022, Defendants reproduced a highly critical document to Plaintiffs that they had produced to the SEC several months prior: ▮

███████████████████████████████████████████████████

██████████████████████████████████—just days before FibroGen would publicly admit that the safety analyses had been manipulated. In the Presentation, ███████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████████████████

On March 29, 2023, this Court issued an order determining that Defendants "waived the attorney-client privilege over the Presentation—to the extent that it exists—when they disclosed the Presentation to the SEC." Order at 5-6. In so holding, the Court found that "Defendants only clawed back the Presentation from the SEC months after it first made the disclosure and a full ten days even after Defendants were put on explicit notice of the production. ***This delay is too long to meet the condition of promptness***." *Id*. at 5. Defendants now move this Court to reconsider its holding, and determine that no waiver occurred and that the Presentation is privileged. However, none of Defendants' arguments—virtually all of which the Court already considered and rejected,

**LP'S OPP. TO DEFS.' MOT. FOR
LEAVE TO FILE MOT. FOR RECON.**

or which could have been raised earlier—come close to warranting the "extraordinary remedy" of reconsideration. *Dairy v. Bonham*, 2013 WL 5663090, at *1 (N.D. Cal. Oct. 17, 2013) (Chen, J.).

*First*, Defendants assert that the Court erred in holding that Federal Rule of Evidence 502(b)—and not the Stipulated Protective Order (the "PO")—governs the issue of waiver here. This is meritless. As an initial matter, the Court expressly granted Defendants leave to seek reconsideration *solely* on the grounds that "Defendants did not have a full opportunity fully to present facts *material to a 502(b) analysis*." Dkt. No. 170 (emphasis added). Moreover, the Court already extensively reviewed the relevant terms of the PO and explicitly rejected Defendants' argument, determining that the PO "does not apply to disclosures made in other, unconnected proceedings"—*i.e.*, the SEC proceedings—and thus "the effect of the SEC disclosure is instead analyzed under Rule 502(b)." Order at 3-4; *Automated Packaging Sys, Inc. v. Free Flow Packaging Int'l, Inc.*, 2018 WL 4501152, at *1 (N.D. Cal. Sept. 19, 2018) (Chen, J.) (a motion for reconsideration fails where it merely "repeats arguments already made and considered by the Court").

*Second*, Defendants provide no new facts that can credibly alter the Court's holding that Defendants failed to satisfy the conditions of Rule 502(b). While Defendants claim that the Court erred in holding that they waived the privilege through their undue delay in clawing back the Presentation, the facts demonstrate that Defendants' delay was far more unreasonable than Defendants have led the Court to believe. Significantly, Defendants were unquestionably put on explicit notice as to the production of the Presentation well before the filing of Plaintiffs' motion for class certification on January 27, 2023—specifically, no later than January 16, 2023, when Plaintiffs first prominently cited the Presentation *three times* in a letter regarding potential spoliation and discovery disputes. Tellingly, Defendants utterly ignore this fact in their Motion, as well as the fact that Defendants responded to the letter two days later *without raising any potential privilege issues whatsoever*. Moreover, Defendants' Motion *concedes* that after receiving Plaintiffs' January 16, 2023 letter containing *multiple* references to the Presentation, Defendants took *no action whatsoever*—no investigation, no meetings, not even a simple phone call to glean the circumstances of the purportedly inadvertent production. Further undermining

LP'S OPP. TO DEFS.' MOT. FOR
LEAVE TO FILE MOT. FOR RECON.

Defendants' Motion, Plaintiffs again cited the Presentation in a second letter on January 26, 2023—*including by specifically highlighting* ███████████████████ ████████—and despite this explicit reference, Defendants again took no action whatsoever, while again failing to raise any privilege concerns in their response letter a week later.

Remarkably, even though Plaintiffs prominently highlighted the Presentation *for a third time* in their class certification motion filed on January 27, 2023, Defendants tacitly acknowledge that they did not even bother to read the motion *until days after its filing*. Mtn. at 3. Indeed, it was not until February 3, 2023—*nearly three weeks* after Plaintiffs first put Defendants on notice regarding the Presentation, and *several months* after Defendants had produced the document to the SEC—that Defendants suddenly and belatedly claimed that the Presentation was privileged and clawed it back. The justification for this additional delay? Defendants supposedly required a protracted, week-long "investigation" to determine whether the Presentation was privileged—a highly dubious claim considering the extraordinary importance of the document; the fact that Defendants' sole basis for their privilege claim is Defendant Eisner's assertion that he purportedly created the document at the direction of FibroGen's General Counsel, which presumably should not have required much more than a single phone call to the General Counsel to verify; and the fact that, as Defendants admit, FibroGen's counsel in this Action were fully aware of the Presentation, ██████████████████████████████████████. Such incontrovertible facts further reinforce that Defendants' delay is inexcusable, fatally undermining their Motion. *See* Order at 5 (quoting *Ecological Rts. Found. v. Fed. Emergency Mgmt. Agency*, No. 15-CV-04068-DMR, 2017 WL 24859, at *7 (N.D. Cal. Jan. 3, 2017) ("once a party realizes a document has been accidentally produced, it must assert privilege with virtual immediacy.").

*Third*, even if Defendants could somehow demonstrate that they met Rule 502(b)'s requirements—which they clearly have not—Defendants abjectly fail to show that the attorney-client privilege applies in the first place. To the contrary, the contemporaneous documentary evidence establishes exactly the opposite. As Defendants admit, "the privilege is not apparent from the face of the document" (Mtn. at 12), which was "not either marked 'attorney-client privilege' or attached to an email to or from a lawyer" (*id.* at 5)—and as the Court already found,

LP'S OPP. TO DEFS.' MOT. FOR
LEAVE TO FILE MOT. FOR RECON.

the Presentation's contents concern ███████████████████ (Order at 2) and not any legal matters of any kind.  Moreover, and significantly, Defendants have produced no less than **seven** non-privileged versions of this same presentation, which as the Court observed in its Order, were "identical" to the seventeen slides in the Presentation, save three, including—conveniently for Defendants—███████████████████████████ *Id.*  In other words, Defendants ask the Court to conclude that while FibroGen's General Counsel had nothing to do with the preparation of the vast majority of the Presentation, he specifically instructed Eisner to prepare the slides ███████████████████.  This defies credulity.

Underscoring this fact, despite now having multiple opportunities to do so, Defendants are unable to provide any contemporaneous written evidence whatsoever—**even a single email**—demonstrating that the Presentation was in fact prepared at the behest of counsel.  Indeed, even now, Defendants conspicuously fail to provide a declaration from FibroGen's General Counsel verifying this claim—despite Defendants' purported week-long investigation and Eisner's assertion that ████████████████████████.  To the contrary, Defendants' own documents clearly show that ██████████████ ████████████████████████████ ████████████████████████████ ██████████████—a fact that dooms Defendants' claim of privilege. Accordingly, Defendants have patently failed to "establish[] that [the Presentation] has as its primary or predominate purpose the provision of legal advice or assistance." *Wisk Aero LLC v. Archer Aviation Inc.*, 2023 WL 2699971, at *4 (N.D. Cal. Mar. 29, 2023).

