COOLEY LLP
PATRICK E. GIBBS (183174)
(pgibbs@cooley.com)
TIJANA M. BRIEN (286590)
(tbrien@cooley.com)
BRETT H. DE JARNETTE (292919)
(bdejarnette@cooley.com)
ZANETA J. KIM (317844)
(zkim@cooley.com)
AMIE L. SIMMONS (336356)
(asimmons@cooley.com)
3175 Hanover Street
Palo Alto, California 94304-1130
Telephone:     +1 650 843 5000
Facsimile:     +1 650 849 7400

CAITLIN MUNLEY (*Pro Hac Vice*)
(cmunley@cooley.com)
ALEXANDRA EBER (*Pro Hac Vice*)
(aeber@cooley.com)
1299 Pennsylvania Ave., N.W., Suite 700
Washington, DC 20004-2400
Telephone:     +1 202 842 7800
Facsimile:     +1 202 842 7899

Attorneys for Defendants
FibroGen, Inc., Enrique Conterno, James Schoeneck,
Mark Eisner, and Pat Cotroneo

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE FIBROGEN, INC., SECURITIES LITIGATION | Case No. 3:21-cv-02623-EMC <br><br> **CLASS ACTION** <br><br> **DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR RECONSIDERATION** <br><br> JUDGE:   Hon. Edward Chen |

Defendants FibroGen, Inc. ("FibroGen" of the "Company"), Enrique Conterno, James Schoeneck, Mark Eisner, and Pat Cotroneo (collectively, "Defendants") respectfully submit this reply in support of their Motion for Reconsideration (Dkt. No. 172) ("Mot. for Recon." or "Motion") of the Court's order granting Plaintiffs' motion to compel production (Dkt. No. 161) ("Order") of the document Bates numbered FGEN-CA-0353824 ("Presentation").

## I. INTRODUCTION

The Motion for Reconsideration established that Defendants' conduct complied with Federal Rule of Evidence 502(b) and that its clawback of the Presentation was proper. Plaintiffs' Opposition does not meaningfully engage with the arguments and facts raised in Defendants' Motion. Instead, replete with false, inflammatory, and irrelevant statements, Plaintiffs' Opposition to Defendants' Motion for Reconsideration (Dkt. No. 176) ("Plaintiffs' Opposition" or "Opp.") is nothing more than an attempt to distract the Court from the arguments and facts that are actually relevant to its consideration of Defendants' Motion for Reconsideration. Defendants respectfully submit this response in order to clarify or correct statements raised in Plaintiffs' Opposition.

## II. ARGUMENT

### A. The Timing of Defendants' Clawback Was Reasonable

In their Motion for Reconsideration, Defendants explained the discovery of, and investigation into, the privileged nature of the Presentation. As the Motion demonstrated, Defendants' counsel took reasonable and thorough steps to determine whether the Presentation was privileged and should be clawed back and upon learning that it was, took immediate steps to claw back the Presentation. In response, Plaintiffs' raise inaccurate and extreme claims that suggest a complete lack of understanding of the litigation and discovery process.

#### a. Plaintiffs' Prior Letters Did Not Put Defendants on Notice of the Privileged Nature of the Presentation

In an effort to artificially extend the time that it allegedly took Defendants to claw back the Presentation, Plaintiffs argue that their citation to the Presentation in two discovery letters, in which the Presentation was not material to the underlying discovery dispute, should have prompted a

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

1

DEFS.' REPLY ISO MOT.
FOR RECONSIDERATION
3:21-CV-02623-EMC

clawback.  This argument, which was already before the Court in the parties' Joint Discovery Letter and was not considered in the Court's Order, is unfounded.

*First*, Plaintiffs rely on a reference to the Bates number of the Presentation in their January 16, 2023 letter.  However, nothing about that reference would have caused counsel to review the cited document.  Indeed, the letter cites the Bates number of the Presentation (not the Presentation, itself) as support for the dates that the unblinding of the Roxadustat Phase III data took place and the finalization of one of the pooled statistical analysis plans governing the pooling of that data.  Opp., Ex. 10 at 3 (Dkt. No. 176-8).  Defendants do not (nor did they ever) dispute these dates, but rather the disagreement between the parties was over *which* unblinding dates were relevant for purposes of determining what the appropriate relevant time period would be for document collection and review (and, apparently, whether April constitutes "late" spring).  Declaration of Tijana M. Brien in Support of Reply ("Brien Decl.") ¶ 2.  Accordingly, Defendants did not review the document cited to support these undisputed dates and did not become aware at that time that Plaintiffs were citing to the Presentation or that they had inadvertently produced a privileged document.  *Id.* ¶ 3.

