UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE FIBROGEN, INC., SECURITIES LITIGATION | Case No. 3:21-cv-02623-EMC |
| | **CLASS ACTION** |
| | **[PROPOSED] ORDER DENYING LEAD PLAINTIFFS' MOTION FOR CLASS CERTIFICATION** |

Lead Plaintiffs Employees' Retirement System of the City of Baltimore ("Baltimore Employees"), City of Philadelphia Board of Pensions and Retirement ("Philadelphia Pension Fund"), and Plymouth County Retirement Association ("Plymouth County") (collectively "Lead Plaintiffs" or "Plaintiffs") have moved to certify a class pursuant to Rules 23(a) and 23(b)(3) on behalf of themselves and those persons or entities who purchased or otherwise acquired publicly traded securities of FibroGen, Inc. ("FibroGen"), including options, during the period from December 20, 2018 through July 15, 2021 inclusive (the "Class Period"), and were damaged thereby (the "Motion"). Defendants FibroGen, Enrique Conterno, James Schoeneck, Mark Eisner, Pat Cotroneo, and Peony Yu (collectively, "Defendants") have filed their Opposition to Lead Plaintiffs' Motion for Class Certification.

Having considered the Motion, the accompanying declarations, the pleadings and filings in this action, and all other matters properly before the Court, Lead Plaintiffs' Motion for Class Certification is **DENIED**.

## I.    PLAINTIFFS HAVE FAILED TO SATISFY RULE 23(B).

Plaintiffs move for class certification pursuant to Rules 23(a) and 23(b)(3). Rule 23(b)(3) requires a showing that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "To recover damages for violations of section 10(b) and Rule 10b–5, a plaintiff must prove (1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss [damages]; and (6) loss causation." *Halliburton Co. v. Erica P. John Fund, Inc.* (*Halliburton II*), 573 U.S. 258, 267 (2014) (internal quotation marks omitted).

### A.    Defendants have rebutted the "fraud-on-the-market" presumption of reliance for the challenged statements after April 6, 2021.

Plaintiffs' motion is denied in its entirety, as discussed below. However, it is worth noting, that even if this Court could certify a class, the class period would have to be shortened to end on April 6 as opposed to July 15, 2021. Whether an investor relies on alleged misstatements is

typically an individualized inquiry.  However, the Supreme Court has recognized a presumption of reliance on public statements because "the market price of shares traded on well-developed markets reflects all publicly available information, and, hence, any material misrepresentations." *Basic Inc. v. Levinson*, 485 U.S. 224, 246 (1988).  When the presumption applies, "[a]n investor who buys or sells stock at the price set by the market does so in reliance on the integrity of that price," and therefore relies on alleged misstatements.  *Id.* at 247.  Conversely, "[b]ecause publicly available information in an efficient market is generally reflected in the price of a security, the disclosure of confirmatory information—or information already known by the market—will not cause a change in stock price." *Grigsby v. BofI Holding, Inc.*, 979 F.3d 1198, 1205 (9th Cir. 2020).

The presumption of reliance is rebuttable, and "[a]ny showing that severs the link between the alleged misrepresentation and either the price received (or paid) by the plaintiff, or his decision to trade at a fair market price, will be sufficient to rebut the presumption of reliance." *Basic*, 485 U.S. at 248.  Defendants can rebut the presumption by showing that "the asserted misrepresentation (or its correction) did not affect the market price of the defendant's stock" – that is, there was no "price impact."  *Halliburton II*, 573 U.S. at 264, 279-80.  "***Price impact is thus an essential precondition for any Rule 10b–5 class action***."  *Id.* at 282 (emphasis added).  "In the absence of price impact, *Basic*'s fraud-on-the-market theory and presumption of reliance collapse." *Id.* at 278.

