UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PEIFA XU, et al., | Case No. 21-cv-02623-EMC |
| Plaintiffs, | |
| v. | **ORDER DENYING DEFENDANTS' MOTION FOR RECONSIDERATION** |
| FIBROGEN, INC., et al., | Docket No. 172 |
| Defendants. | |

On February 15, 2023, the parties filed a joint letter regarding a dispute over privilege. Plaintiffs sought the production of PowerPoint slides Bates numbered FGEN-CA0353824 (the "Presentation"), which Defendants claimed were protected by attorney-client privilege. Docket No. 153. In its March 29 Order, the Court found that Defendants waived any privilege that may have been afforded to the Presentation when they produced it to the U.S. Securities and Exchange Commission ("SEC"). Docket No. 161. Defendants then sought, and the Court granted, leave to file a motion for reconsideration so that the parties could further brief whether Defendants were entitled to the safe harbor provided to some inadvertent disclosures under Federal Rule of Evidence 502(b). Docket Nos. 168, 170. Having considered the parties' additional briefs and accompanying submissions, the Court hereby grants Defendants' motion for reconsideration, but **DENIES** their motion on the merits. Defendants waived through their disclosures any privilege the Presentation may have been afforded, and Rule 502(b) does not provide them safe harbor because their clawback was untimely.

///

///

United States District Court
Northern District of California

United States District Court
Northern District of California

## I.     FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs filed this lawsuit against FibroGen and other individual defendants ("Defendants") for allegedly making false and misleading statements in violation of Section 10(b) of the Securities Exchange Act of 1934 and SEC Rule 10b-5 promulgated thereunder.  Docket No. 97 ¶¶ 281, 285.  FibroGen is a biopharmaceutical company whose flagship drug, Roxadustat, is an experimental pill designed to treat anemia in patients with chronic kidney diseases.  *Id.* ¶ 4. Plaintiffs allege that Defendants manipulated safety data and presented the skewed data to the Food and Drug Administration ("FDA") in the Roxadustat new drug application ("NDA").  *Id.* ¶ 84.  When FibroGen revealed its data deficiencies, the FDA panel voted against approving Roxadustat for any patient population and FibroGen's stock price plummeted.  *Id.* ¶ 113.

Defendant Mark Eisner, FibroGen's Chief Medical Officer, created the Presentation in dispute, entitled "Pooled CV Analysis Update."  Docket No. 147-11 Ex. 10.  The Presentation contains a total of seventeen slides detailing the issues with and updates of the Roxadustat safety analyses.  Specifically, the second slide concerns the requirements of good clinical practice, the third slide concerns the issue of the misleading NDA presentation, and the sixteenth slide concerns contemplated next steps.  *Id.* at 2, 3, 16.  Of the seventeen slides, all but these three slides are identical to those used in other non-privileged documents.  *See* Docket No. 176 (Pls.' Opp'n to Defs.' Mot. for Recons. ("Opp'n")) at 6.

Dr. Eisner created the Presentation "at the request of FibroGen's General Counsel, Michael Lowenstein, to facilitate legal advice from in-house and outside counsel."  Docket No. 172 (Defs.' Mot. for Recons. ("Mot.")) at 4.  This version of the Presentation is a first draft.  *Id.* at 5.  The final version of the Presentation was presented to Defendants' Board of Directors, at which time "in-house counsel and outside counsel provided legal advice to the Board."  *Id*.

Defendants produced the Presentation to Plaintiffs on December 8, 2022 and to the SEC some months prior, well before the parties' original February 2023 letter brief addressing Defendants assertion of the attorney-client privilege was filed.  Docket No. 153 at 2; Opp'n at 1. Plaintiffs first cited to the Presentation in a January 16, 2023, discovery letter to Defendants; cited to it again in a discovery letter dated January 26, 2023; and then attached the Presentation as

2

Exhibit 10 to Plaintiffs' motion for class certification filed on the night of January 27, 2023. *Id.* at 2-3; Docket No. 147-11 Ex. 10; Mot. at 3. Defendants contend that it was not until they scrutinized Exhibit 10 that they first determined that they had produced a potentially privileged document. This scrutiny occurred on either on January 27 or January 30.[1] After launching an investigation on January 30, Defendants clawed the Presentation back from Plaintiffs and the SEC on February 3 and 6, respectively. Docket No. 153 at 3. On February 15, 2023, Plaintiffs and Defendants filed a joint letter asking the Court to determine whether Presentation is protected by attorney-client privilege and, if so, whether Defendants had waived that privilege. *Id.* at 1-3.

