**SAXENA WHITE P.A.**
David R. Kaplan (SBN 230144)
dkaplan@saxenawhite.com
505 Lomas Santa Fe Drive, Suite 180
Solana Beach, CA 92075
Tel.: (858) 997-0860
Fax: (858) 369-0096

*Counsel for Lead Plaintiffs Employees' Retirement
System of the City of Baltimore, City of
Philadelphia Board of Pensions and Retirement,
and Plymouth County Retirement Association, and
Lead Counsel for the Class*

*[Additional Counsel listed on Signature Page]*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE FIBROGEN, INC., SECURITIES LITIGATION | Case No. 3:21-cv-02623-EMC <br><br> **<u>CLASS ACTION</u>** <br><br> LEAD PLAINTIFFS' MOTION FOR SPOLIATION SANCTIONS <br><br> Hearing Date: July 27, 2023 <br> Time: 1:30 p.m. <br> Courtroom: 5 – 17th Floor <br> Judge: Hon. Edward M. Chen |

PUBLIC REDACTED VERSION

**TABLE OF CONTENTS**

I.    PRELIMINARY STATEMENT ..................................................................................... 1

II.   STATEMENT OF FACTS ............................................................................................ 2

    A.    Defendant Yu Played A Critical Role In Defendants' Fraud ....................................... 2

    B.    ███████████████████████████████████████████
        █████████████████████████████ ........... 3

    C.    ██████████████████████████████████████,
        Defendant Yu Clandestinely Destroys The Hard Drive Of Her Sole Work
        Computer Despite ██████████████████████ ............. 5

    D.    █████████████████████████████████
        _____████████████████
        ████████████████ ............. 10

    E.    ████████████████████████████████
        ███████████ ........................... 11

    F.    Defendants Conceal This Spoliation of Evidence From Plaintiffs, And Then
        Obfuscate The Full Truth When Plaintiffs Discover The Issues Themselves ............ 12

III.  ARGUMENT ................................................................................................................ 17

    A.    Yu And FibroGen Had A Clear Duty To Preserve The ESI On The Laptop ............. 17

    B.    Yu and FibroGen Failed To Take Reasonable Steps To Preserve ESI ...................... 19

    C.    The Lost ESI On The Laptop's Hard Drive Cannot Be Restored Or Replaced .......... 20

    D.    Terminating Sanctions Are Warranted Under Rule 37(e)(2) Because
        Defendants Acted With Intent To Deprive ................................................................. 20

    E.    The Appropriate Sanction Is Entry Of A Default Judgment ...................................... 23

    F.    In The Alternative, The Court Should Impose A Mandatory Adverse Inference
        Against FibroGen And Yu .......................................................................................... 25

IV.   CONCLUSION ............................................................................................................ 25

**LEAD PLAINTIFFS' MOTION FOR
SPOLIATION SANCTIONS**

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Anheuser-Busch, Inc. v. Natural Beverage Distributors*,
    69 F.3d 337 (9th Cir. 1995) ...................................................................................................24

*Apple Inc. v. Samsung Elecs Co., Ltd.*,
    888 F. Supp. 2d 976 (N.D. Cal. 2012).....................................................................................17

*Burris v. JPMorgan Chase & Co.*,
    566 F. Supp. 3d 995 (D. Ariz 2021) ............................................................17, 20, 22, 24, 25

*Colonies Partners, L.P. v. County of San Bernardino*,
    2020 WL 1496444 (C.D. Cal. Feb. 27, 2020) ............................................................17, 19, 22

*Deerpoint Grp., Inc. v. Agrigenix, LLC*,
    2022 WL 16551632 (E.D. Cal. Oct. 31, 2022).....................................................................19, 25

*Doubleline Capital LP v. Odebrecht Finance, Ltd.*,
    2021 WL 1191527 (S.D.N.Y. Mar. 30, 2021)...........................................................................18

*E.E.O.C. v. Fry's Electronics, Inc.*,
    874 F. Supp. 2d 1042 (W.D. Wash. 2012) ...............................................................................20

*Facebook, Inc. v. OnlineNIC Inc.*,
    2022 WL 2289067 (N.D. Cal. Mar. 28, 2022) ........................................................17, 23, 24, 25

*Fed. Trade Comm'n v. Noland*,
    2021 WL 3857413 (D. Ariz. Aug. 30, 2021) ...........................................................................21

*First Financial Security, Inc. v. Freedom Equity Group, LLC*,
    2016 WL 5870218 (N.D. Cal. Oct. 7, 2016) ............................................................................20

*Glaukos Corp. v. Ivantis, Inc.*,
    2020 WL 5914552 (C.D. Cal. Jul. 30, 2020)............................................................................18

*GN Netcom, Inc. v. Plantronics, Inc.*,
    2016 WL 3792833 (D. Del. July 12, 2016).....................................................................19, 21, 22

*hiQ Labs, Inc. v. LinkedIn Corp.*,
    2022 WL 18399982 (N.D. Cal. Nov. 4, 2022) .........................................................................20

*Hunters Capital, LLC. v. City of Seattle*,
    2023 WL 184208 (W.D. Wash. Jan. 13, 2023) ........................................................................22

*In re FibroGen, Inc. Sec. Litig.*,
    2022 WL 2793032 (N.D. Cal. July 15, 2022) ...........................................................................iv

ii

**LEAD PLAINTIFFS' MOTION FOR
SPOLIATION SANCTIONS**

*In re Google Play Store Antitrust Litig.,*
2023 WL 2673109 (N.D. Cal. Mar. 28, 2023) ...................................................................... 17, 22

*In re Napster, Inc. Copyright Litig.,*
462 F. Supp. 2d. 1060 (N.D. Cal. 2006) ................................................................................ 19

*Leon v. IDX Sys. Corp.,*
464 F.3d 951 (9th Cir. 2006) .................................................................................. 17, 21, 24

*Montoya v. Orange Cnty. Sheriff's Dep't,*
2013 WL 6705992 (C.D. Cal. Dec. 18, 2013) ...................................................................... 20

*Nursing Home Pension Fund v. Oracle Corp.,*
254 F.R.D. 559 (N.D. Cal. 2008) ................................................................................... 21, 25

