**SAXENA WHITE P.A.**
Lester R. Hooker (SBN 241590)
lhooker@saxenawhite.com
7777 Glades Road, Suite 300
Boca Raton, FL 33434
Tel.: (561) 394-3399
Fax: (561) 394-3382

*Counsel for Lead Plaintiffs Employees' Retirement*
*System of the City of Baltimore, City of*
*Philadelphia Board of Pensions and Retirement,*
*and Plymouth County Retirement Association, and*
*Lead Counsel for the Class*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE FIBROGEN, INC., SECURITIES LITIGATION | Case No. 3:21-cv-02623-EMC <br><br> **CLASS ACTION** <br><br> COMPENDIUM OF EVIDENCE FILED IN SUPPORT OF LEAD PLAINTIFFS' MOTION FOR SPOLIATION SANCTIONS (6 OF 11) <br><br> Hearing Date: <br> Time: 1:30 p.m. <br> Courtroom: 5-17th Floor <br> Judge: Hon. Edward M. Chen |

PUBLIC FILING

COMPENDIUM OF EVIDENCE FILED ISO LEAD PLAINTIFFS'
MOTION FOR SPOLIATION SANCTIONS, CASE NO. 3:21-cv-02623-EMC

# EXHIBIT 51

# Filed Under Seal

# EXHIBIT 52

# Filed Under Seal

# EXHIBIT 53

# Filed Under Seal

# EXHIBIT 54

# Filed Under Seal

# EXHIBIT 55

**SAXENA WHITE P.A.**
David R. Kaplan (SBN 230144)
dkaplan@saxenawhite.com
12750 High Bluff Drive, Suite 475
San Diego, California 92130
Tel.: (858) 997-0860
Fax: (858) 369-0096

*Attorneys for Lead Plaintiffs Employees' Retirement
System of the City of Baltimore, City of
Philadelphia Board of Pensions and Retirement, and
Plymouth County Retirement Association*

[Additional Counsel Listed on Signature Page]

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE FIBROGEN, INC., SECURITIES LITIGATION | Case No. 3:21-cv-02623-EMC <br><br> <u>CLASS ACTION</u> <br><br> **LEAD PLAINTIFFS' FIRST REQUEST FOR PRODUCTION OF DOCUMENTS TO ALL DEFENDANTS** <br><br> JUDGE: Hon. Edward M. Chen <br> COURTROOM: 5 – 17th Floor |

PLEASE TAKE NOTICE that Lead Plaintiffs, Employees' Retirement System of the City of Baltimore, City of Philadelphia Board of Pensions and Retirement, and Plymouth County Retirement Association (collectively, "Lead Plaintiffs"), hereby request, pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, that Defendants FibroGen, Inc. ("FibroGen" or the "Company"), and Enrique Conterno, James Schoeneck, K. Peony Yu, Mark Eisner, and Pat Cotroneo (collectively, the "Individual Defendants," and together with FibroGen, "Defendants"), produce for inspection and copying all of the documents requested herein that are in the possession, custody or control of said Defendants or Defendants' agents, employees, attorneys, or any and all persons acting on Defendants' behalf, on or before October 14, 2022 at 9:00 a.m. at the offices of Saxena White P.A., 12750 High Bluff Drive, Suite 475, San Diego, CA 92130, or at such other time and place as the parties mutually agree.

## DEFINITIONS

The following definitions shall be used in construing the meaning of these document requests (the "Requests"):

1.      "Action" refers to the lawsuit captioned above.

2.      "AdCom" refers to the FDA Advisory Committee and its review of and recommendations concerning Roxa. *See, e.g.,* Compl. ¶85.

3.      "Analyst" refers to a research analyst working for an investment bank or research service that covers the stocks of publicly-traded corporations.

4.      "Astellas" means Astellas Pharma, Inc. and any of its parents, subsidiaries, affiliates, divisions, predecessor or successor entities, former or present officers, directors, owners, partners, employees, attorneys, agents, representatives, or all other persons occupying similar positions or performing similar functions or acting or purporting to act on its behalf.

5.      "AstraZeneca" means AstraZeneca AB and any of its parents, subsidiaries, affiliates, divisions, predecessor or successor entities, former or present officers, directors, owners, partners, employees, attorneys, agents, representatives, or all other persons occupying similar positions or performing similar functions or acting or purporting to act on its behalf.

6.      "Board" means the FibroGen board of directors, including any formal or informal committee, subcommittee, or subset thereof.

7.      "CKD" means chronic kidney disease.  As used in the Requests, CKD is intended to refer collectively to all DD, Incident-Dialysis, and NDD patients.

8.      "Class Period" means the period from December 20, 2018 to July 15, 2021, inclusive.

9.      "Communication" means oral or written communications of any kind, including without limitation, electronic communications, emails, facsimiles, telephone communications, texts, instant messages, correspondence, exchanges of written or recorded information, or face-to-face meetings.

