**SAXENA WHITE P.A.**
David R. Kaplan (SBN 230144)
dkaplan@saxenawhite.com
505 Lomas Santa Fe Drive, Suite 180
Solana Beach, CA 92075
Tel.: (858) 997-0860
Fax: (858) 369-0096

*Counsel for Lead Plaintiffs Employees' Retirement
System of the City of Baltimore, City of
Philadelphia Board of Pensions and Retirement,
and Plymouth County Retirement Association, and
Lead Counsel for the Class*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE FIBROGEN, INC., SECURITIES LITIGATION | Case No. 3:21-cv-02623-EMC<br><br>**<u>CLASS ACTION</u>**<br><br>[PROPOSED] ORDER GRANTING LEAD PLAINTIFFS' MOTION FOR SPOLIATION SANCTIONS<br><br>Hearing Date: July 27, 2023<br>Time: 1:30 p.m.<br>Courtroom 5-17th Floor<br>Judge: Hon. Edward M. Chen |

PUBLIC REDACTED VERSION

Court-appointed Lead Plaintiffs Employees' Retirement System of the City of Baltimore, City of Philadelphia Board of Pensions and Retirement, and Plymouth County Retirement Association (collectively, "Plaintiffs"), have filed a motion pursuant to Federal Rules of Civil Procedure 37(b), 37(e)(1), and 37(e)(2), Civil Local Rule 37-4, and the Court's inherent authority, for the imposition of sanctions against Defendant K. Peony Yu ("Yu") and Defendant FibroGen, Inc. ("FibroGen" or the "Company") (collectively, "Defendants") for the spoliation of electronically stored information ("ESI") and hard copy documentary evidence.  Having considered the submissions and applicable law, and all pleadings and papers on file in this matter, and good cause appearing therefor, the Court hereby **GRANTS** Plaintiffs' motion.

## I.    BACKGROUND[1]

On or about March 29, 2021—only eight days before Defendants admitted on April 6, 2021 that they had made *post hoc* manipulations to each of the nine Roxadustat safety analyses that the Company had touted to investors for over two years, and just two weeks before this action was filed on April 12, 2021 (*see* ECF No. 1)—Defendant Yu, FibroGen's former Chief Medical Officer who was principally responsible for the Roxadustat NDA, intentionally erased and physically destroyed the hard drive of her FibroGen-issued laptop, thereby permanently destroying all ESI contained therein.

On March 10, 2023 and May 4, 2023, respectively, Defendants Yu and FibroGen provided deposition testimony regarding the spoliated ESI on the laptop. ███████

---

[1] The Court adopts and incorporates by reference the factual background outlined in the Declaration of David R. Kaplan in Support of Plaintiffs' Motion for Spoliation Sanctions (the "Declaration"), and merely recites and summarizes certain facts which are relevant to this decision. All references to "Decl. ¶_" are to paragraphs in Plaintiffs' Declaration, and all references to "AC ¶_" are to paragraphs in Plaintiffs' Corrected Consolidated Class Action Complaint (the "Amended Complaint," ECF No. 97).  All capitalized terms not otherwise defined herein have the same meanings ascribed in the Declaration or Amended Complaint.



As a result of Defendants' spoliation of ESI on the hard drive of Yu's FibroGen-issued laptop, ████████████████████████████████████████████████████████ ████████████████████████, Plaintiffs have requested sanctions against Defendants Yu and FibroGen pursuant to Rule 37(e)(2) in the form of a default judgment, or alternatively, for a mandatory adverse inference instruction to be given to the jury should this case proceed to trial, and to be applied by the Court coincidently with any future summary judgment or *Daubert* motions.[2]

---

[2] The Court notes that to the extent Rule 37(e) is inapplicable to the spoliation of the documentary evidence, it is well-settled that district courts have the "inherent authority" to "sanction a party who has despoiled evidence," which includes "[d]ismissal [as] an available sanction." *See, e.g., Leon v. IDX Systems Corp.*, 464 F.3d 951, 958 (9th Cir. 2006).

