# EXHIBIT 32

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

IN RE FIBROGEN, INC.,                    ) Case No.

SECURITIES LITIGATION.                   ) 3:21-cv-02623-EMC

                                         )

_____)

VIRTUAL VIDEOCONFERENCE VIDEO-RECORDED DEPOSITION OF

DAVID RANDALL

Thursday, April 13, 2023

Remotely Testifying from Baltimore, Maryland

Stenographically Reported By:

Hanna Kim, CLR, CSR No. 13083

Job No. 5839238

PAGES 1 - 222

Page 1

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA


IN RE FIBROGEN, INC.,                    ) Case No.

SECURITIES LITIGATION.                   ) 3:21-cv-02623-EMC

                                         )

_____ )


          Virtual videoconference video-recorded

deposition of DAVID RANDALL, remotely testifying

from Baltimore, Maryland, on Thursday, April 13,

2023, pursuant to the stipulations of counsel

thereof, before Hanna Kim, CLR, Certified Shorthand

Reporter, No. 13083.

Veritext Legal Solutions
866 299-5127

REMOTE VIDEOCONFERENCE APPEARANCES OF COUNSEL:

For Lead Plaintiffs and Plymouth County:

     SAXENA WHITE P.A.

     BY:  LESTER R. HOOKER, ESQ.

     BY:  EMILY BISHOP, ESQ.

     7777 Glades Road, Suite 300

     Boca Raton, Florida 33434

     561.206.6708

     lhooker@saxenawhite.com

     ebishop@saxenawhite.com


For Defendants FibroGen, Inc., Enrique Conterno,

James Schoeneck, Mark Eisner, and Pat Conterno:

     COOLEY LLP

     BY:  AMIE L. SIMMONS, ESQ.

     BY:  ZANETA J. KIM, ESQ.

     BY:  TIJANA BRIEN, ESQ.

     BY:  REGI VALDEZ, ESQ.

     BY:  KIMBERLEY BISHOP, ESQ.

     3175 Hanover Street

     Palo Alto, California 94304-1130

     650.843.5000

     asimmons@cooley.com

REMOTE APPEARANCES OF COUNSEL:  (CONTINUED)


For Defendant Kin-Hung Peony Yu, M.D.

          PILLSBURY WINTHROP SHAW PITTMAN LLP

          BY:  ELIZABETH CHEEVER, ESQ.

          Four Embarcadero Center, 22nd Floor

          San Francisco, California 94111-5998

          415.983.1000

          elizabeth.cheever@pillsburylaw.com



Also Present:

          JEFREE ANDERSON, VIDEOGRAPHER

Page  4

INDEX OF EXAMINATION


WITNESS:  DAVID RANDALL

EXAMINATION                                                          PAGE

     BY MS. SIMMONS:                                              11

Veritext Legal Solutions
866 299-5127

investment managers?

A.   Yes.

Q.   Okay.   Let's turn to Baltimore Employees' trading history in FibroGen securities.

MS. SIMMONS:   Zaneta, can we please mark   12:44:24 our Tab 1b.

BY MS. SIMMONS:

Q.   While this is getting pulled up, this is a declaration that was submitted in January 27th, 2023.   12:44:39

Let me know when you have that up.

(Randall Deposition Exhibit 41 was marked electronically.)

MS. SIMMONS:   This should be Exhibit 41.

MS. Z. KIM:   It should be up.   12:45:16

THE WITNESS:   Okay.

BY MS. SIMMONS:

Q.   Okay.   Great.

And so, this document, "DECLARATION OF DAVID RANDALL IN SUPPORT OF LEAD PLAINTIFFS' MOTION   12:45:26 FOR CLASS CERTIFICATION" filed with the court, January 27, 2023.

Do you recognize this document?

A.   I do.

Q.   Okay.   And so, do you see on the first   12:45:35

Page 42

page of the declaration, under paragraph 4, it states, "During the period from 2-" -- "December 20th, 2018, through July 15th, 2021, inclusive (the 'Class Period'), Baltimore Employees purchased over 14,000 shares of FibroGen, Inc. common stock"? [As read]

Do you see that?

A.    I do.

Q.    And do you know approximate -- the number of shares that were purchased during the class period?

A.    I mean, are you wanting me to read this per-batim [sic], it's 14,000 shares.  I'm not sure if that's your question.

Q.    No, I -- my question, it says "over 14,000 shares."  I was asking if you knew the specific number of shares?

A.    No, not offhand.

Q.    It's not a memory test, so we can -- it's okay if you don't.  Okay.

Do you know if there were any stock sales of FibroGen during the class period?

A.    During the class period?

THE COURT REPORTER:  Sir, if you could keep your hand away from your face, please.

Page 43

that list of stocks, they wouldn't purchase based off of those categories; correct?

