# EXHIBIT 34

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

IN RE FIBROGEN, INC.,            ) Case No.
SECURITIES LITIGATION.           ) 3:21-cv-02623-EMC
                                 )
                                 )
                                 )
                                 )
                                 )
                                 )
                                 )
                                 )
                                 )
_____  )


VIRTUAL VIDEOCONFERENCE VIDEO-RECORDED DEPOSITION OF

DAVID JUDE SULLIVAN

(30(b)(6) of Plymouth County Retirement Association)


Tuesday, April 11, 2023

Remotely Testifying from Boston, Massachusetts


Stenographically Reported By:

Hanna Kim, CLR, CSR No. 13083

Job No. 5839257

Page 1

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

IN RE FIBROGEN, INC.,                    ) Case No.
SECURITIES LITIGATION.                   ) 3:21-cv-02623-EMC
                                         )
                                         )
                                         )
                                         )
                                         )
                                         )
                                         )
                                         )
                                         )
_____ )

          Virtual videoconference video-recorded
deposition of DAVID JUDE SULLIVAN, remotely testifying
from Boston, Massachusetts, on Tuesday, April 11,
2023, pursuant to the stipulations of counsel
thereof, before Hanna Kim, CLR, Certified Shorthand
Reporter, No. 13083.

Page 2

REMOTE VIDEOCONFERENCE APPEARANCES OF COUNSEL:

For Lead Plaintiffs and Plymouth County:

SAXENA WHITE P.A.

BY:  LESTER R. HOOKER, ESQ.

BY:  SCOTT KOREN, ESQ.

7777 Glades Road, Suite 300

Boca Raton, Florida 33434

561.206.6708

lhooker@saxenawhite.com

skoren@saxenawhite.com

For Defendants FibroGen, Inc., Enrique Conterno,

James Schoeneck, Mark Eisner, and Pat Conterno:

COOLEY LLP

BY:  PATRICK GIBBS, ESQ.

BY:  AMIE L. SIMMONS, ESQ.

BY:  TIJANA BRIEN, ESQ.

BY:  ZANETA J. KIM, ESQ.

3175 Hanover Street

Palo Alto, California 94304-1130

650.843.5000

pgibbs@cooley.com

Page 3

REMOTE APPEARANCES OF COUNSEL:  (CONTINUED)


For Defendant Kin-Hung Peony Yu, M.D.

PILLSBURY WINTHROP SHAW PITTMAN LLP

BY:  ELIZABETH CHEEVER, ESQ.

Four Embarcadero Center, 22nd Floor

San Francisco, California 94111-5998

415.983.1000

elizabeth.cheever@pillsburylaw.com



Also Present:

CASSIA LEET, VIDEOGRAPHER

Page 4

INDEX OF EXAMINATION


WITNESS:  DAVID JUDE SULLIVAN

EXAMINATION                                                    PAGE

    BY MR. GIBBS:                                          12

Veritext Legal Solutions
866 299-5127

A.   Split responsibilities.

Q.   Is -- is there a -- a formal allocation of responsibilities between Plymouth County and the other Lead Plaintiffs in this case?

A.   Not formal.                                            12:44:37

Q.   How does that work then?

A.   We got together on a call and -- and would decide to, you know, share responsibilities.

Q.   Do you recall when Plymouth County first moved to be appointed as Lead Plaintiff?          12:45:01

A.   I do.

Q.   When was that?

A.   June of 2021.

Q.   Do you recall the date?

A.   I do not.                                              12:45:13

Q.   All right.

      And you understand that as a Plaintiff in this action, Plymouth is now suing each of the Defendants in this case; correct?

A.   Correct.                                               12:45:27

Q.   Who are the Defendants in this case?

A.   Well, FibroGen.  The -- there was an interim CEO, James Schoeneck.  There was a CEO at the time, Enrique -- and, again, these are names I'm -- the -- the two names on this are pretty      12:45:46

Page 42

close.  I'm going to try and get them the best I can recall -- Conterio [phonetic].

