COOLEY LLP
PATRICK E. GIBBS (183174)
(pgibbs@cooley.com)
TIJANA M. BRIEN (286590)
(tbrien@cooley.com)
BRETT H. DE JARNETTE (292919)
(bdejarnette@cooley.com)
ZANETA J. KIM (317844)
(zkim@cooley.com)
AMIE L. SIMMONS (336356)
(asimmons@cooley.com)
3175 Hanover Street
Palo Alto, California 94304-1130
Telephone:     +1 650 843 5000
Facsimile:      +1 650 849 7400

CAITLIN MUNLEY (*Pro Hac Vice*)
(cmunley@cooley.com)
ALEXANDRA EBER (*Pro Hac Vice*)
(aeber@cooley.com)
1299 Pennsylvania Ave., N.W., Suite 700
Washington, DC 20004-2400
Telephone:     +1 202 842 7800
Facsimile:      +1 202 842 7899

Attorneys for Defendants
FibroGen, Inc., Enrique Conterno, James Schoeneck,
Mark Eisner, and Pat Cotroneo

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE FIBROGEN, INC., SECURITIES LITIGATION | Case No. 3:21-cv-02623-EMC<br><br>**CLASS ACTION**<br><br>**DECLARATION OF PATRICK GIBBS IN SUPPORT OF FIBROGEN'S OPPOSITION TO LEAD PLAINTIFFS' MOTION FOR SPOLIATION SANCTIONS**<br><br>Date:   August 31, 2023<br>Time: 1:30 p.m.<br>Dept.: 5 – 17th Floor<br>Judge: Hon. Edward M. Chen |

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

GIBBS DECL. ISO OPP TO MTN FOR
SPOLIATION SANCTIONS
3:21-CV-02623-EMC

I, Patrick Gibbs, declare:

1.    I am a partner at the law firm Cooley LLP, counsel for Defendants FibroGen, Inc. ("FibroGen" or the "Company"), Enrique Conterno, James Schoeneck, Mark Eisner, and Pat Cotroneo (collectively, "Defendants"), in the above-captioned matter.  I submit this declaration in support of FibroGen's Opposition to Lead Plaintiffs' Motion for Spoliation Sanctions.  I have personal knowledge of the facts set forth herein, and if called as a witness, I could and would competently testify to them.

2.    I currently serve as chair of Cooley's Securities Litigation + Enforcement group.  As reflected in my public biography on Cooley's website (see https://www.cooley.com/people/patrick-gibbs/in-depth), I handle a wide range of securities litigation and SEC enforcement matters for clients.  This includes securities class actions and derivative litigation, SEC investigations and enforcement proceedings, internal corporate investigations, as well as antitrust, consumer class actions, and other types of complex business litigation.

3.    I also spend a substantial amount of time counseling Cooley's public company clients on a wide range of disclosure issues outside the litigation context.  Although the volume of this disclosure counseling work varies over time, I do this kind of work for clients on a regular basis.  Sometimes, I counsel corporate clients directly (through direct interaction with the client).  At other times, I counsel these clients indirectly, by consulting with my corporate partners (who, in turn, provide advice directly to the client).  This disclosure counseling work is not featured in my public biography because I do not market myself to external clients for this work.  I do this type of work for existing Cooley clients who are already working with Cooley on corporate securities, disclosure, and corporate governance matters.  In most cases, I am brought into these matters by my corporate partners who are already working with these clients.

4.    The work I did for FibroGen in late February and early March of 2021 is an example of this kind of non-litigation disclosure counseling.  FibroGen is a long-standing Cooley client, and Cooley has been advising FibroGen on corporate matters since 1997.  In fact, multiple securities litigators have advised FibroGen on non-litigation issues since 2014, when FibroGen first became a public company.  In or around February 2021, I was asked by my partners Michael Tenta and

GIBBS DECL. ISO OPP TO MTN FOR
SPOLIATION SANCTIONS
3:21-CV-02623-EMC

John Dwyer, both of whom had advised FibroGen about a wide range of matters for a number of years, to advise FibroGen regarding its disclosure obligations.

5. As background, on or about February 24, 2021, the U.S. Food and Drug Administration (FDA) informed FibroGen that it might call an Advisory Committee meeting. FibroGen and the FDA held a follow up call on March 1, 2021, during which the FDA confirmed it would be holding an AdCom.

