COOLEY LLP
PATRICK E. GIBBS (183174)
(pgibbs@cooley.com)
TIJANA M. BRIEN (286590)
(tbrien@cooley.com)
BRETT H. DE JARNETTE (292919)
(bdejarnette@cooley.com)
ZANETA J. KIM (317844)
(zkim@cooley.com)
AMIE L. SIMMONS (336356)
(asimmons@cooley.com)
3175 Hanover Street
Palo Alto, California 94304-1130
Telephone:    +1 650 843 5000
Facsimile:    +1 650 849 7400

CAITLIN MUNLEY (*Pro Hac Vice*)
(cmunley@cooley.com)
ALEXANDRA EBER (*Pro Hac Vice*)
(aeber@cooley.com)
1299 Pennsylvania Ave., N.W., Suite 700
Washington, DC 20004-2400
Telephone:    +1 202 842 7800
Facsimile:    +1 202 842 7899

Attorneys for Defendants
FibroGen, Inc., Enrique Conterno, James Schoeneck,
Mark Eisner, and Pat Cotroneo

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE FIBROGEN, INC., SECURITIES LITIGATION | Case No. 3:21-cv-02623-EMC <br><br> **CLASS ACTION** <br><br> **DECLARATION OF JOHN C. DWYER IN SUPPORT OF FIBROGEN'S OPPOSITION TO LEAD PLAINTIFFS' MOTION FOR SPOLIATION SANCTIONS** <br><br> Date:   August 31, 2023 <br> Time:  1:30 p.m. <br> Dept.:  5 – 17th Floor <br> Judge:  Hon. Edward M. Chen |

I, John C. Dwyer, declare:

1. I am a partner at the law firm Cooley LLP, counsel for Defendants FibroGen, Inc. ("FibroGen" or the "Company"), Enrique Conterno, James Schoeneck, Mark Eisner, and Pat Cotroneo (collectively, "Defendants"), in the above-captioned matter. I submit this declaration in support of FibroGen's Opposition to Lead Plaintiffs' Motion for Spoliation Sanctions. I have personal knowledge of the facts set forth herein, and, if called as a witness, I could and would competently testify to them.

2. I have been a partner with Cooley since 1998. I handle a wide range of litigation, negotiation, and counseling services for Cooley clients, involving, among other things, securities law, officer and director liability, disclosure issues, mergers and acquisitions, antitrust, and white-collar litigation.

3. I spend a substantial amount of time counseling Cooley's public company clients on a wide range of disclosure issues outside the litigation context. Although the volume of this disclosure counseling work varies over time, I do this kind of work for clients on a regular basis. Sometimes, I counsel corporate clients directly (through direct interaction with the client). At other times, I counsel these clients indirectly, by consulting with my corporate partners (who, in turn, provide advice directly to the client). I do this type of work for existing Cooley clients who are already working with Cooley on corporate securities, disclosure, and corporate governance matters. In most cases, I am brought into these matters by my corporate partners who are already working with these clients.

4. FibroGen is a long-standing Cooley client. It is my understanding that FibroGen has been a Cooley client since 1997. I have advised FibroGen on a wide range of matters, including non-litigation issues such as disclosure and corporate governance, since at least 2014, when FibroGen first became a public company.

5. FibroGen's Chief Legal Officer, Michael Lowenstein, contacted me on March 25, 2021, to seek my advice about the pooled cardiovascular safety analyses that FibroGen had submitted to the FDA in support of its NDA for Roxadustat. Over the course of the next several days and through the end of the month and into April, I reviewed documents and spoke to

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

1

DWYER DECL. ISO OPP TO MTN FOR
SPOLIATION SANCTIONS
3:21-CV-02623-EMC

individuals at FibroGen to understand the relevant facts regarding the disclosure of these complex pooled data and analyses from multiple studies. It was important that I understand these facts so that I could properly advise the Company about the matter, including on the subject of whether the Company should issue any public disclosures and, if so, what such a public disclosure might say.

6.    On March 29, 2021, I attended a meeting of FibroGen's Board of Directors regarding the pooled cardiovascular safety analyses. As of that date (including after the Board of Directors had met), the Company, as far as I know, had not yet made any final decision about whether any public disclosure would be made or what such a disclosure (if any) might say. At that point in time, without knowing whether the Company was going to make any public disclosure, and if so, what the disclosure might say, it would not have been possible to conclude that shareholder litigation regarding this issue was foreseeable or probable. Indeed, to the best of my recollection, the final decision by the Company of whether to issue a Form 8-K, press release, or some other public disclosure about the pooled cardiovascular safety analyses and what such disclosure would say was not made until several days later, in early April.

I declare under penalty of perjury that the foregoing is true and correct. Executed on this 17th day of July 2023, at Hillsborough, California.

/s/ John C. Dwyer
John C. Dwyer

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

2

DWYER DECL. ISO OPP TO MTN FOR
SPOLIATION SANCTIONS
3:21-CV-02623-EMC