UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE FIBROGEN, INC., SECURITIES LITIGATION | Case No. 3:21-cv-02623-EMC |
| | **CLASS ACTION** |
| | **[PROPOSED] ORDER DENYING LEAD PLAINTIFFS' MOTION FOR SPOLIATION SANCTIONS** |

Lead Plaintiffs Employees' Retirement System of the City of Baltimore ("Baltimore Employees"), City of Philadelphia Board of Pensions and Retirement ("Philadelphia Pension Fund"), and Plymouth County Retirement Association ("Plymouth County") (collectively "Lead Plaintiffs" or "Plaintiffs") have moved for sanctions, pursuant to Federal Rules of Civil Procedures 37(b), 37(e)(1), 37(e)(2) and the court's inherent powers, against Defendants K. Peony Yu and FibroGen, Inc. ("FibroGen"), claiming that Dr. Yu and FibroGen spoliated electronically stored information ("ESI") and hard copy documents.  Defendant FibroGen has filed an Opposition to Lead Plaintiffs' Motion for Sanctions.

Having considered the Motion, the accompanying declarations, exhibits, and filings in this action, and all other matters properly before the Court, Lead Plaintiffs' Motion for Spoliation Sanctions is **DENIED**.

## I.  PLAINTIFFS HAVE FAILED TO SATISFY RULE 37

Spoliation "refers to the destruction or material alteration of evidence or to the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Apple Inc. v. Samsung Elecs. Co.*, 888 F. Supp. 2d 976, 989 (N.D. Cal. 2012) (citation omitted). When considering alleged spoliation of electronically-stored information ("ESI"), FRCP 37(e) governs exclusively and forecloses any use of the court's "inherent powers" to impose sanctions. *See Chinitz v. Intero Real Estate Servs.,* 2020 WL 7389417, at *4 (N.D. Cal. May 13, 2020) ("Where, however, the evidence in question consists of electronically-stored information, as is the case here, FRCP 37(e), not inherent authority, supplies the controlling legal standard.").  While Plaintiffs appear to invoke both FRCP 37(e)(1) and FRCP 37(e)(2), the relief they seek is only available under FRCP 37(e)(2).  Under either provision, Plaintiffs have the burden to show that (1) the allegedly spoliating party had a duty to preserve evidence, (2) evidence was lost, (3) the party failed to take reasonable steps to preserve the evidence, and (4) the evidence cannot be restored or replaced through additional discovery. *First Fin. Sec., Inc. v. Freedom Equity Grp., LLC*, 2016 WL 5870218, at *2 (N.D. Cal. Oct. 7, 2016).  Plaintiffs have failed to meet their burden.

## A.    FibroGen Had No Duty to Preserve Evidence in March 2021.

Evidence is spoliated only if it is lost *after* a duty to preserve has arisen.  It is undisputed that the conduct forming the basis of Plaintiffs' Motion occurred before any securities litigation had been filed.  While a duty to preserve may arise before litigation is formally commenced, "[t]he future litigation must be *probable*, which has been held to mean more than a possibility." *Aberin v. Am. Honda Motor Co.*, 2017 WL 6493095, at \*2 (N.D. Cal. Dec. 19, 2017) (emphasis added); *Best Label Co. v. Custom Label & Decal, LLC,* 2022 WL 1525301, at \*2 (N.D. Cal. May 13, 2022) ("the mere existence of a potential claim or the distant possibility of litigation are insufficient"). Plaintiffs point to two pre-litigation events to claim that FibroGen and Dr. Yu were under a duty to preserve: (1) the announcement of the FDA convening an Advisory Committee and subsequent stock drop and (2) Dr. Eisner's inquiry into the changes to the stratification factors.  Neither triggered a duty to preserve.

First, Plaintiffs argue that a duty to preserve arose when FibroGen's stock price dropped after its announcement of the FDA's decision to hold an Advisory Committee meeting, and one plaintiffs' firm issued a press release about an "investigation." (Mot. at 17-18.).  But Plaintiffs do not cite a single case where a court held that a stock drop and/or a shareholder solicitation announcement triggered a duty to preserve documents for a yet-to-be-filed securities class action. Plaintiffs cite only two securities class action cases – one where a duty to preserve arose after the class action was filed and another where the duty to preserve was triggered because the company was the subject of numerous government investigations including an "investigation in the United States for a wide-ranging criminal bribery scheme." *Nursing Home Pension Fund v. Oracle Corp.,* 254 F.R.D. 559, 565 (N.D. Cal. 2008) (duty to preserve when plaintiffs filed suit or four days later when preservation instructions were sent to certain employees) & *Doubleline Capital LP v. Odebrecht Fin., Ltd.*, 2021 WL 1191527 at \*6 (S.D.N.Y. Mar. 30, 2021) ("[w]hen such schemes are revealed, civil securities fraud litigation is seldom far behind").  Neither supports that a duty to preserve arose after a stock drop followed by a solicitation from a single plaintiffs' firm.  While litigation may have been possible, "the fact that someone *could* file a complaint or *might* file a complaint is not enough." *Aberin v. Am. Honda Motor Co.*, 2017 WL 6493095, at \*2 (N.D. Cal.

