COOLEY LLP
PATRICK E. GIBBS (183174)
(pgibbs@cooley.com)
TIJANA M. BRIEN (286590)
(tbrien@cooley.com)
BRETT H. DE JARNETTE (292919)
(bdejarnette@cooley.com)
ZANETA J. KIM (317844)
(zkim@cooley.com)
AMIE L. SIMMONS (336356)
(asimmons@cooley.com)
3175 Hanover Street
Palo Alto, California 94304-1130
Telephone:     +1 650 843 5000
Facsimile:     +1 650 849 7400

CAITLIN MUNLEY (*Pro Hac Vice*)
(cmunley@cooley.com)
ALEXANDRA EBER (*Pro Hac Vice*)
(aeber@cooley.com)
1299 Pennsylvania Ave., N.W., Suite 700
Washington, DC 20004-2400
Telephone:     +1 202 842 7800
Facsimile:     +1 202 842 7899

Attorneys for Defendants
FibroGen, Inc., Enrique Conterno, James Schoeneck,
Mark Eisner, and Pat Cotroneo

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE FIBROGEN, INC., SECURITIES LITIGATION | Case No. 3:21-cv-02623-EMC <br><br> **CLASS ACTION** <br><br> **FIBROGEN'S NOTICE OF MOTION AND MOTION TO STRIKE PORTIONS OF DECLARATION OF DAVID R. KAPLAN ISO PLAINTIFFS' MOTION FOR SPOLIATION SANCTIONS** <br><br> Date:   August 31, 2023 <br> Time:  1:30 p.m. <br> Dept.:  5 – 17th Floor <br> Judge: Hon. Edward M. Chen |

**TABLE OF CONTENTS**

**Page**

NOTICE OF MOTION AND MOTION TO STRIKE ............................................................... 1

STATEMENT OF RELIEF/ACTION SOUGHT ................................................................... 1

STATEMENT OF ISSUE TO BE DECIDED ...................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ........................................................... 1

    I.     INTRODUCTION ................................................................................................ 1

    II.    ARGUMENT ........................................................................................................ 2

          A.     Certain Paragraphs and Footnotes of the Kaplan Declaration Are Not Based on Personal Knowledge and Should Be Stricken. ................................. 3

          B.     Certain Paragraphs and Footnotes of the Kaplan Declaration Mischaracterize and Misstate the Record and Should Be Stricken. .................. 5

          C.     Certain Paragraphs and Footnotes of the Kaplan Declaration Violate Civil Local Rule 7-5(b)'s Prohibition on "Conclusions and Argument" and Should Be Stricken. ....................................................................... 11

    III.   CONCLUSION ................................................................................................. 14

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

- i -

FIBROGEN'S MOTION TO
STRIKE KAPLAN DECL.
3:21-CV-02623-EMC

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allen v. Honeywell Ret. Earnings Plan*,
    2005 WL 8160551 (D. Ariz. July 27, 2005) .................................................................... 3

*Brae Asset Funding, L.P. v. Applied Fin., LLC*,
    2006 WL 2355474 (N.D. Cal. Aug. 14, 2006)...................................................... 3, 11, 13

*Brew v. City of Emeryville*,
    138 F. Supp. 2d 1217 (N.D. Cal. 2001) ................................................................... 3

*Gallegos v. Mercedes-Benz USA, LLC*,
    2023 WL 3607279 (N.D. Cal. Mar. 6, 2023)....................................................... 2, 3

*Kennedy v. AJVS, Inc.*,
    2012 WL 1748013 (N.D. Cal. May 15, 2012) ................................................. 3, 5, 11

*Long v. Nationwide Legal File & Serve, Inc.*,
    2014 WL 3809401 (N.D. Cal. July 23, 2014)....................................................... 13

*Monfort v. Adomani*,
    2019 WL 6311378 (N.D. Cal. Nov. 25, 2019)...................................................... 13

*Percelle v. Pearson*,
    2015 WL 5736399 (N.D. Cal. Oct. 1, 2015)............................................... 2, 3, 5, 11

*Universal Grading Serv. v. eBay, Inc.*,
    2011 WL 846060 (N.D. Cal. Mar. 8, 2011)........................................................... 3

**Other Authorities**

Civil Local Rule
    7-2 ........................................................................................................... 1, 2, 14
    7-5 ...............................................................................................................*passim*

