PILLSBURY WINTHROP SHAW PITTMAN LLP
BRUCE A. ERICSON (SBN 76342)
bruce.ericson@pillsburylaw.com
LEE BRAND (SBN 287110)
lee.brand@pillsburylaw.com
Four Embarcadero Center, 22nd Floor
San Francisco, CA 94111-5998
Telephone:        415.983.1000
Facsimile:        415.983.1200

WEI GROUP LLP
ERIC S. WEI (*pro hac vice*)
ewei@weillp.com
One World Trade Center, Suite 8500
New York, New York 10007-0103
Telephone:        212-248-0808
Facsimile:        212-248-0475

Attorneys for Defendant
K. Peony Yu, M.D.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO HEADQUARTERS

| | |
|---|---|
| IN RE FIBROGEN, INC., SECURITIES LITIGATION | No. 3:21-cv-02623-EMC<br><br>**CLASS ACTION**<br><br>**DECLARATION OF LEE BRAND IN OPPOSITION TO LEAD PLAINTIFFS' MOTION FOR SPOLIATION SANCTIONS**<br><br>Hearing Date:    August 31, 2023<br>Time:    1:30 p.m.<br>Courtroom:    5 – 17th Floor (Zoom)<br>Judge:    Hon. Edward M. Chen |

I, LEE BRAND, declare:

1. I am a partner at the law firm Pillsbury Winthrop Shaw Pittman LLP ("Pillsbury"), counsel for Defendant K. Peony Yu, M.D. ("Dr. Yu"), in the above-captioned matter. I submit this declaration in opposition to Lead Plaintiffs' Motion for Spoliation Sanctions. The information set forth herein is true to the best of my knowledge, information, and belief, and if called as a witness, I could and would testify competently to the matters set forth in this declaration.

2. Neither I nor any of the other attorneys representing Dr. Yu believe that she had any duty to preserve documents prior to April 6, 2021, when she first received a litigation hold notice from FibroGen.

3. It is uncontested that Dr. Yu had the hard drive of her Fibrogen laptop erased, via its physical destruction and replacement, before April 6, 2021.

4. To the best of my knowledge, Dr. Yu returned all hard copy documents potentially relevant to this litigation to FibroGen before April 6, 2021.

5. To the best of my knowledge, Dr. Yu has given Pillsbury full access to all electronic sources of information potentially relevant to this litigation that were in her possession, custody or control as of April 6, 2021—namely the mobile phone that she retained upon her separation from FibroGen, her personal Gmail and Hotmail accounts, and her personal Dropbox account. All such sources have been properly preserved by or at the direction of Pillsbury and Dr. Yu has facilitated Pillsbury's collection of over 150,000 records from her mobile phone, over 90,000 records from her email accounts, and over 200 records from her Dropbox. Following a review for documents responsive to plaintiffs' document requests, Pillsbury has produced over 10,000 pages of documents on behalf of Dr. Yu from these sources.

6. Notably, all of this collection and production by Dr. Yu is in addition to FibroGen's collection and production in connection with this litigation. As set forth in paragraphs four and five of the Brien Declaration in support of FibroGen's Opposition to Lead Plaintiffs' Motion for Spoliation Sanctions, FibroGen has collected over 600,000 of Dr. Yu's documents, including over 290,000 of Dr. Yu's FibroGen emails and over 30,000 documents from Dr. Yu's FibroGen shared network drive.

**7.** Accordingly, at no time have I or any of the other attorneys representing Dr. Yu had any reason to believe that Dr. Yu engaged in spoliation.

**8.** In advance of the parties' Rule 26(f) conference, all counsel for Dr. Yu carefully considered our obligations under the Federal Rules of Civil Procedure and this Court's Local Rules and standing orders. We did not then and do not now believe anything in those rules requires the affirmative disclosure of document destruction that precedes a duty to preserve during a 26(f) conference. Nevertheless, we also considered our duties to as officers of the Court and our duties to our client, Dr. Yu. In light of all of these obligations, we resolved to disclose the erasure of Dr. Yu's hard drive during the conference if it was necessary to truthfully answer a question raised by Plaintiffs, but not to affirmatively raise the issue at that point—largely because Plaintiffs had not yet served any document requests and thus we had not yet begun any significant review of the document sources described in paragraph 5 above.

