# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO HEADQUARTERS

| | |
|---|---|
| IN RE FIBROGEN, INC., SECURITIES LITIGATION | No. 3:21-cv-02623-EMC<br><br>**CLASS ACTION**<br><br>**[PROPOSED] ORDER DENYING LEAD PLAINTIFFS' MOTION FOR SPOLIATION SANCTIONS** |

Lead Plaintiffs Employees' Retirement System of the City of Baltimore ("Baltimore Employees"), City of Philadelphia Board of Pensions and Retirement ("Philadelphia Pension Fund"), and Plymouth County Retirement Association ("Plymouth County") (collectively "Lead Plaintiffs" or "Plaintiffs") have moved for sanctions, pursuant to Rules 37(b), 37(e)(1) and 37(e)(2) of the Federal Rules of Civil Procedure and the Court's inherent powers, against Defendants K. Peony Yu, M.D. ("Dr. Yu") and FibroGen, Inc. ("FibroGen"), claiming that Dr. Yu and FibroGen spoliated electronically stored information ("ESI") and hard copy documents. ECF Nos. 184-185.14. Defendants filed memoranda and declarations opposing Lead Plaintiffs' motion for spoliation sanctions (ECF Nos. 196-199.6), Lead Plaintiffs filed reply papers (ECF Nos. ___), and the Court heard oral argument.

Having considered the Motion and all the papers supporting and opposing it, the arguments of counsel, and all other matters properly before the Court, Lead Plaintiffs' Motion for Spoliation Sanctions is **DENIED** for the reasons set forth below.

## I.    LEGAL STANDARD

Spoliation is "the destruction or material alteration of evidence or to the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Apple Inc. v. Samsung Elecs. Co.*, 888 F. Supp. 2d 976, 989 (N.D. Cal. 2012) (citation omitted). To justify sanctions under Rule 37(e), Plaintiffs must show (1) that the alleged spoliating party had a duty to preserve evidence, (2) that evidence was, in fact, lost, (3), that the alleged spoliating party failed to take reasonable steps to preserve the evidence, and (4) that the evidence cannot be restored or replaced through additional discovery. *First Fin. Sec., Inc. v. Freedom Equity Grp., LLC*, No. 15-cv-1893-HRL, 2016 WL 5870218, at *2 (N.D. Cal. Oct. 7, 2016). Plaintiffs have not met their burden of establishing any of these elements.

## II.    ANALYSIS

### A.    Plaintiffs Have Not Shown a Duty to Preserve Existed in February or March 2021

Plaintiffs' motion does not establish that Dr. Yu had a duty to preserve evidence before April 6, 2021, the day FibroGen first sent a legal hold notice to Dr. Yu and issued the press release that led to the filing of this action on April 12, 2021. A party's obligation to preserve evidence for

use in litigation arises when litigation is pending or becomes reasonably foreseeable. *Apple Inc. v. Samsung Elecs. Co.*, 888 F. Supp. 2d 976, 989 (N.D. Cal. 2012); *Best Label Co. v. Custom Label & Decal, LLC*, No. 19-cv-03051-SI (VKD), 2022 WL 1525301, at *2 (N.D. Cal. May 13, 2022). There was no action pending before or on April 6, 2021. Thus, the question is whether litigation was reasonably foreseeable. Reasonable foreseeability is an objective standard that asks "whether a reasonable party in the same factual circumstances would have reasonably foreseen litigation." *Id.*; *Waymo LLC v. Uber Techs.,* Inc, No. C 17-00939 WHA, 2018 WL 646701, at *14 (N.D. Cal. Jan. 30, 2018). A reasonable medical doctor, standing in Dr. Yu's shoes, would not reasonably have foreseen this litigation as of February 16, 2021, March 14, 2021 or March 29, 2021, the dates she took the acts challenged by this Motion.

Plaintiffs argue there are two reasons why Dr. Yu should have foreseen litigation: (1) the FDA's decision to convene an Advisory Committee of outside experts ("AdCom") to evaluate the New Drug Application ("NDA") for roxadustat, and (2) the concerns of Dr. Eisner (who had replaced Dr. Yu as FibroGen's Chief Medical Officer) about the way the NDA labeled the various analyses of roxadustat safety data it presented. Specifically, Dr. Eisner elected to change the labeling from "primary" to "sensitivity" of certain analyses using stratification factors chosen after test data were unblinded, a change on which Plaintiffs base their claims in this action. Plaintiffs' arguments on these points are not persuasive.

