**SAXENA WHITE P.A.**
David R. Kaplan (SBN 230144)
dkaplan@saxenawhite.com
505 Lomas Santa Fe Drive, Suite 180
Solana Beach, CA 92075
Tel.: (858) 997-0860
Fax: (858) 369-0096

*Counsel for Lead Plaintiffs Employees' Retirement
System of the City of Baltimore, City of
Philadelphia Board of Pensions and Retirement,
and Plymouth County Retirement Association, and
Lead Counsel for the Proposed Class*

*[Additional Counsel listed on Signature Page]*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE FIBROGEN, INC., SECURITIES LITIGATION | Case No. 3:21-cv-02623-EMC<br><br>**<u>CLASS ACTION</u>**<br><br>LEAD PLAINTIFFS' REPLY IN FURTHER SUPPORT OF MOTION FOR SPOLIATION SANCTIONS<br><br>Hearing Date: August 31, 2023<br>Time: 1:30 p.m.<br>Courtroom 5-17th Floor<br>Judge: Hon. Edward M. Chen |

PUBLIC REDACTED VERSION

## TABLE OF CONTENTS

I.    PRELIMINARY STATEMENT.................................................................................................1

II.   ARGUMENT .....................................................................................................................5

      A.    Yu And FibroGen Had A Clear Duty To Preserve The ESI On The Laptop................5

      B.    Defendants Failed To Take Reasonable Steps To Preserve Evidence, And
            Acted In Bad Faith And With Intent to Deprive .............................................................9

      C.    The Destroyed Evidence Cannot Be Restored Or Replaced Through
            Additional Discovery, And Plaintiffs Are Severely Prejudiced As A Result ............16

      D.    Terminating Sanctions Are Appropriate ......................................................................19

III.  CONCLUSION ................................................................................................................20

**LP'S REPLY IFSO MOTION FOR**
**SPOLIATION SANCTIONS**
3:21-cv-02623-EMC

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Aberin v. American Honda Motor Co, Inc.*,
2017 WL 6493095 (N.D. Cal. Dec. 19, 2017)...................................................................................6

*Agility Public Warehousing Co. K.S.C. v. Dept. of Defense*,
2017 WL 1214424 (D.D.C. Mar. 30, 2017) ....................................................................................19

*Anheuser-Busch, Inc. v. Nat. Beverage Distributors*,
69 F.3d 337 (9th Cir. 1995) ...........................................................................................................20

*Apple, Inc. v. Samsung Elecs. Co. Ltd.*,
888 F. Supp. 2d 976 (N.D. Cal. 2012).............................................................................................18

*Belew-Nyquist v. Quincy School District No. 144*,
2020 WL 6845934 (E.D. Wash. Nov. 20, 2020) .............................................................................19

*Best Label Co. v. Custom Label & Decal, LLC*,
2022 WL 1525301 (N.D. Cal. May 13, 2022)...........................................................................6, 18

*Clear-View Techs., Inc. v. Rasnick*,
2015 WL 2251005 (N.D. Cal. May 13, 2015)..................................................................................20

*Colonies Partners, L.P. v. County of San Bernadino*,
2020 WL 1496444 (C.D. Cal. Feb. 27, 2020) ..................................................................................5

*Est. of Hill v. NaphCare, Inc.*,
2022 WL 1464830 (E.D. Wash. May 9, 2022)..................................................................................12

*Facebook, Inc. v. OnlineNIC Inc.*,
2022 WL 2289067 (N.D. Cal. Mar. 28, 2022) ..........................................................................18, 19

*Fourth Dimension Software v. DER Touristik Deutschland GmbH*,
2021 WL 5919821 (N.D. Cal. Dec. 15, 2021)..................................................................................20

*FTC v. Lights of America Inc.*,
2012 WL 695008 (C.D. Cal. Jan. 20, 2012) .....................................................................................8

*Gemsa Enterprises LLC v. Specialty Foods of Alabama, Inc.*,
2015 WL 12746220 (C.D. Cal. Feb. 10, 2015) ...............................................................................14

*GN Netcom, Inc. v. Plantronics, Inc.*,
2016 WL 3792833 (D. Del. July 12, 2016) ...............................................................................10, 13

*Hice v. Lemon*,
2021 WL 6053812 (E.D.N.Y. Nov. 17, 2021) .................................................................................12

*In re FibroGen, Inc.*,
  2022 WL 2793032 (N.D. Cal. July 15, 2022) ...............................................................12

*In re Hitachi Television Optical Block Cases*,
  2011 WL 3563781 (S.D. Cal. Aug. 12, 2011).................................................................12

*Jennings v. Frostburg State Univ.*,
  2023 WL 4567976 (D. Md. June 27, 2023)......................................................................7

*Leon v. IDX Sys. Corp.*,
  464 F.3d 951 (9th Cir. 2006) ..................................................................................19, 20

*Lofton v. Verizon Wireless (VAW) LLC*,
  308 F.R.D. 276 (N.D. Cal. 2015) .................................................................................20

*McLaughlin v. Lenovo Glob. Tech. (United States) Inc.*,
  2023 WL 4602089 (D. Mass. July 18, 2023) ...................................................10, 11, 17

*Nathanson v. Polycom Inc*,
  87 F. Supp. 3d 966 (N.D. Cal. 2015)..............................................................................14

*Nutrition Distribution LLC v. PEP Rsch., LLC*,
  2018 WL 6323082 (S.D. Cal. Dec. 4, 2018) ..................................................................12

*NuVasive, Inc. v. Day*,
  2021 WL 9059745 (D. Mass. Aug. 23, 2021) ...........................................................17, 19

*OmniGen Rsch. v. Yongqiang Wang*,
  321 F.R.D. 367 (D. Or. 2017).........................................................................................17

