UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

PEIFA XU, et al.,

               Plaintiffs,

    v.

FIBROGEN, INC., et al.,

               Defendants.

Case No. 21-cv-02623-EMC

**ORDER GRANTING PLAINTIFFS' MOTION TO COMPEL PRODUCTION**

Docket Nos. 146, 148, 153

The parties have filed a joint letter, dated February 15, 2023, regarding a dispute over privilege. Plaintiffs seek the production of PowerPoint slides Bates numbered FGEN-CA-0353824 (the "Presentation"), which Defendants claim are protected by attorney-client privilege. Having considered the joint letter and the accompanying submissions, the Court hereby **GRANTS** Plaintiffs' motion to compel production.

Additionally, currently filed before the court is Plaintiffs' administrative motion and supplemental motion to file under seal. Having reviewed the motions and the related declarations, the Court hereby **GRANTS** the motion to file under seal and **GRANTS** the supplemental motion to file under seal.

## I.     <u>FACTUAL AND PROCEDURAL BACKGROUND</u>

Plaintiffs filed this lawsuit against FibroGen and other individual defendants ("Defendants") for allegedly making false and misleading statements in violation of Section 10(b) of the Securities Exchange Act of 1934 and SEC Rule 10b-5 promulgated thereunder.

FibroGen is a biopharmaceutical company whose flagship drug, Roxadustat, is an experimental pill designed to treat anemia in patients with chronic kidney diseases. Docket No. 97

¶ 4. Plaintiffs allege that Defendants manipulated safety data and presented the skewed data to the Food and Drug Administration ("FDA") in the Roxadustat new drug application ("NDA"). *Id.* ¶ 84. When FibroGen revealed its data deficiencies, the FDA panel voted against approving Roxadustat for any patient population and FibroGen's stock price plummeted. *Id.* ¶ 113.

████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████

Defendants produced the Presentation to the U.S. Securities and Exchange Commission ("SEC") months before this motion was filed. Docket No. 153 at 2. "Plaintiffs first cited the [Presentation] to Defendants in a letter dated January 16, 2023," and then attached the Presentation as Exhibit 10 to Plaintiffs' motion for class certification filed on January 27, 2023. *Id.*; Docket No. 147. After seeing Exhibit 10, Defendants clawed the Presentation back from Plaintiffs and the SEC on February 3 and 6, 2023 respectively. Docket No. 153 at 3. On February 15, 2023, Plaintiffs and Defendants filed a joint letter asking the Court to determine whether Presentation is protected by attorney-client privilege. Docket No. 153.

## II.   DISCUSSION

"Issues concerning application of the attorney-client privilege in the adjudication of federal law are governed by federal common law." *United States v. Ruehle*, 583 F.3d 600, 608 (9th Cir. 2009) (quoting *Clarke v. Am. Com. Nat. Bank*, 974 F.2d 127, 129 (9th Cir. 1992)). "The attorney-client privilege protects confidential communications between attorneys and clients, which are made for the purpose of giving legal advice." *United States v. Sanmina Corp.*, 968 F.3d 1107, 1116 (9th Cir. 2020). "Because it impedes full and free discovery of the truth, the attorney-client privilege is strictly construed." *Ruehle*, 583 F.3d at 607. "The burden of proving that the

United States District Court
Northern District of California

attorney-client privilege applies rests not with the party contesting the privilege, but with the party asserting." *Conceptus, Inc. v. Hologic, Inc.*, No. C 09-02280 WHA, 2010 WL 3911943, at *1 (N.D. Cal. Oct. 5, 2010)

Plaintiffs contend that Defendants waived their privilege over the Presentation when they produced the Presentation to the SEC.  Docket No. 153 at 2.  The critical issue is whether Federal Rule of Evidence 502(b) or a Stipulated Protective Order ("PO") that the Court entered governs the issue of waiver.  *See* Docket No. 144; Fed. R. Evid. 502.  The parties presuppose that the PO governs this issue of waiver, not Rule 502(b).  The Court disagrees and concludes instead that Rule 502(b) governs, and that Rule 502(b) does not prevent Defendants' disclosure from waiving privilege.

The PO applies only to the specific circumstances set forth therein.  *See* Docket No. 144 at 2. ("[T]his Order does not confer blanket protections on all disclosures . . .[,] the protection it affords from public disclosure and use extends only to the limited information or items that are entitled to confidential treatment under the applicable legal principles.").  When addressing whether the inadvertent production of material waives privilege, the PO limits its application to those circumstances in which Rule 502(d) would apply.  *See id*. at 15 (noting that the PO's waiver provisions are "[p]ursuant to Rule 502(d) of the Federal Rules of Evidence" and that "[t]his Order shall be interpreted to provide the maximum protection allowed by Federal Rule of Evidence 502(d)").  Rule 502(d), in turn, states that a federal court may order that a disclosure "connected with the litigation pending before the court" does not waive privilege and that such an order applies to other federal or state proceedings.  Fed. R. Evid. 502(d).  Rule 502(d) does not apply to disclosures made in other, unconnected proceedings.  *See* Fed. R. Evid. 502(d) advisory committee's note ("[S]ubdivision (d) does not allow the federal court to enter an order determining the waiver effects of a separate disclosure of the same information in other proceedings.").  Notably, in contrast to the restricted scope of Rule 502(d), Rule 502(b) applies to "a federal proceeding or to a federal office or agency" and Rule 502(c) applies explicitly to disclosures made in state proceedings.  *See* Fed. R. Evid. 502(b)–(d).

