1

**SAXENA WHITE P.A.**
David R. Kaplan (SBN 230144)
dkaplan@saxenawhite.com
Emily Bishop (SBN 319383)
ebishop@saxenawhite.com
505 Lomas Santa Fe Drive, Suite 180
Solana Beach, CA 92075
Tel.: (858) 997-0860
Fax: (858) 369-0096

2

3

4

5

6

7

*Counsel for Lead Plaintiffs Employees' Retirement*
*System of the City of Baltimore, City of*
*Philadelphia Board of Pensions and Retirement,*
*and Plymouth County Retirement Association, and*
*Lead Counsel for the proposed Settlement Class*

8

9

10

*[Additional Counsel listed on Signature Page]*

11

12

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

13

14

| IN RE FIBROGEN, INC., SECURITIES LITIGATION | Case No. 3:21-cv-02623-EMC |
| --- | --- |
| | **CLASS ACTION** |
| | LEAD PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT |
| | Hearing Date: January 23, 2024 Time: 2:30 p.m. Courtroom: 5 – 17th Floor Judge: Hon. Edward M. Chen |

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................... 1

II.   FACTUAL AND PROCEDURAL HISTORY OF THE LITIGATION .............................. 3

III.  SUMMARY OF SETTLEMENT NEGOTIATIONS .............................................. 5

IV.   SETTLEMENT TERMS ...................................................................................... 6

V.    THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL ......................... 8

      A.    Lead Plaintiffs And Lead Counsel Have Adequately Represented The Class ........... 10

      B.    The Settlement Results From Good-Faith, Arm's-Length Negotiations ................... 11

      C.    The Relief Provided For The Settlement Class Is Adequate ...................... 12

            1.    The Amount Offered In The Settlement Favors Approval ............................. 12

            2.    The Settlement Weighs The Strength Of Lead Plaintiffs' Claims With
                  The Substantial Risks Of Continuing Litigation ................................. 14

            3.    The Proposed Method For Distributing Relief Is Effective ............................. 18

            4.    Lead Counsel's Fee And Expense Request Is Fair And Reasonable ................. 19

            5.    The Parties Have No Side Agreements Besides Opt-Outs ................................. 20

            6.    All Settlement Class Members Are Treated Equitably ...................... 20

VI.   THE SETTLEMENT CLASS SHOULD BE CERTIFIED ................................. 21

VII.  NOTICE TO THE SETTLEMENT CLASS IS WARRANTED ......................... 23

VIII. NORTHERN DISTRICT OF CALIFORNIA PROCEDURAL GUIDANCE ................... 24

IX.   PROPOSED SCHEDULE OF EVENTS ......................................................... 24

X.    CONCLUSION .................................................................................................. 24

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Abadilla v. Precigen, Inc.*,
    2023 WL 7305053 (N.D. Cal. Nov. 6, 2023) ........................................................... 7

*Brown v. China Integrated Energy Inc.*,
    2016 WL 11757878 (C.D. Cal. July 22, 2016) ........................................................ 18

*Cheng Jiangchen v. Rentech, Inc.*,
    2019 WL 5173771 (C.D. Cal. Oct. 10, 2019) .......................................... 14, 17, 20

*Davis v. Yelp*,
    2022 WL 21748777 (N.D. Cal. Aug. 1, 2022) ................................................ 6, 7, 8

*Davis v. Yelp*,
    2023 WL 3063823 (N.D. Cal. Jan. 27, 2023) ................................... 19, 20, 23

*Destefano v. Zynga, Inc.*,
    2016 WL 537946 (N.D. Cal. Feb. 11, 2016) ...................................................... 7, 11

*Fleming v. Impax Lab'ys Inc.*,
    2021 WL 5447008 (N.D. Cal. Nov. 22, 2021) ........................................................ 6

*Fleming v. Impax Lab'ys Inc.*,
    2022 WL 2789496 (N.D. Cal. July 15, 2022) ................................................ 23, 24

*Guevoura Fund Ltd. v. Sillerman*,
    2019 WL 6889901 (S.D.N.Y. Dec. 18, 2019) ........................................................ 18

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ...................................................................... 9, 14

*Hardy v. Embark Tech., Inc*,
    2023 WL 6276728 (N.D. Cal. Sept. 26, 2023) ........................................ 2, 12, 13, 18

*Harris v. Vector Marketing Corp.*,
    2011 WL 1627973 (N.D. Cal. Apr. 29, 2011) ...................................................... 12

*Hefler v. Wells Fargo & Co.*,
    2018 WL 4207245 (N.D. Cal. Sept. 4, 2018) .......................................... 7, 8, 9, 12

*Hefler v. Wells Fargo & Co.*,
    2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) ........................................ 8, 19, 21

*In re Apple Inc. Sec. Litig.*,
    2023 WL 2763952 (N.D. Cal. Mar. 28, 2023) ...................................................... 22

*In re BofI Holding, Inc. Sec. Litig.*,
2022 WL 9497235 (S.D. Cal. Oct. 14, 2022) ........................................................... 7, 8

*In re Broadcom Corp. Sec. Litig.*,
2005 WL 8153007 (C.D. Cal. Sept. 14, 2005) ............................................................. 14

*In re Carrier IQ, Inc. Consumer Privacy Litig.*,
2016 WL 4474366 (N.D. Cal. Aug. 25, 2016) .............................................................. 8

*In re Extreme Networks, Inc. Sec. Litig.*,
2019 WL 3290770 (N.D. Cal. July 22, 2019) .............................................................. 14

*In re FibroGen Inc. Sec. Litig.*,
2022 WL 2793032 (N.D. Cal. July 15, 2022) ........................................................ 3, 17

*In re FibroGen Sec. Litig.*,
2023 WL 5600077 (N.D. Cal. Aug. 29, 2023) .............................................................. 4

*In re Finisar Corp. Sec. Litig.*,
2019 WL 2247750 (N.D. Cal. May 24, 2019) .............................................................. 22

*In re Genworth Fin. Sec. Litig.*,
210 F. Supp. 3d 837 (E.D. Va. 2016) .......................................................................... 12

*In re Immune Response Sec. Litig.*,
497 F. Supp. 2d 1166 (S.D. Cal. 2007) ................................................................. 16, 18

*In re JDS Uniphase Corp. Sec. Litig.*,
2007 WL 4788556 (N.D. Cal. Nov. 27, 2007) ............................................................ 15

*In re Lyft, Inc. Sec. Litig.*,
2022 WL 17740302 (N.D. Cal. Dec. 16, 2022) ........................................................... 10

*In re Lyft Inc. Sec. Litig.*,
2023 WL 5068504 (N.D. Cal. Aug. 7, 2023) ............................................................... 11

*In re Omnivision Technologies, Inc.*,
559 F. Supp. 2d 1036 (N.D. Cal. 2008) ...................................................................... 19

*In re Oracle Corp. Sec. Litig.*,
627 F.3d 376 (9th Cir. 2010) ....................................................................................... 15

*In re Signet Jewelers Ltd. Sec. Litig.*,
2020 WL 4196468 (S.D.N.Y. July 21, 2020) ................................................................ 6

*In re Tesla Inc. Sec. Litig.*,
2023 WL 4032010 (N.D. Cal. June 14, 2023) .............................................................. 15

*In re Verifone Holdings, Inc. Sec. Litig.*,
2014 WL 12646027 (N.D. Cal. Feb. 18, 2014) ...................................................... 20, 21

*In re Vocera Commc'ns, Inc. Sec. Litig.*,
   2016 WL 8200430 (N.D. Cal. July 29, 2016) ..................................................... 21

*In re Vocera Communications, Inc., Sec. Litig.*,
   2016 WL 8201593 (N.D. Cal. July 19, 2016) ..................................................... 19

*In re Zynga Inc. Sec. Litig.*,
   2015 WL 6471171 (N.D. Cal. Oct. 27, 2015) ..................................................... 20

*Indiana Pub. Ret. Sys. v. AAC Holdings, Inc.*,
   2023 WL 2592134 (M.D. Tenn. Feb. 24, 2023) ................................................. 22

*Jaffe Pension Plan v. Household Intern., Inc.*,
   756 F. Supp. 2d 928 (N.D. Ill. 2010) ................................................................ 13

*Katz v. China Century Dragon Media, Inc.*,
   2013 WL 11237202 (C.D. Cal. Oct. 10, 2013) ................................................... 14

*Keippel v. Health Ins. Innovations, Inc.*,
   2020 WL 5094840 (M.D. Fla. Aug. 28 2020) ..................................................... 22

*Kendall v. Odonate Therapeutics*,
   2022 WL 188364 (S.D. Cal. Jan. 18, 2022) ....................................................... 11

*Lea v. Tal Education Group*,
   2021 WL 5578665 (S.D.N.Y. Nov. 30, 2021) ....................................................... 8

*Levy v. Gutierrez*,
   448 F. Supp. 3d 46 (D.N.H. 2019) ..................................................................... 22

*Loomis v. Slendertone Distribution, Inc.*,
   2021 WL 873340 (S.D. Cal. Mar. 9, 2021) ......................................................... 10

*Mandalevy v. BofI Holding, Inc.*,
   2022 WL 4474263 (S.D. Cal. Sept. 26, 2022) ...................................................... 8

*Patel v. TransUnion, LLC*,
   2018 WL 1258194 (N.D. Cal. Mar. 11, 2018) ..................................................... 12

*Peace Officers' Annuity and Benefit Fund of Georgia v. DaVita, Inc.*,
   2021 WL 1387110 (D. Colo. Apr. 13, 2021) ....................................................... 12

