**SAXENA WHITE P.A.**
David R. Kaplan (SBN 230144)
dkaplan@saxenawhite.com
Emily Bishop (SBN 319383)
ebishop@saxenawhite.com
505 Lomas Santa Fe Drive, Suite 180
Solana Beach, CA 92075
Tel.: (858) 997-0860
Fax: (858) 369-0096

*Counsel for Lead Plaintiffs Employees' Retirement
System of the City of Baltimore, City of
Philadelphia Board of Pensions and Retirement,
and Plymouth County Retirement Association, and
Lead Counsel for the proposed Settlement Class*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE FIBROGEN, INC., SECURITIES LITIGATION | Case No. 3:21-cv-02623-EMC |
| | **CLASS ACTION** |
| | DECLARATION OF LESTER R. HOOKER IN SUPPORT OF LEAD PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT |
| | Hearing Date: January 23, 2024 Time: 2:30 p.m. Courtroom: 5 – 17th Floor Judge: Hon. Edward M. Chen |

DECL. OF LESTER R. HOOKER ISO
LP'S MOT. FOR PRELIM. APPR.
3:21-cv-02623-EMC

1    I, Lester R. Hooker, hereby declare as follows:

2    1.    I am a Director of the law firm Saxena White P.A., counsel for the Court-appointed

3    Lead Plaintiffs, Employees' Retirement System of the City of Baltimore, City of Philadelphia

4    Board of Pensions and Retirement, and Plymouth County Retirement Association ("Lead

5    Plaintiffs"). I am a member in good standing of the Bar of the State of California and am admitted

6    to practice in this District. I respectfully submit this declaration in support of Lead Plaintiffs'

7    Motion for Preliminary Approval of Class Action Settlement. The statements made herein are

8    made of my own personal knowledge and, if called upon, I could and would testify competently

9    thereto under oath.

10    2.    Attached hereto as Exhibit 1 is a true and correct copy of the Stipulation and

11    Agreement of Settlement, dated December 7, 2023.

12    3.    Attached hereto as Exhibit 2 is the Declaration of Scott Walster Regarding

13    Calculation of Settlement Class's Estimated Damages, dated December 7, 2023.

14    4.    Attached hereto as Exhibit 3 is the Declaration of Luiggy Segura in Support of Lead

15    Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement, dated

16    December 5, 2023.

17    5.    Attached hereto as Exhibit 4 is the Declaration of Michelle Yoshida in Support of

18    Lead Plaintiffs' Motion for Preliminary Approval of Class Action Settlement, dated December 8,

19    2023.

20    6.    Attached hereto as Exhibit 5 is the Appendix Regarding Court's Procedural

21    Guidance for Class Action Settlements.

22    
23    Executed this 8th day of December, 2023.

24    
25                                        */s/ Lester R. Hooker*
                                        Lester R. Hooker

26    
27    
28

# Exhibit 1

1  SAXENA WHITE P.A.
   David R. Kaplan (230144)
2  dkaplan@saxenawhite.com
   Emily Bishop (319383)
3  ebishop@saxenawhite.com
   505 Lomas Santa Fe Drive, Suite 180
4  Solana Beach, CA 92075
   Tel.: (858) 997-0860
5  Fax: (858) 369-0096

6  *Counsel for Lead Plaintiffs Employees'*
   *Retirement System of the City of Baltimore,*
7  *City of Philadelphia Board of Pensions and*
   *Retirement, and Plymouth County*
8  *Retirement Association, and*
   *Lead Counsel for the Settlement Class*

9
   [Additional Counsel on Signature Page]
10

11

COOLEY LLP
Patrick E. Gibbs (183174)
pgibbs@cooley.com
Tijana M. Brien (286590)
tbrien@cooley.com
Brett De Jarnette (292919)
bdejarnette@cooley.com
Zaneta J. Kim (317844)
zkim@cooley.com
Amie L. Simmons (336356)
asimmons@cooley.com
3175 Hanover Street
Palo Alto, CA 94304
Tel.: (650) 843-5000
Fax: (650) 849-7400

*Counsel for Defendants FibroGen, Inc.,*
*Enrique Conterno, James Schoeneck,*
*Mark Eisner, and Pat Cotroneo*

[Additional Counsel on Signature Page]

12  **UNITED STATES DISTRICT COURT**
    **NORTHERN DISTRICT OF CALIFORNIA**
13

14  IN RE FIBROGEN, INC., SECURITIES
    LITIGATION
15

16

17

18

19

20

Case No. 3:21-cv-02623-EMC

CLASS ACTION

**STIPULATION AND AGREEMENT OF**
**SETTLEMENT**

Hon. Edward M. Chen

21

22

23

24

25

26

27

28

This Stipulation and Agreement of Settlement dated as of December 7, 2023 (the "Stipulation" or the "Settlement Agreement") is made pursuant to Rule 23(e) of the Federal Rules of Civil Procedure. Subject to the approval of the United States District Court for the Northern District of California (the "Court"), this Stipulation is entered into by and among the following parties to the above-captioned action (the "Action") by and through their counsel of record in the Action: (a) Employees' Retirement System of the City of Baltimore, City of Philadelphia Board of Pensions and Retirement, and Plymouth County Retirement Association, as court-appointed lead plaintiffs ("Class Representatives," "Lead Plaintiffs" or "Plaintiffs"), on behalf of themselves and the other members of the Settlement Class (defined below); and (b) (i) defendant FibroGen, Inc. ("FibroGen" or the "Company"); and (ii) defendants Enrique Conterno ("Conterno"), James Schoeneck ("Schoeneck"), Mark Eisner ("Eisner"), Pat Cotroneo ("Cotroneo"), and K. Peony Yu ("Yu") (the "Individual Defendants," and, together with FibroGen, the "Defendants," and, together with Lead Plaintiffs, the "Parties").[1] This Stipulation is intended to fully, finally, and forever compromise, settle, release, resolve, and dismiss with prejudice all claims arising from, or based upon, or relating in any way to any of the allegations, acts, transactions, facts, events, matters, representations or omissions involved, set forth, alleged or referred to in the Action, or which could have been alleged in the Action.

# I.    **THE ACTION**

## A.    **Overview of Plaintiffs' Claims**

The original securities class action complaint in the Action was filed in this District on April 12, 2021, alleging violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder. ECF No. 1. On August 30, 2021, the Court appointed Employees' Retirement System of the City of Baltimore ("ERSCB" or "Baltimore Employees"), City of Philadelphia Board of Pensions and Retirement ("CPBPR" or "Philadelphia Pension Fund"), and Plymouth County Retirement Association ("PCRA" or

---

[1] All terms with initial capitalization not otherwise defined herein shall have the meanings ascribed to them in ¶1 herein. The singular forms of nouns and pronouns include the plural and vice versa. The "FibroGen Defendants" are defendants FibroGen, Conterno, Schoeneck, Eisner, and Cotroneo collectively.

"Plymouth County") as Lead Plaintiffs pursuant to the requirements of the Private Securities Litigation Reform Act of 1995 and approved Lead Plaintiffs' selection of Lead Counsel. ECF No. 75. On November 19, 2021, Plaintiffs filed their Corrected Consolidated Class Action Complaint for Violations of the Federal Securities Laws ("Complaint" or "CAC"), asserting claims for a class period of December 20, 2018 through July 15, 2021. ECF No. 97.

The Complaint alleges that, among other things, throughout the Class Period (as defined below), Defendants misrepresented the safety profile and Phase III trial results of FibroGen's flagship anti-anemia drug, Roxadustat. The Company had submitted a new drug application ("NDA") to the United States Food and Drug Administration ("FDA") in December 2019 to obtain approval for marketing Roxadustat in the U.S. The Complaint alleges that the crux of Defendants' scheme was to falsely assure investors that the safety results were derived pursuant to FDA-sanctioned analyses, when instead Defendants used post-hoc stratification factors to artificially make Roxadustat appear safer than its comparators, Epogen and placebo. The Complaint further alleges that FibroGen's stock price was artificially inflated as a result of Defendants' false and misleading statements, and that FibroGen's stock price declined when the truth regarding Defendants' alleged misrepresentations was revealed through a series of partial disclosures.

### B.    The Pleading Stage

The FibroGen Defendants and Yu were represented separately, with Cooley LLP representing the FibroGen Defendants, and Pillsbury Winthrop Shaw Pittman LLP and the Wei Group LLP representing Defendant Yu. On January 14, 2022, the FibroGen Defendants and Defendant Yu each filed motions to dismiss the Complaint. ECF Nos. 107, 109. Lead Plaintiffs filed their opposition on March 4, 2022. ECF No. 114. On April 8, 2022, the FibroGen Defendants and Defendant Yu each filed replies. ECF Nos. 115, 116.

On April 28, 2022, the Court heard oral argument on Defendants' motions to dismiss. On July 15, 2022, the Honorable Edward Chen entered an Order denying in part and granting in part Defendants' motions to dismiss. ECF No. 126. The Court found that Plaintiffs had adequately alleged that 91 out of the 96 challenged false statements were materially false and misleading, and that Plaintiffs had adequately alleged scienter on the part of all of the Individual Defendants. *Id.*

1    ### C.    Discovery Proceedings

2        The FibroGen Defendants and Defendant Yu each filed answers to the Complaint on

3    September 13, 2022.  ECF Nos. 135, 137.  Lead Plaintiffs sought discovery from the FibroGen

4    Defendants, Defendant Yu, as well the FDA, FibroGen's Roxadustat partners AstraZeneca and

5    Astellas, and another third party.  Defendants sought discovery from Lead Plaintiffs and Lead

6    Plaintiffs' investment managers.

7        Specifically, Lead Plaintiffs served their First Requests for Production of Documents to All

8    Defendants on September 14, 2022.  Defendants served their First Set of Requests for Production

9    of Documents and their First Set of Interrogatories to Lead Plaintiffs on November 21, 2022.  The

10   FibroGen Defendants served their responses and objections to Lead Plaintiffs' requests on October

11   14, 2022, and Defendant Yu served her responses and objections to Lead Plaintiffs' requests on

12   October 28, 2022.  Lead Plaintiffs served their responses and objections to Defendants' requests

13   and interrogatories on December 21, 2022.

14       Lead Plaintiffs subpoenaed AstraZeneca and Astellas for documents on November 10 and

15   22, 2022, respectively, and subpoenaed the FDA for documents on January 4, 2023.  AstraZeneca

16   served its responses and objections to Plaintiffs' subpoena on December 19, 2022.  Astellas served

17   its responses and objection to Plaintiffs' subpoena on December 20, 2022.  The FDA responded by

18   letter to Plaintiffs' subpoena on January 12, 2023.

19       After the Parties agreed on search terms, Defendants and their expert produced nearly

20   165,000 documents spanning over 1.8 million pages in 29 separate productions over the course of

21   approximately ten months, with Defendants providing Lead Plaintiffs with their first production on

22   November 19, 2022.  Similarly, Lead Plaintiffs, their investment managers (who produced pursuant

23   to subpoenas from Defendants), and their expert produced nearly 13,000 documents spanning over

24   87,000 pages in 26 separate productions over the course of approximately three months, with Lead

25   Plaintiffs providing Defendants their first production on January 20, 2023.   The FibroGen

26   Defendants served three privilege logs on Plaintiffs.  Defendant Yu served one privilege log on

27   Plaintiffs.  Lead Plaintiffs served one privilege log on Defendants.

28

Pursuant to subpoena, AstraZeneca produced approximately 100,000 documents spanning over 2.6 million pages in eleven separate productions over the course of approximately eight months, with AstraZeneca making its first production on February 28, 2023.  Also pursuant to subpoena, Astellas produced over 4,000 documents spanning 55,000 pages in three separate productions over the course of approximately three months, with Astellas making its first production on April 19, 2023.  Also pursuant to subpoena, the FDA produced over 300 documents spanning over 1,800 pages in one production made on February 15, 2023.

Conducting this document discovery required a significant and prolonged effort by Lead Counsel.  The productions included numerous technical documents spanning hundreds of pages, replete with complex statistical and medical figures and jargon, from multiple continents.  In order to efficiently review the hundreds of thousands of documents produced by Defendants, their expert, and other third parties, Lead Counsel utilized a technology assisted review platform that prioritized the documents most relevant to Plaintiffs' claims.  All told, approximately 281,000 documents spanning more than 4.6 million pages were produced in discovery.

During the course of document discovery, the Parties conducted numerous meet-and-confers amongst themselves and with non-parties, and exchanged dozens of letters and substantive emails amongst themselves and with non-parties.  The Parties also engaged in discovery disputes on a variety of issues.  Of these, two disputes resulted in significant motion practice.

### D.    Class Certification

Lead Plaintiffs filed their Motion for Class Certification on January 27, 2023, attaching the expert report of Mr. Chad Coffman, CFA.  ECF Nos 147, 147-2.  On April 4, 2023, Defendants took the deposition of Mr. Coffman.  Defendants took the depositions of representatives of Lead Plaintiffs PCRA, ERSCB, and CPBPR on April 11, 2023, April 13, 2023, and April 18, 2023, respectively.  Defendants filed their Opposition to the Motion for Class Certification on May 12, 2023, attaching the expert report of Dr. Paul Zurek.  ECF Nos. 180, 180-1.  On June 8, 2023, Lead Plaintiffs deposed Defendants' expert.  On June 23, 2023, Lead Plaintiffs filed their reply in support of class certification.  ECF No. 192.  On August 17, 2023, Defendants moved for leave to file a sur-reply on class certification, attaching their proposed sur-reply.  ECF Nos. 210, 210-1.  Plaintiffs

1    opposed this motion on August 21, 2023. ECF No. 212. On August 24, 2023, the Court granted

2    Defendants' motion for leave to file a sur-reply. ECF No. 214. On August 31, 2023, the Court

3    conducted a hearing on Plaintiffs' motion for class certification, during which the Court directed

4    the Parties to file a supplemental chart regarding facts potentially disclosed on July 15, 2021 at the

5    FDA Advisory Committee Meeting ("AdCom") considering FibroGen's Roxadustat NDA. The

6    Parties jointly filed this supplemental briefing on September 15, 2023. ECF No. 221.

7        On October 3, 2023, the Court granted in part and denied in part the Motion for Class

8    Certification. ECF No. 224. In this order, the Court appointed Lead Plaintiffs as Class

9    Representatives and Lead Counsel as Class Counsel, and certified a class of purchasers of FibroGen

10    stock for a Class Period of December 20, 2018 through April 6, 2021, who were damaged thereby.

11    While Plaintiffs had moved to certify a class period of December 20, 2018 through July 15, 2021,

12    the Court found that no new information was disseminated at the AdCom on July 15, 2021 that

13    corrected any alleged false statement, and therefore, ended the Class Period with the after-market

14    disclosure on April 6, 2021. The Court deferred certification of options holders during the Class

15    Period and instructed the Parties to provide supplemental briefing on whether damages for options

16    holders could be calculated on a class-wide basis.

17            **E.        Mediation and Settlement Negotiations**

18        On March 14, 2023, the Parties and Defendants' directors' and officers' liability insurance

19    carriers (the "D&O Insurers") participated in an in-person mediation session in San Francisco with

20    mediator Michelle Yoshida of Phillips ADR. Prior to the mediation, each side submitted

21    comprehensive mediation statements and rebuttal statements setting forth their respective positions

22    on various legal and factual issues, which included detailed information obtained through the

23    extensive discovery process. During the mediation, the Parties provided their respective views on

24    liability and damages. At the conclusion of the mediation, the Parties were at an impasse and agreed

25    to continue litigation efforts. No further settlement negotiations were scheduled.

26        In July 2023, while active litigation remained ongoing, the Parties resumed settlement

27    discussions through Ms. Yoshida, which included numerous telephonic and video conferences.

28    These discussions culminated in a mediator's proposal for $28.5 million, which the Parties accepted

1  on October 17, 2023.

2  **II.    CLAIMS OF LEAD PLAINTIFFS AND BENEFITS OF SETTLEMENT**

3          Based on Lead Plaintiffs' evaluation, Lead Plaintiffs and their counsel have determined that

4  the terms set forth in this Stipulation are fair, reasonable, adequate, and in the best interests of the

5  Settlement Class.  Based upon their investigation and prosecution of the case, Lead Plaintiffs

6  believe that the claims asserted in the Action have merit and that the evidence developed to date

7  supports those claims.  The Stipulation shall not be construed as or received in evidence as an

8  admission, concession, or presumption against Lead Plaintiffs or any of the Settlement Class

9  Members that any of their claims are without merit, that any defenses asserted by Defendants have

10  merit, or that the damages recoverable in the Action would not have exceeded the Settlement Fund

11  (as defined herein).  However, Lead Plaintiffs recognize and acknowledge the potential expense

12  and length of continued proceedings necessary to prosecute the Action against Defendants through

13  trial and appeals.

14          Lead Plaintiffs have also taken into account the uncertain outcome and risk of any litigation,

15  especially in complex actions such as this Action, as well as the difficulties and delays of such

16  litigation.  Furthermore, Lead Plaintiffs took into account Defendants' ability to pay a more sizable

17  settlement, particularly in light of FibroGen's wasting directors' and officers' liability insurance

18  policy and the Company's current financial condition.  Lead Plaintiffs are also mindful of the

19  inherent difficulties of proof associated with, and possible defenses to, the securities law violations

20  asserted in the Action.  Lead Plaintiffs believe that the terms set forth in this Stipulation confer

21  substantial benefits upon the Settlement Class.

22  **III.    DEFENDANTS' DENIALS OF WRONGDOING AND LIABILITY**

23          Throughout this Action, Defendants have denied, and continue to deny, any and all

24  allegations of fault, liability, wrongdoing, or damages whatsoever arising out of any of the conduct,

25  statements, acts, or omissions alleged, or that could have been alleged, in the Action.  Defendants

26  have denied, and continue to deny, the allegations that Lead Plaintiffs or any Settlement Class

27  Member has suffered damages or was harmed by any of the conduct alleged in the Action or that

28

1    could have been alleged as part of the Action.  Defendants maintain that they have meritorious

2    defenses to all claims in the Action.

3    Although Defendants continue to believe the claims asserted against them in the Action are

4    without merit, they have agreed to enter into the Settlement set forth in this Stipulation solely to

5    avoid the expense, distraction, time, and uncertainty associated with the Action.  Having taken into

6    account the risks inherent in any litigation, especially in complex cases such as this Action,

7    Defendants have concluded that it is desirable and beneficial that the Action be fully and finally

8    settled in the manner and upon the terms and conditions set forth in this Stipulation.

9    **IV.    SETTLEMENT TERMS**

10    NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED, by and among Lead

11    Plaintiffs (individually and on behalf of all other members of the Settlement Class) and Defendants,

12    by and through their respective undersigned attorneys and subject to the approval of the Court

13    pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, that, in consideration of the benefits

14    flowing to the Parties from the Settlement, all Released Plaintiffs' Claims as against the Defendant

15    Releasees and all Released Defendants' Claims as against the Plaintiff Releasees shall be settled

16    and released, and the Action shall be dismissed with prejudice, upon and subject to the terms and

17    conditions set forth below.

18    **1.    Definitions**

19    As used in this Stipulation, the following terms have the meanings specified below:

20    1.1    "Action" means the securities class action styled *In re FibroGen, Inc., Securities*

21    *Litigation*, Case No. 3:21-cv-02623-EMC (N.D. Cal).

22    1.2    "Authorized Claimant" means a Settlement Class Member who submits a Proof of

23    Claim Form to the Claims Administrator that is approved by the Court for payment from the Net

24    Settlement Fund.

25    1.3    "Claim" means a Proof of Claim Form or electronic claim submitted to the Claims

26    Administrator.

27    1.4    "Claim Form" or "Proof of Claim Form" means in the form attached hereto as

28    Exhibit A-2, or in such other form as may be approved in writing by all of the Parties acting by and

1   through their respective counsel of record in the Action and approved by the Court, that a Claimant

2   or Settlement Class Member must complete and submit should that Claimant or Settlement Class

3   Member seek to share in a distribution of the Net Settlement Fund.

4        1.5    "Claimant" means a person or entity who or which submits a Claim to the Claims

5   Administrator seeking to be eligible to share in the proceeds of the Net Settlement Fund.

6        1.6    "Claims Administrator" means JND Legal Administration, the firm retained by

7   Lead Plaintiffs and Lead Counsel, subject to approval of the Court, to provide all notices approved

8   by the Court to potential Settlement Class Members and to administer the Settlement.

9        1.7    "Class Distribution Order" means an order entered by the Court authorizing and

10  directing that the Net Settlement Fund be distributed, in whole or in part, to Authorized Claimants.

11       1.8    "Court" means the United States District Court for the Northern District of

12  California.

13       1.9    "Defendants" means FibroGen and the Individual Defendants.

14       1.10    "Defendants' Counsel" means Cooley LLP; Pillsbury Winthrop Shaw Pittman LLP;

15  and Wei Group LLP.

16       1.11    "Defendant Releasees" means each and all Defendants, Defendants' Counsel, the

17  D&O Insurers, and their respective Related Persons.

18       1.12    "Derivative Actions" means *The Firemen's Ret. Sys. of St. Louis v. Conterno, et al.*,

19  No. 1:23-cv-00712 (D. Del.); *IBEW Local 353 Pension Plan v. FibroGen, Inc., et al.*, No. 3:21-cv-

20  3396 (N.D. Cal.); *Chiang v. Conterno, et al.*, No. 1:21-cv-1811 (D. Del.); *Grazioli v. FibroGen,*

21  *Inc. et al.*, No. 3:21-cv-3212 (N.D. Cal.); *Gutman v. FibroGen, Inc. et al.*, No. 4:21-cv-2725 (N.D.

22  Cal.); *Leonard v. FibroGen, Inc., et al.*, No. 3:21-cv-3370 (N.D. Cal.); *Millan v. Schoeneck et al.*,

23  No. 3:21-cv-5871 (N.D. Cal.); *Williams v. Schoeneck et al.*, No. 2023-0583 (Del. Ch.); *Zhao v.*

24  *Conterno, et al.*, No. 2022-0331 (Del. Ch.); and any other shareholder derivative action making

25  similar factual claims as these actions.

26       1.13    "Effective Date" means the first date by which all of the conditions specified in

27  paragraph 8.1 below have been met and have occurred or have been waived.

28

1.14    "Escrow Account" means an account maintained at Huntington Bank, wherein the Settlement Amount shall be deposited and held in escrow under the control of Lead Counsel.

1.15    "Escrow Agent" means Huntington Bank.

1.16    "Escrow Agreement" means the agreement between Lead Counsel and the Escrow Agent setting forth the terms under which the Escrow Agent shall maintain the Escrow Account.

1.17    "Excluded Claims" means (i) any claims asserted in the Derivative Actions or any other derivative or ERISA action based on similar allegations as those set forth in the Complaint; (ii) any claims asserted in the Opt-Out Action; and (iii) any claims of any person or entity who or which submits a request for exclusion that is accepted by the Court.

1.18    "FibroGen" or "the Company" means FibroGen, Inc.

1.19    "Final," with respect to the Judgment, or any other court order, means: (i) if no appeal is filed, the expiration date of the time provided for filing or noticing any appeal under the Federal Rules of Appellate Procedure, i.e., thirty (30) days after entry of the judgment or order; or (ii) if there is an appeal from the judgment or order, (a) the date one-day after final dismissal of all such appeals, or the final dismissal of any proceeding on certiorari or otherwise, or (b) the date one-day after the judgment or order is finally affirmed on an appeal, the expiration of the time to file a petition for a writ of certiorari or other form of review, or the denial of a writ of certiorari or other form of review, and, if certiorari or other form of review is granted, the date of final affirmance following review pursuant to that grant.  However, any appeal or proceeding seeking subsequent judicial review pertaining solely to an order issued with respect to (i) attorneys' fees, costs or expenses; (ii) the plan of allocation of Settlement proceeds (as submitted or subsequently modified); or (iii) the procedures for determining Authorized Claimants' recognized claims, or distribution of the Net Settlement Fund to Authorized Claimants, shall not in any way delay or affect the time set forth above for the Judgment to become Final, or otherwise preclude a judgment from becoming Final.

1.20    "Immediate Family" means children, stepchildren, parents, stepparents, spouses, siblings, mothers-in-law, fathers-in-law, sons-in-law, daughters-in-law, brothers-in-law, and

1    sisters-in-law.    As used in this paragraph, "spouse" shall mean a husband, a wife, or a partner in a

2    state-recognized domestic relationship or civil union.

3        1.21    "Individual Defendants" means Enrique Conterno, James A. Schoeneck, K. Peony

4    Yu, Mark Eisner, and Pat Cotroneo.

5        1.22    "Judgment" means the Final Judgment Approving Class Action Settlement and

6    Order of Dismissal with Prejudice to be rendered by the Court, substantially in the form attached

7    hereto as Exhibit B, as well as any form of final judgment that may be entered by the Court in a

8    form other than the form attached hereto as Exhibit B and where none of the Parties elects to

9    terminate this Settlement by reason of such variance, consistent with the terms of this Stipulation.

10       1.23    "Lead Counsel" means Saxena White P.A.

11       1.24    "Lead Plaintiffs" means Employees' Retirement System of the City of Baltimore,

12   City of Philadelphia Board of Pensions and Retirement, and Plymouth County Retirement

13   Association.

14       1.25    "Litigation Expenses" means costs and expenses incurred in connection with

15   commencing, prosecuting and settling the Action (which may include the reimbursement of time,

16   costs and expenses of Lead Plaintiffs directly related to their representation of the Settlement Class),

17   for which Lead Counsel intend to apply to the Court for reimbursement from the Settlement Fund.

18       1.26    "Net Settlement Fund" means the Settlement Fund less: (i) any Taxes and Tax

19   Expenses; (ii) any Notice and Administration Costs; (iii) any Litigation Expenses awarded by the

20   Court; (iv) any attorneys' fees awarded by the Court; and (v) other Court-approved deductions.

21       1.27    "Notice" means the Notice of (i) Proposed Settlement and Plan of Allocation; (ii)

22   Settlement Fairness Hearing; and (iii) Motion for an Award of Attorneys' Fees and Reimbursement

23   of Litigation Expenses, in the form attached hereto as Exhibit A-1, or in such other form as may be

24   approved in writing by all of the Parties acting by and through their respective counsel of record in

25   the Action and approved by the Court, which is to be mailed to Settlement Class Members.

26       1.28    "Notice and Administration Costs" means the reasonable costs, fees and expenses

27   that are actually incurred by the Claims Administrator and/or Lead Counsel in connection with: (i)

28   providing notice of the Settlement to the Settlement Class, including posting Notices by mail,

1    publication, and other means of locating potential Settlement Class Members; and (ii) administering

2    the Settlement, including but not limited to the Claims process, as well as the costs, fees and

3    expenses incurred in connection with the Escrow Account.

4        1.29    "Officer" means any officer as that term is defined in Securities Exchange Act Rule

5    16a-1(f).

6        1.30    "Opt-Out Action" means *Farallon Healthcare Partners Master, L.P., et al., v.*

7    *FibroGen, Inc., et al.*, Case No. 3:23-cv-02602-EMC (N.D. Cal.).

8        1.31    "Parties" means Defendants and Lead Plaintiffs, on behalf of themselves and the

9    Settlement Class.

10       1.32    "Plaintiff Releasees" means Lead Plaintiffs, all other plaintiffs in the Action, Lead

11   Counsel, and all other Settlement Class Members, as well as each of their respective current and

12   former Officers, directors, agents, parents, affiliates, subsidiaries, successors, predecessors,

13   assigns, assignees, employees, and attorneys, in their capacities as such.

14       1.33    "Plan of Allocation" means the proposed plan or formula for allocation of the Net

15   Settlement Fund to Authorized Claimants as set forth in the Notice.  Any Plan of Allocation is not

16   part of the Stipulation, and Defendant Releasees shall have no responsibility for the Plan of

17   Allocation or its implementation and no liability with respect thereto.  Any order or proceeding

18   relating to the Plan of Allocation shall not operate to terminate or cancel this Stipulation or affect

19   the finality of the Judgment or any other orders entered by the Court pursuant to this Stipulation.

20       1.34    "Preliminary Approval Order" means the order to be entered by the Court

21   preliminarily approving the Settlement and directing that notice of the Settlement be provided to

22   the Settlement Class, in the form attached hereto as Exhibit A, or in such other form as approved

23   by the Court.

24       1.35    "PSLRA" means the Private Securities Litigation Reform Act of 1995, 15 U.S.C. §

25   78u-4, as amended.

26       1.36    "Related Persons" means (i) with respect to Defendants,  Defendants' Counsel, and

27   the D&O Insurers, each of their respective current and former, Officers, directors, agents, parents,

28   affiliates, subsidiaries, reinsurers, successors, predecessors, assigns, assignees, employees, and

1    attorneys, in their capacities as such; and (ii) with respect to the Individual Defendants, their

2    respective spouses, Immediate Family members, heirs, successors, executors, estates,

3    administrators, attorneys, agents, accountants, insurers or reinsurers, personal representatives,

4    trusts, community property, and any other entity in which any of them has a controlling interest,

5    and as to such entities, each and all of their predecessors, successors, past, present or future parents,

6    subsidiaries, affiliates, and each of their respective past or present Officers, directors, shareholders,

7    agents, partners, principals, members, employees, attorneys, advisors, trustees, auditors and

8    accountants, insurers and reinsurers.

9        1.37    "Released Claims" means all Released Defendants' Claims and all Released

10   Plaintiffs' Claims.

11       1.38    "Released Defendants' Claims" means all claims, demands, losses, rights, liability,

12   or causes of action, in law or in equity, accrued or unaccrued, fixed or contingent, direct, individual

13   or representative, of every nature and description whatsoever, whether known or unknown, or based

14   on federal, state, local, statutory or common law or any other law, rule or regulation (including the

15   law of any jurisdiction outside the United States), that were or could have been asserted in the

16   Action or could in the future be asserted in any forum, whether foreign or domestic, against Plaintiff

17   Releasees by Defendants or any member of Defendant Releasees, or their successors, assigns,

18   executors, administrators, representatives, attorneys and agents in their capacity as such, which

19   arise out of, relate to, or are based upon, the institution, prosecution, or settlement of the claims

20   asserted in the Action against the Defendants.  Released Defendants' Claims do not include any

21   claims relating to the enforcement of the Settlement and any Excluded Claims.

22       1.39    "Released Plaintiffs' Claims" means all claims, demands, losses, rights, liability, or

23   causes of action, in law or in equity, accrued or unaccrued, fixed or contingent, direct, individual

24   or representative, of every nature and description whatsoever, whether known or unknown, or based

25   on federal, state, local, statutory or common law or any other law, rule or regulation, (including the

26   law of any jurisdiction outside the United States), that were or could have been asserted in the

27   Action or could in the future be asserted in any forum, whether foreign or domestic, against

28   Defendant Releasees by Class Representatives or any member of the Settlement Class, or their

1   successors, assigns, executors, administrators, representatives, attorneys and agents in their

2   capacity as such, which arise out of, are based upon, or relate in any way to the factual predicate of

3   the Action, including (i) any of the allegations, facts, transactions, events, matters, occurrences,

4   acts, disclosures, oral or written statements, representations, omissions, failures to act, filings,

5   publications, disseminations, press releases, or presentations involved, set forth, alleged or referred

6   to in the Action; and (ii) all claims that arise out of, are based upon, or relate in any way to the

7   purchase, acquisition, holding, sale, or disposition of any FibroGen securities during the Settlement

8   Class Period.  "Released Plaintiffs' Claims" shall not include any claims to enforce this Settlement

9   or Excluded Claims.

10          1.40    "Releasee(s)" means each and any of the Defendant Releasees and each and any of

11   the Plaintiff Releasees.

12          1.41    "Releases" means the releases set forth in ¶¶5.2-5.5 of this Stipulation.

13          1.42    "Settlement" means the settlement of the Action between Lead Plaintiffs, on behalf

14   of themselves and the Settlement Class, and each of the Defendants on the terms and conditions set

15   forth in this Stipulation.

16          1.43    "Settlement Amount" means twenty-eight million five hundred thousand dollars

17   ($28,500,000.00) in cash.

18          1.44    "Settlement Class" or "Class" means "all persons who purchased or acquired

19   FibroGen securities, including options, between December 20, 2018 through July 15, 2021,

20   inclusive.  Excluded from the Settlement Class are: (1) Defendants; (2) the Officers or directors of

21   FibroGen during the Settlement Class Period; (3) the Immediate Family members of any Defendant

22   or any Officer or director of FibroGen during the Settlement Class Period; and (4) any entity that

23   any Defendant owns or controls, or owned or controlled, during the Settlement Class Period.  Also

24   excluded from the Settlement Class are those persons who file valid and timely requests for

25   exclusion in accordance with the Preliminary Approval Order and the plaintiffs in the Opt-Out

26   Action.

27          1.45    "Settlement Class Period" or "Class Period" means the time period between

28   December 20, 2018 through July 15, 2021, inclusive.

1.46    "Settlement Class Member" means each person or entity who or which is a member of the Settlement Class.

1.47    "Settlement Fund" means the Settlement Amount plus any and all interest earned thereon.

1.48    "Settlement Hearing," "Settlement Fairness Hearing" or "Final Approval Hearing" means the hearing set by the Court under Rule 23(e)(2) of the Federal Rules of Civil Procedure to consider final approval of the Settlement.

1.49    "Stipulation" or "Settlement Agreement" means this Stipulation of Settlement, including the recitals and exhibits hereto (the "Exhibits"), each of which is incorporated by reference as though set forth in the Stipulation itself.

1.50    "Summary Notice" means the Summary Notice of (i) Proposed Settlement and Plan of Allocation; (ii) Settlement Fairness Hearing; and (iii) Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses, in the form attached hereto as Exhibit A-3, to be published as set forth in the Preliminary Approval Order, or in such other form as may be approved in writing by all of the Parties acting by and through their respective counsel of record in the Action and approved by the Court.

1.51    "Tax" or "Taxes" means: (i) all federal, foreign, state and/or local taxes of any kind, fees, levies, duties, tariffs, imposts and other charges of any kind (including any interest or penalties thereon) on any income earned by the Settlement Fund; (ii) the expenses and costs incurred by Lead Counsel and/or the Escrow Agent in connection with determining the amount of, and paying, any taxes owed by the Settlement Fund (including, without limitation, expenses of tax attorneys and accountants); and (iii) all taxes imposed on payments by the Settlement Fund, including withholding taxes.

1.52    "Tax Expenses" means any expenses and costs incurred in connection with the calculation and payment of Taxes or the preparation of tax returns and related documents including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) the returns described in ¶¶2.6-2.7.

1.53    "Unknown Claims" means any Released Plaintiffs' Claims that Lead Plaintiffs or any other Settlement Class Member does not know or suspect to exist in his, her, or its favor at the time of the release of such claims, and any Released Defendants' Claims that any Defendant or any other Defendant Releasee does not know or suspect to exist in his, her, or its favor at the time of the release of such claims, which, if known by him, her, or it might have affected his, her, or its decision(s) with respect to this Settlement, including but not limited to, whether or not to object to this Settlement or to the release of any Released Claims. With respect to any and all Released Claims, the Parties stipulate and agree that, upon the Effective Date of the Settlement, Lead Plaintiffs and Defendants shall expressly waive, and each of the other Plaintiff Releasees and Defendant Releasees shall be deemed to have waived, and by operation of the Judgment, shall have expressly waived, any and all provisions, rights, and benefits conferred by California Civil Code §1542 and any law of any state or territory of the United States, or principle of common law or foreign law, which is similar, comparable, or equivalent to California Civil Code §1542, which provides:

**A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.**

The Releasees acknowledge that they may hereafter discover facts in addition to or different from those which he, she, it, or their counsel now knows or believes to be true with respect to the subject matter of the Released Claims but they are, notwithstanding this potential, entering into the Stipulation and intend it to be a full, final, and permanent resolution of the matters at issue in this Action.  Lead Plaintiffs and Defendants acknowledge, and each of the other Settlement Class Members and each of the other Plaintiff Releasees and Defendant Releasees shall be deemed by operation of law to have acknowledged, that the foregoing waiver was separately bargained for and a key element of the Settlement.

**2.      The Settlement**

      **a.      The Settlement Fund**

2.1      Subject to the terms of this Stipulation, Defendants shall cause the Settlement Amount to be paid into the Escrow Account designated by the Escrow Agent within twenty (20) business days after the Court enters an order preliminarily approving the settlement, provided that, as of that time, FibroGen has received all information necessary to effectuate a transfer of funds including the bank name and ABA routing number, address, account name and number, and a signed W-9, as of that time.

2.2      The payments described in ¶2.1 are the only payments to be made by or on behalf of any and all of the Defendant Releasees in connection with this Settlement. All fees, costs, and expenses incurred by or on behalf of Lead Plaintiffs and members of the Settlement Class associated with this Settlement, including, but not limited to, (a) any Taxes or Tax Expenses; (b) any Notice and Administration Costs; (c) any Litigation Expenses awarded by the Court; (d) any attorneys' fees awarded by the Court; and (e) other Court-approved deductions, shall be paid from the Settlement Fund, and in no event shall any Defendant Releasee bear any responsibility or liability for any such fees, costs, or expenses.

      **b.      Use of Settlement Fund**

2.3      Subject to the terms and conditions of this Stipulation and the Settlement, the Settlement Fund shall be used to pay: (a) any Taxes or Tax Expenses; (b) any Notice and Administration Costs; (c) any Litigation Expenses awarded by the Court; and (d) any attorneys' fees awarded by the Court. The balance remaining in the Settlement Fund, that is, the Net Settlement Fund, shall be distributed to Authorized Claimants as provided in ¶¶4.1-4.14 below, or as otherwise ordered by the Court.

2.4      Except as provided herein or pursuant to orders of the Court, the Net Settlement Fund shall remain in the Escrow Account prior to the Effective Date. All funds held by the Escrow Agent shall be deemed to be in the custody of the Court, and shall remain subject to the jurisdiction of the Court until such time as the funds shall be distributed or returned pursuant to the terms of this Stipulation or further order(s) of the Court. At the written direction of Lead Counsel, the

Escrow Agent shall invest the Settlement Fund exclusively in instruments or accounts backed by the full faith and credit of the United States Government or fully insured by the United States Government or an agency thereof, including a U.S. Treasury Fund or a bank account that is either (a) fully insured by the Federal Deposit Insurance Corporation ("FDIC") or (b) secured by instruments backed by the full faith and credit of the United States Government. All risks related to the investment of the Settlement Fund shall be borne by the Escrow Agent, and the Defendant Releasees shall have no responsibility for, interest in, or liability whatsoever with respect to any investment decisions or actions taken, or any transactions executed by, the Escrow Agent.

2.5    The Escrow Agent shall not disburse the Settlement Fund except as provided in the Stipulation or by an order of the Court.

2.6    The Parties agree that the Settlement Fund is intended to be a Qualified Settlement Fund within the meaning of Treasury Regulation § 1.468B-1 and that Lead Counsel, as administrators of the Settlement Fund within the meaning of Treasury Regulation § 1.468B-2(k)(3), shall be solely responsible for filing or causing to be filed all informational and other tax returns as may be necessary or appropriate (including, without limitation, the returns described in Treasury Regulation § 1.468B-2(k) for the Settlement Fund. Lead Counsel shall also be responsible for causing payment to be made from the Settlement Fund of any Taxes owed with respect to the Settlement Fund. The Defendant Releasees shall not have any liability or responsibility for any such Taxes. Upon written request, Defendants will provide to Lead Counsel the statement described in Treasury Regulation § 1.468B-3(e). Lead Counsel, as administrators of the Settlement Fund within the meaning of Treasury Regulation § 1.468B-2(k)(3), shall timely make such elections as are necessary or advisable to carry out this paragraph, including, as necessary, making a "relation back election," as described in Treasury Regulation § 1.468B-1(j), to cause the Qualified Settlement Fund to come into existence at the earliest allowable date, and shall take or cause to be taken all actions as may be necessary or appropriate in connection therewith. Such elections shall be made in compliance with procedures and requirements contained in such regulations. It shall be the responsibility of Lead Counsel to timely and properly prepare and deliver the necessary

documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to timely occur.

2.7     All Taxes and Tax Expenses shall be paid out of the Settlement Fund, and shall be timely paid by the Escrow Agent pursuant to the disbursement instructions to be set forth in the Escrow Agreement, and without further order of the Court.  Any tax returns prepared for the Settlement Fund (as well as the election set forth therein) shall be consistent with the previous paragraph and in all events shall reflect that all Taxes on the income earned by the Settlement Fund shall be paid out of the Settlement Fund as provided herein.  The Defendant Releasees shall have no responsibility or liability for the acts or omissions of the Claims Administrator, the Escrow Agent, Lead Counsel, or their agents with respect to the payment of Taxes, as described herein, or the filing of any tax returns or other documents in connection with the Settlement Fund.

2.8     The Settlement is not a claims-made settlement.  Upon the occurrence of the Effective Date, no Defendant Releasee, or any person or entity who or which paid any portion of the Settlement Amount, shall have any right to the return of the Settlement Fund or any portion thereof for any reason whatsoever, including without limitation, the number of Claim Forms submitted, the collective amount of recognized claims of Authorized Claimants, the percentage of recovery of losses, or the amounts to be paid to Authorized Claimants from the Net Settlement Fund.  In no instance shall any Defendant Releasee be required to pay any amount other than as specified in Paragraph 2.1.

2.9     Notwithstanding the fact that the Effective Date of the Settlement has not yet occurred, Lead Counsel may pay from the Settlement Fund, without further approval from Defendants or further order of the Court, reasonable Notice and Administration Costs actually incurred and paid or payable.  Such costs and expenses shall include, without limitation, the actual costs of printing and mailing the Notice, publishing the Summary Notice, reimbursements to nominee owners for forwarding the Notice to their beneficial owners, the administrative expenses incurred and fees charged by the Claims Administrator in connection with providing notice, administering the Settlement (including processing the submitted Claims), and the fees, if any, of the Escrow Agent.  In the event that the Settlement is terminated pursuant to the terms of this

Stipulation, all Notice and Administration Costs paid or incurred, including any related fees, shall not be returned or repaid to any of the Defendant Releasees, or any person or entity who or which paid any portion of the Settlement Amount.

**3.     Class Certification and Preliminary Approval Order**

3.1     Solely for the purposes of the Settlement and for no other purpose, the Parties stipulate and agree to certify the Settlement Class.

3.2     As soon as practicable after execution of the Stipulation, Lead Plaintiffs will promptly move for preliminary approval of the Settlement, which motion shall be unopposed by Defendants.  Lead Counsel shall submit the Stipulation together with its Exhibits to the Court. Concurrently with the motion for preliminary approval, Lead Plaintiffs shall apply to the Court for, and Defendants shall agree to, entry of the Preliminary Approval Order, in the form attached hereto as Exhibit A, or in such other form as may be approved in writing by all the Parties acting by and through their respective counsel of record in the Action and entered by the Court, requesting, *inter alia*, the preliminary approval of the Settlement set forth in this Stipulation, approval for mailing the Notice in the form of Exhibit A-1 attached hereto, and for publication of the Summary Notice in the form of Exhibit A-3 attached hereto, or in such other forms as may be approved in writing by all of the Parties acting by and through their respective counsel of record in the Action and approved by the Court.

3.3     In addition, Lead Plaintiffs' motion shall request that the Court hold the Final Approval Hearing.  At or prior to the Final Approval Hearing, Lead Counsel will request that the Court approve the proposed Plan of Allocation, reimbursement of Lead Plaintiffs' costs and expenses directly related to their representation of the Settlement Class, any of Lead Counsel's fees and expenses, and any Notice and Administration Costs reasonably incurred or to be incurred.

3.4     The Parties agree that they will move the Court to unseal the class certification order entered on October 3, 2023 (ECF No. 224).

**4.     Notice and Settlement Administration**

4.1     As part of the Preliminary Approval Order, Lead Plaintiffs shall seek appointment of a Claims Administrator.  The Claims Administrator shall administer the Settlement, including,

1    but not limited to, the process of receiving, reviewing, and approving or denying Claims, under

2    Lead Counsel's supervision and subject to the jurisdiction of the Court.  Other than FibroGen's

3    obligation to provide shareholder information as provided in ¶4.2 below, none of the Defendant

4    Releasees shall have any involvement in or any responsibility, authority, or liability whatsoever for

5    the selection of the Claims Administrator, the Plan of Allocation, the administration of the

6    Settlement, the Claims process, or disbursement of the Net Settlement Fund, and shall have no

7    liability whatsoever to any person or entity, including, but not limited to, Lead Plaintiffs, any other

8    Settlement Class Members, or Lead Counsel, in connection with the foregoing.  Defendants'

9    Counsel shall cooperate in the administration of the Settlement to the extent reasonably necessary

10   to effectuate its terms.

11          4.2     In accordance with the terms of the Preliminary Approval Order to be entered by

12   the Court, Lead Counsel shall cause the Claims Administrator to mail the Notice and Proof of Claim

13   Form to those members of the Settlement Class as may be identified through reasonable effort.

14   Lead Counsel shall also cause the Claims Administrator to have the Summary Notice published in

15   accordance with the terms of the Preliminary Approval Order to be entered by the Court.  For the

16   purposes of identifying and providing notice to the Settlement Class, within ten (10) calendar days

17   of the date of entry of the Preliminary Approval Order, FibroGen shall provide or cause to be

18   provided to the Claims Administrator (at no cost to the Settlement Fund, Lead Counsel, or the

19   Claims Administrator) records reasonably available to FibroGen or its transfer agent concerning

20   the identity and last known address of Settlement Class Members, in electronic form or other form

21   as is reasonably available to FibroGen or its transfer agent, which information the Claims

22   Administrator shall treat and maintain as confidential.

23          4.3     The Claims Administrator shall receive Claims and determine first, whether the

24   Claim is a valid Claim, in whole or part, and second, each Authorized Claimant's *pro rata* share of

25   the Net Settlement Fund based upon each Authorized Claimant's recognized claim compared to the

26   total recognized claims of all Authorized Claimants (as set forth in the Plan of Allocation set forth

27   in the Notice attached hereto as Exhibit A-1, or in such other plan of allocation as the Court

28   approves).

4.4     The Plan of Allocation proposed in the Notice is not a necessary term of the Settlement or of this Stipulation and it is not a condition of the Settlement or of this Stipulation that any particular plan of allocation be approved by the Court.  Lead Plaintiffs and Lead Counsel may not cancel or terminate the Settlement (or this Stipulation) based on this Court's or any appellate court's ruling with respect to the Plan of Allocation or any other plan of allocation in this Action. Defendant Releasees shall not object in any way to the Plan of Allocation or any other plan of allocation in this Action.  No Defendant Releasees shall have any involvement with or liability, obligation, or responsibility whatsoever in connection with the Plan of Allocation or any other Court-approved plan of allocation.

4.5     Any Settlement Class Member who does not submit a valid Claim Form by the deadline set by the Court (unless and to the extent the deadline is extended by the Court) will not be entitled to receive any distribution from the Net Settlement Fund, but will, nevertheless, upon the occurrence of the Effective Date, be bound by all of the terms of this Stipulation and Settlement (including the terms of the Judgment) and the releases provided for herein and therein, and will be permanently barred and enjoined from bringing any action, claim, or other proceeding of any kind against any Defendant Releasee with respect to the Released Plaintiffs' Claims.

4.6     Any Settlement Class Member who or which does not timely and validly request exclusion from the Settlement Class in the manner stated in the Preliminary Approval Order: (a) shall be deemed to have waived his, her or its right to be excluded from the Settlement Class; (b) shall be forever barred from requesting exclusion from the Settlement Class in this or any other proceeding; (c) shall be bound by the provisions of this Stipulation, the Settlement, and all proceedings, determinations, orders and judgments in the Action relating to the Settlement, including, but not limited to, the Judgment, and the Releases provided for therein whether favorable or unfavorable to the Settlement Class; and (d) shall be barred from commencing, maintaining or prosecuting any of the Released Claims against any of the Defendant Releasees.

4.7     Lead Counsel shall be responsible for supervising the administration of the Settlement and the disbursement of the Net Settlement Fund subject to Court approval.  No Defendant Releasee shall be permitted to review, contest or object to any Claim Form, or any

decision of the Claims Administrator or Lead Counsel with respect to accepting or rejecting any Claim for payment by a Settlement Class Member. Lead Counsel shall have the right, but not the obligation, to waive what they deem to be formal or technical defects in any Claim Forms submitted in the interests of achieving substantial justice.

4.8     The Net Settlement Fund shall be distributed to Authorized Claimants only after the later of the Effective Date; the Court having approved a plan of allocation in an order that has become Final; and the Court issuing a Class Distribution Order that has become Final.

4.9     For purposes of determining the extent, if any, to which a Settlement Class Member shall be entitled to be treated as an Authorized Claimant, the following conditions shall apply:

(a)     Each Settlement Class Member shall be required to submit a Claim Form, in the form attached hereto as Exhibit A-2, or in such other form as may be approved in writing by all of the Parties acting by and through their respective counsel of record in the Action and approved by the Court, supported by such documents as are designated therein, including proof of the Claimant's loss, or such other documents or proof as the Claims Administrator or Lead Counsel, in their discretion, may deem acceptable;

(b)     All Claim Forms must be submitted by the date set by the Court in the Preliminary Approval Order and specified in the Notice, unless extended by the Court. Any Settlement Class Member who fails to submit a Claim Form by such date shall be forever barred from receiving any distribution from the Net Settlement Fund or payment pursuant to this Stipulation (unless by Order of the Court such Settlement Class Member's Claim Form is accepted), but shall in all other respects be bound by all of the terms of this Stipulation and the Settlement, including the terms of the Judgment and by the releases provided for herein and therein, and will be permanently barred and enjoined from bringing any action, claim, or other proceeding of any kind against any Defendant Releasee with respect to any Released Claim. Provided that it is mailed by the claim-submission deadline, a Claim Form shall be deemed to be submitted when postmarked, if received with a postmark indicated on the envelope and if mailed by first-class mail and addressed in accordance with the instructions thereon. In all other cases,

including online via the Settlement website, the Claim Form shall be deemed to have been submitted on the date when actually received by the Claims Administrator;

(c)    Each Claim Form shall be submitted to and reviewed by the Claims Administrator who shall determine in accordance with this Stipulation and the Plan of Allocation the extent, if any, to which each Claim shall be allowed, subject to review by the Court pursuant to subparagraph (e) below as necessary;

(d)    Claim Forms that do not meet the submission requirements may be rejected. Prior to rejecting a Claim in whole or in part, the Claims Administrator shall communicate with the Claimant in writing, to give the Claimant the chance to remedy any curable deficiencies in the Claim Form submitted. The Claims Administrator shall notify, in a timely fashion and in writing, all Claimants whose Claim(s) the Claims Administrator proposes to reject in whole or in part, setting forth the reasons therefor, and shall indicate in such notice that the Claimant whose Claim(s) is/are to be rejected has the right to a review by the Court if the Claimant so desires and complies with the requirements of subparagraph (e) below; and

(e)    If any Claimant whose Claim(s) has/have been rejected in whole or in part desires to contest such rejection, the Claimant must, within twenty (20) days after the date of mailing of the notice required in subparagraph (d) above, serve upon the Claims Administrator a notice and statement of reasons indicating the Claimant's grounds for contesting the rejection along with any supporting documentation, and requesting a review thereof by the Court. If a dispute concerning a Claim cannot be otherwise resolved, Lead Counsel shall thereafter present the request for review to the Court, on reasonable notice to Defendants' Counsel.

4.10    Each Claimant shall be deemed to have submitted to the jurisdiction of the Court with respect to the Claimant's Claim, and the Claim will be subject to investigation and discovery under the Federal Rules of Civil Procedure, provided, however, that such investigation and discovery shall be limited to that Claimant's status as a Settlement Class Member and the validity and amount of the Claimant's Claim(s). No discovery shall be allowed on the merits of this Action or of the Settlement in connection with the processing of Claim Forms.

4.11    Lead Counsel will apply to the Court, on reasonable notice to Defendants' Counsel, for a Class Distribution Order: (a) approving the Claims Administrator's administrative determinations concerning the acceptance and rejection of the Claims submitted; (b) approving payment of any administration fees and expenses associated with the administration of the Settlement from the Escrow Account; and (c) if the Effective Date has occurred, directing payment of the Net Settlement Fund to Authorized Claimants from the Escrow Account.

4.12    Payment pursuant to the Class Distribution Order shall be final and conclusive against all Settlement Class Members. All Settlement Class Members who do not submit a Claim or whose Claims are not approved by the Court for payment shall be barred from participating in distributions from the Net Settlement Fund, but otherwise shall be bound by all of the terms of this Stipulation and the Settlement, including the terms of the Judgment to be entered in this Action; and by the releases provided for herein and therein, and will be permanently barred and enjoined from bringing any action against any and all Defendant Releasees with respect to any and all of the Released Claims.

4.13    No Claimant or Settlement Class Member shall have any claim against Lead Plaintiffs, Lead Counsel, Defendants' Counsel, any Parties' damages experts, the Claims Administrator (or any other agent designated by Lead Counsel), or the Defendant Releasees based on any investments, costs, expenses, administration, allocations, calculation, payments, the withholding of taxes (including interest and penalties) owed by the Settlement Fund (or any losses incurred in connection therewith), or distributions that are made substantially in accordance with this Stipulation and the Settlement, the plan of allocation approved by the Court, or further orders of the Court.

4.14    All proceedings with respect to the administration, processing and determination of Claims and the determination of all controversies relating thereto, including disputed questions of law and fact with respect to the validity of Claims, shall be subject to the jurisdiction of the Court. All Settlement Class Members and Parties to this Settlement expressly waive trial by jury (to the extent any such right may exist) and any right of appeal or review with respect to such determinations.

**5.**    **Release of Claims**

5.1    The satisfaction of the obligations incurred pursuant to this Stipulation shall be in full and final disposition of the Action as against Defendant Releasees and as to any and all Released Claims.

5.2    Pursuant to the Judgment without further action by anyone, upon the Effective Date of the Settlement, Plaintiff Releasees, shall be deemed to have, and by operation of this Stipulation, of law, and of the Judgment shall have, fully, finally and forever compromised, settled, released, resolved, relinquished, waived, and discharged each and every Released Plaintiffs' Claim against the Defendants and the other Defendant Releasees, and shall forever be barred and enjoined from commencing, instituting, prosecuting, or maintaining any or all of the Released Plaintiffs' Claims against any of the Defendant Releasees, whether or not such Settlement Class Member executes and delivers a Proof of Claim Form, seeks or obtains a distribution from the Settlement Fund, is entitled to receive a distribution under the Plan of Allocation approved by the Court, or has objected to any aspect of the Stipulation or the Settlement, the Plan of Allocation, or Lead Counsel's application for an award of attorneys' fees or Litigation Expenses.  This release shall not apply to any Excluded Claim.

5.3    Pursuant to the Judgment, without further action by anyone, upon the Effective Date of the Settlement, Defendant Releasees, shall be deemed to have, and by operation of this Stipulation, of law, and of the Judgment, shall have, fully, finally, and forever compromised, settled, released, resolved, relinquished, waived, and discharged each and every Released Defendants' Claim against the Plaintiff Releasees, and shall forever be barred and enjoined from prosecuting any or all of the Released Defendants' Claims against any of the Plaintiff Releasees. This release shall not apply to any Excluded Claim.

5.4    Upon the Effective Date, Plaintiff Releasees, are forever barred and enjoined from commencing, instituting, maintaining, or continuing to prosecute any action or proceeding in any court of law or equity, arbitration tribunal, administrative forum, or other forum of any kind, asserting any Released Plaintiffs' Claims against any of the Defendant Releasees.

5.5    Upon the Effective Date, to the extent allowed by law, this Stipulation shall operate conclusively as an estoppel and full defense in the event, and to the extent, of any claim, demand, action, or proceeding brought by a Settlement Class Member against any of the Defendant Releasees with respect to any Released Plaintiffs' Claims, or brought by a Defendant against any of the Plaintiff Releasees with respect to any Released Defendants' Claim.

5.6    Notwithstanding ¶¶5.2-5.5 above, nothing in the Judgment shall restrict or impair the rights of any Party to enforce or effectuate the terms of this Stipulation or the Judgment.

5.7    The Judgment shall, among other things, provide for the dismissal with prejudice of the Action against the Defendant Releasees, without costs to any Party, except for the payments expressly provided for herein.

**6.    Terms of the Judgment**

6.1    If the Settlement contemplated by this Stipulation is approved by the Court, Lead Counsel and Defendants' Counsel shall request that the Court enter a Judgment, in the form attached hereto as Exhibit B.

**7.    Attorneys' Fees and Litigation Expenses**

7.1    Lead Plaintiffs will apply to the Court for a collective award of attorneys' fees to Lead Counsel to be paid from (and out of) the Settlement Fund.  Lead Plaintiffs also will apply to the Court for reimbursement of Litigation Expenses, which may include a request for reimbursement of Lead Plaintiffs' time, costs and expenses directly related to their representation of the Settlement Class, to be paid from (and out of) the Settlement Fund.  Lead Plaintiffs' application for an award of attorneys' fees or Litigation Expenses is not the subject of any agreement between Defendants and Lead Plaintiffs other than what is set forth in this Stipulation. Defendants will not object to any request for fees or expenses made by Lead Plaintiffs to the Court.

7.2    Any attorneys' fees and Litigation Expenses that are awarded by the Court shall be paid to Lead Counsel immediately upon the Court's issuance of an order awarding such fees and expenses, notwithstanding the existence of any timely filed objections thereto, or potential for appeal therefrom, or collateral attack on the Settlement or any part thereof, subject to Lead Counsel's obligation to make appropriate refunds or repayments to the Settlement Fund if the

1    Settlement is terminated pursuant to the terms of this Stipulation or if, as a result of any appeal or

2    further proceedings on remand, or successful collateral attack, the award of attorneys' fees or

3    Litigation Expenses is reduced or reversed, and such order reducing or reversing the award has

4    become Final.  Lead Counsel shall make the appropriate refund or repayment in full (including

5    interest thereon at the same rate as would have been earned had those sums remained in the Escrow

6    Account) no later than thirty (30) business days after: (a) receiving from Defendants' Counsel

7    notice of the termination of the Settlement; or (b) any order reducing or reversing the award of

8    attorneys' fees or Litigation Expenses has become Final.  An award of attorneys' fees or Litigation

9    Expenses is not a necessary term of this Stipulation and is not a condition of the Settlement

10   embodied herein.  Lead Counsel agrees that they are subject to the jurisdiction of the Court for the

11   purpose of enforcing this paragraph.  Neither Lead Plaintiffs nor Lead Counsel may cancel or

12   terminate the Settlement based on this Court's or any appellate court's ruling with respect to

13   attorneys' fees or Litigation Expenses.

14          7.3     Defendant Releasees shall have no responsibility for or liability whatsoever with

15   respect to the payment, allocation, or award of attorneys' fees or Litigation Expenses.  The

16   attorneys' fees and Litigation Expenses that are awarded to Lead Counsel shall be payable solely

17   from the Settlement Fund in the Escrow Account.

18          **8.     Conditions of Settlement**

19          8.1     The Effective Date of this Stipulation shall be conditioned on the occurrence or

20   waiver of all of the following events:

21                  (a)     entry of the Preliminary Approval Order, in the form set forth in Exhibit A

22   attached hereto, in accordance with Section 3 above;

23                  (b)     the Settlement Amount has been deposited into the Escrow Account in

24   accordance with the provisions of ¶2.1 above;

25                  (c)     entry of the Judgment in accordance with paragraph 6.1 above;

26                  (d)     the Judgment becoming Final, as defined in paragraph 1.19 above; and

27                  (e)     that the Settlement is not otherwise terminated pursuant to the terms set

28   forth in this Stipulation.

8.2    If all of the conditions specified in paragraph 8.1 above are not met, then this Stipulation shall be canceled and terminated subject to paragraph 9.3 below unless Lead Plaintiffs and Defendants mutually agree in writing to proceed with this Stipulation.

**9.    Rights of Termination and Effects Thereof**

9.1    FibroGen and Lead Plaintiffs shall each have the right to terminate the Settlement and this Stipulation by providing written notice of their election to do so ("Termination Notice") to counsel for the other parties within thirty (30) days after the date on which any of the following occurs:

(a)    the Court declines to grant preliminary or final approval of the Settlement, and the Parties are unable to reach a resolution to resolve any concerns raised by the Court as set forth in paragraph 9.3 below;

(b)    the Court declines to enter the Judgment in any material respect;

(c)    the Judgment is modified or reversed in any material respect on appeal;

(d)    in the event that the Court enters a judgment other than the one in the form of Exhibit B attached hereto, and neither Lead Plaintiffs or FibroGen elect to terminate the Settlement, the date that such other judgment is modified or reversed in any material respect on appeal.

9.2    If, prior to the Final Approval Hearing, Persons who otherwise would be Settlement Class Members have filed with the Court valid and timely requests for exclusion ("Requests for Exclusion") from the Settlement Class in accordance with the provisions of the Preliminary Approval Order and the Notice, and such Persons in the aggregate have purchased or otherwise acquired FibroGen common stock in an amount that equals or exceeds the sum specified in a separate supplemental agreement between the Parties (the "Supplemental Agreement"), FibroGen shall have the option, but not the obligation, to terminate this Stipulation in accordance with the procedures set forth in the Supplemental Agreement ("Opt-out Termination Option"). As agreed by the Parties, the Supplemental Agreement is confidential and will be filed with the Court under seal with Plaintiffs' motion for preliminary approval of the Settlement. Copies of all Requests for Exclusion received, together with copies of all written revocations of Requests for Exclusion (if

1   any), shall be delivered to Defendants' Counsel no later than fourteen (14) calendar days prior to

2   the Settlement Hearing.

3        9.3    If the Court declines to grant preliminary or final approval of the Settlement for any

4   reason, that shall not be an immediate basis for either Lead Plaintiffs or Defendants to terminate

5   the Settlement; instead, in such a scenario, the Parties agree to work in good faith to make

6   appropriate modifications, as may be necessary, to the Settlement to resolve any concerns raised

7   by the Court.  If the Parties cannot reach resolution after discussing in good faith, either Lead

8   Plaintiffs or FibroGen may elect to terminate the Settlement.

9        9.4    Unless otherwise ordered by the Court, in the event this Stipulation shall terminate,

10  or be canceled, or shall not become effective for any reason, within five (5) business days after

11  written notification of such event is sent by Defendants' Counsel or Lead Counsel to the Escrow

12  Agent, the Escrow Agent for the Settlement Fund shall, upon written instructions from Defendants'

13  Counsel, cause the Settlement Fund, including any attorneys' fees and costs paid from the

14  Settlement Fund pursuant to Section 7 above, to revert back to the party that made the deposit into

15  the Settlement Fund, together with any interest earned thereon, less any deductions for: (1) any

16  Taxes and Tax Expenses pursuant to paragraphs 2.6-2.7 above due with respect to any interest

17  earned by the Settlement Fund; and (2) any amounts reasonably and actually paid, incurred or due

18  and owing pursuant to paragraph 2.9 above in connection with notice and administration of the

19  Settlement provided for herein.  If this Stipulation is terminated pursuant to its terms, the Escrow

20  Agent, at the request of Defendants or Lead Plaintiffs, shall apply for any tax refund owed to the

21  Settlement Fund and pay the proceeds of the tax refund, after deduction of any fees and expenses

22  incurred in connection with such application(s) for refund, to Defendants (or their designate(s)).

23       9.5    If this Stipulation is terminated pursuant to its terms, each of the Parties shall be

24  deemed to have reverted to his, her or its status immediately prior to the execution of this Stipulation,

25  and they shall proceed in all respects as if this Stipulation had not been executed and the related

26  orders had not been entered, shall retain all of their respective claims and defenses in the Action,

27  and shall revert to their respective positions in the Action.  In such event, the terms and provisions

28  of the Stipulation, with the exception of provisions of paragraphs 2.9, 7.2, 9.4, 10.1, 11.2, 11.4,

11.7, 11.20, and 11.24 shall have no further force and effect with respect to each of the Parties and shall not be used in this Action or in any other proceeding for any purpose.

9.6     For the avoidance of doubt, no order of the Court or modification or reversal of any order of the Court concerning the Plan of Allocation or the amount of any attorneys' fees, costs, and expenses awarded by the Court shall constitute a condition to the Effective Date or grounds for cancellation or termination of the Stipulation.

**10.     No Admission of Wrongdoing**

10.1     Neither this Stipulation nor the Settlement set forth herein, whether or not consummated, nor any facts or terms of this Stipulation, negotiations, discussions, proceedings, acts performed, or documents executed pursuant to or in furtherance of this Stipulation or the Settlement:

(a)     shall be (i) offered against any of the Defendant Releasees as evidence of, or construed as, or deemed to be evidence of any presumption, concession, or admission by any of the Defendant Releasees with respect to (a) the truth of any fact alleged by Lead Plaintiffs or any Settlement Class Member; (b) the validity of any claim that was or could have been asserted in this Action or in any other litigation; (c) the deficiency of any defense that has been or could have been asserted in this Action or in any other litigation; (d) any liability, negligence, fault, or other wrongdoing of any kind of any of the Defendant Releasees; or (e) any damages suffered by Plaintiffs or the Settlement Class; or (ii) in any way referred to for any other reason against any of the Defendant Releasees, in any civil, criminal, or administrative action or proceeding (including any arbitration) other than such proceedings as may be necessary to effectuate the provisions of this Stipulation;

(b)     shall be (i) offered against any of the Plaintiff Releasees as evidence of, or construed as, or deemed to be evidence of any presumption, concession or admission by any of the Plaintiff Releasees (a) that any of their claims are without merit, that any of the Defendant Releasees had meritorious defenses, or that damages recoverable under the Complaint would not have exceeded the Settlement Amount; or (b) with respect to any liability, negligence, fault or wrongdoing of any kind; or (ii) in any way referred to for any other reason as against any of the

Plaintiff Releasees, in any civil, criminal, or administrative action or proceeding (including any arbitration) other than such proceedings as may be necessary to effectuate the provisions of this Stipulation; or

(c)    shall be construed against any of the Releasees as an admission, concession, or presumption that the consideration to be given hereunder represents the amount which could be or would have been recovered after trial; *provided, however,* that if this Stipulation is approved by the Court, the Parties and the Releasees and their respective counsel may refer to it to effectuate the protections from liability granted hereunder or otherwise to enforce the terms of the Settlement.

**11.    Miscellaneous Provisions**

11.1    This Stipulation and the Exhibits attached hereto constitute the entire agreement between the Parties with regard to the subject matter hereof and supersede any prior or contemporaneous written or oral agreements or understandings between the Parties.

11.2    No modification or amendment of this Stipulation shall be valid unless made in writing and signed by or on behalf of each party hereto, or their respective successors-in-interest. No representations, warranties, or inducements have been made to any party concerning this Stipulation or its Exhibits, other than the representations and warranties contained and memorialized in such documents.  Except as otherwise provided for herein, each party shall bear his, her, or its own attorneys' fees and costs and expenses.

11.3    As set forth in the Class Action Fairness Act of 2005 ("CAFA"), FibroGen shall timely serve a CAFA notice within ten (10) calendar days of the filing of this Stipulation with the Court and shall provide Lead Counsel with a copy of such notice within five (5) calendar days of such service.   FibroGen shall be responsible for all costs and expenses related thereto.

11.4    The Parties intend this Stipulation and the Settlement to be a final and complete resolution of all disputes asserted or which could be asserted by Lead Plaintiffs and any other Settlement Class Members against the Defendant Releasees with respect to the Released Plaintiffs' Claims.  Accordingly, except in the event of the termination of this Settlement, Lead Plaintiffs, and their counsel, and Defendants, and their counsel, agree not to assert in any forum that this Action was brought by Lead Plaintiffs or defended by Defendants in bad faith and without a reasonable

basis.  No Party shall assert any claims of any violation of Rule 11 of the Federal Rules of Civil Procedure relating to the institution, prosecution, defense, or settlement of this Action.  No Party shall assert any claims or allegations of any violation of any other Parties' discovery obligations under the Federal Rules.  The Parties agree that the amounts paid and the other terms of the Settlement were negotiated at arm's length and in good faith by the Parties, including through a mediation process, and reflect the Settlement that was reached voluntarily after extensive negotiations and consultation with experienced legal counsel, who were fully competent to assess the strengths and weaknesses of their respective clients' claims or defenses.

11.5    While retaining their right to deny that the claims asserted in the Action were meritorious, Defendants and their counsel, in any statement made to any media representative (whether or not for attribution) will not assert that the Action was commenced or prosecuted in bad faith, nor will they deny that the Action was commenced and prosecuted in good faith and is being settled voluntarily after consultation with competent legal counsel.  Likewise, while retaining their right to assert their claims in the action were meritorious, Lead Plaintiffs and their counsel, in any statement made to any media representative (whether or not for attribution) will not assert that Defendants' defenses were asserted in bad faith, nor will they deny that Defendants defended the Action in good faith and that the action is being settled voluntarily after consultation with competent legal counsel.  In all events, Lead Plaintiffs, and their counsel, and Defendants, and their counsel, shall not make any accusations of wrongful or actionable conduct by either Party concerning the prosecution, defense, and resolution of the Action, and shall not otherwise suggest that the Settlement constitutes an admission of any claim or defense alleged.

11.6    Defendants and any Defendant Releasee may file the Stipulation and/or the Judgment in any action that may be brought against them in order to support a defense, claim, or counterclaim based on principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or reduction, or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

11.7    All agreements made, and orders entered, during the course of the Action relating to the confidentiality of information shall survive this Settlement.

11.8    All of the Exhibits to this Stipulation are material and integral parts hereof and are fully incorporated herein by this reference. Notwithstanding the foregoing, in the event that there exists a conflict or inconsistency between the terms of this Stipulation and the terms of any exhibit attached hereto, the terms of the Stipulation shall prevail.

11.9    Lead Counsel, on behalf of the Settlement Class, is expressly authorized to take all appropriate action required or permitted to be taken by the Settlement Class pursuant to this Stipulation to effectuate its terms and also are expressly authorized to enter into any modifications or amendments to this Stipulation on behalf of the Settlement Class which they deem appropriate.

11.10    All counsel and any other Person executing this Stipulation and any of the Exhibits hereto, or any related Settlement documents, warrant and represent that they have the full authority to do so and that they have the authority to take appropriate action required or permitted to be taken pursuant to the Stipulation to effectuate its terms.

11.11    Lead Counsel and Defendants' Counsel agree to cooperate fully with one another in seeking Court approval of the Preliminary Approval Order and the Settlement, as embodied in this Stipulation, and to use best efforts promptly to agree upon and execute all such other documentation as may be reasonably required to obtain final approval by the Court of the Settlement.

11.12    This Stipulation may be executed in one or more counterparts, including by signature transmitted by facsimile or email, or by a .pdf/.tif image of the signature transmitted via email. The signatures so transmitted shall be given the same effect as the original signatures. All executed counterparts and each of them shall be deemed to be one and the same instrument.

11.13    This Stipulation shall be binding upon, and inure to the benefit of, the successors and assigns of the Parties, including any and all Releasees and any corporation, partnership, or other entity into or with which any Party hereto may merge, consolidate, or reorganize.

11.14    This Stipulation shall not be construed more strictly against one Party than another merely by virtue of the fact that it, or any part of it, may have been prepared by counsel for one of the Parties, it being recognized that it is the result of arm's-length negotiations among the Parties and all Parties have contributed substantially and materially to the preparation of this Stipulation.

11.15   All time periods set forth herein shall be computed in calendar days unless otherwise expressly provided.  In computing any period of time prescribed or allowed by the terms of this Stipulation or by order of Court, the day of the act, event, or default from which the designated period of time begins to run shall not be included.  The last day of the period so computed shall be included, unless it is a Saturday, a Sunday, or a legal holiday, in which case the period shall run until the end of the next day that is not one of the aforementioned days.  As used in the preceding sentence, "legal holiday" includes New Year's Day, Martin Luther King, Jr. Day, Presidents' Day, Memorial Day, Juneteenth, Independence Day, Labor Day, Columbus Day, Veterans' Day, Thanksgiving Day, Christmas Day, and any other appointed as a federal holiday.

11.16   The headings herein are used for the purpose of convenience only and are not meant to have legal effect.

11.17   The administration and consummation of the Settlement as embodied in this Stipulation shall be under the authority of the Court, and the Court shall retain jurisdiction for the purpose of entering orders providing for awards of attorneys' fees and Litigation Expenses to Lead Counsel, and enforcing the terms of this Stipulation, including the Plan of Allocation (or such other plan of allocation as may be approved by the Court) and the distribution of the Net Settlement Fund to Settlement Class Members.

11.18   The waiver by one Party of any breach of this Stipulation by any other Party shall not be deemed a waiver of any other prior or subsequent breach of this Stipulation.

11.19   Any action arising under or to enforce this Stipulation or any portion thereof, shall be commenced and maintained only in this Court.

11.20   In the event of the entry of a final order of a court of competent jurisdiction determining the transfer of money to the Settlement Fund or any portion thereof to be a preference, voidable transfer, fraudulent transfer, or similar transaction and any portion thereof is required to be returned (but not promptly deposited into the Settlement Fund by others), then, at the election of Lead Plaintiffs, Lead Plaintiffs and Defendants shall jointly move the Court to vacate and set aside the releases given and the Judgment, in which event the releases and Judgment shall be null and void, and the Parties shall be restored to their respective positions in the litigation as provided

1   in paragraphs 9.4 and 9.5 above and any cash amounts in the Settlement Fund (less any Taxes paid,

2   due or owing with respect to the Settlement Fund and less any Notice and Administration Costs

3   actually incurred, paid or payable) shall be returned as provided herein.

4       11.21   This Stipulation and the Exhibits hereto shall be considered to have been negotiated,

5   executed, and delivered, and to be wholly performed, in the State of California, and the construction,

6   interpretation, operation, effect and validity of this Stipulation, the Supplemental Agreement and

7   all documents necessary to effectuate it shall be governed by the internal laws of the State of

8   California without regard to conflicts of laws, except to the extent that federal law requires that

9   federal law govern.

10      11.22   If any Party is required to give notice to another Party under this Stipulation, such

11  notice shall be in writing and shall be deemed to have been duly given upon receipt of hand delivery,

12  facsimile, or email transmission, with confirmation of receipt.  Any written notice required pursuant

13  to or in connection with this Stipulation shall be addressed to counsel as follows:

14          For Lead Plaintiffs:

15          Lester R. Hooker
            SAXENA WHITE P.A.
16          7777 Glades Road, Suite 300
            Boca Raton, FL 33434
17          Office: (561) 394-3399
            Fax: (561) 394-3382
18          Email: lhooker@saxenawhite.com

19          For the FibroGen Defendants:

20          Tijana Brien
            COOLEY LLP
21          3175 Hanover Street
            Palo Alto, CA
22          Telephone: (650) 843-5000
            Fax: (650) 849-7400
23          Email: tbrien@cooley.com

24          For Dr. Yu:

25          Bruce A. Ericson (76342)
            PILLSBURY WINTHROP SHAW
26          PITTMAN LLP
            bruce.ericson@pillsburylaw.com
27          Lee Brand (287110)
            Lee.brand@pillsburylaw.com
28          Four Embarcadero Center, 22nd Floor

San Francisco, CA 94111
Tel.: (415) 983-1000
Fax: (415) 983-1200

Eric S. Wei
WEI GROUP LLP
ewei@weillp.com
One World Trade Center, Suite 8500
New York, NY 10007
Tel.: (212) 248-0808
Fax: (212) 248-0475

11.23  No opinion or advice concerning the tax consequences of the proposed Settlement to individual Settlement Class Members is being given or will be given by the Parties or their counsel; nor is any representation or warranty in this regard made by virtue of this Stipulation.  It is the sole responsibility of each Settlement Class Member to determine the amount of and pay his, her, or its own taxes, plus any penalties and interest, on any amount received pursuant to the Settlement, and the Releasees shall have no liability for such taxes, penalties, or interest.  It is understood that the tax consequences may vary depending on the particular circumstances of each individual Settlement Class Member.

11.24  All agreements made and orders entered during the course of the Action relating to the confidentiality of information shall survive this Stipulation whether or not the Stipulation is approved by the Court and whether or not the Stipulation is consummated, or the Effective Date occurs.  The Parties' confidentiality obligations shall include, to the extent possible, negotiations, discussions, acts performed, agreements, drafts, documents signed, and proceedings in connection with the Stipulation that remain confidential following the Effective Date.

**IN WITNESS WHEREOF**, the Parties hereto have caused the Stipulation to be executed, by their duly authorized attorneys dated as of December 7, 2023.

**SAXENA WHITE P.A.**

By: _____

David R. Kaplan (SBN 230144)
dkaplan@saxenawhite.com
Emily Bishop (SBN 319383)
ebishop@saxenawhite.com
505 Lomas Santa Fe Drive, Suite 180
Solana Beach, CA 92075

1  Tel.: (858) 997-0860
   Fax: (858) 369-0096
2
   Steven B. Singer
3  ssinger@saxenawhite.com
   Kyla Grant (admitted *pro hac vice*)
4  kgrant@saxenawhite.com
   Sara DiLeo (admitted *pro hac vice*)
5  sdileo@saxenawhite.com
   Joshua H. Saltzman (admitted *pro hac vice*)
6  jsaltzman@saxenawhite.com
   10 Bank Street, 8th Floor
7  White Plains, New York 10606
   Tel.: (914) 437-8551
8  Fax: (888) 631-3611

9  Maya Saxena (admitted *pro hac vice*)
   msaxena@saxenawhite.com
10 Lester R. Hooker (SBN 241590)
   lhooker@saxenawhite.com
11 Dianne M. Pitre (SBN 286199)
   dpitre@saxenawhite.com
12 7777 Glades Road, Suite 300
   Boca Raton, FL 33434
13 Tel.: (561) 394-3399
   Fax: (561) 394-3382
14
   *Counsel for Lead Plaintiffs Employees' Retirement*
15 *System of the City of Baltimore, City of Philadelphia*
   *Board of Pensions and Retirement, and Plymouth*
16 *County Retirement Association, and Lead Counsel*
   *for the Settlement Class*
17
   **COOLEY LLP**
18

19 By: _____

20 Patrick E. Gibbs (183174)
   pgibbs@cooley.com
21 Tijana M. Brien (286590)
   tbrien@cooley.com
22 Brett De Jarnette (292919)
   bdejarnette@cooley.com
23 Zaneta J. Kim (317844)
   zkim@cooley.com
24 Amie L. Simmons (336356)
   asimmons@cooley.com
25 3175 Hanover Street
   Palo Alto, CA 94304
26 Tel.: (650) 843-5000
   Fax: (650) 849-7400
27
   Caitlin Munley (*pro hac vice*)
28 cmunley@cooley.com

Stip. and Agreement of Settlement
3:21-cv-02623-EMC                                    38

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Alexandra Eber (*pro hac vice*)
aeber@cooley.com
1299 Pennsylvania Ave., N.W. Suite 700
Washington, DC 20004
Tel.: (202) 842-7800
Fax: (202) 842-7899

*Counsel for Defendants FibroGen, Inc., Enrique Conterno, James Schoeneck, Mark Eisner, and Pat Cotroneo*

**PILLSBURY WINTHROP SHAW PITTMAN LLP**

By: *Bruce A. Ericson*

Bruce A. Ericson (76342)
bruce.ericson@pillsburylaw.com
Lee Brand (287110)
Lee.brand@pillsburylaw.com
Four Embarcadero Center, 22nd Floor
San Francisco, CA 94111
Tel.: (415) 983-1000
Fax: (415) 983-1200

**WEI GROUP LLP**
Eric S. Wei (*pro hac vice*)
ewei@weillp.com
One World Trade Center, Suite 8500
New York, NY 10007
Tel.: (212) 248-0808
Fax: (212) 248-0475

*Counsel for Defendant K. Peony Yu*

# Exhibit A

**SAXENA WHITE P.A.**
David R. Kaplan (SBN 230144)
dkaplan@saxenawhite.com
Emily Bishop (SBN 319383)
ebishop@saxenawhite.com
505 Lomas Santa Fe Drive, Suite 180
Solana Beach, CA 92075
Tel.: (858) 997-0860
Fax: (858) 369-0096

*Counsel for Lead Plaintiffs Employees' Retirement*
*System of the City of Baltimore, City of*
*Philadelphia Board of Pensions and Retirement,*
*and Plymouth County Retirement Association, and*
*Lead Counsel for the Settlement Class*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE FIBROGEN, INC., SECURITIES LITIGATION | Case No. 3:21-cv-02623-EMC <br><br> **CLASS ACTION** <br><br> [PROPOSED] ORDER PRELIMINARILY APPROVING SETTLEMENT AND PROVIDING FOR NOTICE <br><br> Hearing Date: January 23, 2024 <br> Time: 2:30 p.m. <br> Courtroom: 5 – 17th Floor <br> Judge: Hon. Edward M. Chen |

WHEREAS, a consolidated class action is pending in this Court entitled *In re FibroGen, Inc., Securities Litigation*, Case No. 3:21-cv-02623-EMC (N.D. Cal.) (the "Action");

WHEREAS, by order dated August 30, 2021, this Court appointed Employees' Retirement System of the City of Baltimore, City of Philadelphia Board of Pensions and Retirement, and Plymouth County Retirement Association ("Lead Plaintiffs") as Lead Plaintiffs and Saxena White P.A. ("Saxena White") as Lead Counsel (ECF No. 75);

WHEREAS, on November 19, 2021, Lead Plaintiffs filed their Corrected Consolidated Class Action Complaint for Violations of the Federal Securities Laws (ECF No. 97);

WHEREAS, Lead Plaintiffs, on behalf of themselves and the Settlement Class (defined below), and Defendants FibroGen, Enrique Conterno, James A. Schoeneck, Mark Eisner, Pat Cotroneo, and K. Peony Yu (collectively, "Defendants") have entered into a Stipulation and Agreement of Settlement (the "Stipulation" or "Settlement Agreement"), subject to approval of this Court (the "Settlement");

WHEREAS, Lead Plaintiffs have made an application, pursuant to Rule 23 of the Federal Rules of Civil Procedure, for an order preliminarily approving the Settlement in accordance with the Stipulation, allowing notice to Settlement Class Members, as more fully described herein, and certifying a Settlement Class defined as "all persons who purchased or acquired FibroGen securities, including options, between December 20, 2018 through July 15, 2021, inclusive" (the "Settlement Class Period");

WHEREAS, the Court has read and considered: (a) Lead Plaintiffs' motion for preliminary approval of the Settlement, and the papers filed and arguments made in connection therewith; and (b) the Stipulation and the exhibits attached thereto; and

WHEREAS, unless otherwise defined herein, all capitalized words contained herein shall have the same meanings as they have in the Stipulation;

NOW THEREFORE, IT IS HEREBY ORDERED:

1.     **Class Certification for Settlement Purposes:** Pursuant to Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure, the Court certifies, solely for purposes of effectuating the proposed Settlement, a Settlement Class consisting of all persons who purchased or acquired

FibroGen securities, including options, between December 20, 2018 through July 15, 2021, inclusive. Excluded from the Settlement Class are: (1) Defendants; (2) the Officers or directors of FibroGen during the Settlement Class Period; (3) the Immediate Family members of any Defendant or any Officer or director of FibroGen during the Settlement Class Period; and (4) any entity that any Defendant owns of controls, or owned or controlled, during the Settlement Class Period. Also excluded from the Settlement Class are those persons who submit valid and timely requests for exclusion in accordance with the provision below, and plaintiffs in the Opt-Out Action.

2.     **Class Findings:**  Solely for purposes of the proposed Settlement of this Action, the Court finds that each element required for certification of the Settlement Class pursuant to Rule 23 of the Federal Rules of Civil Procedure has been met: (a) the members of the Settlement Class are so numerous that their joinder in the Action would be impracticable; (b) there are questions of law and fact common to the Settlement Class which predominate over any individual questions; (c) the claims of Lead Plaintiffs in the Action are typical of the claims of the Settlement Class; (d) Lead Plaintiffs and Lead Counsel have and will fairly and adequately represent and protect the interests of the Settlement Class; and (e) a class action is superior to other available methods for the fair and efficient adjudication of the Action.

3.     The Court hereby reaffirms its prior finding that pursuant to Rule 23 of the Federal Rules of Civil Procedure, Lead Plaintiffs are adequate class representatives for the Settlement Class. The Court also reaffirms its appointment of Saxena White as Class Counsel, pursuant to Rule 23(g) of the Federal Rules of Civil Procedure.

4.     **Preliminary Approval of the Settlement** – The Court hereby preliminarily approves the Settlement, as embodied in the Stipulation, as being fair, reasonable, and adequate to the Settlement Class, subject to further consideration at the Settlement Hearing to be conducted as described below.

5.     **Settlement Hearing** – The Court will hold a settlement hearing (the "Settlement Hearing") on _____, 202__ at ___:___ __.m. in Courtroom 5 – 17th Floor, of the San Francisco  Courthouse, 450 Golden Gate Avenue, San Francisco, CA 94102, for the following

purposes: (a) to determine whether the proposed Settlement on the terms and conditions provided for in the Stipulation is fair, reasonable, and adequate to the Settlement Class, and should be approved by the Court; (b) to determine whether the Judgment attached as Exhibit B to the Stipulation should be entered dismissing the Action with prejudice against Defendant Releasees; (c) to determine whether the proposed Plan of Allocation for the proceeds of the Settlement is fair and reasonable and should be approved; (d) to determine whether the motion by Lead Counsel for an award of attorneys' fees and reimbursement of Litigation Expenses should be approved; and (e) to consider any other matters that may be properly brought before the Court in connection with the Settlement.  Notice of the Settlement and the Settlement Hearing shall be given to Settlement Class Members as set forth in paragraph 7 of this Order.

6.    The Court may adjourn the Settlement Hearing without further notice to the Settlement Class, and may approve the proposed Settlement with such modifications as the Parties may agree to in writing, if appropriate, without further notice to the Settlement Class.

7.    **<u>Retention of Claims Administrator and Manner of Giving Notice</u>** – Lead Counsel is hereby authorized to retain JND Legal Administration (the "Claims Administrator") to supervise and administer the notice procedure in connection with the proposed Settlement as well as the processing of Claims as more fully set forth below.  Notice of the Settlement and the Settlement Hearing shall be given by Lead Counsel as follows:

a)    within ten (10) calendar days of the date of entry of this Order, FibroGen shall provide or cause to be provided to the Claims Administrator (at no cost to the Settlement Fund, Lead Counsel or the Claims Administrator) records reasonably available to FibroGen or its transfer agent concerning the identity and last known address of Settlement Class Members, in electronic form or other form as is reasonably available to FibroGen or its transfer agent, which information the Claims Administrator shall treat and maintain as confidential;

b)    not later than twenty (20) calendar days after the date of entry of this Order (the "Notice Date"), the Claims Administrator shall cause a copy of the Notice and the Claim Form, substantially in the forms attached hereto as Exhibits A-1 and A-2, respectively (the "Notice Packet"), to be mailed by first-class mail to potential Settlement Class Members at the addresses

1    set forth in the records which FibroGen caused to be provided, or who otherwise may be identified

2    through further reasonable effort;

3          c)      contemporaneously with the mailing of the Notice Packet, the Claims

4    Administrator shall cause copies of the Notice and the Claim Form to be posted on a website to be

5    developed for the Settlement, from which copies of the Notice and Claim Form can be

6    downloaded;

7          d)      not later than ten (10) business days after the Notice Date, the Claims

8    Administrator shall cause the Summary Notice, substantially in the form attached hereto as Exhibit

9    A-3, to be published once in *Investor's Business Daily* and to be transmitted once over the *PR*

10   *Newswire*; and

11         e)      not later than fourteen (14) calendar days prior to the Settlement Hearing,

12   Lead Counsel shall file with the Court proof, by affidavit or declaration, of such mailing and

13   publication.

14   8.      **Approval of Form and Content of Notice** – The Court (a) approves, as to form

15   and content, the Notice, the Claim Form, and the Summary Notice, attached hereto as Exhibits A-

16   1, A-2, and A-3, respectively, and (b) finds that the mailing and distribution of the Notice and

17   Claim Form and the publication of the Summary Notice in the manner and form set forth in

18   paragraph 7 of this Order (i) is the best notice practicable under the circumstances; (ii) constitutes

19   notice that is reasonably calculated, under the circumstances, to apprise Settlement Class Members

20   of the pendency of the Action, of the effect of the proposed Settlement (including the Releases to

21   be provided thereunder), of Lead Plaintiffs' motion for an award of attorneys' fees and

22   reimbursement of Litigation Expenses, of their right to object to the Settlement, the Plan of

23   Allocation or Lead Plaintiffs' motion for attorneys' fees and reimbursement of Litigation

24   Expenses, of their right to exclude themselves from the Settlement Class, and of their right to

25   appear at the Settlement Hearing; (iii) constitutes due, adequate and sufficient notice to all persons

26   and entities entitled to receive notice of the proposed Settlement; and (iv) satisfies the requirements

27   of Rule 23 of the Federal Rules of Civil Procedure, the United States Constitution (including the

28   Due Process Clause), the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4, *as*

amended, and all other applicable laws and rules.  The date and time of the Settlement Hearing shall be included in the Notice and Summary Notice before they are mailed and published, respectively.

9.    **Nominee Procedures** – Brokers and other nominees who purchased or otherwise acquired FibroGen common stock during the Settlement Class Period for the benefit of another person or entity shall either (a) within seven (7) calendar days of receipt of the Notice, request from the Claims Administrator sufficient copies of the Notice Packet to forward to all such beneficial owners, and within seven (7) calendar days of receipt of those Notice Packets, forward them to all such beneficial owners; or (b) within seven (7) calendar days of receipt of the Notice, send a list of the names and addresses of all such beneficial owners to the Claims Administrator, in which event the Claims Administrator shall promptly mail the Notice Packet to such beneficial owners.  Upon full compliance with this Order, such nominees may seek reimbursement of their reasonable expenses actually incurred in complying with this Order by providing the Claims Administrator with proper documentation supporting the expenses for which reimbursement is sought, up to a maximum of $0.10 per name and address provided to the Claims Administrator; mailing of the Notice and Claim Form up to $0.50 per unit, plus postage; or emailing of the Notice and Claim Form up to $0.05 per email. Such properly documented expenses incurred by nominees in compliance with the terms of this Order shall be paid from the Settlement Fund, with any disputes as to the reasonableness or documentation of expenses incurred subject to review by the Court.

10.    **Participation in the Settlement** – Settlement Class Members who wish to participate in the Settlement and to be potentially eligible to receive a distribution from the Net Settlement Fund must complete and submit a Claim Form in accordance with the instructions contained therein.  Unless the Court orders otherwise, all Claim Forms must be postmarked or submitted online no later than one hundred (100) calendar days after the Notice Date. Notwithstanding the foregoing, Lead Counsel may, at their discretion, accept for processing late Claims provided such acceptance does not delay the distribution of the Net Settlement Fund to the Settlement Class.  By submitting a Claim, a person or entity shall be deemed to have submitted to

the jurisdiction of the Court with respect to his, her, or its Claim and the subject matter of the Settlement.

11.     Each Claim Form submitted must satisfy the following conditions: (a) it must be properly completed, signed, and submitted in a timely manner in accordance with the provisions of the preceding paragraph; (b) it must be accompanied by adequate supporting documentation for the transactions and holdings reported therein, in the form of broker confirmation slips, broker account statements, an authorized statement from the broker containing the transactional and holding information found in a broker confirmation slip or account statement, or such other documentation as is deemed adequate by Lead Counsel or the Claims Administrator; (c) if the person executing the Claim Form is acting in a representative capacity, a certification of his, her, or its current authority to act on behalf of the Settlement Class Member must be included in the Claim Form to the satisfaction of Lead Counsel or the Claims Administrator; and (d) the Claim Form must be complete and contain no material deletions or modifications of any of the printed matter contained therein, and must be signed under penalty of perjury.

12.     Any Settlement Class Member who or which does not timely and validly submit a Claim Form or whose Claim is not otherwise approved by the Court: (a) shall be deemed to have waived his, her, or its right to share in the Net Settlement Fund; (b) shall be forever barred from participating in any distributions therefrom; (c) shall be bound by the provisions of the Stipulation and the Settlement and all proceedings, determinations, orders, and judgments in the Action relating thereto, including, without limitation, the Judgment and the Releases provided for therein, whether favorable or unfavorable to the Settlement Class; and (d) shall be permanently barred from commencing, maintaining, or prosecuting any of the Released Plaintiffs' Claims against any of the Defendant Releasees, as more fully described in the Stipulation and Notice. Notwithstanding the foregoing, late Claim Forms may be accepted for processing as set forth in paragraph 10 above.

13.     **Exclusion From the Settlement Class** – Any member of the Settlement Class who wishes to exclude himself, herself, or itself from the Settlement Class must request exclusion in writing within the time and in the manner set forth in the Notice, which shall provide that: (a) any such request for exclusion from the Settlement Class must be mailed or delivered such that it is

received no later than twenty-eight (28) calendar days prior to the Settlement Hearing, to: Exclusions, *In re FibroGen, Inc., Securities Litigation*, c/o JND Legal Administration, P.O. Box 91482, Seattle, WA 98111, and (b) each request for exclusion must (i) state the name, address, and telephone number of the person or entity requesting exclusion, and in the case of entities, the name and telephone number of the appropriate contact person; (ii) state that such person or entity "requests exclusion from the Settlement Class in *In re FibroGen, Inc., Securities Litigation*, Case No. 3:21-cv-02623-EMC"; (iii) state the number of FibroGen securities that the person or entity requesting exclusion purchased/acquired and sold during the Settlement Class Period, as well as the dates and prices of each such purchase/acquisition and sale, and the number of securities held at the beginning of the Settlement Class Period; and (iv) be signed by the person or entity requesting exclusion or an authorized representative.  A request for exclusion shall not be effective unless it provides all the required information and is received within the time stated above, or is otherwise accepted by the Court.

14.    Any person or entity who or which timely and validly requests exclusion in compliance with the terms stated in this Order and is excluded from the Settlement Class shall not be a Settlement Class Member, shall not be bound by the terms of the Settlement or any orders or judgments in the Action, and shall not receive any payment out of the Net Settlement Fund.

15.    Any Settlement Class Member who or which does not timely and validly request exclusion from the Settlement Class in the manner stated herein: (a) shall be deemed to have waived his, her or its right to be excluded from the Settlement Class; (b) shall be forever barred from requesting exclusion from the Settlement Class in this or any other proceeding; (c) shall be bound by the provisions of the Stipulation, the Settlement, and all proceedings, determinations, orders and judgments in the Action relating to the Settlement, including, but not limited to, the Judgment, and the Releases provided for therein whether favorable or unfavorable to the Settlement Class; and (d) shall be barred from commencing, maintaining or prosecuting any of the Released Claims against any of the Defendant Releasees, as more fully described in the Stipulation and Notice.

16.    **Appearance and Objections at Settlement Hearing** – Any Settlement Class

Member who or which does not request exclusion from the Settlement Class may enter an appearance in the Action, at his, her, or its own expense, individually or through counsel of his, her, or its own choice, by filing (electronically or in person), or sending by mail such notice to the address below in paragraph 17, with the Court such that it is received not later than twenty-eight (28) calendar days before the Settlement Hearing or as the Court may otherwise direct. Any Settlement Class Member who or which does not enter an appearance will be represented by Lead Counsel.

17.    Any Settlement Class Member who does not request exclusion from the Settlement Class may file a written objection to the proposed Settlement, the proposed Plan of Allocation, or Lead Plaintiffs' motion for an award of attorneys' fees and reimbursement of Litigation Expenses and appear and show cause, if he, she, or it has any cause, why the proposed Settlement, the proposed Plan of Allocation or Lead Plaintiffs' motion for attorneys' fees and reimbursement of Litigation Expenses should not be approved; *provided, however*, that no Settlement Class Member shall be heard or entitled to contest the approval of the terms and conditions of the proposed Settlement, the proposed Plan of Allocation, or the motion for attorneys' fees and reimbursement of Litigation Expenses unless that person or entity has filed (electronically or in person) or has sent by mail to the address below a written objection with the Court such that it is received no later than twenty-eight (28) calendar days before the Settlement Hearing.

### **Clerk of the Court**

Class Action Clerk
United States District Court
450 Golden Gate Avenue
San Francisco, CA 94102-3489

18.    Any Settlement Class Member who does not request exclusion from the Settlement Class, and who has properly filed an objection pursuant to paragraph 17 above, may enter an appearance in the Action, at his, her, or its own expense, individually or through counsel of his, her, or its own choice, by filing with the Clerk of the Court a notice of appearance, in the same manner as set forth in paragraph 17 above, such that it is received no later than twenty-eight (28)

1    calendar days, or as the Court may otherwise direct.  Any Settlement Class Member who does not

2    enter an appearance will be represented by Lead Counsel.

3          19.    Any objections, filings and other submissions by the objecting Settlement Class

4    Member: (a) must state the name, address, and telephone number of the person or entity objecting

5    and must be signed by the objector; (b) must contain a statement of the Settlement Class Member's

6    objection or objections, and the specific reasons for each objection, including any legal and

7    evidentiary support the Settlement Class Member wishes to bring to the Court's attention; and

8    (c) must include documents sufficient to prove membership in the Settlement Class, including the

9    number of FibroGen securities that the objecting Settlement Class Member purchased/acquired

10   and sold during the Settlement Class Period, as well as the dates and prices of each such

11   purchase/acquisition and sale, and the number of securities held at the beginning of the Settlement

12   Class Period, and must be accompanied by adequate supporting documentation for the transactions

13   and holdings reported therein, in the form of broker confirmation slips, broker account statements,

14   an authorized statement from the broker containing the transactional and holding information

15   found in a broker confirmation slip or account statement.  Objectors who enter an appearance and

16   desire to present evidence at the Settlement Hearing in support of their objection must include in

17   the written objection or notice of appearance the identity of any witnesses they may call to testify

18   and any exhibits they intend to introduce into evidence at the hearing.

19          20.    Any Settlement Class Member who or which does not make his, her, or its objection

20   in the manner provided herein shall be deemed to have waived his, her, or its right to object to any

21   aspect of the proposed Settlement, the proposed Plan of Allocation, and Lead Plaintiffs' motion

22   for an award of attorneys' fees and reimbursement of Litigation Expenses and shall be forever

23   barred and foreclosed from objecting to the fairness, reasonableness, or adequacy of the

24   Settlement, the Plan of Allocation, or the requested attorneys' fees and Litigation Expenses, or

25   from otherwise being heard concerning the Settlement, the Plan of Allocation, or the requested

26   attorneys' fees and Litigation Expenses in this or any other proceeding.

27

28

21.    **Stay** – Until otherwise ordered by the Court, the Court continues to stay all proceedings in the Action other than proceedings necessary to carry out or enforce the terms and conditions of the Stipulation.

22.    **Settlement Fund** – The contents of the Settlement Fund held by Huntington Bank, for which Huntington Bank will serve as the Escrow Agent, shall be deemed and considered to be *in custodia legis* of the Court, and shall remain subject to the jurisdiction of the Court, until such time as they shall be distributed pursuant to the Stipulation or further order(s) of the Court.

23.    **Taxes** – Lead Counsel are authorized and directed to prepare any tax returns and any other tax reporting form for or in respect to the Settlement Fund, to pay from the Settlement Fund any Taxes owed with respect to the Settlement Fund, and to otherwise perform all obligations with respect to Taxes and any reporting or filings in respect thereof without further order of the Court in a manner consistent with the provisions of the Stipulation.

24.    **Termination of Settlement** – If the Settlement is terminated as provided in the Stipulation, the Settlement is not approved, or the Effective Date of the Settlement otherwise fails to occur, this Order shall be vacated, rendered null and void, and be of no further force and effect, except as otherwise provided by the Stipulation, and this Order shall be without prejudice to the rights of Lead Plaintiffs, the other Settlement Class Members, and Defendants, and the Parties shall revert to their respective positions in the Action as of October 17, 2023, as provided in the Stipulation.

25.    **Use of this Order** – Neither this Order, the Stipulation (whether or not consummated), including the exhibits thereto and the Plan of Allocation contained therein (or any other plan of allocation that may be approved by the Court), the Supplemental Agreement, and the documents prepared to effectuate this Settlement, the negotiations leading to the execution of the Stipulation, nor any proceedings taken pursuant to or in connection with the Stipulation, or approval of the Settlement (including any arguments proffered in connection therewith):

(a) shall be (i) offered against any of the Defendant Releasees as evidence of, or construed as, or deemed to be evidence of any presumption, concession, or admission by any of the Defendant Releasees with respect to, (aa) the truth of any fact alleged by Lead Plaintiffs or any Settlement Class Member; (bb) the validity of any claim that was or could have been

asserted in the Action or in any other litigation; (cc) the deficiency of any defense that has been or could have been asserted in this Action or in any other litigation; (dd) any liability, negligence, fault, or other wrongdoing of any kind of any of the Defendant Releasees; or (ee) any damages suffered by Plaintiffs or the Settlement Class; or (ii) in any way referred to for any other reason as against any of the Defendant Releasees, in any civil, criminal, or administrative action or proceeding (including any arbitration), other than such proceedings as may be necessary to effectuate the provisions of the Stipulation;

(b) shall be (i) offered against any of the Plaintiff Releasees, as evidence of, or construed as, or deemed to be evidence of any presumption, concession, or admission by any of the Plaintiff Releasees (aa) that any of their claims are without merit, that any of the Defendant Releasees had meritorious defenses, or that damages recoverable under the Complaint would not have exceeded the Settlement Amount; or (bb) with respect to any liability, negligence, fault, or wrongdoing of any kind; or (ii) in any way referred to for any other reason as against any of the Plaintiff Releasees, in any civil, criminal, or administrative action or proceeding (including any arbitration), other than such proceedings as may be necessary to effectuate the provisions of the Stipulation; or

(c) shall be construed against any of the Releasees as an admission, concession, or presumption that the consideration to be given under the Settlement represents the amount which could be or would have been recovered after trial; *provided, however*, that if the Stipulation is approved by the Court, the Parties and the Releasees and their respective counsel may refer to it to effectuate the protections from liability granted thereunder or otherwise to enforce the terms of the Settlement.

26.    **Supporting Papers** – Lead Counsel shall file the opening papers in support of the proposed Settlement, the Plan of Allocation, and Lead Counsel's motion for an award of attorneys' fees and reimbursement of Litigation Expenses no later than forty-two (42) calendar days prior to the Settlement Hearing; and Lead Plaintiffs and Lead Counsel are authorized to file reply papers, which shall be filed no later than fourteen (14) calendar days prior to the Settlement Hearing.

27.    The Court retains jurisdiction to consider all further applications arising out of or connected with the proposed Settlement.

SO ORDERED this _____ day of _____, 202_.

_____
The Honorable Edward M. Chen
United States District Judge

# Exhibit A-1

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

IN RE FIBROGEN, INC., SECURITIES
LITIGATION

No. 3:21-cv-02623-EMC

**EXHIBIT A-1**

### NOTICE OF (I) PROPOSED SETTLEMENT AND PLAN OF ALLOCATION; (II) SETTLEMENT FAIRNESS HEARING; AND (III) MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES

*A Federal Court authorized this Notice.  This is not a solicitation from a lawyer.*
*YOU MAY BE ENTITLED TO A CASH AWARD.*

**TO: All persons who purchased or acquired FibroGen, Inc. ("FibroGen or the "Company") securities, including options, between December 20, 2018 through July 15, 2021, inclusive (the "Settlement Class Period"). You may be a member of the Settlement Class. If you do not wish to be part of the Settlement Class, you must respond to this Notice with a written request for exclusion (see below). You may be eligible to receive a share of the proceeds of the Settlement, but you must submit a Claim Form to participate in the Settlement (see below). If you are a broker or custodian, please immediately review this Notice for instructions on providing timely notification to beneficial owners.**

**NOTICE OF SETTLEMENT:** This notice has been sent to you pursuant to Rule 23 of the Federal Rules of Civil Procedure and an Order of the United States District Court for the Northern District of California (the "Court").  Please be advised that the Court-appointed Lead Plaintiffs, Employees' Retirement System of the City of Baltimore ("ERSCB"), City of Philadelphia Board of Pensions and Retirement ("CPBPR"), and Plymouth County Retirement Association ("PCRA") (collectively, "Lead Plaintiffs"), on behalf of themselves and the Court-certified Settlement Class (as defined in paragraph 25 below), have reached a proposed settlement of the above-captioned securities class action (the "Action") for $28,500,000.00 in cash that, if approved, will resolve all claims in the Action (the "Settlement").

**PLEASE READ THIS NOTICE CAREFULLY.  This Notice explains important rights you may have, including the possible receipt of cash from the Settlement.  If you are a member of the Settlement Class, your legal rights will be affected whether or not you act.**

**If you have any questions about this Notice, the proposed Settlement, or your eligibility to participate in the Settlement, please DO NOT contact the Court, FibroGen, any other Defendants in the Action, or their counsel.  All questions should be directed to the Claims Administrator or Lead Counsel (see paragraph 96 below).**

1

1.     **Description of the Action and the Settlement Class**:  This Notice relates to a proposed Settlement of claims in a pending securities class action brought by investors alleging, among other things, that defendants FibroGen, Enrique Conterno ("Conterno"), James A. Schoeneck ("Schoeneck"), Mark Eisner ("Eisner"), Pat Cotroneo ("Cotroneo"), and K. Peony Yu ("Yu") (collectively, the "Individual Defendants," and together with FibroGen, the "Defendants")[1] misrepresented the safety profile and Phase III trial results of its flagship anti-anemia drug, Roxadustat, for which the Company had submitted a new drug application ("NDA") to the United States Food & Drug administration ("FDA") in December 2019 in order to obtain approval for marketing the drug in the United States.  The Complaint further alleges that FibroGen's stock price was artificially inflated as a result of Defendants' false and misleading statements, and that FibroGen's stock price declined when the alleged truth regarding Defendants' alleged misrepresentations was revealed.  A more detailed description of the Action is set forth in paragraphs 11-24 below.  The proposed Settlement, if approved by the Court, will settle the claims of the Settlement Class, as defined in paragraph 25 below.

2.     **Statement of the Settlement Class's Recovery:**   Subject to Court approval, Lead Plaintiffs, on behalf of themselves and the Settlement Class, have agreed to settle the Action in exchange for a settlement payment of $28,500,000.00 in cash (the "Settlement Amount") to be deposited into an escrow account.  The Net Settlement Fund (i.e., the Settlement Amount plus any and all interest earned thereon (the "Settlement Fund") less (a) any Taxes and Tax Expenses, (b) any Notice and Administration Costs, (c) any Litigation Expenses awarded by the Court, (d) any attorneys' fees awarded by the Court, and (e) any other deductions ordered by the Court) will be distributed in accordance with a plan of allocation that is approved by the Court, which will determine how the Net Settlement Fund shall be allocated among members of the Settlement Class.  The proposed plan of allocation (the "Plan of Allocation") is set forth in paragraphs 55-79 below.

3.     **Estimate of Average Amount of Recovery Per Share:**   Based on Lead Plaintiffs' damages expert's estimates of the number of shares of FibroGen common stock purchased and options traded during the Settlement Class Period that may have been affected by the conduct at issue in the Action, and assuming that all Settlement Class Members elect to participate in the Settlement, the estimated average recovery (before the deduction of any Court-approved fees, expenses and costs as described herein) would be $0.29 per alleged damaged share (hereinafter the "damaged shares"), $1.58 per damaged call option (hereinafter the "damaged call options"), and $5.38 per damaged put option (hereinafter "damaged put options").  Settlement Class Members should note, however, that the foregoing average recovery per share or options contract is only an estimate.  Some Settlement Class Members may recover more or less than this estimated amount depending on, among other factors, when and at what prices they purchased/acquired and sold their FibroGen securities, and the total number and recognized loss amount of valid Claim Forms and electronic claims submitted. Distributions to Settlement Class Members will be made based on the Plan of Allocation set forth herein (see paragraphs 74-79

---

[1] All capitalized terms used in this Notice that are not otherwise defined herein shall have the meanings ascribed to them in the Stipulation and Agreement of Settlement dated December 7, 2023 (the "Stipulation" or "Settlement Agreement") which is available at www.FibroGenSecuritiesLitigation.com.  The singular forms of nouns and pronouns include the plural and vice versa.

below) or such other plan of allocation as may be ordered by the Court.

4.    **Average Amount of Damages Per Share**: The Parties do not agree on the average amount of damages per share that would be recoverable if Lead Plaintiffs were to prevail in the Action. Among other things, Defendants deny each and all the claims and contentions alleged by Lead Plaintiffs in the Action and do not agree with the assertion that they violated the federal securities laws or that any damages were suffered by Lead Plaintiffs or any members of the Settlement Class as a result of their alleged conduct.

5.    **Attorneys' Fees and Expenses Sought:** Lead Counsel, which have been prosecuting the Action on a wholly contingent basis since 2021, have not received any payment of attorneys' fees for their representation of the Settlement Class and have advanced the funds to pay expenses necessarily incurred to prosecute this Action. Court-appointed Lead Counsel Saxena White P.A. will apply to the Court for an award of attorneys' fees in an amount not to exceed twenty-five percent (25%) of the Settlement Fund, or $7,125,000 plus interest. This fee award would equate to an estimated lodestar multiplier of approximately 0.5. In addition, Lead Counsel will apply for reimbursement of Litigation Expenses paid or incurred in connection with the institution, prosecution, and resolution of the claims against the Defendants, in an amount not to exceed $715,000, which sum may include the reasonable costs and expenses incurred by Lead Plaintiffs directly related to their representation of the Settlement Class in an amount not to exceed $45,000. Any fees and expenses awarded by the Court will be paid from the Settlement Fund. Settlement Class Members are not personally liable for any such fees or expenses. Estimates of the average costs per damaged share, damaged call option, and damaged put option, if the Court approves Lead Counsel's fee and expense application, are $0.08 per damaged share, $0.43 per damaged call option, and $1.48 per damages put option.

6.    **Identification of Attorneys' Representative:** Lead Plaintiffs and the Settlement Class are represented by Lester R. Hooker, Esq. of Saxena White P.A., 7777 Glades Road, Suite 300, Boca Raton, FL 33434, (561) 206-6708, lhooker@saxenawhite.com.

7.    **Reasons for the Settlement:** Lead Plaintiffs' principal reason for entering into the Settlement is the substantial immediate cash benefit for the Settlement Class without the risk or the delays inherent in further litigation. Moreover, the substantial cash benefit provided under the Settlement must be considered against a number of factors, including FibroGen's cash position and its resources that could be allocated to any settlement or recovery. Defendants, who deny all allegations of wrongdoing or liability or any violation of the law whatsoever, are entering into the Settlement solely to eliminate the uncertainty, distraction, time, burden and expense of further protracted litigation.

| YOUR LEGAL RIGHTS AND OPTIONS IN THE SETTLEMENT: | |
|---|---|
| **SUBMIT A CLAIM FORM ONLINE, OR BY MAIL AND POSTMARKED, NO LATER THAN _____, 2024.** | This is the only way to be potentially eligible to receive a payment from the Settlement Fund. If you are a Settlement Class Member and you remain in the Settlement Class, you will be bound by the Settlement as approved by the Court and you will give up any Released Plaintiffs' Claims (defined in paragraph 35 below) that you have against Defendants and the other Defendant Releasees (defined in |

| | paragraph 36 below), so it is in your interest to submit a Claim Form.<br><br>You may submit a Claim Form and still object to any part of the Settlement.<br><br>You cannot submit a Claim Form and exclude yourself. |
|---|---|
| **EXCLUDE YOURSELF FROM THE SETTLEMENT CLASS BY SUBMITTING A WRITTEN REQUEST FOR EXCLUSION SO THAT IT IS *RECEIVED* NO LATER THAN _____, 2024.** | If you exclude yourself from the Settlement Class, you will not be eligible to receive any payment from the Settlement Fund.  This is the only option that allows you ever to be part of any other lawsuit against any of the Defendants or the other Defendant Releasees concerning the Released Plaintiffs' Claims.<br><br>You cannot object to the proposed Settlement and cannot submit a Claim Form if you exclude yourself. |
| **OBJECT TO THE SETTLEMENT BY FILING ELECTRONICALLY OR IN PERSON WITH THE COURT, OR BY MAILING TO THE COURT A WRITTEN OBJECTION SO THAT IT IS *RECEIVED* NO LATER THAN _____, 2024.** | If you do not like the proposed Settlement, the proposed Plan of Allocation, or the request for attorneys' fees and reimbursement of Litigation Expenses, you may write to the Court and explain why you do not like them.  You cannot object to the Settlement, the Plan of Allocation or the fee and expense request unless you are a Settlement Class Member and do not exclude yourself from the Settlement Class.<br><br>You do not need to submit a Claim Form to object. However, if you object, you must submit a Claim Form, as described above, by \_\_\_\_, in order to be eligible to receive a cash payment from the Settlement Fund<br><br>The Court can only approve or deny the Settlement and cannot change the terms. |
| **GO TO A HEARING ON _____, 2024 AT \_\_:\_\_\_, AND FILE A NOTICE OF INTENTION TO APPEAR SO THAT IT IS *RECEIVED* NO LATER THAN _____.** | Filing a written objection and notice of intention to appear by _____ allows you at the Settlement Hearing on \_\_\_\_\_, 2024 at \_\_:\_\_\_, to speak in Court, at the discretion of the Court, about the fairness of the proposed Settlement, the Plan of Allocation, and/or the request for attorneys' fees and reimbursement of Litigation Expenses. If you submit a written objection, you may (but you do not have to) attend the hearing and, at the discretion of the Court, speak to the Court about your objection. |

| **DO NOTHING** | If you are a member of the Settlement Class and you do not submit a valid Claim Form, you will not be eligible to receive any payment from the Settlement Fund. You will, however, remain a member of the Settlement Class, which means that you give up your right to sue about the claims that are resolved by the Settlement and you will be bound by any judgments or orders entered by the Court in the Action. |
|---|---|

## WHAT THIS NOTICE CONTAINS

| | |
|---|---|
| Why Did I Get This Notice? | Page __ |
| What Is This Case About? | Page __ |
| How Do I Know If I Am Affected By The Settlement? | |
|    Who Is Included In The Settlement Class? | Page __ |
| What Are Lead Plaintiffs' Reasons For The Settlement? | Page __ |
| What Might Happen If There Were No Settlement? | Page __ |
| How Are Settlement Class Members Affected By The Action | |
|   And The Settlement? | Page __ |
| How Do I Participate In The Settlement?  What Do I Need To Do? | Page __ |
| How Much Will My Payment Be? | Page __ |
| What Payment Are The Attorneys For The Settlement Class Seeking? | |
|  How Will The Lawyers Be Paid? | Page __ |
| What If I Do Not Want To Be A Member Of The Settlement Class? | |
|     How Do I Exclude Myself? | Page __ |
| When And Where Will The Court Decide Whether To Approve The Settlement? | |
|   Do I Have To Come To The Hearing?  May I Speak At The Hearing If I | |
|   Do Not Like The Settlement? | Page __ |
| What If I Bought Securities On Someone Else's Behalf? | Page __ |
| Can I See The Court File?  Whom Should I Contact If I Have Questions? | Page __ |

## WHY DID I GET THIS NOTICE?

8.      The Court directed that this Notice be mailed to you because you, someone in your family, or an investment account for which you serve as a custodian may have purchased or acquired FibroGen securities during the Settlement Class Period.  The Court has directed us to send you this Notice because, as a potential Settlement Class Member, you have a right to know about your options before the Court rules on the proposed Settlement.  Additionally, you have the right to understand how this class action lawsuit may generally affect your legal rights.  If the Court approves the Settlement, and the Plan of Allocation (or some other plan of allocation), the claims administrator selected by Lead Plaintiffs and approved by the Court will make payments pursuant to the Settlement after any objections and appeals are resolved.

9.      The purpose of this Notice is to inform you of the existence of this case, that it is a class action, how you might be affected, and how to exclude yourself from the Settlement Class if you wish to do so.  It is also being sent to inform you of the terms of the proposed Settlement, and of

a hearing to be held by the Court to consider the fairness, reasonableness, and adequacy of the Settlement, the proposed Plan of Allocation, and the motion by Lead Plaintiffs for an award of attorneys' fees and reimbursement of Litigation Expenses (the "Settlement Hearing").  See paragraph 86 below for details about the Settlement Hearing, including the date and location of the hearing.

10.   The issuance of this Notice is not an expression of any opinion by the Court concerning the merits of any claim in the Action, and the Court still has to decide whether to approve the Settlement.  If the Court approves the Settlement and a plan of allocation, then payments to Authorized Claimants will be made after any appeals are resolved and after the completion of all claims processing.  Please be patient, as this process can take some time to complete.

## WHAT IS THIS CASE ABOUT?

11.   On April 12, 2021, this Action was commenced in the United States District Court for the Northern District of California, styled *Peifa Xu vs. FibroGen, Inc., et. al.*, Case No. 3:21-cv-02623-EMC (N.D. Cal.), alleging violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder.

12.   By Order dated August 30, 2021, the Court appointed ERSCB, CPBPR, and PCRA as Lead Plaintiffs and approved Lead Plaintiffs' selection of Saxena White P.A. as Lead Counsel for the class.

13.   On November 19, 2021, Lead Plaintiffs filed their Corrected Consolidated Class Action Complaint for Violations of the Federal Securities Laws (the "Complaint"), on behalf of the Settlement Class, reflecting the change in the case name to *In re FibroGen, Inc. Securities Litigation* and asserting claims for a putative class period of December 20, 2018 through July 15, 2021.  The Complaint alleges, among other things, that throughout the Settlement Class Period, Defendants misrepresented the safety profile and Phase III trial results of FibroGen's flagship anti-anemia drug, Roxadustat.  The Company had submitted a new drug application to the FDA in December 2019 to obtain approval for the commercialization of Roxadustat in the United States.  The Complaint alleges that the crux of Defendants' scheme was to falsely assure investors that the safety results were derived pursuant to FDA-sanctioned analyses, when in fact Defendants improperly used post-hoc stratification factors to artificially make Roxadustat appear safer than the comparators, Epogen and placebo.  The Complaint further alleges that FibroGen's stock price was artificially inflated as a result of Defendants' false and misleading statements, and that FibroGen's stock price declined when the truth regarding Defendants' alleged misrepresentations was revealed through a series of partial disclosures. FibroGen's stock price declined substantially when the truth regarding Defendants' alleged misrepresentations was revealed.

14.   The FibroGen Defendants (defendants FibroGen, Conterno, Schoeneck, Eisner, and Cotroneo collectively) and Yu were represented separately, with Cooley LLP representing the FibroGen Defendants, and Pillsbury Winthrop Shaw Pittman LLP and the Wei Law Group LLP representing Defendant Yu.  On January 14, 2022, the FibroGen Defendants and Defendant Yu each filed motions to dismiss the Complaint.  Lead Plaintiffs filed their opposition on March 4, 2022.  On April 8, 2022, the FibroGen Defendants and Defendant Yu each filed replies.  On April 28, 2022, the Court heard oral argument on Defendants' motions to dismiss.  On July 15,

2022, the Honorable Edward M. Chen entered an Order denying in part and granting in part Defendants' motions to dismiss. The Court found that Plaintiffs had adequately alleged that 91 out of the 96 challenged false statements in the Complaint were materially false and misleading, and that Plaintiffs had adequately alleged scienter on the part of all of the Individual Defendants.

15.    Following the Court's Order on Defendants' motions to dismiss the Complaint, the FibroGen Defendants and Defendant Yu each filed answers to the Complaint on September 13, 2022. The Parties then commenced discovery. Lead Plaintiffs sought discovery from the FibroGen Defendants and Defendant Yu, as well as the FDA, FibroGen's partners in the development of Roxadustat, AstraZeneca and Astellas, and another third party. Defendants sought discovery from Lead Plaintiffs and Lead Plaintiffs' investment managers. Specifically, Lead Plaintiffs served their First Requests for Production of Documents to All Defendants on September 14, 2022. Defendants served their First Set of Requests for Production of Documents and their First Set of Interrogatories to Lead Plaintiffs on November 21, 2022.

16.    The FibroGen Defendants served their responses and objections to Lead Plaintiffs' requests on October 14, 2022, and Defendant Yu served her responses and objections to Lead Plaintiffs' requests on October 28, 2022. Lead Plaintiffs served their responses and objections to Defendants' requests and interrogatories on December 21, 2022. Lead Plaintiffs subpoenaed AstraZeneca and Astellas for documents on November 10 and 22, 2022, respectively, and subpoenaed the FDA for documents on January 4, 2023. AstraZeneca served its responses and objections to Plaintiffs' subpoena on December 19, 2022. Astellas served its responses and objections to Plaintiffs' subpoena on December 20, 2022. The FDA responded by letter to Plaintiffs' subpoena on January 12, 2023.

17.    After the Parties agreed on search terms, Defendants and their expert produced nearly 165,000 documents spanning over 1.8 million pages in 29 separate productions over the course of approximately ten months, with Defendants providing Lead Plaintiffs with their first production on November 19, 2022. Similarly, Lead Plaintiffs, their investment managers (who produced pursuant to subpoenas from Defendants), and their expert produced nearly 13,000 documents spanning over 87,000 pages in 26 separate productions over the course of approximately three months, with Lead Plaintiffs providing Defendants their first production on January 20, 2023. The FibroGen Defendants served three privilege logs on Plaintiffs. Defendant Yu served one privilege log on Plaintiffs. Lead Plaintiffs served one privilege log on Defendants. Pursuant to subpoena, AstraZeneca produced approximately 100,000 documents spanning over 2.6 million pages in eleven separate productions over the course of approximately eight months, with AstraZeneca making its first production on February 28, 2023. Also pursuant to subpoena, Astellas produced over 4,000 documents spanning 55,000 pages in three separate productions over the course of approximately three months, with Astellas making its first production on April 19, 2023. Also, pursuant to subpoena, the FDA produced over 300 documents spanning over 1,800 pages in one production made on February 15, 2023.

18.    During the course of document discovery, the Parties conducted numerous meet-and-confers amongst themselves and with non-parties, and exchanged dozens of letters and substantive emails amongst themselves and with non-parties. The Parties also engaged in discovery disputes on a variety of issues. Of these, two disputes resulted in significant motion practice.

19.    Lead Plaintiffs filed their Motion for Class Certification on January 27, 2023, attaching the expert report of Mr. Chad Coffman, CFA.  On April 4, 2023, Defendants took the deposition of Mr. Coffman.  Defendants took the depositions of representatives of Lead Plaintiffs PCRA, ERSCB and CPBPR on April 11, 2023, April 13, 2023, and April 18, 2023, respectively. Defendants filed their Opposition to the Motion for Class Certification on May 12, 2023, attaching the expert report of Dr. Paul Zurek.  On June 8, 2023, Lead Plaintiffs deposed Defendants' expert.  On June 23, 2023, Lead Plaintiffs filed their reply in support of class certification.  On August 17, 2023, Defendants moved for leave to file a sur-reply on class certification, attaching their proposed sur-reply.  Plaintiffs opposed this motion on August 21, 2023.  On August 24, 2023, the Court granted Defendants' motion for leave to file a sur-reply. On August 31, 2023, the Court conducted a hearing on Plaintiffs' motion for class certification, during which the Court directed the parties to file a supplemental chart regarding facts potentially disclosed on July 15, 2021 at the FDA Advisory Committee Meeting ("AdCom") considering FibroGen's Roxadustat NDA.  The parties jointly filed this supplemental briefing on September 15, 2023.

20.    On October 3, 2023, the Court granted in part and denied in part the Motion for Class Certification.  In this order, the Court appointed Lead Plaintiffs as Class Representatives and Lead Counsel as Class Counsel, and certified a class of purchasers of FibroGen stock for a Class Period of December 20, 2018 through April 6, 2021 who were damaged thereby. While Lead Plaintiffs had moved to certify a class period of December 20, 2018 through July 15, 2021, the Court found that no new information was disseminated at the AdCom on July 15, 2021 that corrected any alleged false statement, and therefore, ended the class period for litigation purposes with the after-market disclosure on April 6, 2021.  The Court deferred certification of options holders during the class period and instructed the parties to provide supplemental briefing on whether damages for options holders could be calculated on a class-wide basis.

21.    On March 14, 2023, the Parties and Defendants' directors' and officers' liability insurance carriers (the "D&O Insurers") participated in an in-person mediation session in San Francisco with mediator Michelle Yoshida of Phillips ADR.  Prior to the mediation, each side submitted comprehensive mediation statements and rebuttal statements setting forth their respective positions on various legal and factual issues, which included detailed information obtained through the extensive discovery process.  During the mediation, the Parties provided their respective views on liability and damages.  At the conclusion of the mediation, the Parties were at an impasse and agreed to continue litigation efforts.  No further settlement negotiations were scheduled.  In July 2023, while active litigation remained ongoing, the Parties resumed settlement discussions through Ms. Yoshida, which included numerous telephonic and video conferences.  These discussions culminated in a mediator's proposal to settle the Action for $28.5 million, which the Parties accepted on October 17, 2023.

22.    Based on their investigation, discovery, prosecution and mediation of the case, Lead Plaintiffs and Lead Counsel have concluded that the terms and conditions of the Stipulation are fair, reasonable, and adequate to Lead Plaintiffs and the other members of the Settlement Class, and in their best interests.  Based on Lead Plaintiffs' oversight of the prosecution of this matter and with the advice of its counsel, Lead Plaintiffs have agreed to settle and release the claims raised in the Action pursuant to the terms and provisions of the Stipulation, after considering, among other things, (a) the substantial financial benefit that Lead Plaintiffs and the other members of the Settlement Class will receive under the proposed Settlement; (b) FibroGen's

resources to fund a settlement; (c) the significant risks and costs of continued litigation and trial; and (d) the desirability of permitting the proposed Settlement to be consummated as provided by the terms of the Stipulation.

23.    The Stipulation and the Settlement constitute a compromise of matters that are in dispute among the Parties.    Defendants have entered into the Stipulation solely to eliminate the uncertainty, distraction, time, burden and expense of further protracted litigation.    Each of the Defendants denies any wrongdoing, and the Settlement and Stipulation shall in no event be construed or deemed to be evidence of or an admission or concession on the part of any of the Defendants with respect to any claim or allegation of any fault, liability, wrongdoing, or damage whatsoever, or any infirmity in the defenses that the Defendants have, or could have, asserted. Defendants expressly deny that Lead Plaintiffs have asserted any valid claims as to any of them, and expressly deny any and all allegations of fault, liability, wrongdoing, or damages whatsoever.    The Stipulation and the Settlement also shall in no event be construed or deemed to be evidence of or an admission or concession on the part of any Lead Plaintiffs of an infirmity in any of the claims asserted in the Action, or an admission or concession that any of the Defendants' defenses to liability had any merit.

24.    On _____, 2024, the Court preliminarily approved the Settlement, authorized this Notice to be disseminated to potential Settlement Class Members, provisionally certified the Settlement Class and scheduled the Settlement Hearing to consider, among other things, whether to grant final approval of the Settlement.

| **HOW DO I KNOW IF I AM AFFECTED BY THE SETTLEMENT? WHO IS INCLUDED IN THE SETTLEMENT CLASS?** |
| :---: |

25.    If you are a member of the Settlement Class, you are subject to the Settlement, unless you timely request to be excluded.    The Settlement Class consists of:

> All persons who purchased or acquired FibroGen securities, including options, between December 20, 2018 through July 15, 2021, inclusive.

Excluded from the Settlement Class are (1) Defendants; (2) the Officers or directors of FibroGen during the Settlement Class Period; (3) the Immediate Family members of any Defendant or any Officer or director of FibroGen during the Settlement Class Period; and (4) any entity that any Defendant owns or controls, or owned or controlled, during the Settlement Class Period.    Also excluded from the Settlement Class are those persons who submit valid and timely requests for exclusion in accordance with the Preliminary Approval Order, or the plaintiffs in the Opt-Out Action against Defendants.    See "What If I Do Not Want To Be A Member Of The Settlement Class?  How Do I Exclude Myself?" on page [___] below.

**PLEASE NOTE:  RECEIPT OF THIS NOTICE DOES NOT MEAN THAT YOU ARE A SETTLEMENT CLASS MEMBER OR THAT YOU WILL BE ENTITLED TO RECEIVE PROCEEDS FROM THE SETTLEMENT.  IF YOU ARE A SETTLEMENT CLASS MEMBER AND YOU WISH TO BE POTENTIALLY ELIGIBLE TO PARTICIPATE IN THE DISTRIBUTION OF PROCEEDS FROM THE SETTLEMENT, YOU ARE REQUIRED TO SUBMIT THE CLAIM FORM THAT IS BEING DISTRIBUTED WITH THIS NOTICE AND THE REQUIRED SUPPORTING DOCUMENTATION AS SET FORTH THEREIN POSTMARKED OR SUBMITTED ONLINE AT THE SETTLEMENT WEBSITE, WWW.FIBROGENSECURITIESLITIGATION.COM, NO LATER THAN _____, 2024.**

| |
|---|
| **WHAT ARE LEAD PLAINTIFFS' REASONS FOR THE SETTLEMENT?** |

26.    Lead Plaintiffs and Lead Counsel believe that the claims asserted against Defendants have merit.  They recognize, however, the expense and length of continued proceedings necessary to pursue their claims against Defendants through further motion practice, trial and appeals, as well as the very substantial risks they would face in establishing liability and damages.  Lead Plaintiffs and Lead Counsel recognized that Defendants had numerous avenues of attack that could preclude a recovery.  For example, among other things, Defendants would assert that the statements were not materially false or misleading, and that even if they were, they were not made with the requisite state of mind to support the securities fraud claims alleged. Even if the hurdles to establishing liability were overcome, the amount of damages that could be attributed to the allegedly false statements would be hotly contested.  Lead Plaintiffs would have to prevail at several stages – including, without limitation, motions for summary judgment, trial, and if they prevailed on those, on the appeals that would likely follow.

27.    Moreover, Lead Plaintiffs and Lead Counsel took into account FibroGen's resources available to fund a settlement, including  FibroGen's finite D&O insurance policies.  Further litigation, given its likely length and intensity of further litigation, would have rapidly depleted these insurance policies.  Thus, had litigation continued, Lead Plaintiffs and Lead Counsel believe there was a very real risk (if not a virtual certainty) that the Settlement Class would have recovered less than the $28.5 million Settlement Amount, or even nothing at all.

28.    In light of these risks, the amount of the Settlement, and the immediacy of recovery to the Settlement Class, Lead Plaintiffs and Lead Counsel believe that the proposed Settlement is fair, reasonable and adequate, and in the best interests of the Settlement Class.  Lead Plaintiffs and Lead Counsel believe that the Settlement provides a substantial benefit to the Settlement Class, namely $28,500,000.00 in cash (less the various deductions described in this Notice), as compared to the risk that the claims in the Action would produce a smaller, or no, recovery after summary judgment, trial and appeals, possibly years in the future.

29.    Defendants have denied each and all the claims and contentions asserted against them in the Action and deny having engaged in any wrongdoing or violation of law of any kind whatsoever.  Defendants have agreed to the Settlement solely to eliminate the burden and expense of continued litigation.  Accordingly, as noted above, the Settlement may not be construed as an admission of any wrongdoing by Defendants.

## WHAT MIGHT HAPPEN IF THERE WERE NO SETTLEMENT?

30.    If there were no Settlement and Lead Plaintiffs failed to establish any essential legal or factual element of their claims against Defendants, neither Lead Plaintiffs nor the other members of the Settlement Class would recover anything from Defendants.  Also, if Defendants were successful in proving any of their defenses, either at summary judgment, at trial or on appeal, the Settlement Class could recover substantially less than the amount provided in the Settlement, or nothing at all.  Furthermore, even if Lead Plaintiffs successfully continued litigation (including at summary judgment, at trial, or on appeal), given FibroGen's resources available to fund any such recovery, there was a very real risk (if not a virtual certainty) that the Settlement Class would recover less than the $28.5 million settlement amount, or even nothing at all.

## HOW ARE SETTLEMENT CLASS MEMBERS AFFECTED
## BY THE ACTION AND THE SETTLEMENT?

31.    As a Settlement Class Member, you are represented by Lead Plaintiffs and Lead Counsel, unless you enter an appearance through counsel of your own choice at your own expense.  You are not required to retain your own counsel, but if you choose to do so, such counsel must file a notice of appearance on your behalf.  For more information, please consult "When And Where Will The Court Decide Whether To Approve The Settlement?" below.

32.    If you are a Settlement Class Member and do not wish to remain a Settlement Class Member, you may exclude yourself from the Settlement Class by following the instructions in the section entitled, "What If I Do Not Want To Be A Member Of The Settlement Class?  How Do I Exclude Myself?" below.

33.    If you are a Settlement Class Member and you wish to object to the Settlement, the Plan of Allocation, or Lead Counsel's application for attorneys' fees and reimbursement of Litigation Expenses, and if you do not exclude yourself from the Settlement Class, you may make your objection by following the instructions in the section entitled, "When And Where Will The Court Decide Whether To Approve The Settlement?" below.

34.    If you are a Settlement Class Member and you do not exclude yourself from the Settlement Class, you will be bound by any orders issued by the Court.  If the Settlement is approved, the Court will enter a judgment (the "Judgment").  The Judgment will dismiss with prejudice the claims against the Defendant Releasees (as defined in paragraph 36 below) and will provide that, upon the Effective Date of the Settlement, Plaintiff Releasees (as defined in paragraph 41 below), shall be deemed to have, and by operation of the Stipulation, of law, and of the Judgment shall have, fully, finally and forever compromised, settled, released, resolved, relinquished, waived and discharged each and every Released Plaintiffs' Claim (as defined in paragraph 35 below) against the Defendants and the other Defendant Releasees, and shall forever be barred and enjoined from commencing, instituting, prosecuting or maintaining any or all of the Released Plaintiffs' Claims against any of the Defendant Releasees.

35.    "Released Plaintiffs' Claims" means all claims, demands, losses, rights, liability, or causes of action, in law or in equity, accrued or unaccrued, fixed or contingent, direct, individual or representative, of every nature and description whatsoever, whether known or unknown, or based on federal, state, local, statutory or common law or any other law, rule or regulation,

(including the law of any jurisdiction outside the United States), that were or could have been asserted in the Action or could in the future be asserted in any forum, whether foreign or domestic, against Defendant Releasees by Class Representatives or any member of the Settlement Class, or their successors, assigns, executors, administrators, representatives, attorneys and agents in their capacity as such, which arise out of, are based upon, or relate in any way to the factual predicate of the Action, including (i) any of the allegations, facts, transactions, events, matters, occurrences, acts, disclosures, oral or written statements, representations, omissions, failures to act, filings, publications, disseminations, press releases, or presentations involved, set forth, alleged or referred to in the Action; and (ii) all claims that arise out of, are based upon, or relate in any way to the purchase, acquisition, holding, sale, or disposition of any FibroGen securities during the Settlement Class Period. "Released Plaintiffs' Claims" shall not include any claims to enforce this Settlement or Excluded Claims.

36.  "Defendant Releasees" means each and all Defendants, Defendants' Counsel, the D&O Insurers, and their respective Related Persons.

37.  "Related Persons" means (i) with respect to Defendants, Defendants' Counsel, and the D&O Insurers, each of their respective current and former, Officers, directors, agents, parents, affiliates, subsidiaries, reinsurers, successors, predecessors, assigns, assignees, employees, and attorneys, in their capacities as such; and (ii) with respect to the Individual Defendants, their respective spouses, Immediate Family members, heirs, successors, executors, estates, administrators, attorneys, agents, accountants, insurers or reinsurers, personal representatives, trusts, community property, and any other entity in which any of them has a controlling interest, and as to such entities, each and all of their predecessors, successors, past, present or future parents, subsidiaries, affiliates, and each of their respective past or present officers, directors, shareholders, agents, partners, principals, members, employees, attorneys, advisors, trustees, auditors and accountants, insurers and reinsurers.

38.  "Unknown Claims" means any Released Plaintiffs' Claims that Lead Plaintiffs or any other Settlement Class Member does not know or suspect to exist in his, her, or its favor at the time of the release of such claims, and any Released Defendants' Claims that any Defendant or any other Defendant Releasee does not know or suspect to exist in his, her, or its favor at the time of the release of such claims, which, if known by him, her, or it might have affected his, her, or its decision(s) with respect to this Settlement, including but not limited to, whether or not to object to this Settlement or to the release of any Released Claims. With respect to any and all Released Claims, the Parties stipulate and agree that, upon the Effective Date of the Settlement, Lead Plaintiffs and Defendants shall expressly waive, and each of the other Plaintiff Releases and Defendant Releasees shall be deemed to have waived, and by operation of the Judgment, shall have expressly waived, any and all provisions, rights, and benefits conferred by California Civil Code  § 1542 and any law of any state or territory of the United States, or principle of common law or foreign law, which is similar, comparable, or equivalent to California Civil Code §1542, which provides:

> A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.

The Releasees acknowledge that they may hereafter discover facts in addition to or different from those which he, she, it, or their counsel now knows or believes to be true with respect to the subject matter of the Released Claims, but they are, notwithstanding this potential, entering into the Stipulation and intend it to be a full, final, and permanent resolution of the matters at issue in this Action. Lead Plaintiffs and Defendants acknowledge, and each of the other Settlement Class Members and each of the other Plaintiff Releasees and Defendant Releasees shall be deemed by operation of law to have acknowledged, that the foregoing waiver was separately bargained for and a key element of the Settlement.

39. The Judgment will also provide that, upon the Effective Date of the Settlement, Defendant Releasees, shall be deemed to have, and by operation of the Stipulation, of law, and of the Judgment shall have, fully, finally, and forever compromised, settled, released, resolved, relinquished, waived, and discharged each and every Released Defendants' Claim (as defined in paragraph 40 below) against the Plaintiff Releasees (as defined in paragraph 41 below), and shall forever be barred and enjoined from prosecuting any or all of the Released Defendants' Claims against any of the Plaintiff Releasees. This release shall not apply to any Excluded Claim.

40. "Released Defendants' Claims" means all claims, demands, losses, rights, liability, or causes of action, in law or in equity, accrued or unaccrued, fixed or contingent, direct, individual or representative, of every nature and description whatsoever, whether known or unknown, or based on federal, state, local, statutory or common law or any other law, rule or regulation, (including the law of any jurisdiction outside the United States), that were or could have been asserted in the Action or could in the future be asserted in any forum, whether foreign or domestic, against Plaintiff Releasees by Defendants or any member of Defendant Releasees, or their successors, assigns, executors, administrators, representatives, attorneys and agents in their capacity as such, which arise out of, relate to, or are based upon, the institution, prosecution, or settlement of the claims asserted in the Action against the Defendants. Released Defendants' Claims do not include any claims relating to the enforcement of the Settlement and any Excluded Claims.

41. "Plaintiff Releasees" means Lead Plaintiffs, all other plaintiffs in the Action, Lead Counsel, and all other Settlement Class Members, as well as each of their respective current and former Officers, directors, agents, parents, affiliates, subsidiaries, successors, predecessors, assigns, assignees, employees, and attorneys, in their capacities as such.

42. The Judgment will also provide that, upon the Effective Date, to the extent allowed by law, the Stipulation shall operate conclusively as an estoppel and full defense in the event, and to the extent, of any claim, demand, action, or proceeding brought by a Settlement Class Member against any of the Defendant Releasees with respect to any Released Plaintiffs' Claim, or brought by a Defendant against any of the Plaintiff Releasees with respect to any Released Defendants' Claim.

43. The Judgment shall, among other things, provide for the dismissal with prejudice of the Action against the Defendant Releasees, without costs to any Party or the D&O Insurers, except for the payments expressly provided for in the Stipulation.

| HOW DO I PARTICIPATE IN THE SETTLEMENT?  WHAT DO I NEED TO DO? |
|---|

44.    To be eligible for a payment from the proceeds of the Settlement, you must be a member of the Settlement Class and you must timely complete and return the Claim Form with adequate supporting documentation postmarked or submitted online no later than _____, 2024. A Claim Form is included with this Notice, or you may obtain one from the website maintained by the Claims Administrator for the Settlement, www.FibroGenSecuritiesLitigation.com, or you may request that a Claim Form be mailed to you by calling the Claims Administrator toll free at 1-877-595-0137.  Please retain all records of your ownership of and transactions in FibroGen securities, as they may be needed to document your Claim.  If you request exclusion from the Settlement Class or do not submit a timely and valid Claim Form, you will not be eligible to share in the Net Settlement Fund.

| HOW MUCH WILL MY PAYMENT BE? |
|---|

45.    At this time, it is not possible to make any determination as to how much any individual Settlement Class Member may receive from the Settlement.

46.    Pursuant to the Settlement, Defendants have agreed to cause the D&O Insurers to pay twenty-eight million five hundred thousand dollars ($28,500,000.00) in cash.  The Settlement Amount will be deposited into an escrow account.  The Settlement Amount plus any and all interest earned thereon is referred to as the "Settlement Fund."  If the Settlement is approved by the Court and the Effective Date occurs, the "Net Settlement Fund" (that is, the Settlement Fund less (a) all federal, state or local taxes on any income earned by the Settlement Fund and the reasonable costs incurred in connection with determining the amount of and paying taxes owed by the Settlement Fund (including reasonable expenses of tax attorneys and accountants); (b) the costs and expenses incurred in connection with providing notice to Settlement Class Members and administering the Settlement on behalf of Settlement Class Members; (c) any attorneys' fees and Litigation Expenses awarded by the Court; and (d) other Court-approved deductions) will be distributed to Settlement Class Members who submit valid Claim Forms, in accordance with the proposed Plan of Allocation or such other plan of allocation as the Court may approve.

47.    The Net Settlement Fund will not be distributed unless and until the Court has approved the Settlement and a plan of allocation, and the time for any petition for rehearing, appeal or review, whether by certiorari or otherwise, has expired.

48.    No Defendant Releasee or any person or entity that paid any portion of the Settlement Amount on Defendants' behalf are entitled to get back any portion of the Settlement Fund once the Court's order or judgment approving the Settlement becomes Final.  Defendants shall not have any liability, obligation, or responsibility for the administration of the Settlement, the disbursement of the Net Settlement Fund, or the Plan of Allocation.  In no instance shall any Defendant Releasee be required to pay any amount other than as expressly provided for in the Stipulation.

49.    Approval of the Settlement is independent from approval of a plan of allocation.  Any determination with respect to a plan of allocation will not affect the Settlement, if approved.

50.    Unless the Court otherwise orders, any Settlement Class Member who fails to submit a

Claim Form postmarked or submitted online at the Settlement website, www.FibroGenSecuritiesLitigation.com, on or before _____, 2024, shall be fully and forever barred from receiving payments pursuant to the Settlement, but will in all other respects remain a Settlement Class Member and be subject to the provisions of the Stipulation, including the terms of any Judgment entered and the releases given.  This means that each Settlement Class Member releases the Released Plaintiffs' Claims (as defined in paragraph 35 above) against the Defendant Releasees (as defined in paragraph 36 above) and will be enjoined and prohibited from filing, prosecuting, or pursuing any of the Released Plaintiffs' Claims against any of the Defendant Releasees whether or not such Settlement Class Member submits a Claim Form.

51.    Participants in and beneficiaries of a plan covered by ERISA ("ERISA Plan") should NOT include any information relating to their transactions in FibroGen securities held through the ERISA Plan in any Claim Form that they may submit in this Action.  They should include ONLY those shares that they purchased or acquired outside of the ERISA Plan.

52.    The Court has reserved jurisdiction to allow, disallow, or adjust on equitable grounds the Claim of any Settlement Class Member.

53.    Each Claimant shall be deemed to have submitted to the jurisdiction of the Court with respect to his, her, or its Claim Form.

54.    Only Settlement Class Members, i.e., persons who purchased or acquired FibroGen securities during the Settlement Class Period, will be potentially eligible to share in the distribution of the Net Settlement Fund.  Persons that are excluded from the Settlement Class by definition or that exclude themselves from the Settlement Class pursuant to request will not be eligible to receive a distribution from the Net Settlement Fund and should not submit Claim Forms.  Only FibroGen securities, including common stock and options, are included in the Settlement.

## PROPOSED PLAN OF ALLOCATION

55.    The objective of the proposed Plan of Allocation is to equitably distribute the Net Settlement Fund to those Settlement Class Members who suffered economic losses as a result of the alleged violations of the federal securities laws. The calculations made pursuant to the Plan of Allocation are not intended to be estimates of, nor indicative of, the amounts that Settlement Class Members might have been able to recover after a trial. Nor are the calculations made pursuant to the Plan of Allocation intended to be estimates of the amounts that will be paid to Authorized Claimants pursuant to the Settlement. The computations under the Plan of Allocation are only a method to weigh the claims of Claimants against one another for the purposes of making *pro rata* allocations of the Net Settlement Fund.

56.    The Plan of Allocation was created with the assistance of consulting damages experts from Global Economics Group LLC, and reflects the assumption that Defendants' alleged false and misleading statements and material omissions proximately caused the price of FibroGen common stock and FibroGen call options to be artificially inflated and FibroGen put options to be artificially deflated throughout the Settlement Class Period, December 20, 2018 through July 15, 2021, inclusive.  In calculating the estimated alleged artificial inflation (deflation) allegedly caused by Defendants' alleged misrepresentations and omissions, Plaintiffs' damages expert considered price changes in FibroGen common stock and call and put options (collectively,

"FibroGen Securities") in reaction to certain public announcements allegedly revealing the truth concerning Defendants' alleged misrepresentations and material omissions, adjusting for price changes that were attributable to market or industry forces.

57.    In order to have recoverable damages, the disclosure of the allegedly misrepresented information must have been the cause of the adverse change in the price of FibroGen Securities. In this case, Plaintiffs alleged that Defendants made false statements and omitted material facts during the Settlement Class Period, which had the alleged effect of artificially inflating the price of FibroGen common stock and call options and deflating the price of FibroGen put options. Plaintiffs further alleged that corrective information was released to the market on: May 9, 2019 (after the close of trading), March 1, 2021 (after the close of trading), April 6, 2021 (after the close of trading) and July 15, 2021 (after the close of trading), which partially removed the artificial inflation from the prices of FibroGen common stock and call options and the artificial deflation from the prices of FibroGen put options on: May 10, 2019, March 2-3, 2021, April 7-8, 2021, and July 16, 2021.

58.    Recognized Loss Amounts are based primarily on the difference in the amount of alleged artificial inflation or deflation in the price of FibroGen Securities at the time of purchase and at the time of sale, or the difference between the actual purchase price and sale price. Accordingly, in order to have a Recognized Loss Amount pursuant to the Plan of Allocation, a Settlement Class Member must have held FibroGen common stock or call options purchased or acquired during the Settlement Class Period over at least one of the days when corrective information was released to the market and partially removed the artificial inflation from the price of FibroGen common stock or call options, and with respect to FibroGen put options, a Settlement Class Member must have sold (written) those options during the Settlement Class Period and such option(s) must have remained open through at least one of the days when corrective information was released to the market and partially removed the artificial deflation from the price of FibroGen put options.

59.    Based on the formulas stated below, a "Recognized Loss Amount" will be calculated for each purchase or acquisition of FibroGen common stock and call option and each sale (writing) of FibroGen put options during the Settlement Class Period that is listed on the Claim Form and for which adequate documentation is provided. If a Recognized Loss Amount calculates to a negative number or zero under the formulas below, that number will be zero.[2]

60.    For each share of FibroGen common stock purchased or otherwise acquired during the period from December 20, 2018 through the close of trading on July 15, 2021, and:[3]

    A.    Sold before May 10, 2019, the Recognized Loss Amount will be $0.00;

---

[2] A full breakdown of recognized losses for each security and transactions on each day of the Settlement Class Period is provided in Tables A-D, which are appended to this Notice at the end and available at FibroGenSecuritiesLitigation.com.

[3] Any share of FibroGen common stock purchased or otherwise acquired during the period from December 20, 2018 through the close of trading on July 15, 2021 and not held over one of the alleged corrective disclosures listed above have a Recognized Loss Amount of $0.00.

B.   Sold from May 10, 2019 through the close of trading on July 15, 2021, the Recognized Loss Amount will be *the lesser of:* (i) the amount of artificial inflation per share on the date of purchase/acquisition as stated in Table A[4] *minus* the amount of artificial inflation per share on the date of sale as stated in Table A; or (ii) the purchase/acquisition price *minus* the sale price;

C.   Sold from July 16, 2021 through the close of trading on October 13, 2021, the Recognized Loss Amount will be *the least of:* (i) the amount of artificial inflation per share on the date of purchase/acquisition as stated in Table A ; (ii) the purchase/acquisition price *minus* the average closing price from July 16, 2021 through the date of sale as stated in Table B; or (iii) the purchase/acquisition price *minus* the sale price; or

D.   Held as of the close of trading on October 13, 2021, the Recognized Loss Amount will be *the lesser of:* (i) the amount of artificial inflation per share on the date of purchase/acquisition as stated in Table A; or (ii) the purchase/acquisition price *minus* $11.99.[5]

## FibroGen Call and Put Options

61.   Exchange-traded options are traded in units called "contracts" which entitle the holder to buy (in the case of a call option) or sell (in the case of a put option) 100 shares of the underlying security, which in this case is FibroGen common stock. Throughout this Plan of Allocation, all price quotations are *per share of the underlying security* (*i.e.*, 1/100 of a contract).

62.   Each option contract specifies a strike price and an expiration date. Contracts with the same strike price and expiration date are referred to as a "series" and each series represents a different security that trades in the market and has its own market price (and thus its own artificial inflation or deflation). Under the Plan of Allocation, the dollar artificial inflation per share (*i.e.*, 1/100 of a contract) for each series of FibroGen call options and the dollar artificial deflation per share (*i.e.*, 1/100 of a contract) for each series of FibroGen put options has been calculated by Plaintiffs' damages expert. Table C sets forth the dollar artificial inflation per share in FibroGen call options during the Settlement Class Period. Table D sets forth the dollar artificial deflation per share in FibroGen put options during the Settlement Class Period. Tables C and D[6] list only series of exchange-traded FibroGen options that expired on or after May 10,

---

[4] In Table A, artificial inflation associated with the final alleged corrective disclosure on July 15, 2021, has been discounted 90% (multiplied by 0.1) to reflect the fact that the period from April 7, 2021 through July 15, 2021 was dismissed by the Court in its Order certifying a class.

[5] Pursuant to Section 21D(e)(1) of the Exchange Act, Recognized Loss Amounts on transactions in FibroGen common stock are reduced to an appropriate extent by taking into account the closing prices of FibroGen common stock during the "90-day look-back period" after the Settlement Class Period, from July 16, 2021 through October 13, 2021. The mean (average) closing price for FibroGen common stock during this 90-day look-back period was $11.99.

[6] In line with footnote 4 above, in Tables C and D, artificial inflation (deflation) associated with the final alleged corrective disclosure on July 15, 2021, has been discounted 90% (multiplied by

2019—the date of the first alleged corrective disclosure. Any FibroGen options traded during the Settlement Class Period that are not found on Tables C and D have a Recognized Loss Amount of zero under the Plan of Allocation.

63. For each FibroGen call option purchased or otherwise acquired during the Settlement Class Period (*i.e.*, from December 20, 2018 through the close of trading on July 15, 2021), and:

    A.    Closed (through sale, exercise, or expiration) before May 10, 2019, the Recognized Loss Amount will be $0.00.

    B.    Closed (through sale, exercise, or expiration) during the period from May 10, 2019 through the close of trading on July 15, 2021, the Recognized Loss Amount will be ***the lesser of***: (i) the amount of artificial inflation per share on the date of purchase/acquisition as stated in Table C *minus* the amount of artificial inflation per share on the date of close as stated in Table C; or (ii) if closed through sale, the purchase/acquisition price *minus* the sale price, or if closed through exercise or expiration, the purchase/acquisition price *minus* the value per option on the date of exercise or expiration.[7]

    C.    Open as of the close of trading on July 15, 2021, the Recognized Loss Amount will be ***the lesser of***: (i) the amount of artificial inflation per share on the date of purchase/acquisition as stated in Table C; or (ii) the purchase/acquisition price *minus* the closing price of that option on July 16, 2021 (*i.e.*, the "Holding Price") as stated in Table C.

64. For each FibroGen put option sold (written) during the Settlement Class Period (*i.e.*, from December 20, 2018 through the close of trading on July 15, 2021), and:

    A.    Closed (through purchase, exercise, or expiration) before May 10, 2019, the Recognized Loss Amount will be $0.00.

    B.    Closed (through purchase, exercise, or expiration) during the period from May 10, 2019 through and including the close of trading on July 15, 2021, the Recognized Loss Amount will be ***the lesser of***: (i) the amount of artificial deflation per share on the date of sale (writing) as stated in Table D *minus* the amount of artificial deflation per share on the date of close as stated in Table D; or (ii) if closed through purchase, the purchase price *minus* the sale price, or if closed through

---

[0.1) to reflect the fact that the period from April 7, 2021 through July 15, 2021 was dismissed by the Court in its Order certifying a class.

[7]The "value" of the call option on the date of exercise or expiration shall be the closing price of FibroGen common stock on the date of exercise or expiration minus the strike price of the option. If this number is less than zero, the value of the call option is zero.

exercise or expiration, the value per option on the date of exercise or expiration[8] *minus* the sale price.

C.   Open as of the close of trading on July 16, 2021, the Recognized Loss Amount will be ***the lesser of***: (i) the amount of artificial deflation per share on the date of sale (writing) as stated in Table D; or (ii) the closing price on July 16, 2021 (*i.e.*, the "Holding Price") as stated in Table D below *minus* the sale price.

**Maximum Recovery for Options:** The Settlement proceeds available for FibroGen call options purchased/acquired during the Settlement Class Period and FibroGen put options sold (written) during the Settlement Class Period shall be limited to a total amount equal to 2.5% of the Net Settlement Fund.

## ADDITIONAL PROVISIONS

65.   **Recognized Claim:** A Claimant's "Recognized Claim" will be the sum of his, her, or its Recognized Loss Amounts.

66.   **FIFO Matching:** If a Settlement Class Member made more than one purchase/acquisition or sale of FibroGen Securities during the Settlement Class Period, all purchases/acquisitions and sales of the like security will be matched on a First In, First Out ("FIFO") basis. With respect to FibroGen common stock and call options, sales will be matched first against any holdings at the beginning of the Settlement Class Period, and then against purchases/acquisitions in chronological order, beginning with the earliest purchase/acquisition made during the Settlement Class Period. For FibroGen put options, purchases/acquisitions will be matched first to close out positions open at the beginning of the Settlement Class Period, and then against FibroGen put options sold (written) during the Settlement Class Period in chronological order.

67.   **"Purchase/Sale" Prices:** For the purposes of calculations under this Plan of Allocation, "purchase/acquisition price" means the actual price paid, excluding all fees, taxes, and commissions, and "sale price" means the actual amount received, not deducting any fees, taxes, and commissions.

68.   **"Purchase/Sale" Dates:** Purchases or acquisitions and sales of FibroGen Securities will be deemed to have occurred on the "contract" or "trade" date as opposed to the "settlement" or "payment" date. The receipt or grant by gift, inheritance, or operation of law of FibroGen Securities during the Settlement Class Period shall not be deemed a purchase, acquisition, or sale of such FibroGen Securities for the calculation of a Claimant's Recognized Loss Amount, nor shall the receipt or grant be deemed an assignment of any claim relating to the purchase/acquisition/sale of FibroGen Securities unless (i) the donor or decedent purchased or otherwise acquired or sold such FibroGen Securities during the Settlement Class Period; (ii) the instrument of gift or assignment specifically provides that it is intended to transfer such rights; and (iii) no Claim was submitted by or on behalf of the donor, on behalf of the decedent, or by anyone else with respect to such shares of FibroGen Securities.

---

[8] The "value" of the put option on the date of exercise or expiration shall be the strike price of the option minus the closing price of FibroGen common stock on the date of exercise or expiration. If this number is less than zero, the value of the put option is zero.

69. **Short Sales:** With respect to FibroGen common stock, the date of covering a "short sale" is deemed to be the date of purchase or acquisition of the FibroGen common stock. The date of a "short sale" is deemed to be the date of sale of the FibroGen common stock. In accordance with the Plan of Allocation, however, the Recognized Loss Amount on "short sales" and the purchases covering "short sales" is zero.

70. In the event that a Claimant has an opening short position in FibroGen common stock, the earliest purchases or acquisitions of FibroGen common stock during the Settlement Class Period will be matched against such opening short position, and not entitled to a recovery, until that short position is fully covered.

71. If a Settlement Class Member has "written" FibroGen call options, thereby having a short position in the call options, the date of covering such a written position is deemed to be the date of purchase or acquisition of the call option. The date on which the call option was written is deemed to be the date of sale of the call option. In accordance with the Plan of Allocation, however, the Recognized Loss Amount on "written" FibroGen call options is zero. In the event that a Claimant has an opening written position in FibroGen call options, the earliest purchases or acquisitions of like call options during the Settlement Class Period will be matched against such opening written position, and not entitled to a recovery, until that written position is fully covered.

72. If a Settlement Class Member has purchased or acquired FibroGen put options, thereby having a long position in the put options, the date of purchase/acquisition is deemed to be the date of purchase/acquisition of the put option. The date on which the put option was sold, exercised, or expired is deemed to be the date of sale of the put option. In accordance with the Plan of Allocation, however, the Recognized Loss Amount on purchased/acquired FibroGen put options is zero. In the event that a Claimant has an opening long position in FibroGen put options, the earliest sales or dispositions of like put options during the Settlement Class Period will be matched against such opening position, and not entitled to a recovery, until that long position is fully covered.

73. **Common Stock Purchased/Sold Through the Exercise of Options:** With respect to FibroGen common stock purchased or sold through the exercise of an option, the purchase/sale date of the security is the exercise date of the option and the purchase/sale price is the exercise price of the option.

74. **Determination of Distribution Amount:** If the sum total of Recognized Claims of all Authorized Claimants who are entitled to receive payment out of the Net Settlement Fund is greater than the Net Settlement Fund, each Authorized Claimant shall receive his, her, or its *pro rata* share of the Net Settlement Fund. The *pro rata* share will be the Authorized Claimant's Recognized Claim divided by the total of Recognized Claims of all Authorized Claimants, multiplied by the total amount in the Net Settlement Fund.

75. If the Net Settlement Fund exceeds the sum total amount of the Recognized Claims of all Authorized Claimants entitled to receive payment out of the Net Settlement Fund, the excess amount in the Net Settlement Fund will be distributed *pro rata* to all Authorized Claimants entitled to receive payment.

76.   If an Authorized Claimant's Distribution Amount calculates to less than $10.00, no distribution will be made to that Authorized Claimant.

77.   After the initial distribution of the Net Settlement Fund, the Claims Administrator will make reasonable and diligent efforts to have Authorized Claimants cash their distribution checks. To the extent any monies remain in the Net Settlement Fund after the initial distribution, if Lead Counsel, in consultation with the Claims Administrator, determine that it is cost-effective to do so, the Claims Administrator, no fewer than nine (9) months after the initial distribution, will conduct another distribution of the funds remaining after payment of any unpaid fees and expenses incurred in administering the Settlement, including for such distribution, to Authorized Claimants who have cashed their initial distributions and who would receive at least $10.00 from such distribution. Additional distributions to Authorized Claimants who have cashed their prior checks and who would receive at least $10.00 on such additional distributions may occur thereafter if Lead Counsel, in consultation with the Claims Administrator, determine that additional distributions after the deduction of any additional fees and expenses incurred in administering the Settlement would be cost-effective. At such time as it is determined that further distribution of funds remaining in the Net Settlement Fund is not cost-effective, the remaining balance, subject to Court approval, will be contributed to Investor Protection Trust, a non-sectarian, not-for-profit, 501(c)(3) organization devoted to independent and unbiased investor education, research, and support of investor protection efforts.

78.   Payment pursuant to the Plan of Allocation, or such other plan of allocation as may be approved by the Court, will be conclusive against all Authorized Claimants. No person shall have any claim against Plaintiffs, Plaintiffs' Counsel, Plaintiffs' damages or consulting experts, Defendants, Defendants' Counsel, or any of the other Plaintiffs' Releasees or Defendants' Releasees, or the Claims Administrator or other agent designated by Lead Counsel arising from distributions made substantially in accordance with the Stipulation, the plan of allocation approved by the Court, or further Orders of the Court. Plaintiffs, Defendants, and their respective counsel, and all other Defendants' Releasees, shall have no responsibility or liability whatsoever for the investment or distribution of the Settlement Fund or the Net Settlement Fund; the plan of allocation; the determination, administration, calculation, or payment of any Claim or nonperformance of the Claims Administrator; the payment or withholding of Taxes; or any losses incurred in connection therewith.

79.   The Plan of Allocation stated herein is the plan that is being proposed to the Court for its approval by Plaintiffs after consultation with their damages expert. The Court may approve this plan as proposed or it may modify the Plan of Allocation without further notice to the Settlement Class. Any Orders regarding any modification of the Plan of Allocation will be posted on the case website, www.FibroGenSecuritiesLitigation.com.

> ### WHAT PAYMENT ARE THE ATTORNEYS FOR THE SETTLEMENT CLASS SEEKING?
> ### HOW WILL THE LAWYERS BE PAID?

80.   Lead Counsel have not received any payment for their services in pursuing claims against the Defendants on behalf of the Settlement Class, nor have Lead Counsel been reimbursed for their out-of-pocket expenses.  Before final approval of the Settlement, Lead Plaintiffs will apply

to the Court for an award of attorneys' fees for Lead Counsel in an amount not to exceed twenty-five percent (25%) of the Settlement Fund, or $7,125,000 plus interest. It is estimated that such an award would equate to a lodestar multiplier of approximately 0.5. At the same time, Lead Counsel also intends to apply for reimbursement of Litigation Expenses in an amount not to exceed $715,000, including reimbursement of the reasonable costs and expenses incurred by Lead Plaintiffs directly related to their representation of the Settlement Class in an amount not to exceed $45,000. The Court will determine the amount of any award of attorneys' fees or reimbursement of Litigation Expenses. Such sums as may be approved by the Court will be paid from the Settlement Fund. Settlement Class Members are not personally liable for any such fees or expenses.

## WHAT IF I DO NOT WANT TO BE A MEMBER OF THE SETTLEMENT CLASS? HOW DO I EXCLUDE MYSELF?

81.    Each Settlement Class Member will be bound by all determinations and judgments in this lawsuit, whether favorable or unfavorable, unless such person or entity mails or delivers a written request for exclusion from the Settlement Class, addressed to: Exclusions, In re FibroGen, Inc., Securities Litigation, c/o JND Legal Administration, P.O. Box 91482, Seattle, WA 98111. The exclusion request must be received no later than _____, 2024. You will not be able to exclude yourself from the Settlement Class after that date. Each request for exclusion must (a) state the name, address, and telephone number of the person or entity requesting exclusion, and in the case of entities the name and telephone number of the appropriate contact person; (b) state that such person or entity "requests exclusion from the Settlement Class in *In re FibroGen, Inc., Securities Litigation*, Case No. 3:21-cv-02623-EMC"; (c) state the number of FibroGen securities that the person or entity requesting exclusion purchased/acquired and sold during the Settlement Class Period, as well as the dates and prices of each such purchase/acquisition and sale, and the number of shares held at the beginning of the Settlement Class Period; and (d) be signed by the person or entity requesting exclusion or an authorized representative. A request for exclusion shall not be effective unless it provides all the information called for in this paragraph and is received within the time stated above, or is otherwise accepted by the Court.

82.    If you do not want to be part of the Settlement Class, you must follow these instructions for exclusion even if you have a pending, or later file, another lawsuit, arbitration, or other proceeding relating to any Released Plaintiffs' Claim against any of the Defendant Releasees.

83.    If you ask to be excluded from the Settlement Class, you will not be eligible to receive any payment out of the Net Settlement Fund.

84.    FibroGen has the right to terminate the Settlement if valid requests for exclusion are received from persons and entities entitled to be members of the Settlement Class in an amount that exceeds an amount agreed to by Lead Plaintiffs and FibroGen, as set forth in a confidential Supplemental Agreement.

---

**WHEN AND WHERE WILL THE COURT DECIDE WHETHER TO APPROVE THE
SETTLEMENT?  DO I HAVE TO COME TO THE HEARING?
MAY I SPEAK AT THE HEARING IF I DO NOT LIKE THE SETTLEMENT?**

---

85.    **Settlement Class Members do not need to attend the Settlement Hearing.  The Court will consider any submission made in accordance with the provisions below even if a Settlement Class Member does not attend the hearing.  You can participate in the Settlement without attending the Settlement Hearing.**

86.    The Settlement Hearing will be held on _____, 2024 at __:__ _.m., before the Honorable Edward M. Chen at the United States District Court for the Northern District of California, Courtroom 5 – 17th Floor, 450 Golden Gate Avenue, San Francisco, California 94102-3489.  The Court reserves the right to approve the Settlement, the Plan of Allocation, Lead Plaintiffs' motion for an award of attorneys' fees and reimbursement of Litigation Expenses and/or any other matter related to the Settlement at or after the Settlement Hearing with such modification(s) as may be consented to by the Parties to the Stipulation and without further notice to the members of the Settlement Class.

87.    Any Settlement Class Member who or which does not request exclusion may object to the Settlement, the proposed Plan of Allocation or Lead Counsel's motion for an award of attorneys' fees and reimbursement of Litigation Expenses.  In other words, you can ask the Court to deny approval by filing an objection. You cannot ask the Court to order a different settlement; the Court can only approve or reject the settlement. If the Court denies approval, no settlement payments will be sent out, and the lawsuit will continue. If that is what you want to happen, you should object.

88.    Any objection to the proposed Settlement must be in writing. All written objections and supporting papers must clearly identify the case name and number, *In re FibroGen, Inc., Securities Litigation*, Case No. 3:21-cv-02623-EMC (N.D. Cal.).  All written objections and supporting papers must be submitted to the Court either by filing them electronically or in person at any location of the United States District Court for the Northern District of California, or by mailing them to the address set forth below on or before _____, 2024.  If you object, you must file a Claim Form, as described in paragraph 44, to receive your share of the Settlement Fund, but you do not need to file a Claim Form to object.

<u>Clerk's Office</u>

Class Action Clerk
United States District Court
450 Golden Gate Avenue
San Francisco, CA 94102-3489

89.    Any objection (a) must state the name, address, and telephone number of the person or entity objecting and must be signed by the objector; (b) must contain a statement of the Settlement Class Member's objection or objections, and the specific reasons for each objection, including any legal and evidentiary support the Settlement Class Member wishes to bring to the Court's attention; and (c) must include documents sufficient to prove membership in the

23

Settlement Class, including the number of shares of FibroGen securities that the objecting Settlement Class Member purchased/acquired and sold during the Settlement Class Period (*i.e.*, between December 20, 2018 through July 15, 2021, inclusive, as well as the dates and prices of each such purchase/acquisition and sale, and the number of securities held at the beginning of the Settlement Class Period).  You may not object to the Settlement, the Plan of Allocation, or Lead Counsel's motion for attorneys' fees and reimbursement of Litigation Expenses if you exclude yourself from the Settlement Class or if you are not a member of the Settlement Class.

90.    You may file a written objection without having to appear at the Settlement Hearing. You may not, however, appear at the Settlement Hearing to present your objection unless you first file and serve a written objection in accordance with the procedures described above, unless the Court orders otherwise.

91.    If you wish to be heard orally at the hearing in opposition to the approval of the Settlement, the Plan of Allocation, or Lead Counsel's motion for an award of attorneys' fees and reimbursement of Litigation Expenses, and if you timely file and serve a written objection as described above, you must also file a notice of appearance with the Clerk's Office so that it is *received* on or before _____, 2024.  Persons who intend to object and desire to present evidence at the Settlement Hearing must include in their written objection or notice of appearance the identity of any witnesses they may call to testify and exhibits they intend to introduce into evidence at the hearing. Such persons may be heard orally at the discretion of the Court.

92.    If you file a timely written objection, you may, but are not required to, appear at the Final Approval Hearing, either in person or through your own attorney. If you appear through your own attorney, you are responsible for hiring and paying that attorney, and that attorney must file a notice of appearance with the Court on or before _____, 2024, as set forth in Paragraph 91 above.

93.    The Court may adjourn the Settlement Hearing or any adjournment thereof without further written notice of any kind to the Settlement Class.  Settlement Class Members should check the Court's PACER site (defined in Paragraph 96 below) or the Settlement website at www.FibroGenSecuritiesLitigation.com.  Any updates regarding the Settlement Hearing, including any changes to the date of time of the hearing or updates regarding in-person, telephonic or video conference appearances at the hearing, will also be posted to the Settlement website.

94.    **Unless the Court orders otherwise, any Settlement Class Member who does not object in the manner described above will be deemed to have waived any objection and shall be forever foreclosed from making any objection to the proposed Settlement, the proposed Plan of Allocation, or Lead Plaintiffs' motion for an award of attorneys' fees and reimbursement of Litigation Expenses.  Settlement Class Members do not need to appear at the Settlement Hearing or take any other action to indicate their approval.**

| WHAT IF I BOUGHT SHARES ON SOMEONE ELSE'S BEHALF? |
| :---: |

95.    If you purchased or otherwise acquired FibroGen securities during the Settlement Class Period for the beneficial interest of persons or organizations other than yourself, you must either (a) within seven (7) calendar days of receipt of this Notice, request from the Claims

Administrator sufficient copies of the Notice and Claim Form (the "Notice Packet") to forward to all such beneficial owners, and within seven (7) calendar days of receipt of those Notice Packets forward them to all such beneficial owners; or (b) within seven (7) calendar days of *receipt of this Notice, provide a list of the names and addresses of all such beneficial owners to* In re FibroGen, Inc. Securities Litigation, c/o JND Legal Administration, P.O. Box 91482, Seattle, WA 98111, or to FGENSecurities@JNDLA.com. If you choose the second option, the Claims Administrator will send a copy of the Notice and the Claim Form to the beneficial owners. Upon full compliance with these directions, such nominees may obtain reimbursement of their reasonable expenses incurred, by providing the Claims Administrator with proper documentation supporting the expenses for which reimbursement is sought, up to a maximum of $0.10 per name and address provided to the Claims Administrator, mailing of the Notice and Claim Form up to $0.50 per unit, plus postage at the rate used by the Claims Administrator, or emailing of the Notice and Claim Form up to $0.05 per email. Any dispute concerning the reasonableness of reimbursement of costs shall be resolved by the Court. Copies of this Notice and the Claim Form may also be obtained from the website maintained by the Claims Administrator, **www.FibroGenSecuritiesLitigation.com, or by calling the Claims Administrator toll-free at 1-877-595-0137**.

## CAN I SEE THE COURT FILE?  WHOM- SHOULD I CONTACT IF I HAVE QUESTIONS?

96.    This Notice contains only a summary of the terms of the proposed Settlement.  For more detailed information about the matters involved in this Action, you are referred to the papers on file in the Action, including the Stipulation, which are available by accessing the Court docket in this case, for a fee, through the Court's Public Access to Court Electronic Records (PACER) system at https://ecf.cand.uscourts.gov or by visiting the Office of the Clerk, United States District Court for the Northern District of California, 450 Golden Gate Avenue, San Francisco, CA 94102-3489 or any other location of the United States District Court for the Northern District of California, between 9:00 a.m. and 4:00 p.m., Monday through Friday, excluding Court holidays.  Additionally, copies of the Stipulation and any related orders entered by the Court will be posted on the website maintained by the Claims Administrator, www.FibroGenSecuritiesLitigation.com.

Inquiries, other than requests for the Notice and Claim Form, should be directed to:

*In re FibroGen, Inc. Securities Litigation*
c/o JND Legal Administration
P.O. Box 91482
Seattle, WA 98111
www.FibroGenSecuritiesLitigation.com
info@fibrogensecuritieslitigation.com

and/or

SAXENA WHITE P.A.
Lester R. Hooker, Esq.
7777 Glades Road, Suite 300
Boca Raton, FL 33434
(561) 206-6708
lhooker@saxenawhite.com

**DO NOT CALL OR WRITE THE COURT, THE OFFICE OF THE CLERK OF THE COURT, DEFENDANTS, OR THEIR COUNSEL REGARDING THIS NOTICE.**

Dated: _____, 202_

By Order of the Court
United States District Court
Northern District of California

**TABLE A**
**Estimated Alleged Artificial Inflation in FibroGen Common Stock**
**from December 20, 2018 through and including July 15, 2021**

| Date | Artificial Inflation | Date | Artificial Inflation | Date | Artificial Inflation | Date | Artificial Inflation |
|---|---|---|---|---|---|---|---|
| 12/20/2018 | $29.91 | 2/13/2019 | $39.19 | 4/5/2019 | $38.07 | 5/29/2019 | $22.41 |
| 12/21/2018 | $28.35 | 2/14/2019 | $39.19 | 4/8/2019 | $37.27 | 5/30/2019 | $22.81 |
| 12/24/2018 | $28.65 | 2/15/2019 | $39.19 | 4/9/2019 | $37.07 | 5/31/2019 | $22.85 |
| 12/26/2018 | $31.07 | 2/19/2019 | $39.19 | 4/10/2019 | $38.24 | 6/3/2019 | $23.47 |
| 12/27/2018 | $30.86 | 2/20/2019 | $39.19 | 4/11/2019 | $37.16 | 6/4/2019 | $24.35 |
| 12/28/2018 | $31.60 | 2/21/2019 | $39.19 | 4/12/2019 | $33.85 | 6/5/2019 | $24.61 |
| 12/31/2018 | $32.62 | 2/22/2019 | $39.19 | 4/15/2019 | $34.37 | 6/6/2019 | $24.16 |
| 1/2/2019 | $32.29 | 2/25/2019 | $39.19 | 4/16/2019 | $34.19 | 6/7/2019 | $24.41 |
| 1/3/2019 | $30.19 | 2/26/2019 | $39.19 | 4/17/2019 | $32.52 | 6/10/2019 | $25.19 |
| 1/4/2019 | $31.97 | 2/27/2019 | $39.19 | 4/18/2019 | $33.27 | 6/11/2019 | $24.86 |
| 1/7/2019 | $32.94 | 2/28/2019 | $39.19 | 4/22/2019 | $33.01 | 6/12/2019 | $25.35 |
| 1/8/2019 | $34.01 | 3/1/2019 | $39.19 | 4/23/2019 | $33.78 | 6/13/2019 | $26.06 |
| 1/9/2019 | $33.85 | 3/4/2019 | $39.19 | 4/24/2019 | $33.18 | 6/14/2019 | $25.65 |
| 1/10/2019 | $33.77 | 3/5/2019 | $39.19 | 4/25/2019 | $33.75 | 6/17/2019 | $27.12 |
| 1/11/2019 | $33.61 | 3/6/2019 | $39.17 | 4/26/2019 | $34.08 | 6/18/2019 | $27.78 |
| 1/14/2019 | $33.34 | 3/7/2019 | $38.79 | 4/29/2019 | $33.54 | 6/19/2019 | $28.09 |
| 1/15/2019 | $34.61 | 3/8/2019 | $38.32 | 4/30/2019 | $32.94 | 6/20/2019 | $28.02 |
| 1/16/2019 | $35.71 | 3/11/2019 | $38.19 | 5/1/2019 | $32.39 | 6/21/2019 | $27.94 |
| 1/17/2019 | $35.80 | 3/12/2019 | $38.84 | 5/2/2019 | $33.44 | 6/24/2019 | $27.46 |
| 1/18/2019 | $37.16 | 3/13/2019 | $39.19 | 5/3/2019 | $34.67 | 6/25/2019 | $26.66 |
| 1/22/2019 | $36.25 | 3/14/2019 | $39.19 | 5/6/2019 | $34.44 | 6/26/2019 | $26.65 |
| 1/23/2019 | $36.59 | 3/15/2019 | $39.19 | 5/7/2019 | $32.37 | 6/27/2019 | $28.09 |
| 1/24/2019 | $37.68 | 3/18/2019 | $39.19 | 5/8/2019 | $32.71 | 6/28/2019 | $28.49 |
| 1/25/2019 | $38.51 | 3/19/2019 | $39.19 | 5/9/2019 | $32.19 | 7/1/2019 | $28.95 |
| 1/28/2019 | $37.70 | 3/20/2019 | $38.82 | 5/10/2019 | $22.95 | 7/2/2019 | $27.99 |
| 1/29/2019 | $37.82 | 3/21/2019 | $39.19 | 5/13/2019 | $22.16 | 7/3/2019 | $27.97 |
| 1/30/2019 | $39.19 | 3/22/2019 | $37.34 | 5/14/2019 | $23.62 | 7/5/2019 | $27.96 |
| 1/31/2019 | $39.19 | 3/25/2019 | $37.39 | 5/15/2019 | $23.86 | 7/8/2019 | $26.96 |
| 2/1/2019 | $39.19 | 3/26/2019 | $38.37 | 5/16/2019 | $23.54 | 7/9/2019 | $28.27 |
| 2/4/2019 | $39.19 | 3/27/2019 | $37.79 | 5/17/2019 | $22.56 | 7/10/2019 | $28.42 |
| 2/5/2019 | $39.19 | 3/28/2019 | $38.22 | 5/20/2019 | $22.60 | 7/11/2019 | $28.49 |
| 2/6/2019 | $39.19 | 3/29/2019 | $38.31 | 5/21/2019 | $22.73 | 7/12/2019 | $28.76 |
| 2/7/2019 | $39.19 | 4/1/2019 | $39.14 | 5/22/2019 | $22.48 | 7/15/2019 | $29.28 |
| 2/8/2019 | $39.19 | 4/2/2019 | $38.41 | 5/23/2019 | $22.15 | 7/16/2019 | $29.30 |
| 2/11/2019 | $39.19 | 4/3/2019 | $38.88 | 5/24/2019 | $22.43 | 7/17/2019 | $29.14 |
| 2/12/2019 | $39.19 | 4/4/2019 | $37.21 | 5/28/2019 | $22.44 | 7/18/2019 | $30.04 |

| Date | Artificial Inflation | Date | Artificial Inflation | Date | Artificial Inflation | Date | Artificial Inflation |
|---|---|---|---|---|---|---|---|
| 7/19/2019 | $29.15 | 9/10/2019 | $26.05 | 10/30/2019 | $24.73 | 12/20/2019 | $28.57 |
| 7/22/2019 | $30.04 | 9/11/2019 | $27.39 | 10/31/2019 | $24.69 | 12/23/2019 | $28.33 |
| 7/23/2019 | $29.27 | 9/12/2019 | $26.83 | 11/1/2019 | $25.24 | 12/24/2019 | $28.91 |
| 7/24/2019 | $29.70 | 9/13/2019 | $26.17 | 11/4/2019 | $23.34 | 12/26/2019 | $29.48 |
| 7/25/2019 | $29.45 | 9/16/2019 | $26.37 | 11/5/2019 | $25.21 | 12/27/2019 | $28.31 |
| 7/26/2019 | $30.04 | 9/17/2019 | $26.11 | 11/6/2019 | $24.17 | 12/30/2019 | $27.38 |
| 7/29/2019 | $30.01 | 9/18/2019 | $25.83 | 11/7/2019 | $23.95 | 12/31/2019 | $27.05 |
| 7/30/2019 | $30.04 | 9/19/2019 | $25.00 | 11/8/2019 | $26.25 | 1/2/2020 | $27.66 |
| 7/31/2019 | $29.80 | 9/20/2019 | $25.16 | 11/11/2019 | $22.32 | 1/3/2020 | $27.17 |
| 8/1/2019 | $29.66 | 9/23/2019 | $25.76 | 11/12/2019 | $22.43 | 1/6/2020 | $27.34 |
| 8/2/2019 | $29.22 | 9/24/2019 | $24.01 | 11/13/2019 | $21.81 | 1/7/2020 | $26.91 |
| 8/5/2019 | $28.25 | 9/25/2019 | $24.09 | 11/14/2019 | $22.06 | 1/8/2020 | $27.00 |
| 8/6/2019 | $28.72 | 9/26/2019 | $23.82 | 11/15/2019 | $23.33 | 1/9/2020 | $26.81 |
| 8/7/2019 | $28.50 | 9/27/2019 | $23.84 | 11/18/2019 | $23.25 | 1/10/2020 | $26.52 |
| 8/8/2019 | $29.32 | 9/30/2019 | $23.32 | 11/19/2019 | $23.74 | 1/13/2020 | $26.35 |
| 8/9/2019 | $29.14 | 10/1/2019 | $22.87 | 11/20/2019 | $23.83 | 1/14/2020 | $26.98 |
| 8/12/2019 | $28.47 | 10/2/2019 | $22.29 | 11/21/2019 | $23.88 | 1/15/2020 | $26.79 |
| 8/13/2019 | $28.44 | 10/3/2019 | $22.85 | 11/22/2019 | $24.24 | 1/16/2020 | $28.12 |
| 8/14/2019 | $27.34 | 10/4/2019 | $23.18 | 11/25/2019 | $25.43 | 1/17/2020 | $27.97 |
| 8/15/2019 | $27.21 | 10/7/2019 | $23.26 | 11/26/2019 | $25.24 | 1/21/2020 | $27.08 |
| 8/16/2019 | $28.13 | 10/8/2019 | $22.92 | 11/27/2019 | $25.62 | 1/22/2020 | $27.57 |
| 8/19/2019 | $28.64 | 10/9/2019 | $23.07 | 11/29/2019 | $26.72 | 1/23/2020 | $27.85 |
| 8/20/2019 | $28.13 | 10/10/2019 | $23.11 | 12/2/2019 | $27.75 | 1/24/2020 | $26.36 |
| 8/21/2019 | $28.30 | 10/11/2019 | $23.52 | 12/3/2019 | $27.90 | 1/27/2020 | $26.24 |
| 8/22/2019 | $27.45 | 10/14/2019 | $23.98 | 12/4/2019 | $29.50 | 1/28/2020 | $26.44 |
| 8/23/2019 | $26.31 | 10/15/2019 | $24.51 | 12/5/2019 | $29.73 | 1/29/2020 | $26.51 |
| 8/26/2019 | $28.25 | 10/16/2019 | $25.41 | 12/6/2019 | $29.89 | 1/30/2020 | $26.66 |
| 8/27/2019 | $27.58 | 10/17/2019 | $25.55 | 12/9/2019 | $30.04 | 1/31/2020 | $26.39 |
| 8/28/2019 | $28.57 | 10/18/2019 | $24.47 | 12/10/2019 | $30.04 | 2/3/2020 | $27.35 |
| 8/29/2019 | $28.88 | 10/21/2019 | $24.75 | 12/11/2019 | $29.83 | 2/4/2020 | $28.88 |
| 8/30/2019 | $28.16 | 10/22/2019 | $24.98 | 12/12/2019 | $30.04 | 2/5/2020 | $28.98 |
| 9/3/2019 | $26.27 | 10/23/2019 | $24.49 | 12/13/2019 | $29.44 | 2/6/2020 | $28.75 |
| 9/4/2019 | $26.18 | 10/24/2019 | $25.22 | 12/16/2019 | $29.92 | 2/7/2020 | $27.29 |
| 9/5/2019 | $26.52 | 10/25/2019 | $24.99 | 12/17/2019 | $29.95 | 2/10/2020 | $27.46 |
| 9/6/2019 | $26.28 | 10/28/2019 | $25.67 | 12/18/2019 | $29.17 | 2/11/2020 | $28.15 |
| 9/9/2019 | $25.57 | 10/29/2019 | $24.80 | 12/19/2019 | $29.29 | 2/12/2020 | $28.61 |

| Date | Artificial Inflation | Date | Artificial Inflation | Date | Artificial Inflation | Date | Artificial Inflation |
|---|---|---|---|---|---|---|---|
| 2/13/2020 | $28.07 | 4/6/2020 | $22.64 | 5/28/2020 | $22.51 | 7/20/2020 | $28.56 |
| 2/14/2020 | $28.74 | 4/7/2020 | $21.52 | 5/29/2020 | $21.09 | 7/21/2020 | $27.68 |
| 2/18/2020 | $28.27 | 4/8/2020 | $22.19 | 6/1/2020 | $21.22 | 7/22/2020 | $27.27 |
| 2/19/2020 | $28.82 | 4/9/2020 | $22.96 | 6/2/2020 | $21.39 | 7/23/2020 | $27.04 |
| 2/20/2020 | $28.58 | 4/13/2020 | $22.28 | 6/3/2020 | $20.94 | 7/24/2020 | $26.78 |
| 2/21/2020 | $28.68 | 4/14/2020 | $23.09 | 6/4/2020 | $20.62 | 7/27/2020 | $27.34 |
| 2/24/2020 | $27.49 | 4/15/2020 | $22.30 | 6/5/2020 | $20.58 | 7/28/2020 | $25.98 |
| 2/25/2020 | $27.09 | 4/16/2020 | $23.43 | 6/8/2020 | $21.20 | 7/29/2020 | $25.69 |
| 2/26/2020 | $26.15 | 4/17/2020 | $25.03 | 6/9/2020 | $22.57 | 7/30/2020 | $26.09 |
| 2/27/2020 | $25.58 | 4/20/2020 | $24.28 | 6/10/2020 | $23.50 | 7/31/2020 | $25.52 |
| 2/28/2020 | $26.36 | 4/21/2020 | $23.48 | 6/11/2020 | $22.07 | 8/3/2020 | $26.75 |
| 3/2/2020 | $27.21 | 4/22/2020 | $23.91 | 6/12/2020 | $24.07 | 8/4/2020 | $26.39 |
| 3/3/2020 | $24.88 | 4/23/2020 | $24.87 | 6/15/2020 | $24.83 | 8/5/2020 | $26.90 |
| 3/4/2020 | $26.43 | 4/24/2020 | $25.77 | 6/16/2020 | $25.14 | 8/6/2020 | $26.14 |
| 3/5/2020 | $25.35 | 4/27/2020 | $25.16 | 6/17/2020 | $25.62 | 8/7/2020 | $27.87 |
| 3/6/2020 | $25.04 | 4/28/2020 | $24.71 | 6/18/2020 | $25.31 | 8/10/2020 | $28.47 |
| 3/9/2020 | $23.18 | 4/29/2020 | $25.07 | 6/19/2020 | $25.09 | 8/11/2020 | $28.40 |
| 3/10/2020 | $23.89 | 4/30/2020 | $23.26 | 6/22/2020 | $26.54 | 8/12/2020 | $28.44 |
| 3/11/2020 | $22.39 | 5/1/2020 | $22.06 | 6/23/2020 | $27.00 | 8/13/2020 | $28.45 |
| 3/12/2020 | $19.57 | 5/4/2020 | $23.31 | 6/24/2020 | $26.45 | 8/14/2020 | $27.88 |
| 3/13/2020 | $19.91 | 5/5/2020 | $22.90 | 6/25/2020 | $27.01 | 8/17/2020 | $28.22 |
| 3/16/2020 | $15.13 | 5/6/2020 | $22.70 | 6/26/2020 | $25.48 | 8/18/2020 | $27.99 |
| 3/17/2020 | $16.66 | 5/7/2020 | $22.97 | 6/29/2020 | $25.60 | 8/19/2020 | $26.46 |
| 3/18/2020 | $14.69 | 5/8/2020 | $22.97 | 6/30/2020 | $25.56 | 8/20/2020 | $26.06 |
| 3/19/2020 | $16.53 | 5/11/2020 | $24.98 | 7/1/2020 | $26.57 | 8/21/2020 | $26.57 |
| 3/20/2020 | $15.68 | 5/12/2020 | $23.76 | 7/2/2020 | $27.43 | 8/24/2020 | $26.68 |
| 3/23/2020 | $16.86 | 5/13/2020 | $22.76 | 7/6/2020 | $27.20 | 8/25/2020 | $26.32 |
| 3/24/2020 | $18.94 | 5/14/2020 | $22.88 | 7/7/2020 | $26.28 | 8/26/2020 | $26.19 |
| 3/25/2020 | $19.90 | 5/15/2020 | $22.76 | 7/8/2020 | $26.43 | 8/27/2020 | $26.43 |
| 3/26/2020 | $21.33 | 5/18/2020 | $23.04 | 7/9/2020 | $26.37 | 8/28/2020 | $26.83 |
| 3/27/2020 | $21.11 | 5/19/2020 | $22.35 | 7/10/2020 | $26.34 | 8/31/2020 | $28.27 |
| 3/30/2020 | $22.09 | 5/20/2020 | $23.71 | 7/13/2020 | $25.96 | 9/1/2020 | $28.22 |
| 3/31/2020 | $21.91 | 5/21/2020 | $23.07 | 7/14/2020 | $26.52 | 9/2/2020 | $28.61 |
| 4/1/2020 | $20.68 | 5/22/2020 | $23.22 | 7/15/2020 | $28.69 | 9/3/2020 | $26.54 |
| 4/2/2020 | $21.47 | 5/26/2020 | $22.89 | 7/16/2020 | $28.69 | 9/4/2020 | $27.23 |
| 4/3/2020 | $20.54 | 5/27/2020 | $23.31 | 7/17/2020 | $28.63 | 9/8/2020 | $26.59 |

| Date | Artificial Inflation | Date | Artificial Inflation | Date | Artificial Inflation | Date | Artificial Inflation |
|---|---|---|---|---|---|---|---|
| 9/9/2020 | $26.87 | 10/29/2020 | $24.60 | 12/21/2020 | $25.23 | 2/12/2021 | $30.04 |
| 9/10/2020 | $26.49 | 10/30/2020 | $24.20 | 12/22/2020 | $25.51 | 2/16/2021 | $30.04 |
| 9/11/2020 | $26.59 | 11/2/2020 | $24.72 | 12/23/2020 | $25.53 | 2/17/2021 | $30.04 |
| 9/14/2020 | $27.55 | 11/3/2020 | $25.24 | 12/24/2020 | $25.48 | 2/18/2021 | $30.04 |
| 9/15/2020 | $27.79 | 11/4/2020 | $26.40 | 12/28/2020 | $24.54 | 2/19/2021 | $30.04 |
| 9/16/2020 | $28.39 | 11/5/2020 | $26.78 | 12/29/2020 | $23.95 | 2/22/2021 | $30.04 |
| 9/17/2020 | $27.66 | 11/6/2020 | $26.03 | 12/30/2020 | $23.95 | 2/23/2021 | $30.04 |
| 9/18/2020 | $28.07 | 11/9/2020 | $25.75 | 12/31/2020 | $23.39 | 2/24/2021 | $30.04 |
| 9/21/2020 | $27.43 | 11/10/2020 | $25.76 | 1/4/2021 | $23.70 | 2/25/2021 | $30.04 |
| 9/22/2020 | $27.65 | 11/11/2020 | $26.05 | 1/5/2021 | $23.95 | 2/26/2021 | $30.04 |
| 9/23/2020 | $27.75 | 11/12/2020 | $25.86 | 1/6/2021 | $24.16 | 3/1/2021 | $30.04 |
| 9/24/2020 | $26.98 | 11/13/2020 | $26.54 | 1/7/2021 | $24.90 | 3/2/2021 | $18.60 |
| 9/25/2020 | $26.66 | 11/16/2020 | $27.17 | 1/8/2021 | $24.22 | 3/3/2021 | $16.29 |
| 9/28/2020 | $27.12 | 11/17/2020 | $27.82 | 1/11/2021 | $24.22 | 3/4/2021 | $16.29 |
| 9/29/2020 | $26.25 | 11/18/2020 | $26.19 | 1/12/2021 | $24.89 | 3/5/2021 | $16.29 |
| 9/30/2020 | $25.93 | 11/19/2020 | $25.71 | 1/13/2021 | $24.82 | 3/8/2021 | $16.26 |
| 10/1/2020 | $25.84 | 11/20/2020 | $25.54 | 1/14/2021 | $27.16 | 3/9/2021 | $16.29 |
| 10/2/2020 | $26.08 | 11/23/2020 | $25.35 | 1/15/2021 | $27.26 | 3/10/2021 | $16.29 |
| 10/5/2020 | $27.68 | 11/24/2020 | $26.06 | 1/19/2021 | $27.76 | 3/11/2021 | $16.29 |
| 10/6/2020 | $26.88 | 11/25/2020 | $25.24 | 1/20/2021 | $28.16 | 3/12/2021 | $16.29 |
| 10/7/2020 | $28.11 | 11/27/2020 | $25.33 | 1/21/2021 | $28.14 | 3/15/2021 | $16.29 |
| 10/8/2020 | $29.40 | 11/30/2020 | $26.05 | 1/22/2021 | $29.99 | 3/16/2021 | $16.29 |
| 10/9/2020 | $30.04 | 12/1/2020 | $26.01 | 1/25/2021 | $30.04 | 3/17/2021 | $16.29 |
| 10/12/2020 | $30.04 | 12/2/2020 | $26.49 | 1/26/2021 | $30.04 | 3/18/2021 | $15.92 |
| 10/13/2020 | $30.04 | 12/3/2020 | $25.79 | 1/27/2021 | $30.04 | 3/19/2021 | $16.29 |
| 10/14/2020 | $29.56 | 12/4/2020 | $26.33 | 1/28/2021 | $30.04 | 3/22/2021 | $16.29 |
| 10/15/2020 | $29.26 | 12/7/2020 | $26.48 | 1/29/2021 | $30.04 | 3/23/2021 | $15.81 |
| 10/16/2020 | $29.08 | 12/8/2020 | $26.63 | 2/1/2021 | $30.04 | 3/24/2021 | $15.22 |
| 10/19/2020 | $28.86 | 12/9/2020 | $25.90 | 2/2/2021 | $30.04 | 3/25/2021 | $15.26 |
| 10/20/2020 | $28.69 | 12/10/2020 | $25.40 | 2/3/2021 | $30.04 | 3/26/2021 | $15.55 |
| 10/21/2020 | $28.44 | 12/11/2020 | $25.86 | 2/4/2021 | $30.04 | 3/29/2021 | $15.11 |
| 10/22/2020 | $28.76 | 12/14/2020 | $27.69 | 2/5/2021 | $30.04 | 3/30/2021 | $15.16 |
| 10/23/2020 | $26.87 | 12/15/2020 | $26.27 | 2/8/2021 | $30.04 | 3/31/2021 | $16.29 |
| 10/26/2020 | $25.20 | 12/16/2020 | $26.46 | 2/9/2021 | $30.04 | 4/1/2021 | $16.29 |
| 10/27/2020 | $24.67 | 12/17/2020 | $27.90 | 2/10/2021 | $30.04 | 4/5/2021 | $16.29 |
| 10/28/2020 | $24.19 | 12/18/2020 | $27.73 | 2/11/2021 | $30.04 | 4/6/2021 | $16.29 |
| | | | | | | 4/7/2021 | $2.13 |
| 4/8/2021 through 7/15/2021 | | | | | | $1.11 | |

**TABLE B**

**90-Day Look-Back Table for FibroGen Common Stock**
**(Closing Price and Average Closing Price: July 16, 2021 – October 13, 2021)**

| Date | Closing Price | Average Closing Price Between July 16, 2021 and Date Shown | Date | Closing Price | Average Closing Price Between July 16, 2021 and Date Shown |
|---|---|---|---|---|---|
| 7/16/2021 | $14.35 | $14.35 | 8/31/2021 | $11.63 | $12.81 |
| 7/19/2021 | $13.72 | $14.04 | 9/1/2021 | $12.39 | $12.80 |
| 7/20/2021 | $14.41 | $14.16 | 9/2/2021 | $12.50 | $12.79 |
| 7/21/2021 | $14.19 | $14.17 | 9/3/2021 | $12.40 | $12.78 |
| 7/22/2021 | $13.64 | $14.06 | 9/7/2021 | $12.41 | $12.77 |
| 7/23/2021 | $13.27 | $13.93 | 9/8/2021 | $12.00 | $12.75 |
| 7/26/2021 | $13.08 | $13.81 | 9/9/2021 | $11.79 | $12.72 |
| 7/27/2021 | $13.05 | $13.71 | 9/10/2021 | $11.34 | $12.69 |
| 7/28/2021 | $13.31 | $13.67 | 9/13/2021 | $11.73 | $12.67 |
| 7/29/2021 | $12.84 | $13.59 | 9/14/2021 | $11.53 | $12.64 |
| 7/30/2021 | $13.00 | $13.53 | 9/15/2021 | $11.70 | $12.62 |
| 8/2/2021 | $13.32 | $13.52 | 9/16/2021 | $11.72 | $12.60 |
| 8/3/2021 | $13.28 | $13.50 | 9/17/2021 | $11.69 | $12.58 |
| 8/4/2021 | $13.40 | $13.49 | 9/20/2021 | $11.27 | $12.55 |
| 8/5/2021 | $13.84 | $13.51 | 9/21/2021 | $11.24 | $12.52 |
| 8/6/2021 | $13.73 | $13.53 | 9/22/2021 | $10.18 | $12.47 |
| 8/9/2021 | $13.79 | $13.54 | 9/23/2021 | $10.74 | $12.44 |
| 8/10/2021 | $13.19 | $13.52 | 9/24/2021 | $10.80 | $12.40 |
| 8/11/2021 | $12.43 | $13.47 | 9/27/2021 | $10.81 | $12.37 |
| 8/12/2021 | $12.59 | $13.42 | 9/28/2021 | $10.42 | $12.34 |
| 8/13/2021 | $12.40 | $13.37 | 9/29/2021 | $10.31 | $12.30 |
| 8/16/2021 | $12.02 | $13.31 | 9/30/2021 | $10.22 | $12.26 |
| 8/17/2021 | $11.97 | $13.25 | 10/1/2021 | $10.34 | $12.22 |
| 8/18/2021 | $12.06 | $13.20 | 10/4/2021 | $9.93 | $12.18 |
| 8/19/2021 | $11.47 | $13.13 | 10/5/2021 | $10.25 | $12.15 |
| 8/20/2021 | $12.11 | $13.09 | 10/6/2021 | $10.20 | $12.12 |
| 8/23/2021 | $12.21 | $13.06 | 10/7/2021 | $10.34 | $12.09 |
| 8/24/2021 | $12.10 | $13.03 | 10/8/2021 | $10.42 | $12.06 |
| 8/25/2021 | $11.87 | $12.99 | 10/11/2021 | $10.50 | $12.03 |
| 8/26/2021 | $11.45 | $12.94 | 10/12/2021 | $10.62 | $12.01 |
| 8/27/2021 | $11.55 | $12.89 | 10/13/2021 | $11.05 | $11.99 |
| 8/30/2021 | $11.50 | $12.85 | | | |

**TABLE C**

**Estimated Alleged Artificial Inflation in FibroGen Call Options (per share)
from December 20, 2018 through and including July 15, 2021, and Holding Prices**

| Expiration Date | Strike Price | Call Option Artificial Inflation per Share During Trading Periods | | | | | | Holding Price |
|---|---|---|---|---|---|---|---|---|
| | | 12/20/2018 through 5/9/2019 | 5/10/2019 through 3/1/2021 | 3/2/2021 | 3/3/2021 through 4/6/2021 | 4/7/2021 | 4/8/2021 through 7/15/2021 | |
| 5/17/2019 | $30.00 | $9.36 | $0.00 | | | | | |
| 5/17/2019 | $35.00 | $8.75 | $0.00 | | | | | |
| 5/17/2019 | $40.00 | $6.82 | $0.00 | | | | | |
| 5/17/2019 | $45.00 | $3.65 | $0.00 | | | | | |
| 5/17/2019 | $50.00 | $1.68 | $0.00 | | | | | |
| 5/17/2019 | $55.00 | $0.91 | $0.00 | | | | | |
| 5/17/2019 | $60.00 | $0.47 | $0.00 | | | | | |
| 5/17/2019 | $65.00 | $0.27 | $0.00 | | | | | |
| 5/17/2019 | $70.00 | $0.15 | $0.00 | | | | | |
| 5/17/2019 | $75.00 | $0.32 | $0.00 | | | | | |
| 5/17/2019 | $80.00 | $2.34 | $0.00 | | | | | |
| 5/17/2019 | $85.00 | $2.34 | $0.00 | | | | | |
| 6/21/2019 | $25.00 | $9.61 | $0.00 | | | | | |
| 6/21/2019 | $30.00 | $9.85 | $0.00 | | | | | |
| 6/21/2019 | $35.00 | $9.46 | $0.00 | | | | | |
| 6/21/2019 | $40.00 | $7.83 | $0.00 | | | | | |
| 6/21/2019 | $45.00 | $6.13 | $0.00 | | | | | |
| 6/21/2019 | $50.00 | $4.61 | $0.00 | | | | | |
| 6/21/2019 | $55.00 | $2.98 | $0.00 | | | | | |
| 6/21/2019 | $60.00 | $1.75 | $0.00 | | | | | |
| 6/21/2019 | $65.00 | $1.11 | $0.00 | | | | | |
| 6/21/2019 | $70.00 | $0.67 | $0.00 | | | | | |
| 6/21/2019 | $75.00 | $0.57 | $0.00 | | | | | |
| 9/20/2019 | $30.00 | $8.97 | $0.00 | | | | | |
| 9/20/2019 | $35.00 | $7.88 | $0.00 | | | | | |
| 9/20/2019 | $40.00 | $7.29 | $0.00 | | | | | |
| 9/20/2019 | $45.00 | $5.86 | $0.00 | | | | | |
| 9/20/2019 | $50.00 | $4.73 | $0.00 | | | | | |
| 9/20/2019 | $55.00 | $3.94 | $0.00 | | | | | |
| 9/20/2019 | $60.00 | $3.03 | $0.00 | | | | | |
| 9/20/2019 | $65.00 | $2.29 | $0.00 | | | | | |
| 9/20/2019 | $70.00 | $1.72 | $0.00 | | | | | |
| 9/20/2019 | $75.00 | $1.26 | $0.00 | | | | | |
| 9/20/2019 | $80.00 | $0.76 | $0.00 | | | | | |
| 12/20/2019 | $50.00 | $4.41 | $0.00 | | | | | |
| 12/20/2019 | $55.00 | $3.47 | $0.00 | | | | | |
| 12/20/2019 | $70.00 | $1.82 | $0.00 | | | | | |
| 3/19/2021 | $25.00 | | $13.62 | $2.24 | $0.00 | | | |
| 3/19/2021 | $27.50 | | $13.21 | $1.92 | $0.00 | | | |

| Expiration Date | Strike Price | Call Option Artificial Inflation per Share During Trading Periods | | | | | | Holding Price |
|---|---|---|---|---|---|---|---|---|
| | | 12/20/2018 through 5/9/2019 | 5/10/2019 through 3/1/2021 | 3/2/2021 | 3/3/2021 through 4/6/2021 | 4/7/2021 | 4/8/2021 through 7/15/2021 | |
| 3/19/2021 | $30.00 | | $12.73 | $1.99 | $0.00 | | | |
| 3/19/2021 | $32.50 | | $13.14 | $1.99 | $0.00 | | | |
| 3/19/2021 | $35.00 | | $12.48 | $1.37 | $0.00 | | | |
| 3/19/2021 | $37.50 | | $11.35 | $1.27 | $0.00 | | | |
| 3/19/2021 | $40.00 | | $10.02 | $0.61 | $0.00 | | | |
| 3/19/2021 | $42.50 | | $8.33 | $0.34 | $0.00 | | | |
| 3/19/2021 | $45.00 | | $7.92 | $0.19 | $0.00 | | | |
| 3/19/2021 | $47.50 | | $5.35 | $0.16 | $0.00 | | | |
| 3/19/2021 | $50.00 | | $3.75 | $0.08 | $0.00 | | | |
| 3/19/2021 | $52.50 | | $2.67 | $0.08 | $0.00 | | | |
| 3/19/2021 | $55.00 | | $3.02 | $0.08 | $0.00 | | | |
| 3/19/2021 | $57.50 | | $1.61 | $0.05 | $0.00 | | | |
| 3/19/2021 | $60.00 | | $0.62 | $0.05 | $0.00 | | | |
| 3/19/2021 | $65.00 | | $0.92 | $0.02 | $0.00 | | | |
| 3/19/2021 | $70.00 | | $0.31 | $0.06 | $0.00 | | | |
| 3/19/2021 | $75.00 | | $2.20 | $0.00 | $0.00 | | | |
| 4/16/2021 | $17.50 | | | | $14.38 | $1.05 | $0.00 | |
| 4/16/2021 | $20.00 | | | | $12.90 | $0.55 | $0.00 | |
| 4/16/2021 | $22.50 | | | | $10.96 | $0.15 | $0.00 | |
| 4/16/2021 | $25.00 | | $22.45 | $11.07 | $8.83 | $0.13 | $0.00 | |
| 4/16/2021 | $27.50 | | $20.18 | $8.75 | $6.51 | $0.05 | $0.00 | |
| 4/16/2021 | $30.00 | | $17.49 | $6.11 | $4.25 | $0.00 | $0.00 | |
| 4/16/2021 | $32.50 | | $14.28 | $3.31 | $1.91 | $0.08 | $0.00 | |
| 4/16/2021 | $35.00 | | $12.21 | $2.16 | $0.79 | $0.03 | $0.00 | |
| 4/16/2021 | $37.50 | | $11.33 | $1.87 | $0.43 | $0.00 | $0.00 | |
| 4/16/2021 | $40.00 | | $10.23 | $0.93 | $0.17 | $0.03 | $0.00 | |
| 4/16/2021 | $42.50 | | $9.24 | $1.02 | $0.45 | $0.00 | $0.00 | |
| 4/16/2021 | $45.00 | | $7.41 | $0.52 | $0.05 | $0.00 | $0.00 | |
| 4/16/2021 | $47.50 | | $5.88 | $0.14 | $0.14 | $0.00 | $0.00 | |
| 4/16/2021 | $50.00 | | $5.42 | $0.55 | $0.05 | $0.00 | $0.00 | |
| 4/16/2021 | $52.50 | | $3.72 | $0.46 | $0.29 | $0.00 | $0.00 | |
| 4/16/2021 | $55.00 | | $3.24 | $1.13 | $0.12 | $0.00 | $0.00 | |
| 4/16/2021 | $60.00 | | $2.90 | $2.37 | $2.35 | $0.00 | $0.00 | |
| 4/16/2021 | $62.50 | | $0.94 | $0.00 | $0.00 | $0.00 | $0.00 | |
| 4/16/2021 | $70.00 | | $2.40 | $2.40 | $2.35 | $0.00 | $0.00 | |
| 5/21/2021 | $17.50 | | | | $13.11 | $0.38 | $0.00 | |
| 5/21/2021 | $20.00 | | | | $11.82 | $0.35 | $0.00 | |
| 5/21/2021 | $22.50 | | | | $10.69 | $0.50 | $0.00 | |
| 5/21/2021 | $25.00 | | | | $8.62 | $0.40 | $0.00 | |
| 5/21/2021 | $27.50 | | | | $7.02 | $0.18 | $0.00 | |
| 5/21/2021 | $30.00 | | | | $5.25 | $0.05 | $0.00 | |
| 5/21/2021 | $32.50 | | | | $3.85 | $0.00 | $0.00 | |
| 5/21/2021 | $35.00 | | | | $2.88 | $0.08 | $0.00 | |
| 5/21/2021 | $37.50 | | | | $2.47 | $0.28 | $0.00 | |

| Expiration Date | Strike Price | Call Option Artificial Inflation per Share During Trading Periods | | | | | | Holding Price |
|---|---|---|---|---|---|---|---|---|
| | | 12/20/2018 through 5/9/2019 | 5/10/2019 through 3/1/2021 | 3/2/2021 | 3/3/2021 through 4/6/2021 | 4/7/2021 | 4/8/2021 through 7/15/2021 | |
| 5/21/2021 | $40.00 | | | | $2.61 | $0.00 | $0.00 | |
| 5/21/2021 | $42.50 | | | | $2.09 | $0.00 | $0.00 | |
| 5/21/2021 | $45.00 | | | | $0.45 | $0.00 | $0.00 | |
| 5/21/2021 | $50.00 | | | | $0.72 | $0.08 | $0.00 | |
| 6/18/2021 | $17.50 | | | | $12.63 | $0.23 | $0.00 | |
| 6/18/2021 | $20.00 | | $25.42 | $14.04 | $11.84 | $0.58 | $0.00 | |
| 6/18/2021 | $22.50 | | $23.42 | $12.40 | $10.23 | $0.18 | $0.00 | |
| 6/18/2021 | $25.00 | | $20.82 | $10.68 | $8.72 | $0.10 | $0.00 | |
| 6/18/2021 | $27.50 | | $19.74 | $9.60 | $7.61 | $0.20 | $0.00 | |
| 6/18/2021 | $30.00 | | $17.63 | $7.72 | $6.39 | $0.00 | $0.00 | |
| 6/18/2021 | $32.50 | | $16.25 | $6.98 | $5.27 | $0.00 | $0.00 | |
| 6/18/2021 | $35.00 | | $13.91 | $5.10 | $3.64 | $0.20 | $0.00 | |
| 6/18/2021 | $37.50 | | $13.78 | $3.96 | $3.25 | $0.00 | $0.00 | |
| 6/18/2021 | $40.00 | | $12.47 | $4.44 | $2.86 | $0.18 | $0.00 | |
| 6/18/2021 | $42.50 | | $10.04 | $2.60 | $1.85 | $0.00 | $0.00 | |
| 6/18/2021 | $45.00 | | $9.04 | $2.57 | $1.48 | $0.05 | $0.00 | |
| 6/18/2021 | $47.50 | | $8.15 | $3.24 | $1.92 | $0.00 | $0.00 | |
| 6/18/2021 | $50.00 | | $7.30 | $1.84 | $1.16 | $0.00 | $0.00 | |
| 6/18/2021 | $52.50 | | $4.92 | $0.17 | $0.17 | $0.00 | $0.00 | |
| 6/18/2021 | $55.00 | | $5.56 | $1.34 | $1.34 | $0.08 | $0.00 | |
| 6/18/2021 | $57.50 | | $4.51 | $1.00 | $1.00 | $0.00 | $0.00 | |
| 6/18/2021 | $60.00 | | $3.70 | $0.40 | $0.40 | $0.00 | $0.00 | |
| 6/18/2021 | $65.00 | | $3.86 | $2.07 | $2.07 | $0.00 | $0.00 | |
| 6/18/2021 | $70.00 | | $2.68 | $2.24 | $2.24 | $0.05 | $0.00 | |
| 6/18/2021 | $80.00 | | $3.50 | $2.21 | $2.21 | $0.00 | $0.00 | |
| 7/16/2021 | $10.00 | | | | | | $1.08 | $4.23 |
| 7/16/2021 | $12.50 | | | | | $1.84 | $1.04 | $2.18 |
| 7/16/2021 | $15.00 | | | | | $1.65 | $0.95 | $0.03 |
| 7/16/2021 | $17.50 | | | | | $0.96 | $0.76 | $0.03 |
| 7/16/2021 | $20.00 | | | | | $0.58 | $0.58 | $0.03 |
| 7/16/2021 | $22.50 | | | | | $0.41 | $0.41 | $0.03 |
| 7/16/2021 | $25.00 | | | | | $0.31 | $0.31 | $0.03 |
| 7/16/2021 | $27.50 | | | | | $0.38 | $0.20 | $0.03 |
| 7/16/2021 | $30.00 | | | | | $0.27 | $0.12 | $0.03 |
| 7/16/2021 | $32.50 | | | | | $0.26 | $0.08 | $0.03 |
| 7/16/2021 | $35.00 | | | | | $0.03 | $0.03 | $0.03 |
| 7/16/2021 | $37.50 | | | | | | $0.03 | $0.03 |
| 7/16/2021 | $40.00 | | | | | | $0.01 | $0.03 |
| 8/20/2021 | $20.00 | | | | | | $0.61 | $0.45 |
| 8/20/2021 | $22.50 | | | | | | $0.44 | $0.20 |
| 8/20/2021 | $25.00 | | | | | | $0.41 | $0.13 |
| 8/20/2021 | $27.50 | | | | | | $0.34 | $0.08 |
| 8/20/2021 | $30.00 | | | | | | $0.23 | $0.08 |
| 8/20/2021 | $32.50 | | | | | | $0.13 | $0.05 |

| Expiration Date | Strike Price | Call Option Artificial Inflation per Share During Trading Periods | | | | | | Holding Price |
|---|---|---|---|---|---|---|---|---|
| | | 12/20/2018 through 5/9/2019 | 5/10/2019 through 3/1/2021 | 3/2/2021 | 3/3/2021 through 4/6/2021 | 4/7/2021 | 4/8/2021 through 7/15/2021 | |
| 8/20/2021 | $35.00 | | | | | | $0.15 | $0.05 |
| 8/20/2021 | $37.50 | | | | | | $0.12 | $0.03 |
| 8/20/2021 | $40.00 | | | | | | $0.07 | $0.03 |
| 9/17/2021 | $10.00 | | | | | | $1.02 | $4.90 |
| 9/17/2021 | $12.50 | | | | | | $0.95 | $3.10 |
| 9/17/2021 | $15.00 | | | | | | $0.85 | $1.98 |
| 9/17/2021 | $17.50 | | | | $12.80 | $1.40 | $0.70 | $1.43 |
| 9/17/2021 | $20.00 | | $24.02 | $13.74 | $11.44 | $1.03 | $0.63 | $0.83 |
| 9/17/2021 | $22.50 | | $21.97 | $11.69 | $9.80 | $0.53 | $0.48 | $0.60 |
| 9/17/2021 | $25.00 | | $20.57 | $11.25 | $9.20 | $0.81 | $0.38 | $0.53 |
| 9/17/2021 | $27.50 | | $18.31 | $9.04 | $7.83 | $0.32 | $0.32 | $0.50 |
| 9/17/2021 | $30.00 | | $17.47 | $8.79 | $6.93 | $0.40 | $0.22 | $0.33 |
| 9/17/2021 | $32.50 | | $15.17 | $7.14 | $5.96 | $0.21 | $0.21 | $0.33 |
| 9/17/2021 | $35.00 | | $15.20 | $7.40 | $6.00 | $0.58 | $0.15 | $0.25 |
| 9/17/2021 | $37.50 | | $13.04 | $5.51 | $4.45 | $0.13 | $0.13 | $0.20 |
| 9/17/2021 | $40.00 | | $11.60 | $4.99 | $4.24 | $0.23 | $0.08 | $0.23 |
| 9/17/2021 | $42.50 | | $10.68 | $4.58 | $3.15 | $0.09 | $0.06 | $0.23 |
| 9/17/2021 | $45.00 | | $8.84 | $3.24 | $2.00 | $0.57 | $0.04 | $0.23 |
| 9/17/2021 | $47.50 | | $9.44 | $3.29 | $2.11 | $0.04 | $0.04 | $0.23 |
| 9/17/2021 | $50.00 | | $8.31 | $2.57 | $2.23 | $0.04 | $0.04 | $0.23 |
| 9/17/2021 | $52.50 | | $7.49 | $3.04 | $2.17 | $0.22 | $0.02 | $0.30 |
| 9/17/2021 | $55.00 | | $5.41 | $1.32 | $0.98 | $0.01 | $0.01 | $0.30 |
| 9/17/2021 | $57.50 | | $5.08 | $1.43 | $1.00 | $0.03 | $0.03 | $0.15 |
| 9/17/2021 | $60.00 | | $4.59 | $2.25 | $1.82 | $0.01 | $0.01 | $0.30 |
| 9/17/2021 | $62.50 | | $4.72 | $2.01 | $1.47 | $0.00 | $0.00 | $0.38 |
| 9/17/2021 | $65.00 | | $5.15 | $2.40 | $2.18 | $0.23 | $0.03 | $0.10 |
| 9/17/2021 | $70.00 | | $3.24 | $1.95 | $1.39 | $0.01 | $0.01 | $0.28 |
| 9/17/2021 | $75.00 | | $1.66 | $0.19 | $0.19 | $0.00 | $0.00 | $0.55 |
| 9/17/2021 | $80.00 | | $2.15 | $1.78 | $1.33 | $0.00 | $0.00 | $0.55 |
| 12/17/2021 | $10.00 | | | | | | $0.96 | $5.55 |
| 12/17/2021 | $12.50 | | | | | | $0.85 | $4.45 |
| 12/17/2021 | $15.00 | | | | | | $0.81 | $3.05 |
| 12/17/2021 | $17.50 | | | | | | $0.71 | $2.08 |
| 12/17/2021 | $20.00 | | | | | | $0.61 | $1.90 |
| 12/17/2021 | $22.50 | | | | | | $0.48 | $1.48 |
| 12/17/2021 | $25.00 | | | | | | $0.45 | $1.38 |
| 12/17/2021 | $27.50 | | | | | | $0.33 | $1.08 |
| 12/17/2021 | $30.00 | | | | | | $0.28 | $0.95 |
| 12/17/2021 | $32.50 | | | | | | $0.24 | $0.85 |
| 12/17/2021 | $35.00 | | | | | | $0.21 | $0.60 |
| 12/17/2021 | $40.00 | | | | | | $0.15 | $0.55 |

**TABLE D**

**Estimated Alleged Artificial Deflation in FibroGen Put Options (per share)
from December 20, 2018 through and including July 15, 2021, and Holding Prices**

| Expiration Date | Strike Price | Put Option Artificial Deflation per Share During Trading Periods | | | | | | Holding Price |
|---|---|---|---|---|---|---|---|---|
| | | 12/20/2018 through 5/9/2019 | 5/10/2019 through 3/1/2021 | 3/2/2021 | 3/3/2021 through 4/6/2021 | 4/7/2021 | 4/8/2021 through 7/15/2021 | |
| 5/17/2019 | $35.00 | $0.25 | $0.00 | | | | | |
| 5/17/2019 | $40.00 | $2.27 | $0.00 | | | | | |
| 5/17/2019 | $45.00 | $5.64 | $0.00 | | | | | |
| 5/17/2019 | $50.00 | $7.74 | $0.00 | | | | | |
| 5/17/2019 | $55.00 | $8.62 | $0.00 | | | | | |
| 5/17/2019 | $60.00 | $8.92 | $0.00 | | | | | |
| 5/17/2019 | $65.00 | $9.12 | $0.00 | | | | | |
| 5/17/2019 | $70.00 | $9.21 | $0.00 | | | | | |
| 6/21/2019 | $35.00 | $0.32 | $0.00 | | | | | |
| 6/21/2019 | $40.00 | $1.48 | $0.00 | | | | | |
| 6/21/2019 | $45.00 | $3.35 | $0.00 | | | | | |
| 6/21/2019 | $50.00 | $4.98 | $0.00 | | | | | |
| 6/21/2019 | $55.00 | $6.26 | $0.00 | | | | | |
| 6/21/2019 | $60.00 | $7.24 | $0.00 | | | | | |
| 6/21/2019 | $65.00 | $7.93 | $0.00 | | | | | |
| 6/21/2019 | $70.00 | $8.62 | $0.00 | | | | | |
| 6/21/2019 | $75.00 | $9.07 | $0.00 | | | | | |
| 9/20/2019 | $30.00 | $0.54 | $0.00 | | | | | |
| 9/20/2019 | $35.00 | $1.38 | $0.00 | | | | | |
| 9/20/2019 | $40.00 | $2.37 | $0.00 | | | | | |
| 9/20/2019 | $45.00 | $3.15 | $0.00 | | | | | |
| 9/20/2019 | $50.00 | $4.34 | $0.00 | | | | | |
| 9/20/2019 | $55.00 | $5.37 | $0.00 | | | | | |
| 9/20/2019 | $60.00 | $6.36 | $0.00 | | | | | |
| 9/20/2019 | $65.00 | $6.95 | $0.00 | | | | | |
| 9/20/2019 | $70.00 | $7.49 | $0.00 | | | | | |
| 9/20/2019 | $75.00 | $8.03 | $0.00 | | | | | |
| 9/20/2019 | $80.00 | $8.38 | $0.00 | | | | | |
| 12/20/2019 | $25.00 | $0.74 | $0.00 | | | | | |
| 12/20/2019 | $30.00 | $1.31 | $0.00 | | | | | |
| 12/20/2019 | $35.00 | $2.07 | $0.00 | | | | | |
| 12/20/2019 | $40.00 | $2.96 | $0.00 | | | | | |
| 12/20/2019 | $45.00 | $3.94 | $0.00 | | | | | |
| 12/20/2019 | $55.00 | $5.42 | $0.00 | | | | | |
| 12/20/2019 | $65.00 | $7.29 | $0.00 | | | | | |
| 3/19/2021 | $22.50 | | $1.84 | $0.00 | $0.00 | | | |
| 3/19/2021 | $25.00 | | $0.02 | $0.02 | $0.00 | | | |
| 3/19/2021 | $27.50 | | $0.02 | $0.02 | $0.00 | | | |
| 3/19/2021 | $30.00 | | $0.02 | $0.02 | $0.00 | | | |

| Expiration Date | Strike Price | Put Option Artificial Deflation per Share During Trading Periods | | | | | | Holding Price |
|---|---|---|---|---|---|---|---|---|
| | | 12/20/2018 through 5/9/2019 | 5/10/2019 through 3/1/2021 | 3/2/2021 | 3/3/2021 through 4/6/2021 | 4/7/2021 | 4/8/2021 through 7/15/2021 | |
| 3/19/2021 | $32.50 | | $0.61 | $0.61 | $0.00 | | | |
| 3/19/2021 | $35.00 | | $1.17 | $0.48 | $0.00 | | | |
| 3/19/2021 | $37.50 | | $1.86 | $0.16 | $0.00 | | | |
| 3/19/2021 | $40.00 | | $3.72 | $1.88 | $0.00 | | | |
| 3/19/2021 | $42.50 | | $4.79 | $1.58 | $0.00 | | | |
| 3/19/2021 | $45.00 | | $6.78 | $2.05 | $0.00 | | | |
| 3/19/2021 | $47.50 | | $8.42 | $2.27 | $0.00 | | | |
| 3/19/2021 | $50.00 | | $9.23 | $1.89 | $0.00 | | | |
| 3/19/2021 | $52.50 | | $10.28 | $2.20 | $0.00 | | | |
| 3/19/2021 | $55.00 | | $12.02 | $2.24 | $0.00 | | | |
| 3/19/2021 | $60.00 | | $12.50 | $2.17 | $0.00 | | | |
| 3/19/2021 | $65.00 | | $12.73 | $2.17 | $0.00 | | | |
| 4/16/2021 | $17.50 | | | | $0.51 | $0.08 | $0.00 | |
| 4/16/2021 | $20.00 | | | | $1.75 | $0.40 | $0.00 | |
| 4/16/2021 | $22.50 | | | | $3.75 | $0.80 | $0.00 | |
| 4/16/2021 | $25.00 | | $6.17 | $6.17 | $5.70 | $0.90 | $0.00 | |
| 4/16/2021 | $27.50 | | $10.41 | $10.41 | $9.21 | $1.80 | $0.00 | |
| 4/16/2021 | $30.00 | | $11.98 | $11.98 | $11.48 | $2.00 | $0.00 | |
| 4/16/2021 | $32.50 | | $14.74 | $13.98 | $13.76 | $1.95 | $0.00 | |
| 4/16/2021 | $35.00 | | $15.66 | $14.70 | $14.16 | $0.90 | $0.00 | |
| 4/16/2021 | $37.50 | | $17.29 | $16.12 | $14.86 | $1.60 | $0.00 | |
| 4/16/2021 | $40.00 | | $19.00 | $17.35 | $15.38 | $1.65 | $0.00 | |
| 4/16/2021 | $42.50 | | $20.35 | $17.11 | $15.34 | $1.70 | $0.00 | |
| 4/16/2021 | $45.00 | | $21.26 | $17.54 | $15.24 | $1.60 | $0.00 | |
| 4/16/2021 | $47.50 | | $22.18 | $16.95 | $15.03 | $1.35 | $0.00 | |
| 4/16/2021 | $50.00 | | $23.11 | $17.23 | $15.03 | $1.35 | $0.00 | |
| 4/16/2021 | $60.00 | | $26.01 | $17.24 | $14.88 | $1.10 | $0.00 | |
| 5/21/2021 | $17.50 | | | | $1.12 | $0.05 | $0.00 | |
| 5/21/2021 | $20.00 | | | | $2.27 | $0.30 | $0.00 | |
| 5/21/2021 | $22.50 | | | | $3.78 | $0.45 | $0.00 | |
| 5/21/2021 | $25.00 | | | | $6.01 | $0.50 | $0.00 | |
| 5/21/2021 | $27.50 | | | | $7.84 | $1.45 | $0.00 | |
| 5/21/2021 | $32.50 | | | | $10.39 | $1.05 | $0.00 | |
| 5/21/2021 | $35.00 | | | | $11.56 | $0.35 | $0.00 | |
| 5/21/2021 | $40.00 | | | | $13.79 | $1.10 | $0.00 | |
| 5/21/2021 | $45.00 | | | | $14.68 | $1.00 | $0.00 | |
| 6/18/2021 | $20.00 | | $3.15 | $3.15 | $2.50 | $0.55 | $0.00 | |
| 6/18/2021 | $22.50 | | $4.89 | $4.89 | $3.96 | $0.35 | $0.00 | |
| 6/18/2021 | $25.00 | | $6.53 | $6.53 | $6.53 | $1.35 | $0.00 | |
| 6/18/2021 | $27.50 | | $6.99 | $6.99 | $6.99 | $1.15 | $0.00 | |
| 6/18/2021 | $30.00 | | $10.37 | $10.37 | $9.25 | $1.60 | $0.00 | |
| 6/18/2021 | $32.50 | | $11.55 | $11.16 | $9.87 | $0.65 | $0.00 | |
| 6/18/2021 | $35.00 | | $13.12 | $12.48 | $10.79 | $0.65 | $0.00 | |
| 6/18/2021 | $37.50 | | $14.88 | $12.98 | $11.58 | $0.75 | $0.00 | |

| Expiration Date | Strike Price | Put Option Artificial Deflation per Share During Trading Periods | | | | | | Holding Price |
|---|---|---|---|---|---|---|---|---|
| | | 12/20/2018 through 5/9/2019 | 5/10/2019 through 3/1/2021 | 3/2/2021 | 3/3/2021 through 4/6/2021 | 4/7/2021 | 4/8/2021 through 7/15/2021 | |
| 6/18/2021 | $40.00 | | $16.46 | $14.12 | $12.32 | $1.30 | $0.00 | |
| 6/18/2021 | $42.50 | | $18.94 | $14.58 | $13.31 | $1.10 | $0.00 | |
| 6/18/2021 | $45.00 | | $20.01 | $15.42 | $13.74 | $1.10 | $0.00 | |
| 6/18/2021 | $47.50 | | $21.38 | $15.96 | $14.16 | $1.05 | $0.00 | |
| 6/18/2021 | $50.00 | | $22.47 | $16.41 | $14.36 | $1.15 | $0.00 | |
| 6/18/2021 | $52.50 | | $23.20 | $16.22 | $14.79 | $1.15 | $0.00 | |
| 6/18/2021 | $55.00 | | $23.87 | $16.53 | $14.79 | $1.15 | $0.00 | |
| 6/18/2021 | $60.00 | | $25.17 | $17.00 | $15.11 | $1.05 | $0.00 | |
| 6/18/2021 | $65.00 | | $25.86 | $16.82 | $15.17 | $1.20 | $0.00 | |
| 7/16/2021 | $15.00 | | | | | $0.26 | $0.06 | $0.70 |
| 7/16/2021 | $17.50 | | | | | $0.64 | $0.26 | $2.88 |
| 7/16/2021 | $20.00 | | | | | $1.04 | $0.51 | $5.90 |
| 7/16/2021 | $22.50 | | | | | $1.27 | $0.67 | $8.50 |
| 7/16/2021 | $25.00 | | | | | $1.41 | $0.76 | $11.10 |
| 7/16/2021 | $27.50 | | | | | $1.59 | $0.89 | $13.20 |
| 7/16/2021 | $30.00 | | | | | $1.19 | $0.99 | $16.10 |
| 7/16/2021 | $32.50 | | | | | $2.05 | $1.00 | $18.40 |
| 7/16/2021 | $35.00 | | | | | $1.98 | $1.03 | $21.00 |
| 7/16/2021 | $40.00 | | | | | | $1.10 | $26.00 |
| 8/20/2021 | $12.50 | | | | | | $0.04 | $0.80 |
| 8/20/2021 | $15.00 | | | | | | $0.16 | $1.90 |
| 8/20/2021 | $17.50 | | | | | | $0.31 | $3.85 |
| 8/20/2021 | $20.00 | | | | | | $0.42 | $5.90 |
| 8/20/2021 | $22.50 | | | | | | $0.55 | $8.40 |
| 8/20/2021 | $25.00 | | | | | | $0.65 | $10.30 |
| 8/20/2021 | $27.50 | | | | | | $0.74 | $12.75 |
| 8/20/2021 | $30.00 | | | | | | $0.77 | $15.25 |
| 8/20/2021 | $32.50 | | | | | | $0.82 | $17.75 |
| 8/20/2021 | $35.00 | | | | | | $0.88 | $20.25 |
| 9/17/2021 | $12.50 | | | | | | $0.09 | $1.10 |
| 9/17/2021 | $15.00 | | | | | | $0.16 | $2.48 |
| 9/17/2021 | $17.50 | | | | $2.28 | $0.50 | $0.32 | $4.50 |
| 9/17/2021 | $20.00 | | $3.82 | $3.82 | $3.79 | $0.70 | $0.40 | $6.65 |
| 9/17/2021 | $22.50 | | $6.39 | $6.39 | $6.34 | $1.35 | $0.55 | $8.95 |
| 9/17/2021 | $25.00 | | $8.34 | $8.34 | $7.77 | $1.83 | $0.63 | $11.25 |
| 9/17/2021 | $27.50 | | $9.91 | $8.92 | $8.38 | $2.06 | $0.71 | $13.55 |
| 9/17/2021 | $30.00 | | $11.82 | $11.13 | $10.60 | $2.28 | $0.78 | $16.05 |
| 9/17/2021 | $32.50 | | $14.32 | $11.47 | $10.60 | $1.90 | $0.85 | $18.55 |
| 9/17/2021 | $35.00 | | $13.92 | $12.47 | $11.26 | $2.23 | $0.93 | $21.00 |
| 9/17/2021 | $37.50 | | $16.33 | $11.90 | $11.59 | $2.28 | $0.93 | $23.30 |
| 9/17/2021 | $40.00 | | $16.91 | $13.10 | $12.42 | $2.58 | $0.98 | $25.90 |
| 9/17/2021 | $42.50 | | $18.95 | $13.95 | $13.02 | $2.28 | $1.03 | $28.75 |
| 9/17/2021 | $45.00 | | $19.79 | $14.37 | $13.41 | $2.15 | $1.05 | $31.10 |
| 9/17/2021 | $47.50 | | $20.80 | $15.38 | $13.83 | $2.19 | $1.04 | $33.30 |

| Expiration Date | Strike Price | Put Option Artificial Deflation per Share During Trading Periods | | | | | | Holding Price |
|---|---|---|---|---|---|---|---|---|
| | | 12/20/2018 through 5/9/2019 | 5/10/2019 through 3/1/2021 | 3/2/2021 | 3/3/2021 through 4/6/2021 | 4/7/2021 | 4/8/2021 through 7/15/2021 | |
| 9/17/2021 | $50.00 | | $21.78 | $16.32 | $14.30 | $2.14 | $1.04 | $35.90 |
| 9/17/2021 | $55.00 | | $22.82 | $15.48 | $14.11 | $1.76 | $1.06 | $41.00 |
| 9/17/2021 | $65.00 | | $25.57 | $17.12 | $15.41 | $2.06 | $1.06 | $51.00 |
| 9/17/2021 | $75.00 | | $27.08 | $17.76 | $16.02 | $2.19 | $1.09 | $61.00 |
| 12/17/2021 | $7.50 | | | | | | $0.04 | $0.50 |
| 12/17/2021 | $10.00 | | | | | | $0.05 | $0.68 |
| 12/17/2021 | $12.50 | | | | | | $0.10 | $1.60 |
| 12/17/2021 | $15.00 | | | | | | $0.22 | $3.28 |
| 12/17/2021 | $17.50 | | | | | | $0.33 | $5.15 |
| 12/17/2021 | $20.00 | | | | | | $0.41 | $7.25 |
| 12/17/2021 | $22.50 | | | | | | $0.49 | $9.20 |
| 12/17/2021 | $25.00 | | | | | | $0.64 | $11.70 |
| 12/17/2021 | $27.50 | | | | | | $0.66 | $13.80 |
| 12/17/2021 | $30.00 | | | | | | $0.75 | $16.30 |
| 12/17/2021 | $32.50 | | | | | | $0.79 | $18.35 |
| 12/17/2021 | $35.00 | | | | | | $0.86 | $21.25 |

# Exhibit A-2

# PROOF OF CLAIM AND RELEASE FORM

**In re FibroGen, Inc. Securities Litigation**
**Toll Free Number: (877) 595-0137**
**Settlement Website: www.FibroGenSecuritiesLitigation.com**
**Email:  Info@FibroGenSecuritiesLitigation.com**

To be eligible to receive a share of the Net Settlement Fund in connection with the Settlement of this Action, you must be a Settlement Class Member and complete and sign this Proof of Claim and Release Form ("Claim Form") and submit it online at www.FibroGenSecuritiesLitigation.com or mail it by first-class mail to the below address.

**Mail to:**

**In re FibroGen, Inc. Securities Litigation**
c/o JND Legal Administration
P.O. Box 91482
Seattle, WA 98111

The Claim Form must be **submitted online or postmarked no later than [_____].**
Failure to submit your Claim Form by the date specified will subject your claim to rejection and may preclude you from being eligible to recover any money in connection with the Settlement.

**Do not mail or deliver your Claim Form to the Court, the settling parties or their counsel.  Submit your Claim Form only to the Claims Administrator at the address set forth above.**

# CONTENTS

— I.   CLAIMANT INFORMATION

— II.  GENERAL INSTRUCTIONS

— III. SCHEDULE OF TRANSACTIONS IN FIBROGEN COMMON STOCK

— IV.  SCHEDULE OF TRANSACTIONS IN FIBROGEN CALL OPTIONS

— V.   SCHEDULE OF TRANSACTIONS IN FIBROGEN PUT OPTIONS

— VI.  RELEASE OF CLAIMS AND SIGNATURE

# PART I – CLAIMANT INFORMATION

### (Please read General Instructions below before completing this page.)

The Claims Administrator will use this information for all communications regarding this Claim Form. If this information changes, you MUST notify the Claims Administrator in writing at the address above.

Beneficial Owner's First Name

MI

Beneficial Owner's Last Name

Co-Beneficial Owner's First Name (*if applicable*)

MI

Co-Beneficial Owner's Last Name

Entity Name (if the Beneficial Owner is not an individual)

Representative or Custodian Name (if different from Beneficial Owner(s) listed above)

Address 1 (street name and number)

Address 2 (apartment, unit or box number)

City

State/Province

ZIP/Postal Code

Foreign Country (only if not USA)

Last four digits of Social Security Number or Taxpayer Identification Number

Telephone Number (Home)

Telephone Number (Work)

E-mail address (E-mail address is not required, but if you provide it, you authorize the Claims Administrator to use it in providing you with information relevant to this claim.)

Account Number (account(s) through which the securities were traded)[1]

**Claimant Account Type (check appropriate box):**

☐ Individual (includes joint owner accounts)     ☐ Corporation     ☐ IRA/401K     ☐ Pension Plan

☐ Estate     ☐ Trust     ☐ Other (please specify): _____

---

[1] If the account number is unknown, you may leave blank. If the same legal entity traded through more than one account you may write "multiple." Please see paragraph 11 of the General Instructions for more information on when to file separate Claim Forms for multiple accounts, *i.e.*, when you are filing on behalf of distinct legal entities.

## PART II – GENERAL INSTRUCTIONS

1.      It is important that you completely read and understand the Notice of (I) Proposed Settlement and Plan of Allocation; (II) Settlement Fairness Hearing; and (III) Motion for an Award for Attorneys' Fees and Reimbursement of Litigation Expenses (the "Notice"), that accompanies this Claim Form, including the Plan of Allocation of the Net Settlement Fund set forth in the Notice. The Notice describes the proposed Settlement, how Settlement Class Members are affected by the Settlement, and the manner in which the Net Settlement Fund will be distributed if the Settlement and Plan of Allocation are approved by the Court.  The Notice also contains the definitions of many of the defined terms (which are indicated by initial capital letters) used in this Claim Form.  By signing and submitting this Claim Form, you will be certifying that you have read and that you understand the Notice, including the terms of the releases described therein and provided for herein.

2.      This Claim Form is directed to the "Settlement Class": all persons who purchased or acquired FibroGen Securities, including options, between December 20, 2018 and July 15, 2021 inclusive (the "Settlement Class Period"). "FibroGen Securities" refers to: (1) FibroGen common stock ("FibroGen Common Stock"), (2) call options on FibroGen Common Stock ("FibroGen Call Options"), or (3) put options on FibroGen Common Stock ("FibroGen Put Options"). All persons and entities that are members of the Settlement Class are referred to as "Settlement Class Members."

3.      Excluded from the Settlement Class are: (1) Defendants; (2) the Officers and directors of FibroGen during the Settlement Class Period; (3) the Immediate Family members of any Defendant or any Officer or director of FibroGen during the Settlement Class Period; and (4) any entity that any Defendant owns or controls, or owned or controlled during the Settlement Class Period. Also excluded from the Settlement Class are those persons who file valid and timely requests for exclusion in accordance with the Preliminary Approval Order and the plaintiffs in the Opt-Out Action.

4.      If you are not a Settlement Class Member do not submit a Claim Form.  YOU MAY NOT, DIRECTLY OR INDIRECTLY, PARTICIPATE IN THE SETTLEMENT IF YOU ARE NOT A SETTLEMENT CLASS MEMBER.  THUS, IF YOU ARE EXCLUDED FROM THE SETTLEMENT CLASS (AS SET FORTH IN PARAGRAPH 3 ABOVE), ANY CLAIM FORM THAT YOU SUBMIT, OR THAT MAY BE SUBMITTED ON YOUR BEHALF, WILL NOT BE ACCEPTED.

5.      If you are a Settlement Class Member, you will be bound by the terms of any judgments or orders entered in the Action WHETHER OR NOT YOU SUBMIT A CLAIM FORM, unless you submit a request for exclusion from the Settlement Class that is accepted by the Court. Thus, if you are a Settlement Class Member, the Judgment will fully, finally, and forever compromise, settle, release, resolve, relinquish, waive and discharge each and every Released Plaintiffs' Claim against the Defendants and other Defendant Releasees, and shall forever bar and enjoin the commencing, instituting, prosecuting, or maintaining of any or all of the Released Plaintiffs' Claims against any of the Defendant Releasees.

6.      You are eligible to participate in the distribution of the Net Settlement Fund only if you are a member of the Settlement Class and if you complete and return this form as specified below.  If you fail to submit a timely, properly addressed, and completed Claim Form with the required documentation, your claim may be rejected and you may be precluded from receiving any distribution from the Net Settlement Fund.

7.      Submission of this Claim Form does not guarantee that you will share in the proceeds of the Settlement.  The distribution of the Net Settlement Fund will be governed by the Plan of Allocation set forth in the Notice, if it is approved by the Court, or by such other plan of allocation approved by the Court.

8.      Use the Schedules of Transactions in Part III-V of this Claim Form to supply all required details of your transaction(s) (including free transfers) in and holdings of the applicable FibroGen Securities.  On the Schedules of Transactions, please provide all of the requested information with

respect to your holdings, purchases, acquisitions and sales of the applicable FibroGen Securities, whether such transactions resulted in a profit or a loss. Failure to report all transaction and holding information during the requested time periods may result in the rejection of your claim.

9.      Please note:   Only FibroGen Common Stock and FibroGen Call Options purchased/acquired, and FibroGen Put Options written during the Settlement Class Period (i.e., between December 20, 2018 through July 15, 2021, inclusive) are eligible under the Settlement. However, because the Plan of Allocation incorporates the "90-day look-back" provision of the PSLRA (described in the Plan of Allocation set forth in the Notice), you must provide documentation related to your purchases and sales of FibroGen Securities during the period from July 16, 2021, through and including October 13, 2021 (i.e., the "90-Day Lookback Period") in order for the Claims Administrator to calculate your Recognized Loss Amount under the Plan of Allocation and process your claim.

10.     You are required to submit genuine and sufficient documentation for all of your transactions and holdings of the applicable FibroGen Securities set forth in the Schedules of Transactions in Part III-V of this Claim Form. Documentation may consist of copies of brokerage confirmation slips or monthly brokerage account statements, or an authorized statement from your broker containing the transactional and holding information found in a broker confirmation slip or account statement. The Parties and the Claims Administrator do not independently have information about your investments in FibroGen Securities. IF SUCH DOCUMENTS ARE NOT IN YOUR POSSESSION, PLEASE OBTAIN COPIES OR EQUIVALENT CONTEMPORANEOUS DOCUMENTS FROM YOUR BROKER. FAILURE TO SUPPLY THIS DOCUMENTATION MAY RESULT IN THE REJECTION OF YOUR CLAIM. DO NOT SEND ORIGINAL DOCUMENTS. **Please keep a copy of all documents that you send to the Claims Administrator. Also, please do not highlight any portion of the Claim Form or any supporting documents.**

11.     Separate Claim Forms should be submitted for each separate legal entity (e.g., a claim from joint owners should not include separate transactions through an account that is in the name of just one of the joint owners, and an individual should not combine his or her IRA transactions with transactions made through an account in the individual's name). Conversely, a single Claim Form should be submitted on behalf of one legal entity including all transactions made by that entity on one Claim Form, no matter how many separate accounts that entity has (e.g., a corporation with multiple brokerage accounts should include all transactions made in all accounts on one Claim Form).

12.     All joint beneficial owners must sign this Claim Form. If you purchased or otherwise acquired FibroGen Securities during the Settlement Class Period and held the securities in your name, you are the beneficial owner as well as the record owner and you must sign this Claim Form to participate in the Settlement. If, however, you purchased or otherwise acquired FibroGen Common Stock or FibroGen Call Options, or wrote FibroGen Put Options, during the Settlement Class Period and the securities were registered in the name of a third party, such as a nominee or brokerage firm, you are the beneficial owner of these securities, but the third party is the record owner. The beneficial owner, not the record owner, must sign this Claim Form.

13.     Agents, executors, administrators, guardians, and trustees must complete and sign the Claim Form on behalf of persons represented by them, and they must:

    (a)     expressly state the capacity in which they are acting;

    (b)     identify the name, account number, Social Security Number (or taxpayer identification number), address and telephone number of the beneficial owner of (or other person or entity on whose behalf they are acting with respect to) the FibroGen Securities; and

    (c)     furnish herewith evidence of their authority to bind to the Claim Form the person or entity on whose behalf they are acting. (Authority to complete and sign a Claim Form cannot be established by stockbrokers demonstrating only that they have discretionary authority to trade stock in another person's accounts.)

14.     By submitting a signed Claim Form, you will be swearing that you:

(a)     own(ed) the FibroGen Securities you have listed in the Claim Form; or

(b)     are expressly authorized to act on behalf of the owner thereof.

15.     By submitting a signed Claim Form, you will be swearing to the truth of the statements contained therein and the genuineness of the documents attached thereto, subject to penalties of perjury under the laws of the United States of America.  The making of false statements, or the submission of forged or fraudulent documentation, will result in the rejection of your claim and may subject you to civil liability or criminal prosecution.

16.     If the Court approves the Settlement, payments to eligible Authorized Claimants pursuant to the Plan of Allocation (or such other plan of allocation as the Court approves) will be made after the completion of all claims processing.  This could take substantial time.  Please be patient.

17.     PLEASE NOTE:  As set forth in the Plan of Allocation, each Authorized Claimant shall receive his, her or its *pro rata* share of the Net Settlement Fund.  If the prorated payment to any Authorized Claimant, however, calculates to less than $10.00, it will not be included in the calculation and no distribution will be made to that Authorized Claimant.

18.     If you have questions concerning the Claim Form, or need additional copies of the Claim Form or the Notice, you may contact the Claims Administrator, JND Legal Administration by email at Info@FibroGenSecuritiesLitigation.com, or by toll-free phone at (877) 595-0137 or you may download the documents from the Settlement website, www.FibroGenSecuritiesLitigation.com.

19.     NOTICE REGARDING ELECTRONIC FILES:  Certain Claimants with large numbers of transactions may request, or may be requested, to submit information regarding their transactions in electronic files.  To obtain the mandatory electronic filing requirements and file layout, you may visit the Settlement website at www.FibroGenSecuritiesLitigation.com or you may email the Claims Administrator's electronic filing department at FGENSecurities@JNDLA.com.  Any file not in accordance with the required electronic filing format will be subject to rejection.  No electronic files will be considered to have been properly submitted unless the Claims Administrator issues an email to that effect after processing your file with your claim numbers and respective account information.  Do not assume that your file has been received or processed until you receive this email.  If you do not receive such an email within 10 days of your submission, you should contact the electronic filing department at FGENSecurities@JNDLA.com to inquire about your file and confirm it was received and acceptable.

20.     NOTICE REGARDING ONLINE FILING: Claimants who are not Representative Filers may submit their claims online using the electronic version of the Claim Form hosted at www.FibroGenSecuritiesLitigation.com. If you are not acting as a Representative Filer, you do not need to contact the Claims Administrator prior to filing; you will receive an automated confirmation once your Claim Form has been submitted.  If you are unsure whether you should submit your claim as a Representative Filer, please contact the Claims Administrator at Info@FibroGenSecuritiesLitigation.com or (877) 595-0137. If you are not a Representative Filer, but your claim contains a large number of transactions, the Claims Administrator may request that you also submit an electronic spreadsheet showing your transactions to accompany your Claim Form.

### IMPORTANT: PLEASE NOTE

**YOUR CLAIM IS NOT DEEMED FILED UNTIL YOU RECEIVE AN ACKNOWLEDGEMENT POSTCARD. THE CLAIMS ADMINISTRATOR WILL ACKNOWLEDGE RECEIPT OF YOUR CLAIM FORM BY MAIL WITHIN 60 DAYS.  IF YOU DO NOT RECEIVE AN ACKNOWLEDGEMENT POSTCARD WITHIN 60 DAYS, PLEASE CALL THE CLAIMS ADMINISTRATOR AT (877) 595-0137.**

## PART III – SCHEDULE OF TRANSACTIONS IN FIBROGEN COMMON STOCK

Complete this Part III if and only if you purchased/acquired FibroGen common stock during the period between December 20, 2018 and July 15, 2021, inclusive.  Please include proper documentation with your Claim Form as described in detail in Part II – General Instructions, paragraph 10, above.  Do not include information in this section regarding securities other than FibroGen common stock purchased.

**1.  BEGINNING HOLDINGS** – State the total number of shares of FibroGen common stock held as of the close of trading on December 19, 2018.  (Must be documented.)  If none, write "zero" or "0." _____

**2. PURCHASES/ACQUISITIONS DURING THE  SETTLEMENT CLASS PERIOD** – Separately list each and every purchase/acquisition (including free receipts) of FibroGen common stock from after the opening of trading on December 20, 2018, through and including the close of trading on July 15, 2021.  (Must be documented.)

| Date of Purchase/Acquisition (List Chronologically) (Month/Day/Year) | Number of Shares Purchased/ Acquired | Purchase/ Acquisition Price Per Share | Total Purchase/ Acquisition Price (excluding taxes, commissions, and fees) |
|---|---|---|---|
| /    / | | $ | $ |
| /    / | | $ | $ |
| /    / | | $ | $ |
| /    / | | $ | $ |

**3. PURCHASES/ACQUISITIONS DURING THE 90-DAY LOOK-BACK PERIOD THROUGH OCTOBER 13, 2021** – State the total number of shares of FibroGen Common Stock purchased/acquired (including free receipts) from after the opening of trading on July 16, 2021, through and including the close of trading on October 13, 2021.  If none, write "zero" or "0."[2]

**4.  SALES DURING THE SETTLEMENT CLASS PERIOD THROUGH OCTOBER 13, 2021** – Separately list each and every sale/disposition (including free deliveries) of FibroGen common stock from after the opening of trading on December 20, 2018 through and including the close of trading on October 13, 2021.  (Must be documented.)  **IF NONE, CHECK HERE** ☐

| Date of Sale (List Chronologically) (Month/Day/Year) | Number of Shares Sold | Sale Price Per Share | Total Sale Price (excluding taxes, commissions, and fees) |
|---|---|---|---|
| /    / | | $ | $ |
| /    / | | $ | $ |
| /    / | | $ | $ |
| /    / | | $ | $ |

**5.  ENDING HOLDINGS** – State the total number of shares of FibroGen common stock held as of the close of trading on October 13, 2021.  (Must be documented.)  If none, write "zero" or "0." _____

☐ **IF YOU NEED ADDITIONAL SPACE TO LIST YOUR TRANSACTIONS YOU MUST PHOTOCOPY THIS PAGE AND CHECK THIS BOX.  IF YOU DO NOT CHECK THIS BOX THESE ADDITIONAL PAGES WILL <u>NOT</u> BE REVIEWED.**

---

[2] **Please note**:  Information requested with respect to your purchases/acquisitions of FibroGen Common Stock from after the opening of trading on July 16, 2021, through and including October 13, 2021, is needed in order to balance your claim; purchases/acquisitions during this period, however, are not eligible under the Settlement and will not be used for purposes of calculating your Recognized Loss pursuant to the Plan of Allocation.

# PART IV. SCHEDULE OF TRANSACTIONS IN FIBROGEN CALL OPTIONS

Complete this Part IV if and only if you purchased/acquired FibroGen Call Options during the period from December 20, 2018 through July 15, 2021, inclusive. Please include proper documentation with your Claim Form as described in detail in Part II – General Instructions, Paragraph 10, above.  Do not include information in this section regarding securities other than FibroGen Call Options.

| 1. **BEGINNING HOLDINGS** – Separately list all positions in FibroGen Call Options in which you had an open interest as of the opening of trading on December 20, 2018.  (Must be documented.) | | | **IF NONE, CHECK HERE** ☐ |
|---|---|---|---|
| **Strike Price of Call Option Contract** | **Expiration Date of Call Option Contract (Month/Day/Year)** | **Option Class Symbol** | **Number of Call Option Contracts in Which You Had an Open Interest (including any short holdings)** |
| $ | /    / | | |
| $ | /    / | | |
| $ | /    / | | |
| $ | /    / | | |

| 2. **PURCHASES/ACQUISITIONS DURING THE SETTLEMENT CLASS PERIOD THROUGH OCTOBER 13, 2021**[3] – Separately list each and every purchase/acquisition (including free receipts) of FibroGen Call Options from after the opening of trading on December 20, 2018, through and including the close of trading on October 13, 2021. (Must be documented.) | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| **Date of Purchase/ Acquisition (List Chronologically) (Month/Day/Year)** | **Strike Price of Call Option Contract** | **Expiration Date of Call Option Contract (Month/Day/Year)** | **Option Class Symbol** | **Number of Call Option Contracts Purchased/ Acquired** | **Purchase/ Acquisition Price Per Call Option Contract** | **Total Purchase/ Acquisition Price (excluding taxes, commissions, and fees)** | **Insert an "E" if Exercised Insert an "A" if Assigned Insert an "X" if Expired** | **Exercise Date (Month/Day/Year)** |
| /    / | $ | /    / | | | $ | $ | | /    / |
| /    / | $ | /    / | | | $ | $ | | /    / |
| /    / | $ | /    / | | | $ | $ | | /    / |
| /    / | $ | /    / | | | $ | $ | | /    / |
| /    / | $ | /    / | | | $ | $ | | /    / |
| /    / | $ | /    / | | | $ | $ | | /    / |

---

[3] **Please note**:  Information requested with respect to your purchases/acquisitions of FibroGen Call Option contracts from after the opening of trading on July 16, 2021, through and including October 13, 2021, is needed in order to balance your claim; purchases/acquisitions during this period, however, are not eligible under the Settlement and will not be used for purposes of calculating your Recognized Loss pursuant to the Plan of Allocation.

**3. SALES DURING THE SETTLEMENT CLASS PERIOD THROUGH OCTOBER 13, 2021** – Separately list each and every sale/disposition (including free deliveries) of FibroGen Call Options from after the opening of trading on December 20, 2018, through and including the close of trading on October 13, 2021. (Must be documented.)

**IF NONE, CHECK HERE** ☐

| Date of Sale (List Chronologically) (Month/Day/Year) | Strike Price of Call Option Contract | Expiration Date of Call Option Contract (Month/Day/Year) | Option Class Symbol | Number of Call Option Contracts Sold | Sale Price Per Call Option Contract | Total Sale Price (excluding taxes, commissions, and fees) | Insert an "E" if Exercised Insert an "A" if Assigned Insert an "X" if Expired | Exercise Date (Month/Day/Year) |
|---|---|---|---|---|---|---|---|---|
| / / | $ | / / | | | $ | $ | | / / |
| / / | $ | / / | | | $ | $ | | / / |
| / / | $ | / / | | | $ | $ | | / / |
| / / | $ | / / | | | $ | $ | | / / |
| / / | $ | / / | | | $ | $ | | / / |
| / / | $ | / / | | | $ | $ | | / / |
| / / | $ | / / | | | $ | $ | | / / |
| / / | $ | / / | | | $ | $ | | / / |

**4. ENDING HOLDINGS** – Separately list all positions in FibroGen Call Options in which you had an open interest as of the close of trading on October 13, 2021. (Must be documented.)

**IF NONE, CHECK HERE** ☐

| Strike Price of Call Option Contract | Expiration Date of Call Option Contract (Month/Day/Year) | Option Class Symbol | Number of Call Option Contracts in Which You Had an Open Interest |
|---|---|---|---|
| $ | / / | | |
| $ | / / | | |
| $ | / / | | |
| $ | / / | | |
| $ | / / | | |
| $ | / / | | |
| $ | / / | | |
| $ | / / | | |

☐ **IF YOU NEED ADDITIONAL SPACE TO LIST YOUR TRANSACTIONS YOU MUST PHOTOCOPY THIS PAGE AND CHECK THIS BOX.**
**IF YOU DO NOT CHECK THIS BOX THESE ADDITIONAL PAGES WILL <u>NOT</u> BE REVIEWED.**

## PART V. SCHEDULE OF TRANSACTIONS IN FIBROGEN PUT OPTIONS

Complete this Part V if and only if you sold (wrote) FibroGen Put Options during the period from December 20, 2018 through July 15, 2021, inclusive.  Please include proper documentation with your Claim Form as described in detail in Part II – General Instructions, Paragraph 10, above.  Do not include information in this section regarding securities other than FibroGen Put Options.

**1. BEGINNING HOLDINGS** – Separately list all positions in FibroGen Put Options in which you had an open interest as of the opening of trading on December 20, 2018.  (Must be documented.)

**IF NONE, CHECK HERE** ☐

| Strike Price of Put Option Contract | Expiration Date of Put Option Contract (Month/Day/Year) | Option Class Symbol | Number of Put Option Contracts in Which You Had an Open Interest (including any short holdings) |
|---|---|---|---|
| $ | /    / | | |
| $ | /    / | | |
| $ | /    / | | |
| $ | /    / | | |
| $ | /    / | | |
| $ | /    / | | |
| $ | /    / | | |

**2. SALES (WRITING) DURING THE SETTLEMENT CLASS PERIOD THROUGH OCTOBER 13, 2021**[4] – Separately list each and every sale (writing) (including free deliveries) of FibroGen Put Options from after the opening of trading on December 20, 2018, through and including the close of trading on October 13, 2021. (Must be documented.)

| Date of Sale (Writing) (List Chronologically) (Month/Day/Year) | Strike Price of Put Option Contract | Expiration Date of Put Option Contract (Month/Day/Year) | Option Class Symbol | Number of Put Option Contracts Sold (Written) | Sale Price Per Put Option Contract | Total Sale Price (excluding taxes, commissions, and fees) | Insert an "A" if Assigned Insert an "E" if Exercised Insert an "X" if Expired | Assignment Date (Month/Day/Year) |
|---|---|---|---|---|---|---|---|---|
| /    / | $ | /    / | | | $ | $ | | /    / |
| /    / | $ | /    / | | | $ | $ | | /    / |
| /    / | $ | /    / | | | $ | $ | | /    / |
| /    / | $ | /    / | | | $ | $ | | /    / |

---

[4] **Please note**:  Information requested with respect to your sales (writing) of FibroGen Put Option contracts from after the opening of trading on July 16, 2021, through and including October 13, 2021, is needed in order to balance your claim; sales (written contracts) during this period, however, are not eligible under the Settlement and will not be used for purposes of calculating your Recognized Loss pursuant to the Plan of Allocation.

**3. PURCHASES/ACQUISITIONS DURING THE SETTLEMENT CLASS PERIOD THROUGH OCTOBER 13, 2021** – Separately list each and every purchase/acquisition (including free receipts) of FibroGen Put Options from after the opening of trading on December 20, 2018, through and including the close of trading on October 13, 2021. (Must be documented.)

**IF NONE, CHECK HERE**

☐

| Date of Purchase/Acquisition (List Chronologically) (Month/Day/Year) | Strike Price of Put Option Contract | Expiration Date of Put Option Contract (Month/Day/Year) | Option Class Symbol | Number of Put Option Contracts Purchased/Acquired | Purchase/Acquisition Price Per Put Option Contract | Total Purchase/Acquisition Price (excluding taxes, commissions, and fees) | Insert an "A" if Assigned Insert an "E" if Exercised Insert an "X" if Expired | Assignment Date (Month/Day/Year) |
|---|---|---|---|---|---|---|---|---|
| /  / | $ | /  / | | | $ | $ | | /  / |
| /  / | $ | /  / | | | $ | $ | | /  / |
| /  / | $ | /  / | | | $ | $ | | /  / |
| /  / | $ | /  / | | | $ | $ | | /  / |
| /  / | $ | /  / | | | $ | $ | | /  / |
| /  / | $ | /  / | | | $ | $ | | /  / |
| /  / | $ | /  / | | | $ | $ | | /  / |

**4. ENDING HOLDINGS** – Separately list all positions in FibroGen Put Options in which you had an open interest as of the close of trading on October 13, 2021.  (Must be documented.)

**IF NONE, CHECK HERE**

☐

| Strike Price of Put Option Contract | Expiration Date of Put Option Contract (Month/Day/Year) | Option Class Symbol | Number of Put Option Contracts in Which You Had an Open Interest |
|---|---|---|---|
| $ | /  / | | |
| $ | /  / | | |
| $ | /  / | | |
| $ | /  / | | |
| $ | /  / | | |
| $ | /  / | | |
| $ | /  / | | |

☐ **IF YOU NEED ADDITIONAL SPACE TO LIST YOUR TRANSACTIONS YOU MUST PHOTOCOPY THIS PAGE AND CHECK THIS BOX.**
**IF YOU DO NOT CHECK THIS BOX THESE ADDITIONAL PAGES WILL <u>NOT</u> BE REVIEWED.**

# PART VI – RELEASE OF CLAIMS AND SIGNATURE

## *YOU MUST ALSO READ THE RELEASE AND CERTIFICATION BELOW AND SIGN ON PAGE _ OF THIS CLAIM FORM.*

I (we) hereby acknowledge that as of the Effective Date of the Settlement, pursuant to the terms set forth in the Stipulation, I (we), on behalf of myself (ourselves) and my (our) successors and assigns, shall be deemed to have, and by operation of law and of the Judgment shall have, fully, finally and forever compromised, settled, released, resolved, relinquished, waived, and discharged each and every Released Plaintiffs' Claim (as defined in the Stipulation and in the Notice) against Defendant Releasees (as defined in the Stipulation and in the Notice) and shall forever be barred and enjoined from commencing, instituting, prosecuting or maintaining, in any court of law or equity, arbitration tribunal, administrative forum, or other forum of any kind, asserting any Released Plaintiffs' Claims against any of the Defendant Releasees.

## CERTIFICATION

By signing and submitting this Claim Form, the Claimant(s) or the person(s) who represent(s) the Claimant(s) certifies (certify), as follows:

1.    that I (we) have read and understand the contents of the Notice and this Claim Form, including the releases provided for in the Settlement and the terms of the Plan of Allocation;

2.    that the Claimant(s) is a (are) Class Member(s), as defined in the Notice and in paragraph 2 on page _ of this Claim Form, and is (are) not excluded from the Class by definition or pursuant to request as set forth in the Notice and in paragraph 3 on page _ of this Claim Form;

3.    that I (we) own(ed) the FibroGen Common Stock and/or FibroGen Call Options and/or had an interest in the FibroGen Put Options identified in the Claim Form and have not assigned the claim against the Defendants' Releasees to another, or that, in signing and submitting this Claim Form, I (we) have the authority to act on behalf of the owner(s) thereof;

4.    that the Claimant(s) has (have) not submitted any other claim covering the same purchases/acquisitions of FibroGen Common Stock and/or FibroGen Call Options, and/or sales of FibroGen Put Options and knows (know) of no other person having done so on the Claimant's (Claimants') behalf;

5.    that the Claimant(s) submit(s) to the jurisdiction of the Court with respect to Claimant's (Claimants') claim and for purposes of enforcing the releases set forth herein;

6.    that I (we) agree to furnish such additional information with respect to this Claim Form as Lead Counsel, the Claims Administrator or the Court may require;

7.    that the Claimant(s) waive(s) the right to trial by jury, to the extent it exists, and agree(s) to the Court's summary disposition of the determination of the validity or amount of the claim made by this Claim Form;

8.    that I (we) acknowledge that the Claimant(s) will be bound by and subject to the terms of any judgment(s) that may be entered in the Action; and

9.      that the Claimant(s) is (are) NOT subject to backup withholding under the provisions of Section 3406(a)(1)(C) of the Internal Revenue Code because (a) the Claimant(s) is (are) exempt from backup withholding or (b) the Claimant(s) has (have) not been notified by the IRS that he/she/it is subject to backup withholding as a result of a failure to report all interest or dividends or (c) the IRS has notified the Claimant(s) that he/she/it is no longer subject to backup withholding.  **If the IRS has notified the Claimant(s) that he, she or it is subject to backup withholding, please strike out the language in the preceding sentence indicating that the claim is not subject to backup withholding in the certification above.**

UNDER THE PENALTIES OF PERJURY, I (WE) CERTIFY THAT ALL OF THE INFORMATION PROVIDED BY ME (US) ON THIS CLAIM FORM IS TRUE, CORRECT, AND COMPLETE, AND THAT THE DOCUMENTS SUBMITTED HEREWITH ARE TRUE AND CORRECT COPIES OF WHAT THEY PURPORT TO BE.


_____              _____
Signature of Claimant                                                                                    Date

_____
Print your name here


_____              _____
Signature of joint Claimant, if any                                                               Date

_____
Print your name here

***If the Claimant is other than an individual, or is not the person completing this form, the following also must be provided:***


_____              _____
Signature of person signing on behalf of Claimant                               Date

_____
Print your name here


_____
CAPACITY OF PERSON SIGNING ON BEHALF OF CLAIMANT, IF OTHER THAN AN INDIVIDUAL, *E.G.*, EXECUTOR, PRESIDENT, TRUSTEE, CUSTODIAN, *ETC.* (MUST PROVIDE EVIDENCE OF AUTHORITY TO ACT ON BEHALF OF CLAIMANT – SEE PARAGRAPH 13 ON PAGE _ OF THIS CLAIM FORM.)

# REMINDER CHECKLIST



1. Please sign the above release and certification.  If this Claim Form is being made on behalf of joint Claimants, then both must sign.



2. Remember to attach only **copies** of acceptable supporting documentation as these documents will not be returned to you.

3. Please do not highlight any portion of the Claim Form or any supporting documents.



4. Do not send original security certificates or documentation.  These items cannot be returned to you by the Claims Administrator.



5. Keep copies of the completed Claim Form and documentation for your own records.





6. The Claims Administrator will acknowledge receipt of your Claim Form by mail, within 60 days.  Your claim is not deemed filed until you receive an acknowledgement postcard.  **If you do not receive an acknowledgement postcard within 60 days, please call the Claims Administrator toll free at (877) 595-0137.**

7. If your address changes in the future, or if this Claim Form was sent to an old or incorrect address, please send the Claims Administrator written notification of your new address.  If you change your name, please inform the Claims Administrator.

8. If you have any questions or concerns regarding your claim, please contact the Claims Administrator at the address below, by email at Info@FibroGenSecuritiesLitigation.com, or toll-free at (877) 595-0137 or visit www.FibroGenSecuritiesLitigation.com.  Please DO NOT call the Court, FibroGen or any of the other Defendants or their counsel with questions regarding your claim.

THIS CLAIM FORM MUST BE MAILED TO THE CLAIMS ADMINISTRATOR BY FIRST-CLASS MAIL, **POSTMARKED NO LATER THAN** [_____], ADDRESSED AS FOLLOWS:

**In re FibroGen, Inc. Securities Litigation**
**c/o JND Legal Administration**
**P.O. Box 91482**
**Seattle, WA 98111**

OR SUBMITTED ONLINE AT WWW.FIBROGENSECURITIESLITIGATION.COM **ON OR BEFORE** [_____].

A Claim Form received by the Claims Administrator shall be deemed to have been submitted when posted, if a postmark date **on or before** [_____] is indicated on the envelope and it is mailed First Class, and addressed in accordance with the above instructions.  In all other cases, a Claim Form shall be deemed to have been submitted when actually received by the Claims Administrator.

You should be aware that it will take a significant amount of time to fully process all of the Claim Forms. Please be patient and notify the Claims Administrator of any change of address.

# Exhibit A-3

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE FIBROGEN, INC., SECURITIES LITIGATION | Case No. 3:21-cv-02623-EMC |

**SUMMARY NOTICE OF (I) PROPOSED SETTLEMENT AND PLAN OF ALLOCATION; (II) SETTLEMENT FAIRNESS HEARING; AND (III) MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES**

**TO:** **All persons who purchased or acquired FibroGen, Inc. ("FibroGen" or the "Company") securities, including options, between December 20, 2018 through July 15, 2021, inclusive (the "Settlement Class Period"). You may be a member of the Settlement Class. If you do not wish to be a part of the Settlement Class, you must respond to this Notice with a written request for exclusion (see below). You may be eligible to share in the proceeds of the Settlement, but you must submit a Claim Form to participate in the Settlement (see below).**

**THIS NOTICE WAS AUTHORIZED BY THE COURT.  IT IS NOT A LAWYER SOLICITATION. YOU MAY BE ENTITLED TO A CASH AWARD. PLEASE READ THIS NOTICE CAREFULLY AND IN ITS ENTIRETY.**

YOU ARE HEREBY NOTIFIED, pursuant to Rule 23 of the Federal Rules of Civil Procedure and an Order of the United States District Court for the Northern District of California (the "Court"), that the above-captioned litigation (the "Action") has been certified as a class action for settlement purposes only on behalf of the Settlement Class, except for certain persons and entities who are excluded from the Settlement Class by definition as set forth in the full printed Notice of (I) Proposed Settlement and Plan of Allocation; (II) Settlement Fairness Hearing; and (III) Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses (the "Notice").

YOU ARE ALSO NOTIFIED that the Court-appointed Lead Plaintiffs on behalf of themselves and the Court-certified Settlement Class in the Action, have reached a proposed settlement of the Action for twenty-eight million, five-hundred thousand dollars ($28,500,000.00) in cash (the "Settlement"), that, if approved by the Court, will resolve all claims in the Action.

A hearing will be held on _____, 2024 at ___ :___   __.m., before the Honorable Edward M. Chen at the United States District Court for the Northern District of California, San Francisco Courthouse, Courtroom 5 – 17th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102, to determine, among other things, whether: (i) the proposed Settlement should be approved as fair, reasonable, and adequate; (ii) the Judgment as provided under the Stipulation and Agreement of Settlement (the "Stipulation") should be entered dismissing the Action with prejudice against the Defendant Releasees; (iii) the proposed Plan of Allocation should be approved by the Court as fair and reasonable; (iv) Lead Counsel's application for an award of

attorneys' fees and reimbursement of expenses should be approved.  The capitalized terms herein shall have the same meaning as they have in the Stipulation.[1]

The Court may adjourn the Settlement Hearing or any adjournment thereof without further written notice of any kind to the Settlement Class.  Settlement Class Members should check the Court's PACER site (defined below) or the Settlement website, www.FibroGenSecuritiesLitigation.com.  Any updates regarding the Settlement Hearing, including any changes to the date or time of the hearing or updates regarding in-person, telephonic or video conference appearances at the hearing, will also be posted to the Settlement website.

**If you are a member of the Settlement Class, your rights will be affected by the pending Action and the Settlement, and you may be entitled to share in the Settlement Fund**.  If you have not yet received the Notice and Claim Form, you may obtain copies of these documents by visiting the Settlement website at www.FibroGenSecuritiesLitigation.com or by contacting the Claims Administrator at:

IN RE FIBROGEN, INC., SECURITIES LITIGATION
c/o JND Legal Administration
P.O. Box 91482
Seattle, WA 98111
(877) 595-0137
www.FibroGenSecuritiesLitigation.com
info@fibrogensecuritieslitigation.com

Copies of the Notice and the Claim Form are also available by accessing the Court docket in this case, for a fee, through the Court's Public Access to Court Electronic Records (PACER) system at https://ecf.cand.uscourts.gov, or by visiting the Office of the Clerk of Court, United States District Court for the Northern District of California, San Francisco Courthouse, 450 Golden Gate Avenue, San Francisco, CA 94102, or any other location of the Northern District of California between 9:00 a.m. and 4:00 p.m., Monday through Friday, excluding Court holidays.

Inquiries, other than requests for the Notice or a Claim Form or for information about the status of a claim, may be made to Lead Counsel:

SAXENA WHITE P.A.
Lester R. Hooker, Esq.
7777 Glades Rd., Suite 300
Boca Raton, FL 33434
lhooker@saxenawhite.com

If you are a member of the Settlement Class, in order to potentially be eligible to receive a payment under the proposed Settlement, you must submit a Claim Form *postmarked or completed online* **no later than _____, 2024.**  If you are a Settlement Class Member and do not submit a proper Claim Form, you will not be eligible to share in the distribution of the net proceeds of the Settlement, but you will nevertheless be bound by any judgments or orders entered by the Court in the Action.

---

[1] The Stipulation can be viewed and/or obtained at www.FibroGenSecuritiesLitigation.com, PACER, visiting the office of the Clerk of the Court, or by contacting Lead Counsel as described herein. For the precise terms of the Settlement, please see the Stipulation.

If you are a member of the Settlement Class and wish to exclude yourself from the Settlement Class, you must submit a request for exclusion such that it is *received* **no later than _____, 2024,** in accordance with the instructions set forth in the Notice.  If you properly exclude yourself from the Settlement Class, you will not be bound by any judgments or orders entered by the Court in the Action and you will not be eligible to share in the proceeds of the Settlement.

Any objections[2] to the proposed Settlement, the proposed Plan of Allocation, or Lead Plaintiffs' motion for attorneys' fees and reimbursement of litigation expenses must be in writing and filed electronically or in person at any location of the United States District Court for the Northern District of California or mailed to the Class Action Clerk, United States District Court for the Northern District of California, San Francisco Courthouse, 450 Golden Gate Avenue, San Francisco, CA 94102-3489 such that they are *filed or received* **no later than _____, 2024,** in accordance with the instructions set forth in the Notice.   The Court can only approve or deny the Settlement and cannot change the terms.

**PLEASE DO NOT CONTACT THE COURT, THE CLERK'S OFFICE, DEFENDANTS, OR DEFENDANTS' COUNSEL REGARDING THIS NOTICE, THE PROPOSED SETTLEMENT, OR THE CLAIMS PROCESS.**

Dated: _____                    By Order of the Court
                                                 United States District Court
                                                 Northern District of California

---

[2] You can ask the Court to deny approval by filing an objection. You cannot ask the Court to order a different settlement; the Court can only approve or reject the Settlement. If the Court denies approval, no settlement payments will be sent out, and the lawsuit will continue. If that is what you want to happen, you should object.  If you file a timely written objection, you may, but are not required to, appear at the Final Approval Hearing, either in person or through your own attorney. If you appear through your own attorney, you are responsible for hiring and paying that attorney. All written objections and supporting papers must clearly identify the case name and number (*In re FibroGen, Inc., Sec. Litig.*, Case No. 21-cv-2623) and include all information required by the Court as detailed in the Notice.

# Exhibit B

**SAXENA WHITE P.A.**
David R. Kaplan (SBN 230144)
dkaplan@saxenawhite.com
Emily Bishop (SBN 319383)
ebishop@saxenawhite.com
505 Lomas Santa Fe Drive, Suite 180
Solana Beach, CA 92075
Tel.: (858) 997-0860
Fax: (858) 369-0096

*Counsel for Lead Plaintiffs Employees' Retirement*
*System of the City of Baltimore, City of*
*Philadelphia Board of Pensions and Retirement,*
*and Plymouth County Retirement Association, and*
*Lead Counsel for the proposed Settlement Class*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE FIBROGEN, INC., SECURITIES LITIGATION | Case No. 3:21-cv-02623-EMC |
| | **CLASS ACTION** |
| | **EXHIBIT B** |
| | [PROPOSED] FINAL JUDGMENT AND ORDER OF DISMISSAL |

WHEREAS, a class action is pending in this Court entitled *In re FibroGen, Inc., Securities Litigation*, Case No. 3:21-cv-02623-EMC (N.D. Cal.) (the "Action");

WHEREAS, by order dated August 30, 2021, this Court appointed Employees' Retirement System of the City of Baltimore, City of Philadelphia Board of Pensions and Retirement, and Plymouth County Retirement System as Lead Plaintiffs ("Lead Plaintiffs" or "Plaintiffs") pursuant to the requirements of the Private Securities Litigation Reform Act of 1995 and approved Lead Plaintiffs' selection of Saxena White P.A. ("Saxena White") as Lead Counsel (ECF No. 75);

WHEREAS, on November 19, 2021, Lead Plaintiffs filed their Corrected Consolidated Class Action Complaint (the "Complaint," ECF No. 97);

WHEREAS, (a) Lead Plaintiffs, on behalf of themselves and the Settlement Class, and (b) defendants FibroGen, Inc. ("FibroGen"), Enrique Conterno, James A. Schoeneck, Mark Eisner, Pat Cotroneo, and K. Peony Yu (collectively the "Defendants," and, together with Lead Plaintiffs, the "Parties") have entered into a Stipulation and Agreement of Settlement (the "Stipulation" or "Settlement Agreement"), that provides for a complete dismissal with prejudice of the claims asserted in the Complaint against Defendant Releasees (as defined in the Stipulation) on the terms and conditions set forth in the Stipulation, subject to the approval of this Court (the "Settlement");

WHEREAS, unless otherwise defined in this Judgment, the capitalized terms herein shall have the same meaning as they have in the Stipulation;

WHEREAS, by order dated _____, 202__ (the "Preliminary Approval Order"), this Court: (a) preliminarily approved the Settlement and certified the Settlement Class for purposes of this Settlement only; (b) ordered that notice of the proposed Settlement be provided to potential Settlement Class Members; (c) provided Settlement Class Members with the opportunity either to exclude themselves from the Settlement Class or to object to the proposed Settlement; and (d) scheduled a hearing regarding final approval of the Settlement;

WHEREAS, due and adequate notice has been given to the Settlement Class;

WHEREAS, the Court conducted a hearing on _____, 2024 (the "Settlement Hearing") to consider, among other things, (a) whether the terms and conditions of the Settlement are fair, reasonable, and adequate to the Settlement Class, and should therefore be approved; and

1    (b) whether a judgment should be entered dismissing the Action with prejudice as against the

2    Defendants, and authorizing the Releases specified and described in the Stipulation (and in the

3    Notice); and

4    WHEREAS, the Court having reviewed and considered the Stipulation, all papers filed,

5    and proceedings held herein in connection with the Settlement, all oral and written comments

6    received regarding the Settlement, and the record in the Action, and good cause appearing therefor;

7    IT IS HEREBY ORDERED, ADJUDGED AND DECREED:

8    1.    **Jurisdiction** – The Court has jurisdiction over the subject matter of the Action, and

9    all matters relating to the Settlement, as well as personal jurisdiction over all of the Parties and

10    each of the Settlement Class Members.

11    2.    **Incorporation of Settlement Documents** – This Judgment incorporates and makes

12    a part hereof: (a) the Stipulation; and (b) the Notice and the Summary Notice, both of which were

13    previously filed with the Court.

14    3.    **Class Certification for Settlement Purposes** – The Court hereby affirms its

15    determinations in the Preliminary Approval Order certifying, for the purposes of the Settlement

16    only, the Action as a class action pursuant to Rules 23(a) and (b)(3) of the Federal Rules of Civil

17    Procedure on behalf of the Settlement Class consisting of all persons who purchased or acquired

18    FibroGen securities, including options, between December 20, 2018 through July 15, 2021,

19    inclusive.  Excluded from the Settlement Class are (1) Defendants; (2) the Officers or directors of

20    FibroGen during the Settlement Class Period; (3) the Immediate Family members of any

21    Defendant or any Officer or director of FibroGen during the Settlement Class Period; and (4) any

22    entity that any Defendant owns or controls, or owned or controlled, during the Settlement Class

23    Period.  Also excluded from the Settlement Class are the persons or entities listed in Exhibit 1

24    hereto who filed valid and timely requests for exclusion in accordance with the Preliminary

25    Approval Order and the plaintiffs in the Opt-Out Action.

26    4.    **Settlement Notice** – The Court finds that the dissemination of the Notice and the

27    publication of the Summary Notice:  (a) were implemented in accordance with the Preliminary

28    Approval Order; (b) constituted the best notice practicable under the circumstances; (c) constituted

notice that was reasonably calculated, under the circumstances, to apprise Settlement Class Members of (i) the pendency of the Action; (ii) the effect of the proposed Settlement (including the Releases to be provided thereunder); (iii) Lead Plaintiffs' motion for an award of attorneys' fees and reimbursement of Litigation Expenses; (iv) their right to object to any aspect of the Settlement, the Plan of Allocation and/or Lead Plaintiffs' motion for attorneys' fees and reimbursement of Litigation Expenses; (v) their right to exclude themselves from the Settlement Class; and (vi) their right to appear at the Settlement Hearing; (d) constituted due, adequate, and sufficient notice to all persons and entities entitled to receive notice of the proposed Settlement; and (e) satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4, as amended, and all other applicable laws and rules.

5.     **Final Settlement Approval and Dismissal of Claims** – Pursuant to, and in accordance with, Rule 23 of the Federal Rules of Civil Procedure, this Court hereby fully and finally approves the Settlement set forth in the Stipulation in all respects (including, without limitation: the amount of the Settlement; the Releases provided for therein; and the dismissal with prejudice of the claims asserted in the Complaint against Defendants in the Action), and finds that the Settlement is, in all respects, fair, reasonable and adequate to the Settlement Class. Specifically, the Court finds that (a) Lead Plaintiffs and Lead Counsel have adequately represented the Settlement Class; (b) the Settlement was negotiated by the Parties at arm's length; (c) the relief provided for the Settlement Class under the Settlement is adequate taking into account the costs, risks, and delay of trial and appeal, the proposed means of distributing the Settlement Fund to the Settlement Class, and the proposed attorneys' fee and expense award; and (d) the Settlement treats members of the Settlement Class equitably relative to each other.  The Parties are directed to implement, perform and consummate the Settlement in accordance with the terms and provisions contained in the Stipulation.

6.     The Action and all of the claims asserted in the Complaint against Defendants in the Action by Lead Plaintiffs and the other Settlement Class Members are hereby dismissed with

3

1    prejudice.  The Parties and the D&O Insurers shall bear their own costs and expenses, except as

2    otherwise expressly provided for in the Stipulation.

3         7.    **Binding Effect** – The terms of the Stipulation and of this Judgment shall be forever

4    binding on Defendants, Lead Plaintiffs, and all other Settlement Class Members (regardless of

5    whether or not any individual Settlement Class Member submits a Claim Form or seeks or obtains

6    a distribution from the Net Settlement Fund), as well as their respective successors and assigns.

7    The plaintiffs in the Opt-Out Action [and the persons and entities listed on Exhibit 1 hereto] are

8    excluded from the Class pursuant to request and are not bound by the terms of the Stipulation or

9    this Judgment.

10        8.    **Releases** – The Releases set forth in the Stipulation, together with the definitions

11   contained in the Stipulation relating thereto, are expressly incorporated herein in all respects.  The

12   Releases are effective as of the Effective Date.  Accordingly, this Court orders that:

13        (a)    Without further action by anyone, and subject to Paragraph 9 below, upon

14   the Effective Date of the Settlement, Plaintiff Releasees, by operation of the Stipulation, of law,

15   and of this Judgment shall have, fully, finally, and forever compromised, settled, released,

16   resolved, relinquished, waived and discharged each and every Released Plaintiffs' Claim against

17   the Defendants and the other Defendant Releasees, and shall forever be barred and enjoined from

18   commencing, instituting, prosecuting, or maintaining any or all of the Released Plaintiffs' Claims

19   against any of the Defendant Releasees.  This Release shall not apply to any Excluded Claim.

20        (b)    Without further action by anyone, and subject to paragraph 9 below, upon

21   the Effective Date of the Settlement, Defendant Releasees, by operation of the Stipulation, of law,

22   and of this Judgment shall have, fully, finally, and forever compromised, settled, released,

23   resolved, relinquished, waived, and discharged each and every Released Defendants' Claim

24   against the Plaintiff Releasees, and shall forever be barred and enjoined from prosecuting any or

25   all of the Released Defendants' Claims against any of the Plaintiff Releasees.  This Release shall

26   not apply to any Excluded Claim.

27        (c)    Upon the Effective Date, Plaintiff Releasees, are forever barred and

28   enjoined from commencing, instituting, maintaining, or continuing to prosecute any action or

[PROPOSED] FINAL JUDGMENT &
ORDER OF DISMISSAL
3:21-cv-02623-EMC

4

proceeding in any court of law or equity, arbitration tribunal, administrative forum, or other forum of any kind, asserting any Released Plaintiffs' Claims against any of the Defendant Releasees; and

(d)     Upon the Effective Date, to the extent allowed by law, the Stipulation shall operate conclusively as an estoppel and full defense in the event, and to the extent, of any claim, demand, action, or proceeding brought by a Settlement Class Member against any of the Defendant Releasees with respect to any Released Plaintiffs' Claims, or brought by a Defendant against any of the Plaintiff Releasees with respect to any Released Defendants' Claim.

9.     Notwithstanding Paragraphs 6 through 8 above, nothing in this Judgment shall bar any action by any of the Parties to enforce or effectuate the terms of the Stipulation or this Judgment.

10.     **Rule 11 Findings** – The Court finds and concludes that the Parties and their respective counsel have complied in all respects with the requirements of Rule 11 of the Federal Rules of Civil Procedure in connection with the institution, prosecution, defense, and settlement of the Action.

11.     **No Admissions** – Neither this Judgment, the Stipulation (whether or not consummated), including the exhibits thereto and the Plan of Allocation contained therein (or any other plan of allocation that may be approved by the Court), the negotiations leading to the execution of the Stipulation, nor any proceedings taken pursuant to or in connection with the Stipulation and/or approval of the Settlement (including any arguments proffered in connection therewith):

(a)     shall be (i) offered against any of the Defendant Releasees as evidence of, or construed as, or deemed to be evidence of any presumption, concession, or admission by any of the Defendant Releasees with respect to (a) the truth of any fact alleged by Lead Plaintiffs or any Settlement Class Member; (b) the validity of any claim that was or could have been asserted in this Action or in any other litigation; (c) the deficiency of any defense that has been or could have been asserted in this Action or in any other litigation; (d) any liability, negligence, fault, or other wrongdoing of any kind of any of the Defendant Releasees; or (e) any damages suffered by Plaintiffs or the Settlement Class; or (ii) in any way referred to for any other reason against any of

the Defendant Releasees, in any civil, criminal, or administrative action or proceeding (including any arbitration) other than such proceedings as may be necessary to effectuate the provisions of the Stipulation;

(b)    shall be (i) offered against any of the Plaintiff Releasees as evidence of, or construed as, or deemed to be evidence of any presumption, concession or admission by any of the Plaintiff Releasees (a) that any of their claims are without merit, that any of the Defendant Releasees had meritorious defenses, or that damages recoverable under the Complaint would not have exceeded the Settlement Amount; or (b) with respect to any liability, negligence, fault or wrongdoing of any kind; or (ii) in any way referred to for any other reason as against any of the Plaintiff Releasees, in any civil, criminal, or administrative action or proceeding (including any arbitration) other than such proceedings as may be necessary to effectuate the provisions of the Stipulation; or; or

(c)    shall be construed against any of the Releasees as an admission, concession, or presumption that the consideration to be given hereunder represents the amount which could be or would have been recovered after trial; provided, the Parties and the Releasees and their respective counsel may refer to this Judgment to effectuate the protections from liability granted hereunder or otherwise to enforce the terms of the Settlement.

12.    **Retention of Jurisdiction** – Without affecting the finality of this Judgment in any way, this Court retains continuing and exclusive jurisdiction over:  (a) the Parties for purposes of the administration, interpretation, implementation and enforcement of the Settlement; (b) the disposition of the Settlement Fund; (c) any motion for an award of attorneys' fees and/or Litigation Expenses in the Action that will be paid from the Settlement Fund; (d) any motion to approve the Plan of Allocation; (e) any motion to approve the Class Distribution Order; and (f) the Settlement Class Members for all matters relating to the Action.

13.    Separate orders shall be entered regarding approval of a Plan of Allocation and the motion of Lead Plaintiffs for an award of attorneys' fees and reimbursement of Litigation Expenses.  Such orders shall in no way affect or delay the finality of this Judgment and shall not affect or delay the Effective Date of the Settlement.

14. **Modification of the Agreement of Settlement** – Without further approval from the Court, the Parties are hereby authorized to agree to and adopt such amendments or modifications of the Stipulation or any exhibits attached thereto to effectuate the Settlement that: (a) are not materially inconsistent with this Judgment; and (b) do not materially limit the rights of Settlement Class Members in connection with the Settlement. Without further order of the Court, Lead Plaintiffs and Defendants may agree to reasonable extensions of time to carry out any provisions of the Settlement.

15. **Termination of Settlement** – If the Settlement is terminated as provided in the Stipulation or the Effective Date of the Settlement otherwise fails to occur, this Judgment shall be vacated, rendered null and void and be of no further force and effect, except as otherwise provided by the Stipulation, and this Judgment shall be without prejudice to the rights of Lead Plaintiffs, the other Settlement Class Members and Defendants, and the Parties shall revert to their respective positions in the Action as of October 17, 2023 as provided in the Stipulation.

16. **Entry of Final Judgment** – There is no just reason to delay the entry of this Judgment as a final judgment in this Action. Accordingly, the Clerk of the Court is expressly directed to immediately enter this final judgment in this Action.

SO ORDERED this _____ day of _____, 2024.


_____
The Honorable Edward M. Chen
United States District Judge

1

**<u>Exhibit 1</u>**

2

3

**<u>[List of Persons and Entities Excluded from the Settlement Class Pursuant to Request]</u>**

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Exhibit 2

**SAXENA WHITE P.A.**
David R. Kaplan (SBN 230144)
dkaplan@saxenawhite.com
Emily Bishop (SBN 319383)
ebishop@saxenawhite.com
505 Lomas Santa Fe Drive, Suite 180
Solana Beach, CA 92075
Tel.: (858) 997-0860
Fax: (858) 369-0096

*Counsel for Lead Plaintiffs Employees' Retirement*
*System of the City of Baltimore, City of*
*Philadelphia Board of Pensions and Retirement, and*
*Plymouth County Retirement Association, and*
*Lead Counsel for the Proposed Settlement Class*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE FIBROGEN, INC., SECURITIES LITIGATION | Case No. 3:21-cv-02623-EMC <br><br> <u>CLASS ACTION</u> <br><br> **DECLARATION OF SCOTT WALSTER REGARDING CALCULATION OF SETTLEMENT CLASS'S ESTIMATED DAMAGES** |

I, Scott Walster, declare as follows:

## I.    INTRODUCTION

1.    I am a Principal at Global Economics Group, LLC ("Global Economics"), a Chicago-based firm that specializes in the application of economics, finance, statistics, and valuation principles to questions that arise in a variety of contexts, including, as here, in the context of litigation.

2.    Prior to joining Global Economics, I was an Assistant Director and Financial Economist in the Division of Economic and Risk Analysis at the U.S. Securities and Exchange Commission ("SEC"). I worked in the SEC's Office of Litigation Economics where I performed economic analyses to assist the SEC with its investigations, litigations, and settlement negotiations related to enforcement actions. My work focused on the economics of corporate disclosure, market manipulation, securities lending, broker-dealer violations, and investment adviser fraud. As part of my role at the SEC, I provided economic advice to help the Commissioners and the Division of Enforcement determine the appropriate amount of investor damages, ill-gotten gains, corporate penalties, as well as the appropriate means to distribute recovered money back to investors through Fair Funds. I have provided testimony and written declarations on behalf of the SEC in a variety of enforcement litigations, including matters involving corporate disclosures, insider trading, and manipulative trading schemes.

3.    Prior to working at the SEC, I was a Vice President at Global Economics and a Director at Chicago Partners, LLC, a consulting firm that specialized in the application of economic and finance principles in the context of litigation and regulation. I have 20 years of experience in directing and implementing analyses involving securities valuation, portfolio performance, and statistics. I received a B.S. in Finance and Economics from the University of Illinois at Chicago.

4.    In connection with the Settlement of the above-captioned litigation ("Action"), I was retained by counsel for Lead Plaintiffs ("Lead Counsel") to design a proposed "Plan of Allocation" to fairly and equitably allocate the net Settlement proceeds among eligible Settlement Class Members[1] (i.e., Settlement Class Members who or which submit a Claim Form to the Claims Administrator that is

---

[1] Unless otherwise defined in this declaration, capitalized terms have the same definitions as ascribed in the Stipulation and Agreement of Settlement in this Action (the "Stipulation").

approved by the Court for payment).[2]  That Plan of Allocation is being submitted to the Court as part of the proposed Notice.

5.     I have been asked by Lead Counsel to explain how the Settlement Class's estimated damages were calculated, both generally and in particular with regard to the maximum damages for common stock and options for the class period certified by the Court in its Order, which certified a class of shareholders from December 20, 2018, through April 6, 2021, inclusive ("Certified Class Period").  I estimate maximum common stock damages for the Certified Class Period to be $1,261 million without netting of pre-class period gains and $818 million with netting of pre-class period gains, and maximum options damages to be $33 million.[3]

## II.     METHOD USED FOR CALCULATING THE SETTLEMENT CLASS'S ESTIMATED COMMON STOCK DAMAGES

6.     For losses to be compensable damages under the federal securities laws, the disclosure of the allegedly misrepresented or concealed information must be a substantial cause of the decline in the price of the relevant security.  In this case, Lead Plaintiffs claim that the relevant truth of Defendants' alleged misconduct was revealed to the market through four corrective disclosures (on May 9, 2019, March 1, 2021, April 6, 2021, and July 15, 2021) with the information that emerged impacting the market price of FibroGen common stock on six dates (May 10, 2019, March 2-3, 2021, April 7-8, 2021, and July 16, 2021).  Based on the Court's Order, the July 15, 2021 disclosure and ensuing decline of FibroGen common stock on July 16, 2021 were no longer actionable.

7.     Standard procedure in Rule 10b-5 cases is to employ the most common methodology to quantify artificial (*i.e.,* fraud-related) inflation, a technique called an "event study," a statistical technique often relied upon by academics both inside and outside of the litigation context to establish a causal connection between new company-specific news and movements in the market price of a company's

---

[2] During the course of litigation, my colleague at Global Economics, Chad Coffman, was engaged by Lead Counsel to establish market efficiency for common stock and options and that damages could be calculated on a class-wide basis.  *See* Expert Report of Chad Coffman, CFA, January 27, 2023, ECF No. 147-2 (the "Coffman Market Efficiency Report").  I was also engaged by Lead Counsel to help determine the losses suffered by certain class members.

[3] Netting pre-class gains assumes that sales of shares during the Certified Class Period that had been purchased prior to the Certified Class Period and experienced gains as a result of the alleged artificial inflation will offset those gains against Certified Class Period losses.

securities.  An event study is a well-accepted statistical method utilized for over 50 years to isolate the impact of information on the market prices of securities.[4]  In calculating damages for this matter, I used an event study to determine whether FibroGen common stock reacted to the release of the allegedly corrective information and the value of that corrective information after controlling for market and industry effects.[5]

8.    Based on the results of the event study, I determined that there were statistically significant abnormal price returns in FibroGen common stock in response to the allegedly corrective information disclosed to the market on May 9, 2019, March 1, 2021, and April 6, 2021.  Thus, investors who purchased FibroGen common stock while the alleged misinformation was in the market suffered a loss that otherwise would have occurred prior to their purchase, and therefore the Defendants' alleged misrepresentations and omissions represent the but-for cause of the Settlement Class's alleged economic losses.

9.    I used the standard and well-settled formula for assessing class members' individual damages, the "out-of-pocket" method, which relies on the event study's estimates of artificial inflation and measures damages as the artificial inflation per share at the time of purchase less the artificial inflation per share at the time of sale provided class members held the security through at least one corrective disclosure (or just the inflation per share at the time of purchase if the share is held through the final relevant disclosure).[6]  This approach ensures that only investors that were damaged by the dissipation of artificial inflation are included in the estimation of common stock damages.

10.    For illustrative purposes, I refer to the estimated artificial inflation amounts set forth in Table A of the proposed Plan of Allocation attached as Appendix A to the Notice.  For example, if an investor purchased FibroGen common stock on December 28, 2018 when there was $31.60 per share of artificial inflation embedded in the stock price but sold those shares before any of the fraud-related disclosures were released to the market, and thus sold their shares before there was a corrective event that

---

[4] David I. Tabak and Frederick C. Dunbar, "Materiality and Magnitude: Event Studies in the Courtroom," Ch. 19, *Litigation Services Handbook, The Role of the Financial Expert*, Third Edition, 2001.

[5] I employed the event study documented in the Coffman Market Efficiency Report, Section VII.F.

[6] I have assumed that the inflation dissipated by the disclosures in percentage terms was present in the common stock from the beginning of the Certified Class Period.  This is a common approach and is referred to as the "constant percentage" methodology.  Nevertheless, regardless of whether that assumption holds, and even if an alternative method for quantifying inflation prior to the disclosures were applied, the damages under the "out-of-pocket" method described herein can still be calculated formulaically on a class-wide basis.

changed the artificial inflation present in FibroGen common stock, then that investor would have zero damages.  In other words, in calculating damages, only investors that held their shares through at least one of the fraud-related disclosures and therefore suffered a fraud-related investment loss and suffered damages under application of the standard formula.

11.    By comparison, if another investor purchased FibroGen common stock on December 28, 2018 when there was $31.60 of artificial inflation but sold on May 10, 2019 after the first fraud-related disclosure, when the artificial inflation had dissipated down to $22.95 per share, then that investor would have $8.65 per share in damages ($31.60 of inflation at time of purchase *minus* $22.95 per share of inflation at the time of sale).

## III.    ESTIMATING AGGREGATE DAMAGES FOR FIBROGEN COMMON STOCK

12.    Ideally, if I had access to the actual trading records of all FibroGen investors, I could calculate aggregate damages and damaged shares precisely.  However, typically, as in this case, experts calculating aggregate damages do not have access to the detailed trading records of class members.  In order to estimate the maximum recoverable damages in the absence of actual trading records, I needed to utilize a model to estimate the trading behavior of investors during the class periods through which I can track when institutional investors bought and sold shares.  I used the widely accepted institutional and proportional two-trader model, which I describe herein.[7]

13.    **Institutional Model**: Each calendar quarter, institutional investment managers that exercise discretion over $100 million or more in publicly traded equity securities are required to report their holdings to the SEC on Schedule 13-F.  I have obtained a summary of this holdings data for FibroGen from S&P CapitalIQ.  During the Certified Class Period ending April 6, 2021, reporting institutions held on average 75% of the public float of FibroGen common stock.  From this data, I constructed a trading model for institutions.  Using this quarterly data to pro-rate each institution's holdings between quarter ends (weighted by total trading volume of the stock on each day), and using the well-known first-in, first-out

---

[7] *See,* Mayer, Marcia Kramer, "Best-Fit Estimation of Damaged Volume in Shareholder Class Actions: The Multi-Sector, Multi-Trader Model of Investor Behavior," *National Economic Research Associates (NERA)*, Third Edition, October 2000.  NERA is a firm that often represents defendants in class action securities matters.  *See also,* Fischel, Daniel R., Keable, Michael A., and Ross, David J., "The Use of Trading Models to Estimate Aggregate Damages in Securities Fraud Litigation: An Update," *The National Legal Center for Public Interest*, Vol. 10, Number 3, March 2006.

("FIFO") inventory assumption in order to match purchases and acquisitions of shares with sales, I modeled the timing of each class period purchase and its corresponding sale (if the purchased shares were sold during the relevant time period).[8]  In my experience, this is the most widely utilized method for modeling institutional trading and has often been used by experts retained by defendants in other securities class actions.  Based on the implied daily trading activity, I can calculate damages for each institution applying the methodology described above.

14.    **80/20 Proportional Two-Trader Model**: I also estimated damages for the remaining shares that are not reflected in the quarterly holdings discussed above.  This group is made up of non-reporting institutions and individual investors.  To estimate damages for this group of class period purchasers, experts in cases such as this often apply a standard methodology commonly referred to as the 80/20 Proportional Two-Trader Model.  Because no investor-specific holdings information is available for non-institutions, the only observable trading input for non-institutional holders is the total trading volume.  For the volume of shares available to trade not held by reporting institutions, this non-institutional model assumes that 80% of the volume is accounted for by "fast" traders that hold 20% of the non-institutional shares.  The remaining 20% of volume is accounted for by "slow" traders that hold 80% of the non-institutional shares.  Within each group of "fast" and "slow" traders, each share is equally likely to trade on any given day, regardless of how long it was held.  Based on these assumptions, the algorithm identifies the number of shares purchased on each day and when those shares were ultimately sold (if at all).

15.    Using the models for when shares traded and the amount of artificial inflation embedded in those shares on each day of the class period, I calculated the maximum recoverable damages.  The calculation of damages also incorporates the application of a statutory cap on recovery in federal securities cases brought under Rule 10(b)-5 (the 90-day lookback provision of the Private Securities Litigation Reform Act of 1995).  The limitation is that damages calculated on FibroGen's common stock purchased during the class period and sold during the 90-day lookback period cannot exceed the difference between the purchase price paid during the class period and average closing price from the last corrective disclosure to the date of sale.

---

[8] FIFO is a standard accounting methodology used by countless corporations, taught in introductory accounting classes, and commonly used in litigation matters such as this.

16.    Based on these methodologies, I estimate maximum common stock damages for the Certified Class Period to be $818 million.

17.    These damages numbers assume Lead Plaintiffs' success in establishing loss causation for all of the remaining alleged corrective disclosures, assumes no impact of confounding information, assumes that any apparent continued decline in prices on the days following the days where allegedly corrective information was released to the market is attributable to the alleged corrective disclosures, and that 100% of damaged investors submit proper claims.  Had the Action continued, however, Defendants would have likely challenged some if not all of these assumptions.  For instance, Lead Counsel informed me that Defendants made credible arguments that, if fully accepted by the Court or a jury, could have limited the actionable class period to just between November 8, 2019 through April 6, 2021, inclusive, and with only one actionable corrective disclosure on April 6, 2021 (after the close of trading) (the "Minimum Damages Scenario").  In that specific scenario, I estimate that damages for FibroGen common stockholders would be as low as $642 million without pre-class period netting of gains and $443 million with netting of pre-class period gains, and $13 million for FibroGen options holders.

## IV.    ESTIMATING AGGREGATE DAMAGES FOR FIBROGEN OPTIONS

18.    Certain Plaintiffs invested in FibroGen option contracts and have Rule 10(b) claims in connection with their entry into these contracts.  Options are derivative securities, a type of security whose value is dependent on the market price of an underlying security or asset.  In this case, during the relevant period, the pricing for FibroGen options was dependent on the market price of FibroGen common stock.

19.    There are two basic types of options: call options and put options.  A call option gives the holder of the option the right to buy an asset (in this case, FibroGen common stock) by a certain date, called the expiration date, and at a certain price, called the strike price or exercise price.  A put option gives the holder the right to sell an asset (in this case, FibroGen common stock) by an expiration date at the strike price.  Investments in long call options and short put options, like investments in FibroGen common stock, gain value when the common stock price increases and lose value when the common stock price decreases such as in the case here, where alleged artificial inflation is removed from the stock price when the alleged corrective disclosures are revealed to the market.

20.     There were 131 unique FibroGen call option series and 109 unique FibroGen put option series with outstanding contracts on one or more of the alleged corrective disclosures dates and, therefore, potentially damaged.  I am readily able to estimate aggregate damages for FibroGen options because I have access to the relevant data, which includes daily information on quoted prices and the number of outstanding contracts for each option series.[9]  As I explain below, from this data I can calculate damages for each option series related to each of the alleged corrective disclosures.  Option aggregate damages are the sum of the damages across all these option series and all the alleged corrective disclosures.

21.     As with FibroGen common stock, to determine the inflation (deflation) in FibroGen call (put) options, I begin with the change in price for each option series on the alleged corrective disclosure events.  I then multiply the change in price $p$ by a factor $x$ to reflect that some of the change in price is due to market factors.  Factor $x$ is determined by observing from the event study what fraction of the common stock return is accounted for by market factors.  For example, in response to the first corrective disclosure after market hours on May 9, 2019, FibroGen common stock fell by 20.32% on May 10, 2019, but after controlling for market and industry factors, the negative abnormal return attributable to the allegedly corrective behavior was 20.02%.  For this date, I calculate Factor $x$ as 20.02% divided by the full drop of 20.32%, which is 98.5%.  Then for each option series, inflation is calculated as the option's change in price on May 10, 2019 multiplied by Factor $x$.  For example, referring to the Plan of Allocation for illustrative purposes, the call option series with strike price $30 and expiring May 17, 2019 has a change in price of $9.50 ($15.95-$6.45), which I then multiply by Factor $x$ resulting in $9.36 = ($9.50 * 98.5%), which can be found in the first row of Table C in the Plan of Allocation, the call option inflation table.[10]  This procedure is repeated for each option series and each alleged corrective disclosure date.

---

[9] Data on options for FibroGen Common Stock were provided by iVolatility.  *See* www.ivolatility.com.  For each option series (unique call/put, strike price, and expiration date), the iVolatility data contains daily bid price, ask price, mean price, volume, and open interest, among other measures.

[10] If the price change of the FibroGen call option is not in the same direction as the abnormal return associated with FibroGen common stock on that day, I do not calculate inflation on that day.  Likewise, if the price change of the FibroGen put option is not in the opposite direction of the abnormal return associated with FibroGen Common Stock, I do not calculate deflation on that day.

22.     As with FibroGen common stock, for FibroGen options, economic damages are calculated as artificial inflation (or deflation for puts)[11] at the time of purchase subtracting the inflation (or deflation for puts) at the time of sale.  These estimated artificial inflation amounts are set forth in Tables C and D of the proposed Plan of Allocation.  For instance, a call option expiring April 16, 2021 with a strike price of $40 and purchased on February 18, 2021 when it contained $10.23 of inflation and then sold on March 2, 2021 when it had $0.93 of inflation would have an inflationary loss of $9.30 per share ($10.23 minus $0.93). [12]

23.     Unlike the data available for the common stock, there are no options data available from institutions.  Nor are options trades limited to the public float or shares outstanding because a new options contract can be created by market participants agreeing on contract terms.  Therefore, aggregate damages for options are calculated by multiplying the open interest in an option series (the number of shares held on a particular day) by the change in price due to the removal of artificial inflation on each of the alleged corrective disclosure days for each option series.  The sum of these changes is the maximum aggregate damages.  I estimate maximum damages for FibroGen options to be $33 million for the Certified Class Period and $13 million (or zero if options were not certified) in the Minimum Damages Scenario.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on December 7, 2023, in Chicago, Illinois.

Scott Walster
_____
Scott Walster

---

[11] For put options, the alleged fraud resulted in artificial deflation.  For ease of exposition, when I discuss the relationship between the alleged misstatements and artificial inflation it should be understood that I am also talking about the artificial deflation that would be introduced for put options.

[12] To calculate an individual option holder's damages (rather than aggregate damages) as outlined in the Plan of Allocation, I used the "out-of-pocket" method, which requires similar documentation as that needed by common stock shareholders, namely proof of the number of options purchased and sold on each date over the class period and their corresponding prices.

# Exhibit 3

1

**SAXENA WHITE P.A.**
David R. Kaplan (SBN 230144)

2

dkaplan@saxenawhite.com
Emily Bishop (SBN 319383)

3

ebishop@saxenawhite.com

4

505 Lomas Santa Fe Drive, Suite 180
Solana Beach, CA 92075

5

Tel.: (858) 997-0860
Fax: (858) 369-0096

6

7

*Counsel for Lead Plaintiffs Employees' Retirement*
*System of the City of Baltimore, City of*

8

*Philadelphia Board of Pensions and Retirement,*
*and Plymouth County Retirement Association, and*

9

*Lead Counsel for the Proposed Settlement Class*

10

*[Additional Counsel listed on Signature Page]*

11

**UNITED STATES DISTRICT COURT**

12

**NORTHERN DISTRICT OF CALIFORNIA**

13

IN RE FIBROGEN, INC., SECURITIES
LITIGATION

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. 3:21-cv-02623-EMC

**CLASS ACTION**

DECLARATION OF LUIGGY
SEGURA IN SUPPORT OF LEAD
PLAINTIFFS' UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT

1                 I, Luiggy Segura, declare as follows:

2         1.     I am a Vice President of Securities Class Actions at JND Legal Administration

3   ("JND"), located at 3333 New Hyde Park Rd, New Hyde Park, NY 11042. At the request of Lead

4   Counsel, I submit this Declaration to provide the Court and the Parties to the above-captioned

5   action (the "Action") with information regarding JND's experience and the proposed plan for

6   notice and claims administration for the proposed settlement of the Action (the "Settlement").[1]

7   The following statements are based on my personal knowledge and information provided to me by

8   Lead Counsel, and, if called as a witness, I could and would testify competently thereto.

9         2.     JND has been retained by Lead Counsel, subject to Court approval, to act as the

10  Claims Administrator and provide notice and claims administration services for the Settlement.

11  JND was selected after submitting a detailed proposal in response to a request for proposal from

12  Lead Counsel. Based on information provided by Lead Counsel, JND's proposal included

13  proposed pricing for the engagement including per-claim fees for claim processing and the

14  proposed costs for, among other things, printing and mailing of notices, call center services,

15  website development and maintenance, and building and testing of the loss calculation module.

16        3.     JND is a nationally recognized class action administration firm. The principals of

17  JND collectively have over 75 years of experience in the class action legal and administrative

18  fields, and have personally overseen some of the largest securities class action settlements in the

19  country's history, including, among many others, *In re WorldCom, Inc. Securities Litigation*, No.

20  1:02-cv-3288 (S.D.N.Y.) ($6.15 billion settlement), *In re Tyco International Ltd. Securities*

21  *Litigation*, No. 1:02-cv-1335-PB (D.N.H.) ($3.2 billion settlement), *In re Bank of America Corp.*

22  *Securities Litigation, Derivative, and ERISA Litigation*, No. 1:09-md-2058 (S.D.N.Y.) ($2.4

23  billion settlement), *In re Royal Ahold N.V. Securities ERISA Litigation*, No. 1:03-md-1539 (D.

24  Md.) ($1.1 billion settlement), and *In re Initial Public Offering Securities Litigation*, No. 1:21-mc-

25  00092 (S.D.N.Y.) ($586 million settlement). More information on JND's qualifications and

26  experience can be found on www.jndla.com. Our firm profile is attached as Exhibit A.

27  

---

[1] Unless otherwise defined, capitalized terms have the meanings ascribed to them in the Stipulation
28  and Agreement of Settlement in this Action (the "Stipulation" or the "Settlement Agreement.").

1

**Proposed Plan for Disseminating Notice of the Settlement to the Settlement Class**

2      4.      Pursuant to Rule 23(c)(2) of the Federal Rules of Civil Procedure, the Court "must

3   direct to class members the best notice that is practicable under the circumstances, including

4   individual notice to all members who can be identified through reasonable effort. The notice may

5   be by one or more of the following: United States mail, electronic means, or other appropriate

6   means." As a result, the proposed plan here is to disseminate notice of the Settlement via a robust

7   direct notice effort, supplemented by a digital notice posting, a print notice placement, and the

8   distribution of a press release. A settlement website, toll-free telephone number, and dedicated

9   email address will provide additional opportunities for Settlement Class Members to learn more

10   about the proposed Settlement.

11      5.      The proposed plan for providing notice of the Settlement to the Settlement Class

12   uses customary procedures that have been designed to provide direct mailed notice to investors

13   who are potential members of the Settlement Class. The proposed Settlement Class consists of all

14   persons who purchased or acquired FibroGen securities, including options, between December 20,

15   2018 through July 15, 2021, inclusive.  Excluded from the Settlement Class are: (1) Defendants;

16   (2) the Officers or directors of FibroGen during the Settlement Class Period; (3) the Immediate

17   Family members of any Defendant or any Officer or director of FibroGen during the Settlement

18   Class Period; and (4) any entity that any Defendant owns or controls, or owned or controlled,

19   during the Settlement Class Period.  Also excluded from the Settlement Class are any persons who

20   submit a request for exclusion from the Settlement Class that is accepted by the Court, and

21   plaintiffs in the Opt-Out Action.

22      6.      As set forth in the Parties' Stipulation and in the proposed Preliminary Approval

23   Order, FibroGen shall provide JND with lists containing the names and addresses, and e-mail

24   addresses[2] (if available) of holders of shares of FibroGen common stock, or contracts of FibroGen

25   _____

26   [2] Where an email address is provided in addition to a physical mailing address, JND will mail a
   Notice Packet to the mailing address provided as well as deliver a copy via email. In JND's
   experience, email addresses are not typically provided for purposes of notice in securities class

27   actions. Regarding physical mail, JND will utilize the same types of envelopes it has successfully
   used in other securities class action settlements.  Social media and text messaging is not often

28   utilized in securities class action settlement notification because, as detailed below, the majority

1    call or put options during the Settlement Class Period, to the extent such lists are reasonably

2    available from FibroGen's stock transfer agent ("Transfer Agent Records"), within ten (10)

3    calendar days of the Court's preliminary approval of the Settlement. As set forth in the proposed

4    Preliminary Approval Order, JND will mail a copy of the Notice and Claim Form, in the forms

5    approved by the Court (together, the "Notice Packet") to the persons and entities set forth in the

6    Transfer Agent Records within twenty (20) calendar days of the Court's preliminary approval of

7    the Settlement (the "Notice Date").

8            7.      In addition, as in most class actions of this nature, the large majority of Settlement

9    Class Members will be beneficial purchasers who hold their securities in "street name," i.e., the

10   securities are purchased by banks, brokers, and other nominees ("Nominees") in the name of the

11   Nominee on behalf of the beneficial purchaser. Accordingly, to effectuate notice to the majority

12   of the Settlement Class, JND will mail a copy of the Notice Packet to JND's database of

13   approximately 4,000 Nominees.[3] These Nominees are instructed to either forward the Notice

14   Packet to potential Settlement Class Members or provide the names, addresses and, if available, e-

15   mail addresses of potential Settlement Class Members to JND so that we may forward the Notice

16   Packet directly.[4] The Notice Packet mailed to Nominees will include a cover letter highlighting

17   these requirements as well as JND's contact information for questions.

18

19   _____

20   of potential class members for any securities class action are beneficial purchasers who hold their
     securities in "street name," meaning social media and text messaging notification would likely not
21   significantly increase settlement participation.  JND has a legal notice team of advertising/media
     experts who help design, develop, and implement notice programs to meet the requirements of
22   Rule 23 and relevant state court rules.

     [3] JND's Nominee database is continually monitored and updated as Nominees change addresses,
23   merge, go out of business and/or come into existence.

24   [4] As set forth in the proposed Preliminary Approval Order and Notice, Nominees who purchased
     or otherwise acquired shares of FibroGen common stock, or purchased FibroGen call options or
25   sold FibroGen put options during the Settlement Class Period for the benefit of another person or
     entity shall:  (a) within seven (7) calendar days of receipt of the Notice, request from the Claims
26   Administrator sufficient copies of the Notice Packet to forward to all such beneficial owners and
     within seven (7) calendar days of receipt of those Notice Packets forward them to all such
27   beneficial owners; or (b) within seven (7) calendar days of receipt of the Notice, send a list of the
     names, mailing addresses, and, if available, email addresses, of all such beneficial owners to the
28   Claims Administrator in which event the Claims Administrator shall promptly mail or email the
     Notice Packet to such beneficial owners.

     DECL. OF LUIGGY SEGURA ISO
     LP'S MOT. FOR PRELIM. APPR.                    3
     3:21-cv-02623-EMC

8.    Following the mailing to Nominees, JND will send reminder postcards to the Nominees in its Broker Database who do not respond to the initial mailing. The postcard will advise Nominees of their obligation to facilitate notice of the Settlement to their clients who purchased or otherwise acquired the shares of FibroGen common stock, or purchased FibroGen call options or sold FibroGen put options during the Settlement Class Period. In addition, JND will perform a personalized calling campaign to the largest Nominees to prompt them to respond to the Notice by either identifying potential Settlement Class Members or requesting Notice Packets to forward directly to their clients. JND typically makes multiple attempts to reach a person at the Nominees' offices. If JND is unable to reach the Nominee by phone, JND will send the Nominee an email reminding them to provide the names and addresses of their clients in accordance with the Notice.

9.    In addition, JND will research filings with the United States Securities and Exchange Commission ("SEC") on Form 13-F to identify additional institutions or entities that may have purchased, otherwise acquired, or sold FibroGen securities during the Settlement Class Period. JND will mail the Notice Packet to those institutions.

10.    JND will also submit the Notice to the Depository Trust Company ("DTC") to post on the DTC Legal Notice System ("LENS"). LENS enables DTC member banks and brokers to review the Notice and contact JND directly to obtain copies of the Notice Packet for their clients who may be potential Settlement Class Members.

11.    As requests are received, JND will mail copies of the Notice Packet to Nominees (in bulk), or directly mail the Notice Packet to potential Settlement Class Members identified by Nominees. JND will also disseminate the Notice Packet to any other persons and entities requesting them or other points of contact for potential Settlement Class Members as appropriate.

12.    Any Notice Packets that are returned as undeliverable mail will be reviewed to determine if an alternative or updated address is available from the U.S. Postal Service or through a third-party vendor to which JND subscribes and will be re-mailed to the updated or alternative address, if available.

13.     To supplement direct mailed notice to potential Settlement Class Members, JND will cause the Summary Notice to be published in *Investor's Business Daily* and to be transmitted over *PR Newswire*.  As set forth in the proposed Preliminary Approval Order, the foregoing publication/transmission will occur not later than ten (10) business days of the Notice Date.

14.     In coordination with Lead Counsel, JND will design and maintain a website for the Settlement, www.FibroGenSecuritiesLitigation.com (the "Settlement Website"). The Settlement Website will contain an overview of the Settlement, important dates, and deadlines in connection with the Settlement, including the exclusion/objection deadline and the date and time of the Final Approval Hearing, copies of the Notice, Claim Form, Summary Notice, Stipulation, Complaint, and other documents related to the Settlement. The Settlement Website will also contain a claim filing portal for those Settlement Class Members who wish to file their Claim online, as well as provide detailed instructions for Nominees and third-party filers filing Claims electronically on behalf of a large number of clients.

15.     A toll-free telephone number, 877-595-0137, and dedicated email address, info@FibroGenSecuritiesLitigation.com, will also be established and staffed with customer service representatives trained to answer questions about the Settlement. As a result of its experience in administering complex class action settlements, JND has developed an expertise in anticipating the questions that class members will ask and how to most efficiently answer them, and we will leverage that experience for this Settlement. Both the toll-free telephone number and email address will be displayed on the Notice, Claim Form, Summary Notice, as well as on the Settlement Website.

16.     Based on JND's experience with securities class actions, we expect the direct notice effort alone to effectively notify Settlement Class Members of the proposed Settlement. The supplemental digital posting through DTC's LENS, the print placement in *Investor's Business Daily*, the distribution of a press release over *PR Newswire*, and the establishment of the case specific website, toll-free telephone number, and email will further enhance notice exposure. The proposed notice plan is designed to reach as many Settlement Class Members as possible and inform them about the Settlement and their rights and options. JND believes that the proposed

notice plan provides the best method for notifying potential Settlement Class Members of the Settlement in this Action. Indeed, JND has employed virtually identical notice plans in recent securities class actions settlements, including before this Court and in this District. *See, e.g.*, *Davis v. Yelp*, 2023 WL 3063823, at *1 (N.D. Cal. Jan. 27, 2023) (Chen, J.); *Fleming v. Impax Laboratories, Inc.*, 2022 WL 2789496, at *5 (N.D. Cal. July 15, 2022). In JND's opinion, the proposed notice plan provides the best notice practicable under the circumstances, is consistent with the requirements of Rule 23, and is consistent with other similar court-approved securities class action notice programs.

### Information on Settlement Administration, Estimated Settlement Class Size and Number of Potential Claims

17.    In developing the proposed notice plan for the Settlement, JND was asked to provide a rough estimate of the number of potential Settlement Class Members and relatedly, the number of Notice Packets to be mailed. As noted above, the majority of potential class members for any securities class action are beneficial purchasers who hold their securities in "street name."[5] When an investor opens an investment account, the security he, she or it buys is registered in the issuer's (in this case, FibroGen's) books as belonging to the Nominee. The Nominee, in its records, however, lists the investor as the actual owner. Because of this street name system, even corporate entities often do not know the identity of the vast majority of their investors, as Nominees have the overwhelming bulk of the information related to who owns the securities, the dates of purchase and sale, the quantity of the securities purchased or sold, and the names and addresses of the investors. Since this information is not freely available, it is the reason that the proposed Preliminary Approval Order provides that Nominees shall either: (a) provide names and addresses of beneficial owners to the Claims Administrator; or (b) send the Notice Packet to potential Settlement Class Members. Thus, while the Settlement Class size is unknown, JND knows that: (a) Nominees have contact information for a large number of Settlement Class Members (most

---

[5] According to the U.S. Securities and Exchange Commission ("SEC"), "[a]pproximately 85% of exchange-traded securities are held by securities intermediaries, such as broker-dealers and banks, on behalf of themselves or their customers." https://www.sec.gov/spotlight/proxyprocess/proxyvotingbrief.htm

1    likely the vast majority); and (b) that JND will send Notice Packets for dissemination to potential

2    Settlement Class Members by Nominees that wish to send notice themselves, and that JND will

3    receive investor information from Nominees and disseminate Notice Packets to those potential

4    Settlement Class Members based on that information.

5          18.    Regarding class size, without detailed data being readily available to JND or Lead

6    Counsel, accurately estimating the size of the Class is difficult, and JND can only provide a rough

7    estimate. Thus, in estimating class size for any case, JND utilizes historical settlement data from

8    other securities class action settlements JND has administered, particularly those settlements of

9    similar size and involving companies with similar market capitalizations and numbers of

10   shareholders. Based on this information, we expect to mail approximately 125,000 Notice Packets

11   in this matter. Further, in our experience, in settlements of federal securities class actions, we

12   typically receive Claims from approximately 15% to 25% of the potential Settlement Class

13   Members to whom we mail notice (equating to 18,750 to 31,250 Claims here).[6] The foregoing

14   numbers are only estimates, however, and the actual number of potential Settlement Class

15   Members identified during the notice campaign, as well as the number of Claims ultimately

16   received for processing, may be higher or lower than the estimates provided herein.[7]

17         19.    Since JND does not know the size of the Settlement Class, it cannot state what

18   proportion of Settlement Class Members will receive notice through the notice campaign.

19   However, JND believes based on many years of experience in giving notice in securities class

20   actions, that its process for providing notice will result in a significant percentage of potential

21

22   [6] For example, *Fleming v. Impax Laboratories*, No. 4:16-cv-06557-HSG (N.D. Cal.)
(approximately 28% claims response rate (or approximately 14,000 claims) on over 49,000 notices

23   sent in $33 million securities class action settlement); *Davis v. Yelp*, No. 3:18-cv-00400-EMC
(N.D. Cal.) (approximately 17% claims response rate (or approximately 7,500 claims) on nearly

24   45,000 notices sent out in $22.25 million securities class action settlement); and *Rabkin v. Lion
Biotechnologies, Inc., et al.*, No. 3:17-cv-02086-SI (N.D. Cal.) (approximately 22% claims

25   response rate (or nearly 4,700 claims) on over 21,000 notices sent out in $3.25 million securities
class action settlement). Each of these is a recent securities class action settlement in this District

26   which JND administered using similar methods of notice and administration as proposed for this
Action.

27   [7] To be clear, the number of Settlement Class Members will be a subset of the number of Notice
Packets sent. Not every person or entity that receives a Notice Packet will be a Settlement Class

28   Member.

Settlement Class Members—including Nominees and third-party filers—receiving notice. As detailed above, special emphasis is given to making sure that Nominees, who have the bulk of the investor information, as well as third party filers whose business is filing claims on behalf of institutional investors and other large investors, receive notice.

20.    Based on JND's experience, the majority of large value valid claims will be filed by institutional investors. Many, if not most, institutional investors—such as state, city, and union pension funds—file, or hire a third-party claims filing service to file claims on the investor's behalf. Given the fact that institutional investors typically file the largest claims in a case, these investors typically receive the largest portion of the Net Settlement Fund.  Based on this, it is JND's expectation that institutional investors will file the largest claims in the Action and receive the bulk of the Net Settlement Fund.

21.    Settlement Class Members who wish to be eligible to receive a distribution from the Settlement Fund are required to complete and submit to JND a properly executed Claim either by mail or online such that it is postmarked (if mailed) or received no later than the claims-submission deadline established by the Court, together with adequate supporting documentation for the transactions and holdings in FibroGen common stock, FibroGen call options, and/or FibroGen put options reported therein.

22.    Each Claim received by JND will be reviewed upon receipt to verify that all required information has been provided. The documentation provided with each Claim will also be reviewed for authenticity and compared to the information provided in the Claim to verify the Claimant's identity and the purchase/acquisition, sale, and holding information. JND will process each Claim in accordance with the Court-approved Plan of Allocation using a calculation module developed for the Settlement.

23.    If a Claim is determined to be defective, a deficiency notification (via letter or email) will be sent to the Claimant describing the deficiency in the Claim including, where applicable, what is necessary to cure the deficiency. The deficiency notification will also advise the Claimant how much time he, she, or it has to submit the appropriate information and/or documentary evidence to complete/cure the Claim. If the deficiency in the Claim is not cured, the

Claim will be recommended for rejection (in whole or in part). The deficiency notification will also advise Claimants of their right to contest JND's administrative determination with respect to their Claim and to request the Court's review of their Claim if they desire.

24. After the Claims (and responses to deficiency notifications) have been fully processed, and final administrative determinations have been made as to which Claims are valid, JND will present its administrative report on the Claims received to the Court. Thereafter, upon Court approval, JND will distribute the net Settlement proceeds to eligible Settlement Class Members *pro rata* based upon each Claimant's recognized loss amount as calculated pursuant to the Court-approved plan of allocation, the total recognized losses of all eligible Claims, and the amount available for distribution.

25. Distributions from the net Settlement proceeds will be sent to eligible Settlement Class Members via checks and wires with, in the case of check payments, a specified period for each Claimant to cash their payment (typically 90 or 180 days).[8] For any checks that are not cashed, JND will conduct an outreach campaign to encourage cashing and providing Claimants with reissued checks where applicable.

26. The process described above is the standard claims administration process for all securities class action settlements handled by JND.

**Estimated Administration Costs**

27. Based on JND's experience, we estimate that administering the Settlement, including disseminating notice to the Settlement Class, processing Claims received, and distributing the net Settlement proceeds in accordance with the Court-approved Plan of Allocation, will cost approximately $375,000, which excludes the anticipated requests from Nominees for

---

[8] Due to the expenses associated with administering claims, JND recommends that no distributions be made to Claimants who would receive less than $10. These expenses include the costs of printing and mailing a check, as well as monitoring whether the check has been cashed, all of which could easily exceed the value of such smaller claims. It is standard practice in securities class actions to utilize a minimum check threshold and it is commonplace to use $10 as the minimum amount.

DECL. OF LUIGGY SEGURA ISO
LP'S MOT. FOR PRELIM. APPR.
3:21-cv-02623-EMC

reimbursement of their expenses in connection with providing notice.[9] JND roughly expects the reimbursement fees from Nominees to be $100,000 based on actual charges to similar sized settlements.[10] These costs will be paid from the Settlement Fund upon Court approval.

28. The estimated cost of this administration represents a range of approximately 1.3% to 1.9% of the Settlement Amount. This percentage range is reasonable in relation to the value of the Settlement and is consistent with the administration costs incurred in other securities class action settlements. *See*, *e.g.*, *Mild v. PPG Industries, Inc.*, No. 2:18-cv-04231 (C.D. Cal.) (3.9% notice and administration cost in $25 million securities class action settlement).

29. The foregoing amounts are estimates and the ultimate cost of this administration could change if the number of Notice Packets mailed are substantially greater (or smaller) than our estimate or if the number of Claims received are substantially greater (or smaller) than our estimate. In addition, the cost of this administration could also be impacted by any out-of-scope work encountered during the course of the administration. JND will always strive to keep costs down whenever possible.

### Data and Privacy Practices for Securely Handling Settlement Class Member Data

30. JND is well versed in the handling and management of sensitive information and has in place the technical, administrative, and physical controls necessary to ensure the ongoing confidentiality, integrity, and availability of data.

### Limitation on Use of Data

31. JND collects personal information as a legal administrator to implement legal notice programs, process and validate claims, communicate with claimants and clients, and

---

[9] Regarding Taxes, $5,000 of JND's cost estimate will cover the filing of tax returns for the Settlement Fund. While it is possible that, in the event that interest on the Settlement Fund may exceed the Notice and Administration Costs, taxes may be due on such net interest, in JND's experience, such a scenario is highly unlikely for settlements of less than $100 million, and in any event the amount owed axiomatically will be less than any such net interest and will be paid out of the Settlement Fund prior to distribution. For a variety of reasons, it is therefore difficult to provide any specific estimates.

[10] Because these costs are merely estimates and dependent on a number of variables, JND recommended to Lead Counsel that Plaintiffs seek an amount of Notice and Administration Costs in excess of the base estimate and the amount of estimated Nominee expenses; accordingly, Lead Counsel and JND are proposing an expenses estimate for claims administration of $550,000.

disburse settlement benefits. JND only uses personal information collected to accomplish the purpose(s) for which such information was provided. JND may also use personal information to investigate or prevent illegal activities such as suspected fraud and to comply with applicable laws, regulations, and court orders.

### Technical Controls

32.    To help ensure proper access and handling of data, JND's systems have been designed with privacy in mind and utilize a role-based access control methodology to ensure access is granted in accordance with the principle of least privilege security concept. Dedicated applications and storage are provided for each settlement, ensuring data that has been collected for different purposes can be processed separately.

33.    JND has deployed Next Generation Firewalls at all perimeter points which provide intrusion detection and prevention protection (IDS/IPS) to proactively block suspicious and malicious traffic without the need for human intervention. Security event and audit log data is transmitted to JND's Security Information and Event Management (SIEM) solution which aggregates data from across the enterprise to deliver analytics and threat intelligence. Additionally, an Endpoint Detection and Response (EDR) solution is deployed on all endpoints to perform real-time and schedule scanning along with behavioral analysis to protect systems from malicious software and activity. JND also has a vulnerability management program in place that performs monthly scans across its environment and retains an independent third-party security firm to perform penetration testing.

34.    Encryption is also in use throughout JND's systems and services. Access to JND's information processing system is provided by a web application configured to be accessible only via Transport Layer Security (TLS) connectivity. Transmission of data outside of JND's environment also occurs via TLS encrypted web traffic or similarly protected secure and encrypted protocols. Databases are protected with encryption keys and employ full database encryption and/or field/column level encryption to ensure the protection of sensitive data. Furthermore, the physical disks of all servers and workstations are also protected with encryption.

35.    Industry standard logical access controls are in place to prevent unauthorized access to JND's network and systems, access is only provided after proper approval, and based on business need. JND provides unique identifiers to each employee, requires complex passwords which regularly expire at routine intervals, and uses multifactor authentications for all remote access.

### Administrative Policies

36.    JND performs background checks on all personnel at onboarding and requires each individual to enter into a non-disclosure and confidentiality agreement. Additionally, all personnel must complete security and privacy training during the onboarding process which educates staff on proper handling of sensitive data. Refresher training is required of employees each year and JND periodically disseminates security and privacy awareness messages to all staff. Personnel are also required to review and attest to applicable security and privacy policies annually.

37.    Upon departure of any employee, JND promptly takes steps to ensure that all access to JND systems is revoked, effective on the date of departure.

38.    JND maintains a suite of information security policies which undergo an annual review and approval process.

39.    Access to systems and data is granted in accordance with the principle of least privilege and guidance to adhere to this principle is included in JND's information security policies and operational procedures. Access reviews are performed quarterly.

40.    JND maintains SOC 2 certification and adheres to the standards of the National Institute and Standards of Technology (NIST).

### Crisis and Risk Management

41.    JND maintains an Incident Response Policy and Plan that provides organization guidance, processes, and procedures to effectuate proper response to a security or privacy incident. The Incident Response Plan includes procedures for the various phases of incident response, including communication and notification for internal and external stakeholders.

42.     JND has in place a Vendor Management program which governs the procurement, initial and periodic assessments, and ongoing management of its relationships with any third-party vendors and service partners.

## Physical Access Controls

43.     JND facilities used to process and store data have adequate physical controls in place to prevent unauthorized access to, or dissemination of, sensitive information. Access to, and within, JND facilities is controlled by key cards assigned only to authorized personnel and only at the level required to perform job duties. Access to highly sensitive areas, such as datacenters, server rooms, mailrooms, while also controlled by key cards, utilize restricted levels of access. Access logs are maintained and access to JND's facilities is reviewed periodically. Facilities are also protected by alarm systems and employ CCTV monitoring and recording systems.

## Data Collection and Retention

44.     JND will only collect the minimum amount of data necessary to administer this Settlement administration, will create a dedicated and separate database to prevent comingling of data, and utilizes that data only for the purposes specified by court orders and settlement documents. All data collected in conjunction with the Settlement is considered sensitive.

45.     All data provided to JND in connection with this Settlement will be handled according to JND's security protocols and applicable laws as detailed above.

## Data Destruction

46.     JND retains data for the minimum amount of time required and securely destroys data once it is no longer required to be retained.

47.     Disposal of media, whether physical or electronic, is done securely and in accordance with NIST 800-88 guidelines to ensure that data cannot be reconstituted.

## Applicable Laws, Standards, and Other Regulations

48.     JND has adopted a NIST-based information security program and series of controls to ensure all security and privacy safeguards are appropriately selected, implemented, and reviewed. JND submits itself and its systems no less than annually to several independent

assessments, such as the American Institute of Certified Public Accountants SOC 2 certification, and penetration testing by a reputable cybersecurity consulting firm.

49.     JND reviews applicable laws, standards, and regulations to ensure compliance.

50.     JND is an approved vendor for the SEC as well as for the Federal Trade Commission ("FTC") and has worked with a number of other government agencies including: the U.S. Equal Employment Opportunity Commission ("EEOC"), the Office of the Comptroller of the Currency ("OCC"), the Consumer Financial Protection Bureau ("CFPB"), the Federal Deposit Insurance Corporation ("FDIC"), the Federal Communications Commission ("FCC"), the Department of Justice ("DOJ"), and the Department of Labor ("DOL"). JND also has Master Services Agreements with various corporations, banks, and other government agencies that were only awarded after JND underwent rigorous reviews of its systems, privacy policies, and procedures.

### Ethical Rules

51.     JND's administrative policies and employee handbook incorporates a commitment to standards of ethical and legal behavior and outlines enforcement clauses for violations resulting in disciplinary action including and up to termination of employment.

### Customer Service Measures

52.     JND provides a link to its Privacy Policy on every website it manages which details, among other things, that JND is committed to protecting privacy, preventing the misuse or unauthorized disclosure of any personal information it collects and maintains, what information JND may collect, how it collects and uses that information, and what rights individuals may have regarding such information. Similarly, all case-specific contact information for JND is displayed prominently on every website it manages, as well as any Court-approved notices sent by JND, as applicable.

53.     Where appropriate, JND includes anti-phishing language in Court-ordered communications indicating that JND will not request confidential information by e-mail and how to identify a valid e-mail sent from JND.

DECL. OF LUIGGY SEGURA ISO
LP'S MOT. FOR PRELIM. APPR.
3:21-cv-02623-EMC

14

1    I declare under penalty of perjury under the laws of the United States of America that the

2    foregoing is true and correct.  Executed on December 5, 2023 in New Hyde Park, New York.

3

4

5    Luiggy Segura

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A



📞 1.800.207.7160
✉ Info@JNDLA.com
🌐 www.JNDLA.com



# Who We Are

With over 70 years of collective experience in law and administration, it's no surprise that JND's seasoned executive management team has built the fastest-growing legal administration firm in the industry. When you work with us, your case receives the personal attention and expertise of our principals –Jen Keough (J), Neil Zola (N), and David Isaac (D).

JND is well-known throughout the legal industry for providing the most responsive, trustworthy, and comprehensive legal administrative service in the country. JND has already been recognized by the New York Law Journal and the Legal Times as the best administration firm in the country for 2018 and 2017. JND was also recently named an approved vendor for the United States Securities and Exchange Commission (SEC) and the Federal Trade Commission (FTC).

Where other firms come up short, clients who want the most dedicated, technically agile team turn to JND for innovative, ambitious strategies with proven results.



📞 1.800.207.7160
✉ Info@JNDLA.com
🌐 www.JNDLA.com



What We Do

JND and its prinicpals have overseen some of the most complex class action and mass tort cases in our country's history.

No other company in the legal industry understands more about client delivery. No one else has proven their ability to handle large, intricate cases like JND. And no other company excels at the range of services JND offers.

 **CLASS ACTION ADMINISTRATION**
Comprehensive administrative resources through pre-settlement consultation, complete notice services, claims processing and validation, scalable call center capabilities, state-of-the-art website design, and an array of distribution services.

 **MASS TORT & LIEN RESOLUTION**
Manage client intake, screening, and retention; medical record retrieval and review; Plaintiff Fact Sheet preparation including a unique online website offering; claims and settlement administration; lien resolution; and disbursements.

 **eDISCOVERY**
Leverage an extensive, flexible cloud-based platform to provide targeted data analysis, logical, physical and mobile forensics, data recovery, email examination, and timeline generation among many other offerings.

 **GOVERNMENT SERVICES**
Assistance with all facets of any administration, including systematic noticing, claims processing and validation, contact services, state-of-the-art website design and distribution, and account reconciliation.



📞 1.800.207.7160
✉ Info@JNDLA.com
🌐 www.JNDLA.com



## Class Action



JND delivers the most reliable and comprehensive legal administrative resources and services available to our clients. Our team has handled some of the most complex class action settlements in the country's history.

 **PRE-SETTLEMENT CONSULTING**

We begin by consulting with clients on how to develop allocation methodologies and design efficient, economical roadmaps for settlement administration while providing preliminary hearing support. Our team works with the parties to compile the class list, or maintain a role as independent auditor of an existing class list to verify completeness.

 **NOTICE PROGRAM**

Effectively notifying class members is key to the approval of your settlement. We advise our clients on effective notice best practices and are experienced in preparing class lists from various sources. Management of the entire CAFA Notice process for Defendants is handled by our team with our proprietary database of officials who need to be notified. Our notice and claim form mailing services utilize creative options to maximize effectiveness and reduce costs, while our advertising team comprises experts handling all media publication needs while obtaining the best rates.

 **CLAIMS PROCESSING**

Our professional staff is trained to process even the most complex claims with efficiency and accuracy and we are readily available to draft, or assist in drafting, claim forms to ensure class comprehension and complete claim form submission. Proprietary databases efficiently capture claim form data as well as accurate and flexible reporting; and with our proprietary online claim submission site, we can provide secure submission and reduce overall complexity. Knowing each case is different, we offer customized reporting to provide a variety of perspectives on the data that our clients may have not considered.

 **BENEFIT DISBURSEMENT**

JND manages all aspects of the settlement fund, including opening disbursement accounts, reconciling accounts, establishing a Qualified Settlement Fund (QSF), filing tax returns, and serving as Escrow Agent. Even the most complex benefit allocation methodology is implemented and applied to individual class members. In addition, we manage tax reporting for settlement disbursements, including the issuance of tax statements, such as W-2s and 1099s, to class members. We also calculate the payroll withholding and employer taxes that are often required in employment class action settlements. Our team partners with a respected CPA firm to prepare settlement fund tax returns.

☎ 1.800.207.7160
✉ Info@JNDLA.com
🌐 www.JNDLA.com

## Prominent Case History

JND is routinely called upon to handle the largest and most complex class action administrations. Some of the matters JND and its Founders have worked on over the years include the following:

- Allagas v. BP Solar Int'l, Inc.
- Auction Houses Antitrust Litigation
- BP Deepwater Horizon Settlement
- BP Solar International, Inc. Settlement
- Cecil v. BP America Production Company
- Chieftain-Marathon Oil Company Settlement
- City of Long Beach Telephone Tax Settlement
- Condé Nast Privacy Litigation
- County of Los Angeles Telephone Tax Settlement
- Equifax Data Breach Settlement
- Expedia Hotel Taxes & Fees Litigation
- Freedom Financial Network Restitution Program
- Greyhound Lines, Inc. ADA Settlement
- Hearst Communications, Inc. Privacy Litigation
- Broiler Chicken Antitrust Litigation
- J.P. Morgan Stable Value Fund ERISA Litigation
- LIBOR-Based Financial Instruments Antitrust Litigation
- Intuit Data Breach Litigation
- J. Crew Factory Store Pricing Litigation
- Langan v. Johnson & Johnson Consumer Companies, Inc.
- MyFord Touch Class Action Settlement
- Navistar MaxxForce Engine Settlement
- Red Bull False Advertising Litigation
- Robert Briseno et al. v. Conagra Foods, Inc.
- TCF National Bank Restitution Program
- TJX Companies False Pricing Settlement
- Uber Technologies Employment Discrimination Settlement
- USC Student Health Center Litigation
- Visa/Mastercard Antitrust Litigation
- Vitamix Blender Settlement



Class Action



📞 1.800.207.7160

✉ Info@JNDLA.com

🌐 www.JNDLA.com

## Prominent Securities Cases

JND's stand-alone securities group handles complex settlement administrations involving common stock, options, notes, derivatives and other complex securities. Our securities team, located in New York, is overseen by Co-Founder Neil Zola, with over 25-years' experience in securities class action litigation and administration. Neil has played a direct role in many of the largest securities settlements in our country's history. Securities matters handled by JND and its Founders include:

- Akorn Securities Litigation
- Akorn, Inc. Data Integrity Securities Litigation
- Amaya Securites Litigation
- Babcock & Wilcox Ent., Inc. Securities Litigation
- Bankrate Securities Litigation
- Barclays Dark Pool Securities Litigation
- Citigroup Securities Litigation
- ComScore Securities Litigation
- Dole Food Company Securities Litigation
- Endo International Securities Litigation
- Endurance Securities Litigation
- Equifax Inc. Securities Litigation
- Fenix Parts Inc. Securities Litigation
- Fiat Chrysler Shareholder Litigation
- GoPro Shareholder Litigation
- Halliburton EPJ Fund Securities Litigation
- Higher One Holdings Securities Litigation
- Illumina, Inc. Securities Litigation
- IPO Securities Litigation
- Lannett Company, Inc. Securities Litigation
- Linkwell Corp. Securities Litigation
- Lion Biotechnologies Securities Litigation
- LSB Industries Security Litigation
- NantHealth, Inc. Securities Litigation
- Nantkwest Securities Litigation
- Nortel Networks Securities Litigation I & II
- Opus Bank Securities Litigation



Securities Experience

- PPG Industries Securities Litigation
- Precision Castparts Securities Litigation
- Royal Ahold Securities and Erisa Litigation
- Santander Securities Litigation
- SFX Entertainment Securities Litigation
- Stericycle Securities Litigation
- Terraform Power Securities Litigation
- Tyco International LTD Securities Litigation
- Ubiquiti Networks Securities Litigation
- Vale Securities Litigation
- Washington Mutual Securities Litigation
- Wells Fargo RMBS Trustee Litigation
- WorldCom, Inc. Securities Litigation
- Yahoo! Securities Litigation

# Exhibit 4

1

**SAXENA WHITE P.A.**
David R. Kaplan (SBN 230144)

2

dkaplan@saxenawhite.com
Emily Bishop (SBN 319383)

3

ebishop@saxenawhite.com

4

505 Lomas Santa Fe Drive, Suite 180
Solana Beach, CA 92075

5

Tel.: (858) 997-0860
Fax: (858) 369-0096

6

7

*Counsel for Lead Plaintiffs Employees' Retirement*
*System of the City of Baltimore, City of*

8

*Philadelphia Board of Pensions and Retirement,*
*and Plymouth County Retirement Association, and*

9

*Lead Counsel for the proposed Settlement Class*

10

*[Additional Counsel listed on Signature Page]*

11

**UNITED STATES DISTRICT COURT**

12

**NORTHERN DISTRICT OF CALIFORNIA**

13

IN RE FIBROGEN, INC., SECURITIES
LITIGATION

14

15

16

17

18

19

20

| | |
|---|---|
| Case No. 3:21-cv-02623-EMC | |
| **CLASS ACTION** | |
| DECLARATION OF MICHELLE YOSHIDA IN SUPPORT OF LEAD PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT | |

21

22

23

24

25

26

27

28

I, Michelle Yoshida, hereby declare as follows:

1.    I am a mediator with Phillips ADR Enterprises, P.C. in Corona Del Mar, California. I submit this declaration in support of Lead Plaintiffs' Motion for Preliminary Approval of Class Action Settlement in the above-captioned action (the "Action"), for which I served as mediator. I make this declaration based on personal knowledge and if called and sworn as a witness could and would testify competently thereto.[1]

2.    While the mediation process is confidential, the Parties have authorized me to inform the Court of the matters set forth herein in support of approval of the Settlement. My statements and those of the Parties during the mediation process are subject to a confidentiality agreement and Federal Rule of Evidence 408, and there is no intention on either my part or the Parties' part to waive the agreement or the protections of Rule 408.

3.    The Parties in the Action have come to an agreement to settle the case for a cash payment of $28.5 million (the "Settlement"). The mediation and subsequent negotiations between the Parties, which I oversaw, ultimately resulted in the Settlement now before the Court for preliminary approval.

## **BACKGROUND AND QUALIFICATIONS**

4.    I joined Phillips ADR Enterprises, P.C.—founded and managed by former United States District Judge Layn R. Phillips—in November 2014 at its inception, and have been a full-time mediator, arbitrator, and special master since 2007. I previously worked with Hon. Daniel Weinstein (Ret.), and have been involved in successfully mediating and managing multi-party and complex, multi-faceted cases, with an aggregate settlement value in the billions of dollars.

5.    Prior to becoming a mediator, I was a trial attorney in private practice, litigating complex business matters including contract, insurance coverage, intellectual property, real estate, regulatory and white-collar matters. I also served as a Presidential Appointee, Legislative Director at the U.S. Commission on Civil Rights. I was General Counsel to the National Japanese American Citizens League from 2002 to 2012 and participated in significant proceedings in state court

---

[1] All capitalized terms not otherwise defined shall have the same meanings as in the Stipulation and Agreement of Settlement.

DECL. OF MICHELLE YOSHIDA ISO
LP'S MOT. FOR PRELIM. APPR.
3:21-cv-02623-EMC

1

1    matters and to the U.S. Supreme Court.

2        6.        In light of my experience, I am asked by litigants and their attorneys to serve as a

3    mediator in complex civil cases such as this.  For over 15 years, I have presided over the mediation

4    of over 500 disputes, including complex securities class actions.  Additionally, I have mediated

5    many cases involving major New York Stock Exchange and NASDAQ corporations.

6                            **THE ARM'S-LENGTH NEGOTIATIONS**

7        7.        I became involved in this Action in early February 2023.  In advance of the

8    mediation, I spoke separately with counsel for both sides to understand and probe their respective

9    positions.  On March 14, 2023, I conducted an in-person mediation session in San Francisco.  In

10   advance of this mediation session, the Parties prepared and exchanged detailed confidential

11   mediation statements addressing liability and damages, and submitted those mediation statements

12   to me together with voluminous exhibits. The Parties also prepared and exchanged detailed rebuttal

13   mediation statements responding to arguments made by the other side, and again submitted those

14   rebuttal statements to me with numerous exhibits.

15       8.        During the mediation, counsel for Lead Plaintiffs and the Defendants presented

16   arguments regarding their clients' positions. The work that went into the mediation submissions

17   and competing presentations and arguments was substantial.  The Parties' mediation submissions

18   demonstrated that each had carefully analyzed the relevant facts and applicable law.  I found these

19   submissions to be extremely valuable in helping me understand the relative merits of each Party's

20   position, and identifying the issues that would drive and present obstacles to reaching a resolution

21   of the Action.

22       9.        During the mediation session, I engaged in extensive discussions with counsel on

23   both sides in an effort to find common ground between the Parties' respective positions and

24   separately challenged each side to address potential weaknesses in or counterarguments to their

25   key positions and arguments.  However, no agreement among the Parties was reached at that

26   mediation.

27       10.       The mediation process was a hard-fought negotiation from beginning to end and

28   was conducted by experienced and able counsel on both sides. Throughout the mediation process,

DECL. OF MICHELLE YOSHIDA ISO
LP'S MOT. FOR PRELIM. APPR.                              2
3:21-cv-02623-EMC

the negotiations between the Parties were vigorous and conducted at arm's length and in good faith.

11.    Because the Parties submitted their mediation statements and arguments in the context of a confidential mediation process pursuant to Federal Rule of Evidence 408, I cannot reveal their content. I can say, however, that the arguments and positions asserted by all involved were the product of considerable work, were complex and adversarial, and reflected a detailed understanding of the claims and defenses at issue in this case.

12.    Following the March 14, 2023 mediation session, the Parties decided to continue litigating the Action.  After several months and considerable litigation efforts, the Parties resumed settlement discussions in July.

13.    Between July and October 2023, I facilitated numerous substantive and extensive Zoom video conferences and telephonic discussions with the Parties to continue to explore the merits and risks associated with the Parties' positions and challenged each side separately to address the weaknesses and obstacles in each of their positions and arguments. These further discussions provided additional insight into the claims and defenses, and other factors influencing a potential resolution of the Action. In addition to vigorously arguing their respective positions, the parties exchanged several rounds of settlement demands and offers.  Although I cannot disclose specifics regarding the participants' positions, there were many complex issues that required significant and practical consideration.  The Parties were not able to reach an agreement and the negotiations came to an impasse.

14.    On October 13, 2023, I issued a double-blind mediator's recommendation to settle the Action for $28.5 million, which the Parties accepted on October 17, 2023.

## THE SETTLEMENT REPRESENTS A FAIR COMPROMISE

15.    In my presence, the Parties had extensive, detailed, and zealous discussions regarding the strengths and weaknesses of the case.  I can readily attest that the negotiations between counsel for Lead Plaintiffs and counsel for Defendants were conducted at arm's-length, extremely hard-fought and were non-collusive.

16.    I believe that the Settlement of the Action represents a well-reasoned and sound

resolution of highly uncertain litigation.  The Court, of course, will make its own determination as to the "fairness" of the Settlement under applicable legal standards.  From a mediator's perspective and based on my years as an attorney and neutral, I respectfully submit that the proposed settlement warrants approval of the Court, as reflective of the burdens, risks and potential rewards of taking a case of this size and complexity to trial.  My review of the documentary record in this Action, my observations during the Court's publicly-accessible August 31, 2023 hearing, and my numerous discussions with counsel have led me to conclude that both sides have litigated the Action in a vigorous and exceptionally thorough manner.  It was also clear to me that both sides were well-prepared and fully capable of proceeding to trial if a settlement could not be achieved.

17.    I further recommend the proposed Settlement as reasonable considering FibroGen's resources (including D&O insurance policies) with which it had to fund any settlement.  From a mediator's perspective and based on my years as an attorney and neutral, I believe that it was unlikely that Plaintiffs could have obtained a larger recovery than as provided by the Settlement through continuing litigation and that a materially lower recovery (or even none) could have been the likely consequence of not settling.

18.    In summary, I view the Settlement in the Action as an excellent compromise and resolution of a hard-fought case that presents many risks to both sides.  The amount of the Settlement is significant and will confer a considerable benefit to the Settlement Class.  I believe the Settlement represented the highest settlement amount and the most favorable terms that Lead Plaintiffs could have achieved at that time.

Executed this 8th day of December, 2023.

_/s/ Michelle Yoshida_
MICHELLE YOSHIDA, ESQ.
PHILLIPS ADR ENTERPRISES, P.C.

# Exhibit 5

**SAXENA WHITE P.A.**
David R. Kaplan (SBN 230144)
dkaplan@saxenawhite.com
Emily Bishop (SBN 319383)
ebishop@saxenawhite.com
505 Lomas Santa Fe Drive, Suite 180
Solana Beach, CA 92075
Tel.: (858) 997-0860
Fax: (858) 369-0096

*Counsel for Lead Plaintiffs Employees' Retirement*
*System of the City of Baltimore, City of*
*Philadelphia Board of Pensions and Retirement,*
*and Plymouth County Retirement Association, and*
*Lead Counsel for the proposed Settlement Class*

*[Additional Counsel listed on Signature Page]*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE FIBROGEN, INC., SECURITIES LITIGATION | Case No. 3:21-cv-02623-EMC<br><br>**CLASS ACTION** |

APPENDIX REGARDING COURT'S
PROCEDURAL GUIDANCE FOR CLASS ACTION SETTLEMENTS

# **TABLE OF CONTENTS**

Page

1) INFORMATION ABOUT THE SETTLEMENT ................................................................. 1

2) SETTLEMENT ADMINISTRATION ............................................................................. 5

3) NOTICE ....................................................................................................................... 6

4) OPT-OUTS .................................................................................................................. 8

5) OBJECTIONS .............................................................................................................. 9

6) ATTORNEYS' FEES AND COSTS .............................................................................. 9

8) *CY PRES* AWARDEES ............................................................................................ 12

9) TIMELINE ................................................................................................................... 13

10) CLASS ACTION FAIRNESS ACT (CAFA) AND SIMILAR REQUIREMENTS ........... 14

11) COMPARABLE OUTCOMES ..................................................................................... 14

12) OVERLAPPING CASES ............................................................................................. 17

1    Lead Plaintiffs respectfully submit the following[1] to address and respond to the Northern

2    District of California's Procedural Guidance for Class Action Settlements[2]:

3    <u>PRELIMINARY APPROVAL</u>

4    1)    INFORMATION ABOUT THE SETTLEMENT

5    The motion for preliminary approval should state, where applicable:

6    a.    Any differences between the settlement class and the class proposed in the

7    operative complaint (or, if a class has been certified, the certified class) and an explanation as to

8    why the differences are appropriate.

9    RESPONSE: Plaintiffs' Complaint alleges a class defined as "all investors who purchased

10   or otherwise acquired FibroGen securities, including options, between December 20, 2018 through

11   July 15, 2021, inclusive [], and who were damaged thereby." Complaint at ¶2. As set forth in

12   Plaintiffs' motion for preliminary approval ("Motion" or "Mot."), on October 3, 2023, the Court

13   certified a class as to FibroGen shareholders for the class period from December 20, 2018, through

14   April 6, 2021 (the "Certified Class Period"). *See* Mot. at 5; ECF No. 224. The Court deferred

15   certification of options holders for that class period, ordering supplemental briefing relating to

16   calculation of damages on a class-wide basis for options holders. As demonstrated in the Motion,

17   such damages can be calculated on class-wide basis with the same sort of documentation used to

18   calculate damages for shareholders. The Court declined to certify April 7, 2021 through July 15,

19   2021 as part of the class period. The Parties have stipulated to the Settlement Class Period and

20   Settlement Class, which are virtually identical to the alleged class period and class set forth in the

21   Complaint. The Settlement Class is "all persons who purchased or acquired FibroGen securities,

22   including options, between December 20, 2018 through July 15, 2021, inclusive." As detailed in

23   the Motion, courts routinely certify more expansive classes, for settlement purposes only, than

24   those previously certified by a court in securities fraud class actions.

25   b.    Any differences between the claims to be released and the claims in the operative

---

[1] All capitalized terms have the same meanings as in the Stipulation and Agreement of Settlement ("Stipulation" or "Settlement Agreement") or the Motion. Unless otherwise noted, all emphasis is added.

[2] https://www.cand.uscourts.gov/forms/procedural-guidance-for-class-action-settlements/

complaint (or, if a class has been certified, the claims certified for class treatment) and an explanation as to why the differences are appropriate.

RESPONSE: The claims being released closely track the claims alleged. Other than the slight differences addressed in point (a) above, all claims asserted in the Complaint are released in the Settlement. The Complaint alleges federal securities law claims based on certain misrepresentations and omissions by Defendants that deceived the investing public, artificially inflated and maintained the market price of FibroGen securities, and caused Lead Plaintiffs and other members of the Settlement Class to purchase the Company's securities at artificially inflated prices, and to suffer losses when the true facts became known. Substantially similar to the claims specifically asserted in the Complaint, the definition of Released Plaintiffs' Claims in the Stipulation ¶1.39, is properly limited to:

> "all claims, demands, losses, rights, liability, or causes of action, in law or in equity, accrued or unaccrued, fixed or contingent, direct, individual or representative, of every nature and description whatsoever, whether known or unknown, or based on federal, state, local, statutory or common law or any other law, rule or regulation, (including the law of any jurisdiction outside the United States), that were or could have been asserted in the Action or could in the future be asserted in any forum, whether foreign or domestic, against Defendant Releasees by Class Representatives or any member of the Settlement Class, or their successors, assigns, executors, administrators, representatives, attorneys and agents in their capacity as such, **which arise out of, are based upon, or relate in any way to the factual predicate of the Action**, **including (i) any of the allegations, facts, transactions, events, matters, occurrences, acts, disclosures, oral or written statements, representations, omissions, failures to act, filings, publications, disseminations, press releases, or presentations involved, set forth, alleged or referred to in the Action; and (ii) all claims that arise out of, are based upon, or relate in any way to the purchase, acquisition, holding, sale, or disposition of any FibroGen securities during the Settlement Class Period**."

Accordingly, the release is carefully tailored to the claims alleged.

c.      The class recovery under the settlement (including details about and the value of injunctive relief), the potential class recovery if plaintiffs had fully prevailed on each of their claims, claim by claim, and a justification of the discount applied to the claims.

RESPONSE: The Settlement Class will receive $28.5 million in cash, less approved fees and expenses. As detailed in the Motion, Plaintiffs' expert, Mr. Scott Walster, has calculated the maximum potential class recovery if Plaintiffs had fully prevailed on their claims as $818 million for shareholders (after netting out gains on sales during the Certified Class Period of stock

purchased prior to the Certified Class Period)[3] and $33 million for options holders in the Certified Class Period.[4] Mr. Walster has provided a declaration, attached to the Declaration of Lester R. Hooker in Support of Lead Plaintiffs' Motion for Preliminary Approval of Class Action Settlement ("Hooker Decl.") as Ex. 2, in which he explains in detail how he computed these figures ("Walster Decl."). *See id.* at ¶¶6-23. Plaintiffs' Motion explains why the Settlement Amount is fully justified at 12-18. These estimates are of the maximum potential damages, but there are a number of reasons that recoverable damages, irrespective of Defendants' ability to pay, would have been far less at trial. For example, Defendants put forward credible arguments that, if accepted by the Court or a jury, could significantly reduce damages to $443 million (netted), or even lower as detailed in the Motion. Finally, due to FibroGen's current financial condition, Defendants had a limited ability to fund a settlement. Thus, Ms. Michelle Yoshida, an acclaimed neutral, made a mediator's proposal for the Settlement Amount, which was accepted by the Parties, because "it was unlikely that Plaintiffs could have obtained a larger recovery than as provided by the Settlement through continuing litigation and that a materially lower recovery (or even none) could have been the likely consequence of not settling." Hooker Decl. Ex. 4, at ¶¶14, 17.

      d.      Any other cases that will be affected by the settlement, an explanation of what claims will be released in those cases if the settlement is approved, the class definitions in those cases, their procedural posture, whether plaintiffs' counsel in those cases participated in the settlement negotiations, a brief history of plaintiffs' counsel's discussions with counsel for plaintiffs in those other cases before and during the settlement negotiations, an explanation of the level of coordination between the two groups of plaintiffs' counsel, and an explanation of the significance of those factors on settlement approval. If there are no such cases, counsel should so state.

---

[3] Lead Plaintiffs believe that the Court would likely have required netting. *See* Mot. at 13 n. 19.

[4] Although Plaintiffs asserted claims under both sections 10(b) and 20(a) of the Securities Exchange Act, the Individual Defendants would be jointly and severally liable with, and to the same extent as the Company is liable under Section 10(b), because liability under Section 10(b) is a predicate to liability under Section 20(a).

1     RESPONSE:

2     The Parties do not believe that any other case is affected by the Settlement. The Stipulation

3 specifically exempts a related direct action against Defendants, *Farallon Healthcare Partners*

4 *Master, L.P. et al. v. FibroGen, et al.*, No. 3:23-cv-02602-EMC (N.D. Cal.) and multiple

5 shareholder derivative actions against the Company (*see* Stipulation ¶1.12). Moreover, the

6 plaintiffs in those actions did not participate in negotiation of the Settlement, nor was there any

7 level of coordination between Lead Counsel and plaintiffs' counsel in those actions. Accordingly,

8 the Settlement has no legal effect on those actions.

9     e.     The proposed allocation plan for the settlement fund.

10     RESPONSE: The proposed Plan of Allocation was developed by Plaintiffs' expert, Mr.

11 Scott Walster of Global Economics Group, a full copy of which is included in the proposed Notice

12 attached to the Stipulation as Ex. A-1.

13     f.     If there is a claim form, an estimate of the expected claim rate in light of the

14 experience of the selected claims administrator and/or counsel based on comparable settlements,

15 the identity of the examples used for the estimate, and the reason for the selection of those

16 examples.

17     RESPONSE: Plaintiffs are proposing that the Court appoint JND Legal Administration

18 ("JND") as the Claims Administrator for the Settlement. JND is highly experienced in acting as a

19 claims administrator in securities fraud and other complex class actions. *See* Declaration of Luiggy

20 Segura in Support of Lead Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action

21 Settlement ("Segura Decl."), Ex. A; *Davis v. Yelp*, 2022 WL 21748777, at *5 (N.D. Cal. Aug. 1,

22 2022) (Chen J.) (appointment of JND in securities class action as "administrator for the settlement

23 seems reasonable, based on JND's background and experience as a reliable settlement

24 administrator in similar cases"); *Fleming v. Impax Lab'ys Inc.*, 2021 WL 5447008, at *12 (N.D.

25 Cal. Nov. 22, 2021) ("[t]he [c]ourt finds that JND has extensive experience implementing

26 notification and claims administration programs in class actions and approves its appointment as

27 [c]laims [a]dministrator"); *In re Signet Jewelers Ltd. Sec. Litig.*, 2020 WL 4196468, at *13

28 (S.D.N.Y. July 21, 2020) (appointing JND as claims administrator of $240 million securities class

1    action settlement, because JND has "extensive experience handling the administration of securities

2    class actions").  Based on their experience in other securities class actions, JND estimates that the

3    expected claims rate will be about 15-25% of its estimated potential Settlement Class Members

4    (equating to 18,750 to 31,250 Claims here based on an estimated 125,000). Segura Decl. at ¶18.

5    JND also based its estimate on similar cases such as *Fleming v. Impax Laboratories, Inc.*, No.

6    4:16-cv-06557-HSG (N.D. Cal.) (28% claims rate on over 49,000 notices in $33 million securities

7    class action settlement), *Davis v. Yelp*, No. 3:18-cv-00400-EMC (N.D. Cal.) (17% claims rate on

8    45,000 notices sent out in $22.25 million securities class action settlement), and *Rabkin v. Lion

9    Biotechnologies, Inc.*, No. 3:17-cv-02086 (N.D. Cal.) (22% claims rate).  *Id.* at n.6.  JND believes

10   that these cases are fair comparisons to this Action, because they are all recent securities class

11   action settlements that JND administered in this District. *Id.*

12           g.       In light of Ninth Circuit case law disfavoring reversions, whether and under what

13   circumstances money originally designated for class recovery will revert to any defendant, the

14   expected and potential amount of any such reversion, and an explanation as to why a reversion is

15   appropriate.

16           RESPONSE: N/A. This is not a reversionary settlement.

17   2)      SETTLEMENT ADMINISTRATION

18           The parties are expected to get multiple competing bids from potential settlement

19   administrators.  In the motion for preliminary approval, the parties should:

20           a.       Identify the proposed settlement administrator, the settlement administrator

21   selection process, how many settlement administrators submitted proposals, what methods of

22   notice and claims payment were proposed, and the lead class counsel's firms' history of

23   engagements with the settlement administrator over the last two years.

24           RESPONSE: JND has been retained by Lead Counsel, subject to Court approval, to act as

25   the Claims Administrator and provide notice and claims administration services for the Settlement.

26   On October 24, 2023, Lead Counsel sent requests for proposals ("RFPs") to four reputed class

27   action administration firms, all of whom have extensive experience in providing claims

28   administration for securities class action settlements.  All four firms submitted comprehensive

1  proposals in response to Lead Counsel's RFPs requesting information on the estimated number of

2  Settlement Class members, the estimated claims response rate, and the costs of administration.

3  The four firms submitted substantially similar methods of notice, and generally proposed similar

4  methods of claims payment, which Lead Counsel asserts are industry standard methods in

5  securities class action settlements.  JND outlines these methods at length in the Segura Decl. at

6  ¶¶4-16.   Lead Counsel carefully analyzed all the responses in light of the requirements of this

7  Settlement before selecting JND.  As noted above in the response to point 1(f), courts have

8  routinely found JND as experienced in claims administration of securities class action settlements.

9  Lead Counsel has not otherwise engaged JND within the last two years; however, JND completed

10  service as a claims administrator in a $25 million securities class action settlement where Saxena

11  White was Lead Counsel, *Plymouth County Ret. Sys. v. GTT Communications, Inc., et al.*, Case

12  No. 1:19-cv-00982 (E.D. Va.), within the last two years, despite being engaged prior to that period.

13       b.    Address the settlement administrator's procedures for securely handling class

14  member data (including technical, administrative, and physical controls; retention; destruction;

15  audits; crisis response; etc.), the settlement administrator's acceptance of responsibility and

16  maintenance of insurance in case of errors, the anticipated administrative costs, the reasonableness

17  of those costs in relation to the value of the settlement, and who will pay the costs.

18       RESPONSE: Luiggy Segura, a Vice President of JND, the proposed Claims Administrator,

19  addresses these considerations in his Declaration (Segura Decl.) at length at ¶¶30-53.

20  3)    NOTICE

21       The parties should ensure that the class notice is easily understandable, in light of the class

22  members' communication patterns, education levels, and language needs. The notice should

23  include the following information:

24       a.    Contact information for class counsel to answer questions.

25       RESPONSE: The proposed Notice provides this information at ¶¶6, 96.

26       b.    The address for a website, maintained by the claims administrator or class counsel,

27  that lists key deadlines and has links to the notice, claim form (if any), preliminary approval order,

28  motions for preliminary and final approval and for attorneys' fees, and any other important

1    documents in the case.

2        RESPONSE: The proposed Notice provides this information at ¶¶25, 44, 50, 79, 93, 95-

3    96.

4        c.    Instructions on how to access the case docket via PACER or in person at any of the

5    court's locations.

6        RESPONSE: The proposed Notice provides this information at ¶96.

7        d.    The date and time of the final approval hearing, clearly stating that the date may

8    change without further notice to the class.

9        RESPONSE: Although the date of the final approval hearing has yet to be set by the Court,

10   this information would be provided in the proposed Notice at ¶¶86, 93.

11       e.    A note to advise class members to check the settlement website or the Court's

12   PACER site to confirm that the date has not been changed.

13       RESPONSE: The proposed Notice provides this information at ¶93.

14   The parties should explain how the notice distribution plan is effective. Class counsel

15   should consider the following ways to increase notice to class members: identification of potential

16   class members through third-party data sources; use of text messages and social media to provide

17   notice to class members; hiring a marketing specialist; providing a settlement website that

18   estimates claim amounts for each specific class member and updating the website periodically to

19   provide accurate claim amounts based on the number of participating class members; and

20   distributions to class members via direct deposit.

21       RESPONSE: JND has explained how the notice program will be effective at length. *See*

22   Segura Decl. at ¶¶4-16. JND believes that in a securities class action settlement, it is essential that

23   brokers and or third parties who hold stock in "street name" timely either provide lists of securities

24   holders of FibroGen during the Class Period or request copies of the notice to send on to such

25   securities holders. Based on JND's experience, the majority of large value valid claims will be

26   filed by institutional investors. Segura Decl. at ¶20. Social media and text messaging is not often

27   utilized in securities class action settlement notification because, as mentioned above, the majority

28   of potential class members for any securities class action hold their securities in "street name,"

1    meaning social media and text messaging notification would likely not significantly increase

2    settlement participation. *Id*. at ¶6 fn. 2.  JND has a legal notice team of advertising/media experts

3    who help design, develop, and implement notice programs to meet the requirements of Rule 23

4    and relevant state court rules. *Id*.

5         The notice distribution plan should rely on U.S. mail, email, and/or social media as

6    appropriate to achieve the best notice that is practicable under the circumstances, consistent with

7    Federal Rule of Civil Procedure 23(c)(2). If U.S. mail is part of the notice distribution plan, the

8    notice envelope should be designed to enhance the chance that it will be opened.

9         RESPONSE: JND addresses these points in the Segura Decl. at ¶¶4-16. In JND's opinion,

10   the proposed notice plan provides the best notice practicable under the circumstances, is consistent

11   with the requirements of Rule 23, and is consistent with other similar court-approved security class

12   action notice programs. *See, e.g., Davis v. Yelp*, 2023 WL 3063823, at *1 (N.D. Cal. Jan. 27, 2023)

13   (Chen, J.); *Fleming v. Impax Laboratories, Inc*., 2022 WL 2789496, at *5 (N.D. Cal. July 15,

14   2022). The supplemental digital posting through DTC's LENS, the print placement in *Investor's*

15   *Business Daily*, the distribution of a press release over *PR Newswire,* and the establishment of the

16   case specific website, toll-free telephone number, and email will further enhance notice exposure.

17   Regarding physical mail, JND will utilize the same types of envelopes it has successfully used in

18   other securities class action settlements.  The proposed notice plan is designed to reach as many

19   Settlement Class Members as possible and inform them about the Settlement and their rights and

20   options.

21   4)    OPT-OUTS

22        The notice should instruct class members who wish to opt out of the settlement to send a

23   letter, setting forth their name and information needed to be properly identified and to opt out of

24   the settlement, to the settlement administrator and/or the person or entity designated to receive opt

25   outs. It should require only the information needed to opt out of the settlement and no extraneous

26   information or hurdles. The notice should clearly advise class members of the deadline, methods

27   to opt out, and the consequences of opting out.

28        RESPONSE: The proposed Notice provides this information at ¶¶81-83.

1    5)    OBJECTIONS

2    Objections must comply with Federal Rule of Civil Procedure 23(e)(5). The notice should

3    instruct class members who wish to object to the settlement to send their written objections only

4    to the court. All objections will be scanned into the electronic case docket, and the parties will

5    receive electronic notices of filings. The notice should make clear that the court can only approve

6    or deny the settlement and cannot change the terms of the settlement. The notice should clearly

7    advise class members of the deadline for submission of any objections.

8    RESPONSE: The proposed Notice provides this information at ¶¶87-94.

9    6)    ATTORNEYS' FEES AND COSTS

10    Although attorneys' fee requests will not be approved until the final approval hearing, class

11    counsel should include information about the fees and costs (including expert fees) they intend to

12    request, their lodestar calculation (including total hours), and resulting multiplier in the motion for

13    preliminary approval. In a common fund case, the parties should include information about the

14    relationship between the amount of the common fund, the requested fee, and the lodestar. To the

15    extent counsel base their fee request on having obtained injunctive relief and/or other non-

16    monetary relief for the class, counsel should discuss the benefit conferred on the class.

17    RESPONSE: As detailed in the Motion, Plaintiffs will move for an award of attorneys'

18    fees and reimbursement of Litigation Expenses in parallel with their motion for final approval of

19    the Settlement.  Plaintiffs intend to request attorneys' fees of no more than 25% of the Settlement

20    Fund (*i.e.* $7,125,000 plus interest). A request of 25% of the Settlement Fund would, excluding

21    interest, approximate a lodestar multiplier of 0.5, which is a "negative" multiplier, meaning that

22    the value of the attorney time that Lead Counsel invested and dedicated into prosecuting the Action

23    exceeded the $7,125,000 amount requested as attorneys' fees.

24    At final approval, Lead Counsel will provide a declaration providing a full accounting of

25    its lodestar by timekeeper.  In the interim, Lead Counsel has estimated its aggregate lodestar. While

26    subject to change on the basis of adding further hours necessary to effectuate the Settlement and

27    potentially making certain deductions, Lead Counsel estimates their total lodestar is

28    $14,151,273.00.  This is based on a total of 26,666.2 hours billed by all timekeepers and an average

rate of approximately $531 per hour.  Below is a chart of the current range of rates:

| Shareholders and Directors | $740-$985 |
|---|---|
| Attorneys and Senior Attorneys | $440-$680 |
| Staff Attorneys | $400-$460 |
| Investigators | $465-$545 |
| Financial Analysts | $325 |
| Paralegals and all other Support Staff | $260 - $300 |

Below is a chart breaking down the estimated lodestar hours by category:

| Category | Hours | Lodestar |
|---|---|---|
| Initial Investigation/ Lead Plaintiff Appointment | 1842.6 | $932,307.50 |
| Investigations/Pleadings | 3167.0 | $1,705,138.50 |
| Briefing of Motions to Dismiss | 983.0 | $688,610.50 |
| Class Certification | 1,161.0 | $706,004.50 |
| Sanctions Motion and Related | 2,359.6 | $1,409,126.50 |
| Discovery | 15,594.7 | $7,723,284.50 |
| Litigation Strategy and Analysis | 617.6 | $383,142.00 |
| Court Appearances | 19.5 | $16,645.50 |
| Correspondence | 107.6 | $60,180.00 |
| Miscellaneous Court Filings/Motions | 39.2 | $19,846.50 |
| Mediation/Settlement | 774.4 | $506,987.00 |
| **Total** | **26,666.2** | **$14,151,273.00** |

Plaintiffs will ask for reimbursement of Litigation Expenses of no more than $715,000. This amount includes reimbursement requests for Lead Plaintiffs' time, made pursuant to the Private Securities Litigation Reform Act, 15 U.S.C. §78u-4(a)(4) (the "PSLRA"), in successfully prosecuting this Action.  In the aggregate, these Lead Plaintiff PSLRA reimbursement requests will amount to no more than $45,000, as detailed further below.

At final approval, Lead Counsel will provide a declaration providing a full accounting of all expenses by category. In the interim, Lead Counsel has estimated its Litigation Expenses. Regarding expert expenses, because of the highly technical subject matters involved in this Action, Plaintiffs relied heavily upon consultation with experts.  These consultations involved highly technical documents and issues involved in the FDA drug approval process, as well as matters

related to market efficiency, loss causation, and damages.  In total, these expert expenses are estimated to amount to approximately $325,000—or a majority of the Litigation Expenses.  While subject to change on the basis of adding further Litigation Expenses necessary to effectuate the Settlement and receiving further invoices and potentially making certain deductions, below is a chart breaking down the Litigation Expenses by category:

| Category of Expense | Estimated Approximate Current Total |
|---|---|
| Depositions (Including Transcripts and A/V Services) | $18,000 |
| Experts | $325,000 |
| Filing Fees | $1,000 |
| Discovery costs | $100,000 |
| Mediation | $17,000 |
| Online Legal Research | $72,000 |
| Postage and Delivery | $2,000 |
| Processing Services | $1,000 |
| Printing and Photocopying | $4,000 |
| Transportation, Meals, and Lodging | $30,000 |
| **Approximate Total** | **$570,000** |

Finally, regarding Notice and Administration Costs (for which Plaintiffs are seeking up to $550,000), JND estimates that administering the Settlement, including disseminating notice to the Settlement Class, processing Claims received, and distributing the net Settlement proceeds in accordance with the Plan of Allocation, will cost approximately $375,000, which excludes the anticipated requests from Nominees for reimbursement of their expenses in connection with providing notice.  Segura Decl. at ¶27.  Additionally, JND estimates Nominee expenses may be up to $100,000.  *Id.*

7) SERVICE AWARDS

Judges in this district have different perspectives on extra payments to named plaintiffs or class representatives that are not made available to other class members. Counsel seeking approval of service awards should consult relevant prior orders by the judge reviewing the request. Although service award requests will not be approved until the final approval hearing, the parties should include information about the service awards they intend to request as well as a summary of the evidence supporting the awards in the motion for preliminary approval. The parties should ensure that neither the size nor any conditions placed on the incentive awards undermine the adequacy of

the named plaintiffs or class representatives. In general, unused funds allocated to incentive awards should be distributed to the class pro rata or awarded to cy pres recipients.

RESPONSE: As noted above in response to point 6, Lead Plaintiffs will apply for an award reimbursing them for the time, pursuant to the section (a)(4) of the PSLRA, they expended, which in aggregate will not exceed $45,000.  Below is an estimate of the number of the hours each Lead Plaintiff has expended in prosecuting the Action:

| Lead Plaintiff | Estimated Hours Devoted to Litigation |
|---|---|
| Employees' Retirement System of the City of Baltimore | 79 |
| City of Philadelphia Board of Pensions and Retirement | 103 |
| Plymouth County Retirement Association | 81 |

As noted, Congress expressly envisioned such awards in the PSLRA, and this Court and other Courts in this District routinely award similar awards in securities class actions. *See*, *e.g.*, *In re Omnivision Technologies, Inc.,* 559 F. Supp. 2d 1036, 1049 (N.D. Cal. 2008) (reimbursing lead plaintiffs for "time and expenses" in the amount of $29,913.80); *Yelp*, 2023 WL 3063823, at *2 (approving $15,000 award to one lead plaintiff whose efforts included "reviewing filings, conferring with counsel about litigation strategies, producing documents in response to requests for production, responding to interrogatories, participating in his deposition, and authorizing his attorneys to settle the case").

8)    *CY PRES* AWARDEES

If the settlement contemplates a *cy pres* award, the parties should identify their chosen *cy pres* recipients, if any, and how those recipients are related to the subject matter of the lawsuit and the class members' claims. The parties should also identify any relationship they or their counsel have with the proposed *cy pres* recipients. In general, unused funds allocated to attorneys' fees, service awards, settlement administration costs, and class member payments should be distributed to the class pro rata if feasible, or else awarded to *cy pres* recipients or to the relevant government

1   authorities.

2        RESPONSE: Plaintiffs have chosen the Investor Protection Trust ("IPT") as the designated

3   recipient for any *de minimis* balance remaining after all distributions are completed. *See* Notice at

4   ¶77.  IPT is a nonprofit organization "devoted to independent and unbiased investor education,

5   research, and support of investor protection efforts."[5]  As such, Plaintiffs submit that IPT readily

6   satisfies the prevailing standard for a *cy pres* awardee under *Nachshin v. AOL, LLC*, 663 F.3d

7   1034, 1039 and n.2  (9th Cir. 2011) that a *cy pres* "distribution must be guided by (1) the objective

8   of the underlying statute(s) and (2) the interests of silent class members" and noting that the

9   American Law Institute's rule on *cy pres* awards requires parties "to identify a recipient whose

10   interests reasonably approximate those being pursued by the class."  *See*, *e.g.*, *Fleming v. Impax*

11   *Laboratories Inc.*, 2022 WL 2789496, at *2 (N.D. Cal. July 15, 2022) (approving IPT as *cy pres*

12   beneficiary because the IPT "is a 501(c)(3) non-profit dedicated to educating and protecting

13   investors," and finding "a sufficient nexus between the [c]lass and the Investor Protection Trust,

14   which shares the [c]lass [m]embers' interests in protecting investors and preventing fraud"; *In re*

15   *Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litigation*, 2018

16   WL 6198311, at *5 (N.D. Cal. Nov. 28, 2018) (approving IPT a *cy pres* beneficiary in securities

17   class actions settlement because IPT "is a nonprofit organization focused on investor education"

18   and a "savvy, educated investor is hopefully more likely to identify signs of securities fraud, which

19   furthers the Exchange Act's purpose of maintaining 'fair and honest markets'"); *In re Energy*

20   *Recovery Inc. Sec. Litig.*, No. 3:15-cv-00265-EMC, ECF No. 164 at 3 (N.D. Cal. Mar. 19, 2018)

21   (Chen, J.) (approving IPT as designated *cy pres* organization for unused funds after distribution).

22   Lead Counsel has no relationship with IPT, but IPT has been a designated *cy pres* beneficiary in a

23   number of settlements in which Lead Counsel was involved.

24   9)    TIMELINE

25        The parties should ensure that class members have at least thirty-five days to opt out or

26   object to the settlement and the motion for attorney's fees and costs.

27

28   [5] https://investorprotection.org/about/

RESPONSE: Plaintiffs have done so and propose a schedule for notice, the Final Approving Hearing, and related dates in their Motion at 24, reproduced below.

| Event | Proposed Due Date |
|---|---|
| Deadline for mailing the Notice and Claim Form to the Settlement Class (Preliminary Approval Order ¶7(b)) | Not later than 20 calendar days after entry of Preliminary Approval Order (the "Notice Date") |
| Deadline for publishing the Summary Notice (Preliminary Approval Order ¶7(d)) | Not later than 10 business days after the Notice Date |
| Deadline for receipt of Claim Forms (Preliminary Approval Order ¶¶10) | 100 calendar days after the Notice Date |
| Deadline for filing of papers in support of final approval of Settlement, Plan of Allocation, and Lead Counsel's application for attorneys' fees and expenses (Preliminary Approval Order ¶26) | 42 calendar days prior to the Final Approval Hearing |
| Deadline for receipt of exclusion requests and objections (Preliminary Approval Order ¶¶13, 17) | 28 calendar days prior to Final Approval Hearing |
| Deadline for filing reply papers and submitting proof of the mailing of the Notice to Settlement Class Members and publication of the Summary Notice (Preliminary Approval Order ¶26) | 14 calendar days prior to the Final Approval Hearing |
| Final Approval Hearing (Preliminary Approval Order ¶5) | At least 100 days after entry of Preliminary Approval Order |

10)     CLASS ACTION FAIRNESS ACT (CAFA) AND SIMILAR REQUIREMENTS

The parties should address whether CAFA notice is required and, if so, when it will be given. In addition, the parties should address substantive compliance with CAFA. For example, if the settlement includes coupons, the parties should explain how the settlement complies with 28 U.S.C. § 1712. In addition, the parties should address whether any other required notices to government entities or others have been provided, such as notice to the Labor & Workforce Development Agency (LWDA) pursuant to the Private Attorneys General Act (PAGA).

RESPONSE: As noted in the Stipulation, FibroGen shall timely serve a CAFA notice within ten (10) calendar days of the filing of the Stipulation with the Court and shall provide Lead Counsel with a copy of such notice within five (5) calendar days of such service.

11)     COMPARABLE OUTCOMES

Lead class counsel should provide information about comparable cases, including settlements and litigation outcomes. Lead class counsel should provide the following information for as many as feasible (and at least one) comparable class settlements (i.e., settlements involving the same or similar claims, parties, issues):

1        a.    The claims being released, the total settlement fund, the total number of class

2    members, the total number of class members to whom notice was sent, the method(s) of notice,

3    the number and percentage of claim forms submitted, the average recovery per class member or

4    claimant, the amounts distributed to cy pres recipients, the administrative costs, the attorneys' fees

5    and costs, the total exposure if the plaintiffs had prevailed on every claim.

6        RESPONSE:

| Case name and citation: *Fleming v. Impax Laboratories, Inc.*, No. 4:16-cv-06557-HSG (N.D Cal.) |
|---|
| Claims Asserted: Securities Exchange Act §§ 10(b) and 20(a) |
| Total Settlement Amount: $33 million |
| Estimated Maximum Damages:  $265 million |
| Notice and Claim Packets Mailed: 49,620 |
| Total Claims Submitted: 13,863<br>Response Rate: 28% |
| Total Valid Claims: 5,398 |
| Exclusions Received: 0 |
| Objections Received: 0 |
| Average Recovery per Claimant: $4,236.68<br>Median Recovery per Claimant: $81.71 |
| Method of Notice:  Direct Mail; Published in *The Wall Street Journal* and *PR Newswire*; posted on the settlement website; DTCC LENS notice posting |
| Administrative Costs: $311,213.89 |
| Litigation Expenses Reimbursed: $176,501.78 |
| Attorneys' Fees Awarded<br>% of Settlement Fund: 30%<br>Multiplier: 2.59 |
| Cy-Pres Designee: University of San Francisco School of Law Investor Justice Clinic<br>Cy-Pres Distribution: $0 |
| Total Amount Distributed: $22,869,617.96 |

| Case name and citation: *Davis v. Yelp*, No. 3:18-cv-00400-EMC (N.D Cal.) |
|---|
| Claims Asserted: Securities Exchange Act §§ 10(b) and 20(a) |
| Total Settlement Amount: $22.25 million |
| Estimated Maximum Damages:  $180 million |

| |
|---|
| Notice and Claim Packets Mailed: 44,942 |
| Total Claims Submitted: 7,517<br>Response Rate: 17% |
| Total Valid Claims: 4,291 |
| Exclusions Received: 0 |
| Objections Received: 0 |
| Average and Median Recoveries per Claimant: Unknown. |
| Method of Notice: Direct Mail; Published in *Investor's Business Daily* and *PR Newswire*; posted on the settlement website; DTCC LENS notice posting |
| Administrative Costs: $290,835.65 |
| Litigation Expenses Reimbursed: $930,782.70 |
| Attorneys' Fees Awarded<br>% of Settlement Fund: 33%<br>Multiplier: 0.81 |
| Cy-Pres Designee: Public Justice Foundation<br>Cy-Pres Distribution: N/A, Distribution Not Completed |
| Total Amount Distributed: N/A, Distribution Not Completed |

| |
|---|
| Case name and citation: *Hatamian v. Advanced Micro Devices*, No. 4:14-cv-00226-YGR (N.D Cal.) |
| Claims Asserted: Securities Exchange Act §§ 10(b) and 20(a) |
| Total Settlement Amount: $29.5 million |
| Estimated Maximum Damages:  $430 million |
| Notice and Claim Packets Mailed: 224,669 |
| Total Claims Submitted: 42,676<br>Response Rate: 19% |
| Total Valid Claims: 8,873 |
| Exclusions Received: 17 |
| Objections Received: 2 |
| Average Recovery per Claimant: Unknown |
| Method of Notice: Direct Mail; Published in *Investor's Business Daily* and *PR Newswire*; Posted on the settlement website; Use of Propriety Nominee Database |
| Administrative Costs: Up to $500,000; $27,138 for distribution |
| Litigation Expenses Reimbursed: $2,812,817.52 |
| Attorneys' Fees Awarded<br>% of Settlement Fund: 25% |

| Multiplier: 0.24 |
| Cy-Pres Designee: Bay Area Legal Aid; Consumer Federation of America<br>Cy-Pres Distribution: Unknown |
| Total Amount Distributed: Unknown |

b.      Where class members are entitled to non-monetary relief, such as discount coupons or debit cards or similar instruments, the number of class members availing themselves of such relief and the aggregate value redeemed by the class members and/or by any assignees or transferees of the class members' interests.

RESPONSE: N/A

c.      Where injunctive and/or other non-monetary relief has been obtained, discuss the benefit conferred on the class.

RESPONSE: N/A

12)    OVERLAPPING CASES

Within one day of filing of the preliminary approval motion, the defendants should serve a copy on counsel for any plaintiffs with pending litigation, whether at the trial court or appellate court level, whether active or stayed, asserting claims on a representative (e.g., class, collective, PAGA, etc.) basis that defendants believe may be released by virtue of the settlement.

RESPONSE: As noted above in response to point 1(d), Plaintiffs do not believe the Settlement has a legal effect on any other representative case.