**SAXENA WHITE P.A.**
David R. Kaplan (SBN 230144)
dkaplan@saxenawhite.com
Emily Bishop (SBN 319383)
ebishop@saxenawhite.com
505 Lomas Santa Fe Drive, Suite 180
Solana Beach, CA 92075
Tel.: (858) 997-0860
Fax: (858) 369-0096

*Counsel for Lead Plaintiffs Employees' Retirement
System of the City of Baltimore, City of
Philadelphia Board of Pensions and Retirement,
and Plymouth County Retirement Association, and
Lead Counsel for the proposed Settlement Class*

[Additional Counsel listed on Signature Page]

## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE FIBROGEN, INC., SECURITIES LITIGATION | Case No. 3:21-cv-02623-EMC |
| | **CLASS ACTION** |
| | LEAD PLAINTIFFS': (1) NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION; AND (2) MEMORANDUM OF LAW IN SUPPORT THEREOF |
| | Hearing Date: May 16, 2024<br>Time: 1:30 p.m.<br>Courtroom: 5 – 17th Floor [Via Zoom]<br>Judge: Hon. Edward M. Chen |

# <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ...................................................................................................ii

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION
     SETTLEMENT AND PLAN OF ALLOCATION .................................................vi

STATEMENT OF ISSUES TO BE DECIDED ...............................................................vi

MEMORANDUM OF POINTS AND AUTHORITIES ...................................................1

I.     INTRODUCTION.............................................................................................1

II.    FACTUAL AND PROCEDURAL HISTORY OF THE LITIGATION ..............................3

III.   STANDARD FOR FINAL APPROVAL UNDER RULE 23(e).........................................4

    A.    The Settlement Is Procedurally Fair, Reasonable, And Adequate ...............................5

        1.    Lead Plaintiffs And Lead Counsel Have Adequately Represented The
             Class ....................................................................................................5

        2.    The Settlement Results From Good-Faith, Arm's-Length Negotiations ...........7

    B.    The Relief Provided For The Settlement Class Is Adequate.........................................9

        1.    The Amount Offered In The Settlement Favors Approval ...............................10

        2.    The Settlement Weighs The Strength Of Lead Plaintiffs' Claims With
             The Substantial Risks Of Continuing Litigation .................................................11

        3.    Other Factors Established by Rule 23(e)(2)(C) Support Final Approval..........15

    C.    All Settlement Class Members Are Treated Equitably .................................................17

    D.    The Positive Reaction Of The Class Supports Final Approval...................................17

IV.   THE COURT SHOULD APPROVE THE PLAN OF ALLOCATION ..............................18

V.    NOTICE TO THE SETTLEMENT CLASS SATISFIES DUE PROCESS .......................20

VI.   CONCLUSION ...................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Abadilla v. Precigen, Inc.*,
2023 WL 7305053 (N.D. Cal. Nov. 6, 2023) .............................................. 7, 16, 19

*Avila v. LifeLock Inc.*,
2020 WL 4362394 (D. Ariz. July 27, 2020) ...................................................... 17

*Brown v. China Integrated Energy Inc.*,
2016 WL 11757878 (C.D. Cal. July 22, 2016) ................................................... 15

*Cheng Jiangchen v. Rentech, Inc.*,
2019 WL 5173771 (C.D. Cal. Oct. 10, 2019) .............................................. 14, 17

*Davis v. Yelp, Inc.*,
2023 WL 3063823 (N.D Cal. Jan. 27, 2023) .............................................. 16, 20

*Destefano v. Zynga, Inc.*,
2016 WL 537946 (N.D. Cal. Feb. 11, 2016) ................................................. 7, 19

*Farrar v Workhorse Group Inc.*,
2023 WL 5505981 (C.D. Cal. July 24, 2023) ..................................................... 11

*Fleming v. Impax Labs., Inc.*,
2022 WL 2789496 (N.D. Cal. July 15, 2022) .............................................. 18, 20

*Guevoura Fund Ltd. v. Sillerman*,
2019 WL 6889901 (S.D.N.Y. Dec. 18, 2019) ................................................... 15

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) ........................................................... 5, 11, 17

*Hardy v. Embark Tech., Inc.*,
2023 WL 6276728 (N.D. Cal. Sept. 26, 2023) .................................................. 15

*Hefler v. Wells Fargo & Co.*,
2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) ............................................. *passim*

*Hsu v. Puma Biotechnology, Inc.*,
2019 WL 11637311 (C.D. Cal. May 22, 2019) .................................................. 13

*In re Allergan, Inc. Proxy Violation Derivatives Litig.*,
2018 WL 4959014 (C.D. Cal. Aug. 13, 2018) ................................................... 16

*In re Amgen Inc. Sec. Litig.*,
2016 WL 10571773 (C.D. Cal. Oct. 25, 2016) .................................................. 19

*In re Aqua Metals, Inc. Sec. Litig.*,
  2022 WL 612804 (N.D. Cal. Mar. 2, 2022) ................................................................. 4

*In re Bluetooth Headset Products Liab. Litig.*,
  654 F.3d 935 (9th Cir. 2011) ......................................................................... 9, 16

*In re BofI Holding, Inc. Sec. Litig.*,
  2022 WL 9497235 (S.D. Cal. Oct. 14, 2022) ............................................................. 4, 19

*In re Carrier IQ, Inc., Consumer Privacy Litig.*,
  2016 WL 4474366 (N.D. Cal. Aug. 25, 2016) ............................................................... 17

*In re Chrysler-Dodge-Jeep Ecodiesel® Mktg., Sales Practices & Prods. Liab. Litig.*,
  2019 WL 2554232 (N.D. Cal. May 3, 2019) ................................................................. 5

*In re Extreme Networks, Inc. Sec. Litig.*,
  2019 WL 3290770 (N.D. Cal. July 22, 2019) ........................................................... 11, 12

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
  343 F. Supp. 3d 394 (S.D.N.Y. 2018) ....................................................................... 12

*In re FibroGen Inc. Sec. Litig.*,
  2022 WL 2793032 (N.D. Cal. July 15, 2022) ............................................................... 14

*In re Genworth Fin. Sec. Litig.*,
  210 F. Supp. 3d 837 (E.D. Va. 2016) ........................................................................ 9

*In re Immune Response Sec. Litig.*,
  497 F. Supp. 2d 1166 (S.D. Cal. 2007) ................................................................ 13, 15

*In re JDS Uniphase Corp. Sec. Litig.*,
  2007 WL 4788556 (N.D. Cal. Nov. 27, 2007) ............................................................... 12

*In re Lyft Inc. Sec. Litig.*,
  2023 WL 5068504 (N.D. Cal. Aug. 7, 2023) ................................................................. 7

*In re Omnivision Techs. Inc.*,
  559 F. Supp. 2d 1036 (N.D. Cal. 2007) ............................................................. 16, 18, 19

*In re Oracle Corp. Sec. Litig.*,
  627 F.3d 376 (9th Cir. 2010) ............................................................................... 12

*In re Pfizer, Inc. Sec. Litig.*,
  2014 WL 3291230 (S.D.N.Y. July 8, 2014) .................................................................. 12

*In re Silver Wheaton Corp. Sec. Litig.*,
  2020 WL 4581642 (C.D. Cal. Aug. 6, 2020) ............................................................... 16

*In re Syncor ERISA Litig.*,
  516 F.3d 1095 (9th Cir. 2008) .............................................................................. 4

*In re Tesla Inc. Sec. Litig.*,
    2023 WL 4032010 (N.D. Cal. June 14, 2023) ................................................................ 12

*In re Vocera Communications, Inc., Sec. Litig.*,
    2016 WL 8201593 (N.D. Cal. July 19, 2016) ................................................................ 16

*Kendall v. Odonate Therapeutics, Inc.*,
    2022 WL 188364 (S.D. Cal. Jan. 18, 2022) .................................................................... 8

