**SAXENA WHITE P.A.**
David R. Kaplan (SBN 230144)
dkaplan@saxenawhite.com
Emily Bishop (SBN 319383)
ebishop@saxenawhite.com
505 Lomas Santa Fe Drive, Suite 180
Solana Beach, CA 92075
Tel.: (858) 997-0860
Fax: (858) 369-0096

*Counsel for Lead Plaintiffs Employees' Retirement
System of the City of Baltimore, City of
Philadelphia Board of Pensions and Retirement,
and Plymouth County Retirement Association, and
Lead Counsel for the proposed Settlement Class*

*[Additional Counsel listed on Signature Page]*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE FIBROGEN, INC., SECURITIES LITIGATION | Case No. 3:21-cv-02623-EMC |
| | **CLASS ACTION** |
| | LEAD COUNSEL'S: (1) NOTICE OF MOTION AND MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES; AND (2) MEMORANDUM OF LAW IN SUPPORT THEREOF |
| | Hearing Date: May 16, 2024<br>Time: 1:30 p.m.<br>Courtroom: 5 – 17th Floor [Via Zoom]<br>Judge: Hon. Edward M. Chen |

MOTION FOR AN AWARD OF ATTORNEYS'
FEES AND REIMBURSEMENT OF
LITIGATION EXPENSES
3:21-cv-02623-EMC

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................................ii

NOTICE OF MOTION AND MOTION FOR AN AWARD OF ATTORNEYS' FEES
    AND REIMBURSEMENT OF LITIGATION EXPENSES ................................................vi

STATEMENT OF ISSUES TO BE DECIDED...................................................................vi

MEMORANDUM OF POINTS AND AUTHORITIES ...............................................................1

I.      INTRODUCTION.....................................................................................................1

II.    FACTUAL AND PROCEDURAL HISTORY OF THE LITIGATION ...............................4

III.   THE COURT SHOULD APPROVE LEAD COUNSEL'S FEE REQUEST .......................4

    A.    Lead Counsel is Entitled to Reasonable Attorneys' Fees from the Common
        Fund.............................................................................................................4

    B.    The Court Should Calculate the Fee as a Percentage of the Common Fund ................5

    C.    The Relevant Factors Support the 25% Fee Request .......................................6

        1.    The Results Achieved Support The Fee Request ..................................................7

        2.    The Litigation Was Risky and Complex ...............................................................8

        3.    The Skill Required and the Quality and Efficiency of Counsel's Work
            Support the Fee Request.......................................................................11

        4.    The Contingent Nature of the Action and Financial Burden Carried by
            Class Counsel Weighs in Favor of Awarding the Requested Fee.....................13

        5.    A 25% Fee Award Is the Ninth Circuit's Benchmark and Comparable to
            Awards in Similar Cases ......................................................................15

        6.    Lack of Opposition Supports Granting the Requested Fees.............................16

        7.    A Lodestar Cross-Check Supports the Requested Fee.......................................17

IV.   LEAD COUNSEL'S EXPENSES ARE REASONABLE AND SHOULD BE
    APPROVED...........................................................................................................19

V.    LEAD PLAINTIFFS' REIMBURSEMENT SHOULD BE APPROVED .........................20

VI.   CONCLUSION .....................................................................................................21

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Abadilla v. Precigen, Inc.*,
   2023 WL 7305053 (N.D. Cal. Nov. 6, 2023) ................................................................................6

*Baum v. Harman Int'l Industries, Inc.*,
   2022 WL 17037516 (D. Conn. Nov. 10, 2022) ..........................................................................16

*Blum v. Stenson*,
   465 U.S. 886 (1984) ....................................................................................................................15

*Boeing Co. v. Van Gemert*,
   444 U.S. 472 (1980) ......................................................................................................................4

*Brown v. China Integrated Energy Inc.*,
   2016 WL 11757878 (C.D. Cal. July 22, 2016)...........................................................................10

*Burnthorne-Martinez v. Sephora USA, Inc.*,
   2018 WL 5310833 (N.D. Cal. May 16, 2018)...............................................................................6

*Chang v. Wells Fargo Bank, N.A.*,
   2023 WL 6961555 (N.D. Cal. Oct. 19, 2023) ..........................................................3, 7, 14, 18

*Cheng Jiangchen v. Rentech, Inc.*,
   2019 WL 5173771 (C.D. Cal. Oct. 10, 2019) ........................................................7, 8, 10, 13

*Ching v. Siemens Indus., Inc.*,
   2014 WL 2926210 (N.D. Cal. June 27, 2014)............................................................................13

*Davis v. Yelp, Inc.*,
   2023 WL 3063823 (N.D. Cal. Jan. 27, 2023)..........................................................4, 6, 15, 21

*Destefano v. Zynga, Inc.*,
   2016 WL 537946 (N.D. Cal. Feb. 11, 2016)......................................................................*passim*

*Fleming v. Impax Lab'ys Inc.*,
   2022 WL 2789496 (N.D. Cal. July 15, 2022) ......................................................................20, 21

*Ford v. CEC Ent. Inc.*,
   2015 WL 11439033 (S.D. Cal. Dec. 14, 2015) ............................................................................6

*Fulton Cnty. Employees' Ret. Sys. on Behalf of Goldman Sachs Group, Inc. v. Blankfein*,
   2023 WL 350888 (S.D.N.Y. Jan. 20, 2023) ..............................................................................18

*Glass v. UBS Fin. Servs., Inc.*,
   331 F. App'x 452 (9th Cir. 2009)..................................................................................................6

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ..................................................................................5, 15

*Harris v. Marhoefer*,
    24 F.3d 16 (9th Cir. 1994) .............................................................................................19

*Hatamian v. Advanced Micro Devices, Inc.*,
    2018 WL 8950656 (N.D. Cal. Mar. 2, 2018) ........................................................... 15, 21

*Hayden v. Portola Pharms. Inc.*,
    2023 WL 2375242 (N.D. Cal. Mar. 6, 2023) ................................................................13

*Hefler v. Wells Fargo & Co.*,
    2018 WL 6619983 (N.D. Cal. Dec. 18, 2018)............................................................5, 8

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983) .........................................................................................................7

*In re Allergan, Inc. Proxy Violation Derivatives Litig.*,
    2018 WL 4959014 (C.D. Cal. Aug. 13, 2018) .................................................................6

*In re Am. Apparel, Inc. S'holder Litig.*,
    2014 WL 10212865 (C.D. Cal. July 28, 2014).........................................................18, 19

*In re Am. Int'l Grp., Inc. Sec. Litig.*,
    2012 WL 345509 (S.D.N.Y. Feb. 2, 2012) ..............................................................20, 21

*In re Chicago Bridge & Iron Company N.V. Sec. Litig.*,
    2022 WL 3220783 (S.D.N.Y. Aug. 5, 2022)..................................................................16

*In re Eros Int'l PLC Sec. Litig.*,
    2023 WL 8519091 (D.N.J. Nov. 28, 2023) ...................................................................16

*In re FibroGen Inc. Sec. Litig.*,
    2022 WL 2793032 (N.D. Cal. July 15, 2022) .................................................................9

*In re Hi-Crush Partners L.P. Sec. Litig.*,
    2014 WL 7323417 (S.D.N.Y. Dec. 19, 2014) .................................................................5

*In re High-Tech Employee Antitrust Litig.*,
    2015 WL 5158730 (N.D. Cal. Sept. 2, 2015)................................................................20

*In re JDS Uniphase Corp. Sec. Litig.*,
    2007 WL 4788556 (N.D. Cal. Nov. 27, 2007) ..............................................................14

*In re Myford Touch Consumer Litig.*,
    2019 WL 6877477 (N.D. Cal. Dec. 17, 2019).........................................................18

*In re Omnivision Techs., Inc.*,
    559 F. Supp. 2d 1036 (N.D. Cal. 2008)...........................................................*passim*

MOTION FOR AN AWARD OF ATTORNEYS'
FEES AND REIMBURSEMENT OF
LITIGATION EXPENSES
3:21-cv-02623-EMC

iii

*In re Oracle Corp. Sec. Litig.*,
  2009 WL 1709050 (N.D. Cal. June 16, 2009)........................................................................14

*In re Perrigo Co. PLC Sec. Litig.*,
  2022 WL 500913 (S.D.N.Y. Feb. 18, 2022) ..........................................................................11

*In re Splunk Inc. Sec. Litig.*,
  2024 WL 923777 (N.D. Cal. Mar. 4, 2024) .............................................................................6

