**SAXENA WHITE P.A.**
David R. Kaplan (SBN 230144)
dkaplan@saxenawhite.com
Emily Bishop (SBN 319383)
ebishop@saxenawhite.com
505 Lomas Santa Fe Drive, Suite 180
Solana Beach, CA 92075
Tel.: (858) 997-0860
Fax: (858) 369-0096

*Counsel for Lead Plaintiffs and*
*Lead Counsel for the Settlement Class*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE FIBROGEN, INC., SECURITIES LITIGATION | Case No. 3:21-cv-02623-EMC <br><br> **<u>CLASS ACTION</u>** <br><br> SUPPLEMENTAL DECLARATION OF LUIGGY SEGURA IN SUPPORT OF LEAD PLAINTIFFS' UNOPPOSED MOTION FOR CLASS DISTRIBUTION ORDER |

I, LUIGGY SEGURA, hereby declare under penalty of perjury as follows:

1.      I am a Vice President of Securities Class Actions at JND Legal Administration ("JND").  I submit this Declaration as a supplement to the Declaration of Luiggy Segura in Support of Lead Plaintiffs' Unopposed Motion for Class Distribution Order (the "Distribution Declaration") previously filed with the Court on December 17, 2024 (ECF No. 261-2).

2.      JND is a nationally recognized class action administration firm.  The principals of JND collectively have over 75 years of experience in the class action legal and administrative fields and have personally overseen some of the largest securities class action settlements in U.S. history.

3.      JND's expertise has been recognized by Federal Government agencies.  We are an approved vendor for the Federal Trade Commission, the Securities and Exchange Commission, and the Consumer Financial Protection Bureau.  In addition, JND routinely works on projects involving other agencies such as the Equal Employment Opportunity Commission, the Federal Deposit Insurance Corporation, the Office of the Comptroller of the Currency, the Federal Communications Commission, the Department of Justice, and the Department of Labor.

4.      Regarding this Action, JND's initial estimate for administering the Settlement was approximately $375,000, excluding broker fees.  *See* Declaration of Luiggy Segura in Support of Lead Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement (ECF No. 236, Ex. 3, at ¶ 27) ("Initial Segura Declaration").  Importantly, none of the parties in a securities class action know the precise number of Class Members at the outset of the administration. [1]  The number of shareholders in a securities class action is unknown because it is impossible to accurately determine the exact number of individuals and entities who bought and held shares during the class period and suffered cognizable losses in connection with the alleged corrective disclosures, especially when considering factors like beneficial purchasers holding their securities in "street name," frequent trading, institutional investor holdings, and potential changes in ownership

[1] All capitalized but undefined terms have the meanings ascribed to them in the Stipulation and Agreement of Settlement dated December 7, 2023 (ECF No. 236) (the "Stipulation" or "Settlement Agreement") or the Unopposed Motion for Class Distribution Order (ECF No. 261) (the "Distribution Motion").

throughout the class period.  Without detailed data being readily available to JND or Lead Counsel, accurately estimating the size of the Class and Claims response is difficult, and JND can only provide a rough estimate.

5.      Thus, in estimating class size and claims response for any case, JND utilizes historical settlement data from other securities class action settlements JND has administered, particularly those settlements of similar size and involving companies with similar market capitalizations.  To calculate an anticipated class size and potential number of claims to be filed, JND also looks at, among other things, the average trading volume of the company, shares on the float, stock split history, and the length of the class period.

6.      Accordingly, JND's initial estimate noted that the projected costs of settlement administration were "merely estimates and dependent on a number of variables."  *See* Initial Segura Declaration at ¶ 27 n. 10.  Underscoring the inherent uncertainty in estimating the total costs of settlement administration for securities class actions settlements, "JND recommended to Lead Counsel that Plaintiffs seek an amount of Notice and Administration Costs in excess of the base estimate and the amount of estimated Nominee expenses" and proposed "an expenses estimate for claims administration of $550,000."  *Id*. (emphasis added).