For all of these reasons, Defendants' Motion should be denied.  Additionally, the Court should order Defendants to immediately comply with the Order and produce the Presentation to Plaintiffs—which Defendants have repeatedly refused to do.

LP'S OPP. TO DEFS.' MOT. FOR
LEAVE TO FILE MOT. FOR RECON.

## II.   FACTUAL BACKGROUND

### A.   FibroGen's Own Internal Documents Show That ██████████████

While Defendants claim that the Presentation was actually the first draft of a document that Defendant Eisner prepared at the behest of the Company's General Counsel, documents produced by Defendants show that the Presentation ████████████████████████ ████████████████████████████████. Specifically, on March 15, 2021, ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ███████████████████████████ Ex. 1.[1] Roughly an hour later, ██████ ████████████████████████████████████████████ ████████████████████████████████████████████ ███████████████████████. Like Eisner's subsequent Presentation, ███████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████.

Significantly, over the following several days, ████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ██████ For example, on March 18, 2021, ███████████████████ ████████████████████████████████████████████ ███████████. Ex. 2. ████████████████████████████████. Ex. 3.  Notably, in none of these communications ████████████ ████████████████████████████████████████████ ██████████████████████████ (Ex. 4), ██████████████████

---

[1] Citations to "Ex. _" are to exhibits to the Declaration of Lester R. Hooker in Support of Plaintiffs' Opposition to Defendants' Motion for Reconsideration, filed herewith.

**LP'S OPP. TO DEFS.' MOT. FOR LEAVE TO FILE MOT. FOR RECON.**

██████████████████████████████████████████████ (Ex. 5)—████

before the purportedly "privileged" Presentation was created, and three days before the Board

████████████████████████████████████████.

In total, Plaintiffs have located no fewer than **seven** distinct non-privileged drafts of the Presentation in Defendants' production to-date (some produced multiple times), ████████

██████████████████████████████████████. *See* Exs. 2-8. **None** of these drafts were sent to, received from, or even copied to a lawyer; and none were marked privileged, convey or request any legal advice, contain any comments from attorneys, or pertain in any way to legal issues. Nor have Defendants been able to identify any produced or logged document of any kind reflecting any request from General Counsel Michael Lowenstein, or from any other counsel, to create the Presentation.

Indeed, as this Court correctly noted, the disputed version of the ████████████

████████████████████████████████████████████

████████████████████████████████████████████

████—meaning that Defendants have conceded that the vast majority of the Presentation does not concern any privileged material at all. Moreover, the three remaining slides over which Defendants claim the privilege applies dealt with ████████████████████████████

████████████████████████████████ Order at 2. None of these three slides convey or request legal advice of any kind.

### B.    The Stipulated Protective Order

Between August and October 2022, the parties negotiated the PO in this action. During the course of negotiations, Plaintiffs repeatedly expressed serious concerns that they did not want to wind up in a situation where Plaintiffs made extensive use of a critical document, only to have Defendants claw it back after Plaintiffs had already heavily relied on it (i.e., the exact situation that has now occurred). For this reason, Plaintiffs specifically negotiated language in Section 11.1 that specifies that privilege is deemed waived where prompt clawback does not occur after a document is "*included in a filing with the Court*" or "*otherwise made known in writing to the Producing Party by the Receiving Party*." PO at 15. As set forth below, here, Plaintiffs first

prominently notified Defendants of the Presentation in a letter dated January 16, 2023. However, Defendants did not attempt to claw the Presentation back until nearly three weeks later.

**C.    Not Once, Not Twice, But *Three* Times, Plaintiffs Placed Defendants On Explicit Notice As To The Production Of The Presentation**

Defendants produced the Presentation to Plaintiffs as part of a production on December 8, 2022. Defendants represented to Plaintiffs that the production contained documents previously produced to the SEC in response to an SEC subpoena several months earlier. Plaintiffs would later learn that ███████████████████████████████████████████████████████████ ██████████████████████████████. Ex. 9.

On January 16, 2023, Plaintiffs sent Defendants a letter concerning ████████████ █████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████,[2] as well as various other discovery disputes. Ex. 10. Significantly, Plaintiffs' letter put Defendants on clear notice of the Presentation's production—prominently highlighting it, providing the Bates number, and citing it ***three times*** in a paragraph-length bullet point, which expressly discussed the contents of the document, including its ████████████████████████████████████████ :



Ex. 10 at 3. (emphasis added). Significantly, there is no question that Defendants reviewed Plaintiffs' January 16, 2023 letter, as Defendants directly responded in writing on January 18, 2023—***and did not raise any potential privilege issues concerning the Presentation***. Ex. 11.

The following week, Plaintiffs again put Defendants on explicit notice of the Presentation's production, this time in a letter following up on the spoliation issue. Specifically, on January 26, 2023, Plaintiffs sent Defendants a letter in which Plaintiffs prominently and directly quoted the

---

[2] Discovery into this spoliation issue remains ongoing, ████████████████████████████████ ████████████████████████████████████████████████████.

**LP'S OPP. TO DEFS.' MOT. FOR LEAVE TO FILE MOT. FOR RECON.**

Presentation as evidence ████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████ Ex. 12 at 5 (underlining in original). Significantly, FibroGen provided a detailed response a week later, on February 2, 2023, fully responding to Plaintiffs' arguments. Ex. 13. Again, ***Defendants did not raise any concerns whatsoever about the Presentation being potentially privileged***.

Finally, on January 27, 2023, Plaintiffs attached the Presentation as an exhibit to their Motion for Class Certification and prominently cited the Presentation on page 8 of their brief:

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████

The Presentation had now been prominently cited to Defendants on no less than three separate occasions between January 16, 2023 and January 27, 2023—including by repeatedly quoting the language in which ████████████████████████████████████ ████████████ Despite this fact, according to Defendants, no one at Cooley LLP even realized the ***possibility*** that the Presentation "may have been inadvertently produced" until three days later, on January 30, 2023—nearly three weeks after Plaintiffs first placed Defendants on notice as to the production of the Presentation. Brien Decl. at ¶ 8.