*Second*, Plaintiffs rely on another letter citing the Presentation, sent late on the afternoon of Thursday, January 26, 2023, the day before the Motion for Class Certification was filed.  *Id.* ¶ 4.  The letter cites the Presentation towards the end of a string of 11 bullet points pertaining to when litigation should have been reasonably anticipated in the context of an entirely unrelated discovery dispute.  Opp., Ex. 12 at 5 (Dkt. No. 176-13).  The letter came during a busy period of the case when defense counsel had many obligations related to this litigation that required attention on Friday, January 27, 2023.  Brien Decl. ¶ 4.  Accordingly, defense counsel set up a time to discuss the letter on Monday, January 30, 2023.  *Id.* ¶ 5.  By the time Defendants turned their attention to the January 26 letter that Monday, the investigation into whether the Presentation was privileged was already underway.[1]  *Id.* ¶ 6.

---

[1] That Defendants responded to the January 26 letter the day before they had confirmed the privileged nature of the Presentation and did not mention the Presentation (which was irrelevant to the response) or its clawback, is of no effect.  Upon confirming the Presentation was privileged, Defendants clawed the document back.

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

2

DEFS.' REPLY ISO MOT.
FOR RECONSIDERATION
3:21-CV-02623-EMC

**b.** **Defendants Investigation of the Creation of the Presentation was Reasonable**

Plaintiffs complain that Defendants did not closely review Plaintiffs' thirty-five page Motion for Class Certification and each of its eleven exhibits, which were filed late on a Friday night, until the next business day. Opp. at 16. But it is absurd to suggest that Defendants' counsel had an obligation to review the entire motion and each of Plaintiffs' supporting exhibits on Friday night or over the weekend. Defendants had *sixty* days to respond to the Motion for Class Certification. There was no particular urgency to review their motion, and Defendants' counsel identified the document and commenced their investigation the very next business day. Moreover, Defendants did not say, as Plaintiffs contend, that they did not review the brief *at all* over the weekend, but that – coming in at thirty-five pages and eleven exhibits (themselves totaling an additional two hundred pages) – Defendants did not review it *closely enough to realize that one of the eleven exhibits may have been privileged* until the next business day. Mot. for Recon. at 3. Plaintiffs' request that the Court review defense counsel's billing records *in camera* to test the truth of a statement that Defendants did not even make is a distraction and, moreover, is a completely baseless attack on defense counsel's integrity and professional ethics.

The same is true of Plaintiffs' completely baseless suggestion that Defendants must have had enough information to claw back the document by Monday, January 30, 2023. Opp. at 16-17. Defendants obviously cannot reveal all of the details of their investigation and the conversations between counsel and clients that led to the clawback on February 3, 2023, but Defendants' evidence on this point is undisputed, and Plaintiffs cite no evidence supporting their suggestion that defense counsel is not telling the truth. Plaintiffs repeated and baseless attacks on defense counsel's integrity, in the face of undisputed and sworn testimony from defense counsel, is both irrelevant and offensive. It is also inconsistent with Plaintiffs' own professional obligations. N.D. Cal. *Guidelines for Professional Conduct* § 7 ("Written materials submitted to the court should always . . . fairly represent the parties' positions without unfairly attacking the opposing party or opposing counsel.").

Finally, Plaintiffs note that Defendants' Motion for Reconsideration describes "only communications with 'in-house counsel' (as opposed to the 'General Counsel') in connection with

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

**DEFS.' REPLY ISO MOT. FOR RECONSIDERATION 3:21-CV-02623-EMC**

their investigation." Opp. at 17 n.9. But the "General Counsel" of a company is, by definition, "in-house counsel," and in any event, for this purpose, the names of the in-house lawyers with whom defense counsel communicated are completely irrelevant. For the avoidance of any doubt, however, Defendants now clarify that defense counsel communicated with FibroGen in-house attorneys Michael Lowenstein and John Alden as part of the investigation into the Presentation. Brien Decl. ¶ 7.