The district court is tasked with assessing "all the evidence of price impact—direct and indirect—and determine[ing] whether it is more likely than not that the alleged misrepresentations had a price impact." *Goldman Sachs Grp. v. Ark. Tchr. Ret. Sys.*, 141 S. Ct. 1951, 1963 (2021). "[C]ourts should be open to ***all*** probative evidence on that question—qualitative as well as quantitative—aided by a good dose of common sense." *Id.* at 1960 (internal quotation marks omitted).  The Supreme Court has counseled that courts "must take into account ***all*** record evidence relevant to price impact, regardless whether that evidence overlaps with materiality or any other merits issue," and "may not use the overlap to refuse to consider the evidence." *Id.* at 1961 & n.2 (internal quotation marks omitted).

One way to rebut price impact is to show that the market already knew of the allegedly omitted information, in which case the stock price could not have been inflated or maintained

through the misrepresentation or omission of that information. *See Basic*, 485 U.S. at 248 ("[P]etitioners could show that the 'market makers' were privy to the truth . . . and thus that the market price would not have been affected by their misrepresentations."); *In re Chi. Bridge & Iron Co. N.V. Sec. Litig.*, 2020 WL 1329354, at *7 n.5 (S.D.N.Y. Mar. 23, 2020) ("[A] court should review the 'newness' of a corrective disclosure [to rebut price impact] at the class certification stage."); *see also Bricklayers & Trowel Trades Int'l Pension Fund v. Credit Suisse Sec. (USA) LLC*, 752 F.3d 82, 89 (1st Cir. 2014); *In re Qualcomm Inc. Sec. Litig.*, 2023 WL 2583306, at *13 (S.D. Cal. Mar. 20, 2023) (finding no price impact because the allegedly omitted information was previously disclosed to the market).

Here, Defendants have demonstrated that no challenged statement impacted FibroGen's stock price after April 6, 2021, rebutting the presumption of reliance for those statements. Plaintiffs claim that FibroGen misled investors from April 6 through July 15, 2021 by failing to disclose and misrepresenting certain "prespecified sensitivity analyses," which were "revealed" to the market at the July 15, 2021 FDA Advisory Committee meeting, leading to a stock price decline the next day, July 16, 2021. (Compl. ¶ 103, ECF No. 97.) But, as in *Qualcomm*, the "prespecified sensitivity analyses" that Plaintiffs claim were concealed from investors were fully disclosed three days prior to the alleged stock reaction on July 13 with no subsequent stock drop. As explained by Defendants' expert, Dr. Paul Zurek, the lack of stock price movement after the sensitivity analyses were disclosed on July 13 means that the July 16 price decline could not have been a reaction to those analyses. In other words, after April 6, the alleged fraud could not have impacted FibroGen's stock price, defeating the presumption of reliance on the alleged misstatements. Therefore, Defendants have rebutted the *Basic* presumption and a class cannot be certified beyond April 6, 2021.

### B. Plaintiffs fail to propose a damages methodology consistent with their theory of liability.

To satisfy Rule 23(b)(3)'s predominance requirement, Plaintiffs must demonstrate that their damages are measurable on a class-wide basis using a common methodology that is consistent with their theory of liability. *Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013). This

means "that a model purporting to serve as evidence of damages in [a] class action must measure only those damages attributable to that theory." *Id.* "If the model does not even attempt to do that, it cannot possibly establish that damages are susceptible of measurement across the entire class for purposes of Rule 23(b)(3)." *Id.*; *see also Curtis v. Extra Space Storage, Inc.*, 2013 WL 6073448, at *4 (N.D. Cal. Nov. 18, 2013) (explaining plaintiff must "offer a method that tethers their theory of liability to a methodology for determining the damages suffered by the class"). This requires a "***rigorous analysis***." *Comcast*, 569 U.S. at 35 (emphasis added).