In that joint letter, the parties presupposed that a Stipulated Protective Order ("PO") into which the parties had entered governed the issue of waiver rather than Federal Rule of Evidence 502(b). *Id.* The Court, after analyzing the text of the PO, the text of Rule 502, and the Rule's accompanying committee note, held that Rule 502(b) exclusively governed the issue of waiver.[2] Docket No. 161 at 3-4. The Court then determined that Defendants had not shown that they were entitled to the safe harbor of Rule 502(b). *Id.* at 4-6. The Court held that Defendants waived any privilege to which the Presentation was entitled when they produced it to the SEC. *Id.* However, because "Defendants did not have a full opportunity fully to present facts material to a 502(b)

---

[1] Defendants previously stated that they learned of the production on the night of January 27, 2023, when Plaintiffs attached the Presentation as Exhibit 10 to their motion for class certification. Defendants stated so in their response to a motion to seal as well as in their initial letter brief on this privilege issue. *See* Docket No. 150 at 6 ("Defendant FibroGen discovered the document was produced inadvertently upon reviewing Plaintiffs' Motion for Class Certification filing on January 27, 2023 and notified Plaintiffs on February 3, 2023 . . . ."); Docket No. 153 ("Defendants became aware of their inadvertent production when the draft was attached to Plaintiffs' class certification motion."). However, after learning that the 502(b) factors governed the issue of waiver and not the PO, Defendants attempted to change their story. Defendants now claim that they only discovered that they inadvertently produced the Presentation the next business day—Monday, January 30. *See* Docket No. 177 (Defs' Reply in Supp. of Defs' Mot. for Recons. ("Reply")) at 3 (stating that although they initially reviewed the January 27 filing, Defendants "did not review it *closely enough to realize that one of the eleven exhibits may have been* privileged until the next business day"). While the Court is skeptical of Defendants' about-face, Defendants have offered to produce billing documents supporting their position *in camera. Id.* Because this issue is not material to the Court's decision, the Court will reference both dates.

[2] The parties had stipulated in the PO that "[i]nadvertence shall be determined based on the good faith representation of the Producing Party . . . . The privilege shall be deemed waived if the Privileged information is . . . made known in writing to the Producing Party by the Receiving Party, and the Producing Party fails to promptly, upon becoming aware that the material is privileged or otherwise protected, claw back Privileged Information." Docket No. 147 ¶ 11.1.

analysis," the Court granted Defendants' motion for leave to file a motion for reconsideration.[3] Docket No. 170.  Defendants then filed their motion for reconsideration, which the Court now considers.

## II.   <u>LEGAL STANDARD</u>

"Issues concerning application of the attorney-client privilege in the adjudication of federal law are governed by federal common law." *United States v. Ruehle*, 583 F.3d 600, 608 (9th Cir. 2009) (quoting *Clarke v. Am. Com. Nat. Bank*, 974 F.2d 127, 129 (9th Cir. 1992)).  "The attorney-client privilege protects confidential communications between attorneys and clients, which are made for the purpose of giving legal advice." *United States v. Sanmina Corp.*, 968 F.3d 1107, 1116 (9th Cir. 2020).  "Because it impedes full and free discovery of the truth, the attorney-client privilege is strictly construed." *Ruehle*, 583 F.3d at 607 (quoting *Weil v. Inv./Indicators, Research & Mgmt., Inc.*, 647 F.2d 18, 24 (9th Cir.1981)).  "The burden of proving that the attorney-client privilege applies rests not with the party contesting the privilege, but with the party asserting it." *Conceptus, Inc. v. Hologic, Inc.*, No. C 09-02280 WHA, 2010 WL 3911943, at *1 (N.D. Cal. Oct. 5, 2010); *see also In re Qualcomm Litig.*, No. 3:17-CV-108-GPC-MDD, 2018 WL 6617294, at *2-4 (S.D. Cal. Dec. 18, 2018) (holding that the party asserting attorney-client privilege also has the burden of showing that Rule 502(b) is applicable).