*Sanchez v. Albertson's, LLC,*
2022 WL 656369 (D. Nev. Mar. 3, 2022) ............................................................................ 23

*Valley Engineers Inc. v. Electric Engineering Co.,*
158 F.3d 1051 (9th Cir. 1998) .............................................................................................. 24

*Waymo LLC v. Uber Technologies, Inc.,*
2018 WL 646701 (N.D. Cal. Jan. 30, 2018) ................................................................... 18, 20

*WeRide Corp. v. Kun Huang,*
2020 WL 1967209 (N.D. Cal. Apr. 24, 2020) ............................................................ 19, 21, 25

*Zucchella v. Olympusat, Inc.,*
2021 WL 8317028 (C.D. Cal. Dec. 20, 2021) ...................................................................... 17

**LEAD PLAINTIFFS' MOTION FOR
SPOLIATION SANCTIONS**

## NOTICE OF MOTION AND MOTION FOR SPOLIATION SANCTIONS

### TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

**PLEASE TAKE NOTICE**, that on July 27, 2023, at 1:30 p.m., or as soon thereafter as this motion may be heard, before the Honorable Edward M. Chen, at the United States District Court for the Northern District of California, Courtroom 5, 17th Floor, 450 Golden Gate Avenue, San Francisco, California, 94102, Court-appointed Lead Plaintiffs Employees' Retirement System of the City of Baltimore, City of Philadelphia Board of Pensions and Retirement, and Plymouth County Retirement Association (collectively, "Lead Plaintiffs" or "Plaintiffs"), will and hereby do respectfully move this Court for the imposition of sanctions against Defendants K. Peony Yu ("Yu") and FibroGen, Inc. ("FibroGen" or the "Company") for the spoliation of electronically stored information ("ESI") and hard copy documents.  Specifically, Lead Plaintiffs' motion requests that the Court enter the following sanctions, pursuant to Federal Rules of Civil Procedure 37(b), 37(e)(1), 37(e)(2) and the Court's inherent powers:

- A default judgment against Defendants FibroGen and Yu; or
- In the alternative, a mandatory adverse inference against Defendants FibroGen and Yu instructing the jury to find that the elements of both falsity and scienter have been established with regard to the alleged false statements sustained by this Court in the Court's order on Defendants' motion to dismiss (*see In re FibroGen, Inc. Sec. Litig.*, 2022 WL 2793032 (N.D. Cal. July 15, 2022)).

This motion is based upon the Memorandum of Points and Authorities below, the Declaration of David R. Kaplan in support thereof (the "Kaplan Declaration" or "Kaplan Decl.") and exhibits attached thereto, the pleadings and records on file in this action, and such further arguments and matters as the Court may consider.  A proposed form of Order is also submitted herewith.

**LEAD PLAINTIFFS' MOTION FOR SPOLIATION SANCTIONS**

**STATEMENT OF ISSUES TO BE DECIDED**

(1)    Whether the willful destruction of highly relevant ESI and hard copy documents from Defendant Yu's files by Defendants FibroGen and Yu—coupled with Defendants' failure to disclose this mass spoliation to Plaintiffs as required by this Court's Rules and other Court orders issued in this case, and to frustrate Plaintiffs' efforts to uncover this spoliation by providing changing and conflicting stories about whether and how the spoliation occurred—warrants terminating sanctions against Defendants FibroGen and Yu; and

(2)    In the alternative, to the extent that the Court does not issue a default judgment, whether issue or evidentiary sanctions are sufficient to remedy Defendants' mass evidence destruction and the prejudice to Plaintiffs' case that destruction has caused.

**LEAD PLAINTIFFS' MOTION FOR SPOLIATION SANCTIONS**

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   PRELIMINARY STATEMENT

A default judgment is an extraordinary spoliation remedy, but it is warranted here by Defendants' equally extraordinary intentional destruction of critical evidence.  Specifically, on March 29, 2021—a mere *eight days* before Defendants would admit that they had manipulated the Roxadustat safety analyses that they had touted to investors for over two years—Defendant Yu, FibroGen's former Chief Medical Officer ("CMO") and the officer principally responsible for those data manipulations, intentionally and completely destroyed the hard drive on her Company-issued laptop.  Yu did so when Defendants indisputably knew that litigation was imminent—

Two hours later, Yu took the laptop to a vendor and instructed the vendor to *physically destroy* the laptop's hard drive by breaking it in half, throwing away the pieces and replacing it with a new one.

1

Defendants' spoliation does not end there. ███████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████

Defendants' misconduct is exacerbated by the fact that this spoliation was never affirmatively disclosed to Plaintiffs. To the contrary, Defendants forced Plaintiffs to engage in *months* of protracted discovery, hindered at every turn by Defendants' evasion and obfuscation—including bald written misrepresentations from counsel that no spoliation had occurred because Yu had purportedly "erased" the ESI on her laptop weeks before March 29, such that Plaintiffs' contention that she had done so mere hours after being ordered not to was "*false.*" Defendants' abject failure to properly inform Plaintiffs of their destruction of critical, highly relevant evidence—and their repeated efforts to instead "hide the ball" for months—clearly amounts to bad faith.

## II.    STATEMENT OF FACTS

### A.    Defendant Yu Played A Critical Role In Defendants' Fraud

Defendant Yu was FibroGen's CMO from April 2016 through December 2020. Yu oversaw FibroGen's Roxadustat Phase 3 trial data analyses and the Company's December 2019 NDA submission to the FDA, ███████████████████████████ ██

████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████

**LEAD PLAINTIFFS' MOTION FOR SPOLIATION SANCTIONS**

As CMO, Yu made regular public statements to investors throughout the Class Period falsely touting the manipulated Roxadustat data.  For example, Yu asserted that Roxadustat had "superior" safety to Epogen in incident dialysis patients by a "significant" margin; was as safe as placebo in non-dialysis patients; had "achieved non-inferiority" on the critical MACE safety endpoint; that "our Phase 3 results confirm [the] cardiovascular safety of Roxadustat in the CKD population in both dialysis and non-dialysis"; and that she had "no concern" about the Company's (manipulated) safety analyses precisely because they "were based on the agreed upon analysis plan that we have made with the FDA."  ¶¶63-64, 155, 167-68, 172.[1]  The Court upheld all of these statements as false and misleading at the motion to dismiss stage.  *See* ECF Nos. 126, 126-1.