10.     "Complaint" or "Compl." refers to Lead Plaintiffs' [Corrected] Consolidated Class Action Complaint for Violations of the Federal Securities Laws (Dkt. No. 97), filed on November 19, 2021 in the Action.

11.     "Complete Response Letter" refers to the Complete Response Letter regarding Roxa that FibroGen purportedly received from the FDA on or shortly before August 11, 2021, as described in FibroGen's press release dated August 11, 2021.

12.     "Conterno" means Enrique Conterno, FibroGen's current Chief Executive Officer.

13.     "Cotroneo" means Pat Cotroneo, FibroGen's former Chief Financial Officer.

14.     "DD" means Dialysis-Dependent CKD patients.

15.     "Defendants" means Defendant FibroGen and the Individual Defendants.

16.     "Document" or "Documents" shall include any hard copy document or ESI, Including in any of the forms described in Rule 34(a) of the Federal Rules of Civil Procedure ("writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations—stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form"), as well as any Communications, as defined herein, and "writings" and "recordings" as defined by Rule 1001 of the Federal Rules of Evidence. A draft or non-identical copy is a separate Document within the meaning of this term.

17. "Eisner" means Mark D. Eisner, FibroGen's current Chief Medical Officer.

18. "Electronically Stored Information" or "ESI" means any of the following:

a. all items covered by Rule 34(a)(l)(A) of the Federal Rules of Civil Procedure;

b. information or data that is generated, received, processed, or recorded by computers and other electronic devices, including Metadata;

c. internal or external websites;

d. output resulting from the use of any software program, application, or mobile app, including, but not limited to, any word processing Documents, spreadsheets, database files, charts, graphs and outlines, electronic mail, instant messaging or chat applications (such as Google Hangouts, Slack, Facebook Messenger, or other similar programs or applications), Bloomberg Instant Messenger, bulletin board programs, operating systems, source code, PDF files, batch files, ASCII files, recordings of virtual meetings held through platforms like Zoom or Teams, and all miscellaneous media on which they reside and regardless of whether said electronic data exists in an active file, a deleted file, or file fragment; and

e. any and all items stored on Electronic Media.

19. "Electronic Media" means any magnetic or other storage media device used to record ESI. Electronic Media devices may include computer memories, hard disks, floppy disks, hard drives, memory sticks, CD, CD-ROM, DVD, personal digital assistant devices (e.g., Palm Pilot, Blackberry, iPhone or "smart phone" devices), magnetic tapes of all types, microfiche, or any other vehicle for digital data storage and/or transmittal, including, but not limited to, any containers or labels appended to, or relating to, any physical storage device associated with each original or copy of such device.

20. "Epogen" refers to epoetin alpha, the most prominent erythropoiesis-stimulating agent representing the current standard of care for treating anemia in DD patients. *See, e.g.,* Compl. ¶39.

LEAD PLAINTIFFS' FIRST REQUEST FOR
PRODUCTION OF DOCUMENTS TO ALL DEFENDANTS
CASE NO. 3:21-CV-02623-EMC

21.    "FDA" means and refers to the United States Food and Drug Administration, including all divisions or subdivisions of the FDA.

22.    "FDA Approval" means and refers to the process for obtaining approval from the FDA to sell Roxa in the United States of America.

23.    "FibroGen" or the "Company" means FibroGen Inc., and any of its subsidiaries, affiliates, divisions, predecessor or successor entities, former or present officers, directors, owners, partners, employees, attorneys, agents, representatives, or all other persons occupying similar positions or performing similar functions or acting or purporting to act on its behalf.

24.    "Incident-Dialysis" means CKD patients who have been on dialysis for four months or less.

25.    "Individual Defendants" refers to Defendants Enrique Conterno, James Schoeneck, K. Peony Yu, Mark Eisner, and Pat Cotroneo.

26.    "Metadata" shall have the same meaning and be interpreted as equal in scope to the usage of the term in the Sedona Conference Definitions contained in "The Sedona Conference Glossary: E-Discovery & Digital Information Management, Fifth Edition" or the meaning ascribed in any agreed upon stipulation between Lead Plaintiffs and any one or more of the Defendants.

27.    "NDA" means and refers to the New Drug Application FibroGen submitted to the FDA in December 2018 seeking FDA Approval of Roxadustat.  *See, e.g.*, Compl. ¶4.

28.    "NDD" means Non-Dialysis-Dependent CKD patients.

29.    "Neff" means Thomas B. Neff, FibroGen's former Chief Executive Officer.

30.    "Person" means any natural person or any legal entity, including, without limitation, any business or governmental entity or association.

31.    "Phase 3 trials" refers to each of Roxa's global Phase 3 clinical trials.  *See, e.g.,* Compl. ¶46.

32.    "Phase 3 results" means the results of Roxa's global Phase 3 clinical trials used to evaluate safety, efficacy, and optimal dosage, and to confirm that Roxa's benefits outweighed its safety risks. *See, e.g.,* Compl. ¶45.