Considering the intentional and egregious nature of the spoliation in this case of evidence that was obviously highly relevant to Plaintiffs' claims, the incurable prejudice to Plaintiffs as a result, and Defendants' intentional bad faith conduct and lack of transparency with respect to Plaintiffs' investigation and discovery concerning these issues—which conduct directly contravenes this Court's rules and the ESI order entered in this case—the Court has determined that terminating sanctions pursuant to Rule 37(e)(2) are warranted, and makes the following findings.

## II.    DISCUSSION

### A.    Legal Standard

This Court is empowered by Rule 37 of the Federal Rules of Civil Procedure "[t]o impose a wide range of sanctions when a party fails to comply with the rules of discovery or with court orders enforcing those rules," such as when "[ESI] that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery." *Deerpoint Group, Inc. v. Agrigenix, LLC*, 2022 WL 16551632, at *10 (E.D. Cal. Oct. 31, 2022); Fed. R. Civ. P. 37(e).

Rule 37(e) provides that spoliation of ESI has occurred where: "(1) the ESI should have been preserved in the anticipation or conduct of litigation; (2) the ESI is lost because a party failed to take reasonable steps to preserve it; and (3) the ESI cannot be restored or replaced through additional discovery." *Facebook, Inc. v. OnlineNIC Inc.*, 2022 WL 2289067, at *6 (N.D. Cal. Mar. 28, 2022). Courts in this Circuit apply a "preponderance of the evidence" standard to spoliation motions. *See, e.g., Apple Inc. v. Samsung Elecs Co., Ltd.*, 888 F. Supp. 2d 976, 989 (N.D. Cal. 2012). Once a Court has determined that spoliation of evidence has occurred, Rule 37(e) provides two levels of sanctions against an offending party: (1) where the moving party has suffered prejudice from the loss of ESI, courts may impose "measures no greater than necessary to cure the prejudice" pursuant to Rule 37(e)(1); or (2) where the offending party "acted with intent to deprive another party of the information's use in the litigation," then "the court may presume (or instruct the jury to presume) that the lost information was unfavorable to the offending party,

---

[PROPOSED] ORDER GRANTING LEAD PLAINTIFFS'
MOTION FOR SPOLIATION SANCTIONS CASE NO. 3:21-cv-02623-EMC                3

dismiss the action, or enter a default judgment" pursuant to Rule 37(e)(2).  *hiQ Labs, Inc. v. LinkedIn Corporation*, 2022 WL 18399982, at \*18 (N.D. Cal. Nov. 4, 2022).

###### B.    Spoliation Of The ESI

###### i.    Defendants Had A Duty To Preserve The ESI

"As Rule 37 indicates, the duty to preserve relevant evidence is an unqualified obligation in all cases." *In re Google Play Store Antitrust Litig.,* 2023 WL 2673109, at \*8 (N.D. Cal. Mar. 28, 2023).  "The duty to preserve material evidence arises not only during litigation but also extends to that period before the litigation when a party reasonably should know that the evidence may be relevant to anticipated litigation." *Colonies Partners, L.P. v. County of San Bernardino*, 2020 WL 1496444, at \*6 (C.D. Cal. Feb. 27, 2020).  Litigation need not be "imminent, or probable without significant contingencies" in order to be reasonably foreseeable for purposes of creating a duty to preserve evidence. *Burris v. JPMorgan Chase & Co.*, 566 F. Supp. 3d 995, 1013 (D. Ariz 2021).  Rather, "[a]s soon as a potential claim is identified, a litigant is under a duty to preserve evidence which it knows or reasonably should know is relevant to the action." *Zucchella v. Olympusat, Inc.*, 2021 WL 8317028, at \*3 (C.D. Cal. Dec. 20, 2021); *Apple*, 888 F. Supp. 2d at 991 (same).  "This is an objective standard, asking not whether the party in fact reasonably foresaw litigation, but whether a reasonable party in the same factual circumstances would have reasonably foreseen litigation." *Burris*, 566 F. Supp. 3d at 1013.