A.   They are not on the list.

Q.   Yeah.  I guessed as much, but I thought I would check.                                            13:10:21

Okay.  And generally, what types of documents did Baltimore Employees maintain for these trades in FibroGen securities between December 2018 and July 2021?

A.   Please -- I'm not quite following your            13:10:35 question.

Q.   Sure.

What -- what types of documents did Baltimore Employees generally keep with respect to, like, FibroGen's transact- -- the transactions in       13:10:47 FibroGen's stock during the class period?

A.   We didn't keep any documents.

Q.   Is that because all the documents were with your investment manager or the custodian bank?

A.   That is correct.                                  13:11:04

Q.   Okay.

Okay.  I'm going to switch gears a little bit and talk about the current lawsuit.

So you understand Baltimore Employees is a plaintiff in this action; right?                        13:11:27

Page 59

A.    We are one of three plaintiffs, Lead Plaintiffs, that is correct.

Q.    And who are the defendants in this action?

A.    The name -- it's like a test almost.  I'm aware of -- of the CEO, Conterno.  I'm -- I'm -- I am really probably messing their names up.  I'm bad at names.

And one that really stuck out was the medical -- chief medical officer, Yu.  And her replacement.

And there were [sic] an acting -- I'm sorry, yeah, an acting CEO at the time of that investment period.  Forgive me for not knowing the names off the top of my head, but those two kind of stuck out.

Q.    Okay.  And has Baltimore Employees ever had any direct communications with any of the defendants in this action?

A.    No.

Q.    And is -- are you aware that Baltimore Employees filed a motion on June 11th, 2021, to represent a put- -- putative class of FibroGen shareholders as a Lead Plaintiff?

A.    I am.

Q.    And your counsel today is Saxena White?

13:11:44

13:12:07

13:12:24

13:12:33

13:12:52

Page 60

THE WITNESS:  China and Europe.

BY MS. SIMMONS:

Q.   Okay.  And do you think that all those countries approved a drug that they thought was unsafe?                                    17:41:02

MR. HOOKER:  Objection.  Calls for speculation.  Argumentative.

THE WITNESS:  I don't know.

BY MS. SIMMONS:

Q.   Okay.  And switching gears here, so we    17:41:11 talked a little bit about -- at the very beginning, about the documents re- -- you reviewed before the case was filed at the beginning of your engagement with this litigation.

So did you read the Complaint before it    17:41:26 was filed?

A.   It was furnished to me, yes, prior to it being filed.

Q.   Did you read the whole document?

A.   Yes, I did.                              17:41:37

Q.   Did you understand the allegations in the Complaint?

A.   Understand?  Yes, I understood.  However, technically, when it's the scientific aspect of it, that part, because I'm not a scientist or a doctor,    17:41:58

Page 214

of course I have to rely on the experts, which is my attorneys and whoever else.

THE COURT REPORTER:   And what was the last word?

THE WITNESS:   And whoever else.                    17:42:12

BY MS. SIMMONS:

Q.   And what did you understand the allegations to be in the Complaint?

A.   Oh.   That FibroGen with -- had introduced this new drug for patients with anemia and kidney       17:42:31 disease.   And it had touted or advertised, for lack of a better word, this better drug than the one -- this injectable drug that those patients were using at the time.   And that it would relieve those patients of those negative side effects.   And that      17:43:00 its company's value was increased based on that advertising.

And when it came time for approval of the FDA, there was discrepancies in the testing or the results of the testing.   It was just -- just some      17:43:35 discrepancies there, which caused the stock's value -- the value of the company, and the stock price to plummet because it was not approved by FDA. And that's my understanding of the case, and that's why we're here today.                               17:43:58

Page 215

Q.   Okay.   And did you understand that the Complaint accuses multiple individuals of committing securities fraud and lying to investors?

A.   Oh, yes.   Understood that.

Q.   Okay.                                          17:44:14

MS. SIMMONS:  Can we take a brief break and go off the record?

MR. HOOKER:  Sure.

THE VIDEOGRAPHER:  Going off the record. The time is 5:44 p.m.                              17:44:21

(Short recess taken.)

THE VIDEOGRAPHER:  We're back on the record.  The time is 5:48 p.m.

MS. SIMMONS:  There are no further questions from us.  But if Pillsbury or -- you have   17:48:19 the opportunity to ask questions now.  We're done.

MS. CHEEVER:  Nothing further from me. Thanks.

MR. HOOKER:  Thank you.  There was no questions from the plaintiffs.                          17:48:34

MS. SIMMONS:  Okay.

THE VIDEOGRAPHER:  Is there anything else you'd like to add before I take us off the record?

MS. SIMMONS:  Not on our end, no.

MR. HOOKER:  Not on our end.                17:48:48

Page 216