There was two medical examiners, Peony Yu, Mark Eisner, who succeeded her.

And then the CFO, it was Conterio -- I think -- I forget his first name right now -- Mark, but it was sim- -- very similar to the, you know, second CEO, Conterio -- Con- -- Conterio.  It was something like that, some- -- I forget exactly.

Q.    Okay.  Any others you can recall?

A.    Those are the five that I remember.

Q.    And what's your understanding of the claims that Plymouth County is asserting against those Defendants?

A.    That FibroGen, you know, misled the investors.

Q.    Any more detail than that?

A.    Of -- you know, they -- FibroGen had a drug, Roxa, that was, you know, to treat anemia and, you know, people with, you know, kidney disease.

And they were trying to bring to market, you know, a new drug that would compete with an existing drug that was deemed risky, you know.  And they would hopefully, you know try and come up with this product that was less risky and -- and be more

12:46:03

12:46:22

12:46:37

12:46:59

12:47:16

Page 43

common- -- commonly used in the market.

Q.    Anything else you recall about the nature of the claims?

A.    That, again, there were repeated false and misleading statements about, you know, the safety    12:47:35 of -- of the drug.

Q.    Okay.    Any more detail that you recall off the top of your head?

A.    Just there were a series of other misleading statements that are part of the    12:47:50 Complaint.

Q.    All right.

I want to talk about some of the individual stock purchases and sales, and I -- I understand that the decision-making is delegated.    12:48:09

And so I -- I think I know what you're going to tell me about them, but I -- I need to have the record.

So if you'll bear with me, I want to mark as the next exhibit -- it's our Tab 16.  It's a --    12:48:21 it's a report from State Street.

(Sullivan Deposition Exhibit 26 was marked electronically.)

BY MR. GIBBS:

Q.    Let me know when it's up in front of you,    12:48:43

Page 44

litigation that counsel were handling on behalf of Plymouth County; correct?

A.   Correct.

Q.   And -- and for some time during your tenure as executive director, Saxena White was prosecuting this case against FibroGen and its executives; correct?

13:48:03

A.   Correct.

Q.   And, in fact, under your leadership as executive director, Plymouth County applied to and was appointed as one of the Lead Plaintiffs in this case against FibroGen and its executives; correct?

13:48:19

A.   Correct.

Q.   Can you -- can you tell me briefly what you understood Plymouth County's obligations to be as the Lead Plaintiff?

13:48:31

A.   It's -- it's to act as a fiduciary in the best interest of the class.

Q.   And -- and what would that entail on a -- on a more sort of granular day-to-day level?

13:48:48

A.   Just to, you know, monitor the case, work together with the other, you know, code -- Co-Lead Plaintiffs and, you know, stay involved in the case.

Q.   And during your time as executive director at Plymouth County, who among the executive staff at

13:49:07

Page 80

Plymouth County had primary responsibility for overseeing the activities of Saxena White in prosecuting this case against FibroGen and its executives?

A.    It would be the executive director.    13:49:20

Q.    So you, while you were in that job?

A.    Correct.

Q.    Okay.  And -- and so in that capacity overseeing the work of Saxena White as counsel to Plymouth County and as a -- a key executive of one    13:49:36 of the Lead Plaintiffs, you would have understood your obligations to include being generally familiar with the claims that Plymouth County was asserting on behalf of the putative class; correct?

A.    Generally familiar, yes.    13:49:55

Q.    So I want to talk about a little bit about those claims.

And if -- if you want to have Exhibit 28 open in front of you, that's fine.  I -- I may occasionally refer to it, and I understand it's a --    13:50:09 it's a lengthy document.  And if I ask you about allegations made in the case or claims that Plymouth County is making in the case, I want you to feel free to refer to the document, if -- if that's helpful to you.    13:50:22

Page 81