6. As these discussions were going on, FibroGen was preparing for the release of its financial results for the year and quarter ending December 31, 2020, as well as its Annual Report on Form 10-K for the year ending December 31, 2020, both of which were scheduled to be filed with the SEC on March 1, 2021.

7. In this context, I provided legal advice to FibroGen concerning its disclosure obligations under the federal securities laws. At that time (in or around February and March 2021), I was not asked to provide (nor did I provide) any litigation-related advice to FibroGen, nor was I asked to help the company prepare for any potential litigation.

8. On March 1, 2021, FibroGen filed Forms 10-K and 8-K with the SEC. The 10-K and 8-K disclosed (among other things) that the Cardiovascular and Renal Drugs Advisory Committee of the FDA would hold an advisory committee (AdCom) meeting to review the New Drug Application (NDA) for roxadustat in the U.S., but that FibroGen had not yet received a confirmed AdCom meeting date from the FDA.

9. Following FibroGen's March 1, 2021 disclosures, the price of FibroGen's stock declined from $50.53 to $34.35, and one shareholder plaintiffs' law firm, Pomerantz LLP, filed a single press release announcing an "investigation" of FibroGen.

10. For well over twenty years, as part of my disclosure counseling practice, I have advised hundreds of clients in connection with a wide range of disclosures, many of which have been followed by stock price declines and/or press releases from shareholder plaintiffs' firms announcing "investigations." Sometimes, these announcements are followed by shareholder lawsuits, but many times, they are not. In other words, I have seen many instances where a shareholder plaintiffs' firm has announced an "investigation" following a stock drop, but then did

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

2

GIBBS DECL. ISO OPP TO MTN FOR
SPOLIATION SANCTIONS
3:21-CV-02623-EMC

not file a lawsuit. I would not expect litigation to be probable based only on a stock drop, followed by a single shareholder plaintiffs' firm announcement.

11. As just one example, based on a review of public records, in the 12 months preceding March 1, 2021, the Pomerantz law firm issued 762 press releases relating to stock price declines for 248 companies. In that same period, the Pomerantz law firm filed complaints against only 83 of those companies (1/3 of the time). No lawsuit was filed against at least 84 of the companies by any law firm, including Pomerantz. As illustrated by this example, it is common for shareholder plaintiffs' firms like Pomerantz to issue "investigation" press releases, but then not to file a lawsuit.

12. In fact, there was no securities litigation filed against FibroGen after the March 1, 2021 disclosure. On the other hand, after the April 6, 2021 press release, a number of shareholder plaintiffs' firms issued press releases announcing "investigations" into FibroGen. Unlike the March 2021 press release, the April 2021 press releases were followed by a number of shareholder class action complaints, which were filed between April 12, 2021 and May 6, 2021.

13. Cooley represented FibroGen and several of the individual defendants in these shareholder class action suits, but I was not part of the Cooley litigation team working on those matters in 2021. In fact, I did not join the Cooley litigation team on this matter until over a year later, in May 2022. I joined the Cooley litigation team at that time for reasons that had nothing to do with the advice I provided FibroGen in February and March of 2021. I joined the Cooley litigation team because one of the Cooley partners working on the matter went on a leave, while another Cooley partner on the case left Cooley to join another law firm.

14. On December 21, 2022, counsel for the parties in this litigation held a meet and confer call regarding Dr. Peony Yu's laptop. Two days before the call, Plaintiffs had emailed FibroGen's counsel requesting significant additional discovery on the topic of preservation, including with respect to Dr. Yu's laptop. During the meet and confer call, I expressed the view that Plaintiffs' request for all discovery related to any preservation efforts was overbroad and as to Dr. Yu's laptop, given the upcoming holidays and office closures, it would take our team some time to respond to that request. During this call, I did not say (nor did I suggest) that Cooley or

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

3

GIBBS DECL. ISO OPP TO MTN FOR
SPOLIATION SANCTIONS
3:21-CV-02623-EMC

FibroGen was unaware that Dr. Yu had returned her laptop with the hard-drive wiped.

I declare under penalty of perjury that the foregoing is true and correct. Executed on this 17th day of July 2023, at Palo Alto, California.


/s/ Patrick E. Gibbs
Patrick E. Gibbs

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

4

GIBBS DECL. ISO OPP TO MTN FOR
SPOLIATION SANCTIONS
3:21-CV-02623-EMC