Dec. 19, 2017)(emphasis added).  It would go well beyond precedent to find that the March 2021 stock drop triggered a duty to preserve, and the Court declines to do so.

Second, Plaintiffs claim that Dr. Eisner's investigation into the changes to the stratification factors triggered a duty to preserve.  (Mot. at 18.)  But "[c]ommencement of an internal investigation does not, per se, put an institution on notice of potential litigation." *FTC v. Lights of Am. Inc.,* 2012 WL 695008, at *3 (C.D. Cal. Jan. 20, 2012) (holding that FTC was not under a duty to preserve "at the commencement of the full-phase investigation or upon the issuance of" a Civil Investigative Demand).  The purpose of any investigation is to determine what occurred and what steps should be taken in response.  That was the case here, as Dr. Eisner spent several weeks looking into the changes to the stratification factors to try to fully understand what had happened and what, if anything, should be done.  A press release regarding the issue was not issued until April 6, 2021, and no one knew until that date what the press release would say or how others would react.  No events in March 2021 triggered a duty to preserve evidence, and regardless, FibroGen took reasonable steps to preserve Dr. Yu's ESI.

### B.    Plaintiffs Have Not Demonstrated That Evidence Was Lost.

Spoliation will not be found, and "[s]poliation sanctions are not available … when information is not lost." *Envy Haw. LLC v. Volvo Car USA LLC*, 2019 WL 1292288, at *2 (D. Haw. Mar. 20, 2019)*.; Oracle Am., Inc. v. Hewlett Packard Enter. Co.*, 328 F.R.D. 543, 549 (N.D. Cal. 2018) ("Rule 37(e) essentially functions as a decision tree. The threshold inquiry is whether ESI has been 'lost' ….").  "Information is lost for purposes of Rule 37(e) only if it is irretrievable from another source, including other custodians. *Id*. at 552.  The moving party bears the burden to demonstrate with actual evidence that the relevant information is irretrievably lost. *Envy Haw.*, 2019 WL 1292288, at *2 ("[n]ot surprisingly, [evidence] is not irreplaceable if such evidence appears to be largely duplicative of evidence already in the record"); *see also Oracle Am.,* 328 F.R.D. at 552 ("[n]o matter how inadequate a party's efforts at preservation may be, however, sanctions are not warranted unless there is proof that some information of significance has actually been lost").

Plaintiffs have not shown that any evidence was actually lost.  Plaintiffs claim at most that

[PROPOSED] ORDER DENYING LEAD PLAINTIFFS' MTN FOR SANCTIONS
3:21-CV-02623-EMC

Dr. Yu stored files on her laptop that had something to do with Roxadustat. But they have made no effort to show that any of those files were unique, or that any of the files on Dr. Yu's hard drive had anything to do with any matters in dispute in this case. With respect to the hard copy documents in Dr. Yu's binders, Plaintiffs fail to demonstrate what hard copy documents Dr. Yu had, where they came from, and whether they would have been stored elsewhere. *See Ryan v. Editions Ltd. W., Inc.*, 786 F.3d 754, 766 (9th Cir. 2015) (affirming denial of sanctions because movant had failed to show the documents at the center of the motion were not otherwise available from other sources); *Belew-Nyquist v. Quincy Sch. Dist. No. 144*, 2020 WL 6845934, at *11 (E.D. Wash. Nov. 20, 2020) ("The moving party has the burden of showing that ESI existed and was subsequently destroyed or not preserved . . . mere speculation that deleted documents may exist is insufficient.") *Best Label*, 2022 WL 1525301, at *5 ("[w]hile the Court appreciates that [the moving party] cannot know precisely what information a deleted filed contained, the Court expects at least some discussion about the nature of the information that is missing and its bearing on the case"). Plaintiffs have failed to demonstrate that any evidence was "lost," and as a result, their motion is denied.