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

- ii -

**NOTICE OF MOTION AND MOTION TO STRIKE**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on August 31, 2023, at 1:30 p.m., or as soon thereafter as this motion may be heard in Courtroom 5, of the above-entitled court, located at 450 Golden Gate Avenue, San Francisco, CA 94102, FibroGen, Inc. ("FibroGen") will and hereby does move to strike portions of the Declaration of David R. Kaplan ("Kaplan Declaration" or "Kaplan Decl.") filed in support of Plaintiffs' Motion for Spoliation Sanctions ("Spoliation Motion") on June 8, 2023 (Dkt. 185). This Motion is made under the Northern District of California Civil Local Rules 7-2 and 7-5(b). This Motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, the pleadings and papers on file in this matter, and such other matters as may be presented to the Court at the hearing.

**STATEMENT OF RELIEF/ACTION SOUGHT**

FibroGen respectfully seeks an order pursuant to Civil Local Rules 7-2 and 7-5(b) striking, in part, the Kaplan Declaration.

**STATEMENT OF ISSUE TO BE DECIDED**

Whether the Court should strike portions of the Kaplan Declaration for failure to comply with Northern District of California Civil Local Rules 7-2 and 7-5 on the grounds that the Kaplan Declaration is not based on personal knowledge; mischaracterizes and misstates evidence in the record; and includes improper legal argument and conclusions, circumventing the page limit for the Spoliation Motion.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

The declaration of Plaintiffs' counsel, David R. Kaplan (the "Kaplan Declaration" or "Kaplan Decl."), filed in support of their Plaintiffs' Motion for Spoliation Sanctions ("Motion" or "Mot."), far exceeds the bounds of any proper attorney declaration under Northern District of California Civil Local Rules 7-2 and 7-5. The Kaplan Declaration should be stricken on multiple independent grounds:

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

1

FIBROGEN'S MOTION TO
STRIKE KAPLAN DECL.
3:21-CV-02623-EMC

*First*, the Court should strike the portions of the Kaplan Declaration that are plainly not based on his personal knowledge. Mr. Kaplan declares, under oath, that his Declaration is based upon personal knowledge, but then proceeds to testify about events he did not observe and communications to which he was not a party. By way of example, Mr. Kaplan testifies to matters internal to FibroGen, including internal communications between FibroGen employees, as well as to meetings between FibroGen employees and the FDA. This testimony could not possibly be based upon personal knowledge, and as such, it violates Local Rules 7-2 and 7-5.

*Second*, even worse, rather than simply authenticating the documents and testimony that Plaintiffs attach to their Motion, the Kaplan Declaration repeatedly mischaracterizes the content of those documents and testimony and thereby presents a series of demonstrably false statements as "facts."

*Third*, the Kaplan Declaration is a blatant attempt to circumvent the page limits for their Spoliation Motion. In several instances, where Plaintiff's opening brief cites the Kaplan Declaration for a simple statement of fact, the Kaplan Declaration includes lengthy and detailed factual assertions that are not included in Plaintiff's brief. Moreover, rather than simply authenticating exhibits, the Kaplan Declaration is rife with inappropriate argument presented as factual testimony from an attorney.

For these reasons, FibroGen seeks an order striking paragraphs 2-9, 11-51, 53-56, 58-80, 83-87, 89-91, 93-95, 97, 100-05, 109, 118-19, and footnotes 2 and 5-9 of the Kaplan Declaration, as detailed below.

## II.    ARGUMENT

Civil Local Rule 7-2 requires that motions "be accompanied by affidavits or declarations pursuant to Civil L.R. 7-5." Civil Local Rule 7-5 provides that any "affidavit or declaration may only contain facts . . . and must avoid conclusions and argument." Local Rule 7-5 is also clear that a declaration "not in compliance with this rule may be stricken in whole or in part."