**9.** On September 1, 2022, my colleague Bruce Ericson and I participated in the Rule 26(f) conference in this matter on behalf of Dr. Yu. Plaintiffs did not ask any questions during the conference requiring us to disclose the erasure of Dr. Yu's hard drive, nor did we otherwise affirmatively raise the matter.

**10.** On September 16, 2022, Pillsbury served Dr. Yu's Initial Disclosures in this litigation (Pls. Ex. 88). In those disclosures, we accurately stated that documents potentially supportive of Dr. Yu's defenses included "electronically stored information that may be saved on her mobile phone, which has been preserved." Pls. Ex. 88, at 2.

**11.** On October 18, 2022, after lengthy negotiations, the parties jointly filed a Stipulated [Proposed] Order re Discovery of Electronically Stored Information (Dkt. 143). Like the Federal Rules of Civil Procedure and this Court's Local Rules and standing orders, the stipulation required that: "The Parties will disclose promptly upon becoming aware of them any categories or sources of relevant ESI in existence but not preserved *after the time a duty to do so arose*." Dkt. 143 at 3. On October 21, 2022, the stipulation was entered as an order of this Court. *See* Dkt. 145.

LEE BRAND'S DECLARATION OPPOSING MOTION FOR SPOLIATION SANCTIONS

4880-3952-5489.v4    No. 3:21-CV-02623-EMC

**12.** On October 28, 2022, Pillsbury served Defendant K. Peony Yu, M.D.'s Responses and Objections to Lead Plaintiffs' First Request for Production of Documents to All Defendants (Pls. Ex. 56), which included the following:

**DOCUMENT REQUEST NO. 61:**

All Documents and Communications that reflect or describe FibroGen's policies, procedures, and guidelines for the use, destruction, or retention of email, instant messages, or other forms of ESI, including all Documents and Communications concerning any action taken by Neff, any Individual Defendant, FibroGen or its employees or agents to destroy or retain information responsive to these Requests, and any litigation hold implemented in connection with this Action." Pls. Ex. 56 at 36.

**RESPONSE TO DOCUMENT REQUEST NO. 61:**

In addition to the foregoing General Objections, Dr. Yu objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case in seeking "[a]ll Documents and Communications."

Notwithstanding these objections, Dr. Yu has no relevant, non-privileged documents responsive to this Request.

Pls. Ex. 56 at 36. At the time this response was served, we were not aware of some documents directly relating to the erasure of Dr. Yu's hard drive. *See* Pls. Ex. 36, 37, 83. Once we discovered these documents, we promptly produced them. We were aware of some documents relating to Dr. Yu's retrieval of personal information from her hard drive, and her return of her laptop, and we agreed to produce those documents in response to Plaintiffs' document Request No. 53 as documents relating to Dr. Yu's "departure from FibroGen." *Id*. at 32. We did timely produce those documents.

**13.** On November 21, 2022, Plaintiffs sent a letter to Pillsbury raising various discovery questions, including asking for the first time about Dr. Yu's September 16 Initial Disclosures (Pls. Ex. 58). In relevant part, Plaintiffs wrote: "Defendant Yu's Initial Disclosures state that she maintains a personal mobile phone that may contain relevant and discoverable information. Please confirm that Defendant Yu . . . does not have possession, custody, or control of any other sources of ESI (e.g., a tablet, laptop, or other mobile device) or hard copy documents that may contain responsive information." Pls. Ex. 58 at 1.

**14.** On December 6, 2022, I sent a letter responding to the various questions raised in Plaintiffs' November 21 letter (Pls. Ex. 41). Although we could have fully and accurately responded to Plaintiffs' inquiry without raising Dr. Yu's laptop or the erasure of its hard drive—which had not been in Dr. Yu's possession, custody, or control since March 2021—we determined that our

-3-

production review had sufficiently progressed to the point that it would be in Dr. Yu's best interest to affirmatively inform Plaintiffs about the erasure. Accordingly, my December 6 letter included the following statement:

> In March 2021, Dr. Yu shipped her FibroGen issued laptop back to the company in connection with her retirement. She had a vendor erase the laptop's hard drive to avoid any possible disclosure of confidential information in case the laptop went astray while in transit. It is our understanding that all potentially relevant information on that machine was separately maintained on FibroGen's email servers and network drives and has been preserved.

Pls. Ex. 41 at 2.