***The AdCom:*** The FDA knew FibroGen had used post-unblinding stratification factors, and its stated reasons for convening an AdCom were unrelated to stratification factors. Though FibroGen leadership, including Dr. Yu, expressed confidence in roxadustat, they told investors the FDA might convene an AdCom and that the decision to convene an AdCom was out of FibroGen's control. At meetings with FibroGen personnel on February 24 and March 1, 2021 (March 1 being the date the FDA announced its decision to convene an AdCom), the agency cited concerns about risks of thrombosis, seizure and infection. Cardiovascular safety and mortality were not mentioned, nor were stratification factors.

The FDA knew that some of the analyses in the roxadustat NDA used stratification factors chosen post-unblinding because the NDA so stated, in its Integrated Summary of Safety, or "ISS,"

-2-

entitled Cardiovascular Safety Endpoint Analysis Report." ECF No. 197.6, Ex. N, § 2.8.5. The ISS portion of the NDA lists all the stratification factors FibroGen decided to use. It specifies which were chosen before the data were unblinded and which were added later. *Id.* The FDA never indicated it was unhappy with FibroGen's inclusion of stratification factors chosen after unblinding or its initial decision—prior to April 6, 2021—to label analyses relying on those stratification factors as "primary." On the contrary, in its mock-ups of proposed warning labels for roxadustat, the FDA itself used data derived from analyses including post-unblinding stratification factors. *Id.*, Ex. T.

The FDA Briefing Document submitted to the AdCom stated stratification factors made no difference in the findings of the studies presented in the NDA. ECF. No. 199.2, at 47. At the AdCom itself, there was little if any discussion of stratification factors. A reasonable person in Dr. Yu's shoes would have had no reason to believe, then or now, that the FDA's decision to convene the AdCom would result in this, or any other, litigation.

***Dr. Eisner's concerns:*** Before April 6, 2021, Dr. Yu did not know about Dr. Eisner's concerns about the labeling of the analyses of roxadustat safety data in the NDA, or about FibroGen's preparation of a press release to address these concerns. From November 2020 on, Dr. Yu was transitioning out of FibroGen and increasingly out of the loop at the company. Until April 6, 2021, when she first saw the press release of that date, she did not know that Dr. Eisner had any concerns about the labeling of the statistical analyses of roxadustat safety data. She did not know Dr. Eisner was preparing to present his concerns to FibroGen's board, and she did not know that FibroGen was preparing a press release changing some labels.

FibroGen did not inform Dr. Yu of its plans to release the April 6, 2021 press release or show her any drafts of it. She first found out about the press release when she read it online on April 6, 2021. Before that date, no one from FibroGen sent Dr. Yu a legal hold notice. Before she received the legal hold notice on April 6, no one at FibroGen told her they anticipated litigation, or told her anything that caused her to expect litigation against FibroGen, much less litigation against her. Dr. Yu was not told that FibroGen was consulting with counsel about her laptop or about potential litigation. Until April 6, she had no reason to believe FibroGen was about to do anything that might call into question her team's work or might lead to litigation. Though Dr. Yu was first asked on

[PROPOSED] ORDER DENYING LEAD PLAINTIFFS' MOTION FOR SPOLIATION SANCTIONS
4887-9129-6881                                                    No. 3:21-CV-02623-EMC

March 30, 2021 to sit for an interview with a law firm retained by FibroGen (Arnold & Porter), and actually sat for that interview on April 2, 2021, Arnold & Porter did not tell her the purpose of its assessment, tell her to preserve documents, or ask her about documents.  And even if it had, that information would have still post-dated March 29, 2021, the date that the final act of alleged spoliation challenged by this Motion occurred.  A reasonable person in Dr. Yu's position would not have anticipated litigation before April 6, 2021, much less on March 29.

*Motive:*  Plaintiffs do not offer evidence establishing that Dr. Yu had any motive to hide or destroy information about the stratification factors used in roxadustat safety analyses presented in the NDA.  Disclosure of those stratification factors, including that some were chosen post-unblinding, had been made to the FDA in the NDA in December 2019, over a year before the events challenged by this Motion.  The changes made by Dr. Eisner in April 2021 were changes in labeling – he presented no new data and no new analyses.  For non-dialysis dependent patients (NDD), he swapped the labels "primary" and "sensitivity" on ISS Tables 6 and 20.  Table 6 had been labeled "primary"; it became "sensitivity."  Table 20 had been labeled "sensitivity"; it became "primary."  ECF No. 197.6, Ex. N, at 45, 71.  Similarly, for dialysis dependent patients (DD), he swapped the labels "primary" and "sensitivity" on ISS Tables 22 and 31.  Table 22 had been labeled "primary"; it became "sensitivity."  Table 31 had been labeled "sensitivity"; it became "primary."  *Id.* at 81, 96.  Similarly, for incident dialysis patients (ID), he swapped the labels "primary" and "sensitivity" on ISS Tables 36 and 44.  Table 36 had been labeled "primary"; it became "sensitivity."  Table 44 had been labeled "sensitivity"; it became "primary."  *Id.* at 104, 121.  Any attempt to destroy or hide these disclosures would have been pointless and futile because all this information had been presented to the FDA in December 2019.  ECF No. 199.1, ¶¶ 32, 34.