*Oracle America Inc v. Hewlett Packard Enterprise Co.*,
  328 F.R.D. 543 (N.D. Cal. 2018) ...................................................................................19

*Ryan v. Editions Ltd. West, Inc.*,
  786 F.3d 754 (9th Cir. 2015) ..........................................................................................19

*Skyline Advanced Tech. Servs. v. Shafer*,
  2020 WL 13093877 (N.D. Cal. July 14, 2020) ................................................................8

*Volcan Grp., Inc. v. T-Mobile USA, Inc.*,
  940 F. Supp. 2d 1327 (W.D. Wash. 2012) ....................................................................12

*Wisk Aero LLC v. Archer Aviation Inc.*,
  2023 WL 2277112 (N.D. Cal. Feb. 28, 2023) ...............................................................12

*WPP Luxembourg Gamma Three SARL v. Sport Runner, Inc.*,
  655 F.3d 1039 (9th Cir. 2011) ........................................................................................14

*Zucchella v. Olympusat, Inc.*,
  2021 WL 8317028 (C.D. Cal. Dec. 20, 2021).............................................................5, 6

**LP'S REPLY IFSO MOTION FOR
SPOLIATION SANCTIONS**
3:21-cv-02623-EMC

## REPLY MEMORANDUM OF POINTS AND AUTHORITIES

I.     PRELIMINARY STATEMENT[1]

The undisputed facts of Defendants' conduct present a clear-cut case of spoliation warranting terminating sanctions.  On the afternoon of March 29, 2021—a mere eight days before FibroGen publicly disclosed that its Roxadustat safety analyses had been manipulated "post hoc," ███████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████— Defendant Yu, FibroGen's former CMO and the senior officer ███████████████ ██████████, completely and intentionally destroyed the hard drive of her FibroGen-issued laptop, her sole work computer.  The destruction of the laptop was no accident.  ██████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ██████████.  And Yu made sure that no one would ever be able to recover a single document from her laptop—████████████████████████████████████████, she proceeded to research the best way to eradicate a hard drive, and then went to the trouble of taking it to a vendor called "NerdsToGo" in Bellevue, WA, where she watched that vendor break her hard drive into pieces.  In so doing, ████████████████████████████████████████████████ ███████████████████████.  These actions are the very definition of spoliation.

Yu's deliberate destruction of this evidence was no innocent "coincidence."  To the contrary, it occurred in the midst of a rising tide of events that made crystal clear to both Yu and FibroGen that Defendants' fraud was unraveling and that litigation was imminent.  Indeed, by this time, ██████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████; the FDA had called an AdCom to

---

[1] "Motion" or "Mot." refers to Plaintiffs' Motion for Spoliation Sanctions, ECF No. 185.  All capitalized terms, unless otherwise noted, have the same meaning as in the Mot.  "YO" refers to Yu's opposition to the Motion (ECF No. 199), and "FO" refers to FibroGen's opposition to the Motion (ECF No. 197).  "Ex." refers to exhibits of the Declaration of Lester R. Hooker attached hereto. Unless otherwise noted, all internal quotations are omitted, and all emphasis is added.

LP'S REPLY IFSO MOTION FOR
**SPOLIATION SANCTIONS**
3:21-cv-02623-EMC

scrutinize the Roxadustat NDA; ███████████████████████████████████

███████████████████████████████████████████████████████; on March 1, 2021, FibroGen stunned investors by disclosing the AdCom, which caused an immediate decline in the price of the stock; the AdCom disclosure caused a law firm to issue a press release announcing that it was investigating the Company for securities fraud; ██████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

████████████████████████. ████████████████████████████████████

████████████████████████ ██████████████████████████████████████

███████████████████████████████████████████████████████████████

█████████████████████████████████. Nothing in Defendants' over 1,100 pages of opposition briefing, fact declarations, or exhibits calls any of these damning facts into question.

Defendants nonetheless ask the Court to believe that the timing of Yu's destruction of her laptop was mere happenstance, that it had nothing to do with their data manipulations (██████████

████████), and that no spoliation occurred. Defendants' arguments fail.

*First*, Defendants assert that they had no duty to preserve evidence on March 29, 2021 because they purportedly had no idea as of that date that litigation was reasonably foreseeable—a notion that defies credulity. As set forth herein, there were a plethora of facts that put FibroGen and Yu on notice that litigation was reasonably likely to occur. ████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████. In addition, despite claiming naivete, Yu was a sophisticated C-suite officer who for years had repeatedly spoken to investors about the manipulated Roxadustat data analyses. Moreover, there

**LP'S REPLY IFSO MOTION FOR SPOLIATION SANCTIONS**
3:21-cv-02623-EMC

is no dispute that, before Yu intentionally destroyed her laptop, ████████████ ████████████████████████████████████████████████, making her duty to preserve crystal clear.  In sum, these cold, hard facts are the epitome of spoliation.

*Second*, Defendants' completely unsupported assertion that any relevant information on Yu's destroyed hard drive would have been duplicated on FibroGen's servers is unavailing. ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████.

*Third*, Defendants' insistence that, even assuming they spoliated evidence, they did not do so intentionally, is wholly belied by the facts.  Yu's intent is evident, ████████████ ████████████████████████████████████████████████ ████████████████████████████████████████.  Indeed, instead of taking reasonable steps to preserve evidence, Yu took extraordinary steps to eradicate it, by first extensively researching how to erase her hard drive, and then paying an outside vendor to physically break it in two and throw away the pieces. ████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████

LP'S REPLY IFSO MOTION FOR
SPOLIATION SANCTIONS
3:21-cv-02623-EMC



FibroGen's intent is also easily established.

FibroGen's conduct represents the opposite of taking "reasonable steps" to ensure preservation.