Furthermore, there is nothing in the language of the PO in this case that suggests it applies

3

to disclosures made outside the context of this proceeding. Instead, the PO enumerates several circumstances—all pertaining to disclosures *within* this proceeding—where privilege shall be deemed waived. *See* Docket No. 144 at 15 ("The privilege shall be deemed waived if the Privileged Information is: (1) introduced at a deposition; (2) introduced during a Court proceeding (other than for purposes of resolving a dispute over privilege or as part of an in camera review); (3) included in a filing with the Court (other than for purposes of resolving a dispute over privilege or as part of an in camera review); (4) attached as an exhibit to a mediation statement; or (5) otherwise made known in writing to the Producing Party by the Receiving Party . . . .").

Here, Defendants have not shown that the disclosure to the SEC—an outside federal agency—is connected to this litigation. Therefore, the PO does not govern the Court's waiver analysis, and the effect of the SEC disclosure is instead analyzed under Rule 502(b) which, as noted, expressly applies to disclosures made to federal agencies. *See United States v. Paulus*, No. 015CR00015DLBEBA1, 2021 WL 4494607, at *7 (E.D. Ky. Sept. 30, 2021) (finding attorney-client privilege waived since courts cannot "retroactively limit the effect" of a previous disclosure "during a healthcare fraud investigation that did not come before this Court or any other judicial body" on waiver of attorney-client privilege).

When a party discloses a privileged document, the disclosure normally operates as a waiver unless three conditions are satisfied under Rule 502(b): "(1) the disclosure is inadvertent; (2) the holder of the privilege or protection took reasonable steps to prevent disclosure; and (3) the holder promptly took reasonable steps to rectify the error." *Conceptus*, 2010 WL 3911943, at *1 (quoting Fed. R. Evid. 502(b)). While "Rule 502(b) does not require a producing party to engage generally in a post-production review to determine whether any privileged documents or information have been produced by mistake," "the rule does require the producing party to follow up on any obvious indications that a protected communication or information has been produced inadvertently." *AdTrader, Inc. v. Google LLC*, 405 F. Supp. 3d 862, 866 (N.D. Cal. 2019).

Defendants' SEC disclosure waives their putative privilege because Defendants have failed to show that all three conditions are met. Defendants claim that their disclosure was inadvertent but have not supported this conclusory assertion with evidence. This is inadequate. *See Callan v.*

United States District Court
Northern District of California

*Christian Audigier, Inc.*, 263 F.R.D. 564, 566 (C.D. Cal. 2009) (finding that defendants had not shown their production was inadvertent since they "do not establish or set forth facts showing how defendants reviewed the allegedly privileged documents before producing them to plaintiff or what precautions they took to prevent the disclosure of allegedly privileged documents to plaintiff"). As for the second condition, Defendants have failed to even assert that they took reasonable steps to prevent disclosure. This is also inadequate. *See Conceptus*, 2010 WL 3911943, at \*2 (finding the elements of Rule 502(b) were not met where plaintiff's "arguments do not address prevention of disclosure"). Nor have Defendants demonstrated they promptly took reasonable steps to rectify the error. Defendants only clawed back the Presentation from the SEC months after it first made the disclosure and a full ten days even after Defendants were put on explicit notice of the production. This delay is too long to meet the condition of promptness. *See Ecological Rts. Found. v. Fed. Emergency Mgmt. Agency*, No. 15-CV-04068-DMR, 2017 WL 24859, at \*7 (N.D. Cal. Jan. 3, 2017) ("[N]umerous courts have held that 'once a party realizes a document has been accidentally produced, it must assert privilege with *virtual immediacy*.'") (citation omitted) (emphasis added); *Skansgaard v. Bank of Am., N.A.*, No. C11-0988 RJB, 2013 WL 828210, at \*3 (W.D. Wash. Mar. 6, 2013) (noting that "the courts have emphasized that claw back requests should be made immediately" and citing to cases finding that a delay as short as *six days* weighed in favor of finding waiver) (emphasis added); *Mycone Dental Supply Co Inc v. Creative Nail Design Inc*, No. C-12-00747-RS (DMR), 2013 WL 4758053, at \*3 (N.D. Cal. Sept. 4, 2013) (finding a seven-week delay between discovering that a privileged document had been produced and clawing the document back was too long and that "at the least, Gel should have recalled the document that was used in the deposition *immediately after* the deposition") (emphasis added); *cf. Datel Holdings Ltd. v. Microsoft Corp.*, 2011 WL 866993 at \*4–5 (N.D. Cal. Mar. 11, 2011) (finding no waiver where the producing party immediately investigated email exchange used in deposition and raised privilege claims within a couple of days).

Defendants have failed to meet their burden of showing that they satisfied the conditions of Rule 502(b). Thus, Defendants waived the attorney-client privilege over the Presentation—to the

extent that it exists—when they disclosed the Presentation to the SEC.[1]

### III.   CONCLUSION

Plaintiffs' motion to compel production of the Presentation is **GRANTED**. At this juncture, the Court instructs the Clerk of the Court to file this order, in its entirety, under seal. The Court orders the parties to meet and confer to determine which portions of this order may be publicly filed. The parties shall jointly file their request to file under seal within a week of the date of this order.

This order disposes of Docket Nos. 146, 148, and 153.

**IT IS SO ORDERED**.

Dated: March 29, 2023

_____
EDWARD M. CHEN
United States District Judge

---

[1] The Court need not reach parties' dispute about whether the Presentation was ever protected by attorney-client privilege.