*Rieckborn v. Velti PLC*,
   2015 WL 468329 (N.D. Cal. Feb. 3, 2015) ................................................... 14, 18

*Saliba v. KS Statebank Corp.*,
   2021 WL 2105608 (D. Ariz. May 25, 2021) ....................................................... 21

*Shvager v. ViaSat, Inc.*,
   2014 WL 12585790 (C.D. Cal. Mar. 10, 2014) ................................................... 10

*Sudunagunta v. NantKwest, Inc.*,
   2019 WL 2183451 (C.D. Cal. May 13, 2019) ........................................................................ 17

*Todd v. STAAR Surgical Co.*,
   2017 WL 4877417 (C.D. Cal. Oct. 24, 2017) ...................................................................... 11

*Vataj v Johnson,*
   2021 WL 1550478 (N.D. Cal. Apr. 20, 2021) .................................................................... 21

*Wong v. Arlo Technologies, Inc.*,
   2021 WL 1531171 (N.D. Cal. Apr. 19, 2021) .................................................................... 13

*Xu v. FibroGen, Inc.*,
   2023 WL 3475722 (N.D. Cal. May 15, 2023) ...................................................................... 4

**RULES**

Fed. R. Civ. P. 23 ................................................................................................................*passim*

**NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE**, that on January 23, 2024, at 2:30 p.m., before the Honorable Edward M. Chen, at the United States District Court for the Northern District of California, Courtroom 5, 17th Floor, 450 Golden Gate Avenue, San Francisco, California, 94102, Lead Plaintiffs will and hereby do respectfully move this Court pursuant to Rule 23(e) of the Federal Rules of Civil Procedure for an Order that will: (1) grant preliminary approval of the proposed $28.5 million Settlement of this Action, on the terms set forth in the Stipulation and Agreement of Settlement ("Stipulation," or "Settlement Agreement")[1]; (2) approve the form and manner of providing notice of the proposed Settlement to the Settlement Class; (3) authorize the retention of JND Legal Administration ("JND") as the Claims Administrator for the Settlement; and (4) schedule the Final Approval Hearing, and briefing deadlines related thereto, to determine whether the proposed Settlement, proposed Plan of Allocation, and the motion for an award of attorneys' fees and reimbursement of litigation expenses should be approved.[2]

This motion is supported by the Stipulation, the following Memorandum, the Appendix Regarding Court's Procedural Guidance for Class Action Settlements ("Appendix Re N.D. Cal. Guidance" or "Appendix"),[3] the accompanying Declaration of Lester R. Hooker in Support of Lead Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement ("Hooker Decl."), the Declaration of Michelle Yoshida (Mediator) ("Yoshida Decl."), the Declaration of Scott Walster Regarding Calculation of Damages ("Walster Decl."), the Declaration of Luiggy Segura (of JND) ("Segura Decl."), the pleadings and records in this Action, and further arguments and matters as the Court may consider. A proposed Order is submitted herewith.

---

[1] The Stipulation together with the exhibits thereto (the [proposed] Preliminary Approval Order (Ex. A); the proposed form of individual notice ("Notice") (Ex. A-1); the proposed proof of claim form ("Claim Form") (Ex. A-2); the proposed form of summary notice ("Summary Notice") (Ex. A-3); and the [proposed] final judgment ("Judgment") (Ex. B)) are filed herewith.

[2] Unless otherwise indicated, capitalized terms shall have the meanings provided in the Stipulation, all emphasis has been added, and all internal citations and quotation marks have been omitted.

[3] The Appendix identifies preliminary approval criteria under the N.D. Cal. Procedural Guidance for Class Action Settlements, how the Settlement meets these criteria, and the relevant sections of the preliminary approval submissions where relevant information can be found.

1

<u>**STATEMENT OF ISSUES TO BE DECIDED**</u>

2

(1)     Whether the Court should preliminarily approve the Settlement on the terms set

3

forth in the Stipulation and schedule a Final Approval Hearing to determine whether the Settlement

4

should receive final approval as fair, adequate, and reasonable.

5

(2)     Whether the Court should preliminarily certify the Settlement Class pursuant to

6

Rule 23 of the Federal Rules of Civil Procedure for purposes of the Settlement only.

7

(3)     Whether the Court should approve the form and content of the Notice and Summary

8

Notice, the methods for the dissemination of the Notice and Summary Notice to Settlement Class

9

Members, and the selection of JND as Claims Administrator.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

## I.     INTRODUCTION[4]

Court-appointed Class Representatives and Defendants have negotiated, at arm's length and with the assistance of an experienced and neutral mediator, a proposed Settlement of all claims in this Action for $28,500,000 in cash for the benefit of the Settlement Class.[5] The proposed Settlement would provide the Settlement Class with a substantial, immediate benefit and avoid the significant and protracted risks and uncertainties present in this complex securities class action. As set forth below, the Settlement easily satisfies the applicable standards for approval set forth in Rule 23 of the Federal Rules of Civil Procedure and traditionally applied by the Ninth Circuit.

The Settlement is noteworthy considering the substantial likelihood that the Settlement Class would recover substantially less (or nothing at all) if the Action continued to be litigated through dispositive motions, trial, and the likely post-trial motions and appeals that would follow (a process that could last several years). Indeed, establishing liability alone was by no means assured, as Defendants continued to dispute the pivotal issues of falsity, scienter, loss causation, and damages. Moreover, Plaintiffs faced considerable risk of a lesser recovery given FibroGen's current financial condition. For example, FibroGen's stock is currently trading at approximately $0.65 per share, down over 99% from its Class Period high of almost $60 per share; has a market capitalization of only approximately $65 million; and the remaining proceeds of Defendants' Directors' and Officers' insurance were rapidly wasting. Additionally, Roxadustat has never been approved in the United States; FibroGen's only other major drug candidate has yet to be approved

---

[4] While Defendants do not adopt all of Plaintiffs' positions set forth in this Motion, they do not oppose the relief requested herein. *See* Stipulation at ¶3.2 ("As soon as practicable after execution of the Stipulation, Lead Plaintiffs will promptly move for preliminary approval of the Settlement, which motion shall be unopposed by Defendants").

[5] The "Settlement Class" or "Class" means all persons who purchased or acquired FibroGen securities, including options, between December 20, 2018 through July 15, 2021, inclusive. Excluded from the Settlement Class are: (1) Defendants; (2) the Officers or directors of FibroGen during the Settlement Class Period; (3) the Immediate Family members of any Defendant or any Officer or director of FibroGen during the Settlement Class Period; and (4) any entity that any Defendant owns or controls, or owned or controlled, during the Settlement Class Period. Also excluded from the Class are those persons who file valid and timely requests for exclusion in accordance with the Preliminary Approval Order and the plaintiffs in the Opt-Out Action.

1    anywhere; and the Company most recently reported that it had only approximately $121 million

2    in cash and cash equivalents and a net loss for the nine months ended 2023 of approximately $228

3    million.  Accordingly, the risk of no recovery is especially salient here, as there are legitimate

4    concerns with Defendants' ability to satisfy a judgment in excess of the Settlement Amount, which

5    weighs heavily in favor of preliminary approval.

6        Furthermore, the Settlement represents a significant recovery that falls well within the

7    range of possible approval.  The $28.5 million recovery exceeds both the $7.6 million median

8    settlement amount in securities class actions resolved in the Ninth Circuit in the past decade and

9    exceeds the 1.7% to 4.3% median percentage of similar damages ranges in 2022 settlements by

10   recovering 3.4% to 6.4% of maximum likely potential damages recoverable at trial.

11       Lead Plaintiffs and Lead Counsel achieved the Settlement only after vigorous prosecution

12   of this Action for more than two years, where they gained a thorough appreciation of the strengths

13   and weaknesses of the case.  These extensive litigation efforts included an exhaustive investigation

14   of the relevant claims; the filing of a detailed, 118-page Complaint; defeating Defendants' motion

15   to dismiss and obtaining class certification in large part; extensive review of documents from

16   Defendants and third parties; active discovery motion practice—including successfully briefing a

17   motion to compel and a motion for sanctions; consultation with multiple experts; and conducting

18   and preparing for numerous depositions.  Based upon their experience, their evaluation of the facts

19   and the applicable law, the sizable Settlement Amount, and the considerable risk and expense of

20   protracted litigation against Defendants, Lead Plaintiffs and Lead Counsel respectfully submit that

21   the proposed Settlement is fair, reasonable, and adequate, and is in the best interests of the Class.

22       At this stage, only "a preliminary fairness evaluation" of the proposed Settlement, such

23   that the Settlement Class should be notified of the Settlement, is required.  *See Hardy v. Embark*

24   *Tech., Inc*, 2023 WL 6276728, at *3 (N.D. Cal. Sept. 26, 2023).  Plaintiffs respectfully request that

25   the Court enter the Preliminary Approval Order, which will, among other things:

26           (i)      preliminarily approve the Settlement on the terms set forth in the Stipulation;

27           (ii)     approve the form and content of the Notice and Summary Notice;

28

(iii)  find that the procedures for distribution of the Notice and publication of the Summary Notice in the manner and form set forth in the Preliminary Approval Order constitute the best notice practicable under the circumstances, and comply with the notice requirements of due process, Rule 23 of the Federal Rules of Civil Procedure, and the Private Securities Litigation Reform Act of 1995 ("PSLRA");

(iv)  set a schedule and procedures for: (1) disseminating the Notice and publication of the Summary Notice; (2) requesting exclusion from the Settlement Class; (3) objecting to the Settlement, the Plan of Allocation, Lead Counsel's application for an award of attorneys' fees and reimbursement of litigation expenses, or Lead Plaintiffs' representative reimbursement; (4) submitting papers in support of final approval of the Settlement; and (5) the Final Approval Hearing; and

(v)  certify, for the purposes of the Settlement only, the Settlement Class Period.