*Khoja v. Orexigen Therapeutics, Inc.*,
    2021 WL 5632673 (S.D. Cal. Nov. 30, 2021) .................................................................. 4

*Lea v. Tal Education Group*,
    2021 WL 5578665 (S.D.N.Y. Nov. 30, 2021) .................................................................. 4

*Loomis v. Slendertone Distribution, Inc.*,
    2021 WL 873340 (S.D. Cal. Mar. 9, 2021) ...................................................................... 5

*Maine State Ret. Sys. v. Countrywide Fin. Corp.*,
    2013 WL 6577020 (C.D. Cal. Dec. 5, 2013) ................................................................... 9

*Patel v. TransUnion, LLC*,
    2018 WL 1258194 (N.D. Cal. Mar. 11, 2018) ............................................................... 10

*Peace Officers' Annuity and Benefit Fund of Georgia v. DaVita, Inc.*,
    2021 WL 1387110 (D. Colo. Apr. 13, 2021) ................................................................... 8

*Rieckborn v. Velti PLC*,
    2015 WL 468329 (N.D. Cal. Feb. 3, 2015) ...................................................... 12, 15, 19

*Shvager v. ViaSat, Inc.*,
    2014 WL 12585790 (C.D. Cal. Mar. 10, 2014) .............................................................. 5

*Sudunagunta v. NantKwest, Inc.*,
    2019 WL 2183451 (C.D. Cal. May 13, 2019) ............................................................... 14

*Todd v. STAAR Surgical Co.*,
    2017 WL 4877417 (C.D. Cal. Oct. 24, 2017) .............................................................. 7, 8

*Vataj v. Johnson*,
    2021 WL 5161927 (N.D. Cal. Nov. 5, 2021) ........................................................... 11, 20

*Wong v. Arlo Techs., Inc.*,
    2021 WL 1531171 (N.D. Cal. Mar. 25, 2021) ................................................................ 5

*Zhu v. Taronis Techs. Inc.*,
    2021 WL 871775 (D. Ariz. Mar. 9, 2021) ...................................................................... 5

*Ziegler v. GW Pharm's. PLC*,
    2024 WL 1269472 (S.D. Cal. Mar. 25, 2024) ................................................................ 8

**RULES & STATUTES**

15 U.S.C. § 78u-4(a)(7) ...............................................................................................................20

Fed. R. Civ. P. 23 ..............................................................................................................*passim*

**NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF**
**CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that, pursuant to Rule 23(e) of the Federal Rules of Civil Procedure and the Court's Order Preliminarily Approving Settlement and Providing for Notice ("Preliminary Approval Order," ECF No. 244), on May 16, 2024, at 1:30 p.m., or as soon thereafter as the matter may be heard, at the United States District Court for the Northern District of California, 450 Golden Gate Avenue, San Francisco, CA 94102, Courtroom 5, 17th Floor, before the Honorable Edward M. Chen, Lead Plaintiffs will and hereby do respectfully move for entry of the [Proposed] Judgment Approving Class Action Settlement and the [Proposed] Order Approving Plan of Allocation of Net Settlement Fund.[1]

This Motion is based on the following Memorandum of Law, the Final Approval Declaration, the Declaration of Luiggy Segura Regarding (A) Mailing of Notice Packet; (B) Publication of Summary Notice; (C) Report on Requests for Exclusion to Date (Final Approval Decl. at Ex. D, "Segura Decl."), the Stipulation, all prior pleadings and papers in this Action, and such additional information or argument as may be required by the Court.

**STATEMENT OF ISSUES TO BE DECIDED**

(1)     Whether the Court should approve the proposed $28,500,000 all cash settlement as fair, adequate, and reasonable pursuant to Rule 23(e); and

(2)     Whether the Court should approve the Plan of Allocation (defined below) as fair and reasonable.[2]

---

[1] Unless otherwise defined herein, all capitalized terms have the meanings set forth in the Stipulation and Agreement of Settlement dated December 7, 2023 ("Stipulation"; ECF No. 236, Ex. 1) and the concurrently filed Declaration of Lester R. Hooker in Support of (I) Lead Plaintiffs' Motion for Final Approval of Class Action Settlement and Plan of Allocation, and (II) Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses ("Final Approval Declaration" or "Final Approval Decl."). Citations herein to "¶ __" and "Ex. __" refer, respectively, to paragraphs in, and exhibits to, the Final Approval Declaration. Unless otherwise noted, all emphasis is added and all internal quotation marks and citations are omitted.

[2] Pursuant to ¶¶1.33, 4.1, 4.4, and 8.1(c) of the Stipulation, Defendants support entry of the [Proposed] Judgment but do not take a position with respect to the Plan of Allocation.

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

Court-appointed Lead Plaintiffs, on behalf of themselves and the Class, respectfully submit this Memorandum of Law in support of this Motion, pursuant to Rule 23 of the Federal Rules of Civil Procedure, for final approval of the proposed settlement ("Settlement") of the above-captioned action (the "Action"), and for approval of the proposed plan of allocation of the net proceeds of the Settlement (the "Plan of Allocation").

## I.    INTRODUCTION

After nearly three years of extremely hard-fought litigation, Lead Plaintiffs, through their counsel, achieved a $28,500,000 all cash settlement for the benefit of the Class (the "Settlement Amount"). As described below and in the Final Approval Declaration, the proposed Settlement is an excellent result for the Settlement Class,[3] providing a significant and certain recovery in a case that presented numerous hurdles and risks. Indeed, the Settlement Amount falls well within the range of possible approval, as it is nearly four times the $7.6 million median settlement in securities class actions in the Ninth Circuit, and is approximately 25-50% greater than the 1.7% to 4.3% median recovery in similarly-sized securities class action settlements.[4]

Furthermore, the Settlement provides an immediate and assured financial recovery, which is significant in light of FibroGen's ongoing business struggles and deteriorating financial condition that made the risk of any recovery in excess of the Settlement Amount highly

---

[3] The "Settlement Class" or "Class" means all persons who purchased or acquired FibroGen securities, including options, between December 20, 2018 through July 15, 2021, inclusive. Excluded from the Settlement Class are: (1) Defendants; (2) the Officers or directors of FibroGen during the Settlement Class Period; (3) the Immediate Family members of any Defendant or any Officer or director of FibroGen during the Settlement Class Period; and (4) any entity that any Defendant owns or controls, or owned or controlled, during the Settlement Class Period. Also excluded from the Class are those persons who file valid and timely requests for exclusion in accordance with the Preliminary Approval Order and the plaintiffs in the Opt-Out Action.

[4] Both figures are based on a published study of securities class action settlements by Cornerstone Research. *See Securities Class Action Settlements, 2022 Review and Analysis*, at 6, 19 (March 8, 2023), https://www.cornerstone.com/wp-content/uploads/2023/03/Securities-Class-Action-Settlements-2022-Review-and-Analysis.pdf ("Cornerstone 2022 Report"). The figures are substantially similar for 2023. *See Securities Class Action Settlements, 2023 Review and Analysis*, at 6, 20 (March 6, 2024), https://www.cornerstone.com/wp-content/uploads/2024/03/Securities-Class-Action-Settlements-2023-Review-and-Analysis.pdf ("Cornerstone 2023 Report") (reporting median settlement of $9.0 million in the Ninth Circuit, and median recovery range of 3.5 to 4.6%, respectively, for 2023).

improbable.  Indeed, on October 17, 2023, the date on which the Parties agreed to resolve the Action, FibroGen's stock price closed at approximately $0.65 per share, representing a market capitalization of only approximately $65 million.  Further, in its most recent fiscal year, the Company reported a net loss of $284 million.  Accordingly, the Settlement is substantively fair, reasonable and adequate because, as the Court previously recognized, there is a "particularly acute risk that Plaintiffs will not be able to recover *at all* if the litigation continues."  *See* Preliminary Approval Order at 6.