*In re Tesla Inc. Sec. Litig.*,
  2023 WL 4032010 (N.D. Cal. June 14, 2023)........................................................................14

*In re Veeco Inst., Inc. Sec. Litig.*,
  2007 WL 4115808 (S.D.N.Y. Nov. 7, 2007)..........................................................................16

*In re Vocera Communications, Inc., Sec. Litig.*,
  2016 WL 8201593 (N.D. Cal. July 19, 2016) ........................................................................15

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*,
  2017 WL 1047834 (N.D. Cal. Mar. 17, 2017) ........................................................................18

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
  19 F. 3d 1291 (9th Cir. 1994) ...................................................................................................5

*In re Wilmington Tr. Sec. Litig.*,
  2018 WL 6046452 (D. Del. Nov. 19, 2018)...........................................................................11

*Khoja v. Orexigen Therapeutics, Inc.*,
  2021 WL 5632673 (S.D. Cal. Nov. 30, 2021)........................................................................18

*Micholle v. Ophthotec Corp.*,
  2022 WL 16571095 (S.D.N.Y. Sept. 16, 2022) .....................................................................16

*Oregon Laborers Emps. Pension Tr. Fund v. Maxar Techs. Inc.*,
  2024 WL 98387 (D. Colo. Jan. 1, 2024) ................................................................................15

*Peace Officers' Annuity & Benefit Fund of Georgia v. DaVita Inc.*,
  2021 WL 2981970 (D. Colo. July 15, 2021) ..........................................................................11

*Pinto v. Princess Cruise Lines, Ltd.*,
  513 F. Supp. 2d 1334 (S.D. Fla. 2007) ..................................................................................15

*Plymouth Cnty. Ret. Sys. v. GTT Commc'ns, Inc.*,
  2021 WL 1659848 (E.D. Va. Apr. 23, 2021) ...................................................................11, 16

*Plymouth Cnty. Ret. Sys. v. Patterson Companies, Inc.*,
  2022 WL 2093054 (D. Minn. June 10, 2022) ...................................................................11, 18

*Rieckborn v. Velti PLC*,
  2015 WL 468329 (N.D. Cal. Feb. 3, 2015) ............................................................................18

MOTION FOR AN AWARD OF ATTORNEYS'
FEES AND REIMBURSEMENT OF
LITIGATION EXPENSES
3:21-cv-02623-EMC

iv

*Ross v. Bar None Enterprises, Inc.*,
   2015 WL 1046117 (E.D. Cal. Mar. 10, 2015)............................................................................11

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007) ......................................................................................................................5

*Thomas v. MagnaChip Semiconductor Corp.*,
   2018 WL 2234598 (N.D. Cal. May 15, 2018)...........................................................................20

*Union Asset Mgmt. Holding A.G. v. Dell, Inc.*,
   669 F.3d 632 (5th Cir. 2012) ........................................................................................................6

*Varljen v. H.J. Meyers & Co.*,
   2000 WL 1683656 (S.D.N.Y. Nov. 8, 2000)............................................................................21

*Vataj v. Johnson*,
   2021 WL 5161927 (N.D. Cal. Nov. 5, 2021) ...............................................................8, 15, 17

*Vincent v. Hughes Air West, Inc.*,
   557 F.2d 759 (9th Cir. 1977) ........................................................................................................5

*Vizcaino v. Microsoft Corp.*,
   290 F.3d 1043 (9th Cir. 2002) ...........................................................................................*passim*

*Wong v. Arlo Techs., Inc.*,
   2021 WL 1531171 (N.D. Cal. Apr. 19, 2021)..........................................................................8

**STATUTES**

15 U.S.C.
   § 78u-1(a)(6)...................................................................................................................................6
   § 78u-4(a)(4)..............................................................................................................................3, 20

## NOTICE OF MOTION AND MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES

### TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

**PLEASE TAKE NOTICE**, that pursuant to Rule 23(h) of the Federal Rules of Civil Procedure and the Court's Order Preliminarily Approving Settlement and Providing for Notice ("Preliminary Approval Order," ECF No. 244), on May 16, 2024, at 1:30 p.m., or as soon thereafter as the matter may be heard, at the United States District Court for the Northern District of California, 450 Golden Gate Avenue, San Francisco, CA 94102, Courtroom 5, 17th Floor, before the Honorable Edward M. Chen, lead counsel Saxena White LLP ("Saxena White" or "Lead Counsel") will, and hereby does, move the Court for an Order awarding attorneys' fees and reimbursement of Litigation Expenses in the above-captioned securities class action (the "Action").[1]

This Motion is based on the following Memorandum of Law, the Final Approval Declaration, the Declaration of Luiggy Segura Regarding (A) Mailing of Notice Packet; (B) Publication of Summary Notice; and (C) Report on Requests for Exclusions and Objections (Ex. D, "Segura Decl."), the Stipulation, all prior pleadings and papers in this Action, and such additional information or argument as may be required by the Court.

### STATEMENT OF ISSUES TO BE DECIDED

(1)    Whether the Court should approve as fair and reasonable Lead Counsel's application for an award of attorneys' fees in the amount of 25% of the Settlement Fund (i.e., the Settlement Amount, plus interest earned thereon);

(2)    Whether the Court should approve the request for reimbursement of $637,306.21 in out-of-pocket litigation expenses incurred by Lead Counsel in this Action; and

---

[1] Unless otherwise defined herein, all capitalized terms have the meanings set forth in the Stipulation and Agreement of Settlement dated December 7, 2023 ("Stipulation"; ECF No. 236, Ex. 1) and the concurrently filed Declaration of Lester R. Hooker in Support of: (I) Lead Plaintiffs' Motion for Final Approval of Class Action Settlement and Plan of Allocation; and (II) Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses ("Final Approval Declaration" or "Final Approval Decl."). Citations herein to "¶ __" and "Ex. __" refer, respectively, to paragraphs in, and exhibits to, the Final Approval Declaration. Unless otherwise noted, all emphasis is added and all internal quotation marks and citations are omitted.

(3)    Whether the Court should approve the request for reimbursement of $8,268.14 to Employees' Retirement System of the City of Baltimore, $19,570.00 to City of Philadelphia Board of Pensions and Retirement, and $7,204.14 to Plymouth County Retirement Association (collectively, "Lead Plaintiffs"), for a total of $35,540.28, for costs incurred related to Lead Plaintiffs' representation of the Class in this Action, as authorized by the Private Securities Litigation Reform Act of 1995 (15 U.S.C. § 78u-4(a)(4), (the "PSLRA")).

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

After nearly three years of hard-fought litigation in a case that presented numerous and significant risks, Lead Counsel obtained an outstanding, all-cash Settlement of $28,500,000 on behalf of the Settlement Class.  The proposed Settlement secures a substantial recovery that is nearly four times greater than the $7.6 million median settlement in securities class actions in the Ninth Circuit, and approximately 25-50% greater than the 1.7% to 4.3% median recovery of estimated damages in similarly-sized securities class action settlements.  The Settlement is a highly favorable result for the Settlement Class that was the product of Lead Counsel's skill, hard work and effective advocacy on a fully contingent basis with no guarantee of ever being paid for their efforts.  As compensation for those efforts, Lead Counsel respectfully requests that the Court award attorneys' fees in the amount of 25% of the Settlement Fund, plus interest earned thereon, and $637,306.21 in litigation expenses reasonably and necessarily incurred in prosecuting and resolving the Action.  Lead Plaintiffs also respectfully request a total of $35,540.28 in reasonable costs that were directly related to their representation of the Class, as authorized by the PSLRA.

As set forth in the accompanying Final Approval Declaration, Lead Counsel obtained this result after a substantial commitment of time and resources.  Among other litigation efforts, Lead Counsel conducted a substantial investigation of the relevant claims, including interviews of numerous former employees and executives AstraZeneca, consultation with a pharmaceutical regulation expert, and review and analysis of FibroGen's public SEC filings, conference call transcripts, and media reports; prepared the highly particularized 118-page Complaint; defeated separate motions to dismiss filed by the FibroGen Defendants and Defendant Yu; conducted substantial discovery, including reviewing over 4.6 million of pages of documents produced by Defendants and non-parties (including AstraZeneca, Astellas, and the FDA); successfully engaged in substantial discovery motion practice—including defeating Defendants' claim of privilege and securing spoliation sanctions against Defendant Yu; conducted and prepared for numerous depositions; consulted with various financial and industry experts throughout the litigation; and

conducted substantial class certification-related litigation activities. In addition, Lead Counsel participated in and prepared for a full-day mediation session before Michelle Yoshida of Phillips ADR Enterprises, a nationally-renowned mediator, arbitrator, and special master highly experienced in mediating complex shareholder litigation. These mediation efforts included submitting detailed mediation statements and additional materials responding to Defendants' equally detailed submissions, and continued settlement discussions under Ms. Yoshida's guidance for months thereafter, culminating with the Parties accepting Ms. Yoshida's mediator's proposal to settle the Action on the terms embodied in the Settlement.