7.      As the Distribution Declaration details, it is the job of the Claims Administrator to provide notice to brokers, banks, and nominees (collectively referred to as "Nominees") to identify potential Settlement Class Members, notify potential Settlement Class Members, process claims, assist Class Members in perfecting their claims in the event the claims are deficient, and recommend to the Court which claims to accept and which to reject.  As in every case, when the claims administrator provides an estimate, it is based on agreed upon unit pricing and hourly rates (time and material) in line with industry standards.  This estimate is based on assumptions where the actual is unknown.  Here, the principal differences between estimated and the actual costs of settlement administration to-date include the following:

SUPP. DEC. OF LUIGGY SEGURA ISO
UNOPPOSED MOTION FOR CLASS
DISTRIBUTION ORDER
3:21-cv-02623-EMC

2

a) The estimate was based on a 20-page Notice Packet. However, the Notice Packet amounted to 34 pages, thus increasing JND's printing and postage costs by approximately $24,000;

b) JND encountered a higher number than anticipated of correspondence and follow up efforts with brokers and nominees to ensure adequate notice to the Class and maximize Class participation in the Settlement. For example, JND's unanticipated efforts with brokers and nominees included multiple follow-up calls and/or emails to the brokers believed to cover the greatest number of potential Class Members (in the aggregate) for several weeks, in an effort to ensure the notice program reached the full extent of Class Members practicable under the circumstances. In addition, JND sent follow-up postcards to brokers reminding them of their duties as nominees. Due to these efforts, additional printing and postage and over 35 hours of additional work were incurred. These efforts yielded requests for over 23,000 Notice Packets mailed, and in the aggregate resulted in increased costs of approximately $6,000;

c) JND's initial estimate called for a 1/4-page advertisement in *Investor's Business Daily* and a 1,000-word press release. However, the Summary Notice was larger than estimated, requiring a 1/3-page *Investor's Business Daily* ad and a 1,300-word press release, increasing JND's publication costs by approximately $2,200;

d) JND's estimate was based on receiving 25,000 Claims, but JND ultimately received 27,443 Claims. The increase in Claims required JND to perform additional work in connection with entering, reviewing, and helping additional Claimants with deficient Claims. This unanticipated increase in Claims of nearly 2,500 increased JND's costs by approximately $17,500; and

e) Non-conforming data and deficiency responses submitted by institutional filers also resulted in increased costs. During the settlement administration, JND worked through standardizing non-conforming data for Claims filed by institutional filers whose data was submitted in a noncompliant format. JND worked on standardizing over 2 million

SUPP. DEC. OF LUIGGY SEGURA ISO
UNOPPOSED MOTION FOR CLASS                3
DISTRIBUTION ORDER
3:21-cv-02623-EMC

transactions of data in order to calculate such Claims pursuant to the Plan of Allocation. Ultimately, after standardizing the transactional data, JND was required to re-process over 5,500 Claims, which increased the total recognized loss of submitted Claims to nearly $27.4 million. These efforts to ensure the proper calculation of Claims as part of the Claims entry and quality assurance process under the Plan of Allocation increased JND's costs by approximately $11,300.

8. JND has made extensive efforts to locate potential Settlement Class Members, provide them with adequate notice, and administer the submitted Claims accurately and in accordance with the firm's established quality assurance standards. As of the date of this Declaration, the total amount of JND's fees and expenses incurred in this Action through September 30, 2024 is $369,787.74, of which $221,979.57 remains outstanding. JND estimated $67,084.65 in anticipation of the fees and expenses that will be incurred in making the Initial Distribution. *See* Distribution Declaration at ¶47. While the estimate for the Notice and Administration Costs was approximately $375,000, excluding $100,000 for reimbursement of Nominee fees, the unanticipated differences mentioned above largely accounted for the increase in total incurred costs of $369,787.74 through September 30, 2024.

9. Since September 30, 2024, JND has incurred an additional approximately $30,000 in settlement administration costs and expenses in this Action, which have not yet been invoiced or paid, and are included in Lead Counsel's requested Distribution Order. This unvoiced amount is included within the $67,084.65 discussed in paragraph 8 above.

10. While JND does not presently anticipate any further costs in connection with the administration of the Settlement in this Action, it bears noting that the Distribution Order contemplates the costs of a potential second distribution, if cost-effective, as described in the Distribution Plan. *See* Distribution Declaration at ¶ 48(d) ("Consistent with the Court-approved Plan of Allocation . . . JND will, if Lead Counsel, in consultation with JND, determines that it is cost-effective to do so, conduct the Second Distribution. Any amounts remaining in the Net Settlement Fund after the Initial Distribution . . . after deducting JND's fees and expenses incurred

in connection with administering the Settlement for which it has not yet been paid (including JND's estimated costs of the Second Distribution).").

11.    Despite the increase in actual versus estimated costs, the overall costs incurred and anticipated in connection with the administration of this Settlement are (i) below the $550,000 in estimated costs recommended by JND to Lead Counsel as set forth in the Initial Segura Declaration; and (ii) consistent with the actual administrative costs approved in other securities class action settlements involving similarly sized classes, notice, claims processing, and distribution programs administered by JND, including in this District, elsewhere in the Ninth Circuit, and nationwide.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed in New Hyde Park, New York, on January 14, 2025.

_____

Luiggy Segura