**D.** **Realizing That The Court Would Review The Presentation In Connection With Class Certification, Defendants Suddenly And Belatedly Attempt Clawback Of The Presentation**

Tellingly, it was only once Plaintiffs included the Presentation in their motion for class certification that Defendants apparently realized the import of the document. Specifically, on February 3, 2023—seven days after Plaintiffs filed their motion, and a full ***eighteen*** days after

**LP'S OPP. TO DEFS.' MOT. FOR LEAVE TO FILE MOT. FOR RECON.**

Plaintiffs first cited the Presentation in their January 16, 2023 letter—Defendants suddenly claimed that the Presentation was privileged and clawed it back.  Significantly, at no point prior to February 3, 2023, did Defendants ever disclose that they were even considering clawing back the Presentation, or that they had any concerns whatsoever that the Presentation might be privileged.  Indeed, as set forth above, Defendants had by this time already responded to *two* separate letters citing the Presentation without ever claiming that it was privileged.

Also on February 3, 2023, Defendants filed their response regarding whether Plaintiffs' class certification motion should be sealed.  Dkt. No. 150.  Notably, while the response asserted that the Presentation was privileged, Defendants attached a declaration from General Counsel Michael Lowenstein—the very attorney who purportedly requested that Defendant Eisner prepare the Presentation for the facilitation of legal advice—that said *nothing* of the kind.  To the contrary, Lowenstein's declaration—the only declaration Defendants have filed from Lowenstein regarding the nature of the Presentation—plainly described the Presentation as a *business record*: "a PowerPoint presentation presented to the FibroGen Board regarding the statistical methodologies underlying the Roxadustat safety analyses, FibroGen's processes for unblinding the Roxadustat data, pooled statistical analysis plans, and discussions with the FDA regarding the Roxadustat safety analyses," which contained "*information relating to business decisions, strategies, and internal deliberations*." Dkt. No. 150-1.  Significantly, despite the fact that Lowenstein's declaration was filed *after* Defendants claim they completed their purported "investigation" of the Presentation, *Lowenstein's declaration said nothing whatsoever about the Presentation being privileged or that it was created at his behest for the facilitation of legal advice*. *Id.*

### E.    The Court Grants Plaintiffs' Motion to Compel, And Defendants Move For Reconsideration

Immediately after Defendants improperly clawed back the Presentation, Plaintiffs informed Defendants that they would move to compel the document's production.  The parties submitted their joint letter brief disputing the privilege of the Presentation to the Court on February

**LP'S OPP. TO DEFS.' MOT. FOR
LEAVE TO FILE MOT. FOR RECON.**

15, 2023 (Dkt No. 153) ("Joint Letter"), and on March 29, 2023, this Court granted Plaintiffs' motion to compel and ordered Defendants to produce the Presentation.[3]

In the Order, the Court expressly considered and rejected Defendants' argument that the PO in this case governs the issue of whether Defendants waived privilege over the Presentation by producing it to the SEC. Rather, the Court found "that Rule 502(b) governs, and that Rule 502(b) does not prevent Defendants' disclosure [to the SEC] from waiving privilege." Order at 3. The Court then found that, under Rule 502(b), Defendants had "waived the attorney-client privilege over the Presentation—to the extent that it exists—when they disclosed the Presentation to the SEC" several months prior to producing it to Plaintiffs. *Id*. at 5-6. In so holding, the Court found that Defendants had "not supported th[e] conclusory assertion" that production was inadvertent "with evidence"; that Defendants had "failed to even assert that they took reasonable steps to prevent disclosure"; and significantly, that Defendants had "delay[ed] too long" before attempting to claw the document back "to meet the condition of promptness." *Id.* at 4-5. Specifically, the Court held:

> Defendants only clawed back the Presentation from the ***SEC months after it first made the disclosure and a full ten days even after Defendants were put on explicit notice of the production***. ***This delay is too long to meet the condition of promptness.***

*Id*. at 5 (emphasis added) (citing cases). While the Court observed that, in so holding, it did not need to "reach [the] parties' dispute about whether the Presentation was ever protected by [the] attorney-client privilege" (*id*. at 6, n.1), the Court expressly noted that the Presentation concerned the "Roxadustat safety analyses" rather than any legal matters; that "[o]f the seventeen slides [in the Presentation], ███████████████████████████████████████████████████████████ ███████████████████████████; and that rather than pertaining to any legal matters, the three remaining slides instead concerned ████████████████████████████████████████ ██████████████████████████████████ *Id*. at 2.

---

[3] In the interim, despite repeated requests from Plaintiffs for Defendants to produce the Presentation, Defendants have refused to do so, despite the fact that Defendants have not sought, much less been granted, a stay of the Order.

**LP'S OPP. TO DEFS.' MOT. FOR LEAVE TO FILE MOT. FOR RECON.**

On April 10, 2023, Defendants filed their motion for leave to move for reconsideration. Dkt. No. 168 ("Leave Motion"). Strikingly, while Defendants' Leave Motion included two declarations from defense counsel, *it did not include any declarations from General Counsel Lowenstein, Eisner, or any other FibroGen in-house attorneys or employees*.

On April 13, 2021, this Court granted Defendants leave to seek reconsideration solely on the grounds that "Defendants did not have a full opportunity fully to present facts material to a 502(b) analysis." Dkt. No. 170 at 2. On April 21, 2021, Defendants filed their motion for reconsideration, and for the first time, Defendants attached a declaration from Defendant Eisner in support of their assertion of privilege, which claimed that Eisner had supposedly created the Presentation at Lowenstein's direction. Dkt. No. 172-3. Significantly, the Motion again did not attach any declaration from the General Counsel or any other in-house counsel at FibroGen.

## III.    ARGUMENT

### A.    Defendants' Motion Does Not Meet The Legal Standard for Reconsideration

Reconsideration is an "extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Dairy v. Bonham*, 2013 WL 5663090, at *1 (N.D. Cal. Oct. 17, 2013) (Chen, J.) (quoting *Kona Enters. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000)). "Motions for reconsideration are generally disfavored and are not the place for parties to make new arguments not raised in their original briefs." *Altbaier v. Down-Lite Int'l, Inc.*, 2019 WL 4194171, at *1 (N.D. Cal. Sept. 4, 2019) (Chen, J.) (citing *Northwest Acceptance Corp. v. Lynnwood Equip., Inc.*, 841 F.2d 918, 925–26 (9th Cir. 1988)). "Nor is reconsideration to be used to ask the Court to rethink what it has already thought." *Id.* As such, "a motion for reconsideration should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law." *Dairy*, 2013 WL 5663090, at *1. (quoting *389 Orange St. Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999)). Defendants' Motion plainly does not meet the standard for reconsideration, as there are no "highly unusual circumstances" present here.