### c. Prior SEC Clawbacks Should Not Have Prompted Additional Review

Plaintiffs' argument that Defendants' other clawbacks from the SEC should have prompted Defendants to "undertake additional review[] of those productions," Opp. at 18, bends the facts as laid out in Defendants' Motion. As explained in Defendants' Motion, nearly all of the prior clawbacks from the SEC were a result of technical errors with productions 4, 5 and 6. Mot. for Recon. at 11. The discovery of the errors that led to those clawbacks *did* prompt additional review of, in Plaintiffs words, "those productions." *Id.*; Opp. at 18. But the Presentation was not produced in "those productions." Mot. for Recon. at 11. Rather, it was produced in a later production which Defendants had confirmed was not affected by the same technical errors that affected the three prior productions. *Id*.

### B. The Privileged Nature of the Presentation Has Been Established

As has now been attested to and demonstrated multiple times, the Presentation was created in order to facilitate in-house and outside counsel's advice to the Company. Plaintiffs' arguments to the contrary are unconvincing and an improper attempt to circumvent the long-established privilege between an attorney and client.

### a. Defendants Provided Sufficient Evidence of Privilege

Plaintiffs argue that Defendants' claim of privilege lacks support because "Defendants did not even include a single contemporaneous email or any subsequent declaration from General Counsel Lowenstein supporting their assertion that the Presentation is privileged . . . ." Opp. at 21. As a starting point, there is of course no requirement that a request for legal advice or request from a lawyer that a document be created be *in writing*. 1 Paul R. Rice, *Attorney-Client Privilege in the United States* § 5:17 (rev. ed. 2022) ("the methods or means by which the client chooses to

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

4

communicate—e.g., orally [] or written []—is not important analytically to the application of the privilege.").  Even if it were in writing, such a document itself would be privileged and Defendants would be constrained in their ability to rely on it.  In an effort to navigate this tricky terrain, however, Defendants did cite entries on their privilege log in support of the statements that "[a]fter creating the Presentation at counsel's request, Mr. Eisner sent it to Mr. Lowenstein to facilitate legal advice from Mr. Lowenstein and outside counsel."  Mot. for Recon. at 9 (citing FGEN-CA-PL-02957–58; FGEN-CA-PL-03378–79).  In making their argument that the Presentation is privileged, Defendants should not be penalized for their efforts to maintain privilege over other privileged documents.

Plaintiffs further suggest that this Court should infer something nefarious from the fact that Defendants' Motion included only a declaration from Mark Eisner – who created the Presentation – and not a second declaration from General Counsel Michael Lowenstein.  Opp. at 21-22.  This argument is absurd.  Defendants did not provide a declaration from Mr. Lowenstein because it would have been entirely duplicative of the declaration from Mr. Eisner, not because Defendants were hiding some information that would have been relevant to the Court's analysis.  Mr. Lowenstein's account is simply the other side of the conversations described in Mr. Eisner's declaration: While preparing for the Cardiovascular and Renal Drug Advisory Committee ("CRDAC") meeting set by the U.S. Food and Drug Administration (FDA) for July 15, 2021, Mr. Eisner requested legal advice from Mr. Lowenstein on behalf of the Company related to Roxadustat's cardiovascular safety data, the New Drug Application ("NDA") submission, and the Company's public disclosures about those topics.  Declaration of Michael Lowenstein in Support of Reply ("Lowenstein Decl.") ¶ 2.  In response to his request for legal advice, Mr. Lowenstein requested further information from Mr. Eisner to facilitate his and outside counsel's ability to provide that advice to the Company.  Id. ¶ 3.  As a result of Mr. Lowenstein's request, Mr. Eisner began drafting the Presentation.  Id. ¶ 4.  In creating the first draft of the slides, Mr. Eisner did not mark them as "Attorney-Client Privilege."  Id. ¶ 5.  Mr. Lowenstein, however, added that designation to the next version of the document, which was in keeping with its purpose.  Id.  After creating the presentation, Mr. Eisner sent it to Mr. Lowenstein to facilitate legal advice from

Cooley LLP
Attorneys at Law
Palo Alto

5

Defs.' Reply ISO Mot.
for Reconsideration
3:21-cv-02623-EMC

Mr. Lowenstein and outside counsel.[2]  *Id.* ¶ 6.  Multiple versions of the document were exchanged between Mr. Lowenstein, Mr. Eisner, and outside counsel over the course of several days, as they worked on the content necessary to allow Mr. Lowenstein and outside counsel to provide legal advice to the Company.  *Id.*  The final version of the document was presented to the Company's Board of Directors (the "Board") at a meeting on March 29, 2021.  *Id.* ¶ 7.  During that session, Mr. Lowenstein and outside counsel provided legal advice to the Board related to Roxadustat's cardiovascular safety data, the NDA submission, and the Company's public disclosures about those topics.  *Id.*