Plaintiffs fail to propose a methodology capable of calculating damages on a class-wide basis consistent with their theory of liability, as required by *Comcast*. Plaintiffs propose the "out-of-pocket method" for calculating damages, as set forth in the report of Chad Coffman. But Coffman made no effort to tether that "methodology" to this case. For example, Plaintiffs' proposed methodology is impossible to apply after April 6, 2021. Plaintiffs' "event study" methodology assumes that the stock drop at the end of the class period was the same amount as the artificial inflation earlier in the class period. But, as discussed above, the July 16, 2021 stock drop was unrelated to any alleged fraud, and was instead in response to the FDA Advisory Committee's July 15 vote not to recommend Roxadustat for FDA approval. As a result, Plaintiffs cannot work backwards from the July 16 stock drop to infer inflation as of April 6. Because of this "mismatch," courts have rejected Plaintiffs' methodology in cases involving a similar theory of liability. *See Mulderrig v. Amyris, Inc.*, 340 F.R.D. 575, 590 (N.D. Cal. 2021); *In re BP P.L.C. Sec. Litig.*, 2013 WL 6388408, at *17 (S.D. Tex. Dec. 6, 2013); *see also Goldman*, 141 S.Ct. at 1961 ("that final inference—that the back-end price drop equals front-end inflation—starts to break down when there is a mismatch between the contents of the misrepresentation and the corrective disclosure . . . which means that there is less reason to infer front-end price inflation . . . from the back-end price drop.").

Because Plaintiffs fail to propose a damages methodology consistent with their theories of liability, their Motion is denied in its entirety.

## II.    PLAINTIFFS ARE NOT ADEQUATE CLASS REPRESENTATIVES UNDER RULE 23(A).

Plaintiffs have the burden to prove that they "will fairly and adequately protect the interests

of the class." Fed. R. Civ. P. 23(a)(4).  It is "Congress's emphatic command" that in securities class actions governed by the PSLRA, "competent plaintiffs, rather than lawyers, direct such cases," *Berger v. Compaq Comput. Corp.*, 257 F.3d 475, 484 (5th Cir. 2001), and an adequate class representative must be able to "check the otherwise unfettered discretion of counsel in prosecuting the suit."  *Rolex Emps. Ret. Tr. v. Mentor Graphics Corp.*, 136 F.R.D. 658, 666 (D. Or. 1991) (quoting *Weisman v. Darneille*, 78 F.R.D. 669, 671 (S.D.N.Y. 1978)); *Welling v. Alexy*, 155 F.R.D. 654, 659 (N.D. Cal. 1994).  When a class representative is "strikingly unfamiliar" with the case and completely rely on counsel to direct the litigation, it is inadequate.  *Rolex,* 136 F.R.D. at 666 (representative inadequate where it did not know "the basic elements of the case, including what the allegations of the complaint are and which allegations of the complaint pertain to which defendants"); *Welling*, 155 F.R.D at 660 (representative's "apparent unfamiliarity with the allegations in the amended complaint and the overall status of the proceedings" dictated against a finding of adequacy).

Plaintiffs are not adequate class representatives because they are not engaged in the litigation and fail to even have the most basic understanding of the facts at issue in this case, indicating this litigation is lawyer-driven.  For example, Plaintiffs' core theory is that FibroGen "manipulated" Roxadustat data that it presented to investors, yet Plaintiffs did not even know what the alleged "manipulation" was.  Plaintiffs' representatives also expressed views *inconsistent* with their own allegations, admitting for example, that some post-hoc changes "may be appropriate" and that clinical trial data could be interpreted a number of different ways without rendering any one interpretation false.  The lack of involvement and awareness, as well as inconsistent positions, cast doubt on whether Plaintiffs can adequately represent the class.

Good cause appearing therefor, **IT IS HEREBY ORDERED** Lead Plaintiffs' Motion for Class Certification is **DENIED**.

**IT IS SO ORDERED.**

Dated: _____, 2023

_____
Honorable Edward M. Chen
United States District Judge

**[PROPOSED] ORDER DENYING LEAD PLAINTIFFS' MTN FOR CLASS CERT 3:21-CV-02623-EMC**