When a party discloses a privileged document, the disclosure normally operates as a waiver unless three conditions are satisfied under Rule 502(b): "(1) the disclosure is inadvertent; (2) the holder of the privilege or protection took reasonable steps to prevent disclosure; and (3) the holder promptly took reasonable steps to rectify the error." *Conceptus*, 2010 WL 3911943, at *1

---

[3] The Court *did not* grant Defendants' motion for leave so that they could quibble over whether Rule 502(b) applies.  Rule 502(b), and not the PO, governs the issue of waiver for the reasons outlined in the Court's initial order.  *See* Docket No. 161 at 3-4.  Even if the Court were to consider the issue, Defendants' arguments are unpersuasive.  Indeed, Defendants' most availing argument relies on an *affirmative misrepresentation* of Plaintiffs' position.  *Compare* Mot. at 7 ("Thus, the Court concluded that Rule 502(b) governs the waiver analysis here, as opposed to the PO. ***But that was not the parties' intention*** . . . .), *with* Opp'n at 13 n.5 ("Defendants' unsupported argument about 'the parties' intention' in drafting the PO is both incorrect and irrelevant. In fact, Plaintiffs repeatedly stated during PO negotiations that ***Plaintiffs'*** intention in drafting certain language in Section 11.1 was to avoid this precise situation—Defendants belatedly attempting a clawback only after realizing the import of a document that Plaintiffs had used extensively in court filings and discovery letters.").

(quoting Fed. R. Evid. 502(b)).  While "Rule 502(b) does not require a producing party to engage generally in a post-production review to determine whether any privileged documents or information have been produced by mistake . . . . 'the rule does require the producing party to follow up on any obvious indications that a protected communication or information has been produced inadvertently.'"  *AdTrader, Inc. v. Google LLC*, 405 F. Supp. 3d 862, 866 (N.D. Cal. 2019) (quoting Fed. R. Evid. 502(b) advisory committee's note, explanatory note revised 11/28/2007).  Thus, a party must begin taking steps to rectify an inadvertent production after they are put on actual or constructive notice—*i.e.*, when they should know—that they may have produced a privileged communication.  *See Luna Gaming-San Diego, LLC v. Dorsey & Whitney, LLP*, No. 06CV2804 BTM (WM), 2010 WL 275083, at *6 (S.D. Cal. Jan. 13, 2010) (finding, where plaintiff was "on notice that its document production was defective," that after being put on notice they "should have taken prompt and diligent steps to reassess its document production"); *IGT v. All. Gaming Corp.*, No. 2:04-CV-1676-RCJ RJJ, 2006 WL 8071393, at *7 (D. Nev. Sept. 28, 2006) ("[E]ven if the relevant time by which to measure is 'actual discovery,' courts should also look to when the party, acting with reasonable diligence, should have discovered the inadvertent disclosure.").  This waiver analysis is not mechanical; rather, it considers the entire circumstances surrounding the inadvertent disclosure.  *See Calendar Rsch. LLC v. StubHub, Inc.*, No. CV 17-4062 SVW (SSX), 2019 WL 1581406, at *5 (C.D. Cal. Mar. 14, 2019) (citing *United States v. de la Jara*, 973 F.2d 746, 749-750 (9th Cir. 1992); *Hanson v. Wells Fargo Home Mortg., Inc.*, No. C13-0939JLR, 2013 WL 5674997, at *5-6 (W.D. Wash. Oct. 17, 2013) (collecting cases and stating that since 502(b) codified existing common law, courts still use a "totality of the circumstances approach," including "the overriding issue of fairness" when conducting 502(b) analyses).