**B.** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, **And FibroGen Was Forced To Announce The AdCom—Making Litigation Likely**



---

[1] "¶_" references are to the Corrected Consolidated Class Action Complaint, ECF No. 97 ("CAC" or "Complaint") and "Ex. " refers to exhibits to the Declaration of David R. Kaplan filed concurrently herewith. All citations and internal quotations are omitted and all emphasis is added.

**LEAD PLAINTIFFS' MOTION FOR SPOLIATION SANCTIONS**

████████████████████████████████████████, FibroGen shocked the market by announcing that the FDA would convene an AdCom—a highly unexpected and very negative development so late in the regulatory process—which resulted in a 32% decline in FibroGen's stock price, from $50.53 on March 1, 2021 to $34.35 per share on March 3, 2021.  ¶¶74, 75.

███████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████  ████████████████████████████████████████

████████████████████████████████████████████. Further, numerous analysts immediately expressed shock at the "surprising" and "unprecedented" announcement of an AdCom so late in the regulatory process, which analysts opined raised "*red flags*" about the integrity of the Roxadustat safety data and was "*hard [to] reconcil[e]*" with Defendants' past public statements *"in which it sounded like [FDA] approval was all but a foregone conclusion."* Exs. 6; 7; 8. ████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

█████████████████████████████████████████

█████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

---

[2] ███████████████████████████████████████████████████████
████████████████████████████████████

**LEAD PLAINTIFFS' MOTION FOR
SPOLIATION SANCTIONS**



**C.** ████████████████████████████████████████████████
**Defendant Yu Clandestinely Destroys The Hard Drive Of Her Sole Work Computer** ████████████████████████████████████████████████

on November 27, 2020, FibroGen abruptly announced Yu's "retirement."  Ex. 2; ¶72.

**LEAD PLAINTIFFS' MOTION FOR SPOLIATION SANCTIONS**



**LEAD PLAINTIFFS' MOTION FOR
SPOLIATION SANCTIONS**

7                    **LEAD PLAINTIFFS' MOTION FOR
                      SPOLIATION SANCTIONS**



Later that afternoon, Yu took the laptop to a local vendor and explicitly "***instructed the vendor to remove the content from the hard drive" and then irrevocably "destroy the hard drive***." Ex. 20 at 80:3-10; 106:9-20. Specifically, on March 29, 2021, between 4:30-5:00 PM PT, without informing or seeking permission from *anyone* at FibroGen, Yu took the laptop to local vendor NerdsToGo, located in Bellevue, WA—a short drive from her home—and instructed them to replace the laptop's hard drive with a new one and destroy the old one. Ex. 39. While Yu later testified that she could not recall which date she took the laptop to NerdstoGo, ███████████

███████████████████████████████████████████████████████

███████████—███████████████████████████████████████ *Id.*

Yu testified that a NerdsToGo employee destroyed the hard drive by physically breaking it in two in front of her with his hands and then "thr[owing] [the pieces] away" in the vendor's

---

[3] ███████████████████████████████████████████████
███████████████████████████████████████████████

**LEAD PLAINTIFFS' MOTION FOR SPOLIATION SANCTIONS**

trash. Ex. 20 at 110:3-111:15. Yu admitted that no data from the hard drive had been preserved, as she neither backed up nor instructed the vendor to back up the hard drive before it was destroyed—indeed, her express "objective" was to destroy all data on the hard drive without a trace. *Id. at* 102:2-4; 113:17-114:1. Significantly, Yu also sought to cover her tracks, as she expressly instructed NerdsToGo to put in a new, working hard drive that was the "exact same" as the old one before shipping the laptop back to FibroGen. *Id.* at 122:12-124:6; Ex. 40. Indeed, Yu made clear during her deposition that she knew she had no authorization from the Company to delete any files from the laptop or to destroy the hard drive, and that she did not inform anyone at FibroGen that she planned to do so or had done so. Ex. 20 at 80:11-17; 107:9-12; 124:7-11.[4]

To date, Yu has been unable to provide any credible explanation for why she destroyed the hard drive. Initially, Yu's counsel told Plaintiffs that Yu had "erase[d]" (not destroyed) the hard drive over concerns that it could go "astray" in transit ██████████████████████████ ██████████████████████████████████████████████████ ██████████████████████████████████████████████████ ██████████████████████████████████████████████████ ██████████████████████████████████████████████████ ██████████████████████████████████████████████████ ████████ █ █████ .

NerdsToGo installed a new operating system on the new hard drive. Ex. 39. On March 30, 2021, Yu shipped the laptop back to FibroGen, ████████████████████████ ████████████████████████████████████████ .

---

[4] Yu testified that she did not back up anything on her laptop's hard drive because the head of FibroGen's IT department purportedly told her years earlier that everything on her hard drive was somehow "automatically" backed up whenever it was connected to the internet. Ex. 20 at 86:14-92:24. ██████████████████████████████████████████████████ ██████████████████████████████████████████████████

[5] Incredibly, Yu also testified that she believed that FibroGen only urgently wanted the laptop back due to a "computer chip shortage." Ex. 20 at 107:16-108:5.

**LEAD PLAINTIFFS' MOTION FOR
SPOLIATION SANCTIONS**



**D.**

On April 6, 2021, FibroGen issued a press release admitting to the *post-hoc* manipulations, causing FibroGen's share price to plummet 45% over the next two days and wiping out $1.45 billion in market capitalization. ¶¶77, 88.

The initial complaint in this Action was filed six days later on April 12, 2021. ECF No. 1.

**LEAD PLAINTIFFS' MOTION FOR
SPOLIATION SANCTIONS**

**E.** ████████████████████████████████████████████████

FibroGen also took no steps whatsoever to ensure the preservation of Yu's hard copy documents. ████████████████████████████

**LEAD PLAINTIFFS' MOTION FOR SPOLIATION SANCTIONS**



### F. Defendants Conceal This Spoliation Of Evidence From Plaintiffs, And Then Obfuscate The Full Truth When Plaintiffs Discover The Issues Themselves

Although Defendants were fully aware of these serious spoliation issues from the outset of litigation, Defendants concealed the relevant facts from Plaintiffs for months—well into discovery—despite Plaintiffs' repeated direct questions about ESI preservation issues. Moreover, once Plaintiffs discovered these issues on their own, Defendants engaged in a campaign of evasion, delay, and gaslighting, even going so far as to accuse Plaintiffs of "spin[ning] quite the tale" and of "violat[ing] Rule 11." Consequently, Plaintiffs were forced to spend several additional months and resources (including extensive discovery correspondence, new discovery requests, numerous meet-and-confers, joint letters to the Court, and two depositions, among other things) in an effort to untangle Defendants' ever-shifting and conflicting stories.