33.    "Roxa" means and refers to Roxadustat.

LEAD PLAINTIFFS' FIRST REQUEST FOR
PRODUCTION OF DOCUMENTS TO ALL DEFENDANTS
CASE NO. 3:21-CV-02623-EMC

34.    "Schoeneck" means James Schoeneck, FibroGen's former Interim Chief Executive Officer.

35.    "SEC" means and refers to the United States Securities and Exchange Commission.

36.    "You" and "Your" mean the recipients hereof, You, Your parents, subsidiaries, affiliates, and divisions; Your predecessor and successor entities; and any of the foregoing entities' former or present officers, directors, owners, partners, employees, attorneys, agents, representatives, and all other persons occupying similar positions or performing similar functions or acting or purporting to act on their behalf, and also includes the FDA, AstraZeneca, Astellas, Neff and Defendant Yu to the extent that any of their Documents or Communications are within Your possession, custody, or control.

37.    "Yu" means K. Peony Yu, FibroGen's former Chief Medical Officer.

**INSTRUCTIONS**

1.    All Requests shall be construed pursuant to the applicable Federal Rules of Civil Procedure, the Local Civil Rules of this Court and any agreed upon stipulation between Lead Plaintiffs and one or more of the Defendants.

2.    In producing Documents and other materials, You are requested to furnish all Documents (including ESI) or things (including Electronic Media) in Your possession, custody or control, regardless of whether such Documents or materials are possessed directly by You or Your agents, employees, representatives, subsidiaries, managing agents, affiliates, or investigators, or by Your attorneys or their agents, employees, representatives, or investigators.

3.    Your search for Documents responsive to these Requests should include the records of all Persons identified in Your Initial Disclosures prepared pursuant to Rule 26 of the Federal Rules of Civil Procedure.

4.    Pursuant to Rule 34(b) of the Federal Rules of Civil Procedure, Documents shall be produced as they are kept in the usual course of business so that Lead Plaintiffs can ascertain the files in which they were located, their relative order in such files, and how such files were maintained. Unless otherwise stated herein, Documents responsive to these Requests, including ESI, shall be produced on a computer diskette, DVD, CD-ROM, hard drive or via secure file

transfer site. Documents stored in electronic form or format of any kind are to be produced in their standard black-and-white, single-page Group IV TIFF image format with Opticon image and Concordance data load files containing their corresponding extracted text and related Metadata fields. Certain files types, such as PDF files, presentation-application files (e.g., MS PowerPoint), spreadsheet-application files (e.g., MS Excel, .csv), word-processing application files (e.g., MS Word), photographic images, and multimedia audio/visual files such as voice and video recordings (e.g., .wav, .mpeg, and .avi), shall also be produced in native format. Documents prepared, organized, or managed using any proprietary software system shall be produced in native format, and any proprietary software necessary to utilize those Documents as they are used in the ordinary course of business shall also be made available. For comparison purposes and to ensure authenticity, where Documents are produced in native format, such Documents shall also be produced in TIFF format. Lead Plaintiffs reserve the right to request that additional Documents be produced in native format. Documents attached to each other should not be separated.

5. All Documents shall be produced in the same order as they are kept or maintained by You in the ordinary course of Your business, and all re-productions of documents produced to third parties (such as the SEC, FDA, or foreign regulatory agencies) in connection with any investigation or proceeding shall be produced in the same order as produced in such other investigation or proceeding and segregated from those documents produced by You in response to other Requests herein. All Documents, other than ESI, shall be produced in the file folder, envelope or other container in which the Documents are kept or maintained. If for any reason the container cannot be produced, You should produce copies of all labels or other identifying marks which may be present on the container.

6. Each Document shall be produced in such fashion as to identify the department, branch, or office in whose possession it was located and, where applicable, the natural person in whose possession it was found and the business address of each Document's custodian(s). ESI shall be preserved in such fashion as to identify the filepath, the source or custodian, and all relevant Metadata. Electronic Media such as backup tapes shall be preserved to the extent that such Media is the only source of ESI that is responsive to these Requests.

LEAD PLAINTIFFS' FIRST REQUEST FOR
PRODUCTION OF DOCUMENTS TO ALL DEFENDANTS
CASE NO. 3:21-CV-02623-EMC

7.    A copy of a Document that varies in any way whatsoever from the original or from any other copy of the Document – whether by reasons of Metadata that differs in any respect, or by reason of any handwritten or other notation or any omission – shall constitute a separate Document and must be produced, whether or not the original of such Document is within Your possession, custody or control.  Accordingly, all prior versions and all drafts of all Documents must be produced.

8.    If any otherwise responsive Document was, but no longer is, in existence or in Your possession, custody or control, state, in writing, whether the Document: (i) is missing or lost; (ii) has been destroyed; (iii) has been transferred or delivered, voluntarily or involuntarily, to another person or entity, the name and address of such person or entity, and at whose request such transfer or delivery was made; or (iv) has been otherwise disposed of, and in each instance explain the circumstances surrounding, and the date or approximate date of, such disposition.