Defendants Yu and FibroGen both had a duty to preserve the ESI on the hard drive of Yu's FibroGen-issued laptop, which was undoubtedly relevant to the claims in this action.[3]  By no later than March 1, 2021, and certainly by March 29, 2021—the date when Yu destroyed the ESI on the

---

[3] The highly relevant nature of the spoliated ESI is apparent from ███████████ ███████████████████████████████████████████████████ ███████████████████████████████████████████████████ ███████████████████████████████████████████████████ ██████████████████████████████ and (iii) Yu's critical role as CMO of the Company directly overseeing the Company's analyses of the Roxadustat Phase 3 trial data and its preparation of the Roxadustat NDA.

hard drive—litigation was clearly reasonably foreseeable. *See Apple Inc. v. Samsung Elecs. Co., Ltd.*, 888 F. Supp. 2d at 991 (courts in the Ninth Circuit generally agree that "[a]s soon as a potential claim is identified, a litigant is under a duty to preserve evidence which it knows or reasonably should know is relevant to the action"). At that time, myriad facts indicate that both Defendant Yu—a highly seasoned executive and FibroGen's former CMO who regularly spoke to investors about Roxadustat during earnings and conference calls—and FibroGen knew or should have known that this litigation was likely to be filed, including but not limited to: ███████

██████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████ (ii) FibroGen's March 1, 2021 unexpected announcement of the FDA AdCom for Roxadustat, causing a 32% stock price drop and wide analyst commentary questioning the integrity of the Roxadustat data and the drug's FDA approval prospects (Decl. ¶9); and ████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

████████████████████████ [4] *See, e.g., Glaukos Corp. v. Ivantis, Inc.*, 2020 WL 10501850, at *4 (C.D. Cal. June 17, 2020) (that a defendant "consulted and retained [] litigation counsel to obtain legal advice regarding potential liability exposure" "reveal[s] that it apprehended it would be sued") (collecting cases), *reconsideration denied*, 2020 WL 5914552 (C.D. Cal. July 30, 2020).

██████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

---

[4] Defendant Yu was an employee of the Company during each of these events. Yu served as FibroGen's CMO until December 2020; remained with the Company as an Executive Advisor to the CEO until March 15, 2021; then transitioned to a consultant until August 24, 2021. AC ¶23. As an employee and "key player" in this action, Yu was under the same duty of preservation as FibroGen. *See, e.g., Apple Inc. v. Samsung Elecs. Co., Ltd.*, 881 F. Supp. 2d 1132, 1137 (N.D. Cal. 2012) ("[T]he duty to preserve extends to those employees likely to have relevant information-the 'key players' in the case").

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████ *Doubleline Capital LP v. Odebrecht Finance, Ltd.*, 2021 WL 1191527, at *6 (S.D.N.Y. Mar. 30, 2021) ("[c]ertain types of incidents tend to trigger litigation").

Defendants further manifested their awareness of the reasonable foreseeability of this litigation and their obligation to preserve potentially relevant evidence throughout the month of March 2021, ████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████

████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████ Decl. ¶¶14-15.  There is no credible argument that Defendants were unaware of potential claims for securities violations at this time, or that they failed to apprehend their obligation to preserve potentially relevant evidence. *See, e.g., Apple*, 888 F. Supp. 2d at 991 ("presentation" that "clearly identifie[d] specific potential [] claims" "would put a reasonable party on notice of a likelihood of litigation"); *Colonies*, 2020 WL 1496444, at *7-8 ("[i]gnorance of th[e] obligation of preservation, especially from sophisticated parties who have the assistance of counsel" was "not persuasive").