### C.    Plaintiffs Have Not Demonstrated an Intent to Deprive the Securities Litigation Plaintiffs.

Plaintiffs seek terminating sanctions against Dr. Yu and FibroGen on the basis that Dr. Yu "intentionally destroyed the laptop's hard drive." The relevant intent for such sanctions is the "intent to deprive another party of the information's use *in the litigation*." *See hiQ Labs, Inc. v. LinkedIn Corp.,* 2022 WL 18399982, at *20 (N.D. Cal. Nov. 4, 2022) (Chen, J.) (emphasis added); *Doubleline Cap.*, 2021 WL 1191527, at *8 ("It is the movant's burden to demonstrate that the spoliating party acted with the intent to deprive, not merely the intent to destroy.") Plaintiffs offer no evidence that Dr. Yu acted with the specific intent to deprive them (or any other securities litigation plaintiffs) of information for use in litigation. In fact, Dr. Yu stated during her deposition that she did not believe that securities litigation was possible in March 2021 following the AdCom announcement. She also stated that she was not aware the April 6, 2021 press release would be issued until she learned of it along with the general public (after her laptop hard drive had been destroyed).

[PROPOSED] ORDER DENYING LEAD
PLAINTIFFS' MTN FOR SANCTIONS
3:21-CV-02623-EMC

Nor do Plaintiffs demonstrate that FibroGen acted with an intent to deprive the securities litigation plaintiffs relating to the shredding of Dr. Yu's hard copy documents.

**D.     Plaintiffs' Requested Sanctions Are Unwarranted.**

Plaintiffs seek a default judgement against Dr. Yu and FibroGen, and in the alternative, an order granting a mandatory adverse inference against Defendants FibroGen and Yu on the elements of falsity and scienter.  Courts generally do not impose such terminating sanctions unless a moving party demonstrates both bad faith and "severe prejudice."  *Fourth Dimension Software v. DER Touristik Deutschland GmbH*, 2021 WL 5919821, at *11 (N.D. Cal. Dec. 15, 2021) (finding under Rule 37(e)(2) that, where the moving party "ha[d] not shown that it suffered severe prejudice," "dismissal and default judgment—the two most severe forms of sanction—[we]re out of the question"); *see, e.g., Lofton v. Verizon Wireless (VAW) LLC,* 308 F.R.D. 276, 291 (N.D. Cal. 2015) (even where spoliating parties "acted with willfulness and improper purpose in the course of some its discovery conduct . . . lesser sanctions suffice").

Plaintiffs have failed to demonstrate any prejudice for the reasons described above, nor have they established the requisite bad intent.  Plaintiffs were informed of the destruction of the hard drive by Dr. Yu's counsel, and FibroGen never hid the destruction of the hard drive, but rather pushed back on the suggestion that Dr. Yu's conduct amounted to spoliation since it occurred before any lawsuit was filed.  FibroGen has since provided Plaintiffs with forensic analysis of the laptop, prepared a corporate representative to testify on the topic of Dr. Yu's laptop, and reviewed additional documents to answer Plaintiffs' questions about the laptop.  This is not the type of conduct that warrants terminating sanctions.  *Cf. Anheuser-Busch, Inc. v. Natural Beverage Distrib.*, 69 F.3d 337 (9th Cir. 1995) (sanctions imposed where defendant knew relevant documents had survived a fire but lied about their existence, including under oath, for years, and the existence of the documents only came to light when defendant attempted to use them for its benefit); *Facebook, Inc. v. OnlineNIC Inc.,* 2022 WL 2289067 (N.D. Cal. Mar. 28, 2022) (imposing sanctions where defendants destroyed significant volumes of data after the filing of the complaint, including some after appointment of a Special Master to oversee the production of the information that was spoliated).  Here, Dr. Yu's laptop was destroyed for the personal reason of keeping

[PROPOSED] ORDER DENYING LEAD
PLAINTIFFS' MTN FOR SANCTIONS
3:21-CV-02623-EMC

information from FibroGen before any securities litigation was filed, and FibroGen has preserved and produced significant volumes of information.  The conduct alleged does not warrant the remedies Plaintiffs seek.

Good cause appearing therefor, **IT IS HEREBY ORDERED** Lead Plaintiffs' Motion for Sanctions is **DENIED**.

**IT IS SO ORDERED.**

Dated: _____, 2023

_____
Honorable Edward M. Chen
United States District Judge

6