Courts in this District regularly strike declarations that violate this Local Rule. *See, e.g.*, *Gallegos v. Mercedes-Benz USA, LLC*, 2023 WL 3607279, at *3 n.2 (N.D. Cal. Mar. 6, 2023) (disregarding declaration because it was not based on personal knowledge); *Percelle v. Pearson*,

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

2

FIBROGEN'S MOTION TO
STRIKE KAPLAN DECL.
3:21-CV-02623-EMC

2015 WL 5736399 (N.D. Cal. Oct. 1, 2015) (striking declaration because it purports to summarize transcripts or exhibits, and those summaries are inaccurate); *Kennedy v. AJVS, Inc.*, 2012 WL 1748013, at *4-5 (N.D. Cal. May 15, 2012) (striking declaration which "includes unnecessary and apparently inaccurate commentary regarding the exhibits"); *Universal Grading Serv. v. eBay, Inc.*, 2011 WL 846060, at *11 (N.D. Cal. Mar. 8, 2011) (striking attorney declaration where it "contain[ed] numerous legal conclusions and arguments"); *Brae Asset Funding, L.P. v. Applied Fin., LLC*, 2006 WL 2355474, at *5 (N.D. Cal. Aug. 14, 2006) (striking declaration "full of legal argument and conclusions" by party's attorney "in violation of Civil Local Rule 7-5(b), which requires a declaration to contain 'only facts' and to 'avoid conclusions and argument.'").

### A. Certain Paragraphs and Footnotes of the Kaplan Declaration Are Not Based on Personal Knowledge and Should Be Stricken.

"Declarations must be based on personal knowledge." *Gallegos*, 2023 WL 3607279, at *3 n.2. In that regard, it is not enough for a witness to merely claim that he has personal knowledge of the facts stated. He must "state facts showing . . . [his] connection to the matters stated, establishing the source of the information." *Brew v. City of Emeryville*, 138 F. Supp. 2d 1217, 1227 (N.D. Cal. 2001); *Allen v. Honeywell Ret. Earnings Plan*, 2005 WL 8160551, at *3 (D. Ariz. July 27, 2005) (striking declaration because "[d]efendants have not introduced evidence sufficient to support a finding of personal knowledge"). Statements not based on personal knowledge are properly stricken under Local Rule 7-5. *Percelle*, 2015 WL 5736399, at *3 (striking paragraphs, *inter alia*, because they "d[id] not establish the declarant's personal knowledge or basis for the statements therein").

Mr. Kaplan purports to show personal knowledge by stating, under oath: "The statements made herein are made of my own personal knowledge and, if called upon, I could and would testify competently thereto under oath." (Kaplan Decl. ¶ 1.) But that statement is false, as the Kaplan Declaration goes on to assert all manner of facts about which Mr. Kaplan does not and could not have personal knowledge.

Some examples include:

- ███████████████████████████████████████

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

3

FIBROGEN'S MOTION TO
STRIKE KAPLAN DECL.
3:21-CV-02623-EMC

• ██████████████████████████████████

• ██████████████████████████████████

• "Yu's laptop had the ability to save documents both on 'share drive' or 'network drive' locations, which were on the Company's servers, and also locally on the laptop's hard drive. Ex. 21 at 45:19-46:3. Unlike the 'share drive' locations, the laptop's hard drive was not remotely accessible to anyone else at FibroGen (unless it needed to be specifically accessed for technical support) (*id.* at 31:18-24) and was not backed up or duplicated by the Company at any point between the time FibroGen issued the laptop to Yu in 2017 or 2018 and the time that Yu destroyed its hard drive on March 29, 2021 (*id.* at 31:2-16)." (*Id.* ¶ 18.)

• ██████████████████████████████████

• "At 1:56 PM PT on March 29, 2021, ████████████████████████ Yu emailed herself a link to an article about erasing data from computer hard drives entitled 'How Can I Securely Delete Everything Except the Operating System?' Ex. 37 (Yu Dep. Ex. 14). Yu's mobile phone browsing history also revealed that, the same day (i.e., March 29, as the phone time was set to GMT and the timestamp was thus 7 hours ahead), she viewed a separate article entitled 'How To Wipe Your Hard Drive' on www.pcmag.com. Ex. 36." (¶ 38.)

• "Shortly thereafter, Yu took the laptop to a nearby vendor called NerdsToGo, located in Bellevue, WA (the town in which Yu resided)." (¶ 39.)