15.    On December 9, 2022, I met and conferred telephonically with Plaintiffs' counsel Josh Saltzman and Scott Koren to discuss the parties' November 21 and December 6 letters. The entire call lasted roughly ten minutes and Dr. Yu's laptop was just one of several topics discussed.

16.    Nevertheless, a week and a half later, Plaintiffs began sending a flood of requests about the laptop to counsel for FibroGen and Dr. Yu that purportedly required their "immediate attention." This included:

- a December 19, 2022 email to FibroGen's counsel;
- a December 20, 2022 letter to Dr. Yu's counsel (Pls. Ex. 60);
- a December 21, 2022 meet and confer with counsel for both FibroGen and Dr. Yu;
- a December 23, 2022 letter to FibroGen's counsel (Pls. Ex. 61);
- a separate December 23, 2022 letter to Dr. Yu's counsel (Pls. Ex. 62);
- a January 5, 2023 email to Dr. Yu's counsel (Pls. Ex. 63); and
- a January 11, 2023 email to Dr. Yu's counsel (Pls. Ex. 90).

Notably, at no point during that period—or since—have Plaintiffs ever served written discovery requests regarding Dr. Yu's laptop.

17.    On January 6, 2023, Pillsbury made an expedited initial production of 75 pages of documents relevant to Dr. Yu's laptop.

18.    On January 16, 2023, I responded by letter to the various correspondence Plaintiffs had sent since late December (Pls. Ex. 65). The January 16 letter accurately reflected my understanding, at that time, that (a) the same vendor that had been instructed to erase Dr. Yu's hard

-4-

drive had also been instructed to first copy her personal information off that hard drive; and (b) both instructions had been given during the limited period of time from March 16 to 17, 2021, when Dr. Yu had temporary credentials from a FibroGen IT employee to regain access to her laptop.  Pls. Ex. 65, at 3-4.

19.    On January 26, 2023, Plaintiffs sent yet another letter (Pls. Ex. 71).  This time, they requested "depositions of both FibroGen and Dr. Yu regarding the erasure of Dr. Yu's laptop . . . with the understanding that both depositions will be limited in scope to the issue of spoliation only."  Pls. Ex. 71, at 1.

20.    The parties ultimately agreed that Dr. Yu would be deposed on March 10, 2023, and Pillsbury made further productions on behalf of Dr. Yu on January 31, 2023 (3 pages of documents from Dr. Yu's phone reflecting texts with and voicemails from Richard Farley); February 22, 2023 (3,346 pages from Dr. Yu's email, including but not limited to laptop-related issues); and March 9, 2023 (28 pages—27 from Dr. Yu's phone, consisting mostly of images, and a 1-page email).

21.    On March 9, 2023, in the interest of making Dr. Yu's upcoming deposition more efficient for all parties, I also sent an email to Plaintiffs sharing additional information that Dr. Yu had recalled in preparing for that deposition (Pls. Ex. 75).  Specifically, I wrote that: "Dr. Yu now recalls that she copied her personal files (as described further below) before bringing the laptop to the vendor for the hard drive replacement," and that this replacement was done "by the vendor 'Nerds to Go.'"  Pls. Ex. 75, at 2.

22.    My March 9 email also explained that Pillsbury had "conducted an additional non-search term review which broadened the production" beyond the "'spoliation-related search string' . . . identified on the first page of Plaintiffs' February 16 letter."  *Id*.; see also Pls. Ex. 72 (Plaintiffs' letter of Feb. 16, 2022).  For example, the March 9 production included Plaintiffs' Exhibit 83, an image of a Nerds to Go employee snapping in half Dr. Yu's hard drive.  This image was first discovered by Pillsbury earlier that same day, and its discovery is what enabled Dr. Yu to definitively identify the vendor she had visited two years earlier.  It would not have been identified had Pillsbury not elected to expand its review of Dr. Yu's documents beyond Plaintiffs' search terms.

-5-

-6-

**23.** Attached hereto as **Exhibit A** is a true and correct copy of S&P Global Market Intelligence's Transcript of the FibroGen's FQ2 2020 Earnings Call, occurring August 6, 2020.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 17th day of July, 2023, at San Francisco, California.

_____

Lee Brand

LEE BRAND'S DECLARATION OPPOSING MOTION FOR SPOLIATION SANCTIONS

4880-3952-5489.v4                                                                                     No. 3:21-CV-02623-EMC