On these facts, the cases cited by Lead Plaintiffs do not create a duty to preserve.  In *Leon v. IDX Sys. Corp.,* 464 F.3d 951, 959 (9th Cir. 2006), and *WeRide Corp. v. Kun Huang*, No. 5:18-cv-07233-EJD, 2020 WL 1967209, at *2 (N.D. Cal. Apr. 24, 2020), the parties accused of spoliation had erased files after retaining counsel and suing (*Leon*) or after retaining counsel and actively worrying about being sued (*WeRide*).  In *Doubleline Capital LP v. Odebrecht Finance, Ltd.*, No. 17-CV-4576 (GHW) (BCM), 2021 WL 1191527, at *2, *6 (S.D.N.Y. Mar. 30, 2021), the only duty to

-4-

preserve authority cited by Plaintiffs that does not rely on retention of counsel, the court found a duty to preserve evidence because the spoliating party "knew (and had known for months) that their international bribery scheme was the subject of many investigations," including by authorities in the United States, Switzerland, and Brazil. Plaintiffs offer no evidence that Dr. Yu had or reasonably should have had any such concerns. Rather, the evidence establishes that she had no reason to know that FibroGen's April 6, 2021 press release was in the works or of the litigation it would spark.

**B.      Plaintiffs Have Not Shown Evidence Was Lost**

Spoliation will not be found unless the movant can show ESI was, in fact, lost and cannot be retrieved from other custodians or sources. *See, e.g., Oracle Am., Inc. v. Hewlett Packard Enter. Co.*, 328 F.R.D. 543, 549, 552 (N.D. Cal. 2018). Sanctions under Rule 37(e) are "foreclosed if the purportedly 'lost' electronically stored information may be retrieved from additional discovery or discovery from third parties." *Envy Hawaii LLC v. Volvo Car USA LLC*, Civ. No. 17-00040 HG-RT, 2019 WL 1292288, at *3 (D. Haw. Mar. 20, 2019).

Plaintiffs have not met their burden to show evidence was actually lost. There is no evidence that Dr. Yu's hard drive contained anything unique, and her hard copy documents were all printouts of documents saved elsewhere on FibroGen's servers. Dr. Yu's role as CMO was supervisory and collaborative. Dr. Yu received the documents she worked on via email, and she sent her comments and revisions via email, all of which were stored centrally on FibroGen's servers. On the rare occasion Dr. Yu generated original content or created a document herself, she shared it via email or saved it to folders on FibroGen's network. Dr. Yu testified that it was her practice to save all documents to the FibroGen network, and to her belief that FibroGen's IT department backed up all of this material, as well as anything on her hard drive, from time to time.

Though Dr. Yu had accumulated six boxes of printed documents at her home by the time her employment at FibroGen ended, Plaintiffs offer no evidence that these boxes contained unique documents that did not exist elsewhere on FibroGen's network. During her recovery from surgery to correct a detached retina, Dr. Yu had her assistant print and deliver documents to her home so she could review them in hard copy. By definition, these documents were either sent via email or already accessible on the FibroGen network. These documents were not unique. They existed on

-5-

FibroGen's servers regardless of what happened to the hard copies. There also is evidence that Dr. Yu's practice was not to make handwritten notes on these documents and that Dr. Yu's assistant, Carrie Autrand, did not observe any handwriting or interlineations on these documents when Ms. Autrand shredded them after Dr. Yu returned the six boxes to FibroGen. ECF No. 197.1.

Plaintiffs have not shown discrepancies between Dr. Yu's and FibroGen's productions, nor do they claim those productions appear to be missing documents. *See Oracle*, 328 F.R.D. at 553. Dr. Yu has testified that she did not and does not believe that any FibroGen-related documents on her hard drive or in the boxes of hard copy documents were unique. Plaintiffs have not offered any basis for concluding these documents are "irretrievable from another source, including other custodians." *Agility Pub. Warehousing Co. K.S.C. v. Dep't of Def.*, No. 14-1064 (JDB), 2017 WL 1214424, at *2 (D.D.C. Mar. 30, 2017). Sanctions are not available here because Plaintiffs' burden of proving uniqueness has not been met.