Additionally, Defendants' bad faith and intent to deprive is underscored by their willful and prolonged failure to disclose Yu's destruction of her sole work computer. Indeed, in response to Plaintiffs' requests for more information, Defendants trickled out half-truths and misleading claims for months—including going so far as to falsely assert that Plaintiffs' spoliation claims were baseless because Yu had purportedly erased the hard drive weeks earlier, on March 16, 2021. Defendants' willful obfuscation went to such extraordinary lengths that, in their opposition papers, Defendants' counsel explicitly acknowledge that they met in advance of discovery and jointly decided that they would not disclose Yu's intentional destruction of her work computer unless Plaintiffs specifically inquired about it—but even after Plaintiffs asked about potential loss of ESI, Defendants still concealed Yu's spoliation. Such conduct not only violates the Federal Rules of Civil Procedure and the Local Rules of this Court, but it also begs the question: Why, if Yu's

conduct was so innocent and meaningless, did Defendants go to such efforts to hide it?

Finally, Defendants argue that terminating sanctions are not warranted because Plaintiffs suffered no prejudice due to the ostensibly large number of documents Defendants have produced, but no volume of documents can make up for the fact that Yu—the Company's former CMO who ███████████████████████████████—destroyed the hard drive of her sole work computer. This is particularly true given that former CEO Tom Neff—the other most significant figure in the case from whom Defendants still have produced *fewer than 280 emails*—is deceased and cannot be deposed. And as set forth above, Defendants have produced no evidence, other than Yu's conclusory declaration, that the ████████ of intentionally destroyed files were duplicated elsewhere. To the contrary, the extraordinary lengths to which Yu resorted in completely destroying her hard drive—coupled with her bad faith conduct in an apparent effort to conceal her improper actions—confirm that this evidence was very likely key to Plaintiffs' claims.

Plaintiffs respectfully submit that the egregiousness of Defendants' spoliation, their bad faith conduct prior to and throughout the litigation, and the resulting irrevocable prejudice to Plaintiffs, warrant terminating sanctions. Any lesser sanction is insufficient to address Defendants' flagrant disregard of their preservation and discovery obligations and will not ensure that Plaintiffs' claims get a fair hearing at trial.

## II.    ARGUMENT

### A.    Yu And FibroGen Had A Clear Duty To Preserve The ESI On The Laptop

As set forth in Plaintiffs' Motion, the duty to preserve "extends to that period before the litigation when a party reasonably should know that the evidence may be relevant to anticipated litigation." *Colonies Partners, L.P. v. County of San Bernadino*, 2020 WL 1496444, at *6 (C.D. Cal. Feb. 27, 2020). As such, "[a]s soon as a *potential* claim is identified, a litigant is under a duty to preserve evidence which it knows or reasonably should know is relevant to the action." *Zucchella v. Olympusat, Inc.*, 2021 WL 8317028, at * 3 (C.D. Cal. Dec. 20, 2021); Mot at 17. Here, the events leading up to Yu's destruction of her hard drive on March 29, 2021 made clear that litigation was highly probable, if not a virtual certainty.

As set forth in the Motion, ████████████████████████████████████

LP'S REPLY IFSO MOTION FOR
SPOLIATION SANCTIONS
3:21-cv-02623-EMC

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████

The following day, on March 1, 2021, FibroGen disclosed that the FDA would convene a late-cycle AdCom, which raised "red flags" for analysts, who found the development "hard [to] reconcile[e] with Defendants' past statements." *Id.* at 4.  Immediately following this disclosure, FibroGen's stock dropped 32% in one day, and analysts opined that the announcement could reflect undisclosed safety issues.[2] *Id.*  The disclosure led a major securities litigation firm to issue a press release investigating potential litigation, █████████████████████████████

█████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

---

[2] While Defendants downplay the significance of this corrective disclosure (FO at 13, YO at 5-6), ████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████

[3] Defendants' contrary cases are inapposite.  For example, FibroGen cites *Aberin v. American Honda Motor Co, Inc.*, 2017 WL 6493095, at *2 (N.D. Cal. Dec. 19, 2017) for the proposition that "following such a stock drop securities class actions are possible, but 'the fact that someone could file a complaint or might file a complaint is not enough.'"  FO at 13.  However, *Aberin* was in fact a <u>consumer</u> case involving common auto defects, and ████████, no one had instructed the owners to preserve the evidence—their cars, which they sold before filing their lawsuits.  And in *Best Label Co. v. Custom Label & Decal, LLC*, 2022 WL 1525301, at *2 (N.D. Cal. May 13, 2022) (FO at 12), the court found one former employee *did* have a duty to preserve after receiving a letter instructing him to "certify that he had … not retained" company information.

**LP'S REPLY IFSO MOTION FOR SPOLIATION SANCTIONS**
3:21-cv-02623-EMC

████████████████████████████████████████████████████████

████████████████████████████████████

Moreover, several undisputed facts confirm that Defendants <u>actually foresaw</u> litigation by March 29, 2021. ████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████[4]████████████

████████████████████████████████████████████████████████

████████████ Mot. at 5, 8; FO at 8; *Jennings v. Frostburg State Univ.*, 2023 WL 4567976, at *34 (D. Md. June 27, 2023) ("sophisticated entity" anticipated litigation where privilege log entries reflected legal advice on subject of litigation shortly before it commenced).

In addition, ████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████.[5] ██████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████.[6] ████████████

---

[4] FibroGen's hair-splitting distinction that Gibbs, Dwyer, and others at Cooley were acting as "disclosure" counsel rather than "litigation" counsel in March 2021 is unavailing. FO at 13-14. While Gibbs avers that he sometimes consults on disclosures (ECF No. 197-4 at ¶3), this is obviously because those disclosures often lead to securities litigation. Nothing in Gibbs' Declaration or biography suggests that he advises on routine disclosure matters, and there was nothing routine about the disclosures at issue here, both of which caused precipitous stock drops.