## II.    FACTUAL AND PROCEDURAL HISTORY OF THE LITIGATION

This Action was initiated on April 12, 2021. ECF No. 1. On August 30, 2021, the Court appointed Baltimore Employees, City of Philadelphia Pension Fund, and Plymouth County as Lead Plaintiffs and Saxena White P.A. ("Saxena White") as Lead Counsel. ECF No. 75. On November 19, 2021, Plaintiffs filed the Complaint, which alleged that Defendants violated the securities laws by making materially false and misleading statements and omissions regarding the safety and efficacy data of its flagship drug, Roxadustat, and falsely assuring investors that the drug's safety data was derived pursuant to FDA-sanctioned analysis. ECF No. 97.

Thereafter, the Parties fully briefed Defendants' motions to dismiss (ECF Nos. 107, 109, 114-116), and on April 28, 2022, the Court heard oral argument on these motions. On July 15, 2022, the Court entered an Order denying in part and granting in part the motions to dismiss. *In re FibroGen Inc. Sec. Litig.*, 2022 WL 2793032 (N.D. Cal. July 15, 2022) ("*FibroGen I*").

From approximately August 2022 through October 2023, the Parties engaged in extensive discovery. Among other things, Plaintiffs propounded and responded to numerous documents requests and/or interrogatories, served multiple nonparty subpoenas, and obtained and reviewed millions of pages of documents produced by Defendants and third parties. All told, approximately 281,000 documents spanning more than 4.6 million pages were produced in discovery. In addition, the Parties conducted numerous meet-and-confers amongst themselves and with non-parties, and exchanged dozens of letters and substantive emails, as well as multiple privilege logs.

1    The Parties also engaged in discovery disputes on a variety of issues.  On January 27, 2023,

2    Lead Plaintiffs attached to their motion for class certification a presentation prepared by Defendant

3    Eisner in March 2021, which Defendants had produced in discovery.  *Xu v. FibroGen, Inc.*, 2023

4    WL 3475722, at *2 (N.D. Cal. May 15, 2023) ("*FibroGen II*").  Days later, Defendants notified

5    Plaintiffs that they were clawing back the document on the basis of attorney-client privilege, and

6    claimed that the document had been inadvertently produced. *Id.* On February 15, 2023, the Parties

7    submitted a joint letter brief regarding the validity of Defendants' claim of privilege.  *Id.*  On

8    March 29, 2023, the Court found that Defendants waived any privilege that may have been

9    afforded to the presentation when they produced it to the SEC.  *Id* at *1. On April 10, 2023,

10   Defendants moved for leave to file a motion for reconsideration, which motion the Court granted.

11   *Id.* Following the Parties' additional briefs and accompanying submissions, (ECF Nos. 172, 176,

12   177), on May 15, 2023, the Court denied Defendants' motion for reconsideration.  *Id.* at *6.

13   Another discovery dispute involved ESI and hard copy documents from Defendant Yu's

14   files. On December 6, 2022, Plaintiffs were informed of the erasure of Yu's FibroGen-issued

15   laptop. ECF No. 185 at 13.  Over the course of approximately six months, the Parties engaged in

16   substantial litigation efforts related to this dispute, including conducting at least five meet and

17   confers, exchanging at least 16 letters and 40 substantive emails related to these issues, and

18   conducting two depositions, including a deposition of Yu on March 10, 2023 (ECF No. 185 at 16).

19   On June 8, 2023, Lead Plaintiffs filed a motion for sanctions (ECF No. 185).  On July 17,

20   2023, Defendants Yu and FibroGen each filed oppositions to Plaintiffs' motion (ECF Nos. 197,

21   199) and FibroGen also moved to strike portions of a declaration Lead Counsel filed in support of

22   their motion (ECF No. 198).  On August 11, 2023, Plaintiffs filed a reply to their motion for

23   sanctions (ECF No. 205) and an opposition to FibroGen's motion to strike (ECF No. 206).  On

24   August 29, 2023, the Court denied Defendants' motion to strike.  *In re FibroGen Sec. Litig.*, 2023

25   WL 5600077 (N.D. Cal. Aug. 29, 2023) ("*FibroGen III*").  The Court held a hearing on Plaintiffs'

26   motion for spoliation sanctions on August 31, 2023, and on September 29, 2023, granted in part

27   and denied in part the motion.  ECF No. 223.  On October 6, 2023, Yu moved for leave to file a

28

1   motion for reconsideration of the Court's decision (ECF No. 226), which leave the Court granted

2   (ECF No. 229). The motion was pending when the Parties agreed to settle the Action.

3          Regarding class certification, Plaintiffs filed their motion and the expert report of Chad

4   Coffman on January 27, 2023.  ECF Nos. 147, 147-2.  Defendants opposed the motion on May 12,

5   2023, attaching the expert report of Dr. Paul Zurek (ECF Nos. 180, 180-1 Ex. 1).  On June 23,

6   2023, Plaintiffs replied (ECF No. 192), and on August 17, 2023, Defendants filed a sur-reply (ECF

7   Nos. 210, 210-1).  On August 31, 2023, the Court held a hearing on the motion, during which the

8   Court directed the Parties to file a supplemental chart regarding facts potentially disclosed on July

9   15, 2021 at the FDA Advisory Committee Meeting ("AdCom") considering FibroGen's

10  Roxadustat NDA.  The Parties jointly filed this supplemental briefing on September 15, 2023.

11  ECF No. 221.

12         On October 3, 2023, the Court granted in part and denied in part the Motion for Class

13  Certification ("Class Certification Order"). ECF No. 224.[6] The Court appointed Lead Plaintiffs as

14  Class Representatives and Lead Counsel as Class Counsel, and certified a class of FibroGen

15  shareholders for a class period from December 20, 2018 through April 6, 2021, inclusive

16  ("Certified Class Period"). *Id.* at 32.  While Plaintiffs had moved to certify a class period between

17  December 20, 2018 through July 15, 2021, the Court found that no new information was

18  disseminated at the AdCom that corrected any alleged false statement, and therefore, ended the

19  Class Period with the after-market disclosure on April 6, 2021 (*id.* at 22-27). The Court also

20  deferred certification of options holders pending further briefing on whether damages could be

21  calculated on a class-wide basis (*id.* at 31-32).

22  **III.    SUMMARY OF SETTLEMENT NEGOTIATIONS**

23         On March 14, 2023, the Parties and Defendants' directors' and officers' liability insurance

---

[6] In this October 3, 2023 order, the Court instructed the Parties to "meet and confer to determine
which portions of this order may be publicly filed" and "jointly file their request to file under seal
within a week of the date of this order." *Id.* at 33. Per Defendants' email on October 4, 2023 to the
Court, Defendants stated: "Defendants are the only party that has made sealing requests and
confidentiality designations in connection with this briefing, and have determined that the order
does not need to remain under seal, which we have conveyed to Plaintiffs. As a result, we request
that the court please file this order publicly in full." Plaintiffs endorsed the position, and the Parties
have agreed to this. *See* Stipulation at ¶3.4.

LP'S MOTION FOR PRELIM. APPR.              5
OF CLASS ACTION SETTLEMENT
3:21-cv-02623-EMC

1    carriers (the "D&O Insurers") participated in an in-person mediation session in San Francisco with

2    experienced mediator, Michelle Yoshida, Esq. of Phillips ADR Enterprises.  Prior to the mediation,

3    each side submitted comprehensive mediation statements and rebuttal statements setting forth their

4    respective positions on various legal and factual issues.  At the conclusion of the mediation, the

5    Parties were at an impasse and agreed to continue litigation efforts.   No further settlement

6    negotiations were scheduled.

7         After conducting several months of additional litigation efforts, in July 2023, the Parties

8    resumed settlement discussions through Ms. Yoshida, which included numerous telephonic and

9    video conferences. Yoshida Decl. at ¶12-13. These discussions culminated in a mediator's

10    proposal to settle the Action for $28.5 million, which the Parties accepted on October 17, 2023.

11    *Id.* ¶14.

12 **IV.    SETTLEMENT TERMS[7]**

13         The Settlement requires Defendants to cause to be paid $28,500,000 into the Escrow

14    Account, which amount, plus any interest accrued thereon, comprises the Settlement Fund.[8]

15         Notice and Administration Costs will be funded by the Settlement Fund.  Plaintiffs propose

16    JND, a nationally recognized class action settlement administrator, to be retained as Claims

17    Administrator here subject to the Court's approval.[9] The proposed notice plan and plan for claims

18    processing is discussed below and in the Segura Declaration.

19         The Notice provides in easily understandable language that Lead Counsel will move for

20    final approval of the Settlement and approval of an award of attorneys' fees in the amount of no

21

22    [7] The full terms and conditions of the Settlement are set forth in the Stipulation.

23    [8] No monies shall revert to the Defendants once the Settlement and Judgment becomes Final.  *See* Stipulation at ¶2.8; Appendix at 5.