Moreover, the process by which the Settlement was obtained evidences an arm's-length process that supports final approval.  As described in detail in the Final Approval Declaration, prior to reaching the Settlement, Lead Plaintiffs and Lead Counsel, *inter alia*:

- conducted a thorough investigation of the claims asserted in the Action, which included an in-depth review and analysis of: (i) FibroGen's SEC filings, press releases, earnings and conference calls, and other public statements to investors; (ii) information concerning FibroGen from the U.S. Food and Drug Administration ("FDA"); (iii) interviews with numerous confidential witnesses, including former executives and employees of AstraZeneca AB ("AstraZeneca"), FibroGen's development partner for Roxadustat; and (iv) consultation with financial and industry experts;

- drafted the 118-page operative Consolidated Class Action Complaint for Violations of the Federal Securities Laws (ECF No. 97) (the "Complaint");

- researched, drafted, and filed an omnibus opposition to Defendants' separate motions to dismiss (ECF No. 114), and prepared for and presented oral arguments on the dismissal motions—which resulted in denial of the motions and the lifting of the PSLRA discovery stay;

- conducted extensive discovery, including obtaining upwards of 281,000 documents comprising over 4.6 million pages produced by Defendants and multiple non-parties, and thoroughly reviewed and located highly relevant documents therein;

- successfully rebuffed Defendants' efforts to claw back a critical document as privileged after multiple rounds of briefing on the issue (ECF Nos. 153, 176);

- moved for and obtained sanctions against Defendant Yu based on spoliation of evidence, which involved multiple briefs on the issue and two depositions regarding spoliation, including the deposition of Defendant Yu and the Rule 30(b)(6) deposition of FibroGen (ECF Nos. 185, 205, 206);

- obtained class certification in substantial part (ECF No. 248) after fully briefing the motion for class certification (ECF Nos. 147, 192, 212), which included: assisting in the preparation and submission of the expert report of Chad Coffman, CFA (ECF 147-2); defending the depositions of each Lead Plaintiff and Mr. Coffman; deposing Defendants' class certification expert, Dr. Paul Zurek; arguing a class certification hearing, and filing supplemental briefing (ECF No. 221);

- prepared for and engaged in a full day mediation session before Michelle Yoshida, Esq. of Phillips ADR Enterprises, including drafting comprehensive mediation and rebuttal statements, and participating in arm's-length negotiations over several months under Ms. Yoshida's oversight to settle the Action; and

- drafted and then negotiated the Stipulation and related exhibits.

Given the extensive litigation efforts to date, and considering FibroGen's uncertain financial future, Lead Plaintiffs and Lead Counsel had sufficient information to make an informed decision regarding the fairness of the Settlement before presenting it to the Court.

Lead Plaintiffs and Lead Counsel's belief that the Settlement is a fair and adequate result is further supported by, among other things: (1) the certainty of a $28,500,000 recovery today versus the significant risk of a smaller or no recovery following years of additional litigation; (2) an analysis of the facts adduced to date; (3) past experience in litigating complex securities class actions; (4) the serious disputes between Parties concerning liability and damages; and (5) the overwhelmingly favorable reaction of the Class. ¶¶59-79, 94, 103, 119-122. Lead Plaintiffs, therefore, respectfully submit that the Settlement is fair, reasonable and adequate.

Lead Plaintiffs also move for approval of the Plan of Allocation. Lead Counsel developed the Plan of Allocation in conjunction with Lead Plaintiffs' damages expert, Mr. Coffman, and it is designed to fairly and equitably distribute the proceeds of the Net Settlement Fund to Class Members. ¶¶84-93.

For these reasons, and those set forth below and in the Final Approval Declaration, Lead Plaintiffs respectfully request that the Court grant final approval of the Settlement and Plan of Allocation.

## II.    FACTUAL AND PROCEDURAL HISTORY OF THE LITIGATION

The Final Approval Declaration is an integral part of this submission. For the sake of brevity in this memorandum, the Court is referred to the Final Approval Declaration for a detailed description of, *inter alia*, the factual and procedural history of the Action (¶¶21-29, 49, 51-54, 57-58); the nature of the claims asserted (¶¶5, 24); the negotiations leading to the Settlement (¶¶55-56); the risks and uncertainties of continued litigation (¶¶61-74); and the litigation efforts Lead Counsel expended in developing the record for the benefit of the Settlement Class (¶¶12, 30-57).

1

**III.    STANDARD FOR FINAL APPROVAL UNDER RULE 23(e)**

2        Federal Rule of Civil Procedure 23(e) requires judicial approval for any compromise or

3   settlement of class action claims and states that a class action settlement should be approved if the

4   court finds it "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Courts in the Ninth Circuit

5   and nationwide recognize that there is a "strong judicial policy that favors settlements, particularly

6   where complex class action litigation is concerned." *In re BofI Holding, Inc. Sec. Litig.*, 2022 WL

7   9497235, at *4 (S.D. Cal. Oct. 14, 2022) (quoting *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101

8   (9th Cir. 2008)); *Lea v. Tal Education Group*, 2021 WL 5578665, at *4 (S.D.N.Y. Nov. 30, 2021)

9   (similar). This is particularly true in securities class actions, which often involve difficulties of

10  proof, uncertainties of outcome, and lengthy litigation. Thus, the settlement of such complex cases

11  greatly contributes to the conservation of scarce judicial resources. *See, e.g., In re Aqua Metals,*

12  *Inc. Sec. Litig.*, 2022 WL 612804, at *5 (N.D. Cal. Mar. 2, 2022) (Gilliam, Jr., J.) ("Generally,

13  unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy

14  and expensive litigation with uncertain results."); *Khoja v. Orexigen Therapeutics, Inc.*, 2021 WL

15  5632673, at *5 (S.D. Cal. Nov. 30, 2021) ("Had the parties not settled, they would have spent

16  considerable time and effort in discovery and litigating class certification and summary judgment,

17  adding further expense to both sides as well as years of delay of any potential recovery for the

18  putative class.").

19       Rule 23(e)(2) sets forth the factors to be considered in determining whether a settlement

20  warrants final approval:

21       (A)    the class representatives and class counsel have adequately represented the class;

22       (B)    the proposal was negotiated at arm's length;

23       (C)    the relief provided for the class is adequate, taking into account:

24              (i)     the costs, risks, and delay of trial and appeal;

25              (ii)    the effectiveness of any proposed method of distributing relief to the class,
26                      including the method of processing class-member claims;

27              (iii)   the terms of any proposed award of attorney's fees, including timing of
                        payment; and

28              (iv)    any agreement required to be identified under Rule 23(e)(3); and

MOTION FOR FINAL APPROVAL                    4
OF CLASS ACTION SETTLEMENT
3:21-cv-02623-EMC

(D)   the proposal treats class members equitably relative to each other.

In addition, the Ninth Circuit traditionally considers the following "*Hanlon* factors" (most of which overlap with Rule 23(e)(2)): (1) the strength of plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1026 (9th Cir. 1998).[5]

This Court previously found that, "[i]n consideration of these factors," the "Settlement [was] fair, adequate, and reasonable." *See* Preliminary Approval Order at 5.   The Court's conclusion remains applicable now as little, if anything, has changed between preliminary approval and final approval. *See In re Chrysler-Dodge-Jeep Ecodiesel® Mktg., Sales Practices & Prods. Liab. Litig.*, 2019 WL 2554232, at *2 (N.D. Cal. May 3, 2019) (Chen, J.) (finding that the "conclusions [made in granting preliminary approval] stand and counsel equally in favor of final approval now"); *Zhu v. Taronis Techs. Inc.*, 2021 WL 871775, at *2 (D. Ariz. Mar. 9, 2021) ("In preliminarily approving the Settlement, the Court analyzed the Rule 23(e)(2) factors and concluded that the Settlement was 'fair, adequate, and reasonable.' ... Those conclusions weigh equally in favor of final approval now.").   Thus, as explained below and in the Final Approval Declaration, analysis of the relevant factors demonstrates that the Settlement warrants final approval.