The Settlement is also significant in light of the very real risks Lead Counsel faced in establishing liability. Indeed, Defendants raised numerous significant challenges to virtually every element of the claims—including the core elements of materiality, falsity, scienter, loss causation, and damages—which created significant risks and uncertainty as to whether Action would result in any recovery at all. For example, Defendants argued that many of their statements were forward-looking and therefore not actionable under the PSLRA's safe harbor. Further, Defendants argued that the *post-hoc* changes to the Roxadustat safety data that were central to Plaintiffs' claims were not "manipulations" and were not misleading, as they reflected a mere disagreement between old and new management as to the best analyses to use. Defendants also claimed they did not act with scienter because numerous regulators found Roxadustat safe, including in some of the largest pharmaceutical markets in the world. Moreover, Defendants argued that AstraZeneca, FibroGen's Roxadustat development partner and a major pharmaceutical producer, released the same safety results using the same *post-hoc* adjustments, and many Individual Defendants were business people who had no basis to question the tactics or results of the tests conducted by scientists. In addition, Defendants argued that the Class Period needed to be further narrowed because many of the alleged corrective disclosures did not actually correct any of the alleged false statements. Finally, even if Plaintiffs prevailed in establishing liability, Defendants would have strenuously contested the existence and extent of recoverable damages, for example, by arguing that damages should be limited to at most only one of the alleged corrective disclosures.

MOTION FOR AN AWARD OF ATTORNEYS'
FEES AND REIMBURSEMENT OF
LITIGATION EXPENSES
3:21-cv-02623-EMC

2

If Defendants prevailed on any of these points, damages could have been significantly limited, if not eliminated altogether. And at every step of the way, Plaintiffs faced Defendants' vigorous challenges represented by highly skilled defense counsel.

In addition to these litigation risks, Plaintiffs also had to contend with FibroGen's ongoing financial and operational struggles. Indeed, on October 17, 2023, the date on which the Parties agreed to resolve the Action, FibroGen's stock price closed at approximately $0.65 per share—99% below its Class Period high of $60 per share. At the end of 2023, the Company had only $113.7 million in cash and cash equivalents and a **net loss** of $284.2 million for the full year of 2023. Furthermore, Defendants' directors' and officers' insurance policies are wasting policies that would be significantly depleted had litigation proceeded. FibroGen's uncertain financial condition thus created the very real risk of a substantially reduced recovery or no recovery at all.

Given the substantial recovery Lead Counsel obtained for the Settlement Class in the face of the significant risks posed by this litigation—as well as the complexity and amount of work involved, Lead Counsel's skill and expertise in completing that work, and Lead Counsel's representation on a fully contingent basis with no guarantee of any compensation—Lead Counsel's fee request of 25% of the Settlement Fund is fair and reasonable. Indeed, as this Court recognized, a 25% fee award "is the benchmark rate in the circuit" (Preliminary Approval Order at 6), and in this instance, it represents a **negative lodestar multiplier of 0.46**—meaning that the value of Plaintiffs' Counsel's time is more than **double** the amount of the fee requested, which further supports the reasonableness of the request. *See Chang v. Wells Fargo Bank, N.A.*, 2023 WL 6961555, at *8 (N.D. Cal. Oct. 19, 2023) (Gilliam, Jr., J.) ("a *negative* multiplier of .54 … further demonstrates the reasonableness of the fee request") (emphasis in original).

Lead Counsel also seeks an award of litigation expenses of $637,306.21. As detailed herein and in the Final Approval Declaration, the subject expenses are reasonable and routinely reimbursed in representative litigation. Lead Plaintiffs also respectfully move for a total of $35,540.28, pursuant to 15 U.S.C. §78u-4(a)(4) for their representation of the Class. Lead Plaintiffs spent hundreds of hours overseeing the prosecution and settlement of the Action;

MOTION FOR AN AWARD OF ATTORNEYS'
FEES AND REIMBURSEMENT OF
LITIGATION EXPENSES
3:21-cv-02623-EMC

3

reviewing significant pleadings and briefs; attending significant hearings; collecting and producing documents; preparing for and sitting for their depositions; participating in mediation and settlement negotiations; and otherwise supervising Lead Counsel. The costs and expenses requested by Lead Plaintiffs are reasonable in amount, and they were necessarily incurred in the successful prosecution of the Action. *See, e.g.*, *Davis v. Yelp, Inc.*, 2023 WL 3063823, at *2 (N.D. Cal. Jan. 27, 2023) (Chen, J.) (granting similar reimbursement request).

Finally, the Class's positive reaction and Lead Plaintiffs' endorsements further strongly support granting this motion. Lead Plaintiffs—sophisticated institutional investors who were closely involved in the prosecution and settlement of the Action—have reviewed and endorsed Lead Counsel's 25% fee request and expense request. Additionally, while the deadline for Settlement Class Members to object to the requested attorneys' fees has not yet passed, thus far not a single objection has been lodged to the fee request.

For these reasons, and as set forth in more detail below, Lead Plaintiffs and Lead Counsel respectfully request that the Court approve this motion.

## II.    FACTUAL AND PROCEDURAL HISTORY OF THE LITIGATION

The Final Approval Declaration is an integral part of this submission. For the sake of brevity in this memorandum, the Court is referred to the Final Approval Declaration for a detailed description of, *inter alia*, the factual and procedural history of the Action (¶¶21-29, 49, 51-54, 57-58); the nature of the claims asserted (¶¶5, 24); the negotiations leading to the Settlement (¶¶55-56); the risks and uncertainties of continued litigation (¶¶61-74); and the services Lead Counsel provided for the benefit of the Settlement Class (¶¶12, 30-57).

## III.    THE COURT SHOULD APPROVE LEAD COUNSEL'S FEE REQUEST

### A.    Lead Counsel is Entitled to Reasonable Attorneys' Fees from the Common Fund

The award of attorneys' fees in this class action is governed by the common fund doctrine. The Supreme Court has long recognized that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). Similarly, the

MOTION FOR AN AWARD OF ATTORNEYS'
FEES AND REIMBURSEMENT OF
LITIGATION EXPENSES
3:21-cv-02623-EMC

4

Ninth Circuit has long held that "a private plaintiff, or his attorney, whose efforts create, discover, increase or preserve a fund to which others also have a claim is entitled to recover from the fund the costs of his litigation, including attorneys' fees." *Vincent v. Hughes Air West, Inc.*, 557 F.2d 759, 769 (9th Cir. 1977). The purpose of the common fund doctrine is to adequately compensate class counsel for services rendered and to ensure that all class members contribute equally towards the costs associated with the litigation. *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F. 3d 1291, 1300 (9th Cir. 1994) ("those who benefit from the creation of the fund should share the wealth with the lawyers whose skill and effort helped create it").

Moreover, "[c]ourts have [] recognized that, in addition to providing just compensation, awards of attorneys' fees from a common fund serve to encourage skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons, and to discourage future misconduct of a similar nature." *In re Hi-Crush Partners L.P. Sec. Litig.,* 2014 WL 7323417, at *17, n.15 (S.D.N.Y. Dec. 19, 2014). As the Supreme Court has explained, securities class actions such as this one are "an essential supplement to criminal prosecutions and civil enforcement actions" brought by the SEC. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007).

**B.    The Court Should Calculate the Fee as a Percentage of the Common Fund**

Courts have traditionally employed two methods for calculating attorneys' fees in securities class actions: the percentage-of-recovery method or the lodestar method. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998). The Ninth Circuit has expressly approved the percentage-of-recovery method, which is the prevailing method of awarding fees in common fund cases because the benefit to the Class is readily identifiable and easily correlated to a percentage-based award. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002) ("the primary basis of the fee award remains the percentage method"); *Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *12 (N.D. Cal. Dec. 18, 2018) (Tigar, J.) ("Courts have discretion to 'award attorneys a percentage of the common fund in lieu of the often more time-consuming task of calculating the lodestar.'"); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D.