First, Defendants identify no facts that they could not have known about at the time of the Joint Letter. Indeed, to the extent Defendants' Motion raises any "new" facts or arguments (*e.g.*

11                                                                    LP'S OPP. TO DEFS.' MOT. FOR
                                                                      LEAVE TO FILE MOT. FOR RECON.

about the reasonableness of Defendants' privilege review before producing the Presentation to the SEC (Dkt. No. 172 at 10-11)), these facts "ha[ve] always been available to them and [are] based on no new evidence or authority," and thus "[b]ecause th[ese] argument[s] could and should have been presented to the district court prior to the judgment," they cannot now be a basis for granting reconsideration. *Coronavirus Rep. v. Apple Inc.*, 2022 WL 307941, at *3 (N.D. Cal. Feb. 2, 2022) (Chen, J.). Second, Defendants identify no intervening change in law. And third, Defendants identify no "clear error" by the Court; indeed, the Court fully considered Defendants' argument that the PO governed the waiver issue rather than Rule 502(b), found that Rule 502(b) governed after a fulsome analysis of the issue, and then found waiver of privilege under Rule 502(b).

Nonetheless, in light of the Court's Order granting Defendants leave to seek reconsideration, Plaintiffs address Defendants' merits arguments below.

**B.      As The Court Already Clearly Held, Rule 502(b) Applies Because The PO Does Not (And Cannot) Govern The Effect Of Disclosure In Another Matter**

While Defendants argue that the Court erred in holding that Rule 502(b), and not the PO, governs waiver here, the Court correctly observed that nothing about the PO addresses, or could address, the impact of disclosure *in response to the SEC's subpoena of FibroGen*, because "courts cannot 'retroactively limit the effect' of a previous disclosure" in an entirely separate matter. Order at 4. Indeed, the PO states that, in lieu of Rule 502(b), the PO provides "the maximum protection allowed by Federal Rule of Evidence 502(d)," and Rule 502(d) unquestionably "does not apply to disclosures made in other, unconnected proceedings." Order at 3.[4] Moreover, as the Court made clear, "there is nothing in the language of the PO in this case that suggests it applies to disclosures made outside the context of this proceeding" (*id.* at 3-4), and Defendants present no new arguments or facts warranting reconsideration of the Court's holding. Indeed, by rearguing this point, Defendants ignore both this Court's order (which expressly granted leave *only* on the grounds that

---

[4] Recognizing that this point is fatal to their position, Defendants argue that their "disclosure to the SEC is 'connected with the litigation pending before the court'" because documents produced to the SEC are "relevant to this action." Motion at 8. Defendants' strained argument fails. Defendants cite no authority for the proposition that mere relevance of documents produced in a separate matter renders that matter "connected with the litigation pending before the Court" for purposes of Rule 502(d), and Plaintiffs are aware of no such authority. The Court has already made clear that "[s]ubdivision (d) does not allow the federal court to enter an order determining the waiver effects of a separate disclosure of the same information in other proceedings." Order at 3 (citing ad. com. note to Fed. R. Evid. 502(d)).

LP'S OPP. TO DEFS.' MOT. FOR
                                                      LEAVE TO FILE MOT. FOR RECON.

"Defendants did not have a full opportunity fully to present facts *material to a 502(b) analysis*" (Dkt. No. 170) (emphasis added)), and Local Rule 7-9(c), which states that "*[n]o motion for leave to file a motion for reconsideration may repeat any oral or written argument made by the applying party*," and that "*[a]ny party who violates this restriction shall be subject to appropriate sanctions*." *See Automated Packaging*, 2018 WL 4501152, at \*1 (denying motion that "repeats arguments already made and considered by the Court").[5]

While Defendants claim that the SEC's purported "acceptance" of the clawback is "dispositive" (Mtn. at 7), this argument is meritless. Aside from the fact that Defendants already raised this same argument in the Joint Letter Brief (*id.* at 3—arguing that Defendants ███████████ ████████████████████████████████████████████████████, Defendants cite to no authority in their Motion supporting this proposition. Nor could they. Contrary to what Defendants contend, the SEC is neither judge nor jury here, nor does it supplant the Court's role in this action. Moreover, Defendants have proffered no evidence whatsoever that the SEC has even "accepted" the clawback in the first place. Indeed, if by "acceptance" Defendants mean that the SEC has not yet challenged the clawback of the Presentation in court, that fact is utterly meaningless given that the SEC *has not filed any formal enforcement action or administrative proceeding against FibroGen*. And even if the SEC does in the future file an action against Defendants and chooses not to challenge the clawback, the SEC's hypothetical course of action has no bearing here. Accordingly, Defendants' argument does not warrant reconsideration.

### C. Defendants Waived Any Existing Privilege Under Rule 502(b)

Disclosure of a document in a federal proceeding does not operate as a waiver if "(1) the disclosure is inadvertent; (2) the holder of the privilege or protection took reasonable steps to prevent disclosure; and (3) the holder promptly took reasonable steps to rectify the error." *AdTrader, Inc. v. Google LLC*, 405 F. Supp. 3d 862, 866 (N.D. Cal. 2019) (quoting Fed. R. Evid. 502(b)). Courts in the Ninth Circuit examine the totality of the circumstances in examining

---

[5] Defendants' unsupported argument about "the parties' intention" in drafting the PO is both incorrect and irrelevant. In fact, Plaintiffs repeatedly stated during PO negotiations that *Plaintiffs'* intention in drafting certain language in Section 11.1 was to avoid this precise situation—Defendants belatedly attempting a clawback only after realizing the import of a document that Plaintiffs had used extensively in court filings and discovery letters.

LP'S OPP. TO DEFS.' MOT. FOR
LEAVE TO FILE MOT. FOR RECON.

whether an inadvertent disclosure constitutes waiver under Rule 502(b). *Terrell v. Cent. Washington Asphalt, Inc.*, No. 2:11-CV-142-APG-VCF, 2015 WL 461823, at *8 (D. Nev. Feb. 4, 2015), *objections overruled*, (D. Nev. July 20, 2015). Further, courts recognize that one of the key purposes of waiver is "to prevent unfairness to the receiving party if, through no fault of the receiving party, the privileged information has been integrated into the case"—i.e., ***exactly what has happened here***. *U.S. ex rel. Bagley v. TRW, Inc.*, 204 F.R.D. 170, 176 (C.D. Cal. 2001).

As this Court already held, Defendants waived any privilege over the Presentation under Rule 502(b) by producing the Presentation to the SEC several months prior to their production of that same document to Plaintiffs, and by their unreasonable delay in rectifying the purported error by clawing back the document. Order at 4-5. As set forth below, nothing in Defendants' Motion changes the Court's analysis or conclusion, and, in fact, additional facts set forth herein only demonstrate that Defendants' delay was even more egregious than the Court previously realized.

### 1.  Defendants Failed to Promptly Claw Back The Presentation

Promptness in retrieving inadvertently produced documents is "[t]he single most important factor" in determining whether the privilege has been waived. *Securities & Exch. Comm'n v. Blackburn*, 2015 WL 10911438, at *4 (E.D. La. Oct. 26, 2015). As this Court recognized, "once a party realizes a document has been accidentally produced, it must assert privilege with virtual immediacy." Order at 5 (quoting *Ecological Rts. Found.*, 2017 WL 24859, at *7). Moreover, while "Rule 502(b) does not require a producing party to engage generally in a post-production review to determine whether any privileged documents or information have been produced by mistake," "the rule does require the producing party to follow up on any obvious indications that a protected communication or information has been produced inadvertently." Order at 4 (quoting *AdTrader*, 405 F. Supp. 3d at 866).