**b.    The Presentation is Not a Later Draft of a Different Presentation**

Plaintiffs argue that the Presentation was not a first draft, but rather originated outside the Company.  Opp. at 20-24.  In support of this argument, Plaintiffs cite a *different* presentation that has some of the same slides as the Presentation at issue here.  Opp. at 5-6.  Defendants do not dispute that, in creating the Presentation at the request of Mr. Lowenstein, Mr. Eisner used some of the slides from this other presentation.  But a document created at the request of counsel does not lose its privilege just because it was created in part using non-privileged material.  *Lewis v. Wells Fargo & Co.*, 266 F.R.D. 433, 445 (N.D. Cal. 2010) (document created at the request of counsel falls within the scope of the attorney-client privilege so long as the document was created to advance the purpose of obtaining legal advice).  Even if it did, at a minimum the slides included in the Presentation drafted by Mr. Eisner that were not also part of another, non-privileged presentation should be allowed to be redacted and their privilege maintained.

**C.    Defendants Are Not Required to Reproduce the Presentation While the Motion for Reconsideration is Pending**

Plaintiffs conclude by arguing that Defendants should have re-produced the Presentation while their Motion for Reconsideration was pending.  Opp. at 24-25.  This is absurd.  Defendants are entitled to continue to withhold the document on the grounds of privilege while this dispute remains pending.  Indeed, had Defendants voluntarily re-produced the Presentation without

---

[2] Plaintiffs' attempt to conflate the entire Cooley law firm into one sentient being is also misplaced. Opp. at 17-19.  That some Cooley attorneys may have participated in the Board Meeting does not magically transmit knowledge regarding the Presentation to other Cooley attorneys.

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

6

DEFS.' REPLY ISO MOT.
FOR RECONSIDERATION
3:21-CV-02623-EMC

awaiting resolution of the present motion, Plaintiffs would undoubtedly argue that this re-production itself operated as a waiver of privilege.

Plaintiffs take pains to argue that they will be prejudiced if this Court does not order Defendants to re-produce the Presentation prior to ruling on the Motion for Reconsideration because they have already used the document in their motion for class certification and due to what they describe as a "potential spoliation issue." Opp. at 24-25. First, Plaintiffs' argument that, if Defendants do not re-produce a privileged document, they are somehow prejudiced as to a motion for class certification that they *already filed* strains logic. Their motion for class certification remains pending and they suffer no ongoing prejudice by not having access to the Presentation in the meantime. Second, their insertion into this dispute of the entirely unrelated sideshow they have created regarding Dr. Yu's return of her company laptop before litigation was anticipated is an effort to distract the Court from the merits of *this* dispute. As Plaintiffs surely know, whether litigation was anticipated at the time Dr. Yu returned her laptop to the Company has nothing to do with whether privilege attaches to the Presentation. *AT&T Corp. v. Microsoft Corp.*, 2003 WL 21212614, at *3 (N.D. Cal. Apr. 18, 2003) ("The Ninth Circuit privilege test involves the nature, the content, and the context in which documents were prepared.") (citing *Bio-Rad Lab'ys, Inc. v. Pharmacia, Inc.*, 130 F.R.D. 116, 126 (N.D. Cal. 1990)).

Plaintiffs' request to compel re-production of the Presentation while the Court considers the Motion for Reconsideration should be denied.

**III.    CONCLUSION**

For these reasons and those set forth in Defendants' Motion for Reconsideration (Dkt. No. 172), the Court should grant Defendants' motion and find that Defendants did not waive attorney-client privilege over the Presentation.

Dated:  May 3, 2023                                  COOLEY LLP

                                                     By:    */s/ Patrick E. Gibbs*
                                                            Patrick E. Gibbs

                                                     *Attorneys for Defendants*
                                                     *FibroGen, Inc., Enrique Conterno,*
                                                     *James Schoeneck, Mark Eisner,*
                                                     *and Pat Cotroneo*

Cooley LLP
Attorneys at Law
Palo Alto

7

Defs.' Reply ISO Mot.
for Reconsideration
3:21-cv-02623-EMC