### III.    DISCUSSION

Plaintiffs and Defendants dispute whether the Presentation is protected by attorney client privilege.  *See* Mot. at 4-5; Opp'n at 19-24.  The parties also dispute if Defendants' production of the Presentation to the SEC waived any existing privilege or if Rule 502(b)'s safe harbor applies

and prevents waiver.[4]  *See* Mot. at 9-15; Opp'n at 13-19.  Although Defendants now make a more

convincing showing that the Presentation is privileged and that they have satisfied the first two

prongs of Rule 502(b), they still do not show that they have satisfied the third prong.  In the

Court's initial Order, the Court held that Defendants did not demonstrate that they promptly took

reasonable steps to rectify their allegedly inadvertent production.  *See* Docket No. 161 at 5.  This

same analysis is still mostly applicable.

However, on closer examination, the Court concludes that the relevant period of delay was

*eleven* days, not ten as stated in the previous order.  Plaintiffs put Defendants on notice of their

production of the Presentation through a letter sent on January 26, 2023.[5]  *See* Docket No. 176-13

Ex. 12, at 1, 5.  Plaintiffs devote a bullet point to discussing the Presentation within the main text

(*i.e.*, not in a footnote) of their 11-page letter of January 26.  Docket No. 176-13 Ex. 12, at 5.  This

letter quotes from portions of the Presentation that only appeared in privileged materials and

identifies when the Presentation was given and by whom.  *Id.*  Counsel at Cooley, the firm

representing Defendants, had attended the Board of Directors meeting at which the Presentation

was presented and, according to Defendants, saw the Presentation used to help communicate legal

advice.  Mot. at 4-5; Reply at 6 n.2.  The January 26 letter, which references when the Presentation

was presented and by whom, is thus an obvious indication that Defendants had produced

privileged material.  Undoubtedly, Defendant should have known this privileged material had been

given to the Plaintiffs and the SEC.

After it was given constructive notice on January 26 of the production of the Presentation,,

Defendants waited until Monday, February 6 to claw back the Presentation from the SEC.  *Id.*

This eleven-day delay was not prompt.  The Court so held in its initial Order, and Defendants do

---

[4] Defendants also claim that because the SEC did not challenge Defendants' clawback, Plaintiffs cannot now argue that Defendants waived privilege.  *See* Mot. at 7.  However, Defendants cite no case law supporting this contention, and so have not met their burden in showing that privilege applies for this reason.

[5] Plaintiffs had also referenced the Presentation in a letter they sent to Defendants on January 16, 2023; however, Plaintiffs only cited to the Presentation's Bates number and only quoted from portions of the Presentation that also appeared in non-privileged productions.  *See* Docket No. 176-11 Ex. 10., at 1, 3.  Therefore, the Court does not find that the January 16 letter alone was an obvious indication that Defendants had produced privileged material.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    not show otherwise.  Nor was the eight-day delay in seeking to claw the material back from

2    Plaintiffs.  Defendants argue that their clawback was prompt since "[t]he number of days

3    Defendants took to claw back the Presentation should be calculated starting from the date

4    Defendants confirmed the Presentation was in fact privileged."  Mot. at 12.  Defendants also

5    contend that, regardless of if the Court considers their investigation, their delay was prompt.  *Id.* at

6    13-15.  Both arguments are unconvincing.

7          While the Court considers Defendants' investigation in determining whether they acted

8    promptly, this does not change the Court's conclusion.[6]  First, Defendants' argument that their

9    delay in clawing back documents was prompt irrespective of their investigation is unsupported by

10    caselaw.  Defendants cite two cases finding privilege was not waived; however, these cases

11    concern waiver analyses governed by parties' stipulated protective orders and are completely

12    inapposite.  In *Stamps.com, Inc. v. Endicia, Inc.*, the Court's waiver analysis is wholly governed

13    by the parties' stipulated protective order, in which parties set and adhered to an explicit five-day

14    clawback period, *not* Rule 502(b). *See Stamps.com, Inc. v. Endicia, Inc.*, 2008 WL 11338241, at

15    *2 n.2 (C.D. Cal. Oct. 6, 2008) (finding no waiver where plaintiff notified defendants of

16    inadvertent production within five business days of becoming aware of production).  In

17    *Mformation Technologies, Inc. v. Research in Motion Ltd.*,2010 WL 3154441, at *2 (N.D. Cal.