On September 1, 2022, the parties conducted a Rule 26(f) conference. Under this Court's Guidelines for the Discovery of ESI, parties are required to discuss "any difficulties relating to preservation," and under the parties' own stipulated ESI order (ECF No. 145), they were required

**LEAD PLAINTIFFS' MOTION FOR SPOLIATION SANCTIONS**

to "*disclose promptly upon becoming aware of them any categories or sources of relevant ESI in existence but not preserved after the time a duty to do so arose*." *Id.* at 3. However, even though Defendants represented during the 26(f) conference that they were "looking into whether *any individual defendant* [] *utilized laptops*" and "*whether such devices and their contents were preserved*," Defendants never once disclosed the spoliation discussed herein. Ex. 54 at 2.

On September 14, 2022, Plaintiffs served document requests ("RFPs"), including a request for documents "*concerning any action taken by Neff, any Individual Defendant, FibroGen or its employees or agents to destroy or retain information responsive to these Requests*." Ex. 55 at 17-18. ███████████████████████████████████████████████████

███████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████.

On November 21, 2022, Plaintiffs sent Yu a letter specifically asking counsel to confirm that Yu did not have "any other sources of ESI (*e.g.*, a tablet, laptop, or other mobile device) . . . that may contain responsive information." Ex. 58 at 1. On December 6, 2022—over three months after the Rule 26(f) conference—Yu's counsel disclosed for the first time that Yu "*had a vendor erase [her] laptop's hard drive*" before shipping it back to FibroGen in March 2021, but represented that this was done solely "to avoid any possible disclosure of confidential information in case the laptop went astray while in transit." Ex. 41 at 2. Significantly, Yu's counsel also falsely asserted that "*all potentially relevant information on that machine was separately maintained on FibroGen's email servers and network drives and has been preserved*," and that Yu had "searched for and returned all of her hard copy business documents to FibroGen prior to or during March 2021." *Id.* Counsel made no mention of the facts that (i) Yu had *physically destroyed* the laptop's hard drive ████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

Between November 19 and December 19, 2022, FibroGen re-produced to Plaintiffs the document productions it had made in response to an SEC subpoena. ███████████████

███████████████████████████████████████████████████████████

**LEAD PLAINTIFFS' MOTION FOR SPOLIATION SANCTIONS**

████████████████████████████████████████████████████████████
██████████████████████████████.

Accordingly, on December 20, 2022, Plaintiffs alerted Defendants to this potentially serious spoliation issue. Ex. 60. During the parties' meet and confer the next day, counsel for FibroGen claimed that they had been caught off guard and would need time to investigate the issue further. ████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████

On December 22, 2022 and January 5, 2023, Plaintiffs sent letters and an email to Defendants requesting discovery on Yu's erasure of the laptop and seeking basic information about when, exactly, the laptop had been erased. Exs. 61; 62; 63. Over the ensuing months, rather than provide straightforward answers, Defendants repeatedly asserted that no spoliation had occurred and railed against Plaintiffs for even raising the issue—for example, Defendants asserted that Plaintiffs had *"manufacture[d] a 'spoliation' issue"* (Ex. 64); flatly denied Plaintiffs' contention that Yu had erased the laptop after being told not to, claiming this "premise" was *"false"* (Ex. 65 at 3); asserted that Plaintiffs had *"sp[u]n quite the tale of spoliation based on egregious misrepresentations"* (Ex. 66 at 1) that would have constituted a *"plain[] violation of Rule 11"* if included in a court filing (Ex. 67); accused Plaintiffs of *"l[ying] about the evidence in this case"* and *"hyperventilating about spoliation"* (Ex. 68); and repeatedly averred that Plaintiffs had improperly *"turned discovery into a side-show regarding Dr. Yu's laptop."* (Ex. 69).

Frustrating Plaintiffs' efforts even further, counsel for FibroGen and Yu provided *inaccurate and conflicting stories* about when and how the laptop was erased—and then denied that they had made any representations about when the laptop was erased at all. ██████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

14   **LEAD PLAINTIFFS' MOTION FOR SPOLIATION SANCTIONS**

████████████████████████████ ▌ ██████████████████

Four days later, on January 16, 2023, Yu's counsel sent Plaintiffs a letter contradicting FibroGen's letter and asserting that Plaintiffs were "misunderstanding" the facts. Under the heading **"Plaintiffs' Fundamental Misunderstandings,"** Yu's counsel wrote: "Plaintiffs' entire premise for this 'spoliation' line of inquiry is that Dr. Yu had her laptop erased ████████████ ███████████████████████ **This premise is false**." Ex. 65 at 3. Counsel then falsely represented that Yu brought the laptop to a vendor (whose name Yu purportedly could not recall) ██████████████████████████████████████

On January 26, 2023, Plaintiffs sent Defendants FibroGen and Yu an 11-page letter exhaustively cataloging the documentary evidence that strongly indicated Yu's spoliation of highly relevant evidence and highlighting the clear inconsistencies in counsel's conflicting accounts. Ex. 71. On February 2, 2023, however, counsel for FibroGen responded by baldly asserting that there was "no factual inconsistency as to when Dr. Yu 'erased' her laptop" because, counsel claimed, **"[n]either Dr. Yu nor FibroGen Defendants made any representation as to when Dr. Yu 'erased' or 'reformatted' her laptop,"** directly contradicting their prior letters. Ex. 66 at 1.