9.    The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of these Requests all responses that might otherwise be construed to be outside of the scope.

10.    The use of any singular form of any word includes the plural and vice versa.

11.    If no Documents or materials exist which are responsive to a particular Request, You must explicitly state so in writing.

12.    If any Document responsive to any of these Requests is privileged, and the Document or any portion of the Document requested is withheld based on a claim of privilege, provide a statement of the claim of privilege and all facts relied upon in support of that claim, including but not limited to the following information: (i) the type of Document being withheld and the reason for withholding the Document; (ii) the date of such communication; (iii) the medium of such communication; (iv) the general subject matter of such communication; (v) the identity of any Document that was the subject of such communication and the present location of any such Document; (vi) the identity of the persons involved in such communication; (vii) the identity of any Document which records, refers, or relates to such communication and present location of any

such Document; and (viii) the number or numbers of these Requests to which such information is responsive.

13.    Each Document requested should be produced in its entirety and without deletion, redaction or excisions, regardless of whether you consider the entire Document or only part of it to be relevant or responsive to these Requests.  Redactions must only be made to address privilege issues, and must be narrowly tailored to protect only privileged information and nothing more. Any redactions to Documents produced should be identified in accordance with Instruction 12 above with the redacted content clearly marked as "REDACTED."

<strong><u>RELEVANT TIME PERIOD</u></strong>

Unless otherwise specified, the relevant time period applicable to these Requests shall be from January 1, 2018 through the present (the "Relevant Time Period").  Each Request calls for all Documents and information which relate in whole or in part to the Relevant Time Period, or to events or circumstances during such Period, irrespective of when such Documents or information are dated, prepared, generated, created, edited, revised, sent or received.  The Relevant Time Period applies to each Request below, unless otherwise indicated.

<strong><u>DOCUMENTS REQUESTED</u></strong>

**DOCUMENT REQUEST NO. 1:** Without any date restrictions, all Documents and Communications concerning any SEC investigation relating to Roxa, including all Documents produced or exchanged with the SEC in connection therewith and any Communications relating to scope, manner, timing, adequacy and completion of such productions.

**DOCUMENT REQUEST NO. 2:** Without any date restrictions, all Documents and Communications concerning the SEC's subpoena "requesting documents related to roxadustat's pooled cardiovascular safety data," as disclosed in FibroGen's filings with the SEC, including all Documents and Communications exchanged with or produced to the SEC, copies of transcripts of any testimony provided, minutes of any meeting held with the SEC, and any Communications relating to scope, manner, timing, adequacy and completion of such productions.

**DOCUMENT REQUEST NO. 3:** Without any date restrictions, all Documents and Communications concerning any SEC investigation relating to Roxa, including with the FDA, AstraZeneca, Astellas, Neff, Yu, Analysts, the media, or any third party.

**DOCUMENT REQUEST NO. 4:** Without any date restrictions, all Documents and Communications concerning Your correspondence with the FDA about the safety and efficacy of Roxa.

**DOCUMENT REQUEST NO. 5:** Without any date restrictions, all Documents and Communications concerning the NDA, including all drafts and iterations summarizing the information contained in the NDA in any form, and all Documents and Communications concerning whether data, information, or analyses regarding the Phase 3 results should be included in or excluded from the NDA.

**DOCUMENT REQUEST NO. 6:** All Documents and Communications concerning Your pre-NDA meeting with the FDA, including all Documents and Communications concerning Your preparation for that meeting, used or referenced during that meeting, minutes of that meeting, and any subsequent discussion or analysis of the results of that meeting. *See, e.g.,* Compl. ¶59.

**DOCUMENT REQUEST NO. 7:** Without any date restrictions, all Documents and Communications concerning Your meetings with the FDA regarding Roxa, the NDA and FDA Approval, including all Documents and Communications concerning Your preparation for those meetings, used or referenced during those meetings, minutes of those meetings, and any subsequent discussion or analysis of the results of those meetings. *See, e.g.,* Compl. ¶104.

**DOCUMENT REQUEST NO. 8:** Without any date restrictions, all Documents and Communications concerning any agreement reached between or among You, on the one hand, and AstraZeneca, Astellas and/or the FDA, on the other, regarding the efficacy, safety, or sensitivity analysis thresholds required for FDA Approval, including any special protocol assessment or other formal or informal agreement concerning the statistical plan, statistical analyses and/or stratification factors to be used.

**DOCUMENT REQUEST NO. 9:** Without any date restrictions, all Documents and Communications concerning any agreement reached between or among You, AstraZeneca, Astellas and/or the FDA concerning the dropout rate of patients included in the Phase 3 trials.

**DOCUMENT REQUEST NO. 10:** All Documents and Communications concerning the FDA's decision to extend Roxa's PDUFA date (as defined in paragraph 66 and note 2 of the Complaint) from December 2020 to March 2021, including all Documents and Communications concerning Your "'submitting additional analyses of existing Roxadustat clinical data'" to the FDA. Compl. ¶73.