### ii.    Defendants Failed To Take Reasonable Steps To Preserve The ESI

Defendants Yu and FibroGen failed to take reasonable steps to preserve the ESI on Yu's FibroGen-issued laptop. Yu expressly admitted that she intentionally destroyed the ESI on the laptop's hard drive (Decl. ¶89), which is "the opposite of taking reasonable steps to preserve ESI." *GN Netcom, Inc. v. Plantronics, Inc.*, 2016 WL 3792833, at *6 (D. Del. July 12, 2016).

FibroGen also failed to take reasonable steps to preserve the ESI on the laptop. FibroGen had a "duty to preserve the data [on Yu's company-issued laptop] before it left [FibroGen's] custody and control," and "should have taken steps, but did not, to ensure that the laptop ESI was preserved, either on the cloud or otherwise, before allowing [it] to be taken [] away [by Yu]." *Deerpoint*, 2022 WL 16551632, at *17.

Moreover, at no point between Yu's last day of employment at FibroGen on March 15, 2021 and March 29, 2021, when Yu destroyed the laptop's hard drive, did the Company ever inform Yu—the former CMO who was directly in charge of ▮▮▮▮▮▮▮▮▮▮▮—of her document preservation obligations for purposes of potential litigation. ▮▮▮▮

[PROPOSED] ORDER GRANTING LEAD PLAINTIFFS'
MOTION FOR SPOLIATION SANCTIONS CASE NO. 3:21-cv-02623-EMC                    7

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████  Hence, "[FibroGen] affirmatively failed to preserve."  *Id*., 2022 WL 16551632, at *17.

### iii.    The Spoliated ESI Cannot Be Restored Or Replaced

The spoliated ESI on the laptop—which was Yu's sole work computer during the Class Period—was relevant to the claims in this action and "w[as] destroyed and no longer exists," such that it cannot be restored or replaced through additional discovery (Decl. ¶¶17-19).  *Facebook*, 2022 WL 2289067, at *7 ("[w]here recovery of ESI is minimal and the spoliation vast, the third factor is satisfied").

Nor are Defendants entitled to a presumption that the evidence on the laptop was not relevant or preserved elsewhere.  *Waymo LLC v. Uber Tech., Inc.*, 2018 WL 646701, at *17 (N.D. Cal. Jan. 30, 2018) ("Having frustrated its adversary's attempts to mine these facts for damning evidence, Uber cannot now evade spoliation by speculating that all of the lost information was benign."); *Burris*, 566 F. Supp. 3d at 1014 (no "presumption of irrelevance as to the destroyed documents").  To the contrary, Defendants bear the burden to show that the evidence was not relevant or properly preserved—a burden they have failed to meet in light of Yu's intentional destruction of the laptop's hard drive ████████████████████████████████████

████████████████████████████████████████████████

████████████████  *E.E.O.C. v. Fry's Electronics, Inc.*, 874 F. Supp. 2d 1042, 1046 (W.D. Wash. 2012) (where defendants could not provide evidence that destroyed documents were "mirrored or otherwise transferred . . . to another medium for preservation," the defendant was "not entitled to a presumption that the documents on the hard drives were irrelevant or that all relevant documents were saved in another format").

### C.    Spoliation Of The Documentary Evidence

For similar reasons, Plaintiffs have also shown spoliation of Yu's hard copy documents. Defendants knew, for the same reasons discussed above, that they were under a duty to preserve evidence that was potentially relevant to this litigation at the time the hard copy documents were intentionally destroyed. ██████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████ Decl. ¶¶47-50.

It is also clear that FibroGen and Yu failed to take reasonable steps to properly preserve this evidence. ██████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████ However, even if "the relevance of [the destroyed] documents cannot be clearly ascertained because the documents no longer exist," Defendants "can hardly assert any presumption of irrelevance as to the destroyed documents." *Leon*, 464 F.3d at 959.