These are but some of the most egregious examples, but the problem persists throughout the Kaplan Declaration. (*See also id.* ¶¶ 2, 7-9, 11, 14-15, 17, 18 n.5, 19-20, 21 n.6, 24, 26-30, 32-

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

4

FIBROGEN'S MOTION TO
STRIKE KAPLAN DECL.
3:21-CV-02623-EMC

37, 37 n.7, 40-42, 41 n.9, 44-51.)  Mr. Kaplan obviously was not involved in any of the events or communications that he purports to describe in these paragraphs, and as such, he does not have personal knowledge of them and could not competently testify to them (nor does he qualify his descriptions of these events or communications by purporting to describe what documents or testimony show).[1]

As such, the paragraphs 2, 4-5, 7-9, 11, 13-15, 17-20, 24-30, 32-42, 44-51, and footnotes 5-7 and 9 of the Kaplan Declaration clearly violate the Local Rules' mandate that declarations be based on the declarant's personal knowledge and should be stricken.  *See Percelle*, 2015 WL 5736399, at *3 (striking portions of declaration, *inter alia*, for "not stating . . . personal knowledge for the conclusions and purported facts").

### B.    Certain Paragraphs and Footnotes of the Kaplan Declaration Mischaracterize and Misstate the Record and Should Be Stricken.

The Kaplan Declaration also includes a number of factual assertions that mischaracterize the underlying evidence.  In many cases, the misrepresentations are so blatant that they could not plausibly be inadvertent; but in any event, the misrepresentations alone are a proper basis for striking portions of the Declaration.  *See Percelle*, 2015 WL 5736399 (striking declaration because it purports to summarize transcripts or exhibits, and those summaries are inaccurate); *Kennedy*, 2012 WL 1748013, at *4-5 (striking declaration which "includes unnecessary and apparently inaccurate commentary regarding the exhibits").  These mischaracterizations fall into several different buckets, each of which is discussed below.

**Misleading Portrayal of Dr. Yu's Laptop.**  The Kaplan Declaration mischaracterizes key evidence concerning Dr. Yu's laptop hard drive.  For example, it claims, repeatedly, that Dr. Yu "had saved *unique* files on the hard drive."  (*See, e.g.*, Kaplan Decl. ¶ 19 (emphasis added).)  But the Declaration itself cites no evidence that any of the files on Dr. Yu's hard drive were "unique."

Mr. Kaplan purports to describe "an email thread in which Yu told Conterno that she needed access to the laptop in order to ████████████████████████████████████████

---

[1] Moreover, and as described below, to the extent Mr. Kaplan does purport to describe the contents of any exhibits, his descriptions are misleading and argumentative and therefore should be stricken on that basis.

Cooley LLP
Attorneys at Law
Palo Alto

5

FibroGen's Motion to
Strike Kaplan Decl.
3:21-cv-02623-EMC



(*Id.* ¶ 66 (second emphasis added).)  But that is not what the email actually says.

Plaintiffs are free to argue (in their brief) about inferences they want the Court to draw from this email, but they are not free to blatantly mischaracterize the content of the email, much less to do so as part of an attorney declaration.

**Misleading Portrayal of Analyst Reports and Reactions.**  The Kaplan Declaration also mischaracterizes analyst reports about FibroGen.  As one example, in support of Plaintiffs' argument that FibroGen must have expected shareholder litigation following the March 1, 2021 announcement that the FDA would convene an Advisory Committee, Mr. Kaplan testifies that "[a]nalyst reports released after the disclosure expressed shock at the 'surprising' and 'unprecedented' announcement of an AdCom so late in the regulatory process, which raised numerous 'red flags' about the integrity of the Roxadustat safety data that were 'hard [to] reconcil[e]' with Defendants' past public statements 'in which it sounded like [FDA] approval was

---

[2] "Pls. Ex." refers to exhibits to the Declaration of Lester R. Hooker filed in support of Plaintiffs' Motion.  "Gibbs Decl." refers to the Declaration of Patrick Gibbs in Support of FibroGen's Opposition to Lead Plaintiffs' Motion for Spoliation Sanctions, and "Brien Decl." refers to the Declaration of Tijana M. Brien in Support of FibroGen's Opposition to Lead Plaintiffs' Motion for Spoliation Sanctions.

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

6

FIBROGEN'S MOTION TO
STRIKE KAPLAN DECL.
3:21-CV-02623-EMC

all but a foregone conclusion.'" (Kaplan Decl. ¶ 9 (citing Pls. Exs. 6-8).)  The extent to which Mr. Kaplan edits and splices the quoted language is the first sign that he has taken liberties with the underlying exhibits.  But a review of the exhibits themselves (three analyst reports) makes clear that this portion of Mr. Kaplan's testimony is simply false, and completely mischaracterizes the analyst reports he cites.