**C.      Plaintiffs Have Not Shown Dr. Yu Acted with Intent to Deprive**

Plaintiffs have not established that Dr. Yu acted with an intent to deprive any party of evidence for the same reason their other arguments fail: Dr. Yu did not anticipate litigation or destroy anything related to roxadustat that she believed was unique. Dr. Yu could not have acted "with the intent to deprive another party of the information's use in the litigation," because she did not conceive of litigation at all. *See hiQ Labs, Inc. v. LinkedIn Corp.*, No. 17-cv-03301-EMC, 2022 WL 18399982, at *18 (N.D. Cal. Nov. 4, 2022). Neither the circumstances nor the timing of Dr. Yu's actions show an intent to deprive anyone of evidence.

Often "[t]he most decisive factor in the intent analysis is the timing of the offending conduct." *hiQ Labs*, 2022 WL 18399982, at *20 (internal brackets and quotations omitted). But the timing of Dr. Yu's conduct does not suggest any intent to deprive. Dr. Yu replaced her hard drive on March 29, 2021, more than one week before she learned of FibroGen's April 6 press release or received a litigation hold notice. ECF No. 199.1, ¶¶ 43-51. She turned over the contents of her office on February 16, 2021, before the FDA had even mentioned it might convene an AdCom, and she returned her six boxes of hard copy documents to FibroGen more than three weeks before FibroGen issued and she received the April 6 litigation hold. *Id.* ¶¶ 35-42. Unlike *Fed. Trade*

-6-

*Comm'n v. Noland*, No. CV 20-00047-PHX-DWL, 2021 WL 3857413, at *12 (D. Ariz. Aug. 30, 2021), where defendants installed "elaborate encrypted privacy-focused apps" *one day after* they discovered they were being investigated by the FTC, Dr. Yu acted days and weeks before she had any idea litigation was possible.  The email on March 29, 2021 from Human Resources instructing Dr. Yu not to delete information from her laptop is immaterial, because it contained no hint about possible litigation or the events leading to the April 6, 2021 press release.

Dr. Yu's behavior after learning of this litigation also rebuts any inference that she intended to deprive anyone of evidence.  She turned over what remained in her possession, custody or control – her cell phone, her Dropbox account and her personal Gmail and Hotmail accounts – to her counsel, sources yielding over 240,000 documents, over 10,000 pages of which were later produced as responsive to Plaintiffs' document requests.  The produced documents included photographs of the boxes of documents she returned to FibroGen and of the vendor destroying the hard drive taken from her company-issued laptop.  ECF No. 199.1, ¶ 55; ECF No. 199.5.  This record of cooperation in discovery, and Dr. Yu's photographic documentation of the relinquishment of her FibroGen materials, is inconsistent with the notion that she intended spoliation before she even knew of this litigation or the corporate decisions that led to it.

**D.    Plaintiffs' Requested Sanctions Are Unwarranted**

Plaintiffs seek a default judgement against Dr. Yu and FibroGen or, in the alternative, an order granting a mandatory adverse inference against both of these Defendants on the elements of falsity and scienter.  Courts generally do not impose such terminating sanctions unless a moving party demonstrates both bad faith and "severe prejudice." *Fourth Dimension Software v. DER Touristik Deutschland GmbH*, No. 19-cv-05561-CRB (AGT), 2021 WL 5919821, at *11 (N.D. Cal. Dec. 15, 2021) (finding under Rule 37(e)(2) that, where the moving party "ha[d] not shown that it suffered severe prejudice," "dismissal and default judgment—the two most severe forms of sanction—[we]re out of the question"); *see, e.g., Lofton v. Verizon Wireless (VAW) LLC*, 308 F.R.D. 276, 291 (N.D. Cal. 2015) (even where spoliating parties "acted with willfulness and improper purpose in the course of some of its discovery conduct . . . lesser sanctions suffice").

Plaintiffs have not demonstrated that Dr. Yu or FibroGen acted with an intent to deprive, nor

-7-

have Plaintiffs demonstrated prejudice.  Dr. Yu and FibroGen have preserved and collected more than 750,000 documents (including over 380,000 emails) from Dr. Yu's personal and professional email accounts, network drives, Dropbox account, and cell phone.  ECF No. 197.6, ¶ 4, at 2; ECF No. 199.5, ¶ 5, at 1.

Good cause appearing therefor, **IT IS HEREBY ORDERED** that Lead Plaintiffs' Motion for Spoliation Sanctions is **DENIED**.

**IT IS SO ORDERED**.

Dated: _____, 2023

_____
Honorable Edward M. Chen
United States District Judge