[5] ████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████

[6] ████████████████████████████████████████████████████████

**LP'S REPLY IFSO MOTION FOR SPOLIATION SANCTIONS**
3:21-cv-02623-EMC

Moreover, Defendants' oppositions reveal additional facts that only further confirm they unquestionably foresaw litigation by March 29, 2021. .[7]

Unable to avoid the litany of facts that make clear that litigation was imminent by March 29, 2021, Defendants attempt to downplay each fact in isolation. For example, FiboGen argues, generically, that an investor litigation press release *alone*, or that disclosure of an AdCom *alone*, would not have caused them to anticipate litigation. FO at 13. But this ignores that "the reasonable foreseeability of litigation is a flexible, fact-specific, and objectively-determined inquiry," and thus depends on the entire context. *Skyline Advanced Tech. Servs. v. Shafer*, 2020 WL 13093877, at *8 (N.D. Cal. July 14, 2020), *report and recommendation adopted*, 2020 WL 13093878 (N.D. Cal. July 30, 2020). Here, it is abundantly clear from the totality of facts surrounding these highly significant corrective disclosures that litigation was imminent and all but inevitable.[8]



[8] Plaintiffs also note that even Mr. Gibbs acknowledges that 164 of 248 of the companies for which the law firm at issue put out press releases wound up as the subject of related securities litigation. ECF No. 197-4 at ¶11. A 61% chance of being sued, by definition, means that litigation is probable.

**LP'S REPLY IFSO MOTION FOR
SPOLIATION SANCTIONS**
3:21-cv-02623-EMC

Yu's arguments fare no better. While Defendants attempt to portray Yu as a mere "medical doctor" who could not possibly understand or anticipate securities litigation (*e.g.* YO at 4), Yu had in fact served as the C-level executive of a multi-billion-dollar publicly traded corporation for years, and ███████████████████████████████████████████████████████████ ███████████████████████████████████████. Moreover, Yu spoke to FibroGen's investors during key investor calls and presentations throughout the Class Period—indeed, Yu made a large percentage of the false statements the Court sustained in this action—and she knew full well that corrective disclosures frequently lead to securities litigation, particularly where, as here, the ensuing stock drops were large. Mot. at 18; ECF No. 126-1. Further, at the time Yu destroyed her laptop's hard drive, she was fully aware of the facts that: (i) █████ ███████████████████████████████████████ ████████████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████; and (iv) the disclosure of the AdCom on March 1, 2021 had caused a precipitous 32% drop in FibroGen's stock price. Mot. at 3-4; *infra* at n. 6, 13. ███████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████

In sum, both FibroGen and Yu anticipated or reasonably should have anticipated litigation throughout March 2021, and certainly by the time Yu destroyed the hard drive on March 29, 2021.

**B.     Defendants Failed To Take Reasonable Steps To Preserve Evidence, And Acted In Bad Faith And With Intent to Deprive**

Neither FibroGen nor Yu can dispute the most critical fact warranting spoliation sanctions: that Yu intentionally destroyed the hard drive of her sole work computer ███████████████ ███████████████████████████████████████████████████████. As the Motion

made clear, intentional destruction of ESI is "the opposite of taking reasonable steps to preserve ESI." Mot. at 19, quoting *GN Netcom, Inc. v. Plantronics, Inc.*, 2016 WL 3792833, at *6 (D. Del. July 12, 2016). Yu's concession that she intentionally destroyed relevant ESI ████████████ ██████████████ alone is sufficient to warrant sanctions. *See, e.g., McLaughlin v. Lenovo Glob. Tech. (United States) Inc.,* 2023 WL 4602089, at *10 (D. Mass. July 18, 2023) (finding intent to deprive where party "destroyed the content of the hard drive of the Laptop, with full knowledge that the Laptop and the content thereon belonged to [employer]," and "was advised immediately upon the termination of his employment to return the Laptop–instead he wiped it clean.").

Recognizing that she cannot escape from these incontrovertible facts, Yu has now abandoned the claim she made during her deposition that she did not see the March 29, 2021 email █████████████████████████████████████ until the day after she went to the vendor to have the hard drive destroyed. Specifically, Yu testified under oath that she "recalled" that her "reaction to [the March 29, 2021 email]" occurred only <u>after</u> her hard drive had been destroyed, on her way to ship the laptop back to FibroGen—at which point she purportedly thought to herself: "Oh, that's too late, what's done is done."[9] However, in their Motion, Plaintiffs pointed out that this was implausible because ██████████████████████████████ ████████████████████████ ████████████████████████ ██████ Mot. at 8. Tellingly, Yu now no longer makes that claim.

Instead, Yu now claims that she did not act with "intent to deprive" because she was ████████████████████████████ ██████████████████████ ████████████████████████████████. YO at 16-17. But this, too, wholly fails. First, Yu's story is not credible. Her story represents a complete about-face from her prior representations, through her counsel, that she had "erased" the laptop's hard drive because she was concerned it could go "astray in transit"—████████████████████—and that she had done so two weeks earlier, on March 16, 2021, not on March 29, 2021. Mot. at 9, 13.

[9] See Ex. 20 at 79:18-80:2. ("Q. And when -- when do you recall reading this e-mail? A. I re- -- this e-mail brings me back memory as to when I was -- picked up my laptop from the vendor on the way to ship. And I go, 'Oh, that's too late. What's done is done.' That's what I recall about [my] reaction to this e-mail. Q. So you recall reading -- the first time you read this e-mail, you had already deleted or instructed a vendor to delete information from the laptop? A. Correct.").