24    [9] Courts, including this Court, have routinely approved JND as a claims administrator in securities

25    class action settlements. *See* Segura Decl.; *see also Davis v. Yelp*, 2022 WL 21748777, at *5 (N.D. Cal. Aug. 1, 2022) (Chen, J.) (appointment of JND in securities class action as "administrator for

26    the settlement seems reasonable, based on JND's background and experience as a reliable settlement administrator in similar cases"); *Fleming v. Impax Lab'ys Inc.*, 2021 WL 5447008, at

27    *12 (N.D. Cal. Nov. 22, 2021) (same and noting JND's "extensive experience"); *In re Signet Jewelers Ltd. Sec. Litig.*, 2020 WL 4196468, at *13 (S.D.N.Y. July 21, 2020) (appointing JND as

28    claims administrator of $240 million securities class action settlement, noting JND's "extensive experience handling the administration of securities class actions").

1   more than 25% of the Settlement Amount, as well as reimbursement of litigation expenses not to

2   exceed $715,000, plus any interest on such amounts at the same rate and for the same period as

3   earned by the Settlement Fund.  The Notice explains that such fees and expenses shall be paid

4   from the Settlement Fund, and that Lead Plaintiffs intend to request an amount not to exceed

5   $45,000, pursuant to 15 U.S.C. §78u-4(a)(4), in connection with their representation of the Class.

6          Once Notice and Administration Costs, Taxes, Tax Expenses, and Court-approved

7   attorneys' fees and expenses and any award to the Lead Plaintiffs have been paid from the

8   Settlement Fund, the remaining amount, the Net Settlement Fund, shall be distributed pursuant to

9   the Court-approved Plan of Allocation[10] (set forth in the Notice) to Authorized Claimants who are

10  entitled to a distribution of at least $10.[11]   The Plan of Allocation treats all Settlement Class

11  Members equitably based on the timing of their FibroGen securities purchases, acquisitions, and

12  sales. Any amount remaining following the distribution shall be redistributed in an economically

13  feasible manner. Any *de minimis* balance that remains after such reallocation(s) and payment(s)

14  that is not feasible or economical to reallocate shall be donated (subject to Court approval) to the

15  Investor Protection Trust ("IPT"), a non-profit dedicated to investor education and support of

16  investor protection efforts that benefit the investing public.[12]

---

[10] The proposed Plan of Allocation is comparable to plans of allocation approved in numerous other securities class actions.  *Abadilla v. Precigen, Inc.*, 2023 WL 7305053, at *11 (N.D. Cal. Nov. 6, 2023) (finding similar "[p]lan of [a]llocation to be a fair, reasonable, adequate, and equitable method to allocate the [n]et [s]ettlement [f]und" in securities class action); *In re BofI Holding, Inc. Sec. Litig.*, 2022 WL 9497235, at **2, 12 (S.D. Cal. Oct. 14, 2022) (approving similar plan of allocation involving stock and options).

[11] It is standard practice in securities class actions to utilize a $10 minimum check threshold. *See, e.g.*, *Destefano v. Zynga, Inc.*, 2016 WL 537946, at *4 (N.D. Cal. Feb. 11, 2016) ("no Settlement Class Member will be issued a check for a Recognized Loss of less than $10.00 due to the expenses associated with administering the claims"); *Hefler v. Wells Fargo & Co.*, 2018 WL 4207245, at *12 (N.D. Cal. Sept. 4, 2018) ("*Wells Fargo I*") (approved $10 minimum and noted that "numerous cases … have approved similar or higher minimum thresholds"). Plaintiffs weighed the costs of sending checks and administering these claims in determining the $10 minimum.  *See* Segura Decl. at ¶25 n.8.  Additionally, this is consistent with the Court's prior practice.  *See Davis v. Yelp*, No. 3:18-cv-400-EMC, ECF No. 204-2A (Court approved $10 minimum) at ¶62 (N.D. Cal. Dec. 15, 2022).

[12] Founded in 1993, IPT is an independent nonprofit organization devoted to investor education and protection. *See* www.investorprotection.org; *see also* Appendix at 13-14. Pursuant to N.D. Cal. Guideline 8, IPT is an appropriate designee here. *See* Appendix; *In re Energy Recovery Inc. Sec. Litig.*, No. 3:15-cv-00265-EMC, ECF No. 164 at 3 (N.D. Cal. Mar. 19, 2018) (Chen, J.) (approving IPT as designated *cy pres* organization for unused funds after distribution).

1    The Parties have entered into a Supplemental Agreement, which provides that if prior to

2    the Final Approval Hearing, Settlement Class Members representing a certain amount of FibroGen

3    common stock purchased or acquired during the Settlement Class Period request exclusion from

4    the Class, FibroGen shall have the option to terminate the Settlement.[13]

5    Finally, in exchange for the benefits provided under the Stipulation, Settlement Class

6    Members will release the "Released Plaintiffs' Claims." Stipulation ¶¶1.39, 5.2. The Settlement's

7    release provision is tailored to the Settlement Class's claims.[14]  Specifically, the release is limited

8    to claims which "arise out of, are based upon, or relate in any way to the factual predicate of the

9    Action, including (i) any of the allegations, facts, transactions, events, matters, occurrences, acts,

10    disclosures, oral or written statements, representations, omissions, failures to act, filings,

11    publications, disseminations, press releases, or presentations involved, set forth, alleged or referred

12    to in the Action; and (ii) all claims that arise out of, are based upon, or relate in any way to the

13    purchase, acquisition, holding, sale, or disposition of any FibroGen securities during the

14    Settlement Class Period."  *See id*. In addition, the Settlement's release provision does not release

15    "(i) any claims asserted in the Derivative Actions or any other derivative or ERISA action based

16    on similar allegations as those set forth in the Complaint; (ii) any claims asserted in the Opt-Out

17    Action; and (iii) any claims of any person or entity who or which submits a request for exclusion

18    that is accepted by the Court."

19    ## V.    THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL

20    Courts in the Ninth Circuit and around the country recognize that there is a "strong judicial

21    policy that favors settlements, particularly where complex class action litigation is concerned."

---

[13] This type of agreement is standard in securities class actions and has no negative impact on the fairness of the Settlement. *See, e.g.*, *Wells Fargo I*, 2018 WL 4207245, at *11 ("The existence of a termination option triggered by the number of class members who opt out of the Settlement does not by itself render the Settlement unfair."); *In re Carrier IQ, Inc. Consumer Privacy Litig.*, 2016 WL 4474366, at *5 (N.D. Cal. Aug. 25, 2016) (Chen, J.) ("opt-out deals are not uncommon as they are designed to ensure than an objector cannot try to hijack a settlement in his or her own self-interest").

[14] The proposed release is consistent with release provisions approved by this Court and other courts in this Circuit. *See, e.g.*, *Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *3 (N.D. Cal. Dec. 18, 2018) ("*Wells Fargo II*") (approving similar release); *Mandalevy v. BofI Holding, Inc.*, 2022 WL 4474263, at *3 (S.D. Cal. Sept. 26, 2022); *Yelp*, No. 3:18-cv-00400-EMC, ECF No. 189 at ¶1(rr) (N.D. Cal. Apr. 21, 2022) and 2022 WL 21748777, at *2 (approving similar release).

1    *BofI,* 2022 WL 9497235, at *4 (S.D. Cal. Oct. 14, 2022); *Lea v. Tal Education Group*, 2021 WL

2    5578665, at *4 (S.D.N.Y. Nov. 30, 2021) (same).  "Settlement is the offspring of compromise; the

3    question we address is not whether the final product could be prettier, smarter or snazzier, but

4    whether it is fair, adequate and free from collusion."  *Wells Fargo I*, 2018 WL 4207245, at *8.

5            Determining whether to approve a proposed class action settlement is a two-step process.

6    *See Wells Fargo I,* 2018 WL 4207245, at *7.  First, the Court performs a preliminary review to

7    determine if notice of the proposed settlement should be sent to the class; second, after notice is

8    provided and a hearing held, the Court determines whether to approve the settlement as "fair,

9    reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Pursuant to Rule 23(e)(1), preliminary

10   approval is appropriate where "the parties show[] that the Court will likely be able to: (i) approve

11   the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the

12   proposal." Rule 23(e)(2) identifies factors that courts must consider at final approval in

13   determining whether the settlement is "fair, reasonable, and adequate," including whether:

14       (A)    the class representatives and class counsel have adequately represented the class;

15       (B)    the proposal was negotiated at arm's length;

16       (C)    the relief provided for the class is adequate, taking into account:

17           (i)    the costs, risks, and delay of trial and appeal;

18           (ii)    the effectiveness of any proposed method of distributing relief to the class,
19                   including the method of processing class-member claims;

20           (iii)    the terms of any proposed award of attorney's fees, including timing of
                payment; and

21           (iv)    any agreement required to be identified under Rule 23(e)(3); and

22       (D)    the proposal treats class members equitably relative to each other.

23           In addition, the Ninth Circuit traditionally considers the following factors (most of which

24   overlap with Rule 23(e)(2)): (1) the strength of plaintiffs' case; (2) the risk, expense, complexity,

25   and likely duration of further litigation; (3) the risk of maintaining class action status throughout

26   the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage

27   of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental

28   participant; and (8) the reaction of the class members to the proposed settlement. *Hanlon v.*

LP'S MOTION FOR PRELIM. APPR.        9
OF CLASS ACTION SETTLEMENT
3:21-cv-02623-EMC

1    *Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).[15]  Because some of the factors bearing on

2    the propriety of a settlement cannot be assessed prior to the final approval hearing, "a full fairness

3    analysis is unnecessary at this stage."  *In re Lyft, Inc. Sec. Litig.*, 2022 WL 17740302, at *4 (N.D.

4    Cal. Dec. 16, 2022).[16] As summarized below, and as will be detailed further in a motion for final

5    approval of the Settlement, all factors are met.