**A.     The Settlement Is Procedurally Fair, Reasonable, And Adequate**

    **1.     Lead Plaintiffs And Lead Counsel Have Adequately Represented The Class**

In determining whether to approve a class action settlement, Courts consider whether Lead

---

[5] *See Wong v. Arlo Techs., Inc.*, 2021 WL 1531171, at *6 (N.D. Cal. Mar. 25, 2021) (Labson Freeman, J.) (recognizing that Fed. R. Civ. P. 23(e)(2)'s considerations overlap with the *Hanlon* factors); *Loomis v. Slendertone Distribution, Inc.*, 2021 WL 873340, at *4, n.4 (S.D. Cal. Mar. 9, 2021) ("Because of the overlap [], the Court folds the Ninth Circuit's factors into its analysis of Rule 23(e)(2)").   Accordingly, Plaintiffs will address the *Hanlon* factors 1-6 within the analysis of Rule 23(e)(2).   Regarding *Hanlon* factor 7, no governmental body is a party to this Action.   *Shvager v. ViaSat, Inc.*, 2014 WL 12585790, at *11 (C.D. Cal. Mar. 10, 2014) ("This factor is inapplicable and neutral because no government entity participated in the case.").

Plaintiff and Lead Counsel "have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A). As the Court held when certifying a class here: "The adequacy inquiry turns on: (i) whether the named plaintiff and class counsel have any conflicts of interest with other class members; and (ii) whether the named plaintiff and class counsel can vigorously prosecute the action on behalf of the class." ECF No. 224 at 11-12. The Court found that the adequacy requirements were met at the time of preliminary approval (*id*. at 13), and these standards remain satisfied.

Indeed, Lead Plaintiffs and their counsel have no conflicts of interest and have vigorously and zealously prosecuted this Action for nearly three years. The substantial work Lead Plaintiffs and Lead Counsel undertook to represent the Class throughout that time is set forth in greater detail in the Final Approval Declaration. In short, Lead Plaintiffs' and Lead Counsel's extensive litigation efforts included: (i) a thorough investigation, including locating and interviewing numerous confidential witnesses; (ii) filing the highly-particularized, 118-page Complaint; (iii) consultation with multiple financial and industry experts; (iv) successfully opposing Defendants' motions to dismiss; (v) extensive class certification discovery and successfully obtaining, in large part, class certification; (vi) comprehensive fact discovery, including obtaining, reviewing and analyzing approximately 4.6 million pages of documents produced by Defendants and highly relevant non-parties, including AstraZeneca, Astellas and the FDA, as well as producing numerous documents responsive to Defendants' discovery requests; (vii) significant discovery motion practice; (viii) spoliation-related discovery and motion practice, which resulted in the Court issuing spoliation sanctions against Defendant Yu; (ix) defending depositions of Lead Plaintiffs and Lead Plaintiffs' expert on market efficiency, taking two depositions related to spoliation, and preparing for up to 20 fact witness depositions; and (x) a full day mediation before Ms. Yoshida, a highly experienced mediator in complex shareholder litigation, which included submitting detailed mediation and rebuttal statements, and subsequent settlement discussions under Ms. Yoshida's supervision over several months before the Parties agreed to resolve the Action, culminating in Ms. Yoshida's mediator's proposal to settle the Action, which the parties accepted.

In addition, Lead Plaintiffs and Lead Counsel have continued to adequately represent the Class since the Court's Preliminary Approval Order by diligently complying with the notice plan

and settlement procedures.  *See* Final Approval Declaration ¶¶80-83.  The Claims Administrator mailed 36,771 notice packets to potential Class Members, utilizing a network of over 4,000 brokers, dealers, and banks, and shareholder records provided by FibroGen, and published the Summary Notice via *Investor's Business Daily* and the *PR Newswire* service.  Despite undertaking such a comprehensive notice program, not a single objection to the Settlement has been received to-date.  *Id.* at ¶¶83, 94; *see also Abadilla v. Precigen, Inc.*, 2023 WL 7305053, at \*9 (N.D. Cal. Nov. 6, 2023) (Labson Freeman, J.) (finding Class was adequately represented and that a "court may appropriately infer that a class action settlement is fair, adequate, and reasonable when few class members object to it").

Lead Plaintiffs and Lead Counsel at all times advocated for the best interests of the Class at the time the proposed Settlement was reached.  Thus, Rule 23(e)(2)(A) is satisfied.

### 2.    The Settlement Results From Good-Faith, Arm's-Length Negotiations

Under Rule 23(e)(2)(B), the Court next considers whether the settlement was "negotiated at arm's length."  When "settlement negotiations [are] overseen by an experienced neutral mediator before reaching" an agreement, the settlement "is the product of successful arms-length negotiations." *Destefano v. Zynga, Inc.*, 2016 WL 537946, at \*14 (N.D. Cal. Feb. 11, 2016) (Scott Corley, Mag. J.); *Precigen*, 2023 WL 7305053, at \*9 (approving settlement where "the parties held a full-day, in-person mediation session" and the ultimate settlement was consistent with the "independent mediator's proposal").  Moreover, "[t]he involvement of experienced class action counsel and the fact that the settlement agreement was reached in arm's length negotiations, after relevant discovery had taken place create a presumption that the agreement is fair." *Todd v. STAAR Surgical Co.*, 2017 WL 4877417, at \*2 (C.D. Cal. Oct. 24, 2017).

Here, the proposed Settlement follows extensive and extremely hard-fought litigation, including discovery, class certification, and arm's-length settlement negotiations, and was the product of an independent mediator's proposal.  *See Lyft*, 2023 WL 5068504, at \*8 (when the "parties settled only after conducting significant discovery and investigation into [p]laintiff's claims," counsel "entered the settlement discussions with a substantial understanding of the factual and legal issues, so as to allow them to assess the likelihood of success on the merits").

As detailed herein and in the Final Approval Declaration, the Settlement was achieved only after months of serious, informed, and non-collusive negotiations with Ms. Yoshida—a highly experienced mediator, arbitrator and special master, who has successfully mediated over five hundred disputes, including numerous complex shareholder actions.  As part of the settlement discussions, Lead Plaintiffs and Defendants prepared and presented submissions concerning their respective views on the merits of the Action, including Defendants' defenses and issues relating to liability and damages, along with supporting evidence obtained through discovery.  Final Approval Declaration ¶55.  After the initial March 14, 2023 in-person mediation session was unsuccessful, the parties continued to aggressively litigate the case for many months before resuming settlement discussions under Ms. Yoshida's oversight, which ultimately led to the Parties accepting the mediator's proposal on October 17, 2023 to resolve the Action for the Settlement Amount.  *Id.* at ¶56.  These facts strongly support final approval of the Settlement.  *STAAR Surgical*, 2017 WL 4877417, at *2 (settlement approved where it was "the outcome of an arms-length negotiation conducted with the help of experienced mediator Michelle Yoshida"); *Kendall v. Odonate Therapeutics, Inc.*, 2022 WL 188364, at *6 (S.D. Cal. Jan. 18, 2022) (noting the "parties also participated in a full day of voluntary mediation before [Ms.] Yoshida … and an additional three weeks of negotiations before reaching an agreement to settle in principle").

Additionally, when analyzing a class settlement, courts accord "[g]reat weight" to the "recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation."  *Ziegler v. GW Pharm's. PLC*, 2024 WL 1269472, at *5 (S.D. Cal. Mar. 25, 2024).  Here, the Court previously found that Lead Counsel are "experienced class action litigators" (ECF No. 224 at 30) and Counsel's substantial experience in cases of this nature gives further weight to the judgment that the Settlement is fair and reasonable.  *See, e.g.*, Final Approval Decl. at Ex. E-6 (Saxena White firm resume); *see also Peace Officers' Annuity and Benefit Fund of Georgia v. DaVita, Inc.*, 2021 WL 1387110, at *5 (D. Colo. Apr. 13, 2021) (in approving $135 million PSLRA settlement, "the [c]ourt g[ave] weight to the judgment of [Saxena White], who are highly experienced in prosecuting securities class actions").  In addition, Defendants are represented by prominent global defense firms Cooley LLP and Pillsbury Winthrop Shaw Pittman LLP, who also

1    zealously represented their clients.  With highly experienced counsel on both sides, each with a

2    well-developed understanding of the strengths and weaknesses of their respective cases, the

3    Settlement is completely devoid of collusion.

4    Moreover, the fact that Lead Plaintiffs are institutional investors—the type of investor

5    favored by Congress to lead securities cases and make decisions for the class, as set forth in the

6    PSLRA—lends additional credibility to their recommendation that the Settlement be approved.

7    *See, e.g.*, *Maine State Ret. Sys. v. Countrywide Fin. Corp.*, 2013 WL 6577020, at *16 (C.D. Cal.