Cal. 2008) (Conti, J.) ("use of the percentage method in common fund cases appears to be dominant").

Moreover, application of the percentage-of-the-fund method is consistent with the PSLRA, which provides that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount" recovered for the class. 15 U.S.C. § 78u-1(a)(6); *see also Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 643 (5th Cir. 2012) ("Part of the reason behind the near-universal adoption of the percentage method in securities cases is that the PSLRA contemplates such a calculation").

Accordingly, an award of attorneys' fees here using a percentage-of-the-fund method is appropriate, as is an informal lodestar crosscheck to assess the reasonableness of the award. *See Vizcaino*, 290 F.3d at 1050 n.5 ("The lodestar method is merely a cross-check on the reasonableness of a percentage figure"); *Glass v. UBS Fin. Servs., Inc.*, 331 F. App'x 452, 456 (9th Cir. 2009) ("the district court properly performed an informal lodestar cross-check").

### C.    The Relevant Factors Support the 25% Fee Request

Consistent with the Ninth Circuit benchmark, Lead Counsel requests a fee award of 25%. *See, e.g., In re Splunk Inc. Sec. Litig.*, 2024 WL 923777, at *6 (N.D. Cal. Mar. 4, 2024) (Tigar, J.) (25% fee is "the prevailing benchmark for percentage fee awards in the Ninth Circuit."); *Abadilla v. Precigen, Inc.*, 2023 WL 7305053, at *9 (N.D. Cal. Nov. 6, 2023) (Labson Freeman, J.) (finding 25% fee request "reasonable under the Ninth Circuit benchmark"). Notably, despite the substantial benefit Lead Counsel obtained for the Class in the face of considerable risk, and the fact that courts in this Circuit routinely award fees greater than the benchmark in appropriate circumstances,[2] here Lead Counsel does not request any enhancement to the 25% benchmark. Accordingly, the requested fee is squarely in line with awards commonly approved in other

---

[2] Courts in this District and elsewhere in the Ninth Circuit frequently award percentages greater than the 25% benchmark. *See, e.g., Yelp,* 2023 WL 3063823, at *2 (awarding 33% attorneys' fees on $22.25 million securities class action settlement); *In re Allergan, Inc. Proxy Violation Derivatives Litig.*, 2018 WL 4959014, at *1 (C.D. Cal. Aug. 13, 2018) (noting that a 30% award is "the norm" in the Ninth Circuit); *Burnthorne-Martinez v. Sephora USA, Inc.*, 2018 WL 5310833, at *2 (N.D. Cal. May 16, 2018) (Gonzalez Rogers, J.) (same); *Ford v. CEC Ent. Inc.*, 2015 WL 11439033, at *5 (S.D. Cal. Dec. 14, 2015) (same).

securities fraud class action settlements in this Circuit, and is fair and reasonable when evaluated under the relevant *Vizcaino* factors evaluated in the Ninth Circuit, including: (i) the results achieved; (ii) the risk of litigation; (iii) the skill required and the quality of work; (iv) the contingent nature of the fee and the financial burden carried; and (v) awards made in similar actions. *Vizcaino*, 290 F.3d at 1048-50. As set forth below, all of the *Vizcaino* factors militate in favor of approving the requested fee.

### 1.    The Results Achieved Support The Fee Request

The result achieved by counsel is an important factor in considering an attorneys' fee request. *See Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) ("the most critical factor is the degree of success obtained"); *Chang v. Wells Fargo Bank, N.A.*, 2023 WL 6961555, at *7 (N.D. Cal. Oct. 19, 2023) (Gilliam, Jr., J.) ("The first and most critical factor in assessing an attorneys' fee request is the degree of success obtained."); *Cheng Jiangchen v. Rentech, Inc.,* 2019 WL 5173771, at *9 (C.D. Cal. Oct. 10, 2019) ("The result achieved is a significant factor to be considered in making a fee award"). Here, the creation of a settlement fund in the amount of $28,500,000 is an excellent result for the Class that will provide Class members with a significant cash recovery that was achieved despite many complexities and risks, while avoiding the substantial expense, delay, risk, and uncertainty of continued discovery, motion practice, summary judgment, trial, and appeal— including the very real risk of no recovery at all.

As the Court previously recognized, the Settlement would have ranked in the top 31% of all securities class action settlements in 2022, and far exceeds both the $9.0 million median recovery for securities class actions settlements between 2013 and 2022 alleging claims under the Securities Exchange Act, as well as the $7.6 million median recovery for securities class action settlements in the Ninth Circuit. *See* Preliminary Approval Order at 5-6.[3] As the Court further recognized in its Preliminary Approval Order, the Settlement equates to approximately 3.4% to 6.4% of the maximum available damages, and therefore eclipses the 1.7% to 4.3% median

---

[3] *Citing* Cornerstone Research, *Securities Class Action Settlements, 2022 Review and Analysis*, at 7, 19 (March 8, 2023), https://www.cornerstone.com/wp-content/uploads/2023/03/Securities-Class-Action-Settlements-2022-Review-and-Analysis.pdf

MOTION FOR AN AWARD OF ATTORNEYS'          7
FEES AND REIMBURSEMENT OF
LITIGATION EXPENSES
3:21-cv-02623-EMC

percentage of similar damages ranges in 2022 settlements. *See id.* at 5. The 3.4% low-end figure (double the low-end of the median recovery) is based on the analysis of Plaintiffs' damages expert, Mr. Scott Walster, that the maximum damages for the class period that the Court certified in the Class Certification Order (ECF No. 248)—assuming that Plaintiffs are successful on every issue— are approximately $818 million for shareholders and $33 million for option holders. *Id.* The 6.4% high-end figure (a 50% increase on the high-end of the median recovery) is based on the scenario where the Court or jury were to accept Defendants' arguments limiting the actionable class period to November 8, 2019 through April 6, 2021, which, under Plaintiffs' expert analysis would provide damages for FibroGen common stockholders as low as $443 million and $13 million for options investors. *Id.* Courts in this District regularly award the 25% benchmark fee under significantly *lower* recoveries. *See Wong v. Arlo Techs., Inc.*, 2021 WL 1531171, at **9, 11 (N.D. Cal. Apr. 19, 2021) (Labson Freeman, J.) (granting 25% fee award where recovery was 2.35% of the total damages); *Vataj v. Johnson*, 2021 WL 5161927, at **9-10 (N.D. Cal. Nov. 5, 2021) (Gilliam, Jr., J.) (awarding 25% benchmark fee where settlement "common fund represent[ed] a 2% recovery on the estimated" total damages).

### 2.    The Litigation Was Risky and Complex

"The risk that further litigation might result in Plaintiffs not recovering at all, particularly a case involving complicated legal issues, is a significant factor in the award of fees." *Rentech*, 2019 WL 5173771, at *9 (citing *Omnivision*, 559 F. Supp. 2d at 1046-47). This risk can be based on litigation uncertainties or "an issue as to collectability of any judgment achieved." *Destefano v. Zynga, Inc.*, 2016 WL 537946, at *17 (N.D. Cal. Feb. 11, 2016) (Scott Corley, Mag. J.). While courts have always recognized that securities class actions carry significant risks, post-PSLRA rulings make it clear that the risk of no recovery has increased significantly. *See e.g. Hefler,* 2018 WL 6619983, at *13 ("'[I]n general, securities actions are highly complex and … securities class litigation is notably difficult and notoriously uncertain'"). Indeed, over half of all securities class

actions filed under the PSLRA are dismissed at the pleading stage.[4]  This Action was no exception, as it presented substantial risks as to both continuing litigation and recoverability.

*First*, this Action presented numerous contested issues and challenging defenses to liability and damages.  Throughout the litigation, Defendants have adamantly denied liability and asserted defenses challenging virtually element of the claims, including the core elements of materiality, falsity, scienter, and loss causation.  Notably, while Plaintiffs overcame Defendants' motion to dismiss (ECF No. 126), the Court has accepted certain of Defendants' loss causation arguments in partially certifying the class.  ECF No. 248 at 22-27.  While Plaintiffs believe they could have successfully moved for reconsideration or appealed the decision, Defendants could have raised similar arguments at summary judgment or at trial, as well as additional loss causation arguments regarding the other alleged corrective disclosures.