The Order made clear that Defendants have not "demonstrated they promptly took reasonable steps to rectify the error," as "Defendants only clawed back the Presentation from the SEC ***months after it first made the disclosure and a full ten days even after Defendants were put on explicit notice of the production***"—*i.e.* from the date of the January 27, 2023 filing of

Plaintiffs' class certification motion.  The Court clearly held that this delay "*is too long to meet the condition of promptness*."  Order at 5.

Not only have Defendants failed to provide a basis for the Court to reconsider this holding, but the facts set forth herein show that Defendants were put on explicit notice of the production of the Presentation *much earlier* than the Court may have realized at the time of the Order.  Specifically, Plaintiffs' January 16, 2023 letter—which Plaintiffs specifically referenced in the Joint Letter—prominently highlighted the Presentation and discussed slides relating to Defendants' *post hoc* changes to the Roxadustat safety analyses that form the crux of this action.  Clearly, Plaintiffs' "quotation from and reliance on this portion of the [document] should have put [Defendants] on notice to at least inquire promptly" as to whether it was privileged.  *AdTrader*, 405 F. Supp. 3d at 866; *IGT v. All. Gaming Corp.*, 2006 WL 8071393, at *7 (D. Nev. Sept. 28, 2006) (under Rule 502(b), courts consider not only "actual discovery" but also "*when the party, acting with reasonable diligence, should have discovered the inadvertent disclosure*"); *TRW, Inc.*, 204 F.R.D. at 176 (same);  *S.E.C. v. Cassano,* 189 F.R.D. 83, 86 (S.D.N.Y. 1999) ("There was no excuse for waiting 12 days to find out what the document was.").  Indeed, there is no question Defendants reviewed Plaintiffs' January 16, 2023 letter—Defendants responded to it two days later *without raising a claim that the Presentation is privileged*.

Remarkably, and tellingly, Defendants utterly ignore the January 16, 2023 letter in their Motion.  But their silence does not change the inalienable fact that Defendants did not claw back the Presentation until *three weeks after Plaintiffs highlighted it in their January 16 letter*, despite having numerous opportunities to do so.  This is far too long a delay under the circumstances.  *See, e.g., Mycone Dental Supply Co Inc v. Creative Nail Design Inc,* 2013 WL 4758053, at *3 (N.D. Cal. Sept. 4, 2013) ("courts have emphasized that clawback requests should be made immediately, with delays of even a few weeks determined to be too long"); *Skansgaard v. Bank of Am., N.A.*, No. C11-0988 RJB, 2013 WL 828210, at *3 (W.D. Wash. Mar. 6, 2013) (noting that "the courts have emphasized that claw back requests should be made immediately"); *DiLeo v. Meijer Stores Ltd. P'ship*, 2021 WL 1258779, at *3 (N.D. Ill. Apr. 5, 2021) (waiting "at least three days after [a party said] it discovered that [a privileged document] had been produced to Plaintiff in error" was

too long a delay); *United States ex rel. Baker v. Cmty. Health Sys., Inc.*, 2012 WL 12918280, at *3 (D.N.M. Feb. 17, 2012) (three-day delay after document introduced at deposition "can hardly be described as 'promptly' taking 'reasonable steps to rectify the error' as required by Rule 502").[6]

Compounding Defendants' abject failure to take reasonable steps to rectify their error, Plaintiffs sent yet another letter on January 26, 2023, which *again* prominently cited to and discussed the Presentation in connection with the critical potential spoliation issue concerning ███████████████████████—this time expressly highlighting ███████████ ███████████████████████████████████ Defendants' Motion ignores Plaintiffs' January 26, 2023 letter as well.[7]  Finally, Plaintiffs again prominently quoted the Presentation in their January 27, 2023 class certification brief, and attached it as an exhibit.  Yet, according to Defendants, it was somehow only on the following Monday, January 30, 2023, that they even started to *consider* whether the Presentation might be privileged,[8] and then failed to claw the document back from Plaintiffs until a full week later, on February 3, 2023, and from the SEC until several days after that.  This is plainly insufficient.

Moreover, even assuming, *arguendo*, that Plaintiffs had not sent letters discussing the Presentation on January 16 and January 26, Defendants' delay is too long.  *See* Order at 5. Recognizing their predicament, Defendants argue that their delay (counting from when they finally apparently reviewed the class certification brief three days after its filing) was due to their purported need to conduct a week-long investigation, which purportedly included "several phone

---

[6] Defendants' cases do not help them.  For example, in *Datel Holdings Ltd. v. Microsoft Corp.*, 2011 WL 866993, at *5 (N.D. Cal. Mar. 11, 2011) (Mtn. at 13),  the defendant accidentally produced a privileged email due to a "glitch" that "truncated" the email, and then "reviewed its entire production to identify other documents affected by the glitch" "within a few days" of when the document was introduced at a deposition, i.e. shortly after they were put on notice of the document.  *Id.*  Similarly, in *Mformation Techs., Inc. v. Rsch. in Motion Ltd.*, 2010 WL 3154441, at *2 (N.D. Cal. Aug. 9, 2010) (Mtn. at 14), the producing party commenced a re-review of their entire production after discovering an inadvertently produced privileged document, and within nine days of discovery of the first document had ***clawed back 51 documents***.  *Stamps.com, Inc. v. Endicia, Inc.*, 2008 WL 11338241, at *2 n.3 (C.D. Cal. Oct. 6, 2008) similarly does not help Defendants (Mtn. at 14), as the court found no waiver only due to "unique circumstances" involving staff and junior attorney error and senior counsel unavailability due to travel, and cautioned counsel that "discovery should not be delayed or impeded because counsel has inappropriately delegated the responsibility of reviewing or preparing discovery and the court may not excuse such conduct in the future."

[7] Defendants' quibbling about the counting of days and "intervening weekends" (Mtn. at 11, 13-14) is particularly irrelevant.

[8] If Defendants intend to justify their delay because they did not even *read* the motion until Monday, January 30, Plaintiffs request that the Court review defense counsel's billing records *in camera* to determine whether this is true.

**LP'S OPP. TO DEFS.' MOT. FOR LEAVE TO FILE MOT. FOR RECON.**

calls with FibroGen's in-house counsel," "multiple emails with FibroGen's in-house counsel,"[9] communications with Defendant Eisner, and a review of other versions of the Presentation in order to finally "***receive[] final information from Mr. Eisner***" (*not* General Counsel Lowenstein, the attorney who purportedly asked Eisner to create the Presentation), in order to "confirm[] that the Presentation was," in fact, privileged. Dkt. 172-1 at ¶10. This explanation does not hold water.