18    Aug. 9, 2010), the waiver analysis was similarly governed by a stipulated protective order.  There,

19    the parties' stipulated protective order stated that "an inadvertent production of privileged

20    materials will not constitute a waiver 'provided that the Producing Party notifies the Receiving

21    Party in writing within ten (10) calendar days after discovery of such inadvertent production or

22    disclosure.'"  *Id.*  Defendants cite one case finding that a comparable period of delay before a

23    clawback was prompt.  *See Njenga v. San Mateo Cnty. Superintendent of Sch.*, No. C-08-04019

24    EDL, 2010 WL 1261493, at *17 n.2 (N.D. Cal. Mar. 30, 2010) (holding, within a footnote, that

25    "[d]efendants also took prompt and reasonable steps to rectify the error by sending a letter one

26    week after it discovered the inadvertent disclosure when the exhibit was filed in Plaintiff's

27

28    _____

[6] The Court did not consider Defendants' investigation in the previous Order as Defendants neglected to mention it in their letter brief.

opposition").  However, this case is not persuasive because the period of delay was less than the delay here, and the court came to its conclusion without any analysis or citations to caselaw.

Second, Defendants' investigation does not render their delay prompt.  Upon learning that the Presentation had been produced and might be privileged, Defendants could and should have *immediately* informed Plaintiffs of their potential privilege claims and then embarked upon their investigation.  This is precisely what the court held in *Mycone Dental Supply Co., Inc. v. Creative Nail Design Inc.*, No. C-12-00747-RS (DMR), 2013 WL 4758053, at *3 (N.D. Cal. Sept. 4, 2013) ("[A]t the least, Gel should have recalled the document that was used in the deposition immediately after the deposition and then conducted a more thorough and timely investigation into the rest of the production after the initial clawback request."); *see also Ecological Rts. Found. v. Fed. Emergency Mgmt. Agency*, No. 15-CV-04068-DMR, 2017 WL 24859, at *7 (N.D. Cal. Jan. 3, 2017) (noting, *obiter dicta*, that "numerous courts have held that 'once a party realizes a document has been accidentally produced, it must assert privilege with *virtual immediacy*.'") (emphasis added) (quoting *Sikorsky Aircraft Corp. v. United States*, 106 Fed. Cl. 571, 585 (2012))); *Skansgaard v. Bank of Am., N.A.*, No. C11-0988 RJB, 2013 WL 828210, at *3 (W.D. Wash. Mar. 6, 2013) ("[T]he courts have emphasized that claw back requests *should be made immediately*, with delays of even a few weeks determined to be too long . . . ." (emphasis added)); *Datel Holdings Ltd. v. Microsoft Corp.*, No. C-09-05535 EDL, 2011 WL 866993, at *5 (N.D. Cal. Mar. 11, 2011) ("As soon as Defendant obtained the entire text of the emails while the deposition was still ongoing, Defendant interrupted the deposition to put its privilege assertion on the record. Then, within a few days, Defendant reviewed its entire production to identify other documents affected by the glitch. These steps constitute a *prompt and immediate* response to the inadvertent production." (emphasis added)).[7]

_____

[7] Defendants argue that when the production of privileged documents is disclosed during a deposition—which is what occurred in *Mycone*, *Skansgaard*, and *Datel*—they must be clawed back with greater immediacy than typical disclosed documents. Mot. at 12-13 n.2.  They thus contend that cases dealing with deposition disclosures are inapposite.  *Id.*  While Defendants are correct that parties must object to the use of privileged documents during the deposition, the parties must also claw back the documents with immediacy regardless of whether the document was first produced at a deposition.  *See Datel*, 2011 WL 866993, at *5 (holding that the objection and clawback must be "prompt and immediate" when considered together); *Skansgaard*, 2013 WL