In light of these conflicting responses, Plaintiffs deposed Yu and FibroGen. Significantly, leading up to Yu's deposition (on March 10, 2023), Yu's counsel suddenly went "dark," failing to respond to Plaintiffs' repeated letters and emails requesting additional information in advance of the deposition in light of numerous additional issues with Yu's ESI that had come to light through document discovery. *See* Exs. 72; 73; 74. Yu's counsel **finally responded only on the evening of March 9, 2023, the night before Yu's deposition**, while Plaintiffs' counsel was in transit to San Francisco, by sending an email **completely changing Yu's story as to what had occurred with the laptop**—along with a production of 28 additional documents pertaining to this new version of events. Ex. 75. Counsel now represented that Yu had not simply "erased" the hard drive, but had instructed a vendor to render it "physically [] inoperable." *Id.* Counsel further represented that Yu had suddenly remembered the name of the vendor—NerdsToGo. *Id.* Counsel's late

[6] As such, Plaintiffs were forced to consult with their own forensic expert just to understand that Defendants' oblique representations meant that Yu had likely erased her laptop on March 29.

**LEAD PLAINTIFFS' MOTION FOR SPOLIATION SANCTIONS**

disclosures left Plaintiffs unable to investigate these revelations prior to Yu's deposition.

On March 10, 2023, Plaintiffs deposed Yu.  As set forth above, Yu confirmed that the laptop had not merely been "erased," but physically destroyed per her instruction.  Ex. 20 at 101:14-22; 106:16-20.  Significantly, she also confirmed that everything her counsel had represented in their January 16, 2023 letter purportedly correcting Plaintiffs' "Fundamental Misunderstandings" was patently false.  *See, e.g.*, Ex. 20 at 104:23-105:2 (**"Q.  Is it a truthful statement [in the January 16, 2023 letter] that you went to a vendor with the laptop . . . roughly two weeks before March 29th?" A.  "No."**).  Yu also changed her story as to why she had destroyed the hard drive—no longer claiming security reasons, ██████████████████████ ████████████████████████████████████████████████████████████████ ███████████████████████████████████████.

Yu also claimed, for the first time, that she had believed that everything on the laptop's hard drive was "automatically" backed up by FibroGen's systems every time her laptop was connected to the internet—something FibroGen IT employees had purportedly told her years earlier when she was first issued the laptop.  Ex. 20 at 86:14-91:3.[7] ████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ███████████████████████████████████████████.

Significantly, despite their discovery obligations, Defendants also never disclosed that they had shredded all of Yu's hard copy documents around this same time, in mid-March 2021, again forcing Plaintiffs to discover this information on their own.  Indeed, in a March 12, 2023 letter (two days after Yu's deposition), FibroGen's counsel represented that any relevant hard copy

---

[7] Even though counsel for FibroGen was present at Yu's deposition—and had in fact helped Yu prepare for it (Ex. 20 at 16:19-17:9)—counsel did not make any attempt to correct this false assertion.  To the contrary, in response to Plaintiffs' email about FibroGen's 30(b)(6) deposition, counsel for FibroGen accused Plaintiffs of "ly[ing] about the evidence" and asserted that Yu's claim about her hard drive being automatically backed up ***only seemed 'out of the blue' to you because you and your team have been hyperventilating about spoliation for months***." Ex. 68.

**LEAD PLAINTIFFS' MOTION FOR SPOLIATION SANCTIONS**

documents had been "captured by ESI that has already been preserved and/or collected"—▮▮▮

▮▮▮

▮▮▮

## III.    ARGUMENT

Litigants owe an unqualified duty to preserve evidence that they know or reasonably should know will be potentially relevant to pending or reasonably foreseeable litigation.  *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 959 (9th Cir. 2006); *In re Google Play Store Antitrust Litig.,* 2023 WL 2673109, at *8 (N.D. Cal. Mar. 28, 2023).  Rule 37(e) provides that spoliation of ESI has occurred where: "(1) the ESI should have been preserved in the anticipation or conduct of litigation; (2) the ESI is lost because a party failed to take reasonable steps to preserve it; and (3) the ESI cannot be restored or replaced through additional discovery."  *Facebook, Inc. v. OnlineNIC Inc.*, 2022 WL 2289067, at *6 (N.D. Cal. Mar. 28, 2022).[8]  All of these factors are easily satisfied here.

### A.    Yu And FibroGen Had A Clear Duty To Preserve The ESI On The Laptop

"The duty to preserve material evidence arises not only during litigation but also extends to that period before the litigation when a party reasonably should know that the evidence may be relevant to anticipated litigation." *Colonies Partners, L.P. v. County of San Bernardino*, 2020 WL 1496444, at *6 (C.D. Cal. Feb. 27, 2020).  Litigation need not be "imminent, or probable without significant contingencies" in order to be reasonably foreseeable for purposes of creating a duty to preserve evidence.  *Burris v. JPMorgan Chase & Co.*, 566 F. Supp. 3d 995, 1013 (D. Ariz 2021).  Rather, "[a]s soon as a potential claim is identified, a litigant is under a duty to preserve evidence which it knows or reasonably should know is relevant to the action." *Zucchella v. Olympusat, Inc.*, 2021 WL 8317028, at * 3 (C.D. Cal. Dec. 20, 2021); *Apple*, 888 F. Supp. 2d at 991 (same).  "This is an objective standard, asking not whether the party in fact reasonably foresaw litigation, but whether a reasonable party in the same factual circumstances would have reasonably foreseen litigation." *Burris*, 566 F. Supp. 3d at 1013.

There is no question that by the time Yu destroyed the laptop on March 29, 2021, securities

---

[8] Courts in this Circuit apply a "preponderance of the evidence" standard to spoliation motions. *Apple Inc. v. Samsung Elecs Co., Ltd.*, 888 F. Supp. 2d 976, 989 (N.D. Cal. 2012).