**DOCUMENT REQUEST NO. 11:** All Documents and Communications concerning any proposed, planned or actual FDA Advisory Committee meeting regarding Roxa, including all Documents and Communications concerning whether the FDA would hold such a meeting, Your preparations for any such meeting, and Your representation on April 6, 2021 that the "post-hoc changes to the stratification factors" only "recently came to the attention of members of [Your] senior management team, including [Defendant Conterno] during [Your] preparation for" such a meeting. *See, e.g.,* Compl. ¶86.

**DOCUMENT REQUEST NO. 12:** All Documents and Communications concerning the Phase 3 results You disclosed on November 8, 2019 during the American Society of Nephrology conference, including all drafts and iterations summarizing the information disclosed in any form, and all Documents and Communications concerning whether data, information, or analyses regarding the Phase 3 results should be included in or excluded from this disclosure.

**DOCUMENT REQUEST NO. 13:** All Documents and Communications concerning the "post-hoc changes" You disclosed on April 6, 2021, including all Documents and Communications concerning Your decision to "clarify this issue with the FDA" to "make sure that it was clear which analyses used which factors, prespecified and *post-hoc.*" Compl. ¶84.

**DOCUMENT REQUEST NO. 14:** All Documents and Communications concerning the "prespecified" factors referenced in FibroGen's April 6, 2021 announcement concerning the "post-hoc changes," including all Documents and Communications concerning Your representation

therein that "the analysis with the prespecified stratification factors [had] not been previously publicly reported." Compl. ¶85.

**DOCUMENT REQUEST NO. 15:** Without any date restrictions, all Documents and Communications supporting or refuting Your representations on December 20, 2018 that the Phase 3 results were "consistent with the results observed in prior Roxadustat studies." Compl. ¶51.

**DOCUMENT REQUEST NO. 16:** Without any date restrictions, all Documents and Communications concerning the scope, design, structure, and plan for conducting Roxa's Phase 3 trials, including all Documents and Communications concerning any actual, proposed, or contemplated statistical plan and analysis.

**DOCUMENT REQUEST NO. 17:** Without any date restrictions, all Documents and Communications concerning whether and to what extent Roxa is, may be, or is not more efficacious for CKD patients than Epogen or a placebo.

**DOCUMENT REQUEST NO. 18:** Without any date restrictions, all Documents and Communications concerning whether and to what extent Roxa's safety for CKD patients is superior, non-inferior, inferior, or otherwise comparable to the safety of Epogen or a placebo for CKD patients.

**DOCUMENT REQUEST NO. 19:** All Documents and Communications between or among You, on the one hand, and AstraZeneca, Astellas, and/or the FDA, on the other hand, concerning FDA Approval.

**DOCUMENT REQUEST NO. 20:** Without any date restrictions, all Documents and Communications between or among You and Neff or any of the Individual Defendants concerning the Phase 3 trials, the Phase 3 results, or FDA Approval.

**DOCUMENT REQUEST NO. 21:** Without any date restrictions, all Documents and Communications concerning all payments, royalties, or other financial benefit of any type You have received or may receive from AstraZeneca, Astellas, or any other Person in exchange for Your efforts to research and develop, commercialize, and seek FDA Approval of Roxa. *See, e.g.,* Compl. ¶38.

**DOCUMENT REQUEST NO. 22:** Without any date restrictions, all contracts concerning Roxa between or among You, AstraZeneca, and Astellas.

**DOCUMENT REQUEST NO. 23:** Without any date restrictions, all Documents and Communications concerning whom among You, AstraZeneca, or Astellas was responsible for analyzing, summarizing, and/or synthesizing the Phase 3 results and for drafting and submitting the NDA to the FDA and otherwise seeking FDA Approval.

**DOCUMENT REQUEST NO. 24:** Without any date restrictions, all Documents and Communications concerning any indemnification agreements, hold harmless agreements or other agreements concerning shared payment of liabilities executed between or among FibroGen, AstraZeneca, or Astellas.

**DOCUMENT REQUEST NO. 25:** Without any date restrictions, all Documents and Communications concerning the Phase 3 results You submitted to foreign regulators, including to the European Medicines Agency, Japan's Ministry of Health, Labour and Welfare and Japan's Pharmaceuticals and Medical Devices Agency, in connection with Your efforts to obtain regulatory approval to distribute Roxa internationally.

**DOCUMENT REQUEST NO. 26:** All raw data obtained during the Phase 3 trials concerning the Phase 3 results.

**DOCUMENT REQUEST NO. 27:** Without any date restrictions, all Documents and Communications relevant to the conduct of the Phase 3 trials, including all Documents and Communications exchanged with Roxa's Institutional Review Board (IRB, or other patient safety organization), Data Safety Monitoring Board (DSMB), contract research organization (CRO), drug manufacturer, study site Principal Investigators or Research Coordinators, and statistician(s) involved in data analysis.