Finally, this evidence is permanently lost and irreplaceable. ████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████

## III.    SANCTIONS

In light of the highly relevant and irreplaceable nature of the spoliated ESI and documentary evidence, the significant prejudice suffered by Plaintiffs from Defendants' intentional destruction of these materials, and Defendants' bad faith conduct in evading and obfuscating Plaintiffs' investigation of the spoliation, the Court finds that terminating sanctions against both Defendants FibroGen and Yu under Rule 37(e)(2) and the Court's inherent authority are appropriate.

In making this finding, the Court notes that before it may issue harsher sanctions under Rule 37(e)(2), "it must find that 'the party acted with the intent to deprive another party of the information's use in the litigation.'" *Facebook*, 2022 WL 2289067, at *8. As it relates to the destruction of documentary evidence, the Court must similarly find "willfulness, fault, or bad faith" in order "for dismissal to be proper" under the Court's inherent authority. *Leon*, 464 F.3d at 958.

After reviewing the parties' submissions, and "from a review of the evidence on the whole, [Plaintiffs] ha[ve] carried [their] burden to show that [Defendants] acted with the intent to deprive [Plaintiffs] of access to the ESI for this litigation. [Yu] spoliated the [FibroGen]-issued laptop[] after [s]he [departed the Company] but before returning [it]," and "reformatted the [FibroGen]-issued [laptop] making it impossible for [Plaintiffs] to recover any data from that device." *WeRide Corp. v. Kun Huang*, 2020 WL 1967209, at *15 (N.D. Cal. Apr. 24, 2020). "The Court finds that all of [the relevant facts collectively] support[] the finding that [Yu] acted with intent." *Id*. The intent of Defendant Yu to deprive Plaintiffs of the use of the ESI in this litigation is imputed to FibroGen. *See Colonies*, 2020 WL 1496444, at *10 ("an employee's misconduct with regard to spoliation can be imputed to an employer"); *WeRide*, 2020 WL 1967209, at *13 (same). ███████

██████████████████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████████████████████

Moreover, while "[t]here is no requirement that the court find prejudice to the non-spoliating party under Rule 37(e)(2)," Plaintiffs have suffered substantial and incurable prejudice by the loss of the ESI and documentary evidence here, which weighs strongly in favor of a finding that lesser sanctions would not suffice. *WeRide*, 2020 WL 1967209, at *9, 16. ████████

██████████████████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████ *See, e.g.,* Decl. ¶19.

Considering Defendant Yu's high-ranking position in the Company and her primary role in

developing Roxadustat, ████████████, and the alleged securities violations in this action, it is hard to imagine evidence that could be more critical or relevant to a party's claim than the ESI that was destroyed. The same can easily be said for the spoliated hard copy documents, the relevance of which is "obvious" and cannot be rebutted by Defendants, "because the documents no longer exist." *Leon*, 464 F.3d at 959.

Lesser sanctions cannot cure the prejudice caused by the loss of this irreplaceable evidence, which has likely significantly hindered Plaintiffs' ability to sufficiently address Defendants' defenses at trial or properly impeach Yu's sworn testimony about whether and how the alleged *post hoc* manipulations occurred. *Burris*, 566 F. Supp. 3d at 1015-16 ("This backdrop raises a strong inference that the ESI destroyed by Plaintiff was not irrelevant, personal information but information that was devastating to . . . his claims in this action."); *Facebook*, 2022 WL 2289067, at *11 ("OnlineNIC and ID Shield claim they have mountains of exculpatory evidence, yet for all Plaintiffs or the Court may ever know, those 'mountains' may be dwarfed by the mountains of damning evidence Defendants deleted.").