Two of the reports (presumably the sources for "surprising" and "unprecedented"), do not say anything about "red flags"; do not say anything about the "integrity" of Roxadustat's safety data; and say nothing about FibroGen's "past statements."  (See Pls. Exs. 6-8.)

The third report, issued by Raymond James on March 1, 2021, includes the phrase "red flags," but it does not suggest that the AdCom itself raised any red flags, and it does not say anything about the "integrity" of FibroGen's safety data.  (See Pls. Ex. 7.)  Back in December 2020, when the FDA delayed the PDUFA date for Roxadustat by six months, the same Raymond James analyst published a report in which he inferred, from the delay of the PDUFA data, that there must be "red flags in [R]oxadustat's dataset."  (Brien Decl. Ex. U.)  In his March 1, 2021, report, this analyst opined that the late AdCom announcement was consistent with that pre-existing (and previously published) view.  (Pls. Ex. 7.)  That is not the same as saying the announcement of the AdCom itself raised "red flags," and certainly does not suggest any red flags concerning the "integrity" of the "safety data" for Roxadustat.  Indeed, nothing in this analyst's report says anything at all about the "integrity" of any "safety data."

On the subject of FibroGen's public statements, the analyst was not referring generally to "Defendants' past public statements," as Mr. Kaplan claims.  Rather, the analyst was referring to optimistic statements by FibroGen immediately after the December delay on the PDUFA date (but before the AdCom announcement) and expressing the view that those statements were "hard to reconcile" with *the analysts' own inference* that the delay in the PDUFA date suggested that there were "red flags" in the data.  (*Id*.)  He did not suggest that the AdCom announcement itself was "hard to reconcile" with FibroGen's past public statements generally (nor could he, since FibroGen had repeatedly warned investors that an AdCom was likely).  By mischaracterizing the content of

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

7

FIBROGEN'S MOTION TO
STRIKE KAPLAN DECL.
3:21-CV-02623-EMC

this analyst report, Mr. Kaplan suggests that the analyst all but accused FibroGen of fraud, but the report itself says no such thing.

**Misleading Portrayal of FDA Interactions.** The Kaplan Declaration misleadingly portrays FibroGen's interactions with the FDA, including the February 24, 2021 meeting between FibroGen and the FDA. (Kaplan Decl. ¶ 7.) In particular, Mr. Kaplan testifies that the FDA had "recommended an Advisory Committee ('AdCom') meeting to further scrutinize the cardiovascular safety data." (*Id.*) The minutes of that meeting, however, tell a very different story and ███████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████ Again, Plaintiffs are free to argue (in their briefs) about what the document means or what inferences the Court should draw from it. But they are not free to mislead the Court about what the document actually says.[3]

**Misleading Portrayal of FINRA Response.** Also false is Mr. Kaplan's claim that

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████ (Kaplan Decl. ¶ 12 (emphasis added).) FibroGen's submission to FINRA said no such thing, but instead identified the earliest date that Dr. Eisner became aware of the "events leading up to" the April 6 press release, namely the first time he was informed that the "primary" analyses submitted in the NDA had certain changes to the stratification factors. (Pls. Ex. 11.) And, as Plaintiffs themselves admit, the details around those changes were only shared with Dr. Eisner on March 15, 2021, and various discussions followed thereafter. ████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████

**Misleading Portrayal of Attorney Communications.** The Kaplan Declaration also

---

[3] As discussed further below, the Kaplan Declaration also misleadingly highlights only certain portions of the minutes in order to portray the feedback from the FDA in a misleading and improper way.

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

8

FIBROGEN'S MOTION TO
STRIKE KAPLAN DECL.
3:21-CV-02623-EMC

mischaracterizes the communications between counsel, including the letters it attaches as exhibits.

For example, Mr. Kaplan claims that Plaintiffs themselves "uncovered" the destruction of Dr. Yu's laptop hard drive but that is simply not true. (Kaplan Decl. ¶ 61.) As even Plaintiffs admit, Dr. Yu's counsel *affirmatively* informed Plaintiffs about the destruction of the hard drive.[4] (Pls. Ex. 41.)

Likewise, Mr. Kaplan claims that on December 21, 2022, "Mr. Gibbs, stated that the was caught off guard by the issue" (of Dr. Yu's laptop), suggesting that Mr. Gibbs acted as though he was not aware that the laptop hard-drive had been destroyed. (Kaplan Decl. ¶ 63.) Again, nothing could be further from the truth. Mr. Gibbs only informed Plaintiffs that their request for far-reaching and voluminous discovery on the topic—sent to FibroGen's counsel on the eve of a holiday closure—would require some time to respond to. (Gibbs Decl. ¶ 14.)