LP'S REPLY IFSO MOTION FOR
SPOLIATION SANCTIONS
3:21-cv-02623-EMC

During her deposition, Yu admitted under oath that these representations were utterly <u>false</u>, and gave an entirely new justification, undermining her credibility.  Ex. 20 at 104:23-105:2.

Second, it is inconceivable that a former C-suite executive would intentionally destroy critical ESI and Company property to ██████████  ██████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████[10]  Exs. 27 at 583; 35.

Third, Yu's claim is contradicted by the evidence, ████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████████.

Fourth, Defendants provide no evidence supporting Yu's new story beyond Yu's own say-so, and tellingly have failed to submit any declaration from ████, or anyone else, corroborating Yu's story. ██████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████.  Ex. 27 at 582; s*ee, e.g., McLaughlin*, 2023 WL 4602089, at *10 (intent to deprive where proffered excuse for erasing company laptop after being told to return it was "not a logical argument.").  Finally, even if Yu truly acted ████████████████, there was still absolutely no justification for her to completely destroy her laptop, let alone to do so in direct violation of FibroGen's orders.

Thus, Yu's ever shifting stories and her "lack of any legitimate explanation for the destruction of evidence establishes [her] bad faith" and supports a finding of intent to deprive

---

[10] ███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

**LP'S REPLY IFSO MOTION FOR
SPOLIATION SANCTIONS**
3:21-cv-02623-EMC

Plaintiffs of critical evidence.[11] *Nutrition Distribution LLC v. PEP Rsch., LLC*, 2018 WL 6323082, at *2 (S.D. Cal. Dec. 4, 2018); *see also Volcan Grp., Inc. v. T-Mobile USA, Inc.*, 940 F. Supp. 2d 1327, 1336 (W.D. Wash. 2012), *aff'd sub nom. Volcan Grp., Inc. v. Omnipoint Commc'ns, Inc.*, 552 F. App'x 644 (9th Cir. 2014) ("In the absence of a satisfactory explanation, tampering with relevant evidence also gives rise to a finding of spoliation"); *Est. of Hill v. NaphCare, Inc.*, 2022 WL 1464830, at *13 (E.D. Wash. May 9, 2022) ("absence of a credible explanation" for spoliation supported imposition of default judgment); *Hice v. Lemon*, 2021 WL 6053812, at *6 (E.D.N.Y. Nov. 17, 2021) (intent to deprive where documents "belie[d]" the spoliating party's "proffered excuse for destroying the evidence.").

Nor does Yu's claim that she "had no intent, motive or reason to deprive" because she "believed at the time and still believes that the statistical approach FibroGen took on her watch was scientifically appropriate" help her case. YO at 8. Yu's own replacement, Defendant Eisner—a highly qualified senior medical executive who FibroGen's website touts as having 30 years of experience in drug trials and approvals— ██████████████████████████ ██████████████████████ ████████████████ ████████████████████████████ ██████████████████████████ ████████████████████ Mot. at 4-5. And as the Court recognized in its decision denying Defendants' motions to dismiss, after the April 6, 2021 disclosure was made, a plethora of industry experts, investment analysts, and scientists ████████ ██████████ *See, e.g.,* Complaint ¶¶89-101, 115-19 (quoting commentators who excoriated Defendants for "touting false heart safety data for [Roxadustat] for at least two years," and opined that FibroGen's "data doctoring" represented "the worst case of data manipulation in years"); *see In re FibroGen, Inc.*, 2022 WL 2793032, at *22 (N.D. Cal. July 15, 2022) ("Scienter

---

[11] Unlike Yu, the employee in *Wisk Aero LLC v. Archer Aviation Inc.*, 2023 WL 2277112, at *8 (N.D. Cal. Feb. 28, 2023) (FO at 21) produced the documents before deleting them, obviating any inference of intent to deprive. Moreover, unlike Yu's ████████████████ (Ex. 20 at 115:18-116:2), the employee's "fear" in *Wisk Aero*, had a credible basis—namely, being searched by the FBI. 2023 WL 2277112, at *8. *In re Hitachi Television Optical Block Cases*, 2011 WL 3563781, at * 14 (S.D. Cal. Aug. 12, 2011) is likewise of no help, because unlike here, 99.69% of the deleted documents were recovered (*id.* at *3), and the court declined to infer bad faith where the employee in question was not a litigant, "came forward and admitted his misconduct, and has cooperated in Hitachi's efforts to restore and explain the deleted files" (*id.* at *14).

**LP'S REPLY IFSO MOTION FOR SPOLIATION SANCTIONS**
3:21-cv-02623-EMC

is also supported by the reaction of the scientific and financial community to the disclosure of Defendants' manipulation of data").

███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████. As such, Yu cannot credibly claim that she had no idea there was anything fraudulent about her data analyses and was completely caught off guard that a new CMO would "disagree[]" with them. YO at 7.

Finally, Yu's *ipse dixit* claim that she believed her hard drive was backed up every time it was connected to the internet lacks credibility, and in no way mitigates her intent. Mot. at 9, n. 4. There is no evidence that anyone ever told her that, and indeed, ███████████████████████████████████████████████████████████████. *Id*. And even if Yu had somehow held this dubious subjective belief, it would not excuse her deliberate destruction of ESI. *See, e.g., Plantronics,* 2016 WL 3792833, at *6 (spoliating party's intentional deletion of emails "not excused by his professed belief that he thought IT personnel would nevertheless continue to have access to the deleted emails.").