6          **A.**      **Lead Plaintiffs And Lead Counsel Have Adequately Represented The Class**

7          In determining whether to approve a class action settlement, Courts consider whether Lead

8    Plaintiff and Lead Counsel "have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A).

9    As the Court held in certifying a class here: "The adequacy inquiry turns on: (i) whether the named

10   plaintiff and class counsel have any conflicts of interest with other class members; and (ii) whether

11   the named plaintiff and class counsel can vigorously prosecute the action on behalf of the class . .

12   . the adequacy requirements [] are met." ECF No. 224 at 11-13.

13         Indeed, Plaintiffs and their counsel vigorously and zealously prosecuted this Action for

14   over two years. Lead Plaintiffs' and Lead Counsel's extensive litigation efforts included: (i) a

15   thorough investigation, including locating and interviewing numerous confidential witnesses; (ii)

16   the filing of a detailed Complaint; (iii) consultation with various experts; (iv) successfully

17   opposing Defendants' motions to dismiss; (v) engaging in extensive class certification discovery

18   and successfully moving, in part, for class certification; (vi) engaging in comprehensive fact

19   discovery, including obtaining, reviewing and analyzing approximately 4.6 million pages of

20   documents from Defendants and third parties, as well as locating and producing numerous

21   documents to Defendants; (vii) engaging in significant discovery motion practice; (viii) defending

22   depositions of Lead Plaintiffs and Lead Plaintiffs' expert on market efficiency, taking two

23   depositions related to a sanctions motion, and preparing for up to 20 additional fact witness

24

25   [15] Plaintiffs will address *Hanlon* factors 1-6 in the analysis of Rule 23(e)(2).  *See Loomis v.*
     *Slendertone Distribution, Inc.*, 2021 WL 873340, at *4, n.4 (S.D. Cal. Mar. 9, 2021) ("Because of
26   the overlap [] the Court folds the Ninth Circuit's factors into its analysis of Rule 23(e)(2)").

27   [16] Regarding *Hanlon* factor 7, the reaction of the Settlement Class cannot be properly gauged until
     notice is given.  Regarding *Hanlon* factor 8, no governmental body is a party to this Action.
28   *Shvager v. ViaSat, Inc.*, 2014 WL 12585790, at *11 (C.D. Cal. Mar. 10, 2014) (this "factor is
     inapplicable and neutral because no government entity participated in the case").

depositions; (ix) the submission of detailed mediation and rebuttal statements; and (x) a formal mediation session before a noted mediator and subsequent significant settlement negotiations over several months before the Parties agreed to resolve the Action.

**B.      The Settlement Results From Good-Faith, Arm's-Length Negotiations**

"The involvement of experienced class action counsel and the fact that the settlement agreement was reached in arm's length negotiations, after relevant discovery had taken place create a presumption that the agreement is fair." *Todd v. STAAR Surgical Co.*, 2017 WL 4877417, at *2 (C.D. Cal. Oct. 24, 2017).  Moreover, when "settlement negotiations [are] overseen by an experienced neutral mediator before reaching" an agreement, the settlement "is the product of successful arms-length negotiations." *Destefano*, 2016 WL 537946, at *14.

Here, as noted above, the proposed Settlement follows extensive, hard-fought litigation, including discovery, class certification, and arm's-length negotiations. *Lyft*, 2023 WL 5068504, at *8 (N.D. Cal. Aug. 7, 2023) (when the "parties settled only after conducting significant discovery and investigation into [p]laintiff's claims," counsel "entered the settlement discussions with a substantial understanding of the factual and legal issues, so as to allow them to assess the likelihood of success on the merits").

Moreover, as detailed herein and in the Yoshida Declaration, the Settlement was achieved only after months of serious, informed, and non-collusive negotiations with Ms. Yoshida – who has served as a mediator in numerous shareholder actions. As part of the settlement discussions, Lead Counsel and Defendants' Counsel prepared and presented submissions concerning their respective views on the merits of the Action, including Defendants' defenses and issues relating to causation and damages, along with supporting evidence obtained through discovery. Ms. Yoshida confirms that the "mediation process was a hard-fought negotiation from beginning to end and was conducted by experienced and able counsel on both sides" and the "negotiations between the Parties were vigorous and conducted at arm's length and in good faith." Yoshida Decl. at ¶10.  These facts strongly support the conclusion that the Settlement is fair.  *STAAR Surgical*, 2017 WL 4877417, at *2 (settlement approved where it was "the outcome of an arms-length negotiation conducted with the help of an experienced mediator Michelle Yoshida"); *Kendall v.*

*Odonate Therapeutics*, 2022 WL 188364, at *6 (S.D. Cal. Jan. 18, 2022) (granting preliminary approval where the "parties also participated in a full day of voluntary mediation before [] Yoshida and an additional three weeks of negotiations before reaching an agreement to settle in principle").

Additionally, the "recommendation of experienced counsel in favor of settlement carries a great deal of weight in a court's determination of the reasonableness of a settlement." *Harris v. Vector Marketing Corp.*, 2011 WL 1627973, at *16 (N.D. Cal. Apr. 29, 2011) (Chen, J.).  Here, Lead Counsel are "experienced class action litigators" (ECF No. 224 at 30) and their substantial experience in cases of this nature gives further weight to their judgment that the Settlement is fair and reasonable. *See, e.g.*, ECF No. 147-12 (Saxena White firm resume); *see also Peace Officers' Annuity and Benefit Fund of Georgia v. DaVita, Inc.*, 2021 WL 1387110, at *5 (D. Colo. Apr. 13, 2021) (in approving $135 million PSLRA settlement, "the [c]ourt g[ave] weight to the judgment of [Saxena White], who are highly experienced in prosecuting securities class actions").

Moreover, the fact that Plaintiffs are sophisticated institutional investors, of the type favored by Congress when it passed the PSLRA, lends credibility to their recommendation that the Settlement be approved. *See In re Genworth Fin. Sec. Litig.*, 210 F. Supp. 3d 837, 842 (E.D. Va. 2016) (plaintiffs "are sophisticated institutional investors managing billions of dollars in pensioners' investments and experienced in the world of securities laws. The active participation by the Lead Plaintiffs in the negotiation process further weighs in favor of approv[al]").

**C.**    **The Relief Provided For The Settlement Class Is Adequate**

**1.**    **The Amount Offered In The Settlement Favors Approval**

"To evaluate the adequacy of the settlement amount, courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer." *Wells Fargo I*, 2018 WL 4207245, at *9.  "It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not *per se* render the settlement inadequate or unfair." *Embark,* 2023 WL 6276728, at *8; *see also Patel v. TransUnion, LLC*, 2018 WL 1258194, at *4 (N.D. Cal. Mar. 11, 2018) (the "court need not ask whether the proposed settlement is ideal or the best possible"; rather, if it is "fair, free of collusion, and consistent with the named plaintiffs' fiduciary obligations").

Here, the $28.5 million Settlement Amount is an excellent result for the Settlement Class,

as it would have ranked in the top 31% of all securities class action settlements in 2022.[17] Moreover, this Settlement exceeds (i) the median recovery size of $9.0 million for settlements between 2013 and 2022, like this one, alleging only claims under the Securities Exchange Act, and (ii) the $7.6 million median recovery size for the Ninth Circuit.[18]

Plaintiffs' expert, Mr. Scott Walster, has calculated the maximum possible value of the recovery if Plaintiffs were to fully prevail on all of their claims. The maximum damages for the class period that the Court certified in the Class Certification Order – assuming that Plaintiffs are successful on every issue and netting for pre-class period gains– are approximately $818 million for shareholders and $33 million for option holders.[19] *See* Walster Decl. at ¶5. Additionally, Defendants made credible arguments, which if fully accepted by the Court or a jury, could have limited the actionable class period to November 8, 2019 through April 6, 2021, inclusive, with only one actionable corrective disclosure on April 6, 2021 (after the close of trading) (the "Minimum Damages Scenario"). In that scenario, Plaintiffs' expert estimates that damages for FibroGen common stockholders would be as low as $443 million with netting of pre-class period gains and $13 million (or zero if options were not certified) for option holders. *Id.* at ¶¶17, 23.

Therefore, the $28.5 million recovery exceeds the 1.7% to 4.3% median percentage of similar damages ranges in 2022 settlements by recovering 3.4% to 6.4% of maximum likely potential damages recoverable at trial.[20] Courts have routinely approved similar settlements as fair and reasonable. *See, e.g., Wong v. Arlo Technologies, Inc.*, 2021 WL 1531171, at *9 (N.D. Cal. Apr. 19, 2021) (recovery of 2.35% "weighs in favor of approval"); *Embark*, 2023 WL

---

[17] *See* Cornerstone Research, *Securities Class Action Settlements, 2022 Review and Analysis*, at 4 (March 8, 2023), https://www.cornerstone.com/wp-content/uploads/2023/03/Securities-Class-Action-Settlements-2022-Review-and-Analysis.pdf.

[18] *Id.* at 7, 19.

[19] If Plaintiffs had proceeded through jury verdict, netting of pre-class period gains would have been highly likely. *See Jaffe Pension Plan v. Household Intern., Inc.*, 756 F.Supp.2d 928, 935 (N.D. Ill. 2010) ("out-of-pocket damages are limited to actual damages such that plaintiffs' losses must be netted against any of their profits attributable to the same fraud").

[20] *See Securities Class Action Settlements, 2022 Review and Analysis* at 6, the median recoveries for settlements in 2022 with $500-$999 million in damages was 1.7%, and settlements in 2022 with $250-$499 in damages was 4.3%.