8    Dec. 5, 2013) (approving securities class action settlement and affording "special weight" to the

9    opinions of institutional investor co-lead plaintiffs who participated in the settlement discussions,

10   attested to understanding and supporting the terms of the proposed settlement, and who "may have

11   a better understanding of the case than most members of the class"); *In re Genworth Fin. Sec.

12   Litig.*, 210 F. Supp. 3d 837, 842 (E.D. Va. 2016) (approving securities class action settlement and

13   noting that lead plaintiffs "are sophisticated institutional investors managing billions of dollars in

14   pensioners' investments and experienced in the world of securities laws.  The active participation

15   by the Lead Plaintiffs in the negotiation process further weighs in favor of approv[al]").

16   Finally, the Settlement has none of the indicia of collusion identified by the Ninth Circuit.

17   *See In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011) ("subtle

18   signs" of collusion include a "disproportionate distribution of the settlement" between the class

19   and class counsel, "a 'clear sailing' arrangement providing for the payment of attorneys' fees

20   separate and apart from class funds," or an agreement for "fees not awarded to revert to defendants

21   rather than be added to the class fund").  The Settlement is devoid of any of these signs of collusion.

22   *See* Stipulation at ¶¶2.2, 2.8.

23   **B.    The Relief Provided For The Settlement Class Is Adequate**

24   Under Rule 23(e)(2)(C)(i), the Court next considers whether "the relief provided for the

25   class is adequate, taking into account … the costs, risks, and delay of trial and appeal" along with

26   other relevant factors.  Each of these factors supports final approval.

27

28

1

**1.    The Amount Offered In The Settlement Favors Approval**

"To evaluate the adequacy of the settlement amount, courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer." *Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *8 (N.D. Cal. Dec. 18, 2018) (Tigar, J.), *aff'd sub nom. Hefler v. Pekoc*, 802 F. App'x 285 (9th Cir. 2020) (approving settlement and noting that "it is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair"); *see also Patel v. TransUnion, LLC*, 2018 WL 1258194, at *4 (N.D. Cal. Mar. 11, 2018) (Beeler, Mag. J.) (the "court need not ask whether the proposed settlement is ideal or the best possible"; rather, if it is "fair, free of collusion, and consistent with the named plaintiffs' fiduciary obligations," approval should be granted).

Here, the $28.5 million Settlement Amount is an excellent result for the Settlement Class. First, as the Court previously recognized, it would have ranked in the top 31% of all securities class action settlements in 2022.[6]  *See* Preliminary Approval Order at 5-6.  Second, the Settlement represents nearly four times the median $7.6 million recovery in securities fraud class actions in the Ninth Circuit, and over three times the national $9.0 median recovery nationally, between 2013 and 2022.[7]  Third, as the Court further recognized in its Preliminary Approval Order, the Settlement equates to approximately 3.4% to 6.4% of the maximum potential damages—a range approximately 25-50% higher than the median recovery of damages in similarly-sized securities class actions.  *See* Preliminary Approval Order at 5.  The 3.4% low-end figure is based on the analysis of Plaintiffs' expert, Mr. Scott Walster, that the maximum damages for the class period that the Court certified in its class certification order (ECF No. 248)—assuming that Plaintiffs are successful on every issue—are approximately $818 million for shareholders.  *Id.*  The high-end 6.4% figure is based on the scenario where the Court or jury were to accept Defendants' credible arguments limiting the actionable class period to November 8, 2019 through April 6, 2021, which,

---

[6] *See also* Cornerstone 2022 Report, at 4.  The Settlement would have ranked in the top 35% for 2023.  *See* Cornerstone 2023 Report, at 5.

[7] Cornerstone 2022 Report, at 7, 19.  These figures were similar for the period of 2014-2023. *See* Cornerstone 2023 Report, at 8, 20 (reporting $9.0 median recovery in the Ninth Circuit, and $10.3 million median recovery nationally, for such period).

MOTION FOR FINAL APPROVAL
OF CLASS ACTION SETTLEMENT
3:21-cv-02623-EMC

10

1  under Plaintiffs' expert's analysis, would provide damages for FibroGen common stockholders as

2  low as $443 million.  *Id.*  Thus, as the Court noted, the $28.5 million Settlement exceeds the 1.7%

3  to 4.3% median percentage of similar damages ranges in 2022 settlements.  *Id.*

4        As also recognized by this Court, settlements providing for the same and even substantially

5  lower damages recoveries in securities class actions are routinely approved by courts in this

6  District and throughout the Ninth Circuit as fair and reasonable.  *See id.* at 5-6 (collecting cases

7  approving settlements where recovery ranged from 1.1% to 2.7% of potential damages and noting

8  recovery of 2.35% "weighs in favor of approval"); *see also, e.g.*, *Farrar v Workhorse Group Inc.*,

9  2023 WL 5505981, at *7 (C.D. Cal. July 24, 2023) ("Indeed, a 3% recovery is within the range of

10  the percentages of recovery approved in other securities class action settlements") (collecting cases

11  and authorities); *Vataj v. Johnson*, 2021 WL 5161927, at *6 (N.D. Cal. Nov. 5, 2021) (Gilliam,

12  Jr., J.) (granting final approval where "[t]he $10 million settlement … recovers slightly more than

13  2% of [the] estimated damages").

14        Moreover, the Settlement is inherently fair, reasonable and adequate considering that

15  securities class actions "are highly complex and [litigating] securities class litigation is notably

16  difficult and notoriously uncertain."  *Hefler*, 2018 WL 6619983, at *13.  Here, Defendants made

17  credible arguments that could have materially reduced damages—or eliminated them entirely.

18  Additionally, as discussed herein, FibroGen's rapidly deteriorating financial condition and

19  business operations, and the Company's wasting directors' and officers' insurance, further

20  reinforces that the Settlement Amount was an excellent result for the Settlement Class.

            **2.     The Settlement Weighs The Strength Of Lead Plaintiffs' Claims With
                     The Substantial Risks Of Continuing Litigation**

23        "In assessing the costs, risks, and delay of trial and appeal, Fed. R. Civ. P. 23(e)(2)(C)(i),

24  courts in the Ninth Circuit evaluate 'the strength of the plaintiffs' case; the risk, expense,

25  complexity, and likely duration of further litigation; [and] the risk of maintaining class action status

26  throughout the trial."  *In re Extreme Networks, Inc. Sec. Litig.*, 2019 WL 3290770, at *8 (N.D.

27  Cal. July 22, 2019) (Labson Freeman, J.) (citing *Hanlon*, 150 F.3d at 1026).  "In most situations,

28  unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy

1    and expensive litigation with uncertain results." *Rieckborn v. Velti PLC*, 2015 WL 468329, at \*4

2    (N.D. Cal. Feb. 3, 2015) (Orrick, J.).

3            While Lead Plaintiffs believed that their claims were meritorious and would be supported

4    by the weight of the evidence after discovery closed, there is no question that continued litigation

5    here would have been costly, risky, and drawn out.  Courts recognize that securities fraud class

6    actions, like this one, are "notably difficult," "notoriously uncertain," and can be protracted by

7    "post-judgment litigation and appeals." *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 343 F.