Defendants also had credible arguments regarding falsity and scienter that they would have almost certainly raised at summary judgment or trial.  Specifically, Defendants would likely have argued, as they had throughout the litigation: that using *post-hoc* changes to stratification factors reflected a mere disagreement between old and new management and was not unreasonable (ECF No. 107 at 14-15; ECF No. 122 at 22:6-9); that they never admitted to manipulating safety results and that Plaintiffs' allegations of manipulation were "based entirely on public comments by a handful of outside observers, none of whom knew what stratification factors FibroGen had used, or why, or what FibroGen had disclosed to the FDA about stratification factors" (ECF No. 180 at 5); and that numerous other regulators, including ones with rigorous drug safety approval processes, had approved Roxadustat for use, something the Court found was a "helpful fact for Defendants" and was "relevant" to the scienter analysis.  *In re FibroGen Inc. Sec. Litig.*, 2022 WL 2793032, at *23 (N.D. Cal. July 15, 2022) (Chen, J.).

Lead Plaintiffs also recognize that the technical nature of New Drug Applications with the FDA, the interpretation of technical drug trial data, and the calculations of artificial inflation in FibroGen securities meant that the upcoming summary judgment motion practice and trial would

---

[4] *Cornerstone*, *supra* note 3, at 6 (analyzing cases filed between 2018-2020).

lead to a contentious "battle of the experts."  The Court or the jury might not agree with Lead Plaintiffs that the evidence demonstrated that Defendants made materially false and misleading statements with scienter, and even if they had, that such misstatements caused the Class's losses. In short, the case presented highly technical and scientific issues that would likely have been very difficult for a jury to understand, for example, concerning the cardiovascular safety and efficacy profile of Roxadustat compared to placebo and/or Epogen based on different clinical trial results, including under different stratification factors.  And, even if successful at trial, Plaintiffs would still face the risk of an unfavorable ruling in a dispositive post-trial motion or a reversal on appeal.

*Second*, even if Plaintiffs prevailed in establishing liability, FibroGen would almost certainly have been unable to satisfy a substantial judgment.  Due to the Company's dramatically decreased stock price and market capitalization, and its tenuous financial and operational condition, there were significant questions regarding the Company's ability to withstand a judgment—a consideration that injected an additional level of uncertainty into the Class's ability to recover on its claims.  As this Court recognized, there is a "particularly acute risk that Plaintiffs will not be able to recover at all if the litigation continues because of Defendants' financial circumstances."  Preliminary Approval Order at 6.  Indeed, the Company has reported substantial losses, and on October 17, 2023, the date on which the Parties agreed to resolve the Action, FibroGen's stock price closed at approximately $0.65 per share, representing a market capitalization of approximately $60 million.  The Settlement Amount thus represents nearly ***half*** of the Company's entire market capitalization on that date.  Courts regularly factor in collectability risks when assessing fee requests.  *See, e.g.*, *Zynga, Inc.*, 2016 WL 537946, at *17 (approving benchmark fee award where "Lead Counsel understood … there would always be an issue as to collectability of any judgment achieved"); *Rentech*, 2019 WL 5173771, at *9 (approving 33% fee award because the defendant company's financial struggles meant "Plaintiffs may have faced obstacles to obtaining compensation even in the event of a judgment in their favor"); *Brown v. China Integrated Energy Inc.*, 2016 WL 11757878, at *11 (C.D. Cal. July 22, 2016) (awarding 25% fee where the  plaintiffs "may have difficulty collecting any judgment they might obtain

MOTION FOR AN AWARD OF ATTORNEYS'    10
FEES AND REIMBURSEMENT OF
LITIGATION EXPENSES
3:21-cv-02623-EMC

against Defendants"); *Ross v. Bar None Enterprises, Inc.*, 2015 WL 1046117, at *9 (E.D. Cal. Mar. 10, 2015) (approving upward adjustment to 25% benchmark because of the "risk the defendant would become insolvent").

Substantial risks and uncertainties in this type of litigation and in this case in particular made it far from certain that any recovery, let alone a $28.5 million recovery, would ultimately be obtained. This factor strongly supports the requested award.

### 3. The Skill Required and the Quality and Efficiency of Counsel's Work Support the Fee Request

In determining a reasonable fee, courts often consider the quality of the work performed and the skill required in the action. "The prosecution and management of a complex national class action requires unique legal skills and abilities. … This is particularly true in securities cases because the [PSLRA] makes it much more difficult for securities plaintiffs to get past a motion to dismiss." *Zynga, Inc.*, 2016 WL 537946, at *17 (citing *Omnivision*, 559 F. Supp. 2d at 1047).

Here, Lead Counsel are nationally recognized attorneys in the field of complex shareholder litigation and have repeatedly been recognized by courts in this District and nationwide for expertise in successfully prosecuting securities class actions. *See* Final Approval Decl., Ex. E-6 (Saxena White firm resume); *see also, e.g.*, *In re Wilmington Tr. Sec. Litig.*, 2018 WL 6046452, at *8 (D. Del. Nov. 19, 2018) (approving $210 million settlement, noting Saxena White is "highly experienced" and that "the significant amount of recovery in the settlement agreements attests to their efficiency"); *Peace Officers' Annuity & Benefit Fund of Georgia v. DaVita Inc.*, 2021 WL 2981970, at *2-4 (D. Colo. July 15, 2021) (approving $135 million and recognizing the "efforts expended by [Saxena White]"); *Plymouth Cnty. Ret. Sys. v. Patterson Companies, Inc.*, 2022 WL 2093054, at *2 (D. Minn. June 10, 2022) (approving $63 million settlement and noting that Saxena White "conducted the Litigation and achieved the Settlement with skill, perseverance, and diligent advocacy"); *In re Perrigo Co. PLC Sec. Litig.*, 2022 WL 500913, at *1-2 (S.D.N.Y. Feb. 18, 2022) (same, $31.9 million recovery); *Plymouth Cnty. Ret. Sys. v. GTT Commc'ns, Inc.*, 2021 WL 1659848, at *5 (E.D. Va. Apr. 23, 2021) (same, $25 million recovery). Moreover, this litigation was highly complex and involved difficult and often unresolved legal issues and a difficult and

highly technical subject matter.  Among the many issues on which the parties do not agree are: (i) whether Defendants' statements concerning Roxadustat violated the securities laws; (ii) whether Defendants acted with scienter in making or disseminating such statements; (iii) the method for determining whether the price of FibroGen securities were artificially inflated; (iv) the amount (if any) of such inflation; (v) the date when any such inflation dissipated from the securities; and (vi) the amount of damages (if any) that could be recovered at trial.  From the outset of this case, Lead Counsel sought to obtain the maximum recovery for the Class and devoted substantial amounts of attorney and staff time, as well as its own money and other considerable resources in the vigorous prosecution of this matter.  *See* Final Approval Decl. at ¶¶96-117.

As a result of Lead Counsel's work, the Class was able to plead detailed allegations based on an extensive investigation; successfully oppose Defendants' motions to dismiss despite the PSLRA's and Rule 9's exacting pleading requirements; work with experts and consultants to present strong counterarguments to Defendants' positions on falsity, loss causation, and damages; engage in comprehensive fact, expert and spoliation discovery; obtain spoliation sanctions against Defendant Yu for willfully destroying evidence and the threat of potential sanctions against the Company; defeat Defendants' claim of privilege over key evidence, including a critical presentation that Defendants attempted to claw-back as privileged; and gain class certification for the substantial majority of the alleged Class Period.

Lead Counsel's skill and determination to vigorously prosecute the case to obtain the best possible result for the Settlement Class is further evidenced by the fact that the case did not settle at the initial mediation, but rather was intensely litigated for many additional months before the Parties agreed to Ms. Yoshida's mediator's proposal.  Indeed, Lead Counsel, under Lead Plaintiffs' oversight, refused to settle the Action quickly, and instead litigated the case through multiple motions, depositions, and voluminous discovery to ensure the maximum recovery for the Class. Lead Counsel's extensive efforts, tenacity, skill, and demonstrated willingness to litigate rather than accept a below-value settlement led to maximizing the Settlement Class's recovery.  These efforts strongly support the requested fee.

"The quality of opposing counsel is also relevant to the quality and skill that class counsel provided." *Zynga*, 2016 WL 537946, at *17; *Rentech*, 2019 WL 5173771, at *10 ("requested fee" supported because "Lead Counsel faced a vigorous defense" from "a respected national law firm"). Lead Counsel was opposed by both Cooley LLP ("Cooley") and Pillsbury Winthrop Shaw Pittman LLP ("Pillsbury"), two respected national law firms, with well-deserved reputations for vigorous advocacy in the defense of complex shareholder litigation. Final Approval Decl. ¶104. In the face of this highly-experienced and able opposition, Lead Counsel succeeded in defeating Defendants' motion to dismiss, advancing the case well into the discovery phase, obtaining spoliation sanctions against a key Defendant, and securing a significant recovery for the Class—all strongly reinforcing the reasonableness of Lead Counsel's fee request.