First, Defendants concede that they undertook no investigation regarding whether the Presentation was privileged after receiving either the January 16 or January 26 letters—even though the letters explicitly cited the document and directly quoted the precise language that Defendants now claim is somehow privileged. Second, the Presentation was obviously a document of paramount importance to FibroGen—it was a ██████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████ easily the most critical issue facing the Company at the time. Such essential documents do not simply slip through the cracks, nor should they be difficult to recognize as privileged if they are truly privileged. Third, if the Presentation were in fact commissioned by Lowenstein and obviously privileged, that fact could have been easily confirmed with a simple phone call or email to Lowenstein, rather than a week-long investigation involving extensive communications with executives and in-house counsel. Tellingly, to-date, Lowenstein *still* has not provided any such confirmation—nearly three months after defense counsel purportedly commenced their investigation. Fourth, if—as Defendants claim—the Presentation was merely an inadvertently produced copy or version of a critical privileged document, and that "over a dozen" other versions of the document had already been withheld for privilege, then the Presentation should have been immediately recognizable to Eisner (its author), Lowenstein (who purportedly requested it) and outside defense counsel (who purportedly reviewed it) as privileged, particularly given its obvious significance. Indeed, as Defendants acknowledge, ████████████████████████████████████████████████

---

[9] Surprisingly, the Motion and Brien Declaration describe only communications with "in-house counsel" (as opposed to the "General Counsel") in connection with their investigation, and do *not* describe any communications specifically with General Counsel Michael Lowenstein—the person who purportedly requested Eisner prepare the Presentation.

LP'S OPP. TO DEFS.' MOT. FOR
LEAVE TO FILE MOT. FOR RECON.

███████████████████████████████████████████, and, as such, should have immediately recognized the significance and privileged nature of the document themselves.

In sum, Defendants' failure to take prompt action under these circumstances is inexcusable.

### 2.  Defendants Fail To Show That The Disclosure Was Truly Inadvertent Or That They Took Reasonable Steps to Prevent Disclosure

Defendants contend that their disclosure of the Presentation to the SEC and to Plaintiffs was inadvertent, and that they took reasonable steps to prevent disclosure of the Presentation in the first place.  In support of this contention, Defendants describe a standard privilege review process typical in cases of this nature: a "first level review" by contract attorneys, check-in call with reviewers, and a "second-level" review involving associates and staff attorneys.  Dkt. 172-2.

But this is insufficient to show that Defendants took reasonable steps to prevent disclosure under the circumstances present here.  *First*, according to documents produced to Plaintiffs, ███████████████████████████████████████████████████████████████████. Ex. 9.  The inadvertent production of hundreds of purportedly privileged documents should have prompted Defendants to undertake additional reviews of those productions, particularly given the critical importance of the Presentation and the fact that FibroGen's counsel was undoubtedly already aware of the document.[10]  *See Bagley*, 204 F.R.D. at 180 ("Equally significant is defendant's subsequent delay in completing its follow-up review of its production to ensure that other privileged documents also had not been produced inadvertently."); *Mycone*, 2013 WL 4758053, at *3 (producing party should have "conducted a more thorough and timely investigation into the rest of the production after the initial clawback request").

*Second*, if the Presentation were truly an overlooked draft of an obviously privileged document, a dozen other copies of which Defendants claim were withheld, then Defendants could easily have used basic e-discovery software or simple key-word searches to easily locate other

---

[10] While Defendants claim that these clawbacks all pertained to a prior production due to a "technical mistake," Defendants fail to explain why, in light of this significant error, they would not have conducted a more careful or similar post-production privilege review of subsequent productions, especially considering that the Presentation was included in the very next production to the SEC.  Defendants also fail to specify how many documents were included in the production that included the Presentation, which appears to be the last of FibroGen's SEC productions.

LP'S OPP. TO DEFS.' MOT. FOR LEAVE TO FILE MOT. FOR RECON.

versions of the same presentation. As such, the mere fact that that the Presentation was a "standalone" document is hardly an excuse for Defendants' purportedly inadvertent production.

### D. Defendants Have Not—And Cannot—Meet Their Burden To Show That The Document Was Privileged To Begin With

Even if waiver did not occur under Rule 502(b), it is black letter law that Defendants "ha[ve] the burden of establishing" the privilege, which "is strictly construed." *Visa U.S.A., Inc. v. First Data Corp.*, 2004 WL 1878209, at *3 (N.D. Cal. Aug. 23, 2004) (Chen, J.). In order to do so, Defendants must "establish[] that each communication that it claims is privileged has as its primary or predominate purpose the provision of legal advice or assistance." *Wisk Aero LLC*, 2023 WL 2699971, at *4.

Further, any privilege claim involving a company's general counsel "warrants heightened scrutiny" because "[i]n-house counsel may act as integral players in a company's business decisions or activities, as well as its legal matters." *Id.* (internal quotations omitted). Thus, "[w]hen attempting to demonstrate that an internal communication involving in-house counsel deserves privileged status, a party ... 'must make a ***clear showing*** that the speaker made the communication [ ] for the purpose of obtaining or providing legal advice.'" *Id.* (internal quotations omitted and emphasis added). Defendants here have not made any such "clear showing"; in fact, the Presentation's creation, contents, and subject matter make clear that it is plainly ***not*** privileged.

### 1. The Presentation Is Not Privileged On Its Face

First, and significantly, Defendants have effectively conceded that fourteen out of the Presentation's seventeen slides—*i.e.,* 82% of the Presentation—are not privileged and do not concern any legal purpose at all, as identical versions of these slides appeared in earlier drafts of the Presentation over which Defendants do not assert any privilege. *See* Order at 2 ("Of the seventeen slides, all but these three slides are identical to those used in three other documents that Mr. Eisner created."). The three apparently uniquely "privileged" slides in the Presentation include ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ████████████████████████ Defendants' implicit argument—that somehow only ***these three slides***

LP'S OPP. TO DEFS.' MOT. FOR
LEAVE TO FILE MOT. FOR RECON.

were prepared at the request of counsel for purposes of seeking legal advice, while the other *fourteen slides* were not, is absurd on its face. Moreover, there is nothing about the contents of these three slides that is privileged; in fact, ███████████████████████████████████ is merely his own summary analysis of the information of the other slides—it in no way reflects or seeks any legal advice. For this reason alone, the Presentation cannot be privileged.