United States District Court
Northern District of California

The Court fails to see why Defendants needed an entire week to investigate whether the Presentation was privileged.[8]  *See* Opp'n at 16-18 (suggesting that Defendants should have had enough information to claw back the Presentation by Monday, January 3).  As Defendants argued in asserting the privilege, the facts should have been readily available to them, and the importance of this document should have been obvious and commanded priority.  Defendants' general counsel, Mr. Lowenstein, requested that Dr. Eisner create the Presentation "to facilitate legal advice from in-house and outside counsel to the Company."  Mot. at 4.  The final version of the Presentation was presented to Defendants' Board of Directors, at which time "in-house counsel *and outside counsel* provided legal advice to the Board" (presumably with the aid of the final version of the Presentation).  *Id.* at 5 (emphasis added).  Plaintiffs clearly identified when the presentation was given by whom in both their January 26 letter and January 27 filing.  *See* Docket Nos. 176-13 Ex. 12, at 3; 147-1 at 2.  The Presentation was clearly an important document—it was presented at a meeting of the Board of Directors—and more than twelve versions of it had already been marked as privileged.  *See* Opp'n at 17.  There is no reason why Defendants' in-house and outside counsel needed this much time to exchange emails and make phone calls with each other and with Dr. Eisner, an officer of FibroGen, to determine the privileged nature of the document.  Given the Presentation's importance and straightforward provenance, Defendants' week-long investigation was too long.  *See Mycone*, 2013 WL 4758053, at *3 (finding a 45-day investigation unreasonable and not prompt where the "research covered three or four essentially identical sentences in nine essentially identical form transmittal letters, the author of which was obvious on the face of the letters").  This is not a case where origin of the document in question was uncertain and warranted a lengthy investigation.  *Cf. Valentin v. Bank of New York Mellon Corp*, No. 09 CIV. 9448 GBD JCF, 2011 WL 1466122, at *1 (S.D.N.Y. Apr. 14, 2011), *objections overruled*,

---

828210, at *3 (holding that privilege was waived because the producing party did not timely object, *and also* that the clawback occurred too late because it was not made "immediately"); *Mycone*, 2013 WL 4758053, at *2-3 (noting, where party had properly objected to a privileged document during the deposition, that the party should have initiated a clawback "immediately" afterwards).

[8] Because Defendants are now claiming that they learned of the production on Monday, January 30, they state that their investigation took five days, until Friday, February 3.

1   No. 09 CV 09448 GBD, 2011 WL 2437644 (S.D.N.Y. May 31, 2011).

2      In sum, Defendants first produced the Presentation to Plaintiffs in December 2022 and to

3 the SEC some months prior; were put on notice of its production on January 26, 2023; began their

4 investigation on Monday, January 30; failed to put Plaintiffs or the SEC on notice of its

5 investigation; and did not claw back the Presentation from Defendants until Friday, February 3

6 and from the SEC until Monday, February 6.  Defendants did not promptly take reasonable steps

7 to rectify the Presentation's production to Plaintiffs and the SEC.  *See IGT,* 2006 WL 8071393, at

8 *6-9 (finding that a delay of two weeks between actual discovery and clawback was too long

9 where producing party should have been aware of the production much earlier); *S.E.C. v. Cassano*,

10 189 F.R.D. 83, 84-6 (S.D.N.Y. 1999) (holding—in a situation where the producing party should

11 have investigated the privileged documents provenance immediately after production—that a

12 twelve-day delay between an inadvertent document production and investigation (after which the

13 document was immediately clawed back) was not prompt).  Accordingly, Defendants do not

14 satisfy the third prong of 502(b), and their disclosure does not qualify for the provision's safe

15 harbor.  Defendants waived their privilege.

16             **IV.**    **CONCLUSION**

17      Upon reconsideration of Defendants' motion, the motion is **DENIED**.  Defendants shall

18 produce to Plaintiffs the Presentation within five (5) days of the date of this order.

19      This order disposes of Docket No. 172.

20

21      **IT IS SO ORDERED.**

22

23 Dated: May 15, 2023

24

25 _____

26 EDWARD M. CHEN
United States District Judge

27

28