**LEAD PLAINTIFFS' MOTION FOR SPOLIATION SANCTIONS**

fraud litigation was not only reasonably foreseeable, but imminent, and in fact actually anticipated by both Yu and FibroGen. *First*, by that date, FibroGen's announcement of the AdCom had caused the Company's stock price to drop precipitously by 32%,

Ex. 10. *See Glaukos Corp. v. Ivantis, Inc.*, 2020 WL 5914552, at *4 (C.D. Cal. Jul. 30, 2020) (retention of outside counsel showed defendant "apprehended it would be sued"); *Waymo LLC v. Uber Technologies, Inc.*, 2018 WL 646701, at *15 (N.D. Cal. Jan. 30, 2018) (counsel retention supported that "Uber *actually* foresaw this litigation"); *Doubleline Capital LP v. Odebrecht Finance, Ltd.*, 2021 WL 1191527, at *6 (S.D.N.Y. Mar. 30, 2021) ("[c]ertain types of incidents tend to trigger litigation"). None of this was lost on Yu, who had served as FibroGen's CMO for over four years and spoke regularly to investors about Roxadustat and its safety data. Indeed, Yu testified that she was (i) fully aware that corrective disclosures such as this one could lead to securities litigation (Ex. 20 at 144-22:145-9); (ii) aware of the large stock drop after the March 1, 2021 announcement of an AdCom (*id.* at 145:14-17); and (iii)

*Second*,

*Third*, Yu destroyed the laptop on March 29, 2021—

18                                    **LEAD PLAINTIFFS' MOTION FOR
                                          SPOLIATION SANCTIONS**

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████ .

### B.    Yu and FibroGen Failed To Take Reasonable Steps To Preserve ESI

Neither Yu nor FibroGen took reasonable steps to preserve the ESI on the laptop.  *First,* Yu's intentional destruction of the laptop is clearly "the opposite of taking reasonable steps to preserve ESI."  *GN Netcom, Inc. v. Plantronics, Inc*., 2016 WL 3792833, at *6 (D. Del. July 12, 2016); *WeRide Corp. v. Kun Huang*, 2020 WL 1967209, at *15 (N.D. Cal. Apr. 24, 2020) (finding no reasonable steps where party "wip[ed] the [Company]-issued MacBook" and deleted files).

*Second*, with respect to FibroGen, it is well-settled that "[t]he obligation to retain discoverable materials **is an affirmative one**" and "requires that [the Company] or corporate officers having notice of discovery obligations communicate those obligations to employees in possession of discoverable materials."  *In re Napster, Inc. Copyright Litig.*, 462 F. Supp. 2d. 1060, 1070 (N.D. Cal. 2006).  That did not occur here.  To the contrary, the Company failed to timely instruct Yu of her document preservation obligations or ensure that she *immediately* return the laptop.  Significantly, at no time did the Company ever expressly tell Yu that she was required to preserve documents and ESI for purposes of litigation—███████████████████ ████████████████████████████████████████████████ ███████████████████████████████.  Ex. 77.  As such, FibroGen clearly failed to take reasonable steps to preserve Yu's ESI.  *Plantronics*, 2016 WL 3792833, at *6-7 (company's purported "great lengths" to ensure employee understanding of preservation obligations "do not absolve it of all responsibility for the failure of a member of its senior management to comply with his document preservation obligations"); *Deerpoint Grp., Inc. v. Agrigenix, LLC,* 2022 WL 16551632, at *17 (E.D. Cal. Oct. 31, 2022) ("by allowing the computers to leave [company's] control, and not preserving the data . . . [company] affirmatively failed to preserve"); *Colonies,* 2020 WL 1496444, at *8 ("[i]gnorance of th[e] obligation of preservation, especially from

19                 **LEAD PLAINTIFFS' MOTION FOR**
                   **SPOLIATION SANCTIONS**

sophisticated parties who have the assistance of experienced counsel" was "not persuasive").

**C.    The Lost ESI On The Laptop's Hard Drive Cannot Be Restored Or Replaced**

The ESI that Yu destroyed on her laptop's hard drive cannot be restored or replaced through additional discovery.  The laptop was Yu's sole work computer, ███████████████████████████
███████████████████████████████████████████████████████████████████████████████████ .
Even if this were not the case, it is well-settled that "spoliation of evidence raises a presumption that the destroyed evidence goes to the merits of the case" and "that such evidence was adverse to the party that destroyed it."  *First Financial Security, Inc. v. Freedom Equity Group, LLC*, 2016 WL 5870218, at *3 (N.D. Cal. Oct. 7, 2016); *Uber*, 2018 WL 646701, at *17 ("Having frustrated its adversary's attempts to mine these facts for damning evidence, Uber cannot now evade spoliation by speculating that all of the lost information was benign."); *Burris*, 566 F. Supp. 3d at 1014 (there is no "presumption of irrelevance as to the destroyed documents").

Moreover, where spoliation has been established, it is the spoliating party's burden to prove that the evidence was not relevant or preserved elsewhere, *Montoya v. Orange Cnty. Sheriff's Dep't*, 2013 WL 6705992, at *11 (C.D. Cal. Dec. 18, 2013)—a burden Defendants cannot meet here.  Indeed, Yu admitted at her deposition that she intentionally destroyed the laptop's hard drive, ███████████████████████████████████████████████████████████████████████████████████
███  *Supra* at 8, 16; *see E.E.O.C. v. Fry's Electronics, Inc.*, 874 F. Supp. 2d 1042, 1046 (W.D. Wash. 2012) (where defendants could not show that destroyed documents were "mirrored or otherwise transferred . . . to another medium for preservation," defendant was not entitled to a presumption that documents "were irrelevant" or "saved in another format").

**D.    Terminating Sanctions Are Warranted Under Rule 37(e)(2) Because Defendants Acted With Intent To Deprive**

When a court has found spoliation, Rule 37(e) provides two tiers of sanctions. *hiQ Labs, Inc. v. LinkedIn Corp.*, 2022 WL 18399982, at *18 (N.D. Cal. Nov. 4, 2022) (Chen, J.).  Under Rule 37(e)(1), "a court may order measures no greater than necessary to cure the prejudice." *Id.*  However, if a court finds that an offending party also "acted with the intent to deprive another party of the information's use in the litigation," the Court may issue harsher sanctions under Rule

37(e)(2)—including "enter[ing] a default judgment." *Id.* Courts have found that "a party's deletion of information qualifies as intentional if the party has some notice that the documents were potentially relevant to the litigation before they were destroyed." *Id.* at *19. Significantly, "[t]he most decisive factor in the intent analysis is the timing of the offending conduct." *Id.* at *20. The deprived party need not demonstrate prejudice under this section, because the finding of intent implies that the information was unfavorable to the spoliating party and that the moving party was prejudiced by the loss of the information. *Fed. Trade Comm'n v. Noland*, 2021 WL 3857413, at *6 (D. Ariz. Aug. 30, 2021) (no requirement to demonstrate prejudice under Rule 37(e)(2)).