**DOCUMENT REQUEST NO. 28:** All Documents and Communications concerning Conterno's representations that he had personally reviewed the Phase 3 trial data and Phase 3 results, including all facts supporting or refuting the same. *See, e.g.,* Compl. ¶67.

**DOCUMENT REQUEST NO. 29:** All Documents and Communications concerning FibroGen's internal investigation, the commencement and conclusion of which FibroGen announced on April

6, 2021 and August 9, 2021, respectively, including all Documents and Communications collected and reviewed in connection with that investigation, and witnesses accounts provided in connection with that investigation, and all memoranda relating to the same.

**DOCUMENT REQUEST NO. 30:** All Documents and Communications concerning Your representations on August 9, 2021 that "[t]hose responsible for the statistical analysis believed it was a reasonable and valid way to analyze and present the data," "those directly responsible for the decision to use post-hoc stratification factors in the primary analysis no longer work for the company," and "[w]e do not believe that [the use of post-hoc stratification factors] played any role in [the AdCom vote against Roxa on July 15, 2021]."

**DOCUMENT REQUEST NO. 31:** All Documents and Communications concerning the results of the sensitivity analyses allegedly revealed on July 15, 2021 in connection with the AdCom meeting held that day. *See, e.g.,* Compl. ¶¶103-12.

**DOCUMENT REQUEST NO. 32:** All Documents and Communications concerning the decision to halt the trading of FibroGen's common stock on July 15, 2021. *See, e.g.,* Compl. ¶113.

**DOCUMENT REQUEST NO. 33:** All Documents and Communications concerning the FDA's Complete Response Letter regarding Roxa, including all copies of and Communications regarding the written reviews prepared by the FDA in connection with the same, and all Communications You exchanged with Analysts, FibroGen investors and other third parties regarding the Complete Response Letter.

**DOCUMENT REQUEST NO. 34:** All Documents and Communications, to the extent not covered by other Requests concerning any third party retained to assist or advise You in any of the Roxa-related activities alleged in the Complaint.

**DOCUMENT REQUEST NO. 35:** All Documents and Communications concerning all meetings attended by any of FibroGen's senior executive officers or employees relating to the allegations of the Complaint, including any slides, presentations, handouts or other materials used or intended for use in conjunction with such meetings and all video or audio recordings of the same.

**DOCUMENT REQUEST NO. 36:**  All Documents and Communications concerning any actual, planned, or contemplated transaction in FibroGen securities by any current or former FibroGen officer or director, including the Individual Defendants and Neff.

**DOCUMENT REQUEST NO. 37:**  All Documents and Communications concerning any actual, planned, or contemplated FibroGen stock trading plan (such as a plan under SEC Rule 10b5-1) entered into or contemplated by any current or former FibroGen officer or director, including the Individual Defendants and Neff.

**DOCUMENT REQUEST NO. 38:**  All Documents and Communications concerning any employment, compensation, or consulting agreement in effect during the Class Period entered into between any of the Individual Defendants or Neff, on the one hand, and FibroGen on the other.

**DOCUMENT REQUEST NO. 39:**  All Documents and Communications concerning any bonus, incentive, severance, or other contingent compensation paid to any of the Individual Defendants or Neff during the Class Period, including cash payments, stock, stock options, and RSUs.

**DOCUMENT REQUEST NO. 40:**  Directories, organizational charts and other Documents sufficient to identify FibroGen's organizational structure and reporting relationships between the Company's officers and employees.

**DOCUMENT REQUEST NO. 41:**  Documents sufficient to identify all personal and business phone numbers, email addresses, social media aliases/screen names/handles, and personal or executive assistants for Neff, the Individual Defendants, and for each current or former FibroGen, AstraZeneca, or Astellas employee identified in the parties' Fed. R. Civ. P. 26(a)(1) disclosures.

**DOCUMENT REQUEST NO. 42:**  All Documents relating to, and all Communications with, any FibroGen, AstraZeneca, or Astellas investor, Analyst, financial publication, news reporter, journalist, and/or investment banker concerning the allegations of the Complaint, including all Analyst reports concerning FibroGen.

**DOCUMENT REQUEST NO. 43:**  All Documents relating to, and all Communications with, any pharmaceutical journalist, publication, reporter, news outlet, doctor or other professional in the pharmaceutical industry concerning the allegations of the Complaint. *See, e.g.,* Compl. ¶¶89-101.

LEAD PLAINTIFFS' FIRST REQUEST FOR
PRODUCTION OF DOCUMENTS TO ALL DEFENDANTS
CASE NO. 3:21-CV-02623-EMC

**DOCUMENT REQUEST NO. 44:** All Documents and Communications concerning, relied upon, considered, provided to, prepared by, or used by Neff, any Individual Defendant, or other current or former FibroGen employees in preparing any remarks, press releases, presentations, slides, or prepared answers to Analyst questions, for use in conjunction with any FibroGen press release, earnings call or investor conference appearance, or scientific publication during the Class Period, including all Documents and Communications concerning the statements alleged in paragraphs 140 through 235 of the Complaint and any drafts of the same.