Additionally, the Court has considered the totality of the record in reaching its conclusion that Defendants' conduct was willful and in bad faith and thus warrants terminating sanctions—including the overtly intentional nature of the destruction of both the ESI and hard copy documents, the dubious and conflicting narratives provided by Defendants throughout the course of Plaintiffs' investigation about how and when Yu's laptop's hard drive was erased and destroyed, and Defendants' lack of transparency or affirmative disclosure of the circumstances surrounding the spoliation of which they were unquestionably aware. In fact, it was not until December 6, 2022—over three months after the parties conducted their September 1, 2022 Rule 26(f) conference, and two months after the Court entered the parties' ESI Stipulation (ECF No. 145) expressly requiring them to "promptly disclose" any preservation issues—that Plaintiffs even began to learn the circumstances of the spoliation. That day, Defendant Yu's counsel sent a belated letter responding to Plaintiffs' repeated inquiries about preservation by finally notifying Plaintiffs for the first time that Yu had "shipped her FibroGen issued laptop back to the company in connection with her retirement" and "had a vendor erase the laptop's hard drive to avoid any possible disclosure of

confidential information."  Decl. ¶59.

This was followed by counsel for FibroGen and counsel for Yu—despite their apparent cooperation throughout this matter—telling conflicting stories to Plaintiffs about what, exactly, had occurred (and when) with respect to the erasure and destruction of the laptop.[5]  Decl. ¶67-72.

While issuing a default judgment is an extraordinary remedy, it is "well settled" in the Ninth Circuit that "dismissal is warranted where, as here, a party has engaged deliberately in deceptive practices that undermine the integrity of judicial proceedings." *Anheuser-Busch, Inc. v. Natural Beverage Distributors*, 69 F.3d 337, 348 (9th Cir. 1995); *Valley Engineers Inc. v. Electric Engineering Co.*, 158 F.3d 1051, 1058 (9th Cir. 1998) (terminating sanctions appropriate where "there can never be assurance of proceeding on the true facts").  Defendants' prolonged bad faith conduct here rises to this level.  Defendants' months-long silence about the spoliated ESI, and

[5] [REDACTED]

obfuscation subsequent thereto—when they were unequivocally under a duty of disclosure—along with the additional factors discussed above, weigh heavily in favor of terminating sanctions as they are strongly indicative of Defendants' bad faith and intent to deprive Plaintiffs of the use of highly relevant evidence in this litigation. *See*, *e.g.*, *Leon*, 464 F.3d at 960 (jury instructions not enough to cure prejudice where party "intentionally wiped" hard drive); *WeRide*, 2020 WL 1967209, at *16 (entry of default judgment appropriate against former executive who "destroyed ESI on three [] devices before the litigation began" and had thus "prejudiced [plaintiff's] ability to raise its affirmative case"); *Burris*, 566 F. Supp. 3d at 1017-19 (default judgment appropriate where party purged email accounts and devices because "sheer scope" of spoliating party's "dishonesty and spoliation efforts" made it "impossible to have confidence that [the deprived party] will ever have access to the true facts"); *Facebook*, 2022 WL 2289067, at *8 ("no jury instruction, monetary sanction, or exclusion of evidence will right the wrong occasioned" by "extensive spoliation" of "deleted or withheld ESI [that] likely could have been probative of [moving party's] claims").

Accordingly, the Court finds that Defendants "spoliated critical evidence; that loss has prejudiced [Plaintiffs'] ability to raise its affirmative case against [Defendants]," and "[t]hus, specific jury instructions or an exclusion of evidence offered by [Defendants] cannot cure the prejudice." *WeRide*, 2020 WL 1967209, at *16. The Court therefore concludes that "[t]erminating sanctions against [Defendants] are [] appropriate under Rule 37(e) for [the] destruction of ESI on [Yu's FibroGen]-issued laptop[]." *WeRide*, 2020 WL 1967209, at *9, 15.[6] The Court hereby orders that a default judgment be entered against Defendants FibroGen and Yu.

**IT IS SO ORDERED.**

Dated: _____, 2023

_____
HON. EDWARD M. CHEN
UNITED STATES DISTRICT JUDGE

---

[6] For the same reasons, and those outlined in II.C, *supra*, the Court finds that terminating sanctions are also warranted for Defendants' willful destruction of documentary evidence under the Court's inherent authority.