Mr. Kaplan also claims that FibroGen's counsel stated, in a letter dated March 12, 2023, that "all relevant hard copy documents had been preserved." (Kaplan Decl. ¶ 104.) As an initial matter, the letter had nothing to do with Dr. Yu's deposition or "Plaintiffs' continuing inquiries concerning document preservation," as Plaintiffs claim, but rather was in response to the parties' separate meet and confer efforts over Plaintiffs' Requests for Production. (*Id.*) More importantly, the letter never indicated that "all relevant hard copy documents had been preserved"—on the contrary, FibroGen's counsel expressed their understanding that "while employees may have used hard copy documents at times (such as printed presentations or drafts)" those hard copy documents "are *copies* of documents otherwise captured by ESI" and that the ESI "has already been preserved and/or collected." (Pls. Ex. 76 (emphasis added).) These are just examples of Plaintiffs' attempts to portray the communications between Counsel in the way that best serves their narrative. (*See also* Kaplan Decl. ¶¶ 54-56, 59-62, 64-65, 67-75, 77-80, 83-87, 93-95, 97, 101.) However, counsel's written statements can be easily assessed by the Court, without the need for Mr. Kaplan's characterizations and commentary (which could, and should, have been included in Plaintiffs'

---

[4] Plaintiffs also did not have to undertake a "diligent" review of 100,000 documents produced to the SEC to "uncover" the emails about Dr. Yu's laptop. (*See* Kaplan Decl. ¶ 109.) Far from being hidden, the three emails Plaintiffs refer to were the last three emails produced as part of the SEC re-production and therefore would have been easily identified (again underscoring that FibroGen made no attempt to hide the destruction of the laptop from Plaintiffs). (Brien Decl. ¶ 2.)

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

9

FIBROGEN'S MOTION TO
STRIKE KAPLAN DECL.
3:21-CV-02623-EMC

Motion).

**Misleading Portrayal of Process of Disposing of Hard Copy Documents.** As to these hard copy documents, the evidence also does not support Mr. Kaplan's claim that ███████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ██████ And the portion of Yu's testimony referenced in Exhibit 20 states that she told her assistant to "take these back and show them to Mark . . . and do what he says he wants you to do with them." Neither establishes that Eisner was "personally in charge" of this process.

Various other paragraphs misstate, mischaracterize, or mislead the Court as to the contents of the exhibits, presenting them in a way that best serves Plaintiffs' narrative:

- Paragraph 4 mischaracterizes Exhibit 1 to make the FDA's concerns sound more serious, and conveniently omits information putting these piecemeal quotes into context.

- Paragraphs 5 and 20 misstate Exhibit 2 by suggesting Conterno ███████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████

- Paragraph 8 misstates Exhibit 4 by stating "[t]he FDA confirmed during the meeting that it would hold an AdCom" and suggesting that its main concern was with the pooled CV safety data. The FDA did not "confirm" an AdCom, as that implies the issue had already been decided. The explicit purpose of the meeting was "a follow-up call on the status of whether an [AdCom] will be convened," and the FDA's "main concerns" were thrombotic events, not the pooled MACE analyses.

- Paragraph 24 misrepresents the contents of Exhibit 47, which states only that Dr. Yu's last day was March 15, 2021. It says nothing about her employment or network access.

- Paragraph 67 misrepresents the contents of Exhibit 46 ███████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████

- Paragraph 76 mischaracterizes the voicemails at Exhibits 32 and 33. ███████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

10

FIBROGEN'S MOTION TO
STRIKE KAPLAN DECL.
3:21-CV-02623-EMC

- Paragraph 103 misrepresents the contents of Exhibit 51 suggesting that the boxes were documents "that Yu sought to have shredded." Exhibit 51 is merely a picture of a box of binders—it does not contain any description as to what Dr. Yu intended to do with them.

Other paragraphs and footnotes blatantly misstate testimony from Dr. Yu and FibroGen's 30(b)(6) representative, Dorothy Pacini:

- Footnote 2 misstates Dr. Yu's testimony by suggesting "she did not actually perform any work for the Company in her capacity as a consultant." In other portions of Exhibit 20, Dr. Yu mentions discussions she had with the Company regarding the Roxadustat NDA during her consultancy. (*See, e.g.*, Pls. Ex. 20 at 25:6-26:5.)