FibroGen's arguments fare no better. Implicitly recognizing that Yu's conduct in destroying the hard drive constitutes clear spoliation, FibroGen nonetheless argues that it took

"reasonable steps" to preserve the laptop ██████████████████████████████ ██████████████████████████████████████████████. FO at 16. But this is a far cry from any formal litigation hold, and grossly insufficient considering FibroGen's status as a sophisticated publicly traded company represented by sophisticated securities litigation counsel—particularly in light of Yu's central role in the scheme and the numerous facts establishing the Company's obvious awareness of imminent securities fraud litigation. *See, e.g.,* Mot. at 19-20. FibroGen's utter failure to take reasonable steps to preserve is further confirmed

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████.

Moreover, Yu was still a contractual consultant for the Company when she destroyed the laptop, and thus the laptop and all ESI therein belonged to FibroGen, not Yu—meaning that the destruction of ESI on the laptop was the Company's responsibility.[12] ██████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

---

[12] While FibroGen argues Yu acted outside the scope of her employment in destroying the hard drive, its cases do not support this defense. FO at 22. In *Gemsa Enterprises LLC v. Specialty Foods of Alabama, Inc.*, 2015 WL 12746220, at **9-10 (C.D. Cal. Feb. 10, 2015), when the company learned an employee had destroyed documents, it terminated him (*id.* at *3), whereas here, FibroGen did the opposite, ███████████████████████████████. (Mot. 10-11). *WPP Luxembourg Gamma Three SARL v. Sport Runner, Inc.*, 655 F.3d 1039, 1057 (9th Cir. 2011) and *Nathanson v. Polycom Inc*, 87 F. Supp. 3d 966, 981-982 (N.D. Cal. 2015) did not involve spoliation at all, and, unlike in those cases, here Yu's scienter *can* be imputed to FibroGen, as the destruction of evidence proving her scienter would also benefit FibroGen.

LP'S REPLY IFSO MOTION FOR
SPOLIATION SANCTIONS
3:21-cv-02623-EMC

███████████████████████████████████████████████████████. FibroGen's actions thus represent the <u>opposite</u> of "reasonable steps." *See* Mot. at 19-20.

Defendants' intent is also easily established with respect to Yu's hard copy documents. While Yu claims she played no role in the destruction of these documents (Yu Decl. at ¶4), the documentary evidence proves otherwise. ██████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
██████████████████████████████████████████████.[13] ███████.

FibroGen's intent is also readily established by these documents and further confirmed by the declarations Defendants filed. ██████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
██████████████████████████████████. And while Defendants speculate that these hard copy

---

[13] Yu's claim that she only texted her former executive assistant "at my counsel's suggestion" and did so "simply to know what FibroGen had done with the documents" is not credible. Yu Decl. at ¶42. By April 26, 2021, Yu was a named co-Defendant with FibroGen in securities litigation, as well as a terminated former executive who, FibroGen had become aware, ██████████████████
██████████████████████. It makes little sense that, rather than communicate with FibroGen's counsel himself, Yu's lawyer would advise Yu to text a FibroGen executive assistant regarding a critical document preservation issue. Moreover, to the extent Yu represents that this is what her counsel advised her to do, she has waived privilege and must produce all relevant communications.

LP'S REPLY IFSO MOTION FOR
SPOLIATION SANCTIONS
3:21-cv-02623-EMC

documents were likely mere "printouts" of Yu's electronic files (FO at 7, YO at 14), this is of little moment given that many of those electronic files were lost forever when Yu destroyed her laptop's hard drive.

Finally, Defendants' egregious litigation misconduct only further supports their intent to deprive. Indeed, Defendants now admit that they were not only aware of Yu's spoliation, but specifically discussed amongst themselves whether to inform Plaintiffs, and "resolved" not to unless Plaintiffs specifically asked. *See* ECF No. 199-5, at ¶¶2, 8. However, even when Plaintiffs did specifically ask about Defendants' use of company laptops and any potential sources of ESI that might have been lost, counsel still did not answer truthfully. *See, e.g.*, Ex. 54 (recounting that "Defendants represented they are looking into whether any individual defendant or Mr. Neff utilized laptops, phones, tablets, or any other company-issued devices that might potentially contain relevant information," with FibroGen's counsel responding "[c]onfirming that Defendants will provide an update; we do not have any update at this time.").

Moreover, even when Yu's counsel finally disclosed, months later, that Yu's laptop had been "erased," they relayed a fabricated story about when and why it was done, failed to disclose that ██████████████████████████████████, and ultimately went so far as to falsely assert that Plaintiffs' spoliation claim was completely baseless because Yu had purportedly "erased" the laptop weeks before March 29, 2021.[14] Mot. at 15; Ex. 65 at 3. FibroGen's counsel similarly failed to make fulsome disclosures about these and other critical facts (*e.g.*, ██████████ ████████████████████████████) until repeatedly prodded by Plaintiffs, and continued to delay and deflect as Plaintiffs' inquiry progressed. Exs. 62, 64, 66, 68. Defendants' litigation misconduct evinces their intent to deprive. *See* Mot. at 22 (and cases cited).

**C.    The Destroyed Evidence Cannot Be Restored Or Replaced Through Additional Discovery, And Plaintiffs Are Severely Prejudiced As A Result**

As the Motion set forth, a party who intentionally spoliates evidence is not entitled to a "presumption of irrelevance as to the destroyed documents." Mot. at 20. This is because "[t]he

---

[14] While Yu's counsel touts their collection of documents (ECF No. 199-5 at ¶5), he omits to mention that counsel never informed Plaintiffs that Yu had multiple alternate email accounts and a Dropbox account, only produced records from these sources when Plaintiffs discovered them on their own, and failed to do so until after Yu's deposition. ECF No. 184-3 at ¶85; Ex. 73.