6276728, at \*7 (granting preliminary approval to settlement recovering 1.1% of maximum damages); *In re Broadcom Corp. Sec. Litig.*, 2005 WL 8153007, at \*6 (C.D. Cal. Sept. 14, 2005) (recovery of 2.7% "not [] inconsistent with the average recovery in securities class action[s]").

Moreover, these figures represent estimates of whether Plaintiffs were successful on all (or nearly all) of their claims at trial.  As Plaintiffs explain herein, the Court's decision on class certification would have likely stood; therefore, the above damages range is for the maximum scenario for the Certified Class Period and minimum damages scenario based on some of Defendants' arguments limiting the Class Period to a November 8, 2019 start. Defendants made several additional credible arguments that could have potentially materially reduced damages, or eliminated them altogether.   Additionally, as discussed herein, taking into consideration FibroGen's current financial condition and the Company's rapidly wasting directors' and officers' insurance proceeds, the Settlement is objectively an excellent result for the Settlement Class.

## 2.    The Settlement Weighs The Strength Of Lead Plaintiffs' Claims With The Substantial Risks Of Continuing Litigation

"In assessing the costs, risks, and delay of trial and appeal, Fed R. Civ. P. 23(e)(2)(C)(i), courts in the Ninth Circuit evaluate "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; [and] the risk of maintaining class action status throughout the trial." *In re Extreme Networks, Inc. Sec. Litig.*, 2019 WL 3290770, at \*8 (N.D. Cal. July 22, 2019) (citing *Hanlon*, 150 F.3d at 1026).  Courts favor settlement as it conserves valuable resources and avoids further "protracted and uncertain litigation" and "subsequent appeals." *Katz v. China Century Dragon Media, Inc.*, 2013 WL 11237202, at \*5 (C.D. Cal. Oct. 10, 2013).  "In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results."  *Rieckborn v. Velti PLC*, 2015 WL 468329, at \*4 (N.D. Cal. Feb. 3, 2015).

Here, Plaintiffs have considered the many costly milestones that remain in this Action.  As an initial matter, "securities fraud class actions are complex cases that are time-consuming and difficult to prove." *Cheng Jiangchen v. Rentech, Inc.*, 2019 WL 5173771, at \*6 (C.D. Cal. Oct. 10, 2019); *Extreme Networks*, 2019 WL 3290770, at \*8 ("Securities actions in particular are often

long, hard-fought, complicated, and extremely difficult to win"). Indeed, complex securities fraud class actions, such as this one, present myriad risks that plaintiffs must overcome to ultimately secure a recovery. *See*, *e.g.*, *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 395 (9th Cir. 2010) (affirming summary judgment in favor of defendants); *In re JDS Uniphase Corp. Sec. Litig.*, 2007 WL 4788556 (N.D. Cal. Nov. 27, 2007) (after lengthy trial involving securities claims, the jury reached a verdict in defendants' favor); *In re Tesla Inc. Sec. Litig.*, 2023 WL 4032010, at *1 (N.D. Cal. June 14, 2023) (Chen, J.) (although this Court granted partial summary judgment on falsity and scienter to plaintiff in securities class action, jury returned verdict for defendants). The uncertainty created by these circumstances weighs in favor of approving the Settlement.

Moreover, while Plaintiffs strongly believe in the merits of this case, they are cognizant of the significant risk that continued litigation could end in no recovery at all. Although Plaintiffs believe that they had strong counterarguments, Defendants made a number of credible arguments which the Court at summary judgment, a jury after trial, or an appellate court could have accepted. Indeed, the Court has already accepted several of the arguments that Defendants made in opposing class certification. Additionally, Plaintiffs believed there were several other extant risks and arguments that Defendants would likely raise. Specifically, on class certification and loss causation, the Court declined to certify the full alleged class period between December 20, 2018 through July 15, 2021, and instead found that the class period should end on April 6, 2021, accepting Defendants' arguments that there was no price impact thereafter. ECF No. 224 at 22, 27. The Court agreed with Defendants that all information correcting their alleged false statements had been revealed on July 13, 2021 (with no consequent drop in FibroGen's stock price) and that the decline in FibroGen's share price after the July 15, 2021 AdCom reflected the decision of the AdCom to not recommend approval for Roxa. *Id*. at 22-26. Even if Plaintiffs could have successfully moved for reconsideration or appealed this decision (an unlikely prospect), Defendants could have raised similar arguments at summary judgment or at trial.

Defendants likely also would have contested loss causation at summary judgment for two of the three other alleged corrective disclosures. Defendants would have likely argued that the May 9, 2019 alleged disclosure did not reveal any of their prior statements as false and rather

1    reflected the market's disappointment that the new Roxadustat safety results were not as promising

2    as those from the more limited earlier set.  Defendants also likely would have argued that the drop

3    following FibroGen's March 1, 2021 announcement that the FDA was convening an AdCom was

4    not corrective of any information regarding the alleged underlying data manipulation.

5          Regarding falsity, Defendants likely would have continued to argue that alleged false

6    statements prior to May 2019 concerning the pooled safety analyses were not actionable, as the

7    results of these analyses were not unblinded (and thus available to FibroGen) until April 2019.

8    ECF No. 197 at 3.  Furthermore, FibroGen did not provide numerical results of the pooled safety

9    analyses incorporating the post-hoc changes in the stratification data until November 2019.  *Id.*

10   Thus, there was a risk that the class period as certified by the Court could be whittled down even

11   further.  *See, e.g., In re Immune Response Sec. Litig.,* 497 F. Supp. 2d 1166, 1172 (S.D. Cal. 2007)

12   (finding risk that class period could be shortened supported settlement).

13         Concerning scienter, certain Individual Defendants would likely have argued that they

14   were unaware that FibroGen made post-hoc changes to its stratification factors in the analyses that

15   FibroGen labelled as the primary analyses in the NDA.  For example, Defendant Eisner had only

16   started as FibroGen's CMO in December 2020 (Complaint at ¶26), claimed to have only learned

17   about these changes on March 11, 2021, and after investigating this matter further, promptly

18   alerted the FDA on April 2, 2021 (ECF No. 197 at 8).  Similarly, Defendant Cotroneo could have

19   argued that, as FibroGen's CFO, he had no reason to second guess what medical professionals told

20   him about the NDA or to make conclusions about Roxadustat's safety. Moreover, Defendants

21   repeatedly argued throughout this Action that the April 6, 2021 disclosure of FibroGen's labelling

22   of analyses using post-hoc changes to stratification factors reflected a mere disagreement between

23   old and new management as to the best analyses to use (ECF No. 122 at 22:6-9). Defendants also

24   argued that the use of post-hoc analyses was not unreasonable because the FDA had expressly

25   allowed FibroGen to use them (the ITT analyses for the non-dialysis dependent population) to try

26   to address a differential dropout problem in the trials (ECF No. 107 at 8). Further, Defendants

27   would continue to argue that they never admitted to manipulating safety results, the FDA never

28   expressed concerns about FibroGen's use of post-hoc stratification factors, and that Plaintiffs'

LP'S MOTION FOR PRELIM. APPR.              16
OF CLASS ACTION SETTLEMENT
3:21-cv-02623-EMC

1    allegations of manipulation were "based entirely on public comments by a handful of outside

2    observers, none of whom knew what stratification factors FibroGen had used, or why, or what

3    FibroGen had disclosed to the FDA about stratification factors." ECF No. 180 at 5.

4        Additionally, Defendants would have continued to argue that the fact that numerous other

5    jurisdictions (including ones with rigorous drug safety approval processes) had approved

6    Roxadustat for use, would prevent a finding of scienter.  ECF No. 107 at 23.  Indeed, the Court

7    found that this was a "helpful fact for Defendants" and was "relevant" to the scienter analysis.

8    *FibroGen I*, 2022 WL 2793032, at *23.  Similarly, Defendants would also have argued that they

9    lacked scienter because FibroGen and its Roxadustat development partner, AstraZeneca (a very

10   large and sophisticated pharmaceutical company that regularly files NDAs with the FDA) in the

11   end both released the same safety results using the post-hoc stratification factors to investors and

12   approved the filing of the NDA.  ECF No. 107 at 8.

13       In sum, there is no question that a jury could have found that there was no loss causation

14   for the May 9, 2019 and March 1, 2021 alleged corrective disclosures, that Defendants' statements

15   prior to May or November 2019 were not false, or that some or all of the Defendants lacked

16   scienter.  Absent settlement now, the Parties may face years litigating this Action to a final

17   resolution, including further discovery, dispositive motions, trial, and likely post-trial appeals.

18   *Sudunagunta v. NantKwest, Inc.*, 2019 WL 2183451, at *4 (C.D. Cal. May 13, 2019) (finding

19   likelihood of "further deposition and expert discovery, motion practice, trial, and potentially

20   appeals following trial" favored settlement); *Rentech*, 2019 WL 5173771, at *6 (fact that in one

21   securities class action, "two years after jury verdict in plaintiffs' favor and ten years after the case

22   was filed, shareholders had still received no recovery," favored settlement).