8    Supp. 3d 394, 414, 416 (S.D.N.Y. 2018), *aff'd sub nom. In re Facebook, Inc.*, 822 F. App'x 40 (2d

9    Cir. 2020); *see Extreme Networks*, 2019 WL 3290770, at \*8 ("Securities actions in particular are

10   often long, hard-fought, complicated, and extremely difficult to win").  Securities cases present a

11   myriad of risks that plaintiffs must overcome to ultimately secure a recovery.  *See, e.g.*, *In re*

12   *Oracle Corp. Sec. Litig.*, 627 F.3d 376, 395 (9th Cir. 2010) (affirming summary judgment in favor

13   of defendants on multiple issues in securities class action);  *In re Tesla Inc. Sec. Litig.*, 2023 WL

14   4032010, at \*1 (N.D. Cal. June 14, 2023) (Chen, J.) (jury returned verdict for defendants even

15   though this Court granted partial summary judgment to plaintiff class on falsity and scienter); *In*

16   *re Pfizer, Inc. Sec. Litig.*, 2014 WL 3291230, \*3 (S.D.N.Y. July 8, 2014), *vacated on other*

17   *grounds*, 819 F.3d 642 (2d Cir. 2016) (granting summary judgment in favor defendants because

18   "Plaintiffs' failure to proffer admissible [expert] loss causation and damages evidence is fatal to

19   Plaintiffs' claims."); *In re JDS Uniphase Corp. Sec. Litig.*, 2007 WL 4788556 (N.D. Cal. Nov. 27,

20   2007) (Wilken, J.) (jury returned full defense verdict after lengthy trial in securities class action).

21           While Plaintiffs strongly believe in the merits of this case, they are cognizant of the

22   significant risk that continued litigation could end in no recovery at all.  Defendants made a number

23   of credible arguments which the Court at summary judgment, a jury after trial, or an appellate

24   court could have accepted.  Indeed, this Court has already accepted several of the arguments that

25   Defendants made in opposing class certification.  *See* ECF No. 224.  Specifically, the Court

26   declined to certify the full alleged class period of December 20, 2018 through July 15, 2021, and

27   instead found that the class period should end months earlier on April 6, 2021, finding that the

28   decline in FibroGen's share price after the FDA's July 15, 2021 Advisory Committee ("AdCom")

1    decision on Roxadustat did not reveal additional information about the fraud. *Id*. at 22-27. Even

2    if Plaintiffs were successful on a motion for reconsideration or appeal, Defendants could have

3    raised similar arguments at summary judgment or at trial.

4    Moreover, there was a risk that the class period that was certified by the Court could be

5    further narrowed. Defendants likely would have contested loss causation at summary judgment or

6    at trial for at least two of the other alleged corrective disclosures, claiming the May 9, 2019 and

7    March 1, 2021 disclosures were not corrective of any information regarding the alleged underlying

8    fraud and did not reveal that any of Defendants' prior statements were false. Similarly, Defendants

9    likely would have continued to argue that the statements at the beginning of the Class Period were

10   not false, by claiming that the unblinded results of the Roxadustat efficacy analyses were not

11   available to FibroGen until April 2019 and that FibroGen did not provide numerical results of the

12   pooled safety analyses incorporating the *post-hoc* changes in the stratification data until November

13   2019. ECF No. 197 at 3. If Defendants prevailed on any one of these challenges to loss causation,

14   the potential recoverable damages would have been further reduced. *See, e.g., Hsu v. Puma*

15   *Biotechnology, Inc.*, 2019 WL 11637311, at *1 (C.D. Cal. May 22, 2019) (jury returned verdict

16   for defendants on three of four of alleged misstatements, which Defendants argued reduced

17   potential damages to only 5% or less of claimed damages); *In re Immune Response Sec. Litig.,* 497

18   F. Supp. 2d 1166, 1172 (S.D. Cal. 2007) (finding risk that class period could be shortened

19   supported settlement).

20   Defendants also would have continued to contest falsity and scienter at summary judgment

21   or trial. Specifically, Defendants would have argued that: *post-hoc* changes to stratification factors

22   was not data manipulation but rather a reasonable way of assessing complex clinical trial data

23   among various patient populations, and the change reflected a mere disagreement between old and

24   new management and was not unreasonable (ECF No. 107 at 8, 14-15; ECF No. 122 at 22:6-9);

25   that they never admitted to manipulating safety results and that Plaintiffs' allegations of

26   manipulation were "based entirely on public comments by a handful of outside observers, none of

27   whom knew what stratification factors FibroGen had used, or why, or what FibroGen had disclosed

28   to the FDA about stratification factors" (ECF No. 180 at 5); and that numerous other countries had

MOTION FOR FINAL APPROVAL                    13
OF CLASS ACTION SETTLEMENT
3:21-cv-02623-EMC

1    approved Roxadustat for use, a point the Court found was a "helpful fact for Defendants" and was

2    "relevant" to the scienter analysis.  *In re FibroGen Inc. Sec. Litig.*, 2022 WL 2793032, at *23

3    (N.D. Cal. July 15, 2022) (Chen, J.).  Moreover, certain Individual Defendants would likely have

4    argued that they were not liable as they did not act with scienter.  For example, Defendant Eisner

5    started at FibroGen in December 2020 (Complaint at ¶26), claimed to have only learned about the

6    *post-hoc* changes to the data on March 11, 2021, and promptly alerted the FDA to this fact on

7    April 2, 2021 (ECF No. 197 at 8).  Defendant Cotroneo would likely have argued that, as

8    FibroGen's CFO, he had no reason to second guess medical professionals' conclusions about

9    highly technical safety and efficacy data, and design of the underlying clinical drug trials.

10    Thus, absent the Settlement, the Parties may face years litigating this Action, including

11    further discovery, dispositive motions, trial, and likely appeals.  *Sudunagunta v. NantKwest, Inc.*,

12    2019 WL 2183451, at *4 (C.D. Cal. May 13, 2019) (finding likelihood of "further deposition and

13    expert discovery, motion practice, trial, and potentially appeals following trial" favored

14    settlement); *see also Cheng Jiangchen v. Rentech, Inc.*, 2019 WL 5173771, at *6 (C.D. Cal. Oct.

15    10, 2019) (noting case where the "shareholders had still received no recovery" "two years after [a]

16    jury verdict in plaintiffs' favor and ten years after the case was filed.").

17    Furthermore, as the Court previously recognized, "there is a particularly acute risk that

18    Plaintiffs will not be able to recover ***at all*** if litigation continues" due to FibroGen's deteriorating

19    business and financial condition.  *See* Preliminary Approval Order at 6.  Indeed, on October 17,

20    2023, the date on which the Parties agreed to resolve the Action, FibroGen's stock price closed at

21    approximately $0.65 per share, representing a market capitalization of only approximately $65

22    million.  The Settlement Amount thus represents nearly ***half*** of the Company's entire market

23    capitalization on that date.  Plaintiffs were and remain cognizant of the following facts: (i)

24    Roxadustat has never been approved in the United States and competes with similar types of anti-

25    anemia drugs in other countries; (ii) FibroGen's only other major drug candidate, Pamrevlumab,

26    failed to meet its endpoint in Phase III study and has yet to be approved anywhere for any

27    condition; and (iii) the Company's Form 10-K filed with the SEC on February 26, 2024 reported

28    that the Company incurred a ***net loss*** of $284.2 million for fiscal 2023, and had only approximately

14

$113.7 million in cash and cash equivalents at as of the end of 2023—compared to $678.4 million, $171.2 million, and $155.7 million, at the end of 2020, 2021, and 2022, respectively.  Final Approval Decl. at ¶¶73-74.  Given the Company's precarious financial position and dismal business prospects, the Court correctly concluded in granting preliminary settlement approval that the "primary pool of funds remaining is from the company's Director's and Officer's insurance, a wasting policy," which "is deteriorating due to legal fees," and therefore "the longer litigation proceeded the less money would be available for the class."  Preliminary Approval Order at 6.[8]  Nothing has changed since then that would alter the Court's conclusion.