### 4. The Contingent Nature of the Action and Financial Burden Carried by Class Counsel Weighs in Favor of Awarding the Requested Fee

"The importance of assuring adequate representation for plaintiffs who could not otherwise afford competent attorneys justifies providing those attorneys who do accept matters on a contingent-fee basis a larger fee than if they were billing by the hour or on a flat fee." *Omnivision*, 559 F. Supp. 2d at 1047; *Zynga,* 2016 WL 537946, at *18 ("when counsel takes on a contingency fee case and the litigation is protracted, the risk of non-payment after years of litigation justifies a significant fee award"). "Courts have long recognized that the public interest is served by rewarding attorneys who assume representation on a contingent basis with an enhanced fee to compensate them for the risk that they might be paid nothing at all for their work." *Ching v. Siemens Indus., Inc.*, 2014 WL 2926210, at *8 (N.D. Cal. June 27, 2014) (James, Mag. J).

Here, Lead Counsel undertook this Action on an entirely contingent basis and litigated the claims with no guarantee of compensation or recovery of expenses. *See, e.g., Hayden v. Portola Pharms. Inc.*, 2023 WL 2375242, at *3 (N.D. Cal. Mar. 6, 2023) ("Plaintiffs' Counsel assumed substantial risk by pursuing the Action on a contingent basis, having received no compensation during the Action, and expecting any fee award would be contingent on the result achieved.") (Chhabria, J.). Although Lead Plaintiffs were successful at the motion to dismiss stage and secured class certification for a portion of the Class Period, the risks would only continue to threaten the

MOTION FOR AN AWARD OF ATTORNEYS'
FEES AND REIMBURSEMENT OF
LITIGATION EXPENSES
3:21-cv-02623-EMC

13

viability of the Action through summary judgment, trial, and the inevitable appeals. *See, e.g., In re Tesla Inc. Sec. Litig.*, 2023 WL 4032010, at *1 (N.D. Cal. June 14, 2023) (Chen, J.) (although this Court granted partial summary judgment on falsity and scienter to plaintiff in securities class action, jury returned verdict for defendants); *In re Oracle Corp. Sec. Litig.*, 2009 WL 1709050 (N.D. Cal. June 16, 2009) (Illston, J.), *aff'd*, 627 F.3d 376 (9th Cir. 2010) (court granted summary judgment to defendants after eight years of litigation, and after plaintiff's counsel incurred over $6 million in expenses, and worked over 100,000 hours, representing a lodestar of approximately $40 million); *In re JDS Uniphase Corp. Sec. Litig.*, 2007 WL 4788556 (N.D. Cal. Nov. 27, 2007) (Wilken, J.) (after lengthy trial involving securities claims, the jury reached a verdict in defendants' favor).

Unlike counsel for the Defendants, who were generally paid and reimbursed for their expenses on an ongoing basis, Plaintiffs' Counsel has not received any compensation for its efforts over the course of the Action. Plaintiffs' Counsel have invested over 27,220 hours of work equating to a total lodestar of $15,658,027.50, and advanced expenses of $637,306.21, knowing that if ultimately unsuccessful, no fees or expenses would be paid. Substantial additional work in implementing the Settlement, claims administration, and distribution of Settlement funds will also be required of Lead Counsel, for which it will not be compensated.

Lead Counsel understood that it was embarking on a complex, expensive, and lengthy litigation process. Indeed, Lead Counsel had to ensure that sufficient resources were dedicated to this Action, and that funds were available to pay for the considerable expenses. In addition, work on this matter precluded other engagements, thereby magnifying the financial burden. Courts within the Ninth Circuit have consistently recognized that "the risk of non-payment after years of litigation justifies a significant fee award." *Zynga*, 2016 WL 537946, at *18 (finding "over $3 million in time worked on the matter all with the possibility of little to no recovery" supported the requested 25% benchmark fees); *Chang*, 2023 WL 6961555, at *7 ("[t]he risk that counsel took in

litigating this case on a contingency basis for the last few years weighs in favor of a substantial attorneys' fee award").[5]

### 5. A 25% Fee Award Is the Ninth Circuit's Benchmark and Comparable to Awards in Similar Cases

The requested fee in comparison to the Settlement also supports the approval of Lead Counsel's fee request. In requesting a 25% fee, Lead Counsel seeks the benchmark fee that has been established by the Ninth Circuit with no additional adjustment. *See Hanlon*, 150 F.3d at 1029 ("This circuit has established 25% of the common fund as a benchmark award for attorney fees"). Lead Counsel's request is reasonable given that "in most common fund cases, the award exceeds that benchmark." *Omnivision*, 559 F. Supp. 2d at 1047.

Indeed, fee awards of 25%, or more, have been awarded in similar securities settlements in district courts throughout the Ninth Circuit. *In re Vocera Communications, Inc., Sec. Litig.*, 2016 WL 8201593, at **1-2 (N.D. Cal. July 19, 2016) (Chen, J.) (awarding 25% attorneys' fees as "fair and reasonable and consistent with fee awards approved in cases within the Ninth Circuit"); *Yelp*, 2023 WL 3063823, at *2 (awarding 33.3% attorneys' fees on $22.25 million securities class action settlement and reimbursing over $930,000 in litigation expenses); *Hatamian v. Advanced Micro Devices, Inc.*, 2018 WL 8950656, at *1 (N.D. Cal. Mar. 2, 2018) (Gonzalez Rogers, J.) (awarding 25% of $29.5 million settlement); *Zynga*, 2016 WL 537946, at *16 (awarding 25% of $23 million Settlement Fund); *Vataj*, 2021 WL 5161927, at **8, 10 (granting 25% benchmark award).

An examination of fee decisions in securities class actions in other Circuits with comparable settlements further demonstrates the requested fees are reasonable. *See, e.g., Oregon Laborers Emps. Pension Tr. Fund v. Maxar Techs. Inc.*, 2024 WL 98387, at *8 (D. Colo. Jan. 1, 2024) (30% fees awarded on $27 million settlement); *Plymouth County Ret. Sys, v. Evolent Health,*

---

[5] Moreover, if this were not a class action, the customary fee arrangement would be contingent, on a percentage basis, and in the range of 30% to 40% of the recovery. *See Blum v. Stenson*, 465 U.S. 886, 903 (1984) ("In tort suits, an attorney might receive one-third of whatever amount the Plaintiff recovers. In those cases, therefore, the fee is directly proportional to the recovery."); *Pinto v. Princess Cruise Lines, Ltd.*, 513 F. Supp. 2d 1334, 1341 (S.D. Fla. 2007) ("In private litigation, attorneys regularly contract for contingent fees between 30% and 40% directly with their clients," making "[t]hese percentages [] the prevailing market rates throughout the United States for contingent representation.").

MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES
3:21-cv-02623-EMC

15

*Inc.*, No. 1:19-cv-01031-MSN-WEF, ECF No. 257 (E.D. Va. Nov. 18, 2022) (33% fees awarded on $23.5 million settlement); *In re Eros Int'l PLC Sec. Litig.*, 2023 WL 8519091, at *1 (D.N.J. Nov. 28, 2023) (33% fees awarded on $25 million settlement); *Baum v. Harman Int'l Industries, Inc.*, 2022 WL 17037516, at *1 (D. Conn. Nov. 10, 2022) (31% fees awarded on $28 million settlement); *Micholle v. Ophthotec Corp.*, 2022 WL 16571095, at *1 (S.D.N.Y. Sept. 16, 2022) (30% fees awarded on $29 million settlement); *In re Chicago Bridge & Iron Company N.V. Sec. Litig.*, 2022 WL 3220783, at *1 (S.D.N.Y. Aug. 5, 2022) (33% fees awarded on $44 million settlement); *Plymouth Cnty. Ret. Sys. v. GTT Communications, Inc.*, 2021 WL 1659848, at *5 (E.D. Va. Apr. 23, 2021) (33% fees awarded on $25 million settlement).

Accordingly, the fee request is squarely within the range of percentages courts in this Circuit and nationwide award in similar complex class action settlements, and is highly reasonable given the extensive efforts and favorable results obtained by Lead Counsel in the face of serious litigation risks and other significant obstacles to recovery.