Second, while Defendant Eisner asserts in his declaration that he created the "first draft" of the Presentation at Lowenstein's request (an instruction for which Eisner fails to provide any date or details), this is completely belied by Defendants' own documents. Indeed, as explained above, the evidentiary record is clear that the genesis of the Presentation was *not* any request from counsel. Rather, Eisner ████████████████████████████████████████ ███████████████████████████████████████████████ ████████████████████████████. In fact, Eisner ██████████████ ██████████████████████████████ well prior to purportedly seeking legal advice from Lowenstein. *See, e.g. In re Charles Schwab Corp. Sec. Litig.*, 2010 WL 11571107, at *1 (N.D. Cal. Mar. 11, 2010) ("[]the draft power point[] is not privileged because the segment of the e-mail loop in which it was first circulated included no lawyers—only business personnel—and it has not been shown to have been prepared at the request of counsel, but rather as a precursor to a slide to be shown at a board meeting").

Third, the Presentation's contents plainly concern a *business purpose*—█████████ ████████████████████████████████████████—rather than a legal one. *See City of Roseville Emps. Ret. Sys. v. Apple, Inc.*, 2022 WL 3083000, at *24 (N.D. Cal. Aug. 3, 2022) ("Despite [general counsel's] statement in her supplemental declaration that the documents were sent to her in order to solicit her input with respect to the legal implications of the foreign trade issues discussed in the draft presentation, the content of these documents indicates this was not the primary purpose of these communications," but rather a business purpose.); *LD v. United Behav. Health*, 2022 WL 17408010, at *17 (N.D. Cal. Dec. 2, 2022) ("the primary purpose of the communication was to confirm the accuracy of a representation" to a regulatory agency). Indeed, "Pooled Safety Analysis" is a scientific and not inherently legal subject

LP'S OPP. TO DEFS.' MOT. FOR
LEAVE TO FILE MOT. FOR RECON.

matter, and the Presentation "does not identify any particular legal problem related to" that analysis. *Wisk Aero LLC*, 2023 WL 2699971, at *5.  Rather, as the Court already found, the Presentation concerns ███████████████████████ (Order at 2) rather than legal matters.

Fourth, the Presentation is not stamped as privileged and "makes no reference to privilege." *Wisk Aero LLC*, 2023 WL 2699971, at *5.  Indeed, Defendants themselves admit that "the privilege is not apparent from the face of the document" (Mtn. at 12), which was "not either marked 'attorney-client privilege' or attached to an email to or from a lawyer" (*id.* at 5).

Fifth, even if the presentation had *some* legal purpose—which it does not—this would be insufficient, as the privilege applies "only where the 'primary purpose' . . . is 'to give or receive legal advice." *Roseville*, 2022 WL 3083000, at *3 (citing *In re Grand Jury*, 23 F.4th 1088, 1092 (9th Cir. 2021)).  Indeed, given the paramount importance of ███████████████████████ ████████████████████████████████████████, clearly "this analysis would have been undertaken" even if "no lawyers were to be involved"—further defeating any claim that the primary purpose of the Presentation was a legal one. *Visa*, 2004 WL 1878209, at *7.

## 2.    Defendants' New "Evidence" Is Wholly Insufficient

Defendants' newly produced "evidence" in support of their privilege claims is grossly inadequate to meet their burden.  Most significantly, Defendants did not even include a single contemporaneous email or any subsequent declaration from General Counsel Lowenstein supporting their assertion that the Presentation is privileged because it was "drafted in response to Mr. Lowenstein's request" for "further information to facilitate his and outside counsel's ability to provide that advice to the Company."  The absence of any such documentary evidence is glaring, and alone dooms Defendants' claim of privilege. *See, e.g., Roseville*, 2022 WL 3083000, at *13, 19, 24[11] (finding defendants failed to establish privilege where they did not provide "detailed facts ***from the attorney whose advice was sought or given*** relating to each specific document" and noting "it is not clear why [the general counsel] did not provide a supporting declaration" as to certain documents.) (emphasis added).  Tellingly, the ***only*** declaration Lowenstein has signed

---

[11] *Motion for relief from judgment denied sub nom. In re Apple Inc. Sec. Litig.*, 2022 WL 4351392 (N.D. Cal. Sept. 12, 2022), and *motion to certify appeal denied*, 2022 WL 4588603 (N.D. Cal. Sept. 29, 2022).

**LP'S OPP. TO DEFS.' MOT. FOR
LEAVE TO FILE MOT. FOR RECON.**

regarding the Presentation describes it as a decidedly ***non-privileged*** document prepared for a ***business purpose***:  Lowenstein stated that it was "a PowerPoint presentation presented to the FibroGen Board regarding the statistical methodologies underlying the Roxadustat safety analyses, FibroGen's processes for unblinding the Roxadustat data, pooled statistical analysis plans, and discussions with the FDA regarding the Roxadustat safety analyses," which contained "***information relating to business decisions, strategies, and internal deliberations***," and expressly ***did not*** describe the Presentation as privileged.  Dkt. No 150-1 at 1.

Defendant Eisner's vague declaration also cannot support a privilege claim.  Dkt No. 171-3 ("Eisner Dec.").  First, Eisner does not specify when (even in a general sense) he purportedly "requested legal advice on behalf of the Company from in-house counsel, Michael Lowenstein," when "Mr. Lowenstein requested further information," what "information" Lowenstein requested, or when "[i]n response to Mr. Lowenstein's request, [he] began drafting a set of PowerPoint slides."  Nor can Eisner or Defendants point to a single email, call, meeting, or note reflecting any such "request" from either Eisner or Lowenstein.  Eisner Dec. at ¶¶2-4. *See MediaTek Inc. v. Freescale Semiconductor, Inc.*, 2013 WL 5594474, at *3 (N.D. Cal. Oct. 10, 2013) (conclusory assertions that a document was "created at the request of [] general counsel for the purpose of facilitating the rendering of legal advice" are patently insufficient to establish privilege).

Moreover, the evidentiary record flatly contradicts Eisner's account.  Indeed, as outlined above, while Eisner claims the March 28, 2021 Presentation was the "first draft" of that document, Defendants' own documents clearly show that Eisner ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ that was purportedly "requested" by Lowenstein to "facilitate" legal advice to the Board.  Additionally, Plaintiffs have located no fewer than ***seven*** prior non-privileged drafts of the same Presentation.   As such, it is apparent that, rather than the Presentation being a "first draft" prepared for the first time in response to the request of counsel, Eisner instead ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

LP'S OPP. TO DEFS.' MOT. FOR
LEAVE TO FILE MOT. FOR RECON.

████████████████████████████████████.  However, it is well-settled that merely sending a document to an attorney does not transform it into a privileged document.  *See, e.g., Chaudhry v. Angell*, 2020 WL 7182083, at *9 (E.D. Cal. Dec. 7, 2020) ("[A] client cannot shield information by merely providing it to their attorney…[T]he court must consider whether the document already existed and was sent to the attorney for review or was prepared at the direction of counsel."); *Visa*, 2004 WL 1878209, at *7 ("[T]he fact that the documents were reviewed and subject to revisions by counsel does not necessarily make them privileged.").