Yu and FibroGen clearly acted with intent here. *First*, Yu intentionally destroyed the laptop's hard drive ████████████████████████████████████████ ████████████████████████████████████████ ██████████████, and eight days before the Company would be forced to reveal the *post hoc* manipulations Yu had orchestrated. *Supra* at 4, 8, 10. *Leon*, 464 F.3d at 958 (intent shown where party "admitted [to] deleting entire directories of personal files" after placed on leave by employer and "wrote a program to 'wipe' any deleted files from the unallocated space in the hard drive");[9] *WeRide*, 2020 WL 1967209, at *15 (intent clear where party erased company laptop after termination and before returning laptop).[10]

*Second*, FibroGen's intent is also easily established. As numerous courts have held, when an employee intentionally spoliates evidence—particularly, as here, a top-level C-suite

---

[9] Yu's shifting justifications for erasing the laptop bolster her intent. Yu initially claimed that she erased the laptop due to security concerns in transit ██████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ █████

[10] Yu's highly dubious claim—████████████████████████████████████—that she believed her hard drive was "automatically" backed up by FibroGen's system—does not in any way negate her intent, ████████████████████████████████████████████████████████████ ████. *See Plantronics*, 2016 WL 3792833, at *6 (bad faith intent of top-level executive who "intentionally deleted thousands of emails" was "not excused by his professed belief that he thought IT personnel would nevertheless continue to have access to the deleted emails").

**LEAD PLAINTIFFS' MOTION FOR SPOLIATION SANCTIONS**

executive—that "employee's misconduct with regard to spoliation can be imputed to an employer" under agency law. *Colonies*, 2020 WL 1496444, at \*10; *WeRide*, 2020 WL 1967209, at \*13 (intent imputed where party had "both controlled [the spoliator] and been its co-defendant in this litigation"); *Plantronics*, 2016 WL 3792833, at \*7 (imputing senior executive's bad faith to company and holding company responsible for failure to preserve); *Nursing Home Pension Fund v. Oracle Corp.*, 254 F.R.D. 559, 566-67 (N.D. Cal. 2008) (same).[11]

*Third,* Yu's and FibroGen's intent is further established by their evasion and obfuscation. As set forth above, Defendants knew from day one that the ESI on Yu's Laptop had not been preserved. Despite the fact that Yu is a named defendant in this action and the former CMO who directly oversaw the *post hoc* manipulations, Defendants not only failed to disclose this critical information to Plaintiffs, they engaged in a concerted campaign to conceal it by frustrating Plaintiffs' attempts to obtain even basic information about what had occurred. "[T]he sheer number of obfuscatory actions undertaken" by FibroGen and Yu "evince an unusually clear level of intent to deprive [Plaintiffs] of potentially relevant ESI." *Burris*, 566 F. Supp. 3d at 1017.[12]

FibroGen's and Yu's intent is also clear with respect to their destruction of Yu's hard copy documents. ██████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

---

[11] ████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

[12] *See Google*, 2023 WL 2673109, \*\*8-9 (intent where Google "displayed a dismissive attitude ill tuned to the gravity of its conduct" and "hid[] the ball" with respect to the spoliation at issue, therefore "subvert[ing] the discovery process"); *Hunters Capital, LLC. v. City of Seattle*, 2023 WL 184208, at \*\*9-10 (W.D. Wash. Jan. 13, 2023) (intent where city delayed notifying plaintiffs about spoliation issue "until forced" despite having commissioned a forensic expert to address the issue); *Plantronics*, 2016 WL 3792833, at \*8 (intent "buttressed" by the fact that "counsel for Plantronics told counsel for GN that GN was 'incorrect to assume deletion'" and did not disclose that "it had retained a forensic expert to recover Mr. Houston's emails").

**LEAD PLAINTIFFS' MOTION FOR SPOLIATION SANCTIONS**

[black redaction bar]

[black redaction bar]

[black redaction bar]

[black redaction bar]

[black redaction bar]

[black redaction bar]

[black redaction bar]

[black redaction bar]

[black redaction bar]

[black redaction bar]

[black redaction bar]

### E.       The Appropriate Sanction Is Entry Of A Default Judgment

Where spoliation occurs and a court "finds that the party acted with the intent to deprive another party of the information's use in the litigation, a court may issue terminating sanctions" under Rule 37(e)(2). *Facebook,* 2022 WL 2289067, at \*6.  Plaintiffs respectfully submit that terminating sanctions against both FibroGen and Yu are warranted here.  While the 2015 Advisory Committee Notes to Rule 37(e) caution that the more "severe measures authorized by [37(e)(2)] should not be used when the information lost was relatively unimportant or lesser measures . . . would be sufficient," Plaintiffs proffer that the exact opposite is true here.

*First*, Plaintiffs have been severely prejudiced by the spoliation of Yu's laptop and hard copy files.  There is no dispute that Yu is a key defendant in this litigation.  [black redaction bar]

[black redaction bar]

[black redaction bar] However, Neff is deceased (and therefore cannot

---

[13] While "[t]he Ninth Circuit has not addressed whether courts are foreclosed from using their inherent authority to impose sanctions for the destruction of physical—as opposed to electronic—evidence … certain courts in this district have continued to apply inherent authority when deciding physical evidence spoliation while others have postulated that the Ninth Circuit will likely apply Rule 37(e) standards to physical, as well as electronic evidence." *Sanchez v. Albertson's, LLC*, 2022 WL 656369, at \*9, n.8 (D. Nev. Mar. 3, 2022).  Regardless of which standard is proper, Yu's and FibroGen's destruction of Yu's hard copies is spoliation that warrants significant sanctions.

**LEAD PLAINTIFFS' MOTION FOR
SPOLIATION SANCTIONS**

be deposed) and, to date, Defendants have been unable to confirm that all of his relevant ESI has been preserved—which seems very unlikely in light of the fact that Defendants have produced *fewer than 500 documents* from Neff's files. Yu's spoliation has therefore deprived Plaintiffs of absolutely critical evidence they could have used to impeach Yu during her deposition or at trial. *Facebook*, 2022 WL 2289067, at *10 ("[t]he risk of prejudice to the party seeking sanctions is the most important factor" for "case dispositive sanctions").