**DOCUMENT REQUEST NO. 45:** All Documents and Communications concerning the basis for Defendant Yu's representation that "we had already talked with the FDA about [the] analytical plan, and we had made the agreement on the analysis plan. The results that we have presented in the high-impact clinical session at the ASN, and the numbers I had just presented, were based on the agreed analysis plan that we have made with the FDA." Compl. ¶64.

**DOCUMENT REQUEST NO. 46:** All Documents and Communications, to the extent not covered by other Requests, concerning the statements alleged to be false and misleading in the Complaint and sustained by the Court, including all Documents and Communications concerning any of the Defendants' or FibroGen's other senior executive officers' possession of information contradicting any one or more of those statements.

**DOCUMENT REQUEST NO. 47:** All Documents and Communications concerning the potential or actual causes of FibroGen's common stock price drop following FibroGen's announcement on May 9, 2019, including all of Your Communications with AstraZeneca, Astellas, FibroGen Analysts, investors, or other market participants concerning the same. *See, e.g.,* Compl. ¶263.

**DOCUMENT REQUEST NO. 48:** All Documents and Communications concerning the potential or actual causes of FibroGen's common stock price drop following FibroGen's announcement on December 18, 2020, including all of Your Communications with AstraZeneca, Astellas, FibroGen Analysts, investors, or other market participants concerning the same. *See, e.g.*, Compl. ¶73.

**DOCUMENT REQUEST NO. 49:** All Documents and Communications concerning the potential or actual causes of FibroGen's common stock price drop following FibroGen's announcement on March 1, 2021, including all of Your Communications with AstraZeneca, Astellas, FibroGen Analysts, investors, or other market participants concerning the same. *See, e.g.*, Compl. ¶264.

**DOCUMENT REQUEST NO. 50:** All Documents and Communications concerning the potential or actual causes of FibroGen's common stock price drop following FibroGen's announcement on April 6, 2021, including all of Your Communications with AstraZeneca, Astellas, FibroGen Analysts, investors, or other market participants concerning the same. *See, e.g.*, Compl. ¶265.

**DOCUMENT REQUEST NO. 51:** All Documents and Communications concerning the potential or actual causes of FibroGen's common stock price drop following FibroGen's announcement on July 15, 2021, including all of Your Communications with AstraZeneca, Astellas, FibroGen Analysts, investors, or other market participants concerning the same. *See, e.g.*, Compl. ¶266.

**DOCUMENT REQUEST NO. 52:** All Documents and Communications concerning the Phase 3 trials and/or Phase 3 results with any medical journal or other medical industry publication, including all Documents and Communications provided to such entities or concerning any subsequent retraction, qualification, or explanation of previously published information. *See, e.g.,* Compl. ¶84.

**DOCUMENT REQUEST NO. 53:** All Documents and Communications concerning Yu's resignation as FibroGen's Chief Medical Officer, decision to become a consultant to FibroGen, and subsequent departure from FibroGen, including the reasons for Yu's resignation, retirement, retention as a consultant, and departure from FibroGen and all compensation received by Yu in connection with or as a result of the same.

**DOCUMENT REQUEST NO. 54:** All Documents and Communications (including all Board packages, financial closing packages, meeting minutes, exhibits, agendas, memoranda, resolutions, whether adopted or discussed, notes, reports, and presentations) concerning any Board meeting

discussing any of the substantive facts underlying Lead Plaintiffs' claims, including the Phase 3 trials, the Phase 3 results, FDA Approval, FibroGen's internal investigation of the allegations underlying the Complaint, or Defendant Yu.

**DOCUMENT REQUEST NO. 55:** All Documents and Communications concerning any statements made by the FDA, AstraZeneca, or Astellas to You regarding Roxa, the NDA, the Phase 3 trials, the Phase 3 results, FDA Approval or any citizen petition regarding Roxa.

**DOCUMENT REQUEST NO. 56:** All Documents and Communications You exchanged with DaVita, Fresenius, or any other providers of dialysis in the United States concerning the Phase 3 results or FDA Approval.

**DOCUMENT REQUEST NO. 57:** All Documents produced by Defendants in response to the books and records demand under DGCL § 220 or analogous provision referred to in the complaints filed in *Millan v. Schoeneck et al.*, No. 3:21-cv-05871 (N.D. Cal.), *Chiang v. FibroGen, Inc. et al.*, No. 1:12-cv-01811 (D. Del.), and *Zhao v. Conterno et al.*, No. 2022-0331 (Del. Ch.), and all Documents produced by Defendants in discovery in any of those actions, and any related Communications concerning the scope, manner, timing, adequacy or completion of such productions.

**DOCUMENT REQUEST NO. 58:** All Documents relied upon in admitting or supporting the admission of facts in any Defendant's answer to the Complaint.