- Paragraph 28 misstates Dr. Yu's testimony ███████████████████████████████████████████████████████████████████████████████████████.

- Paragraph 31 misstates Dr. Yu's testimony by suggesting that "she could not remember anything about what was discussed during the meeting." The cited portion of Exhibit 20 demonstrates that Dr. Yu testified that she *did* recall certain aspects of the call, including that they did not discuss the upcoming AdCom meeting.

- Paragraph 100 misstates the scope of FibroGen's 30(b)(6) deposition and misstates the representative's testimony. "Learning facts about the laptop and data preservation efforts" does not include every fact about the laptop (whether know or knowable), and when the laptop was issued says nothing about the Company's data preservation efforts. Moreover, the representative testified that the laptop was issued in 2018 or 2019.

Plaintiffs may attach as exhibits documents that are a part of the record in this case and argue about their content in their briefings. However, Plaintiffs may not include blatant mischaracterizations of these documents as purported testimony in a declaration. *See Percelle*, 2015 WL 5736399, at *3 (striking declaration because it purports to summarize transcripts or exhibits, and those summaries are inaccurate); *Kennedy*, 2012 WL 1748013, at *4-5 (striking declaration which "includes unnecessary and apparently inaccurate commentary regarding the exhibits"). The Court should strike paragraphs 4-5, 7-9, 12, 19-20, 24, 28, 31, 47, 54-56, 59-80, 83-87, 91, 93-95, 97, 100-01, 103-04, and footnote 2 of the Kaplan Declaration.

**C.      Certain Paragraphs and Footnotes of the Kaplan Declaration Violate Civil Local Rule 7-5(b)'s Prohibition on "Conclusions and Argument" and Should Be Stricken.**

All arguments, including argumentative quips, belong solely in a party's briefing, and "only

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

11

FIBROGEN'S MOTION TO
STRIKE KAPLAN DECL.
3:21-CV-02623-EMC

facts" belong in any accompanying declaration. *Brae Asset Funding*, 2006 WL 2355474, at *5.

The Kaplan Declaration, however, is rife with inappropriate legal conclusions and argument from Mr. Kaplan.  Examples include:

- "Despite these requirements and the facts summarized above, Defendants did not disclose the destruction of Yu's laptop's hard drive or the shredding of Yu's hard copy documents at any point during this conference, even though Plaintiffs directly asked about preservation issues and about the Individual Defendants' use of Company laptops—and even though Defendants themselves represented during the conference that they were 'looking into whether any Individual Defendant [] utilized laptops' and 'whether such devices and their contents were preserved.' Ex. 54 at 2." (Kaplan Decl. ¶ 53.)

- ████████████████████████████████████████████

- "As detailed above, Defendants' failure to make full disclosure of the issue at the outset of discovery, as well as their evasive, incomplete, contradictory, and at times outright false responses to Plaintiffs' requests for information and discovery made this process far lengthier and more difficult than it need have been." (*Id.* ¶ 105.)

- "Significantly, had Plaintiffs failed to continue to press Defendants on preservation issues (resulting in Yu's counsel ultimately being forced to reveal the purported "erasure" of the laptop), discover the three emails buried within Defendants' voluminous productions, or challenge Defendants' counsel's false assertions, they may well have never discovered this serious spoliation of critical evidence highly relevant to Plaintiffs' claims." (*Id.* ¶ 109.)

- "There is extensive evidence establishing that a significant amount of highly relevant evidence has been permanently lost and cannot be replaced by any other means; that both Yu and FibroGen were under a duty to preserve this evidence; that they failed to take reasonable steps to preserve this evidence; and that they acted with an intent to deprive Plaintiffs of this evidence." (*Id.* ¶ 118.)

- "Furthermore, Yu's and FibroGen's spoliation of evidence has materially prejudiced Plaintiffs due to the severe and unfair advantage gained by Defendants through the destruction of thousands of critical documents encompassing the bulk of the alleged Class Period that were either created or edited by a key Defendant in this action, as well as the time and expense that Plaintiffs have had to devote to this matter in light of Defendants' conduct described herein." (*Id.* ¶ 119.)