**LP'S REPLY IFSO MOTION FOR SPOLIATION SANCTIONS**
3:21-cv-02623-EMC

content of lost evidence can never be proven to a certainty," and "only the spoliator knows how much prejudice has been caused by the destruction." *NuVasive, Inc. v. Day*, 2021 WL 9059745, at *8 (D. Mass. Aug. 23, 2021). *See also OmniGen Rsch. v. Yongqiang Wang*, 321 F.R.D. 367, 377 (D. Or. 2017) (no "presumption of irrelevance as to the destroyed documents."). As Yu is "a party who is guilty of the intentional destruction of evidence," she "should not easily be able to excuse the misconduct by claiming that the vanished documents were of minimal import." *McLaughlin*, 2023 WL 4602089, at *11.

Defendants utterly fail to meet this "heavy burden." *Id.* Indeed, aside from Yu's obviously self-serving declaration, Defendants provide no evidentiary basis whatsoever to support the claim that no relevant, unique documents were lost. This is sorely insufficient, particularly given Yu's extensive credibility issues. Indeed, in addition to ███████████████████████ ████████████, Yu has either outright lied or made implausible claims numerous times throughout this litigation, including: (1) ████████████████████████████████████████████████████████████████████████; (2) inventing an elaborate story about how she had instructed the vendor to erase the laptop ██████████ ████████████████████████████████, only to admit during her deposition that this story was false; (3) testifying, under oath, to yet another obviously fabricated story about how she did not read ████████ until after the hard drive had been destroyed; (4) insisting she had no memory or record of who the vendor was, only to make an eleventh hour revelation that she had specifically taken a photo of the vendor; and (5) falsely claiming that FibroGen's head of IT had specifically told her that her hard drive was backed up every time she connected to the internet, ████████████████████████████████.[15] Mot. at 7-8, 15-16.

Moreover, ██████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ██████████████████████████. Mot. at 6, 20. ██████████████

[15] Defendant Yu also claimed, implausibly, that she thought the Company wanted her laptop back due to a "chip shortage," and that she did not recall why she was researching how to erase a hard drive on March 29, 2021. Ex. 20 at 107:16-108:13, 140:10-141:12.

17

████████████████████████████████████████████████████████████████

████████—coupled with Yu's own extraordinary efforts to ensure the complete physical destruction of the hard drive—belies any claim that the information on the laptop was duplicative or irrelevant, ████████████████████████████████████████████████

██████████████████████████████████████████████████████████████.

Defendants' other arguments similarly fail. For example, Defendants argue that Plaintiffs have not sufficiently identified the specific documents or categories of documents that were lost when Yu destroyed her hard drive. But courts in this District and Circuit routinely reject similar arguments that "plaintiffs never tie what was allegedly spoliated with the [alleged misconduct]" where, as here, it is clear that "[m]assive amounts of ESI…are not recoverable and therefore lost forever," and Plaintiffs thus cannot know the precise details of what was lost. *Facebook, Inc. v. OnlineNIC Inc.*, 2022 WL 2289067, at \*10 (N.D. Cal. Mar. 28, 2022), *report and recommendation adopted*, 2022 WL 17371092 (N.D. Cal. Oct. 17, 2022). This is particularly true where, as here, Yu was not only a "key witness," but one of the central defendants in the alleged fraud. *See, e.g., Apple, Inc. v. Samsung Elecs. Co. Ltd.*, 888 F. Supp. 2d 976, 993 (N.D. Cal. 2012) (fact that emails of "key [] witnesses" were destroyed implied prejudice even where contents were unknown).

███████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████[16] ██████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████.[17] Indeed, given that Yu oversaw FibroGen's Roxadustat safety data analyses and NDA, that this was her sole work computer, and that she

---

[16] ████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████

[17] Unlike in *Best Label*, 2022 WL 1525301, at \*5 (FO at 18), Plaintiffs specifically cited documents identifying relevant categories of evidence on Yu's laptop that were lost (Mot. at 20).

LP'S REPLY IFSO MOTION FOR
SPOLIATION SANCTIONS
3:21-cv-02623-EMC

admittedly saved work documents on the hard drive, it is virtually certain that her hard drive contained numerous highly relevant documents, of which those listed are only a fraction. Such documents could have revealed, for example, specific evidence of Yu manipulating safety data analyses or statistical models in order to improve the results. Thus, given that Plaintiffs "ha[ve] met [their] burden to come forward with plausible, concrete suggestions as to what the [destroyed] evidence might have been[,]" and the "content of lost evidence can never be proven to a certainty," prejudice can readily be established. *NuVasive*, 2021 WL 9059745, at *8.[18]

### D.      Terminating Sanctions Are Appropriate

In light of the facts set forth in the Motion and herein, terminating sanctions are appropriate to cure the great imbalances and unfairness caused by Defendants' egregious disregard for their discovery obligations and the truth. Nothing else within the Court's arsenal will punish Defendants appropriately and serve as a deterrence of similar bad faith to other litigants in other actions. As set forth in the Motion, terminating sanctions are appropriate where, as here, the spoliating party "acted with the intent to deprive another party of the information's use in the litigation." *Facebook*, 2022 WL 2289067, at *6. Moreover, the prejudice to Plaintiffs is clear, as the "types of files [Defendants destroyed] …would likely be at the heart of [their] defense were [Yu's files] available." *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 960 (9th Cir. 2006).