23       Furthermore, even had Plaintiffs fully prevailed on every single aspect of the litigation and

24   secured a judgment for maximum damages, there was a significant risk that Plaintiffs would have

25   been unable to recover more than the Settlement Amount and possibly nothing at all, due to

26   FibroGen's current financial condition and resulting limited resources to fund a settlement. On

27   October 17, 2023, the date on which the Parties agreed to resolve the Action, FibroGen's stock

28   price closed at approximately $0.65 per share, representing a market capitalization of

approximately $60 million.  The Settlement Amount thus represents nearly **half** of the Company's entire market capitalization on that date. Plaintiffs were and are also cognizant of the following facts: (i) Roxadustat has never been approved in the United States and competes with similar types of anti-anemia drugs in other countries; (ii) FibroGen's only other major drug candidate, Pamrevlumab, failed to meet its endpoint in Phase III study and has yet to be approved anywhere for any condition; and (iii) the Company's Form 10-Q filed on November 6, 2023 reported that the Company had only approximately $121 million in cash and cash equivalents and a net loss for the nine months ended 2023 of approximately $228 million. As such, the only real pool of funds available for settlement in this Action is FibroGen's D&O Insurance. "Here, the D&O [I]nsurance coverage is a wasting asset as it pays legal fees of the [] Defendants, as providing coverage for the claims asserted in the Action"; "each day that the Action was not settled would take away money available for the Class for settlement."  *Guevoura Fund Ltd. v. Sillerman*, 2019 WL 6889901, at *8 (S.D.N.Y. Dec. 18, 2019).

Thus, the Settlement Amount is outstanding and strongly weighs in favor of preliminarily approving the Settlement.  *See Embark*, 2023 WL 6276728, at *7 (granting preliminary approval to settlement recovering 1.1% of damages "as [d]efendants' tenuous financial position warranted settlement"); *Velti*, 2015 WL 468329, at *6 (finding company's precarious "financial condition…highlights the reasonableness of the settlement amount ); *Brown v. China Integrated Energy Inc.*, 2016 WL 11757878, at *7 (C.D. Cal. July 22, 2016) (settlement reasonable where company's only domestic "asset is its Directors and Officers Insurance Policy—an eroding policy that decreases as it pays defense costs, leaving less available to satisfy any judgment"); *Immune Response*, 497 F. Supp. 2d at 1172 (finding "significant collectability issues" when company "had no money to fund a judgment or settlement [and] the only available source of funds was wasting insurance policies" supported settlement).

### 3. The Proposed Method For Distributing Relief Is Effective

Under Rule 23(e)(2), Courts consider "the effectiveness of [the] proposed method of distributing relief to the class." Fed. R. Civ. P. 23(e)(2)(C)(ii).  Here, the method for processing Settlement Class Members' claims and distributing relief to eligible claimants include well-

1   established, effective procedures for processing claims submitted by potential Settlement Class

2   Members.  *See* Segura Decl. at ¶¶21-26.  JND, if approved by the Court as Claims Administrator,

3   will process claims under the guidance of Lead Counsel, allow claimants an opportunity to cure

4   any deficiencies in their claims or request the Court to review a denial of their claims, and, lastly,

5   mail Authorized Claimants their *pro rata* share of the Net Settlement Fund (per the Plan of

6   Allocation), after Court-approval. Claims processing like the method proposed here is standard in

7   securities class action settlements and has long been found to be effective.  *See, e.g., Wells Fargo*

8   *II,* 2018 WL 6619983, at *7 (N.D. Cal. Dec. 18, 2018) ("The Court further finds that the proposed

9   claims process provides an effective method of implementing that plan by ensuring that the

10  claimant provides sufficient information to calculate the recognized loss amount.  Therefore, this

11  factor weighs in favor of approval").

12          **4.      Lead Counsel's Fee And Expense Request Is Fair And Reasonable**

13          Rule 23(e)(2)(C)(iii) addresses "the terms of any proposed award of attorney's fees,

14  including timing of payment."  As disclosed in the Notice, Lead Plaintiffs intend to seek an award

15  of attorneys' fees of no more than 25% of the Settlement Fund, or $7,125,000 before interest, and

16  up to $715,000 in expenses, which includes standard litigation expenses such as eDiscovery costs

17  and expert fees.[21]  This request squares with the 25% benchmark rate for attorney's fee awards in

18  the Ninth Circuit and is consistent with awards in similar complex class action cases. *See, e.g.*, *In*

19  *re Vocera Communications, Inc., Sec. Litig.*, 2016 WL 8201593, at *1 (N.D. Cal. July 19, 2016)

20  (Chen, J.) (awarding 25% attorneys' fees as "fair and reasonable and consistent with fee awards

21  approved in cases within the Ninth Circuit); *Davis v. Yelp, Inc.*, 2023 WL 3063823, at *2 (N.D

22  Cal. Jan. 27, 2023) (Chen, J.) (awarding 33.3% attorneys' fees on $22.25 million securities class

23  action settlement and reimbursing over $930,000 in litigation expenses).

---

24  [21] Further, as explained in the Notice, Lead Plaintiffs also intend to request an award for

25  reimbursement for their time and expenses in representing the Class in an amount not to exceed, in aggregate, $45,000.  *See, e.g.*, *In re Omnivision Technologies, Inc.,* 559 F. Supp. 2d 1036, 1049

26  (N.D. Cal. 2008) (reimbursing lead plaintiffs for "time and expenses" in the amount of $29,913.80); *Yelp*, 2023 WL 3063823, at *2 (approving $15,000 award to one lead plaintiff whose

27  efforts included "reviewing filings, conferring with counsel about litigation strategies, producing documents in response to requests for production, responding to interrogatories, participating in

28  his deposition, and authorizing his attorneys to settle the case").

Moreover, Lead Counsel's estimated lodestar is in excess of the requested 25% of the Settlement Fund and would therefore represent a ***negative*** multiplier of approximately 0.5.[22] Accordingly, a lodestar cross-check would support the reasonableness of such a fee request. *See, e.g., In re Verifone Holdings, Inc. Sec. Litig.*, 2014 WL 12646027, at *2 (N.D. Cal. Feb. 18, 2014) (Chen, J.) (noting that "the Ninth Circuit's benchmark [is] 25%" in approving attorneys' fees equal to a lodestar multiplier of "4.3 compared to the Ninth Circuit's observation that over 80% of multipliers fall between 1.0 and 4.0"); *Yelp*, 2023 WL 3063823, at *2 ("Not only is an upwards fee multiplier commonplace in complex class actions, but a multiplier of less than one suggests that the negotiated fee award is reasonable"); ECF No. 224 at 30 (finding Lead Counsel has "dedicated a substantial amount of time and resources into this case").

### 5. The Parties Have No Side Agreements Besides Opt-Outs

Rule 23(e)(2)(C)(iv) requires the disclosure of any side agreement. As detailed above, the Parties have entered into a confidential supplemental agreement that is standard in securities class action settlements and will be filed concurrently under seal with the Court.

### 6. All Settlement Class Members Are Treated Equitably

Rule 23(e)(2)(D) requires courts to evaluate whether the settlement treats class members equitably relative to one another. Here, the proposed Plan of Allocation is fair, reasonable, and adequate because it does not treat Plaintiffs or any other Class Member preferentially. *See* Appendix at 4; *In re Zynga Inc. Sec. Litig.*, 2015 WL 6471171, at *10 (N.D. Cal. Oct. 27, 2015) (finding the plan of allocation "distributes the funds without giving undue preferential treatment to any class members"). The Plan of Allocation, which is set out in the Notice, explains how the Settlement proceeds will be distributed among Authorized Claimants. Each eligible Settlement Class Member, including Lead Plaintiffs, will be subject to the same formulas for distribution of the Settlement. *See Rentech*, 2019 WL 5173771, at *7 ("the [c]ourt sees no significant indication of preferential treatment" where the "[n]et [s]ettlement [f]und will be distributed to [a]uthorized

---

[22] If preliminary approval is granted, Lead Counsel will present its total lodestar in connection with its fee application at the final approval stage, after further detailed review and adjustment of its time entries to account for billing judgment.

[c]laimants on a *pro rata* basis based on the relative size of their [r]ecognize [c]laims"). Courts have found similar plans that award *pro rata* shares to each class member to be fair and reasonable. *See, e.g., Vataj v Johnson,* 2021 WL 1550478, at *10 (N.D. Cal. Apr. 20, 2021) ("The Settlement Fund will thus be distributed on a *pro rata* basis according to each class member's recognized loss"); *Wells Fargo II*, 2018 WL 6619983, at *12 (approving plan of allocation using *pro rata* shares).

## VI.    THE SETTLEMENT CLASS SHOULD BE CERTIFIED

As noted in §II, on October 3, 2023, this Court granted class certification certifying a class of shareholders for the class period from December 20, 2018, through April 6, 2021. ECF No. 224 at 32. The Court also deferred certification of options holders pending supplemental briefing on whether Plaintiffs had put forward a suitable model for estimating damages for options holders on a class-wide basis. *Id.* Under the terms of the Stipulation, Defendants have agreed, for the sole purpose of settlement, to certification of the following Settlement Class: "all persons who purchased or acquired FibroGen securities, including options, between December 20, 2018 through July 15, 2021, inclusive." The proposed Settlement Class is consistent with that alleged in the Complaint and satisfies all of the applicable requirements of Rule 23(a) and Rule 23(b)(3).[23]

It is well-established that a class may be certified for purposes of settlement only. *See In re Vocera Commc'ns, Inc. Sec. Litig.*, 2016 WL 8200430, at *2 (N.D. Cal. July 29, 2016) (Chen, J.) (certifying class for settlement); *Verifone*, 2014 WL 12646027, at *2 (noting that "Court granted preliminary approval and conditional certification of the settlement class"). In deciding whether to certify a settlement class, courts consider the same factors as in connection with a proposed litigation class, except that the Court need not consider the manageability of a potential trial, since the settlement, if approved, would obviate the need for a trial. *See Saliba v. KS Statebank Corp.*, 2021 WL 2105608, at *2 (D. Ariz. May 25, 2021).