### 3.    Other Factors Established by Rule 23(e)(2)(C) Support Final Approval

Under Rule 23(e)(2)(C), courts next consider whether the relief provided for the class is adequate in light of "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims," "the terms of any proposed award of attorneys' fees, including timing of payment," and "any agreement required to be identified under Rule 23(e)(2)."  Fed. R. Civ. P. 23(e)(2)(C)(ii)-(iv).  Each of these factors support final approval.

First, the method for processing Settlement Class Members' claims and distributing relief includes well-established, highly effective procedures for processing claims submitted by potential Class Members and efficiently distributing the Net Settlement Fund.  The Court-appointed Claims Administrator, JND Legal Administration ("JND"), has and will process claims under the guidance of Lead Counsel, allow claimants an opportunity to cure any deficiencies in their claims or request the Court to review a denial of their claims, and mail Authorized Claimants their *pro rata* share of

---

[8] In reaching its conclusion, the Court cited abundant supporting caselaw: *Guevoura Fund Ltd. v. Sillerman*, 2019 WL 6889901, at *8 (S.D.N.Y. Dec. 18, 2019) ("Here, the D&O [I]nsurance coverage is a wasting asset as it pays legal fees of the [] Defendants, as providing coverage for the claims asserted in the Action"; "each day that the Action was not settled would take away money available for the Class for settlement."); *Embark*, 2023 WL 6276728, at *7 (granting preliminary approval to settlement recovering 1.1% of damages "as [d]efendants' tenuous financial position warranted settlement"); *Velti*, 2015 WL 468329, at *6 (finding company's precarious "financial condition … highlights the reasonableness of the settlement amount); *Brown v. China Integrated Energy Inc.*, 2016 WL 11757878, at *7 (C.D. Cal. July 22, 2016) (settlement reasonable where company's only domestic "asset is its Directors and Officers Insurance Policy—an eroding policy that decreases as it pays defense costs, leaving less available to satisfy any judgment"); *Immune Response*, 497 F. Supp. 2d at 1172 (finding "significant collectability issues" when company "had no money to fund a judgment or settlement [and] the only available source of funds was wasting insurance policies" supported settlement).

the Net Settlement Fund (per the Plan of Allocation) after Court-approval.  Claims processing like the method proposed here is standard in securities class action settlements and has long been found to be effective.  *See, e.g., Hefler,* 2018 WL 6619983, at *7 ("The Court [] finds that the proposed claims process provides an effective method of implementing that plan by ensuring that the claimant provides sufficient information to calculate the recognized loss amount").  Lead Counsel and JND have successfully implemented the same notice and claims processing program in several other securities class action settlements.  Segura Decl. ¶3.

Second, as discussed in the accompanying Final Approval Declaration and the Fee Motion, Lead Counsel is seeking a fee award calculated as a percentage of the common fund as compensation for the services rendered on behalf of the Class.  The proposed attorneys' fees of 25% of the Settlement Fund (which includes interest earned on the Settlement Amount) is fully consistent with the Ninth Circuit's "benchmark for a reasonable fee award" and is entirely appropriate in light of the substantial work performed and the significant results obtained.  *See Precigen,* 2023 WL 7305053, at *15 (awarding 25% attorneys' fees on $13 million securities class action settlement) (citing *Bluetooth,* 654 F.3d at 942); *see In re Vocera Communications, Inc., Sec. Litig.,* 2016 WL 8201593, at *2 (N.D. Cal. July 19, 2016) (Chen, J.) (awarding 25% attorneys' fees in securities class action settlement as "fair and reasonable and consistent with fee awards approved in cases within the Ninth Circuit").  Indeed, courts in the Ninth Circuit often award larger than 25 percent attorneys' fees, recognizing that while 25 percent is the Ninth Circuit benchmark, the norm is often higher.  *See, e.g., Davis v. Yelp, Inc.,* 2023 WL 3063823, at *2 (N.D Cal. Jan. 27, 2023) (Chen, J.) (awarding 33% attorneys' fees on $22.25 million securities class action settlement and noting that "a larger award" was warranted where, as here, Lead Counsel incurred a negative lodestar); *In re Allergan, Inc. Proxy Violation Derivatives Litig.,* 2018 WL 4959014, at *1 (C.D. Cal. Aug. 13, 2018) (Carter, J.) (in the Ninth Circuit, a 30% fee award is "the norm 'absent extraordinary circumstances that suggest reasons to lower or increase the percentage'") (*quoting In re Omnivision Techs. Inc.,* 559 F. Supp. 2d 1036, 1047-48 (N.D. Cal. 2007) (Conti, J.)); *In re Silver Wheaton Corp. Sec. Litig.,* 2020 WL 4581642, at *4 (C.D. Cal. Aug. 6, 2020) (awarding 30% of $41.5 million settlement); *Avila v. LifeLock Inc.,* 2020 WL 4362394, at *1 (D.

1    Ariz. July 27, 2020) (30% fee award of $20 million settlement was "fair and reasonable").

2        Third, in accordance with Rule 23(e)(2)(C)(iv), Lead Plaintiffs noted in their preliminary

3    approval motion that the Parties entered into a confidential supplemental agreement that allows

4    (but does not require) Defendants to withdraw from the settlement if class members representing

5    a certain amount of FibroGen common stock request exclusion from the class.  ECF No. 235 at 8.

6    The Court previously noted that "[t]his type of agreement is not uncommon in securities class

7    actions" and "[t]he terms of this agreement are not unreasonable."  Preliminary Approval Order at

8    7; *see also In re Carrier IQ, Inc., Consumer Privacy Litig.*, 2016 WL 4474366, at *5 (N.D. Cal.

9    Aug. 25, 2016) (Chen, J.) (observing that such "opt-out deals are not uncommon as they are

10   designed to ensure that an objector cannot try to hijack a settlement in his or her own self-interest,"

11   and granting final approval of class action settlement).  Significantly, there has not been a single

12   request for exclusion received thus far.  Segura Decl. ¶18.

13        **C.    All Settlement Class Members Are Treated Equitably**

14        Rule 23(e)(2)(D) requires courts to evaluate whether the settlement treats class members

15   equitably relative to one another.  As explained in the Final Approval Declaration, the proposed

16   Plan of Allocation is fair, reasonable, and adequate because each Authorized Claimant will receive

17   a *pro rata* share of the Net Settlement Fund.  Final Approval Decl. ¶¶15, 89.  Importantly, each

18   eligible Settlement Class Member, including Lead Plaintiffs, will be subject to the same formulas

19   for distribution of the Settlement.  *See Rentech*, 2019 WL 5173771, at *7 ("the [c]ourt sees no

20   significant indication of preferential treatment" where the "[n]et [s]ettlement [f]und will be

21   distributed to [a]uthorized [c]laimants on a *pro rata* basis based on the relative size of their

22   [r]ecognized [c]laims"); *Hefler*, 2018 WL 6619983, at *12 (concluding that a plan of allocation

23   using *pro rata* shares, "which does not discriminate between class members" was "fair and

24   reasonable").

25        **D.    The Positive Reaction Of The Class Supports Final Approval**

26        The Class's positive reaction to the Settlement also supports final approval.  *Hanlon*, 150

27   F.3d at 1026.  "[T]he absence of a large number of objections to a proposed class action settlement

28   raises a strong presumption that the terms of a proposed class action settlement are favorable to

MOTION FOR FINAL APPROVAL                    17
OF CLASS ACTION SETTLEMENT
3:21-cv-02623-EMC

class members." *Omnivision*, 559 F. Supp. 2d at 1043; *Hefler*, 2018 WL 6619983 at *9 (noting the small percentage of requests for exclusion and objections was an "overwhelmingly positive response" from Class Members that "supports approval"); *Fleming v. Impax Labs., Inc.*, 2022 WL 2789496, at *7 (N.D. Cal. July 15, 2022) (Gilliam, Jr., J.) ("the absence of objections indicates strong support among the Class Members and weighs in favor of approval").