### 6.    Lack of Opposition Supports Granting the Requested Fees

Courts in the Ninth Circuit also consider the reaction of the class when deciding whether to award the requested fee. *See Zynga*, 2016 WL 537946, at *18 ("the lack of objection by any Class Members also supports the 25 percent fee award").

The Notice advised Class Members that Lead Counsel would be requesting an award of attorneys' fees not to exceed 25% of the Settlement Fund and reimbursement of out-of-pocket expenses not to exceed $715,000.  As of this filing, not a single objection has been received, which strongly supports the fee request.  Should any objections be received, they will be addressed in the reply papers.  *Omnivision*, 559 F. Supp. 2d at 1048 ("None of the objectors raised any concern about the amount of the fee.  This factor, like those above, also supports the requested award").

Furthermore, courts have given great weight to fee awards negotiated between fully informed plaintiffs and their counsel.  Here, Lead Plaintiffs are sophisticated institutional investors that fully approve the fee request.  Final Approval Decl. at Exs. A-C;  *Veeco*, 2007 WL 4115808, at *8 ("Since passage of the PSLRA, courts [] have found that in a PSLRA case, a fee request

MOTION FOR AN AWARD OF ATTORNEYS'
FEES AND REIMBURSEMENT OF
LITIGATION EXPENSES
3:21-cv-02623-EMC

16

which has been approved and endorsed by a properly-appointed lead plaintiff is 'presumptively reasonable,' especially where the lead plaintiff is a sophisticated institutional investor").

### 7.    A Lodestar Cross-Check Supports the Requested Fee

As noted, the percentage-of-recovery approach is widely favored within the Ninth Circuit; however, a percentage fee can be "cross-checked" to confirm its reasonableness by using the lodestar-multiplier method. *See Vizcaino*, 290 F.3d at 1050 n.5; *Vataj*, 2021 WL 5161927, at *8 (noting that "trial courts have discretion to conduct a lodestar cross-check on a percentage fee" but "also retain discretion to forgo a lodestar cross-check"). Here, a lodestar cross-check strongly supports the requested fee, as it reveals a large "***negative***" (or fractional) lodestar multiplier of ***0.46***.

A lodestar cross-check involves a two-step analysis. First, the Court multiplies the number of hours each attorney reasonably expended on the litigation by a reasonable hourly rate to obtain the lodestar. *Vataj*, 2021 WL 5161927, at *8. Under the cross-check method, the Court need not focus on each and every hour billed and "need not review actual billing records," but can use a rough calculation "rely[ing] on summaries submitted by the attorneys." *Abadiilla*, 2023 WL 730503, at *14 ("The lodestar cross-check calculation need entail neither mathematical precision nor bean counting."). Second, the Court adjusts that lodestar figure by applying a multiplier to reflect such factors as "the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment." Here, utilizing the lodestar cross-check method amply confirms the reasonableness of the requested fees.

Plaintiffs' Counsel have collectively spent 27,220.2 hours in connection with the Litigation, resulting in a total lodestar of $15,658,027.50. Final Approval Decl. ¶97.[6] Thus, even if the Court were to apply a lodestar cross-check, the fee request represents a negative multiplier of 0.46—representing less than half the value of Lead Counsel's time—which is well below the

---

[6] As is customary when seeking a percentage-of-the-fund award in common fund cases and submitting data for a lodestar cross-check, Lead Counsel is submitting a declaration that includes a schedule breaking down Lead Counsel's lodestar by individual, position, billing rate, and hours billed. *See* Final Approval Decl. at Ex. E-1.

range routinely awarded in similar actions. *See e.g., Vizcaino*, 290 F.3d at 1050-51 and n.6 (upholding a fee award which reflected a lodestar multiplier of 3.65 and noting lodestar awards regularly include a multiplier in the "1.5-3.0 range."); *Chang*, 2023 WL 6961555, at *8 ("a *negative* multiplier of .54 … further demonstrates the reasonableness of the fee request") (emphasis in original); *In re Myford Touch Consumer Litig.*, 2019 WL 6877477, at *1 (N.D. Cal. Dec. 17, 2019) (Chen, J.) ("[T]he negative multiplier … suggests the request is reasonable"); *Khoja v. Orexigen Therapeutics, Inc.*, 2021 WL 5632673, at *10 (S.D. Cal. Nov. 30, 2021) (finding negative multiplier of 0.528 "provide[d] a strong indication of the reasonableness of Lead Counsel's requested percentage award.").[7]

In sum, Lead Counsel's requested fee award is reasonable, justified, and squarely in line with what courts in this Circuit award in class actions such as this one, whether calculated as a

---

[7] Courts may find hourly rates reasonable based on other courts approving similar rates, or other attorneys engaged in similar litigation with "comparable skill, experience, and reputation" charging similar rates. *See Rieckborn v. Velti PLC*, 2015 WL 468329, at *21 (N.D. Cal. Feb. 3, 2015) ("The hourly rates that plaintiffs' counsel request are … in line with those prevailing in the community for similar services by lawyers of comparable skill, experience, and reputation."); *In re Am. Apparel, Inc. S'holder Litig.*, 2014 WL 10212865, at *25 (C.D. Cal. July 28, 2014) (noting that "counsel cite other cases in which courts in this district have approved similar rates in complex class action litigation").. Here, Plaintiff's Counsel's rates are consistent with other attorneys engaged in similar litigation. *See, e.g., In re Splunk, Inc. Sec. Litig.*, No. 4:20-cv-08600-JST, ECF No. 143 (N.D. Cal. Mar. 4, 2024) (Tigar, J.) (approving rates of $850-1,250 for partners and $425-825 for associates); *In re: FAT Brands Inc. Sec. Litig.*, No. 2:22-cv-01820-MCS-RAO, ECF No. 71 (C.D. Cal. Feb. 28, 2023) (approving partner rates of $925 and associate rates of $500-675); *In re Aqua Metals, Inc. Sec. Litig.*, No. 4:17-cv-07142-HSG, ECF No. 182 (N.D. Cal. Mar. 2, 2022) (Gilliam, Jr., J.) (approving rates of $765-1,065 for partners and $425-800 for associates); *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, 2017 WL 1047834, at *5 (N.D. Cal. Mar. 17, 2017) (Breyer, J.) (approving fee award following lodestar cross-check where "billing rates rang[ed] from $275 to $1600 for partners, $150 to $790 for associates, and $80 to $490 for paralegals"). Indeed, numerous courts in the Ninth Circuit and throughout the country have accepted Lead Counsel's rates in awarding fee requests in other securities class action settlements. *See Hayden v. Portola Pharmaceuticals, Inc.*, No. 3:20-cv-00367-VC, ECF No. 259 (N.D. Cal. Mar. 6, 2023) (Chhabria, J.); *Milbeck v. TrueCar, Inc.*, Case No. 18-cv-02612, ECF No. 185 (C.D. Cal. Jan. 27, 2020); *In re Merit Medical Sys., Inc., Sec. Litig.*, Case No. 19-cv-02326, ECF No. 118 (C.D. Cal. April 15, 2022); *Fulton Cnty. Employees' Ret. Sys. on Behalf of Goldman Sachs Group, Inc. v. Blankfein*, 2023 WL 350888, at *4 (S.D.N.Y. Jan. 20, 2023); *Plymouth Cnty. Ret. Sys. v. Patterson Companies, Inc.*, 2022 WL 2093054, at *2 (D. Minn. June 10, 2022); *Plymouth Cnty. Ret. Sys. v. Evolent Health, Inc.*, Case No. 19-cv-01032, ECF No. 257 (E.D. Va. Nov. 18, 2022).

MOTION FOR AN AWARD OF ATTORNEYS'
FEES AND REIMBURSEMENT OF
LITIGATION EXPENSES
3:21-cv-02623-EMC

18

percentage of the fund or as a multiple of counsel's lodestar. As discussed above, each of the factors considered in the Ninth Circuit also supports the reasonableness of the requested fee.[8]

## IV.    LEAD COUNSEL'S EXPENSES ARE REASONABLE AND SHOULD BE APPROVED

"There is no doubt that an attorney who has created a common fund for the benefit of the class is entitled to reimbursement of reasonable litigation expenses from that fund." *Zynga*, 2016 WL 537946, at *22. Reimbursement is appropriate for costs that are of the type typically billed by attorneys to paying clients in the marketplace. *See, e.g., Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (concluding that "Harris may recover as part of the award of attorney's fees those out-of-pocket expenses that 'would normally be charged to a fee paying client'"); *Zynga*, 2016 WL 537946, at *22 (noting that "courts throughout the Ninth Circuit regularly award litigation costs and expenses—including photocopying, printing, postage, court costs, research on online databases, experts and consultants, and reasonable travel expenses—in securities class actions, as attorneys routinely bill private clients for such expenses in non-contingent litigation"); *In re Am. Apparel, Inc. S'holder Litig.*, 2014 WL 10212865, at *27 ("Attorneys may recover their reasonable expenses that would typically be billed to paying clients in non-contingency matters.").