The declaration of outside defense counsel Tijana Brien is similarly sorely lacking. Dkt. Nos 172-1 ("Brien Dec.").  Indeed, tellingly, the Brien Declaration (which describes Defendants' week-long investigation into whether the Presentation was privileged) refers only generally to "several phone calls with FibroGen's in-house counsel" and Eisner, but conspicuously does not refer to *any* communications whatsoever with Lowenstein—despite Defendants' claim that their investigation concluded that the Presentation was privileged precisely because it was *Lowenstein* who had requested that it be created.  Moreover, Brien's descriptions of a week of extensive communications with FibroGen personnel only further call into question why, if the Presentation is so clearly privileged, it would take such an extensive investigation to determine as much.

Defendants' argument that they withheld and logged "at least a dozen" other versions of the Presentation—*even if accepted as true*—similarly does not help them.  First, "to claim attorney-client privilege as to [the Presentation], Defendants were required to provide specific information showing that the provision of legal advice was the primary purpose for creating *each document*"—*i.e.* that the Presentation itself (and not merely subsequent versions of it) "actually reflects legal advice or a request for legal advice." *Roseville*, 2022 WL 3083000, at *19.  Second, merely logging a document does not render it privileged.  *See, e.g., LD v. United Behav. Health*, 2022 WL 17408010, at *9 (N.D. Cal. Dec. 2, 2022) (rejecting privilege assertions over logged documents).  And third, the privilege log's description of other versions of the Presentation ("Presentation provided for purpose of seeking legal advice of counsel (Michael Lowenstein) re: Pooled Safety Analysis") are mere "boilerplate assertion[s] of privilege" that "*fall[] far short of what is required to claim attorney-client privilege*." *Id.* at *7; *see also Fed. Trade Comm'n v.*

LP'S OPP. TO DEFS.' MOT. FOR
LEAVE TO FILE MOT. FOR RECON.

*Qualcomm Inc.,* 2018 WL 11420853, at *4 (N.D. Cal. Mar. 16, 2018) ("Simply stating that a communication 'discloses legal advice' regarding 'QC business plans' is insufficient.").

**E.    Defendants Should Be Ordered To Produce The Presentation Prior To Resolution Of Their Reconsideration Motion**

To date, Defendants have refused Plaintiffs' repeated requests to re-produce the Presentation pursuant to the Court's clear Order, pending resolution of their Reconsideration Motion.  Defendants have no valid basis for refusing to comply with the Court's Order compelling production, nor have they even moved for a stay of the Order pending the resolution of this Motion.

First, a stay of a discovery order pending reconsideration or appeal "is not a matter of right," but is instead 'an exercise of judicial discretion'…[that] 'is dependent upon the circumstances of the particular case.'" *Loop AI Labs Inc v. Gatti*, No. 15-CV-00798-HSG, 2016 WL 3001158, at *1 (N.D. Cal. May 25, 2016) (quoting *Lair v. Bullock*, 697 F.3d 1200, 1203 (9th Cir. 2012).  Given that "[t]he party requesting a stay bears the burden of showing that the circumstances justify an exercise of [the Court's] discretion," (*id.*) Defendants can hardly have met their burden given that they ***have not even moved for a stay***.

Second, even assuming Defendants had requested a stay, the circumstances here do not call for one, as Defendants have not "made a strong showing [they are] likely to succeed on the merits," and have not shown they will "suffer irreparable injury in the absence of a stay."  Indeed, Defendants can hardly show irreparable injury if Defendants re-produce the Presentation given that "the document at issue has previously been produced to Plaintiffs in this litigation, and Plaintiffs had the document in their possession for over three months," and thus "Plaintiffs have already had an opportunity to use and analyze the document at issue," and have even cited it in two letters and a court filing. *Regents of Univ. of California v. Affymetrix, Inc.*, 2018 WL 3752752, at *8 (S.D. Cal. Aug. 6, 2018) (denying stay of discovery order pending appellate review).

Plaintiffs, by contrast, will be prejudiced by a stay.  *Id.*  Plaintiffs have already made extensive use of the document in discovery, in spoliation-related disputes with Defendants, and in their motion for class certification, as well as in internal discussions of case strategy.  Moreover, a 30(b)(6) deposition of FibroGen regarding the potential spoliation issue caused by █████████

**LP'S OPP. TO DEFS.' MOT. FOR LEAVE TO FILE MOT. FOR RECON.**

███████████████████████ has now been scheduled for May 4, 2021—and considering the Presentation's import to whether Defendants anticipated litigation at the time ██████████ ███████████████, Plaintiffs would intend to use the Presentation to prepare for (and possibly use as an exhibit) for that deposition. Plaintiffs would therefore be substantially prejudiced by being deprived of the document's use during the pendency of a potentially lengthy process.

Accordingly, Plaintiffs respectfully request that the Court compel Defendants to comply with the Order and promptly produce the Presentation to Plaintiffs.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants' Motion for Reconsideration and order Defendants to immediately produce the Presentation.

Dated:  April 28, 2023                    Respectfully submitted,

*/s/ David R. Kaplan*

**SAXENA WHITE P.A.**

David R. Kaplan (SBN 230144)
dkaplan@saxenawhite.com
Emily Bishop (SBN 319383)
ebishop@saxenawhite.com
505 Lomas Santa Fe Drive, Suite 180
Solana Beach, CA 92075
Telephone: (858) 997-0860
Facsimile: (858) 369-0096

Steven B. Singer
ssinger@saxenawhite.com
Kyla Grant (admitted *pro hac vice*)
kgrant@saxenawhite.com
Sara DiLeo (admitted *pro hac vice*)
sdileo@saxenawhite.com
Joshua H. Saltzman (admitted *pro hac vice*)
jsaltzman@saxenawhite.com
10 Bank Street, 8th Floor
White Plains, New York 10606
Tel: (914) 437-8551

Maya Saxena (admitted *pro hac vice*)
msaxena@saxenawhite.com

Lester R. Hooker (SBN 241590)
lhooker@saxenawhite.com
Dianne M. Pitre (SBN 286199)
dpitre@saxenawhite.com
7777 Glades Road, Suite 300
Boca Raton, FL 33434
Tel.: 561.394.3399
Fax: 561.394.3382

*Counsel for Lead Plaintiffs Employees' Retirement System of the City of Baltimore, City of Philadelphia Board of Pensions and Retirement, and Plymouth County Retirement Association, and Lead Counsel for the Class*

**LP'S OPP. TO DEFS.' MOT. FOR
LEAVE TO FILE MOT. FOR RECON.**

**CERTIFICATE OF SERVICE**

I hereby certify under penalty of perjury that on April 28, 2023, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel or parties of record.

_/s/ David R. Kaplan_
David R. Kaplan

**LP'S OPP. TO DEFS.' MOT. FOR
LEAVE TO FILE MOT. FOR RECON.**