*Second*, lesser sanctions cannot cure the prejudice to Plaintiffs here. Defendants have already made clear what their main defenses in this action will be: namely, that no data was manipulated, and that the different analyses that were later revealed amounted to a mere difference of opinion by parties who were acting in good faith. It is highly likely that damning evidence that would have rebutted or even foreclosed such defenses was on Yu's hard drive and located in her hard copy files. Indeed, that is the most credible explanation for why Defendants would deliberately destroy the laptop and documents at a time when litigation was clearly imminent. *Burris*, 566 F. Supp. 3d at 1015 ("This backdrop raises a strong inference that the ESI destroyed by Plaintiff was not irrelevant, personal information but information that was devastating to . . .his claims in this action"); *Facebook*, 2022 WL 2289067, at *11 ("OnlineNIC and ID Shield claim they have mountains of exculpatory evidence, yet for all Plaintiffs or the Court may ever know, those 'mountains' may be dwarfed by the mountains of damning evidence Defendants deleted").

*Third*, it is "well settled" in the Ninth Circuit that "dismissal is warranted where, as here, a party has engaged deliberately in deceptive practices that undermine the integrity of judicial proceedings." *Anheuser-Busch, Inc. v. Natural Beverage Distributors*, 69 F.3d 337, 348 (9th Cir. 1995); *Valley Engineers Inc. v. Electric Engineering Co.*, 158 F.3d 1051, 1058 (9th Cir. 1998 (terminating sanctions appropriate where "there can never be assurance of proceeding on the true facts"). As set forth above, Defendants have engaged in a concerted effort to obfuscate the serious spoliation that has occurred here from day one, including by violating the clear terms of this Court's ESI rules and the ESI order entered in this case. Courts in the Ninth Circuit have routinely found such bad faith behavior merits entry of a default judgment under Rule 37(e)(2). *See, e.g.*, *Leon*, 464 F.3d at 960 (jury instructions not enough to cure prejudice where party "intentionally

**LEAD PLAINTIFFS' MOTION FOR
SPOLIATION SANCTIONS**

wiped" hard drive); *WeRide*, 2020 WL 1967209, at \*16 (entry of default judgment appropriate against former executive who "destroyed ESI on three [] devices before the litigation began" and had thus "prejudiced [plaintiff's] ability to raise its affirmative case"); *Burris*, 566 F. Supp. 3d at 1017-19 (default judgment appropriate where party purged email accounts and devices because "sheer scope" of spoliating party's "dishonesty and spoliation efforts" made it "impossible to have confidence that [the deprived party] will ever have access to the true facts"); *Facebook.*, 2022 WL 2289067, at \*8 ("no jury instruction, monetary sanctions, or exclusion of evidence will right the wrong occasioned" by "extensive spoliation" of "deleted or withheld ESI [that] likely could have been probative of [moving party's] claims").

F.  **In The Alternative, The Court Should Impose A Mandatory Adverse Inference Against FibroGen And Yu**

If the Court declines to enter a default judgment, in the alternative, Plaintiffs respectfully ask the Court to impose a mandatory adverse inference against Defendants FibroGen and Yu instructing the jury to find that the elements of both falsity and scienter have been established with regard to the alleged false statements sustained by this Court in the Court's order on Defendants' motion to dismiss. *See Deerpoint*, 2022 WL 16551632, at \*15 ("[w]hile it is unclear how much ESI was lost, [] such information, such as design, formula, sales information, financial information, email communications, etc. could have benefited [p]laintiff's claims"); *Oracle Corp.*, 254 F.R.D. at 567 ("it is appropriate to infer" that lost ESI "would demonstrate [defendant's] knowledge").

**IV.  CONCLUSION**

As a result of Yu's and FibroGen's intentional spoliation of evidence through the destruction of the laptop's hard drive and Yu's hard copy materials, the following sanctions should be imposed. The Court should enter: (i) a default judgment against Yu and FibroGen, or, in the alternative (ii) an order granting Plaintiffs a mandatory adverse inference against Defendants FibroGen and Yu instructing the jury to find that the elements of both falsity and scienter have been established with regard to the alleged false statements sustained by this Court in the Court's order on Defendants' motion to dismiss.

**LEAD PLAINTIFFS' MOTION FOR SPOLIATION SANCTIONS**

Dated:  June 8, 2023

Respectfully submitted,

*/s/ David R. Kaplan*

**SAXENA WHITE P.A.**

David R. Kaplan (SBN 230144)
dkaplan@saxenawhite.com
Emily Bishop (SBN 319383)
ebishop@saxenawhite.com
505 Lomas Santa Fe Drive, Suite 180
Solana Beach, CA 92075
Tel.: (858) 997-0860
Fax: (858) 369-0096

Steven B. Singer
ssinger@saxenawhite.com
Kyla Grant (admitted *pro hac vice*)
kgrant@saxenawhite.com
Sara DiLeo (admitted *pro hac vice*)
sdileo@saxenawhite.com
Joshua H. Saltzman (admitted *pro hac vice*)
jsaltzman@saxenawhite.com
10 Bank Street, 8th Floor
White Plains, New York 10606
Tel: (914) 437-8551
Fax: (888) 631-3611

Maya Saxena (admitted *pro hac vice*)
msaxena@saxenawhite.com
Lester R. Hooker (SBN 241590)
lhooker@saxenawhite.com
Dianne M. Pitre (SBN 286199)
dpitre@saxenawhite.com
7777 Glades Road, Suite 300
Boca Raton, FL 33434
Tel.: (561) 394-3399
Fax: (561) 394-3382

*Counsel for Lead Plaintiffs Employees' Retirement System of the City of Baltimore, City of Philadelphia Board of Pensions and Retirement, and Plymouth County Retirement Association, and Lead Counsel for the Class*

26                                          **LEAD PLAINTIFFS' MOTION FOR
                                              SPOLIATION SANCTIONS**

**CERTIFICATE OF SERVICE**

I hereby certify under penalty of perjury that on June 8, 2023, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel or parties of record.

*/s/ David R. Kaplan*
David R. Kaplan

**LEAD PLAINTIFFS' MOTION FOR SPOLIATION SANCTIONS**