**DOCUMENT REQUEST NO. 59:** All Documents and Communications that support or refute any Defendant's asserted affirmative defenses or any other defenses any Defendant intends to assert in this Action, including all Documents any Defendant intends to use or rely upon at trial.

**DOCUMENT REQUEST NO. 60:** All Documents to the present that have been prepared, received, or reviewed by any Person who may be called upon to provide expert testimony (whether by live testimony, deposition testimony, or affidavit) in this Action, including reports, memoranda, correspondence, compilations of data, and current curriculum vitae or resume.

**DOCUMENT REQUEST NO. 61:** All Documents and Communications that reflect or describe FibroGen's policies, procedures, and guidelines for the use, destruction, or retention of email, instant messages, or other forms of ESI, including all Documents and Communications concerning

any action taken by Neff, any Individual Defendant, FibroGen or its employees or agents to destroy or retain information responsive to these Requests, and any litigation hold implemented in connection with this Action.

**DOCUMENT REQUEST NO. 62:** All Documents and Communications concerning all insurance policies, indemnification agreements, hold harmless agreements, or by-laws that may provide coverage for any Defendant for all or part of any potential liability arising from the claims alleged in the Complaint, including copies of any reservation of rights letters.

Dated: September 14, 2022                    Respectfully submitted,

                                              **SAXENA WHITE P.A.**

                                              By: */s/ David R. Kaplan*
                                              David R. Kaplan (SBN 230144)
                                              dkaplan@saxenawhite.com
                                              12750 High Bluff Drive, Suite 475
                                              San Diego, California 92130
                                              Tel: (858) 997-0860
                                              Fax: (858) 369-0096

                                              Steven B. Singer
                                              ssinger@saxenawhite.com
                                              Kyla Grant (admitted *pro hac vice*)
                                              kgrant@saxenawhite.com
                                              Sara DiLeo (admitted *pro hac vice*)
                                              sdileo@saxenawhite.com
                                              Joshua Saltzman (admitted *pro hac vice*)
                                              jsaltzman@saxenawhite.com
                                              10 Bank Street, 8th Floor
                                              White Plains, New York 10606
                                              Tel: (914) 437-8551

                                              Maya Saxena (admitted *pro hac vice*)
                                              msaxena@saxenawhite.com
                                              Lester R. Hooker (SBN 241590)
                                              lhooker@saxenawhite.com
                                              Dianne M. Pitre (SBN 286199)
                                              dpitre@saxenawhite.com
                                              7777 Glades Road, Suite 300
                                              Boca Raton, FL 33434
                                              Tel: (561) 394-3399

LEAD PLAINTIFFS' FIRST REQUEST FOR
PRODUCTION OF DOCUMENTS TO ALL DEFENDANTS
CASE NO. 3:21-CV-02623-EMC

*Counsel for Lead Plaintiffs Employees' Retirement System of the City of Baltimore, City of Philadelphia Board of Pensions and Retirement, and Plymouth County Retirement Association, and Lead Counsel for the Class*

LEAD PLAINTIFFS' FIRST REQUEST FOR
PRODUCTION OF DOCUMENTS TO ALL DEFENDANTS
CASE NO. 3:21-CV-02623-EMC

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was served via e-mail on September 14, 2022 on counsel for all parties of record.

/s/ David R. Kaplan_____
David R. Kaplan
dkaplan@saxenawhite.com
12750 High Bluff Drive, Suite 475
San Diego, California 92130
Telephone: (858) 997-0860
Facsimile: (858) 369-0096

**COOLEY LLP**

John C. Dwyer (136533)
dwyerjc@cooley.com
Alexander J. Kasner (310637)
akasner@cooley.com
3175 Hanover Street
Palo Alto, California 94304-1130
Telephone: (650) 843-5000
Facsimile: (650) 849-7400

*Attorneys for Defendants FibroGen, Inc.,*
*Enrique Conterno, James Schoeneck,*
*Mark Eisner, and Pat Cotroneo*

**PILLSBURY WINTHROP SHAW PITTMAN LLP**

Bruce A. Ericson (SBN 76342)
bruce.ericson@pillsburylaw.com
Lee Brand (SBN 287110)
lee.brand@pillsburylaw.com
Four Embarcadero Center, 22nd Floor
San Francisco, CA 94111-5998
Telephone: (415) 983-1000
Facsimile: (415) 983-1200

**WEI GROUP LLP**

Eric S. Wei (*pro hac* vice application forthcoming)
ewei@weillp.com
One World Trade Center, Suite 8500
New York, New York 10007-0103
Telephone: (212) 248-0808

20

Facsimile: (212) 248-0475

*Attorneys for Defendant*
*K. Peony Yu, M.D.*

# EXHIBIT 56

# Filed Under Seal

# EXHIBIT 57

# Filed Under Seal

# EXHIBIT 58

# Filed Under Seal

# EXHIBIT 59

# Filed Under Seal

# EXHIBIT 60

# Filed Under Seal