These examples are clearly not factual assertions from a competent witness based on his personal knowledge and therefore, they should stricken.

Even paragraphs that quote from exhibits or make factual assertions tack on argumentative and/or conclusory descriptors or phrases, such as "misleading" or "misleadingly" (*id.* ¶¶ 2, 12, 14,

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

12

FIBROGEN'S MOTION TO
STRIKE KAPLAN DECL.
3:21-CV-02623-EMC

34), "manipulated" or "manipulations" (*id.* ¶¶ 2-3, 12-13, 15-16, 34, 49), "false" or "falsely" (*id.* ¶¶ 3, 105, 109), "key" (*id.* ¶¶ 2, 4, 43, 89), "unexpected" (*id.* ¶ 6), "deficient" (*id.* ¶ 58), and "glaring factual inconsistencies," (*id.* ¶ 70).  Many also cobble together quotes from exhibits in a way that best serves Plaintiffs' narrative.  (*Id.* ¶¶ 4, 6-7, 9, 12, 19, 25, 39 n.8, 42, 45, 68, 74, 89-90, 103.)  For example, when describing the feedback from the FDA in the days leading up to the AdCom announcement, Mr. Kaplan declares that ███████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████  Still other paragraphs present alleged facts and documents in an impermissibly argumentative manner.  (*Id.* ¶¶ 21-23, 35, 55, 67, 72, 78, 93, 102).  None of these tactics is proper in a declaration (and an attorney one, at that).  *Brae Asset Funding*, 2006 WL 2355474, at *5 (striking declaration "full of legal argument and conclusions" by party's attorney "in violation of Civil Local Rule 7-5(b), which requires a declaration to contain 'only facts' and to 'avoid conclusions and argument.'").

Their inclusion in this Declaration also makes clear that Plaintiffs used the Kaplan Declaration as an attempt to circumvent this Court's prescribed page limit and add extra pages to the arguments presented in the Spoliation Motion.  There are numerous places where the Motion contains only on or two sentences on a particular topic and the declaration is used as an attempt to introduce additional argument, as is obvious from the fact alone that the Kaplan Declaration spans nearly twice the number of pages allowed for the Motion, and nearly four times the number of pages of the Plaintiffs' Motion's fact section.  Plaintiffs' use of the Kaplan Declaration to add additional pages of argument to their motion is made even clearer by the fact that nowhere in the Motion is the Kaplan Declaration even cited in support of any fact or argument.  This tactic violates Local Rule 7-5(b) because it blatantly flouts the Court's orders specifying the page limits for the Motion.  *Monfort v. Adomani*, 2019 WL 6311378, at *4 n.3 (N.D. Cal. Nov. 25, 2019) (finding that

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

13

FIBROGEN'S MOTION TO
STRIKE KAPLAN DECL.
3:21-CV-02623-EMC

party was attempting to "circumvent the page limits set forth in the Civil Local Rules" by filing declaration "that, in essence, appends his legal argument" with pages of additional argument); *Long v. Nationwide Legal File & Serve, Inc.*, 2014 WL 3809401, at *9 n.6 (N.D. Cal. July 23, 2014) ("including argument in an accompanying declaration is an impermissible violation of the page limits").

Thus, the Court should strike paragraphs 2-4, 6-7, 9, 12-16, 19, 21-23, 25, 34-35, 42-43, 45, 49, 53, 55, 58, 61, 67-68, 70, 72, 74, 78, 89-90, 93, 102-03, 105, 109, 118-19, and footnote 8 of the Kaplan Declaration.

## III.    CONCLUSION

For the reasons provided herein, the Court should grant FibroGen's motion and issue an order striking paragraphs 2-9, 11-51, 53-56, 58-80, 83-87, 89-91, 93-95, 97, 100-05, 109, 118-19, and footnotes 2 and 5-9 of the Kaplan Declaration.  These paragraphs and footnotes are not based on personal knowledge, mischaracterize and misstate the exhibits cited, and/or contain improper argument and/or conclusion.  They are accordingly improper under Civil Local Rules 7-2 and 7-5(b), and should be stricken.

Dated: July 17, 2023                                COOLEY LLP


By:   */s/ Patrick E. Gibbs*
        Patrick E. Gibbs

Attorneys for Defendant
FibroGen, Inc.

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

14

FIBROGEN'S MOTION TO
STRIKE KAPLAN DECL.
3:21-CV-02623-EMC