Further, the egregiousness of Defendants' conduct both prior to and during the litigation warrants the harshest form of sanction. Among many other things, either Yu or FibroGen, or both, have in this Action: destroyed the laptop's hard drive ███████████████; shredded multiple boxes of highly relevant hard copy documents; failed to disclose anything about this

---

[18] While Yu and FibroGen cite *Oracle America Inc v. Hewlett Packard Enterprise Co.*, 328 F.R.D. 543 (N.D. Cal. 2018) (FO at 17, 19-20; YO 13-14), that court found a movant need only "show that categories of irreplaceable relevant documents were likely lost," and distinguished other cases where, like here, "it was clear that significant amounts of evidence had been destroyed." *Id*. at *553. *Ryan v. Editions Ltd. West, Inc.*, 786 F.3d 754, 766 (9th Cir. 2015) is a post-trial decision concerning mainly whether the Copyright Act preempted state law attorney-fee shifting claims (FO at 17-18). In *Belew-Nyquist v. Quincy School District No. 144*, 2020 WL 6845934, at *11 (E.D. Wash. Nov. 20, 2020), there was no evidence that the "lost" information ever existed in the first place. *Id*. Finally, while Yu claims *Agility Public Warehousing Co. K.S.C. v. Dept. of Defense*, 2017 WL 1214424, at *2 (D.D.C. Mar. 30, 2017) held that documents are lost for the purposes of Rule 37(e) "because they '[did] not appear to have been stored elsewhere'" (YO at 17), here Defendants have utterly failed to eastblish the destroyed documents were duplicated elsewhere.

**LP'S REPLY IFSO MOTION FOR SPOLIATION SANCTIONS**
3:21-cv-02623-EMC

spoliation when specifically asked by Plaintiffs at the 26(f) conference; misrepresented the reason for and timing of the destruction of the laptop in letters to Plaintiffs; given false testimony under oath at Yu's deposition; obfuscated about these events when Plaintiffs sought answers—including accusing Plaintiffs of violating Rule 11 and "hyperventilating about spoliation"; caused Plaintiffs to expend significant and unnecessary time and expense litigating these issues; and ambushed Plaintiffs the night before Yu's deposition with a totally changed story about the laptop's destruction and an untimely production of documents.  Mot. at 8, 11-15.

In defense of their deception, Defendants argue that their misconduct does not warrant terminating sanctions because, notwithstanding the deliberate destruction of Yu's hard drive and hard copy documents, they have produced a sufficiently large volume of other documents that Plaintiffs can use to still make their case at trial.  FO at 10-11, YO at 18.  But even if Defendants were correct, this would not be sufficient, as "[w]hether or not the documents would [] change[] the outcome of the trial is not the issue in determining prejudice." *Anheuser-Busch, Inc. v. Nat. Beverage Distributors*, 69 F.3d 337, 354 (9th Cir. 1995).  Rather, "[i]t is sufficient that [Defendants' destruction] of the documents [has] clearly impaired [Plaintiffs'] ability to go to trial and [has] *threatened* to interfere with the rightful decision of the case."  *Id.* (emphasis in original).  Indeed, as set forth above, Defendants "ha[ve] engaged deliberately in deceptive practices that undermine the integrity of judicial proceedings." *Leon*, 464 F.3d at 958.[19]

## III.    CONCLUSION

For the reasons set forth in the Motion and herein, Plaintiffs respectfully request that the Court enter: (i) a default judgment against Yu and FibroGen, or, in the alternative, (ii) an order granting Plaintiffs a mandatory adverse inference against Defendants Yu and FibroGen instructing the jury to find that the elements of both falsity and scienter have been established with regard to the alleged false statements sustained by this Court's order on Defendants' motion to dismiss.

---

[19] The courts in both *Lofton v. Verizon Wireless* (VAW) LLC, 308 F.R.D. 276, 291 (N.D. Cal. 2015) and *Fourth Dimension Software v. DER Touristik Deutschland GmbH*, 2021 WL 5919821, at *11 (N.D. Cal. Dec. 15, 2021) (FO at 23) declined to impose sanctions because the lost evidence could easily be reconstructed, and thus the movants had not shown prejudice.  And the egregious facts here support even stronger sanctions than in *Clear-View Techs., Inc. v. Rasnick*, 2015 WL 2251005, at *8 (N.D. Cal. May 13, 2015) (FO at 23).

**LP'S REPLY IFSO MOTION FOR SPOLIATION SANCTIONS**
3:21-cv-02623-EMC

Dated:  August 11, 2023

Respectfully submitted,

*/s/ David R. Kaplan*

**SAXENA WHITE P.A.**

David R. Kaplan (SBN 230144)
dkaplan@saxenawhite.com
Emily Bishop (SBN 319383)
ebishop@saxenawhite.com
505 Lomas Santa Fe Drive, Suite 180
Solana Beach, CA 92075
Telephone: (858) 997-0860
Facsimile: (858) 369-0096

Steven B. Singer
ssinger@saxenawhite.com
Kyla Grant (admitted *pro hac vice*)
kgrant@saxenawhite.com
Sara DiLeo (admitted *pro hac vice*)
sdileo@saxenawhite.com
Joshua H. Saltzman (admitted *pro hac vice*)
jsaltzman@saxenawhite.com
10 Bank Street, 8th Floor
White Plains, New York 10606
Tel: (914) 437-8551

Maya Saxena (admitted *pro hac vice*)
msaxena@saxenawhite.com
Lester R. Hooker (SBN 241590)
lhooker@saxenawhite.com
Dianne M. Pitre (SBN 286199)
dpitre@saxenawhite.com
7777 Glades Road, Suite 300
Boca Raton, FL 33434
Tel.: 561.394.3399
Fax: 561.394.3382

*Counsel for Lead Plaintiffs Employees' Retirement System of the City of Baltimore, City of Philadelphia Board of Pensions and Retirement, and Plymouth County Retirement Association, and Lead Counsel for the Proposed Class*

LP'S REPLY IFSO MOTION FOR
SPOLIATION SANCTIONS
3:21-cv-02623-EMC

**CERTIFICATE OF SERVICE**

I hereby certify under penalty of perjury that on August 11, 2023, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel or parties of record.


/s/ David R. Kaplan
David R. Kaplan

22                                            **LP'S REPLY IFSO MOTION FOR**
                                              **SPOLIATION SANCTIONS**
                                              3:21-cv-02623-EMC