---

[23] At the time the Settlement was reached, Lead Plaintiffs could have appealed the Court's decision on class certification. *See* Federal Rule of Civil Procedure 23(f), giving 14 days to petition for permission to appeal after entry of order on class certification. The outcome of this appeal would have been far from certain, and accordingly claims relating to the July 15, 2021 disclosure excluded by the Court have been discounted by 90% to reflect this fact. *See* Notice at ¶60(B) n.4.

1    The Court has already found that all of the requirements under Rule 23(a) have been met.
2    *See* ECF No. 224 at 9-13.  For the same reasons as the Court found previously, and as set forth in
3    Plaintiffs' motion for class certification, the Rule 23(a) factors of numerosity, commonality,
4    typicality, and adequacy are satisfied here with respect to the Settlement Class.  While the Court
5    found that predominance and superiority were met for the entirety of the class period ending in
6    April, the Parties have agreed, for settlement purposes only, to settle the full class period alleged
7    in the Complaint.  This is common in securities class actions.  *See*, *e.g.*, *Indiana Pub. Ret. Sys. v.*
8    *AAC Holdings, Inc.*, No. 3:19-cv-407, 2023 WL 2592134, at *26 (M.D. Tenn. Feb. 24, 2023), ECF
9    No. 192 at 2 (M.D. Tenn. Oct. 18, 2023).

10    Additionally, courts have uniformly found that damages for options holders are readily
11    calculated on a class-wide basis.  *See*, *e.g.*, *In re Apple Inc. Sec. Litig.*, 2023 WL 2763952, at *2
12    (N.D. Cal. Mar. 28, 2023) ("the [c]ourt finds that plaintiff has provided an adequate method of
13    calculating damages for options holders"); *Levy v. Gutierrez*, 448 F. Supp. 3d 46, 66–67 (D.N.H.
14    2019) (where Mr. Coffman, Plaintiffs' class certification expert in this Action, put forth a damages
15    model for options holders, "[t]he court finds that common issues will predominate over
16    individualized ones with respect to calculating damages incurred by options traders").  Plaintiffs'
17    expert, Mr. Walster, had all the information needed to create the Plan of Allocation, which includes
18    damages for Settlement Class Members who are option holders.  *See* Walster Decl. at ¶¶18-23.

19    Finally, courts routinely certify more expansive classes, for settlement purposes only, than
20    those previously certified by a court in securities fraud class actions. *See In re Finisar Corp. Sec.*
21    *Litig.*, No. 5:11-cv-01252-EJD, 2019 WL 2247750, at **2-4, 7 (N.D. Cal. May 24, 2019) and ECF
22    No. 204 at 1-2 (N.D. Cal. Oct. 1, 2020) (court certified settlement class after it had denied motion
23    to certify a class, denied motion for reconsideration of this decision, and struck renewed motion
24    for class certification after Ninth Circuit denied petition to appeal); *Keippel v. Health Ins.*
25    *Innovations, Inc.*, No. 8:19-cv-421, 2020 WL 5094840, at *3 (M.D. Fla. Aug. 28 2020), ECF No.
26    111 at 4 (Mar. 23, 2021) (during litigation in PSLRA action, only certifying class period of
27    September 25, 2017 through February 18, 2019, but certifying the alleged class period of
28    September 25, 2017 through April 11, 2019 for the purpose of settlement); *AAC Holdings, Inc.*,

1  No. 3:19-cv-407, 2023 WL 2592134, at *26 (M.D. Tenn. Feb. 23, 2023), ECF No. 192 at 2 (M.D.

2  Tenn. Oct. 18, 2023) (certifying, during litigation, class period ending November 5, 2018, but

3  certifying class period ending April 15, 2019 for the purposes of settlement).

4      In sum, the proposed Settlement Class meets all requirements and is appropriate for

5  certification for purposes of the Settlement.

6  **VII.    NOTICE TO THE SETTLEMENT CLASS IS WARRANTED**

7      In order to comport with due process, "the Court must direct notice in a reasonable manner

8  to all class members who would be bound by the proposal." *Impax*, 2022 WL 2789496, at *5.

9  Additionally, the "notice must clearly and concisely state in plain, easily understood language the

10 nature of the action, the class definition, and the class members' right to exclude themselves from

11 the class." *Id.*

12     As outlined in the agreed-upon form of proposed Preliminary Approval Order and

13 described above, Lead Counsel will cause the Claims Administrator to notify Settlement Class

14 Members of the Settlement by mailing the Notice and Claim Form to all Settlement Class Members

15 who can be identified with reasonable effort. *See* Segura Decl. at ¶6; Appendix at 6-8. The Notice

16 will advise Settlement Class Members of: (i) the pendency of the class action; (ii) the essential

17 terms of the Settlement; and (iii) information regarding Lead Counsel's application for an award

18 of attorneys' fees and reimbursement of Litigation Expenses. *See generally* Notice. The Notice

19 also will provide specifics on the date, time and place of the Final Approval Hearing and set forth

20 the procedures, as well as deadlines, for opting out of the Settlement Class, for objecting to the

21 Settlement, the proposed Plan of Allocation and/or the application for attorneys' fees and

22 Litigation Expenses, and for submitting a Claim Form. *Id.* The proposed Preliminary Approval

23 Order also requires Lead Counsel to cause the Summary Notice to be published once in *Investor's

24 Business Daily* and to be transmitted over the *PR Newswire.* Lead Counsel will also cause a copy

25 of the Notice and Claim Form to be readily available on the Settlement website created specifically

26 for this Settlement.

27     The form and manner of providing notice to the Settlement Class satisfy the requirements

28 of due process, Rule 23, and the PSLRA. *See Yelp*, 2023 WL 3063823, at *1 (approving similar

LP'S MOTION FOR PRELIM. APPR.   23
OF CLASS ACTION SETTLEMENT
3:21-cv-02623-EMC

1    notice program administered by JND in recent securities class action); *Impax*, 2022 WL 2789496,

2    at *5 (same).

3    **VIII.   NORTHERN DISTRICT OF CALIFORNIA PROCEDURAL GUIDANCE**

4            The Procedural Guidance for class action settlements has been satisfied and weighs in favor

5    of approving the Settlement. *See generally* Appendix; Segura Decl.

6    **IX.   PROPOSED SCHEDULE OF EVENTS**

7            Plaintiffs propose the following schedule for the Settlement-related events in this case.

8

| Event | Proposed Due Date |
|---|---|
| Deadline for mailing the Notice and Claim Form to the Settlement Class (Preliminary Approval Order ¶7(b)) | Not later than 20 calendar days after entry of Preliminary Approval Order (the "Notice Date") |
| Deadline for publishing the Summary Notice (Preliminary Approval Order ¶7(d)) | Not later than 10 business days after the Notice Date |
| Deadline for receipt of Claim Forms (Preliminary Approval Order ¶10) | 100 calendar days after the Notice Date |
| Deadline for filing of papers in support of final approval of Settlement, Plan of Allocation, and Lead Counsel's application for attorneys' fees and expenses (Preliminary Approval Order ¶26) | 42 calendar days prior to the Final Approval Hearing |
| Deadline for receipt of exclusion requests and objections (Preliminary Approval Order ¶¶13, 17) | 28 calendar days prior to Final Approval Hearing |
| Deadline for filing reply papers and submitting proof of the mailing of the Notice to Settlement Class Members and publication of the Summary Notice (Preliminary Approval Order ¶26) | 14 calendar days prior to the Final Approval Hearing |
| Final Approval Hearing (Preliminary Approval Order ¶5) | At least 100 days after entry of Preliminary Approval Order |

**X.   CONCLUSION**

        For the foregoing reasons, Plaintiffs respectfully request that the Court grant preliminary

approval of the Settlement and enter the accompanying Preliminary Approval Order.

Dated: December 8, 2023                 Respectfully submitted,

                                        */s/ David R. Kaplan*
                                        **SAXENA WHITE P.A.**
                                        David R. Kaplan (SBN 230144)
                                        dkaplan@saxenawhite.com
                                        Emily Bishop (SBN 319383)
                                        ebishop@saxenawhite.com
                                        505 Lomas Santa Fe Drive, Suite 180
                                        Solana Beach, CA 92075
                                        Tel.: (858) 997-0860
                                        Fax: (858) 369-0096

1
2
3
4
5
6
Steven B. Singer
ssinger@saxenawhite.com
Kyla Grant (admitted *pro hac vice*)
kgrant@saxenawhite.com
Sara DiLeo (admitted *pro hac vice*)
sdileo@saxenawhite.com
Joshua H. Saltzman (admitted *pro hac vice*)
jsaltzman@saxenawhite.com
10 Bank Street, 8th Floor
White Plains, New York 10606
Tel: (914) 437-8551

Maya Saxena (admitted *pro hac vice*)
msaxena@saxenawhite.com
Lester R. Hooker (SBN 241590)
lhooker@saxenawhite.com
Dianne M. Pitre (SBN 286199)
dpitre@saxenawhite.com
7777 Glades Road, Suite 300
Boca Raton, FL 33434
Tel.: (561)394-3399
Fax: (561)394-3382

*Counsel for Lead Plaintiffs Employees' Retirement System of the City of Baltimore, City of Philadelphia Board of Pensions and Retirement, and Plymouth County Retirement Association, and Lead Counsel for the proposed Settlement Class*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I hereby certify under penalty of perjury that on December 8, 2023, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel or parties of record.

_/s/ David R. Kaplan_
David R. Kaplan