Here, in accordance with the Preliminary Approval Order, JND disseminated an aggregate of 36,771 Notice Packets to potential Class Members and nominees, and the Summary Notice was published once in *Investor's Business Daily* and transmitted once over the *PR Newswire* on March 18, 2024. *See* Segura Decl. ¶¶12-13. JND also updated the dedicated website established in conjunction with class certification, www.FibroGenSecuritiesLitigation.com, to provide Class Members with information about the Settlement and access to downloadable copies of the Notice and Claim Form, as well as copies of the Stipulation, Preliminary Approval Order, and the Complaint. *Id.* at ¶15. The website became operational before March 4, 2024. *Id.* The website lists the deadlines to object and file a claim, as well as the date and time of the Court's Settlement Hearing. To date, Lead Counsel has not received *any* objections to the Settlement, the Plan of Allocation or the request for attorneys' fees and reimbursement of Litigation Expenses. Final Approval Decl. ¶¶6, 94; Segura Decl. ¶18. Accordingly, the reaction of the Settlement Class strongly supports granting final approval.

As provided in the Preliminary Approval Order, Lead Plaintiffs will file reply papers in support of the Settlement on May 2, 2024 after the April 18, 2024 deadline for objecting or requesting exclusion has passed. Lead Plaintiffs' reply papers will address any objections, requests for exclusion, as well as the number of valid claims received and/or filed.

Accordingly, the proposed Settlement satisfies each of the elements of Rule 23(e)(2) as well as the relevant Ninth Circuit's factors and should therefore be approved.

## IV.    THE COURT SHOULD APPROVE THE PLAN OF ALLOCATION

Plaintiffs also seek approval of the Plan of Allocation, which the Court preliminarily approved. *See* Preliminary Approval Order, at 3, 9. A plan of allocation in a class action "is governed by the same standards of review applicable to approval of the settlement as a whole: the

1  plan must be fair, reasonable, and adequate." *Omnivision*, 559 F. Supp. 2d at 1045.  An allocation

2  formula need only have a reasonable basis, particularly if recommended by experienced class

3  counsel.  *See Zynga*, 2016 WL 537946, at *14 ("Courts recognize that an allocation formula need

4  only have a reasonable, rational basis, particularly if recommended by experienced and competent

5  counsel."); *Velti*, 2015 WL 468329, at *8 (same).

6         The Plan of Allocation, as detailed in the Final Approval Declaration ¶¶84-93 and set forth

7  in full in the Notice mailed to potential Class Members (Final Approval Decl., Ex. D, at Ex. A,

8  Notice at ¶¶55-79), is based on the standard out-of-pocket measure of damages consistent with

9  Section 10(b) of the Exchange Act, and reflects an assessment of the damages that Lead Plaintiffs

10  contend could have been recovered under the theories of liability asserted in the Action.  It provides

11  an equitable basis to allocate the Net Settlement Fund among all Authorized Claimants, was

12  developed with the assistance of Plaintiffs' damages expert, and is "grounded in a formula that

13  will compensate class members for the losses related to their" purchases, acquisitions, and sales of

14  FibroGen securities.  *In re Amgen Inc. Sec. Litig.*, 2016 WL 10571773, at *8 (C.D. Cal. Oct. 25,

15  2016); *see Zynga*, 2016 WL 537946, at *15 (approving plan of allocation where "plaintiffs have

16  provided an explanation of their chosen allocation that is reasonable and that corresponds to the

17  allegations in the complaint").  Individual Authorized Claimants' recoveries will depend on when

18  during the Class Period they bought FibroGen securities—including common stock and options—

19  and whether and when they sold them.  Authorized Claimants will recover their proportional "*pro*

20  *rata*" amount of the Net Settlement Fund based on their recognized loss, calculated under the Plan

21  of Allocation using the transactional information provided by claimants.  No preferential treatment

22  is provided, and there have been no objections to the Plan of Allocation filed by Class Members.

23  Indeed, the Plan of Allocation is substantially similar to plans of allocation approved in numerous

24  other securities class actions.  *See Precigen*, 2023 WL 7305053, at *11 (finding similar "[p]lan of

25  [a]llocation to be a fair, reasonable, adequate, and equitable method to allocate the [n]et

26  [s]ettlement [f]und" in securities class action); *BofI Holding,* 2022 WL 9497235, at *12 (approving

27  similar plan of allocation involving stock and options).

28         The Plan of Allocation is fair and reasonable and should be finally approved.

1    **V.    NOTICE TO THE SETTLEMENT CLASS SATISFIES DUE PROCESS**

2        For any class certified under Rule 23(b)(3), due process and Rule 23 require that class

3    members be given "the best notice practicable under the circumstances, including individual notice

4    to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The

5    Notice provides all the necessary information required by Rule 23(c)(2)(B) and satisfies the

6    requirements of the PSLRA, 15 U.S.C. § 78u-4(a)(7). The Court previously approved the form

7    and content of the Notice, Claim Form, and Summary Notice and found Plaintiffs' proposal to

8    mail and publish notice satisfied Rule 23 and due process. Preliminary Approval Order at 9. Lead

9    Counsel and JND fully complied with the notice program as proposed.

10        In sum, the notice program, detailed in ¶¶80-83 of the Final Approval Declaration and ¶¶4-

11    13 of the Segura Declaration, fairly apprised Class Members of their rights with respect to the

12    Settlement, and is the best notice practicable under the circumstances. *See Vataj*, 2021 WL

13    5161927, at *5 (finding notice by mail and published in a newswire with national distribution

14    "provided the best practicable notice to the class members"); *Yelp*, 2023 WL 3063823, at *1

15    (approving settlement where similar notice program was administered by JND); *Impax*, 2022 WL

16    2789496, at *5 (same).

17    **VI.    CONCLUSION**

18        For the reasons stated in this memorandum and in the Final Approval Declaration, Lead

19    Plaintiffs respectfully request that the Court grant final approval of the proposed Settlement and

20    approve the proposed Plan of Allocation. A proposed judgment and a proposed order will be

21    submitted with Lead Counsel's reply papers, after the April 18, 2024 objection and exclusion

22    deadline has passed.

23    Dated: April 4, 2024                           Respectfully submitted,

24                                                   */s/ David R. Kaplan*
                                                     **SAXENA WHITE P.A.**
25                                                   David R. Kaplan (SBN 230144)
                                                     dkaplan@saxenawhite.com
26                                                   Emily Bishop (SBN 319383)
                                                     ebishop@saxenawhite.com
27                                                   505 Lomas Santa Fe Drive, Suite 180
                                                     Solana Beach, CA 92075
28                                                   Tel.: (858) 997-0860

Fax: (858) 369-0096

Steven B. Singer
ssinger@saxenawhite.com
Kyla Grant (admitted *pro hac vice*)
kgrant@saxenawhite.com
Sara DiLeo (admitted *pro hac vice*)
sdileo@saxenawhite.com
Joshua H. Saltzman (admitted *pro hac vice*)
jsaltzman@saxenawhite.com
10 Bank Street, 8th Floor
White Plains, New York 10606
Tel: (914) 437-8551

Maya Saxena (admitted *pro hac vice*)
msaxena@saxenawhite.com
Lester R. Hooker (SBN 241590)
lhooker@saxenawhite.com
Dianne M. Pitre (SBN 286199)
dpitre@saxenawhite.com
7777 Glades Road, Suite 300
Boca Raton, FL 33434
Tel.: (561)394-3399
Fax: (561)394-3382

*Counsel for Lead Plaintiffs Employees' Retirement*
*System of the City of Baltimore, City of*
*Philadelphia Board of Pensions and Retirement,*
*and Plymouth County Retirement Association, and*
*Lead Counsel for the proposed Settlement Class*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I hereby certify under penalty of perjury that on April 4, 2024, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel or parties of record.

*/s/ David R. Kaplan*
David R. Kaplan