The Notice apprised Class Members that Lead Counsel would seek expenses in an amount not to exceed $715,000. Plaintiffs' Counsel have incurred expenses in an aggregate amount of $637,306.21 in prosecuting this Action. These expenses are set forth in the declarations from counsel submitted to the Court and are of the type generally approved by courts for reimbursement. *See* Final Approval Decl. at ¶¶112-117 and Ex. E-3. The vast majority of expenses were for the retention of experts ($334,114.80), e-discovery ($120,363.77), and online legal and factual research ($75,476.28). These expenses total approximately 83% of the total litigation expenses. Such expenses were critical to Lead Counsel's success in achieving the Settlement and, like the other categories of expenses for which counsel seek reimbursement, are consistent with costs

---

[8] Moreover, the lodestar does not include time for additional services to be provided by Lead Counsel to the Settlement Class, including attending the final settlement hearing, responding to Class Members inquiries, supervising the Claims Administrator in the review and processing of claims, preparing and filing a motion for distribution of the Settlement funds, and overseeing the distribution of checks to Class Members.

normally billed to clients by attorneys, warranting approval. *See e.g., In re High-Tech Employee Antitrust Litig.*, 2015 WL 5158730, at *16 (N.D. Cal. Sept. 2, 2015) (Koh, J.) (approving reimbursement of $1.2 million for "(1) expert witness fees; (2) mediator's fees; (3) a document vendor to host the over 3.2 million pages of documents produced; (4) court reporting and videographer services … ; (5) electronic research; (6) copying, mailing, and serving documents; and (7) case-related travel for Plaintiffs, witnesses, experts, and counsel."); *Thomas v. MagnaChip Semiconductor Corp.*, 2018 WL 2234598, at *4 (N.D. Cal. May 15, 2018) (Tigar, J.) (approving reimbursement of $795,401.42 for expert costs, "court fees, online research fees, postage and copying, travel costs, electronic discovery expenses, deposition costs, mediation charges, and travel costs").

## V.     LEAD PLAINTIFFS' REIMBURSEMENT SHOULD BE APPROVED

The PSLRA authorizes the Court to allow reimbursement to a representative plaintiff for its "reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of a class." 15 U.S.C. § 78u-4(a)(4). Courts "routinely award … costs and expenses both to reimburse the named plaintiffs for expenses incurred through their involvement with the action and lost wages, as well as to provide an incentive for such plaintiffs to remain involved in the litigation and to incur such expenses in the first place." *In re Am. Int'l Grp., Inc. Sec. Litig.*, 2012 WL 345509, at *6 (S.D.N.Y. Feb. 2, 2012); *accord Fleming v. Impax Lab'ys Inc.*, 2022 WL 2789496, at *10 (N.D. Cal. July 15, 2022) (Gilliam, Jr., J.) (noting that incentive awards are expressly authorized by the PSLRA, "are fairly typical in class action cases," and are designed to "compensate class representatives for work done on behalf of the class").

As detailed in the Final Approval Declaration and the declarations from each Lead Plaintiff, Lead Plaintiffs expended substantial time and effort in representing the interests of the Settlement Class in this Action, including the review of pleadings and filings in this Action; attendance at critical hearings; regular communications with Lead Counsel concerning the developments therein; substantial participation in discovery, including the collection and

MOTION FOR AN AWARD OF ATTORNEYS'
FEES AND REIMBURSEMENT OF
LITIGATION EXPENSES
3:21-cv-02623-EMC

20

production of documents and attendance at their depositions; and supervision of and participation in the settlement process—including preparing for and attending mediation.

Accordingly, Lead Plaintiffs Baltimore Employees, Philadelphia Pension Fund, and Plymouth County seek reimbursement of $8,268.14, $19,570.00, and $7,204.14, respectively, for an aggregate amount of $35,540.28. Courts have long noted that it is important to reimburse time and expenses of class representatives because doing so "encourages participation of plaintiffs in the active supervision of their counsel," *Varljen v. H.J. Meyers & Co.*, 2000 WL 1683656, at *5 n.2 (S.D.N.Y. Nov. 8, 2000), "and, sometimes, to recognize their willingness to act as a private attorney general." *Impax*, 2022 WL 2789496, at *10. Thus, courts regularly determined that expenses and time spent by class representatives in managing the case are properly reimbursable and consistent with the PSLRA's objective to encourage institutional investors to actively lead securities class actions. *See, e.g.*, *Yelp*, 2023 WL 3063823, at *2 (granting $15,000 PSLRA service award to lead plaintiff for approximately 100 hours devoted to the litigation); *Hatamian,* 2018 WL 8950656, at *2 (granting lead plaintiff PSLRA service award of $14,875 for approximately 106 hours devoted to the litigation); *In re HP Sec. Litig.*, No. 3:12-cv-05980-CRB, ECF No. 279 at 2 (N.D. Cal. Nov. 16, 2015) (Breyer, J.) (awarding $162,900 PSLRA service award to lead plaintiff as "reimbursement for its costs and expenses directly related to its representation of the Settlement Class").

Moreover, the requested award is particularly appropriate here given that the Notice advised Class members that Lead Plaintiffs would seek up to $45,000 as a reimbursement, and no Class member has objected to this amount as of the date of this filing.

## VI.    CONCLUSION

For all the foregoing reasons, Lead Counsel respectfully requests that the Court award attorneys' fees of 25% of the Settlement Fund, litigation expenses in the amount of $637,306.21 and PSLRA reimbursement to Lead Plaintiffs in the amounts of $8,268.14 for Baltimore Employees, $19,570.00 for Philadelphia Pension Fund, and $7,204.14 for Plymouth County. A proposed order will be submitted with Lead Counsel's reply papers, after the April 18,

2024 objection and exclusion deadline has passed.

Dated: April 4, 2024                              Respectfully submitted,

                                                  /s/ David R. Kaplan
                                                  **SAXENA WHITE P.A.**
                                                  David R. Kaplan (SBN 230144)
                                                  dkaplan@saxenawhite.com
                                                  Emily Bishop (SBN 319383)
                                                  ebishop@saxenawhite.com
                                                  505 Lomas Santa Fe Drive, Suite 180
                                                  Solana Beach, CA 92075
                                                  Tel.: (858) 997-0860
                                                  Fax: (858) 369-0096

                                                  Steven B. Singer
                                                  ssinger@saxenawhite.com
                                                  Kyla Grant (admitted *pro hac vice*)
                                                  kgrant@saxenawhite.com
                                                  Sara DiLeo (admitted *pro hac vice*)
                                                  sdileo@saxenawhite.com
                                                  Joshua H. Saltzman (admitted *pro hac vice*)
                                                  jsaltzman@saxenawhite.com
                                                  10 Bank Street, 8th Floor
                                                  White Plains, New York 10606
                                                  Tel: (914) 437-8551

                                                  Maya Saxena (admitted *pro hac vice*)
                                                  msaxena@saxenawhite.com
                                                  Lester R. Hooker (SBN 241590)
                                                  lhooker@saxenawhite.com
                                                  Dianne M. Pitre (SBN 286199)
                                                  dpitre@saxenawhite.com
                                                  7777 Glades Road, Suite 300
                                                  Boca Raton, FL 33434
                                                  Tel.: (561)394-3399
                                                  Fax: (561)394-3382

                                                  *Counsel for Lead Plaintiffs Employees' Retirement System of the City of Baltimore, City of Philadelphia Board of Pensions and Retirement, and Plymouth County Retirement Association, and Lead Counsel for the proposed Settlement Class*

MOTION FOR AN AWARD OF ATTORNEYS'            22
FEES AND REIMBURSEMENT OF
LITIGATION EXPENSES
3:21-cv-02623-EMC

**CERTIFICATE OF SERVICE**

I hereby certify under penalty of perjury that on April 4, 2024, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel or parties of record.

*/s/ David R. Kaplan*
David R. Kaplan

MOTION FOR AN AWARD OF ATTORNEYS'
FEES AND REIMBURSEMENT OF
LITIGATION EXPENSES
3:21-cv-02623-EMC

23